# EXHIBIT B

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

# COVINGTON

BEIJING   BRUSSELS   LONDON   LOS ANGELES
NEW YORK   SAN FRANCISCO   SEOUL
SHANGHAI   SILICON VALLEY   WASHINGTON

Robert K. Kelner

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
T  +1 202 662 5503
rkelner@cov.com

**VIA E-MAIL**

March 7, 2017

Ms. Heather Hunt
FARA Registration Unit
U.S. Department of Justice
600 E Street, N.W.
Washington, D.C. 20004

Re:    Flynn Intel Group Registration

Dear Ms. Hunt:

We write on behalf of our clients Flynn Intel Group and its Chairman and CEO, General Michael T. Flynn, to submit a Foreign Agents Registration Act ("FARA") registration and supplemental disclosure statement, in connection with Flynn Intel Group's previously disclosed representation of Inovo BV, a corporation organized in the Netherlands.

In September 2016, Flynn Intel Group publicly disclosed its representation of Inovo BV in a federal Lobbying Disclosure Act ("LDA") registration that was filed with the Secretary of the Senate and Clerk of the House. After General Flynn was named in mid-November 2016 to serve as National Security Advisor in the new administration, Flynn Intel Group shut down its operations, did not renew its contract with Inovo BV, and filed, on December 1, 2016, a final public disclosure report terminating its lobbyist registration for Inovo BV.

As you know, under FARA, a U.S. firm that represents a foreign corporate client, which is not a foreign government or political party, may register under the LDA rather than FARA, so long as the firm engages in lobbying activities for its client. Flynn Intel Group concluded that because its client was a foreign corporation and the services provided included lobbying activities, it could file under the LDA.

The Department's regulations provide that filing under the LDA is not an option, however, if a foreign government, even though not the client, nonetheless is the "principal beneficiary" of the work performed. This is an uncertain standard, not based on the statutory language, and not defined in the Department's regulations. Nevertheless, because of the subject matter of Flynn Intel Group's work for Inovo BV, which focused on Mr. Fethullah Gulen, whose extradition is sought by the Government of Turkey, the engagement could be construed to have principally benefitted the Republic of Turkey. To eliminate any potential doubt, the Flynn Intel Group therefore is electing to file a registration under FARA, in lieu of its prior LDA registration.

Because this is a retroactive registration, compiled after the Flynn Intel Group shut down its operations in November 2016, the enclosed supplemental disclosure statement is based on information that is currently available to Flynn Intel Group, to the best of its knowledge, after

DC: 6370276-1

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

Ms. Heather Hunt
March 7, 2017
Page 2

undertaking reasonable due diligence with the assistance of counsel. If additional material information relevant to the supplemental statement is identified, Flynn Intel Group will amend the statement.

Please note that insofar as Flynn Intel Group's contract with Inovo BV ended by its terms on November 15, 2016, the filing of the supplemental statement today also terminates the FARA registration, effective as of that date.

Respectfully submitted,

Robert K. Kelner

Enclosure

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

U.S. Department of Justice

Washington, DC 20530

## Registration Statement
## Pursuant to the Foreign Agents Registration Act of 1938, as amended

### I—REGISTRANT

1. Name of Registrant

   Flynn Intel Group, Inc.

2. Registration No. (To Be Assigned By the FARA Registration Unit)

   6406

3. Principal Business Address
   44 Canal Center Plaza, Alexandria VA 22314

4. If the registrant is an individual, furnish the following information:
   (a) Residence address(es)

   (b) Other business address(es), if any

   (c) Nationality

   (d) Year of birth

   (e) Present citizenship

   (f) If present citizenship not acquired by birth, state when, where and how acquired

   (g) Occupation

5. If the registrant is not an individual, furnish the following information:

   (a) Type of organization: Committee ☐      Association ☐      Partnership ☐      Voluntary group ☐
      Corporation ☒      Other *(specify)* _____

   (b) Date and place of organization   Delaware Secretary of State, June 12, 2015

   (c) Address of principal office   44 Canal Center Plaza, Alexandria VA 22314

   (d) Name of person in charge   Michael T. Flynn and Bijan Rafiekian

   (e) Locations of branch or local offices   N/A

   (f) If a membership organization, give number of members   N/A

FORM NSD-1
Revised 03/14

(PAGE 2)

(g) List all partners, officers, directors or persons performing the functions of an officer or director of the registrant.

| Name | Residence Address(es) | Position | | Nationality |
|---|---|---|---|---|
| Michael T. Flynn | Provided separately to the | Chairman and CEO | U.S. | |
| Bijan Rafiekian | Department of Justice. | Vice-Chairman, Director, Secretary, and Treasurer | U.S. | |
| Philip Oakley | | President | U.S. | |

(h) Which of the above named persons renders services directly in furtherance of the interests of any of the foreign principals?
Michael T. Flynn, Bijan Rafiekian

(i) Describe the nature of the registrant's regular business or activity.
Flynn Intel Group is a consulting firm that provided intelligence research and advisory services.

(j) Give a complete statement of the ownership and control of the registrant.
Ownership as of November 31, 2016, was as follows: Michael T. Flynn (350,000 shares), Bijan Rafiekian (300,000 shares), Philip Oakley (250,000 shares), Dr. Payman Arabshahi (5,000 shares), Darkshore LLC (1,000 shares). The corporation acts pursuant to its bylaws, under which the Board of Directors governs the organization. Directors include Michael T. Flynn, Bijan Rafiekian, and Philip Oakley.

6. List all employees who render services to the registrant directly in furtherance of the interests of any of the foreign principals in other than a clerical, secretarial, or in a related or similar capacity.

| Name | Residence Address(es) | Nature of Services |
|---|---|---|
| Michael T. Flynn | Provided separately to the Department | Director, consulting |
| Bijan Rafiekian | of Justice. | Director, consulting |

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

(PAGE 3)

## II--FOREIGN PRINCIPAL

7. List every foreign principal[1] for whom the registrant is acting or has agreed to act.

| Foreign Principal | Principal Address(es) |
|---|---|
| Inovo BV | 47 Adireaanstraat, 3581 SC Ultrecht, The Netherlands |

## III--ACTIVITIES

8. In addition to the activities described in any Exhibit B to this statement, will you engage or are you engaging now in activity on your own behalf which benefits any or all of your foreign principals?     Yes ☒     No ☐

If yes, describe fully.

Because this is filed retrospective to activity under this engagement, we note that during the course of the engagement and thereafter, Flynn Intel Group officials (particularly Michael T. Flynn, in his capacity as a public figure separate from Flynn Intel Group) frequently wrote, spoke, or provided interviews relating to national security. Although not undertaken at the direction of any foreign principal, including but not limited to Inovo, it is possible that such activities may have had an indirect benefit to Inovo BV.

## IV--FINANCIAL INFORMATION

9. (a) **RECEIPTS-MONIES**

During the period beginning 60 days prior to the date of your obligation to register[2] to the time of filing this statement, did you receive from any foreign principal named in Item 7 any contribution, income, or money either as compensation or for disbursement or otherwise?     Yes ☐     No ☒

If yes, set forth below in the required detail and separately for each such foreign principal an account of such monies.[3]

| Foreign Principal | Date Received | Purpose | Amount |
|---|---|---|---|
| | | Because this is a retroactive registration, receipts appear on the supplemental statement filed concurrently. | |

Total

---

1 The term "foreign principal," as defined in Section 1(b) of the Act, includes a foreign government, foreign political party, foreign organization, foreign individual and, for the purpose of registration, an organization or an individual any of whose activities are directly or indirectly supervised, directed, controlled, financed, or subsidized in whole or in major part by a foreign government, foreign political party, foreign organization or foreign individual.

2 An agent must register within ten days of becoming an agent, and before acting as such.

3 A registrant is required to file an Exhibit D if he collects or receives contributions, loans, moneys, or other things of value for a foreign principal, as part of a fundraising campaign. There is no printed form for this exhibit. (See Rule 201(e), 28 C.F.R. § 5.201(e)).

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

(PAGE 4)

**(b) RECEIPTS-THINGS OF VALUE**

During the period beginning 60 days prior to the date of your obligation to register[4] to the time of filing this statement, did you receive from any foreign principal named in Item 7 anything of value[5] other than money, either as compensation, or for disbursement, or otherwise?          Yes ☐          No ☒

If yes, furnish the following information:

| Foreign Principal | Date Received | Thing of Value | Purpose |
|---|---|---|---|
| | | | |

10. **(a) DISBURSEMENT-MONIES**

During the period beginning 60 days prior to the date of your obligation to register[6] to the time of filing this statement, did you spend or disburse any money in furtherance of or in connection with your activities on behalf of any foreign principal named in Item 7?          Yes ☐          No ☒

If yes, set forth below in the required detail and separately for each such foreign principal named including monies transmitted, if any, to each foreign principal.

| Date | To Whom | Purpose | Amount |
|---|---|---|---|
| | | Because this is a retroactive registration, disbursements appear on the supplemental statement filed concurrently. | |

**(b) DISBURSEMENTS-THINGS OF VALUE**

During the period beginning 60 days prior to the date of your obligation to register[7] to the time of filing this statement, did you dispose of any thing of value[8] other than money in furtherance of or in connection with your activities on behalf of any foreign principal named in Item 7?          Yes ☐          No ☒

If yes, furnish the following information:

| Date | Recipient | Foreign Principal | Thing of Value | Purpose |
|---|---|---|---|---|
| | | | | |

**(c) DISBURSEMENTS-POLITICAL CONTRIBUTIONS**

During the period beginning 60 days prior to the date of your obligation to register[9] to the time of filing this statement, did you, the registrant, or any short form registrant, make any contribution of money or other thing of value from your own funds and on your own behalf in connection with an election to any political office or in connection with any primary election, convention, or caucus held to select candidates for any political office?          Yes ☐          No ☒

If yes, furnish the following information:

| Date | Amount or Thing of Value | Political Organization or Candidate | Location of Event |
|---|---|---|---|
| | | | |

---

4, 6, 7 and 9  See Footnote 2, on page 3.

5 and 8  Things of value include but are not limited to gifts, interest free loans, expense free travel, favored stock purchases, exclusive rights, favored treatment over competitors, "kickbacks", and the like.

(PAGE 5)

# V—INFORMATIONAL MATERIALS[10]

11. Will the activities of the registrant on behalf of any foreign principal include the preparation or dissemination of informational materials?    Yes ☒    No ☐

IF YES, RESPOND TO THE REMAINING ITEMS IN THIS SECTION V.

12. Identify each such foreign principal.
Inovo BV.

13. Has a budget been established or specified sum of money allocated to finance your activities in preparing or disseminating informational materials?    Yes ☐    No ☒

If yes, identify each such foreign principal, specify amount and for what period of time.
See attachment.

14. Will any public relations firms or publicity agents participate in the preparation or dissemination of such informational materials?
Yes ☒    No ☐

If yes, furnish the names and addresses of such persons or firms.
See attachment.

15. Activities in preparing or disseminating informational materials will include the use of the following:

☐ Radio or TV broadcasts    ☐ Magazine or newspaper    ☐ Motion picture films    ☐ Letters or telegrams
☐ Advertising campaigns    ☐ Press releases    ☐ Pamphlets or other publications    ☐ Lectures or speeches
☒ Other *(specify)*  See attachment.

**Electronic Communications**
☐ Email
☐ Website URL(s): _____
☐ Social media website URL(s): _____
☒ Other *(specify)*  See attachment.

16. Informational materials will be disseminated among the following groups:

☐ Public officials                    ☐ Civic groups or associations
☐ Legislators                         ☐ Libraries
☐ Government agencies                 ☐ Educational groups
☐ Newspapers                          ☐ Nationality groups
☐ Editors                             ☒ Other *(specify)* See attachment.

17. Indicate language to be used in the informational materials:
☒ English                             ☐ Other *(specify)* _____

10 The term informational materials includes any oral, visual, graphic, written, or pictorial information or matter of any kind, including that published by means of advertising, books, periodicals, newspapers, lectures, broadcasts, motion pictures, or any means or instrumentality of interstate or foreign commerce or otherwise. Informational materials disseminated by an agent of a foreign principal as part of an activity in itself exempt from registration, or an activity which by itself would not require registration, need not be filed pursuant to Section 4(b) of the Act.

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

(PAGE 6)

## VI--EXHIBITS AND ATTACHMENTS

18. (a)  The following described exhibits shall be filed with an initial registration statement:

*Exhibit A-*   This exhibit, which is filed on Form NSD-3, sets forth the information required to be disclosed concerning each foreign principal named in Item 7.

*Exhibit B-*   This exhibit, which is filed on Form NSD-4, sets forth the information concerning the agreement or understanding between the registrant and the foreign principal.

(b)  An Exhibit C shall be filed when applicable. This exhibit, for which no printed form is provided, consists of a true copy of the charter, articles of incorporation, association, constitution, and bylaws of a registrant that is an organization. A waiver of the requirement to file an Exhibit C may be obtained for good cause shown upon written application to the Assistant Attorney General, National Security Division, U.S. Department of Justice, Washington, DC 20530. (See Rule 201(c) and (d)).

