UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Criminal Case No. 1:18-CR-457 (AJT) |
| | : | |
| BIJAN RAFIEKIAN | : | |
| | : | |
| and | : | |
| | : | |
| KAMIL EKIM ALPTEKIN, | : | |
| | : | |
| Defendants. | : | |

### DEFENDANT BIJAN RAFIEKIAN'S MOTION
### IN SUPPORT OF A SEPTEMBER TRIAL DATE

The defendant, Bijan Rafiekian, through undersigned counsel, hereby moves this Court to set the trial date in this matter for no earlier than September. For good cause and in the interests of justice[1], the trial date should be extended for this period of time due to the extraordinary volume of discovery in this matter, the additional complications occasioned by the partial shutdown of the federal government, and the need of the defense to conduct its own investigation, as more fully described in the accompanying ex parte memorandum.

### BACKGROUND

Mr. Rafiekian was indicted on December 12, 2018 and arraigned on December 18, at which time the court set a trial date of February 11, 2019. This Court held a status conference on January 3, 2019, at which time the defendant orally sought a continuance of the trial date given the voluminous discovery that the government was producing. The court maintained the February 11 trial date, asking that any motion for continuance be put in writing by January 21 (January 22,

---

[1] Mr. Rafiekian's daughter is to be married in August. Although that is not a leading reason for the good cause extension, it is an additional factor upon which the September date is requested.

given that January 21 was a federal holiday). On January 4, 2019, the government filed a Motion for a Two-Week Continuance of Trial. On January 22, 2019, the Court vacated the trial date and indicated that it will set a new trial date following consideration of anticipated motions and related filings.

## GROUNDS FOR A SEPTEMBER TRIAL DATE

### I. The government has provided an extraordinary volume of discovery

The government has provided an extraordinary volume of discovery in this case, and it has signaled there is more to come. At the January 3 status conference, the government delivered to the defense a box containing three hard drives with a total capacity of 10 TB, plus a thumb drive. One of the hard drives contained the images of Mr. Rafiekian's two laptops, and the other two contain 3.75 million TIFF files. The thumb drive included about 67,500 pages of documents that mostly were produced by lawyers for Flynn Intel Group (FIG) in response to a request from the U.S. Attorney's office in 2017. In describing the discovery that it would be producing, the government stated that there will be "additional, but limited, productions [plural]." Since January 3, the government has made one production, but it is clear that more is to come, including additional material following taint team review. While there is no doubt plenty of chaff in what the government has provided, sorting out the wheat will take a significant amount of time.

The government shutdown, for which there is no end in sight, has seriously hampered the normal process by which the government would streamline the defense preparation by identifying the core documents, at least from its perspective, on which the government will rely. The government has indicated that it will provide that subset after government reopens. Therefore,

until the shutdown ends, the defense is left to sift through a mass of material that could not be reviewed in a year's time, much less several weeks.[2]

Moreover, even if the defense had all the documents on which the government is relying to make its case, that would not relieve defense counsel of the obligation to look for additional documents and witnesses that would advance the defense. Having sufficient time to first review the core documents on which the government intends to rely, and then to target the defense with that review in mind should be the minimum that the discovery rules and due process require. See generally Fed. R. Crim. P. 16(a)(1)(E)(i-ii). Given the uncertainty of when the government will be fully functioning again, there is no predicting when the defense will see the core documents or know the challenges such late production will present, even if the production were to be provided tomorrow. Of course, having what the government believes to be the core documents, while necessary to prepare, is not sufficient for the defense to discharge counsels' duties to the defendant.