(c)  An Exhibit D shall be filed when applicable. This exhibit, for which no printed form is provided, sets forth an account of money collected or received as a result of a fundraising campaign and transmitted for a foreign principal. (See Rule 201 (e)).

## VII--EXECUTION

In accordance with 28 U.S.C. § 1746, the undersigned swear(s) or affirm(s) under penalty of perjury that he/she has (they have) read the information set forth in this registration statement and the attached exhibits and that he/she is (they are) familiar with the contents thereof and that such contents are in their entirety true and accurate to the best of his/her (their) knowledge and belief, except that the undersigned make(s) no representation as to truth or accuracy of the information contained in the attached Short Form Registration Statement(s), if any, insofar as such information is not within his/her (their) personal knowledge.

(Date of signature)  (Print or type name under each signature or provide electronic signature[11])

March 07, 2017  /s/ Michael T. Flynn  eSigned

[11]  This statement shall be signed by the individual agent, if the registrant is an individual, or by a majority of those partners, officers, directors or persons performing similar functions, if the registrant is an organization, except that the organization can, by power of attorney, authorize one or more individuals to execute this statement on its behalf.

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

*Flynn Intel Group, Inc., Registration Statement*

## Attachment

*Items 11-17*

Pursuant to the contract between Flynn Intel Group and Inovo BV, the parties anticipated that Flynn Intel Group would engage a public relations firm, Sphere Consulting, and engage a film production crew for the creation of a video. The public relations firm (S.G.R. LLC Government Relations and Lobbying) was engaged but the video was not completed or disseminated, to the best of our understanding. The budget for these activities was reflected in the engagement contract with S.G.R. LLC Government Relations and Lobbying; no separate budget related to informational materials. Because this is a retroactive registration prepared after Flynn Intel Group had already begun to close operations, this registration is based on documentation currently available to Flynn Intel Group. If additional relevant information is later identified, Flynn Intel Group will amend its registration.

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

**U.S. Department of Justice**

Washington, DC 20530

**Exhibit A to Registration Statement**

**Pursuant to the Foreign Agents Registration Act of 1938, as amended**

INSTRUCTIONS. Furnish this exhibit for EACH foreign principal listed in an initial statement and for EACH additional foreign principal acquired subsequently. The filing of this document requires the payment of a filing fee as set forth in Rule (d)(1), 28 C.F.R. § 5.5(d)(1). Compliance is accomplished by filing an electronic Exhibit A form at http://www.fara.gov.

Privacy Act Statement. The filing of this document is required by the Foreign Agents Registration Act of 1938, as amended, 22 U.S.C. § 611 *et seq.*, for the purposes of registration under the Act and public disclosure. Provision of the information requested is mandatory, and failure to provide this information is subject to the penalty and enforcement provisions established in Section 8 of the Act. Every registration statement, short form registration statement, supplemental statement, exhibit, amendment, copy of informational materials or other document or information filed with the Attorney General under this Act is a public record open to public examination, inspection and copying during the posted business hours of the Registration Unit in Washington, DC. Statements are also available online at the Registration Unit's webpage: http://www.fara.gov. One copy of every such document, other than informational materials, is automatically provided to the Secretary of State pursuant to Section 6(b) of the Act, and copies of any and all documents are routinely made available to other agencies, departments and Congress pursuant to Section 6(c) of the Act. The Attorney General also transmits a semi-annual report to Congress on the administration of the Act which lists the names of all agents registered under the Act and the foreign principals they represent. This report is available to the public in print and online at: http://www.fara.gov.

Public Reporting Burden. Public reporting burden for this collection of information is estimated to average .49 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to Chief, Registration Unit, Counterespionage Section, National Security Division, U.S. Department of Justice, Washington, DC 20530; and to the Office of Information and Regulatory Affairs, Office of Management and Budget, Washington, DC 20503.

| 1. Name and Address of Registrant | 2. Registration No. |
|---|---|
| Flynn Intel Group, Inc.<br>44 Canal Center Plaza, Alexandria, VA 22314 | 6406 |

| 3. Name of Foreign Principal | 4. Principal Address of Foreign Principal |
|---|---|
| Inovo BV | 47 Adriaanstraat, 3581 SC Utrecht, The Netherlands |

5. Indicate whether your foreign principal is one of the following:

☐ Government of a foreign country [1]

☐ Foreign political party

☒ Foreign or domestic organization: If either, check one of the following:

    ☐ Partnership          ☐ Committee

    ☒ Corporation        ☐ Voluntary group

    ☐ Association         ☐ Other *(specify)* _____

☐ Individual-State nationality _____

6. If the foreign principal is a foreign government, state:

    a) Branch or agency represented by the registrant

    b) Name and title of official with whom registrant deals

7. If the foreign principal is a foreign political party, state:

    a) Principal address

    b) Name and title of official with whom registrant deals

    c) Principal aim

1 "Government of a foreign country," as defined in Section 1(e) of the Act, includes any person or group of persons exercising sovereign de facto or de jure political jurisdiction over any country, other than the United States, or over any part of such country, and includes any subdivision of any such group and any group or agency to which such sovereign de facto or de jure authority or functions are directly or indirectly delegated. Such term shall include any faction or body of insurgents within a country assuming to exercise governmental authority whether such faction or body of insurgents has or has not been recognized by the United States.

FORM NSD-3
Revised 03/14

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

8. If the foreign principal is not a foreign government or a foreign political party:

    a) State the nature of the business or activity of this foreign principal.

       See attachment.

    b) Is this foreign principal:

| | |
|---|---|
| Supervised by a foreign government, foreign political party, or other foreign principal | Yes ☐ No ☒ |
| Owned by a foreign government, foreign political party, or other foreign principal | Yes ☐ No ☒ |
| Directed by a foreign government, foreign political party, or other foreign principal   **See attachment.** | Yes ☐ No ☒ |
| Controlled by a foreign government, foreign political party, or other foreign principal | Yes ☐ No ☒ |
| Financed by a foreign government, foreign political party, or other foreign principal | Yes ☐ No ☒ |
| Subsidized in part by a foreign government, foreign political party, or other foreign principal | Yes ☐ No ☒ |

9. Explain fully all items answered "Yes" in Item 8(b). *(If additional space is needed, a full insert page must be used.)*

10. If the foreign principal is an organization and is not owned or controlled by a foreign government, foreign political party or other foreign principal, state who owns and controls it.

    See attachment.

---

**EXECUTION**

In accordance with 28 U.S.C. § 1746, the undersigned swears or affirms under penalty of perjury that he/she has read the information set forth in this Exhibit A to the registration statement and that he/she is familiar with the contents thereof and that such contents are in their entirety true and accurate to the best of his/her knowledge and belief.

| Date of Exhibit A | Name and Title | Signature | |
|---|---|---|---|
| March 07, 2017 | Michael T. Flynn, Chairman and CEO | /s/ Michael T. Flynn | eSigned |

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

*Flynn Intel Group, Inc., Registration Statement, Exhibit A*

### Attachment

*Items 8-10*

Inovo BV ("Inovo") is a Dutch company incorporated in 2005 to provide business consultancy services. Flynn Intel Group understands the sole owner of Inovo BV to be Mr. Ekim Alptekin.

According to Arent Fox, LLP, counsel to Mr. Alptekin:

1. Inovo is a privately owned company that has not received, directly or indirectly, funds or financial support from any government during the course of its engagement of Flynn Intel Group Inc., including the Republic of Turkey.

2. At the time Inovo hired Flynn Intel Group, Inovo represented a private sector company in Israel that sought to export natural gas to Turkey, and it was for support of its consulting work for this client that Inovo engaged Flynn Intel Group, specifically to understand the tumultuous political climate at the time between the United States and Turkey so that Inovo could advise its client regarding its business opportunities and investment in Turkey.

3. Mr. Alptekin is a businessman who holds a number of positions in international business organizations, such as Honorary Counsul to the Republic of Albania, and Chairman of the Turkish-American Business Council. Mr. Alptekin and any organization in which he participates are not agents of the government of the Republic of Turkey.

Flynn Intel Group does not know whether or the extent to which the Republic of Turkey was involved with its retention by Inovo for the three-month project. Flynn Intel Group is aware that Mr. Alptekin consulted with officials of the Republic of Turkey regarding potential work by Flynn Intel Group, and Mr. Alptekin introduced officials of the Republic of Turkey to Flynn Intel Group officials at a meeting on September 19, 2016, in New York.

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

OMB No. 1124-0004; Expires April 30, 201

**U.S. Department of Justice**

Washington, DC 20530

## Exhibit B to Registration Statement
## Pursuant to the Foreign Agents Registration Act of 1938, as amended

INSTRUCTIONS. A registrant must furnish as an Exhibit B copies of each written agreement and the terms and conditions of each oral agreement with his foreign principal, including all modifications of such agreements, or, where no contract exists, a full statement of all the circumstances by reason of which the registrant is acting as an agent of a foreign principal. Compliance is accomplished by filing an electronic Exhibit B form at http://www.fara.gov .

Privacy Act Statement. The filing of this document is required for the Foreign Agents Registration Act of 1938, as amended, 22 U.S.C. § 611 *et seq.*, for the purposes of registration under the Act and public disclosure. Provision of the information requested is mandatory, and failure to provide the information is subject to the penalty and enforcement provisions established in Section 8 of the Act. Every registration statement, short form registration statement, supplemental statement, exhibit, amendment, copy of informational materials or other document or information filed with the Attorney General under this Act is a public record open to public examination, inspection and copying during the posted business hours of the Registration Unit in Washington, DC. Statements are also available online at the Registration Unit's webpage: http://www.fara.gov. One copy of every such document, other than informational materials, is automatically provided to the Secretary of State pursuant to Section 6(b) of the Act, and copies of any and all documents are routinely made available to other agencies, departments and Congress pursuant to Section 6(c) of the Act. The Attorney General also transmits a semi-annual report to Congress on the administration of the Act which lists the names of all agents registered under the Act and the foreign principals they represent. This report is available to the public in print and online at: http://www.fara.gov.

Public Reporting Burden. Public reporting burden for this collection of information is estimated to average .33 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to Chief, Registration Unit, Counterespionage Section, National Security Division, U.S. Department of Justice, Washington, DC 20530; and to the Office of Information and Regulatory Affairs, Office of Management and Budget, Washington, DC 20503.

| 1. Name of Registrant | 2. Registration No. |
|---|---|
| Flynn Intel Group, Inc. | 6406 |

3. Name of Foreign Principal

Inovo BV

### Check Appropriate Box:

4. ☒  The agreement between the registrant and the above-named foreign principal is a formal written contract. If this box is checked, attach a copy of the contract to this exhibit.

5. ☐  There is no formal written contract between the registrant and the foreign principal. The agreement with the above-named foreign principal has resulted from an exchange of correspondence. If this box is checked, attach a copy of all pertinent correspondence, including a copy of any initial proposal which has been adopted by reference in such correspondence.

6. ☐  The agreement or understanding between the registrant and the foreign principal is the result of neither a formal written contract nor an exchange of correspondence between the parties. If this box is checked, give a complete description below of the terms and conditions of the oral agreement or understanding, its duration, the fees and expenses, if any, to be received.

7. Describe fully the nature and method of performance of the above indicated agreement or understanding.

See attached contract.

FORM NSD-4
Revised 03/14

8. Describe fully the activities the registrant engages in or proposes to engage in on behalf of the above foreign principal.

Flynn Intel Group was tasked to perform investigative research for a specified scope of work using its laboratory team of senior defense, diplomacy, development, and intelligence professionals over a three-month period. Flynn Intel Group was to retain an experienced filming and production crew in order to develop a short film piece on the results of its investigation, and a public affairs firm to utilize for public affairs as needed. Flynn Intel Group held weekly calls with the client to report engagement progress.

9. Will the activities on behalf of the above foreign principal include political activities as defined in Section 1(o) of the Act and in the footnote below?   Yes ☒        No ☐

If yes, describe all such political activities indicating, among other things, the relations, interests or policies to be influenced together with the means to be employed to achieve this purpose.

See response to item 8.

## EXECUTION

In accordance with 28 U.S.C. § 1746, the undersigned swears or affirms under penalty of perjury that he/she has read the information set forth in this Exhibit B to the registration statement and that he/she is familiar with the contents thereof and that such contents are in their entirety true and accurate to the best of his/her knowledge and belief.

| Date of Exhibit B | Name and Title | Signature | |
|---|---|---|---|
| March 07, 2017 | Michael T. Flynn, Chairman and CEO | /s/ Michael T. Flynn | eSigned |

Footnote: "Political activity," as defined in Section 1(o) of the Act, means any activity which the person engaging in believes will, or that the person intends to, in any way influence any agency or official of the Government of the United States or any section of the public within the United States with reference to formulating, adopting, or changing the domestic or foreign policies of the United States or with reference to the political or public interests, policies, or relations of a government of a foreign country or a foreign political party.

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

## Independent Advisory Services Agreement

This agreement is executed by and between INOVO BV, an entity organized and operating under the laws of the Netherlands with its principal offices located at 47, Adriaanstraat, 3581 SC Utrecht, The Netherlands (VAT NL8146.45.756B02) hereinafter referred to as "client" and, Flynn Intel Group, Inc., an entity registered in the State of Delaware in the United States with its principal offices located at 44 Canal Center Plaza, Suite 400, Alexandria, Virginia, 22314 hereinafter referred to as the "advisor". Together, the client and the advisor shall be referred to as the "parties" in this agreement.