On January 18, 2019, the defense served on the government various discovery requests, including specific *Brady* and *Giglio* requests. If the government is unwilling to respond to the specific requests, the defense expects to file a motion seeking an order that the government either produce the requested information or document or declare that it does not exist. These issues cannot be adjudicated and resolved sufficiently in advance of a near-term trial date to allow the

---

[2] Kelly Brown, an adjunct faculty member of the University of Oregon, and academic director of the University of Oregon Applied Information Management Master's Degree Program, has attempted to quantify the magnitude of *a single* terabyte of data: "It is estimated that 85,899,345 pages of Word documents would fill one terabyte. Now, if you can truly generate that much content, you have a serious archiving task on your hands. I am currently reading the book "John Adams" by David McCullough; it is approximately 650 pages long, which means I could archive about 132,152 books of similar size. It has taken me nearly two months to read this book so it would take 66,076 months or 5,506 years to read my entire library. I cannot read that fast, nor do I have that much life left in me." *See* Kelly Brown, "A Terabyte of Storage Space: How Much is Too Much?" available at http://aimblog.uoregon.edu/2014/07/08/a-terabyte-of-storage-space-how-much-is-too-much/#.VdzFJmeFOUk.

defense effectively to use documents or information that the government would be required to produce.

In sum, a trial date in advance of September does not allow the defendant to make a meaningful review of the discovery, much less to investigate issues arising out of that review, and to prepare for trial. *See*, *e.g.*, *United States v. Moussaoui*, No. CR. 01-455-A, 2002 WL 1987955, at *1 (E.D. Va. Aug. 16, 2002) (granting continuance of three months based on voluminous discovery production of 40 CDs; 40 CDs contain about 20 GB of data, 2% of one terabyte); *see also United States v. Danielczyk*, No. 1:11CR85 JCC, 2013 WL 142460, at *5 (E.D. Va. Jan. 10, 2013) (deciding that it would be unreasonable to provide less than three weeks for defense counsel to review Jencks material consisting of 280 documents).

## II. The government has potential CIPA Evidence that must be considered by the Court

The government has identified potential evidence under the Classified Information Procedures Act (CIPA), 18 U.S. C. App. III, which it intends to present to the Court on or before the hearing on February 8, 2019. The government will argue that the evidence is not relevant and should not be disclosed. But as a contingency, the government is seeking to update the security clearance of defense counsel so that counsel can be read into the classified material if appropriate.[3] The process for clearing defense counsel will not even begin until the government shutdown ends. In addition, we respectfully submit that the Court's review under CIPA will be better informed with additional time, as the defense has a better understanding of the government's case and is able to refine its defense. If appropriate, and with the Court's permission, a continuance of the

---

[3] See also, Government's Motion for a Two-Week Continuance of Trial, at 2. (Document 22).

CIPA hearing may allow defense counsel to lay out its defense in an ex parte submission so that the Court will be better informed in its CIPA review.

### III.     The Defense has additional investigation it wishes to pursue

In addition to the foregoing reasons why a trial date in September is appropriate, the defendant has filed an *ex parte* memorandum describing additional investigation that it wishes to pursue, and are apt to take several months at a minimum to conclude. Taking all of these matters into consideration, the requested continuance of at least several months is certainly warranted.

## CONCLUSION

For the reasons set forth above, the defendant respectfully asks the Court to continue the trial date in this matter for at least several months.

Respectfully submitted,

*/s/*
Mark J. MacDougall (*Pro Hac Vice*)
Stacey H. Mitchell (*Pro Hac Vice*)
*Counsel for Bijan Rafiekian*
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036
Telephone:  (202) 887-4000
Fax:  (202) 887-4288
E-mail:   mmacdougall@akingump.com
            shmitchell@akingump.com

*/s/*
Robert P. Trout (VA Bar # 13642)
*Counsel for Bijan Rafiekian*
Trout Cacheris & Solomon PLLC
1627 Eye Street, NW
Suite 1130
Washington, DC 20006
Telephone:  (202) 464-3311
Fax:  (202) 464-3319
E-mail:  rtrout@troutcacheris.com

## CERTIFICATE OF SERVICE

I hereby certify that, on this 22nd day of January, 2019, a true and genuine copy of Defendant's Motion In Support of a September Trial Date was sent via electronic mail by the Court's CM/ECF system to the following:

James P. Gillis
John T. Gibbs
Evan N. Turgeon
U.S. Attorney's Office (Alexandria-NA)
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 299-3700
Email: james.p.gillis@usdoj.gov
       john.gibbs@usdoj.gov
       evan.turgeon@usdoj.gov

/s/
Robert P. Trout (VA Bar # 13642)