### Recitals

The client is desirous of engaging the advisor for a specified scope of work aimed at design and delivery of a series of results in discovery, analysis, packaging and presentation of findings in a credible, durable and easy to disseminate format over a period of three months from the execution of this agreement. The advisor is uniquely qualified to accept this task and has a clear understanding of the requirements of this independent study and investigation engagement.

The advisor is an entity led by senior defense, diplomacy, development and intelligence professionals. Further, the advisor has assembled a team of experts with specific background and expertise required by the scope of this engagement. A complete list of Professionals carefully selected for this assignment has been presented and approved by the client. The client expects and the advisor is prepared to deliver findings and results including but not limited to making criminal referrals if warranted and supported by the findings. The advisor's team dedicated to this engagement includes Sphere Consulting, a top tier public affairs and strategic reputation management firm based in Washington DC with global reach.

### Nature of the relationship between the client and the advisor

The advisor is not an employee or an agent of the client. The advisor is an independent contractor engaged for specific purpose of providing advice relating to assisting the client with accomplishing the objectives of this engagement. The client expects the advisor to act with complete objectivity in the design and execution of its investigative mission pertaining to this engagement. Further, the client is by no means dictating to the advisor a specific pre-determined outcome or a particular result. The advisor acts in good faith and on the basis of best effort to obtain the goals of the engagement. The parties to this agreement recognize that the advisor is not in a position to guarantee results in matters outside of the advisor's control.

### Scope of services

The advisor will activate its investigative laboratory comprised of its most senior principals including but not limited to former Director of United States Central Intelligence Agency, Former Director of the United States Defense Intelligence Agency, Former chairman of the Audit Committee of the Export Import Bank of the United States, former Director of Intelligence for the Joint Chiefs of Staff, Former Special Operations (Green Beret) Investigator and Intelligence officer, former Deputy Assistant Director of Federal Bureau of Investigations of the United States, Former senior legal counsel to the United States Senate Committee on Intelligence, two senior former FBI specialist investigators, Chairman of the Asymmetric Institute of the Department of Military Studies at Johns Hopkins University and the head of Flynn Intel Group's Special Operations Cyber Force. The advisor has also retained an experienced filming and

1

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

production crew with top quality experience with outlets such as Reuters, Aljazzera, CNN, France 24 and other major media outlets. The advisor shall hold weekly calls throughout the engagement over the period of ninety days to report engagement progress to the client. The advisor's Public Affairs unit will continue its specialized work throughout the engagement period. Lieutenant General Michael T. Flynn, Ret. U.S. Army, former Director of Defense Intelligence Agency shall lead this engagement.

### Term and termination

The initial term of this agreement is for ninety days effective as of August 15, 2016 and shall continue to November 15, 2016. The agreement may be extended for another year on terms mutually agreed upon and can be subsequently terminated with a 30-day advance written notice by either party. Notifications may be made through electronic mail addressed to each party's respective electronic email address. The term of this agreement may be extended by mutual consent of the parties in writing (email notification is sufficient to authorize extension).

### Compensation

Compensation for advisor's professional services is a firm, fixed price of $600,000 (Six hundred thousand dollars) comprised of three payments of $200,000 (Two hundred thousand dollars) following the schedule below:

* *First installment of $200,000 (two hundred thousand dollars) due at the time of the execution of this agreement.*

* *Second installment of $200,000 (two hundred thousand) due on October 1st, 2016.*

* *Third installment of $200,000 (two hundred thousand dollars (due on November 1st, 2016.*

### Engagement Expenses

The above compensation figures do not include any travel, lodging and per diem expenses. If travel is deemed necessary by the client, estimated expenses shall be presented to the client in advance for approval by the client and amendment to this agreement if necessary. The advisor shall not incur any additional expenses to the above total fixed costs without a prior written approval for specific expenses deemed necessary by the client (email notification is sufficient).

### Confidentiality

The terms and conditions of this agreement shall remain confidential. Parties agree to maintain each other's information in strict confidence throughout the course of this engagement and after its termination. The advisor agrees to return all such confidential material to the client at the end of the engagement. Further, parties agree that no public announcement of the scope or details of this engagement shall be made without written approval of both parties during the course of the engagement. Parties agree to strict compliance with this clause since both parties understand that disclosing the details of this engagement will adversely impact the quality of the investigations.

Signed by:

INOVO BV (The Netherlands)  
Capt. Ekim Alptekin  
Chairman and CEO

Flynn Intel Group, Inc.  
Lieutenant General Michael T. Flynn  
Chairman and CEO

2

MICHAEL T. FLYNN

The Client
Date: 08/08/2016

The Advisor
Date: 8/9/2016

3

## STATE *of* DELAWARE
## CERTIFICATE *of* INCORPORATION
## *A* STOCK CORPORATION

- **First:** The name of this Corporation is Flynn Intel Group, Inc.

- **Second:** Its registered office in the State of Delaware is to be located at _____
2711 Centerville Road, Suite 400        Street, in the City of Wilmington
County of New Castle        Zip Code 19808   . The registered agent in
charge thereof is The Company Corporation

  **Third:** The purpose of the corporation is to engage in any lawful act or activity for
  which corporations may be organized under the General Corporation Law of
  Delaware.
- **Fourth:** The amount of the total stock of this corporation is authorized to issue is
  1,000,000        shares (number of authorized shares) with a par value of
$0.01        per share.
- **Fifth:** The name and mailing address of the incorporator are as follows:
        Name  The Company Corporation
        Mailing Address 2711 Centerville Road, Suite 400
              Wilmington, DE        Zip Code 19808
- **I, The Undersigned,** for the purpose of forming a corporation under the laws of the
  State of Delaware, do make, file and record this Certificate, and do certify that the
  facts herein stated are true, and I have accordingly hereunto set my hand this
  12TH        day of June        , A.D. 20 15   .

                    The Company Corporation, Incorporator

                    BY: /s/Margaret Rosado
                              (Incorporator)

                    NAME: Margaret Rosado, Assistant Secretary
                              (type or print)

**State of Delaware**
**Secretary of State**
**Division of Corporations**
**Delivered 01:20 PM 06/17/2015**
**FILED 11:08 AM 06/17/2015**
**SRV 150932375 - 5768247 FILE**

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

# FLYNN INTEL GROUP, INC.

----

## B Y L A W S

----

## ARTICLE I

## OFFICES

Section 1. Offices. The registered office shall be in the State of Delaware. The Corporation may have offices at such other places both within and without the State of Delaware as the Board of Directors may from time to time determine or as may be necessary or convenient to the business of the Corporation.

## ARTICLE II

## MEETINGS OF STOCKHOLDERS

Section 1. <u>Annual Meeting</u>. The annual meeting of the stockholders of the Corporation shall be held on such date, at such time, and at such place (if any) within or without the State of Delaware as shall be designated from time to time by the Board of Directors and stated in the notice of the meeting.

Section 2. <u>Special Meetings</u>. Special meetings of the stockholders of the Corporation shall be held on such date, at such time, and at such place (if any) within or without the State of Delaware as shall be designated from time to time by the Board of Directors and stated in the notice of the meeting.

Section 3. <u>Notice of Meetings</u>. (a) The Corporation shall give notice of any annual or special meeting of stockholders. Notices of meetings of the stockholders shall state the place, if any, date, and hour of the meeting, and the means of remote communication, if any, by which stockholders and proxyholders may be deemed to be present in person and vote at such meeting. Written notice of any meeting shall be given not less than ten (10) nor more than sixty (60) days before the date of the meeting to each stockholder entitled to vote at such meeting as of the record date for determining the stockholders entitled to notice of the meeting. In the case of a special meeting, the notice shall state the purpose or purposes for which the meeting is called. No business other than that specified in the notice thereof shall be transacted at any special meeting. Unless otherwise provided by applicable law or the Certificate of Incorporation, notice shall be given to each stockholder entitled to vote at such meeting not fewer than ten (10) days or more than sixty (60) days before the date of the meeting.

(b) Notice to stockholders may be given by personal delivery, mail, or, with the consent of the stockholder entitled to receive notice, by facsimile, electronic mail, or other means of electronic transmission. If mailed, notice is given when deposited in the United States mail, postage prepaid, directed to the stockholder at such stockholder's address as it appears on the records of the corporation. An affidavit of the secretary or an assistant secretary

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

or of the transfer agent or other agent of the Corporation that the notice has been given by personal delivery, by mail, or by a form of electronic transmission shall, in the absence of fraud, be prima facie evidence of the facts stated therein.

(c)     Notice of any meeting of stockholders need not be given to any stockholder if waived by such stockholder either in a writing signed by such stockholder or by electronic transmission, whether such waiver is given before or after such meeting is held.

Section 4.  Quorum and Adjournment.  Except as otherwise required by law, by the Certificate of Incorporation of the Corporation, or by these Bylaws, the presence, in person or represented by proxy, of the holders of a majority of the aggregate voting power of the stock issued and outstanding, entitled to vote thereat, shall constitute a quorum for the transaction of business at all meetings of the stockholders.  If such majority shall not be present or represented at any meeting of the stockholders, the stockholders present, although less than a quorum, shall have the power to adjourn the meeting to another time and place.

Section 5.  Adjourned Meetings.  When a meeting is adjourned to another time and place, if any, unless otherwise provided by these Bylaws, notice need not be given of the adjourned meeting if the date, time, and place, if any, thereof and the means of remote communication, if any, by which stockholders and proxyholders may be deemed to be present in person and vote at such adjourned meeting, are announced at the meeting at which the adjournment is taken.  At the adjourned meeting, the stockholders may transact any business that might have been transacted at the original meeting.  A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of such meeting; provided, however, that the Board of Directors may fix a new record date for the adjourned meeting.  If an adjournment is for more than thirty (30) days or, if after an adjournment, a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each stockholder entitled to vote at the meeting.

Section 6.  Vote Required.  Except as otherwise provided by law or by the Certificate of Incorporation:

(a)     All elections of directors shall be by written ballot.  Directors shall be elected by a plurality in voting power of the shares present in person or represented by proxy at a meeting of the stockholders and entitled to vote in the election of directors; and

(b)     Whenever any corporate action other than the election of directors is to be taken, it shall be authorized by a majority in voting power of the shares present in person or represented by proxy at a meeting of stockholders and entitled to vote on the subject matter.

Section 7.  Manner of Voting; Proxies.  (a) At each meeting of stockholders, each stockholder having the right to vote shall be entitled to vote in person or by proxy.  Each stockholder shall be entitled to vote each share of stock having voting power and registered in such stockholder's name on the books of the Corporation on the record date fixed for determination of stockholders entitled to vote at such meeting.

- 2 -

(b) Each person entitled to vote at a meeting of stockholders or to express consent or dissent to corporate action in writing without a meeting may execute a writing authorizing another person or persons to act for such stockholder by proxy, but no such proxy shall be voted or acted upon after three (3) years from its date, unless the proxy provides for a longer period. A proxy shall be irrevocable if it states that it is irrevocable and if, and only so long as, it is coupled with an interest sufficient in law to support an irrevocable power. A proxy may be made irrevocable regardless of whether the interest with which it is coupled is an interest in the stock itself or an interest in the corporation generally. Proxies need not be filed with the Secretary of the Corporation until the meeting is called to order, but shall be filed before being voted.

Section 8. Remote Communication. (a) If authorized by the Board of Directors in its sole discretion, and subject to such guidelines and procedures as the Board of Directors may adopt, stockholders and proxyholders may, by means of remote communication:

(1) participate in a meeting of stockholders; and

(2) be deemed present in person and vote at a meeting of stockholders whether such meeting is to be held at a designated place or solely by means of remote communication, provided that (i) the Corporation shall implement reasonable measures to verify that each person deemed present and permitted to vote at the meeting by means of remote communication is a stockholder or proxyholder, (ii) the Corporation shall implement reasonable measures to provide such stockholders and proxyholders a reasonable opportunity to participate in the meeting and to vote on matters submitted to the stockholders, including an opportunity to read or hear the proceedings of the meeting substantially concurrently with such proceedings, and (iii) if any stockholder or proxyholder votes or takes other action at the meeting by means of remote communication, a record of such vote or other action shall be maintained by the Corporation.

(b) In lieu of holding a meeting of stockholders at a designated place, the Board of Directors may, in its sole discretion, determine that any meeting of stockholders may be held solely by means of remote communication.

Section 9. Record Date. (a) In order that the Corporation may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, the Board of Directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board of Directors, and which record date shall not be more than sixty (60) or fewer than ten (10) days before the date of such meeting. If no record date is fixed by the Board of Directors, the record date for determining stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof shall be at the close of business on the day next preceding the day on which notice is given, or, if notice is waived, at the close of business on the day next preceding the day on which the meeting is held.

(b) In order to determine the stockholders entitled to consent to corporate action in writing without a meeting, the Board of Directors may fix a record date. Such record

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

date shall not precede the date upon which the resolution fixing the record date is adopted by the Board of Directors, and shall not be more than ten (10) days after the date upon which the resolution fixing the record date is adopted by the Board of Directions. If no record date has been fixed by the Board of Directors, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting, when no prior action of the Board of Directors is required by applicable law, the Certificate of Incorporation, or these Bylaws, shall be the first date on which a signed written consent setting forth the action taken or proposed to be taken is delivered to the Corporation in the manner set forth in subsections (a) and (b) of this Section 9. If no record date has been fixed by the Board of Directors and prior action of the Board of Directors is required by applicable law, the Certificate of Incorporation, or these Bylaws, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting shall be the close of business on the day on which the Board of Directors adopts the resolution taking such prior action.

(c)    In order that the Corporation may determine the stockholders entitled to receive payment of any dividend or other distribution, or allotment of any rights, or the stockholders entitled to exercise any rights in respect of any change, conversion, or exchange of capital stock, or for the purpose of any other lawful action, except as may otherwise be provided in these Bylaws, the Board of Directors may fix a record date. Such record date shall not precede the date upon which the resolution fixing such record date is adopted, and shall not be more than sixty (60) days prior to such action. If no record date is fixed, the record date for determining stockholders for any such purpose shall be the close of business on the day on which the Board of Directors adopts the resolution relating thereto.

Section 10. <u>Stockholder Action Without a Meeting</u>. (a)    Except as otherwise provided by law or by the Certificate of Incorporation, any action required to be taken at any meeting of stockholders of the Corporation, or any action that may be taken at any annual or special meeting of such stockholders, may be taken without a meeting, without prior notice, and without a vote, if a consent or consents in writing setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted and shall be delivered to the Corporation by delivery to its registered office in the State of Delaware, its principal place of business, or an officer or agent of the Corporation having custody of the book or books in which meetings of stockholders are recorded; <u>provided, however</u>, that delivery made to the Corporation's registered office in the State of Delaware shall be by hand or by certified mail, return receipt requested. Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders who have not consented in writing and who, if the action had been taken at a meeting, would have been entitled to notice of the meeting if the record date for such meeting had been the date that written consents signed by a sufficient number of the holders to take the action were delivered to the Corporation.

(b)    A telegram, cablegram, or other electronic transmission consenting to an action to be taken and transmitted by a stockholder or proxyholder, or by a person or persons authorized to act for a stockholder or proxyholder, shall be deemed to be written, signed, and dated for the purposes of these Bylaws, provided that any such telegram, cablegram, or other

- 4 -

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

electronic transmission sets forth or is delivered with the information required by, and is otherwise delivered in accordance with, the General Corporation Law of the State of Delaware. Any consent by means of telegram, cablegram, or other electronic transmission shall be deemed to have been signed on the date on which such telegram, cablegram, or electronic transmission was transmitted.

Section 11.  Meeting Procedure.  The Chairman of the Board or President or such other person as may be designated by the Board of Directors shall preside at meetings of the stockholders.  At each meeting of stockholders, the presiding officer of the meeting shall fix and announce the date and time of the opening and the closing of the polls for each matter upon which the stockholders will vote at the meeting and shall determine the order of business and all other matters of procedure.  Except to the extent inconsistent with any such rules and regulations adopted by the Board of Directors, the presiding officer of the meeting may establish rules, which need not be in writing, to maintain order and safety and for the conduct of the meeting.

ARTICLE III

DIRECTORS

Section 1.  Powers.  The business and affairs of the Corporation shall be managed by or under the direction of a Board of Directors, and the Board of Directors shall exercise all of the powers of the Corporation except such as are by applicable law, by the Certificate of Incorporation of this Corporation, or by these Bylaws conferred upon or reserved to the stockholders of any class or classes or series thereof.

Section 2.  Number.  The number of directors that shall constitute the whole Board of Directors shall be 3, each of whom must be a natural person, or such other number of directors as determined from time to time by resolution adopted by the Board of Directors.

Section 3.  Resignations and Removal.  (a) Each director shall hold office until such director's successor is elected and qualified or until such director's earlier resignation or removal.  Any director may resign at any time by giving written notice in writing or by electronic transmission to the Board of Directors or the Secretary; provided, however, that if such notice is given by electronic transmission, such electronic transmission must either set forth or be submitted with information from which it can be determined that the electronic transmission was authorized by the director.  Such resignation shall take effect at the date of receipt of such notice or at any later time specified therein.  Acceptance of such resignation shall not be necessary to make it effective.

(b)  Except as otherwise may be provided in the Certificate of Incorporation, any director or the entire Board of Directors may be removed with or without cause, by the holders of capital stock having a majority in voting power of the shares entitled to vote in the election of directors.

Section 4.  Annual Meetings.  The Board of Directors shall meet each year as soon as practicable following the annual meeting of stockholders, at the place where such

- 5 -

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

meeting of stockholders has been held, or at such other place as shall be fixed by the person presiding over the meeting of the stockholders, for the purpose of election of officers and consideration of such other business as the Board of Directors considers relevant to the management of the Corporation.

Section 5. Regular Meetings. Regular meetings of the Board of Directors shall be held on such dates and at such times and places, within or without the State of Delaware, as shall from time to time be determined by the Board of Directors, such determination to constitute the only notice of such regular meetings to which any director shall be entitled. In the absence of any such determination, such meetings shall be held, upon notice to each director in accordance with Section 7 of this Article III, at such times and places, within or without the State of Delaware, as shall be designated by the Chairman of the Board.

Section 6. Special Meetings. Special meetings of the Board of Directors shall be held at the call of the Chairman of the Board at such times and places, within or without the State of Delaware, as he or she shall designate, upon notice to each director in accordance with Section 7 of this Article III. Special meetings shall be called by the Secretary on like notice at the written request of a majority of the directors then in office.

Section 7. Notice. (a) Notice of any regular (if required) or special meeting of the Board of Directors may be given by personal delivery, mail, telegram, express courier service (including, without limitation, Federal Express), facsimile transmission (directed to the facsimile transmission number at which the director has consented to receive notice), electronic mail (directed to the electronic mail address at which the director has consented to receive notice), or other form of electronic transmission pursuant to which the director has consented to receive notice. If notice is given by personal delivery, by facsimile transmission, by telegram, by electronic mail, or by other form of electronic transmission pursuant to which the director has consented to receive notice, then such notice shall be given on not less than twenty-four hours' notice to each director. If written notice is delivered by mail or express courier service, then it shall be given on not less than three (3) calendar days' notice to each director.

(b)     For the purpose of this section, notice given by means of electronic transmission must be consented to by the stockholder entitled to receive such notice. Any such consent shall be revocable by the stockholder by written notice to the Corporation. Any such consent shall be deemed revoked if (1) the Corporation is unable to deliver by electronic transmission two consecutive notices given by the Corporation in accordance with such consent and (2) such inability becomes known to the secretary or an assistant secretary of the Corporation or to the transfer agent, or other person responsible for the giving of notice.

Section 8. Waiver of Notice. Notice of any meeting of the Board of Directors, or any committee thereof, need not be given to any member if waived by him or her in writing or by electronic transmission, whether before or after such meeting is held, or if he or she shall sign the minutes or attend the meeting, except that if such director attends a meeting for the express purpose of objecting at the beginning of the meeting to the transaction of any business because the meeting is not lawfully called or convened, then such director shall not be deemed to have waived notice of such meeting. If waiver of notice is given by electronic transmission, such

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

electronic transmission must either set forth or be submitted with information from which it can be determined that the electronic transmission was authorized by the director.

Section 9. <u>Quorum and Powers of a Majority</u>. At all meetings of the Board of Directors and of each committee thereof, a majority of the total number of directors constituting the whole board or such committee shall be necessary and sufficient to constitute a quorum for the transaction of business. The act of a majority of the members present at any meeting of the Board of Directors or a committee thereof at which a quorum is present shall be the act of the Board of Directors or such committee, unless by express provision of law, of the Certificate of Incorporation, or of these Bylaws, a different vote is required, in which case such express provision shall govern and control. In the absence of a quorum, a majority of the members present at any meeting may, without notice other than announcement at the meeting, adjourn such meeting from time to time until a quorum is present.

Section 10. <u>Manner of Acting</u>. (a) Members of the Board of Directors, or any committee thereof, may participate in any meeting of the Board of Directors or such committee by means of conference telephone or other communications equipment by means of which all persons participating therein can hear each other, and participation in a meeting by such means shall constitute presence in person at such meeting.

(b)     Any action required or permitted to be taken at any meeting of the Board of Directors or any committee thereof may be taken without a meeting if all members of the Board of Directors or such committee, as the case may be, consent thereto in writing or by electronic transmission, and the writing or writings or electronic transmission or transmissions are filed with the minutes of proceedings of the Board of Directors or such committee; <u>provided however</u>, that such electronic transmission or transmissions must either set forth or be submitted with information from which it can be determined that the electronic transmission or transmissions were authorized by the director. Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

Section 11. <u>Committees</u>. The Board of Directors may designate one (1) or more committees, each committee to consist of one (1) or more directors, which to the extent permitted by applicable law and provided in said resolution or resolutions shall have and may exercise the powers and authority of the Board of Directors in the management of the business and affairs of the Corporation (including the power and authority to designate other committees of the Board of Directors). The Board of Directors may designate one (1) or more directors as alternate members of any committee to replace any absent or disqualified member of the committee. In the absence or disqualification of a member of a committee, the member or members present at any meeting of such committee and not disqualified from voting, whether or not such member or members constitute a quorum, may unanimously appoint another member of the Board of Directors to act at the meeting in place of such absent or disqualified director.

Section 12. <u>Committee Procedure</u>. Except as otherwise determined by the Board of Directors or provided by these Bylaws, each committee shall adopt its own rules governing the time, place, and method of holding its meetings and the conduct of its proceedings. Unless

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

otherwise provided by these Bylaws or any such rules or resolutions, notice of the time and place of each meeting of a committee shall be given to each member of such committee as provided in Section 7 of this Article III with respect to notices of meetings of the Board of Directors. Each committee shall keep regular minutes of its proceedings and report the same to the Board of Directors when required.

Section 13.   Vacancies and Newly-Created Directorships.   Unless otherwise provided in the Certificate of Incorporation or in these Bylaws, vacancies and newly-created directorships resulting from any increase in the authorized number of directors may be filled by a majority of the directors then in office, although less than a quorum, or by a sole remaining director. Unless otherwise provided in the Certificate of Incorporation or these Bylaws, when one or more directors shall resign from the Board, effective at a future date, a majority of directors then in office, including those who have resigned, shall have the power to fill such vacancy or vacancies, the vote thereon to take effect when such resignation or resignations shall become effective.

Section 14.   Compensation.   The Board of Directors, by a resolution or resolutions, may fix, and from time to time change, the compensation of Directors. Each director shall be entitled to reimbursement from the Corporation for his or her reasonable expenses incurred with respect to duties as a member of the Board of Directors or any committee thereof.

Section 15.   Initial Director(s).   Until such time as the first annual meeting of stockholders is held and a new Board of Directors is appointed, the initial Board of Directors of the corporation shall be:

Bijan Rafiekian
Michael T. Flynn
Philip A. Oakley

# ARTICLE IV

## OFFICERS

Section 1.   Number.   The officers of the Corporation shall include a President, a Secretary, and a Treasurer. The Board of Directors also shall elect a Chairman of the Board and may elect such other officers as the Board of Directors shall from time to time deem appropriate or necessary, which other officers shall have such powers and duties as determined by the Board of Directors.

Section 2.   Election of Officers, Term, and Qualifications.   The officers of the Corporation shall be elected from time to time by the Board of Directors and shall hold office at the pleasure of the Board of Directors. Except for the Chairman of the Board, none of the officers of the Corporation needs to be a director of the Corporation. Any two (2) or more

- 8 -

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

offices may be held by the same person to the extent permitted by the General Corporation Law of the State of Delaware.

Section 3. <u>Vacancies.</u> A vacancy in officers shall be filled by the Board of Directors, or to the extent delegated to the Chairman of the Board, by the Chairman of the Board.

Section 4. <u>Removal</u>. Any officer elected by the Board of Directors may be removed, either with or without cause, by the Board of Directors at any meeting thereof, or to the extent delegated to the Chairman of the Board, by the Chairman of the Board.

Section 5. <u>Resignation</u>. Any officer may resign from the Corporation by providing notice in writing or by electronic transmission to the Board of Directors or to the Chairman of the Board; provided, however, that if such notice is given by electronic transmission, such electronic transmission must either set forth or be submitted with information from which it can be determined that the electronic transmission was authorized by the officer. Such resignation shall take effect at the date of the receipt of such notice or at any later time specified therein and, unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

Section 6. <u>The Chairman of the Board</u>. The Chairman of the Board shall have the powers and duties customarily and usually associated with the office of the Chairman of the Board. The Chairman of the Board shall preside at meetings of the stockholders and of the Board of Directors.

Section 7. <u>The President</u>. The President shall be the chief executive officer of the Corporation. The President shall have, subject to the supervision, direction, and control of the Board of Directors, the general powers and duties of supervision, direction, and management of the affairs and business of the Corporation customarily and usually associated with the position of chief executive officer, including, without limitation, all powers necessary to direct and control the organizational and reporting relationships within the Corporation. If at any time the office of the Chairman of the Board shall not be filled, or in the event of the temporary absence or disability of the Chairman of the Board, the President shall perform the duties and exercise the powers of the Chairman of the Board.

Section 8. <u>The Secretary</u>. The Secretary shall attend meetings of the Board of Directors and meetings of the stockholders and record all votes and minutes of all such proceedings in a book or books kept for such purpose. The Secretary shall have all such further powers and duties as are customarily and usually associated with the position of Secretary or as may from time to time be assigned to him or her by the Board of Directors, the Chairman of the Board, or the President.

Section 9. <u>The Treasurer</u>. The Treasurer shall have custody of the Corporation's funds and securities, shall be responsible for maintaining the Corporation's accounting records and statements, shall keep full and accurate accounts of receipts and disbursements in books belonging to the Corporation, and shall deposit or cause to be deposited moneys or other valuable effects in the name and to the credit of the Corporation in such depositories as may be

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

designated by the Board of Directors. The Treasurer also shall maintain adequate records of all assets, liabilities, and transactions of the Corporation and shall assure that adequate audits thereof are currently and regularly made. The Treasurer shall have all such further powers and duties as are customarily and usually associated with the position of Treasurer or as may from time to time be assigned to him or her by the Board of Directors, the Chairman of the Board, or the President.

Section 10.  Initial Officer(s).  Until such time as the first annual meeting of the Board of Directors is held and new officers are appointed, the initial officers of the corporation shall be:

**Chairman of the Board**
Bijan Rafiekian

**President**
Bijan Rafiekian

**Secretary**
Bijan Rafiekian

**Chief Financial Officer**
Bijan Rafiekian

ARTICLE V

STOCK

Section 1.  Certificates.  The shares of capital stock of the Corporation shall be represented by certificates, unless the Certificate of Incorporation or the Board of Directors, by

- 10 -

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

resolution, otherwise provides that some or all of the shares of any class or series of the Corporation's capital stock shall be uncertificated. Every holder of capital stock of the Corporation represented by certificates shall be entitled to a certificate representing such shares. Certificates for shares of stock of the Corporation shall be issued under the seal of the Corporation, or a facsimile thereof, and shall be numbered and shall be entered in the books of the Corporation as they are issued. Each certificate shall bear a serial number, shall exhibit the holder's name and the number of shares evidenced thereby, and shall be signed by or in the name of the Corporation by the Chairman of the Board or a Vice Chairman, if any, or the President or any Vice President, and by the Secretary or an Assistant Secretary or the Treasurer or an Assistant Treasurer representing the number of shares registered in certificate form.

Section 2. Transfers. Transfers of stock of the Corporation shall be made on the books of the Corporation only upon surrender to the Corporation of a certificate (if any) for the shares duly endorsed or accompanied by proper evidence of succession, assignment, or authority to transfer.

Section 3. Lost, Stolen, or Destroyed Certificates. Any person claiming a certificate of stock to be lost, stolen, or destroyed shall make an affidavit or an affirmation of that fact, and shall give the Corporation a bond of indemnity in satisfactory form and with one or more satisfactory sureties sufficient to indemnify it against any claim that may be made against it on account of the alleged loss, theft or destruction of any such certificate or the issuance of such new certificate or uncertificated shares, whereupon a new certificate (if requested) may be issued of the same tenor and for the same number of shares as the one alleged to be lost, stolen, or destroyed.

Section 4. Registered Stockholders. The names and addresses of the holders of record of the shares of each class and series of the Corporation's capital stock, together with the number of shares of each class and series held by each record holder and the date of issue of such shares, shall be entered on the books of the Corporation. The Corporation shall be entitled to recognize the exclusive right of a person registered on its books as the owner of shares of capital stock of the Corporation as the person entitled to exercise the rights of a stockholder, including, without limitation, the right to vote in person or by proxy at any meeting of the stockholders of the Corporation. The Corporation shall not be bound to recognize any equitable or other claim to or interest in any such shares on the part of any other person, whether or not it shall have express or other notice thereof, except as otherwise expressly provided by the General Corporation Law of the State of Delaware.

Section 5. Fractional Shares. The Corporation may, but shall not be required to, issue fractional shares of its capital stock if necessary or appropriate to effect authorized transactions. If the Corporation does not issue fractions of a share, it shall (1) arrange for the disposition of fractional interests by those entitled thereto, (2) pay in cash the fair value of fractions of a share as of the time when those entitled to receive such fractions are determined or (3) issue scrip or warrants in registered form (either represented by a certificate or uncertificated) or in bearer form (represented by a certificate) which shall entitle the holder to receive a full share upon the surrender of such scrip or warrants aggregating a full share. A certificate for a fractional share or an uncertificated fractional share shall, but scrip or warrants shall not unless

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

otherwise provided therein, entitle the holder to exercise voting rights, to receive dividends thereon and to participate in any of the assets of the Corporation in the event of liquidation.

## ARTICLE VI

## INDEMNIFICATION

Section 1. Indemnification. (a) Subject to Section 3 of this Article VI, the Corporation shall indemnify, to the full extent that it shall have power under applicable law to do so and in a manner permitted by such law, any person who is made or threatened to be made a party to any threatened, pending, or completed action, suit, or proceeding, whether civil, criminal, administrative, or investigative (hereinafter, a "Proceeding"), by reason of the fact that such person is or was a director or officer of the Corporation, or while serving as a director or officer of the Corporation, is or was serving at the request of Corporation as a director, officer, employee, or agent of another corporation, partnership, joint venture, trust, or other enterprise, including service with respect to an employee benefit plan (collectively, "Another Enterprise").

(b) The Corporation may indemnify, to the full extent that it shall have power under applicable law to do so and in a manner permitted by such law, any person who is made or threatened to be made a party to any Proceeding, by reason of the fact that such person is or was an employee or agent of the Corporation, or while not serving as a director or officer of the Corporation, is or was serving at the request of the Corporation as a director, officer, employee, or agent of Another Enterprise.

Section 2. Advancement of Expenses. (a) Subject to Section 3 of this Article VI, with respect to any person who is made or threatened to be made a party to any threatened, pending, or completed Proceeding, by reason of the fact that such person is or was a director or officer of the Corporation or while serving as a director or officer of the Corporation, is or was serving at the request of Corporation as a director, officer, employee, or agent of Another Enterprise, the Corporation shall pay to the fullest extent not prohibited by applicable law the expenses (including attorneys' fees) incurred by such person in defending any such Proceeding in advance of its final disposition (hereinafter an "advancement of expenses"); provided, however, that any advancement of expenses shall be made only upon receipt of an undertaking (hereinafter an "undertaking") by such person to repay all amounts advanced if it shall ultimately be determined by final judicial decision from which there is no further right to appeal that such person is not entitled to be indemnified for such expenses under this Article VI or otherwise.

(b) With respect to any person who is made or threatened to be made a party to any Proceeding, by reason of the fact that such person is or was an employee or agent of the Corporation, or while not serving as a director or officer of the Corporation, is or was serving at the request of the Corporation as a director, officer, employee, or agent of Another Enterprise, the Corporation may, in its discretion and upon such terms and conditions, if any, as the Corporation deems appropriate, pay the expenses (including attorneys' fees) incurred by such person in defending any such Proceeding in advance of its final disposition.

Section 3. Actions Initiated Against The Corporation. Anything in Section 1(a) or Section 2(a) of this Article VI to the contrary notwithstanding, except as provided in Section

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

5(b) of this Article VI, with respect to a Proceeding initiated against the Corporation by any person who is or was serving as a director or officer of the Corporation (or by a person who, while serving as a director or officer of the Corporation, is or was serving at the request of Corporation as a director, officer, employee, or agent of Another Enterprise), whether initiated in such capacity or in any other capacity, the Corporation shall not be required to indemnify or to advance expenses (including attorneys' fees) to such person in connection with prosecuting such Proceeding (or part thereof) or in defending any counterclaim, cross-claim, affirmative defense, or like claim of the Corporation in such Proceeding (or part thereof) unless such Proceeding was authorized by the Board of Directors of the Corporation.

Section 4.  Contract Rights.  The rights to indemnification and advancement of expenses conferred upon any current or former director or officer of the Corporation pursuant to this Article VI (whether by reason of the fact that such person is or was a director or officer of the Corporation, or while serving as a director or officer of the Corporation, is or was serving at the request of the Corporation as a director, officer, employee, or agent of Another Enterprise) shall be contract rights, shall vest when such person becomes a director or officer of the Corporation, and shall continue as vested contract rights even if such person ceases to be a director or officer of the Corporation. Any amendment, repeal, or modification of, or adoption of any provision inconsistent with, this Article VI (or any provision hereof) shall not adversely affect any right to indemnification or advancement of expenses granted to any person pursuant hereto with respect to any act or omission of such person occurring prior to the time of such amendment, repeal, modification, or adoption (regardless of whether the Proceeding relating to such acts or omissions, or any proceeding relating to such person's rights to indemnification or to advancement of expenses, is commenced before or after the time of such amendment, repeal, modification, or adoption), and any such amendment, repeal, modification, or adoption that would adversely affect such person's rights to indemnification or advancement of expenses hereunder shall be ineffective as to such person, except with respect to any Proceeding that relates to or arises from (and only to the extent such Proceeding relates to or arises from) any act or omission of such person occurring after the effective time of such amendment, repeal, modification, or adoption.

Section 5.  Claims.  (a) If (i) a claim under Section 1(a) of this Article VI with respect to any right to indemnification is not paid in full by the Corporation (following the final disposition of the Proceeding) within sixty (60) days after a written demand has been received by the Corporation or (ii) a claim under Section 2(a) of this Article VI with respect to any right to the advancement of expenses is not paid in full by the Corporation within twenty (20) days after a written demand has been received by the Corporation, then the person seeking to enforce a right to indemnification or to an advancement of expenses, as the case may be, may at any time thereafter bring suit against the Corporation to recover the unpaid amount of the claim.

(b)  If successful in whole or in part in any suit brought pursuant to Section 5(a) of this Article VI, or in a suit brought by the Corporation to recover an advancement of expenses (whether pursuant to the terms of an undertaking or otherwise), the person seeking to enforce a right to indemnification or an advancement of expenses hereunder or the person from whom the Corporation sought to recover an advancement of expenses, as the case may be, shall be entitled to be paid by the Corporation the reasonable expenses (including attorneys' fees) of prosecuting or defending such suit.

- 13 -

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

(c)     In any suit brought by a person seeking to enforce a right to indemnification hereunder (but not a suit brought by a person seeking to enforce a right to an advancement of expenses hereunder), it shall be a defense that the person seeking to enforce a right to indemnification has not met any applicable standard for indemnification under applicable law.  With respect to any suit brought by a person seeking to enforce a right to indemnification or right to advancement of expenses hereunder or any suit brought by the Corporation to recover an advancement of expenses (whether pursuant to the terms of an undertaking or otherwise), neither (i) the failure of the Corporation to have made a determination prior to commencement of such suit that indemnification of such person is proper in the circumstances because such person has met the applicable standards of conduct under applicable law, nor (ii) an actual determination by the Corporation that such person has not met such applicable standards of conduct, shall create a presumption that such person has not met the applicable standards of conduct or, in a case brought by such person seeking to enforce a right to indemnification, be a defense to such suit.

(d)     In any suit brought by a person seeking to enforce a right to indemnification or to an advancement of expenses hereunder, or by the Corporation to recover an advancement of expenses (whether pursuant to the terms of an undertaking or otherwise), the burden shall be on the Corporation to prove that the person seeking to enforce a right to indemnification or to an advancement of expenses or the person from whom the Corporation seeks to recover an advancement of expenses is not entitled to be indemnified, or to such an advancement of expenses, under this Article VI or otherwise.

Section 6.  Determination of Entitlement to Indemnification.  Any indemnification required or permitted under this Article VI (unless ordered by a court) shall be made by the Corporation only as authorized in the specific case upon a determination that indemnification of the present or former director, officer, employee or agent is proper in the circumstances because he or she has met all applicable standards of conduct set forth in this Article VI and Section 145 of the General Corporation Law of the State of Delaware.  Such determination shall be made, with respect to a person who is a director or officer of the Corporation at the time of such determination, (i) by a majority vote of the directors who are not parties to such action, suit or proceeding, even though less than a quorum; (ii) by a committee of such directors designated by majority vote of such directors, even though less than a quorum; (iii) if there are no such directors, or if such directors so direct, by independent legal counsel in a written opinion; or (iv) by the stockholders.  Such determination shall be made, with respect to any person who is not a director or officer of the Corporation at the time of such determination, in the manner determined by the Board of Directors (including in such manner as may be set forth in any general or specific action of the Board of Directors applicable to indemnification claims by such person) or in the manner set forth in any agreement to which such person and the Corporation are parties.

Section 7.  Non-Exclusive Rights.  The indemnification and advancement of expenses provided in this Article VI shall not be deemed exclusive of any other rights to which any person may be entitled under any bylaw, agreement, vote of stockholders or disinterested directors, or otherwise, both as to action in such person's official capacity and as to action in another capacity while holding such office, and shall continue as to a person who has ceased to be such director, officer, employee, or agent and shall inure to the benefit of the heirs, executors, and administrators of such person.

- 14 -

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

Section 8.   Insurance.   The Corporation may purchase and maintain insurance on behalf of any person who is or was a director, officer, employee, or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee, or agent of Another Enterprise against any liability asserted against such person and incurred by such person in any such capacity, or arising out of such person's status as such, whether or not the Corporation would have the power to indemnify such person against such liability under the provisions of this Article VI or otherwise.

Section 9.   Severability.   If any provision or provisions of this Article VI shall be held to be invalid, illegal, or unenforceable for any reason whatsoever: (1) the validity, legality, and enforceability of the remaining provisions of this Article VI (including, without limitation, each portion of any paragraph or clause containing any such provision held to be invalid, illegal, or unenforceable, that is not itself held to be invalid, illegal, or unenforceable) shall not in any way be affected or impaired thereby; and (2) to the fullest extent possible, the provisions of this Article VI (including, without limitation, each such portion of any paragraph or clause containing any such provision held to be invalid, illegal, or unenforceable) shall be construed so as to give effect to the intent manifested by the provision held invalid, illegal, or unenforceable.

Section 10.   Miscellaneous.   For purposes of this Article VI:  (a) references to serving at the request of the Corporation as a director or officer of Another Enterprise shall include any service as a director or officer of the Corporation that imposes duties on, or involves services by, such director or officer with respect to an employee benefit plan; (b) references to serving at the request of the Corporation as a employee or agent of Another Enterprise shall include any service as an employee or agent of the Corporation that imposes duties on, or involves services by, such employee or agent with respect to an employee benefit plan; (c) a person who acted in good faith and in a manner such person reasonably believed to be in the interest of the participants and beneficiaries of an employee benefit plan shall be deemed to have acted in a manner not opposed to the best interests of the Corporation; and (d) references to a director of Another Enterprise shall include, in the case of any entity that is not managed by a board of directors, such other position, such as manager or trustee or member of the governing body of such entity, that entails responsibility for the management and direction of such entity's affairs, including, without limitation, general partner of any partnership (general or limited) and manager or managing member of any limited liability company.


## ARTICLE VII

## MISCELLANEOUS

Section 1.   Books and Records.   (a)  Any books or records maintained by the Corporation in the regular course of its business, including its stock ledger, books of account, and minute books, may be kept on, or by means of, or be in the form of, any information storage device or method; provided, however, that the books and records so kept can be converted into clearly legible paper form within a reasonable time.  The Corporation shall so convert any books or records so kept upon the request of any person entitled to inspect such records pursuant to the

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

Certificate of Incorporation, these Bylaws, or the provisions of the General Corporation Law of the State of Delaware.

(b)     It shall be the duty of the Secretary or other officer of the Corporation who shall have charge of the stock ledger to prepare and make, at least ten (10) days before every meeting of the stockholders, a complete list of the stockholders entitled to vote thereat, arranged in alphabetical order, and showing the address of each stockholder and the number of shares registered in the stockholder's name. Nothing contained in this subsection (b) shall require the Corporation to include electronic mail addresses or other electronic contact information on such list. Such list shall be open to the examination of any stockholder, for any purpose germane to the meeting for a period of at least ten (10) days prior to the meeting: (i) on a reasonably accessible electronic network, provided that the information required to gain access to such list is provided with the notice of the meeting, or (ii) during ordinary business hours, at the principal place of business of the Corporation. In the event that the Corporation determines to make the list available on an electronic network, the Corporation may take reasonable steps to ensure that such information is available only to stockholders of the Corporation. If the meeting is to be held at a place, then the list shall be produced and kept at the time and place of the meeting during the whole time thereof, and may be inspected by any stockholder who is present. If the meeting is to be held solely by means of remote communication, then the list shall also be open to the examination of any stockholder during the whole time of the meeting on a reasonably accessible network, and the information required to access such list shall be provided with the notice of the meeting. The stock ledger shall be the only evidence of the identity of the stockholders entitled to examine such list.

Section 2.  Voting Shares in Other Business Entities.  The President or any other officer of the Corporation designated by the Board of Directors may vote any and all shares of stock or other equity interest held by the Corporation in any other corporation or other business entity, and may exercise on behalf of the Corporation any and all rights and powers incident to the ownership of such stock or other equity interest.

Section 3.  Fiscal Year.  The fiscal year of the Corporation shall be such fiscal year as the Board of Directors from time to time by resolution shall determine.

Section 4.  Electronic Transmission.  For purposes of these Bylaws, "electronic transmission" means any form of communication, not directly involving the physical transmission of paper, that creates a record that may be retained, retrieved, and reviewed by a recipient thereof, and that may be directly reproduced in paper form by such a recipient through an automated process.

Section 5.  Amendment.  These Bylaws may be altered, amended, or repealed at any annual or regular meeting of the Board of Directors or at any special meeting of the Board of Directors if notice of the proposed alteration, amendment, or repeal be contained in written notice of such special meeting, or at any meeting of the stockholders of the Corporation.

ARTICLE IX

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

## ADOPTION OF THE BY-LAWS

The Secretary of the Corporation hereby certifies that this is a true and correct copy of the bylaws approved and adopted by the Corporation.

_____

Bijan Rafiekian, Secretary

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

OMB No. 24-0005; Expires April 30, 2017

| U.S. Department of Justice | **Short Form Registration Statement** |
| Washington, DC 20530 | **Pursuant to the Foreign Agents Registration Act of 1938, as amended** |

INSTRUCTIONS. Each partner, officer, director, associate, employee, and agent of a registrant is required to file a short form registration statement unless he engages in no activities in furtherance of the interests of the registrant's foreign principal or unless the services he renders to the registrant are in a secretarial, clerical, or in a related or similar capacity. Compliance is accomplished by filing an electronic short form registration statement at http://www.fara.gov.

Privacy Act Statement. The filing of this document is required for the Foreign Agents Registration Act of 1938, as amended, 22 U.S.C. § 611 et seq., for the purposes of registration under the Act and public disclosure. Provision of the information requested is mandatory, and failure to provide the information is subject to the penalty and enforcement provisions established in Section 8 of the Act. Every registration statement, short form registration statement, supplemental statement, exhibit, amendment, copy of informational materials or other document or information filed with the Attorney General under this Act is a public record open to public examination, inspection and copying during the posted business hours of the Registration Unit in Washington, DC. Statements are also available online at the Registration Unit's webpage: http://www.fara.gov. One copy of every such document, other than informational materials, is automatically provided to the Secretary of State pursuant to Section 6(b) of the Act, and copies of any and all documents are routinely made available to other agencies, departments and Congress pursuant to Section 6(c) of the Act. The Attorney General also transmits a semi-annual report to Congress on the administration of the Act which lists the names of all agents registered under the Act and the foreign principals they represent. This report is available to the public and online at: http://www.fara.gov.

Public Reporting Burden. Public reporting burden for this collection of information is estimated to average .429 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to Chief, Registration Unit, Counterespionage Section, National Security Division, U.S. Department of Justice, Washington, DC 20530; and to the Office of Information and Regulatory Affairs, Office of Management and Budget, Washington, DC 20503.

| 1. Name<br>Bijan Rafiekian | 2. Registration No.<br>6406 |
| 3. Residence Address(es)<br>Provided separately to the Department of Justice. | 4. Business Address(es)<br>44 Canal Center Plaza, Alexandria, VA 22314 |
| 5. Year of Birth  1952<br><br>Nationality   U.S.<br><br>Present Citizenship  U.S. | 6. If present citizenship was not acquired by birth, indicate when, and how acquired. |

7. Occupation  Consultant

8. What is the name and address of the primary registrant?<br>Name  Flynn Intel Group, Inc.          Address  44 Canal Center Plaza, Alexandria, VA 22314

9. Indicate your connection with the primary registrant:

☐ partner          ☒ director          ☐ employee          ☐ consultant
☐ officer          ☐ associate          ☐ agent          ☐ subcontractor
☐ other (specify)_____

10. List every foreign principal to whom you will render services in support of the primary registrant.<br>Inovo BV

11. Describe separately and in detail all services which you will render to the foreign principal(s) listed in Item 10 either directly, or through the primary registrant listed in Item 8, and the date(s) of such services. (If space is insufficient, a full insert page must be used.)<br>See attachment.

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

12. Do any of the above described services include political activity as defined in Section 1(o) of the Act and in the footnote below?

      Yes ☒     No ☐

If yes, describe separately and in detail such political activity.
See response to item 11.

---

13. The services described in Items 11 and 12 are to be rendered on a

    ☐ full time basis        ☒ part time basis        ☐ special basis

---

14. What compensation or thing of value have you received to date or will you receive for the above services?

    ☐ Salary: Amount $ _____ per _____    ☐ Commission at _____ % of _____

    ☒ Salary: Not based solely on services rendered to the foreign principal(s).

    ☐ Fee: Amount $ _____         ☐ Other thing of value _____

---

15. During the period beginning 60 days prior to the date of your obligation to register to the time of filing this statement, did you make any contributions of money or other things of value from your own funds or possessions and on your own behalf in connection with any election to political office or in connection with any primary election, convention, or caucus held to select candidates for any political office?    Yes ☐    No ☒

If yes, furnish the following information:

| Date | Amount or Thing of Value | Political Organization or Candidate | Location of Event |
|------|--------------------------|-------------------------------------|-------------------|
|      |                          |                                     |                   |

---

## EXECUTION

In accordance with 28 U.S.C. § 1746, the undersigned swears or affirms under penalty of perjury that he/she has read the information set forth in this registration statement and that he/she is familiar with the contents thereof and that such contents are in their entirety true and accurate to the best of his/her knowledge and belief.

March 07, 2017 _____      /s/ Bijan Rafiekian _____  eSigned

    *(Date of signature)*               *(Signature)*

---

Footnote: "Political activity," as defined in Section 1(o) of the Act, means any activity which the person engaging in believes will, or that the person intends to, in any way influence any agency or official of the Government of the United States or any section of the public within the United States with reference to formulating, adopting, or changing the domestic or foreign policies of the United States or with reference to the political or public interests, policies, or relations of a government of a foreign country or a foreign political party.

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

*Flynn Intel Group, Inc., Short Form (Rafiekian)*

## Attachment

*Item 11*

Flynn Intel Group was tasked to perform investigative research for a specified scope of work using its laboratory team of senior defense, diplomacy, development, and intelligence professionals over a three-month period. Flynn Intel Group was to retain an experienced filming and production crew in order to develop a short film piece on the results of its investigation, and a public affairs firm to utilize for public affairs as needed. Flynn Intel Group held weekly calls with the client to report engagement progress.

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

OMB No. 1124-0005; Expires April 30, 2017

U.S. Department of Justice

Washington, DC 20530

### Short Form Registration Statement
### Pursuant to the Foreign Agents Registration Act of 1938, as amended

INSTRUCTIONS. Each partner, officer, director, associate, employee, and agent of a registrant is required to file a short form registration statement unless he engages in no activities in furtherance of the interests of the registrant's foreign principal or unless the services he renders to the registrant are in a secretarial, clerical, or in a related or similar capacity. Compliance is accomplished by filing an electronic short form registration statement at http://www.fara.gov.

Privacy Act Statement. The filing of this document is required for the Foreign Agents Registration Act of 1938, as amended, 22 U.S.C. § 611 et seq., for the purposes of registration under the Act and public disclosure. Provision of the information requested is mandatory, and failure to provide the information is subject to the penalty and enforcement provisions established in Section 8 of the Act. Every registration statement, short form registration statement, supplemental statement, exhibit, amendment, copy of informational materials or other document or information filed with the Attorney General under this Act is a public record open to public examination, inspection and copying during the posted business hours of the Registration Unit in Washington, DC. Statements are also available online at the Registration Unit's webpage: http://www.fara.gov. One copy of every such document, other than informational materials, is automatically provided to the Secretary of State pursuant to Section 6(b) of the Act, and copies of any and all documents are routinely made available to other agencies, departments and Congress pursuant to Section 6(c) of the Act. The Attorney General also transmits a semi-annual report to Congress on the administration of the Act which lists the names of all agents registered under the Act and the foreign principals they represent. This report is available to the public and online at: http://www.fara.gov.

Public Reporting Burden. Public reporting burden for this collection of information is estimated to average .429 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to Chief, Registration Unit, Counterespionage Section, National Security Division, U.S. Department of Justice, Washington, DC 20530; and to the Office of Information and Regulatory Affairs, Office of Management and Budget, Washington, DC 20503.

| 1. Name  Lt. Gen Michael T. Flynn (Ret.) | 2. Registration No.  6406 |
|---|---|
| 3. Residence Address(es)  Provided separately to the Department of Justice. | 4. Business Address(es)  44 Canal Center Plaza, Alexandria, VA 22314 |
| 5. Year of Birth   1958  Nationality   U.S.  Present Citizenship  U.S. | 6. If present citizenship was not acquired by birth, indicate when, and how acquired. |

7. Occupation   Consultant

8. What is the name and address of the primary registrant?
Name  Flynn Intel Group, Inc.          Address  44 Canal Center Plaza, Alexandria, VA 22314

9. Indicate your connection with the primary registrant:

☐ partner    ☒ director    ☐ employee    ☐ consultant
☐ officer    ☐ associate   ☐ agent       ☐ subcontractor
☐ other (specify)_____

10. List every foreign principal to whom you will render services in support of the primary registrant.
Inovo BV

11. Describe separately and in detail all services which you will render to the foreign principal(s) listed in Item 10 either directly, or through the primary registrant listed in Item 8, and the date(s) of such services. (If space is insufficient, a full insert page must be used.)
See attachment.

FORM NSD-6
Revised 03/14

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

12. Do any of the above described services include political activity as defined in Section 1(o) of the Act and in the footnote below?

        Yes ☒     No ☐

If yes, describe separately and in detail such political activity.

See response to item 11.

---

13. The services described in Items 11 and 12 are to be rendered on a

    ☐ full time basis          ☒ part time basis          ☐ special basis

---

14. What compensation or thing of value have you received to date or will you receive for the above services?

    ☐ Salary: Amount $ _____ per _____    ☐ Commission at _____ % of _____

    ☒ Salary: Not based solely on services rendered to the foreign principal(s).

    ☐ Fee: Amount $ _____          ☐ Other thing of value _____

---

15. During the period beginning 60 days prior to the date of your obligation to register to the time of filing this statement, did you make any contributions of money or other things of value from your own funds or possessions and on your own behalf in connection with any election to political office or in connection with any primary election, convention, or caucus held to select candidates for any political office?    Yes ☐    No ☒

If yes, furnish the following information:

| Date | Amount or Thing of Value | Political Organization or Candidate | Location of Event |
|------|--------------------------|-------------------------------------|-------------------|
|      |                          |                                     |                   |

---

## EXECUTION

In accordance with 28 U.S.C. § 1746, the undersigned swears or affirms under penalty of perjury that he/she has read the information set forth in this registration statement and that he/she is familiar with the contents thereof and that such contents are in their entirety true and accurate to the best of his/her knowledge and belief.

| March 07, 2017 | /s/ Michael T. Flynn | eSigned |
|----------------|----------------------|---------|
| *(Date of signature)* | *(Signature)* | |

---

Footnote: "Political activity," as defined in Section 1(o) of the Act, means any activity which the person engaging in believes will, or that the person intends to, in any way influence any agency or official of the Government of the United States or any section of the public within the United States with reference to formulating, adopting, or changing the domestic or foreign policies of the United States or with reference to the political or public interests, policies, or relations of a government of a foreign country or a foreign political party.

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

*Flynn Intel Group, Inc., Short Form (Flynn)*

**Attachment**

*Item 11*

      Flynn Intel Group was tasked to perform investigative research for a specified scope of work using its laboratory team of senior defense, diplomacy, development, and intelligence professionals over a three-month period. Flynn Intel Group was to retain an experienced filming and production crew in order to develop a short film piece on the results of its investigation, and a public affairs firm to utilize for public affairs as needed. Flynn Intel Group held weekly calls with the client to report engagement progress.

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

OMB No. 1124-0002; Expires April 30, 2017

**U.S. Department of Justice**

Washington, DC 20530

# Supplemental Statement
## Pursuant to the Foreign Agents Registration Act of 1938, as amended

For Six Month Period Ending <u>Nov. 30, 2016</u>

(Insert date)

## I - REGISTRANT

1. (a) Name of Registrant          (b) Registration No.

    Flynn Intel Group, Inc.                 6406

    (c) Business Address(es) of Registrant
       44 Canal Center Plaza, Alexandria, VA 22314

2. Has there been a change in the information previously furnished in connection with the following?

    (a) If an individual:

       (1) Residence address(es)     Yes ☐       No ☐

       (2) Citizenship             Yes ☐       No ☐

       (3) Occupation             Yes ☐       No ☐

    (b) If an organization:

       (1) Name                  Yes ☐       No ☒

       (2) Ownership or control    Yes ☐       No ☒

       (3) Branch offices        Yes ☐       No ☒   Flynn Intel Group's sole office closed in November 2016.

    (c) Explain fully all changes, if any, indicated in Items (a) and (b) above.
       Flynn Intel Group, Inc. suspended activities in November 2016.

---

### IF THE REGISTRANT IS AN INDIVIDUAL, OMIT RESPONSE TO ITEMS 3, 4, AND 5(a).

3. If you have previously filed Exhibit C[1], state whether any changes therein have occurred during this 6 month reporting period.

    Yes ☐      No ☒

    If yes, have you filed an amendment to the Exhibit C?     Yes ☐        No ☐

    If no, please attach the required amendment.

---

1 The Exhibit C, for which no printed form is provided, consists of a true copy of the charter, articles of incorporation, association, and by laws of a registrant that is an organization. (A waiver of the requirement to file an Exhibit C may be obtained for good cause upon written application to the Assistant Attorney General, National Security Division, U.S. Department of Justice, Washington, DC 20530.)

FORM NSD-2
Revised 03/14

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

(PAGE 2)

4. (a) Have any persons ceased acting as partners, officers, directors or similar officials of the registrant during this 6 month reporting period?

Yes ☐     No ☒

If yes, furnish the following information:

Name                                          Position                          Date Connection Ended


(b) Have any persons become partners, officers, directors or similar officials during this 6 month reporting period?

Yes ☐     No ☒

If yes, furnish the following information:

Name                 Residence Address              Citizenship              Position        Date Assumed


5. (a) Has any person named in Item 4(b) rendered services directly in furtherance of the interests of any foreign principal?

Yes ☐     No ☐

If yes, identify each such person and describe the service rendered.


(b) During this six month reporting period, has the registrant hired as employees or in any other capacity, any persons who rendered or will render services to the registrant directly in furtherance of the interests of any foreign principal(s) in other than a clerical or secretarial, or in a related or similar capacity?     Yes ☐     No ☒

Name                 Residence Address              Citizenship              Position        Date Assumed


(c) Have any employees or individuals, who have filed a short form registration statement, terminated their employment or connection with the registrant during this 6 month reporting period?     Yes ☒     No ☐

If yes, furnish the following information:

Name                                    Position or Connection                      Date Terminated

Flynn Intel Group, Inc. suspended activities in
November 2016.

(d) Have any employees or individuals, who have filed a short form registration statement, terminated their connection with any foreign principal during this 6 month reporting period?     Yes ☒     No ☐

If yes, furnish the following information:

Name                 Position or Connection              Foreign Principal              Date Terminated

The contract between Inovo BV and
Flynn Intel Group ended by its terms
on November 15, 2016.

6. Have short form registration statements been filed by all of the persons named in Items 5(a) and 5(b) of the supplemental statement?

Yes ☐     No ☐

If no, list names of persons who have not filed the required statement.


Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

(PAGE 3)

## II - FOREIGN PRINCIPAL

7. Has your connection with any foreign principal ended during this 6 month reporting period?  Yes ☒  No ☐
   If yes, furnish the following information:

   Foreign Principal                                      Date of Termination

   Inovo BV                                               November 15, 2016

8. Have you acquired any new foreign principal(s)[2] during this 6 month reporting period?  Yes ☐  No ☒
   If yes, furnish th following information:

   Name and Address of Foreign Principal(s)               Date Acquired

9. In addition to those named in Items 7 and 8, if any, list foreign principal(s)[2] whom you continued to represent during the 6 month reporting period.

10. (a) Have you filed exhibits for the newly acquired foreign principal(s), if any, listed in Item 8?
    Exhibit A[3]        Yes ☐        No ☐
    Exhibit B[4]        Yes ☐        No ☐

    If no, please attach the required exhibit.

    (b) Have there been any changes in the Exhibits A and B previously filed for any foreign principal whom you
        represented during this six month period?          Yes ☐        No ☒
        If yes, have you filed an amendment to these exhibits?    Yes ☐        No ☐

    If no, please attach the required amendment.

---

2 The term "foreign principal" includes, in addition to those defined in Section 1(b) of the Act, an individual organization any of whose activities are directly or indirectly supervised, directed, controlled, financed, or subsidized in whole or in major part by a foreign government, foreign political party, foreign organization or foreign individual. (See Rule 100(a) (9)). A registrant who represents more than one foreign principal is required to list in the statements he files under the Act only those principals for whom he is not entitled to claim exemption under Section 3 of the Act. (See Rule 208.)

3 The Exhibit A, which is filed on Form NSD-3, sets forth the information required to be disclosed concerning each foreign principal.

4 The Exhibit B, which is filed on Form NSD-4, sets forth the information concerning the agreement or understanding between the registrant and the foreign principal.

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

(PAGE 4)

## III - ACTIVITIES

11. During this 6 month reporting period, have you engaged in any activities for or rendered any services to any foreign principal named in Items 7, 8, or 9 of this statement?          Yes ☒          No ☐

    If yes, identify each foreign principal and describe in full detail your activities and services:

    See attachment.

12. During this 6 month reporting period, have you on behalf of any foreign principal engaged in political activity[5] as defined below?
    Yes ☒          No ☐

    If yes, identify each such foreign principal and describe in full detail all such political activity, indicating, among other things, the relations, interests and policies sought to be influenced and the means employed to achieve this purpose.  If the registrant arranged, sponsored or delivered speeches, lectures or radio and TV broadcasts, give details as to dates, places of delivery, names of speakers and subject matter.

    See attachment.

13. In addition to the above described activities, if any, have you engaged in activity on your own behalf which benefits your foreign principal(s)?          Yes ☒          No ☐

    If yes, describe fully.

    Because of its expertise, Flynn Intel Group officials frequently write, speak, and give interviews on issues related to national security.  Although not undertaken at the direction or control of a foreign principal, it is possible that such activities may have an indirect benefit to a principal.  On his own initiative, Michael T. Flynn published an op-ed in The Hill on November 8, 2016, that related to the same subject matters as the Flynn Intel Group work for Inovo BV.  Neither Inovo BV, nor any other person requested or directed publication of the op-ed.

---

5  "Political activity," as defined in Section 1(o) of the Act, means any activity that the person engaging in believes will, or that the person intends to, in any way influence any agency or official of the Government of the United States or any section of the public within the United States with reference to formulating, adopting or changing the domestic or foreign policies of the United States or with reference to political or public interests, policies, or relations of a government of a foreign country or a foreign political party.

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

(PAGE 5)

## IV - FINANCIAL INFORMATION

14. (a) **RECEIPTS-MONIES**

During this 6 month reporting period, have you received from any foreign principal named in Items 7, 8, or 9 of this statement, or from any other source, for or in the interests of any such foreign principal, any contributions, income or money either as compensation or otherwise? Yes ☒ No ☐

If no, explain why.

If yes, set forth below in the required detail and separately for each foreign principal an account of such monies.[6]

| Date | From Whom | Purpose | Amount |
|------|-----------|---------|--------|
| See attachment. | | | |

Total

(b) **RECEIPTS - FUNDRAISING CAMPAIGN**

During this 6 month reporting period, have you received, as part of a fundraising campaign[7], any money on behalf of any foreign principal named in Items 7, 8, or 9 of this statement? Yes ☐ No ☒

If yes, have you filed an Exhibit D[8] to your registration? Yes ☐ No ☐

If yes, indicate the date the Exhibit D was filed. Date _____

(c) **RECEIPTS-THINGS OF VALUE**

During this 6 month reporting period, have you received any thing of value[9] other than money from any foreign principal named in Items 7, 8, or 9 of this statement, or from any other source, for or in the interests of any such foreign principal? Yes ☐ No ☒

If yes, furnish the following information:

| Foreign Principal | Date Received | Thing of Value | Purpose |
|-------------------|---------------|----------------|---------|
| | | | |

6, 7 A registrant is required to file an Exhibit D if he collects or receives contributions, loans, moneys, or other things of value for a foreign principal, as part of a fundraising campaign. (See Rule 201(e)).

8 An Exhibit D, for which no printed form is provided, sets forth an account of money collected or received as a result of a fundraising campaign and transmitted for a foreign principal.

9 Things of value include but are not limited to gifts, interest free loans, expense free travel, favored stock purchases, exclusive rights, favored treatment over competitors, "kickbacks," and the like.

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

(PAGE 6)

15. (a)   **DISBURSEMENTS-MONIES**
During this 6 month reporting period, have you
(1)   disbursed or expended monies in connection with activity on behalf of any foreign principal named in Items 7, 8, or
9 of this statement?   Yes ☒          No ☐

(2)   transmitted monies to any such foreign principal?          Yes ☐          No ☐

If no, explain in full detail why there were no disbursements made on behalf of any foreign principal.


If yes, set forth below in the required detail and separately for each foreign principal an account of such monies, including
monies transmitted, if any, to each foreign principal.

| Date | To Whom | Purpose | Amount |
|------|---------|---------|--------|
| See attachment. | | | |

Total

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

(PAGE 7)

**(b) DISBURSEMENTS-THINGS OF VALUE**

During this 6 month reporting period, have you disposed of anything of value[10] other than money in furtherance of or in connection with activities on behalf of any foreign principal named in Items 7, 8, or 9 of this statement?

Yes ☐    No ☒

If yes, furnish the following information:

| Date | Recipient | Foreign Principal | Thing of Value | Purpose |
|------|-----------|-------------------|----------------|---------|

**(c) DISBURSEMENTS-POLITICAL CONTRIBUTIONS**

During this 6 month reporting period, have you from your own funds and on your own behalf either directly or through any other person, made any contributions of money or other things of value[11] in connection with an election to any political office, or in connection with any primary election, convention, or caucus held to select candidates for political office?

Yes ☒    No ☐

If yes, furnish the following information:

| Date | Amount or Thing of Value | Political Organization or Candidate | Location of Event |
|------|--------------------------|-------------------------------------|-------------------|
| Rafiekian 10/31/16 | $250 | Trump Make American Great Again Committee | |
| Rafiekian * | * | Zinke For Congress | |

* Mr. Rafiekian is searching for records of the date and amount of the contribution, which he believes he made, and will amend this report when the information is located.

---

10, 11 Things of value include but are not limited to gifts, interest free loans, expense free travel, favored stock purchases, exclusive rights, favored treatment over competitors, "kickbacks," and the like.

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

(PAGE 8)

## V - INFORMATIONAL MATERIALS

16. (a) During this 6 month reporting period, did you prepare, disseminate or cause to be disseminated any informational materials?[12]

Yes ☒     No ☐

If Yes, go to Item 17.

(b) If you answered No to Item 16(a), do you disseminate any material in connection with your registration?

Yes ☐     No ☐

If Yes, please forward the materials disseminated during the six month period to the Registration Unit for review.

17. Identify each such foreign principal.

Inovo BV.

18. During this 6 month reporting period, has any foreign principal established a budget or allocated a specified sum of money to finance your activities in preparing or disseminating informational materials?     Yes ☐     No ☒

If yes, identify each such foreign principal, specify amount, and indicate for what period of time.

See attachment.

19. During this 6 month reporting period, did your activities in preparing, disseminating or causing the dissemination of informational materials include the use of any of the following:

☐ Radio or TV broadcasts     ☐ Magazine or newspaper     ☐ Motion picture films     ☐ Letters or telegrams

☐ Advertising campaigns     ☐ Press releases     ☐ Pamphlets or other publications     ☐ Lectures or speeches

☒ Other (specify)  See attachment.

**Electronic Communications**

☐ Email

☐ Website URL(s): _____

☐ Social media websites URL(s): _____

☒ Other (specify)  See attachment.

20. During this 6 month reporting period, did you disseminate or cause to be disseminated informational materials among any of the following groups:

☐ Public officials     ☐ Newspapers     ☐ Libraries

☐ Legislators     ☐ Editors     ☐ Educational institutions

☐ Government agencies     ☐ Civic groups or associations     ☐ Nationality groups

☒ Other (specify)  See attachment.

21. What language was used in the informational materials:

☒ English     ☐ Other (specify) _____

22. Did you file with the Registration Unit, U.S. Department of Justice a copy of each item of such informational materials disseminated or caused to be disseminated during this 6 month reporting period?     Yes ☐     No ☐  See attachment

23. Did you label each item of such informational materials with the statement required by Section 4(b) of the Act?

Yes ☐     No ☐  See attachment.

12 The term informational materials includes any oral, visual, graphic, written, or pictorial information or matter of any kind, including that published by means of advertising, books, periodicals, newspapers, lectures, broadcasts, motion pictures, or any means or instrumentality of interstate or foreign commerce or otherwise. Informational materials disseminated by an agent of a foreign principal as part of an activity in itself exempt from registration, or an activity which by itself would not require registration, need not be filed pursuant to Section 4(b) of the Act.

(PAGE 9)

## VI - EXECUTION

In accordance with 28 U.S.C. § 1746, the undersigned swear(s) or affirm(s) under penalty of perjury that he/she has (they have) read the information set forth in this registration statement and the attached exhibits and that he/she is (they are) familiar with the contents thereof and that such contents are in their entirety true and accurate to the best of his/her (their) knowledge and belief, except that the undersigned make(s) no representation as to truth or accuracy of the information contained in the attached Short Form Registration Statement(s), if any, insofar as such information is not within his/her (their) personal knowledge.

(Date of signature)                    (Print or type name under each signature or provide electronic signature[13])

March 07, 2017                         /s/ Michael T. Flynn                    eSigned

_____              _____

_____              _____

_____              _____

---

13  This statement shall be signed by the individual agent, if the registrant is an individual, or by a majority of those partners, officers, directors or persons performing similar functions, if the registrant is an organization, except that the organization can, by power of attorney, authorize one or more individuals to execute this statement on its behalf.

*Flynn Intel Group, Inc., Supplemental Statement*

**Attachment**

*Items 11-12*

> Note: In September 2016, the Flynn Intel Group filed a registration under the Lobbying Disclosure Act for its representation of Inovo BV ("Inovo"). Upon further review, and to eliminate any potential doubt, the Flynn Intel Group is electing to file a registration and supplemental statement under the Foreign Agents Registration Act in lieu of its prior LDA registration. Although the Flynn Intel Group was engaged by a private firm, Inovo BV, and not by a foreign government, because of the subject matter of the engagement, Flynn Intel Group's work for Inovo could be construed to have principally benefitted the Republic of Turkey. The Department's regulations provide that the LDA exemption from FARA registration is not available if a foreign government or political party is the principal beneficiary. *See* 28 C.F.R. § 5.307. This retroactive supplemental statement is being filed after the Flynn Intel Group closed its operations in November 2016, and the supplemental statement is therefore based on information that is currently available to Flynn Intel Group, to the best of its knowledge, after undertaking due diligence with the assistance of counsel.

In August 2016, Flynn Intel Group entered into a contract with Inovo, a consulting firm based in the Netherlands. The contract provided that Flynn Intel Group would perform research, engage a public relations firm and a filming and production crew to potentially distribute the results of its research, and hold weekly calls with the client to discuss progress on the project. Flynn Intel Group understood the engagement to be focused on improving U.S. business organizations' confidence regarding doing business in Turkey, particularly with respect to the stability of Turkey and its suitability as a venue for investment and commercial activity. Inovo has represented, through its counsel, that no part of the fees paid to Flynn Intel Group by Inovo was provided by any foreign government.

Under the contract, Flynn Intel Group conducted open-source research for Inovo and at Inovo's direction. The research, which was conducted by independent contractors retained for this purpose, focused on Mr. Fethullah Gülen and charter schools in the United States that are associated with, or allegedly associated with, Mr. Gülen. The results of Flynn Intel Group's research were provided to Inovo, and to S.G.R. LLC Government Relations and Lobbying, the public relations firm engaged by Flynn Intel Group. Flynn Intel Group and the public relations firm developed various materials and documents related to this research for potential dissemination. Because the project was terminated early, the full scope of the contract was not performed, and to the best of Flynn Intel Group's knowledge, none of the research materials prepared by the Flynn Intel Group were disseminated to third parties.

In early September 2016, Flynn Intel Group was invited by Mr. Alptekin to meet with a group of government officials from Turkey for the purpose of understanding better the political climate in Turkey at the time, as background for the project. Officials of the Republic of Turkey

attending this meeting on September 19, 2016, in New York, were the Minister of Foreign Affairs and the Minister of Energy, to the best of Flynn Intel Group's current understanding.

Mr. Rafiekian met with Miles Taylor, National Security Advisor to the House Committee on Homeland Security, on two occasions in approximately October 2016, at Mr. Taylor's office and at Flynn Intel Group's office. A representative of S.G.R. LLC Government Relations and Lobbying attended the meeting at Flynn Intel Group's office. Over the course of the discussions, Mr. Rafiekian raised the firm's representation of Inovo and issues related to the research conducted for Inovo concerning Mr. Gülen and Turkey. Flynn Intel Group also oversaw outreach, which was conducted by the public relations firm, to a state government official in Arkansas.

Pursuant to its contract with Inovo, Flynn Intel Group informally engaged a group of individuals (independent contractors) to form a film and production crew for the purposes of producing a video documentary based on its research associated with Mr. Gülen. The activities included a couple of videotaped interviews and other initial development of content. Because the contract was not extended, the full scope of anticipated work was not performed and, to the best of Flynn Intel Group's current knowledge, the video was neither finished nor disseminated to any third parties. S.G.R. LLC Government Relations and Lobbying created a Gulen-themed monopoly graphic at the direction of Flynn Intel Group. To the best of its knowledge, Flynn Intel Group did not disseminate this document or associated research (other than to Inovo).

In late October and early November 2016, Gen. Flynn of Flynn Intel Group developed an op-ed article based, in part, on the research conducted by Flynn Intel Group under the Inovo engagement. The op-ed was not written or published at the request of, or under the direction or control of, Inovo, the Republic of Turkey, or any other party. No compensation was received for the publication of the op-ed. In addition to Gen. Flynn, Bijan Rafiekian and an editor, Hank Cox, participated in the drafting. Inovo, Mr. Alptekin, and the Republic of Turkey did not participate in the drafting. Nonetheless, the op-ed addresses subject matter related to the research that Flynn Intel Group conducted for Inovo, and a draft of the op-ed was shared with Inovo in advance of publication. No changes, other than technical edits, were made to the op-ed based on feedback from Inovo. To the best of our knowledge, Inovo did not communicate with the Republic of Turkey regarding the op-ed or provide the draft op-ed to the government. S.G.R. LLC Government Relations and Lobbying assisted Flynn Intel Group with placement of the op-ed with *The Hill* publication.

*Item 14*

Payments received by Flynn Intel Group in connection with the project and purpose based on information contained in Flynn Intel Group's general ledger and accounting records.

| Date Received | Foreign Principal | Purpose | Amount |
|---|---|---|---|
| 09/09/2016 | Inovo BV | Consulting | $200,000.00 |
| 10/11/2016 | Inovo BV | Consulting | $185,000.00 |
| 11/14/2016 | Inovo BV | Consulting | $145,000.00 |

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

*Item 15*

Disbursements by Flynn Intel Group in connection with the project and purpose based on information contained in Flynn Intel Group's general ledger and accounting records.

| Date | To Whom | Purpose | Amount |
|------|---------|---------|--------|
| 10/14/2016 | Bob Kelley | Consultancy Fee | $2,500.00 |
| 10/31/2016 | Bob Kelley | Consultancy Fee | $2,500.00 |
| 11/21/2016 | Bob Kelley | Consultancy Fee | $5,000.00 |
| 10/04/2016 | Brian McCauley | Consultancy Fee | $5,000.00 |
| 10/13/2016 | Brian McCauley | Consultancy Fee | $3,000.00 |
| 11/14/2016 | Brian McCauley | Consultancy Fee | $5,000.00 |
| 12/05/2016 | Brian McCauley | Consultancy Fee | $15,000.00 |
| 09/19/2016 | Carl Pilgram | Administrative Support | $ 4,000.00 |
| 10/25/2016 | Carl Pilgram | Administrative Support | $4,000.00 |
| 11/16/2016 | Carl Pilgram | Administrative Support | $4,000.00 |
| 10/11/2016 | David Enders | Videography | $1,700.00 |
| 10/11/2016 | David Enders | Videography | $850.00 |
| 12/02/2016 | David Enders | Videography | $850.00 |
| 12/02/2016 | Hank Cox | Editing | $300.00 |
| 9/13/2016 | Inovo BV | Consultancy Fee | $40,000.00 |
| 10/17/2016 | Inovo BV | Consultancy Fee | $40,000.00 |
| 09/13/2016 | Michael G. Flynn | Administrative Support | $4,000.00 |
| 10/21/2016 | Michael G. Flynn | Administrative Support | $4,000.00 |
| 11/22/2016 | Michael G. Flynn | Administrative Support | $4,000.00 |
| 10/11/2016 | Mike Boston | Consultancy Fee | $ 8,000.00 |
| 10/14/2016 | Mike Boston | Consultancy Fee | $8,000.00 |
| 11/21/2016 | Mike Boston | Consultancy Fee | $8,000.00 |
| 11/10/2016 | Operational Behavioral Services | Consultancy Fee | $20,000.00 |
| 10/13/2016 | Paul Becker | Consultancy Fee | $1,500.00 |
| 11/22/2016 | Paul Becker | Consultancy Fee | $6,000.00 |
| 10/12/2016 | Rudi Bakhtiar | Interview | $1,200 |
| 10/11/2016 | SGR LLC | Public Affairs | $15,000.00 |
| 10/24/2016 | SGR LLC | Public Affairs | $10,000.00 |
| 11/16/2016 | SGR LLC | Public Affairs | $15,000.00 |
| 10/05/2016 | White Canvas Group | Public open source research | $7,500.00 |
| 12/16/2016 | White Canvas Group | Public open source research | $7,500.00 |

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM

*Items 16-23*

Pursuant to the contract between Flynn Intel Group and Inovo BV, the parties anticipated that Flynn Intel Group would engage a public relations firm, Sphere Consulting, and engage a film production crew for the creation of a video. The public relations firm (S.G.R. LLC Government Relations and Lobbying) was engaged but the video was not completed or disseminated, to the best of our understanding. The budget for these activities was reflected in the engagement contract with S.G.R. LLC Government Relations and Lobbying; no separate budget related to informational materials. Because this is a retroactive registration prepared after Flynn Intel Group had already begun to close operations, this registration is based on documentation currently available to Flynn Intel Group. If additional relevant information is later identified, Flynn Intel Group will amend its registration.

Received by NSD/FARA Registration Unit 03/07/2017 6:02:45 PM