UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case 1:18-cr-00457 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Alexandria, Virginia |
| | ) | February 13, 2019 |
| BIJAN RAFIEKIAN, | ) | 2:00 p.m. |
| | ) | |
| Defendant. | ) | |
| | ) | Pages 1 - 17 |

TRANSCRIPT OF

DEFENDANT'S MOTION FOR A BILL OF PARTICULARS

AND

DEFENDANT'S MOTION FOR A SEPTEMBER TRIAL DATE

BEFORE THE HONORABLE ANTHONY J. TRENGA

UNITED STATES DISTRICT COURT JUDGE

COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

APPEARANCES:

FOR THE PLAINTIFF:

JOHN T. GIBBS, ESQUIRE
EVAN N. TURGEON, ESQUIRE
OFFICE OF THE UNITED STATES ATTORNEY
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700

FOR THE DEFENDANT:

MARK J. MACDOUGALL, ESQUIRE, *PRO HAC VICE*
STACEY H. MITCHELL, ESQUIRE, *PRO HAC VICE*
AKIN, GUMP, STRAUSS, HAUER & FELD, LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036-1564
(202) 887-4000

ROBERT P. TROUT, ESQUIRE
TROUT, CACHERIS & SOLOMON, PLLC
1627 I Street, N.W., Suite 1130
Washington, D.C. 20006
(202) 464-3300

 THE CLERK: Criminal Case 1:18-cr-457, *United States v. Bijan Rafiekian*.

Counsel, will you please note your appearances for the record.

MR. GIBBS: Good afternoon, Your Honor. John Gibbs and Evan Turgeon on behalf of the United States.

THE COURT: Good afternoon.

MR. MacDOUGALL: Good afternoon, Your Honor. Mark MacDougall with Akin Gump along with Stacey Mitchell and Bob Trout on behalf of Defendant Bijan Rafiekian.

THE COURT: All right. Mr. Rafiekian has waived his appearance which this Court has approved.

We're here for defendant's motion for bill of particulars, and we're also here for setting of a trial date. I've reviewed the bill of particulars.

Before we get to that, Mr. Gibbs, let me ask what the current status of production is with respect to anything the government intends to produce.

MR. GIBBS: So, Your Honor, the status of production is we've been providing discovery on a rolling basis, and we candidly acknowledge it's been a fairly large amount of discovery that we provided to date. There will be some additional discovery that we plan to push out here in the near future, but it won't

be --

THE COURT: How near? What kind of time frame are we talking about?

MR. GIBBS: Let me just consult with my cocounsel for a moment, Judge.

(Counsel confer.)

MR. GIBBS: So, Judge, sort of the universe of what we anticipate providing in addition to what we've already given would include -- there may be some additional 302s. We have provided some of those to the defense to review in our office. We anticipate some more of those. There's a couple of videos that were produced by the defendant -- or at least one that we're working on getting a copy of. We anticipate providing that. That would probably be in the next month or two, I think.

THE COURT: Why so long?

MR. GIBBS: Well, the witness we're getting it from, he has to go overseas to get it. So we're waiting for him to do that and to provide us a copy of that.

But it's a fairly small amount of material in comparison with what's been provided already. So I think that's the status at this point, Your Honor.

THE COURT: All right. Other than the

Section 4 issues that have already been scheduled, are there anticipated any other Schedule 4 issues?

MR. GIBBS: No, Judge.

THE COURT: All right. Let's deal with the bill of particulars.

Mr. MacDougall, are you arguing this?

MR. MacDOUGALL: Thank you, Your Honor. May it please the Court.

Rule 7(f) provides and gives the Court complete discretion to order the government to produce a bill of particulars. The motion that was filed here is really quite narrow as motions for bills of particulars go. We've only asked for ten particular allegations to be explained by the government. Six relate to alleged false statements, two to alleged omissions of material fact, and two to the identities of alleged coconspirators.

Now, the government asserts that the motion is about discovery, but that's not the case at all. And to respond to Your Honor's earlier request about the status of discovery, we believe we will be asking the Court's assistance with that before too long.

But here what we need to understand with respect to the bill of particulars so that we can adequately investigate the case, so that we can frame

our discovery motions properly, and so that we can formulate a defense -- the volume of discovery so far is extensive, and the government's response seems to be that it's all in the discovery. But I think, as counsel just acknowledged, that's quite a large volume of material. Telling us to essentially go find it in there -- which I'm overstating it, but that's not the solution.

THE COURT: Well, the indictment is specific as to the statements that they're contending are false, correct?

MR. MacDOUGALL: Well, the statements are specific, but what's false about them is not.

THE COURT: You want them to explain why they're false other than their contention that they are false?

MR. MacDOUGALL: Well, I can give you an example, Your Honor. Paragraph 57 of the indictment, the firm Covington & Burling -- I guess they're just known as Covington now -- prepared the FARA filing. In paragraph 57, the government cites a response from Covington & Burling in a letter to the FARA unit. Both of those statements -- and we cite them in the brief. Both of those statements are obviously true. They're accurate. So they're assessed as being a false

statement. They're charged as being a false statement, but there's no question that they're each true. What we are seeking from the Court is an order from the Court to explain to us what's not true about them.

The difficulty, as Your Honor knows, when you go into a case when you're told that a statement is false but you're not understanding what the government's position is on the false nature of it is you're trying a case blind. You can't prepare witnesses, and you can't really understand, until Rule 29 is heard, as to what that is. So that's an example of the false statement issue.

THE COURT: What about any of the other specific false statements? Do they fall into the same category as far as you're concerned?

MR. MacDOUGALL: I'm sorry, Your Honor? I missed part of that.

THE COURT: Well, it seems to me that the alleged falsity of many of the other specific statements, it's clear on its face what the government is contending is false.

MR. MacDOUGALL: Well, Your Honor, as paragraph 57 demonstrates, simply saying -- you know, for example, in paragraph 58, the company does not know whether or the extent to which the Republic of Turkey

was involved with its retention by the company for a three-month project. These are statements that were made by counsel, by very accomplished counsel. These are their words. These are not the words of the defendant.

THE COURT: I understand. The other allegations, though, are taken from statements attributable to this defendant; aren't they?

MR. MacDOUGALL: Well, Your Honor, we asked for ten specific disclosures. Five of them relate to statements that are in the FARA filing which would have originated with Covington.

THE COURT: All right.

MR. MacDOUGALL: The other two, Your Honor -- the other two critical points have to do with who the conspirators are. As you know, Your Honor, trying a case with the identity of alleged coconspirators unknown is almost impossible. Evidentiary issues are going to be determined based upon whether a coconspirator made a statement, whether a document originated with a coconspirator. To permit the government to essentially identify coconspirators as the trial progresses without knowledge in advance really denies us the opportunity to contest the evidence and to test its validity.

THE COURT: All right.

MR. MacDOUGALL: Your Honor, there's only three possible reasons, we would contend, for the government's objection here:

The first is that they don't have the answers. These allegations shouldn't be in the indictment in this case if they don't know the answers to the questions that we've asked.

The second is they have a collection of possible answers, but they don't want to identify any alleged statement or specific alleged conspirator until they see the trial is progressing.

The third is they do know and they knew when they prepared the indictment, but for tactical reasons, they don't want to disclose that to the defense.

Your Honor, I contend that none of those are good reasons to keep the defense in the dark as we go forward. For that reason, we would ask the Court to favorably consider and grant our motion for a bill of particulars.

THE COURT: All right.

MR. MacDOUGALL: The one thing I'd ask with the Court's indulgence -- Your Honor, I'd note that prosecution under this statute is very rare. There's been fewer than a dozen, by our count, since the law

was enacted in the 1930s. There is not a long history of appellate decisions and trials where you can take an indictment that charges this offense and say, Okay, I understand what's going on, and I know how to prepare a defense.

This case is different, Your Honor. We think it's a different statute that's charged. It's not common, and we need the Court's assistance in order to understand what's being charged here.

THE COURT: All right.

MR. MacDOUGALL: Thank you, Your Honor.

MR. GIBBS: Well, Your Honor, I think the Court hit on sort of our main point on the argument regarding the statements that are alleged in the indictment. Again, these are not alleged as 1001 false statements. These are false statement as part of the Count 1 conspiracy in this case.

I mean, Your Honor is exactly right. If you read through this, this actually looks like a bill of particulars. We indicate the document that the false statement came from. We indicate the particular paragraph, and we actually quote the false statement or what we believe is the false statement in there. So I believe that it would be inappropriate to require the government to do more with regards to those statements.

In terms of the coconspirators in this case, as we indicated in our moving papers, it's unusual certainly in this district and in this circuit to require the government to identify the coconspirators. In this case, we don't feel like that there is a basis to require that, and we would stand on the arguments we made in our response motion, Your Honor.

THE COURT: What would be the government's objection to identifying any persons whose statements the government intends to introduce as exceptions to the hearsay rule as coconspirators?

MR. GIBBS: Well, I think if we actually have statements that we anticipate offering under that hearsay exception, I think that that is certainly a more appropriate time where we would need to actually articulate that they are unindicted coconspirators.

I think the defense in their pleading made the point -- and we do agree with it -- we wouldn't want to have to do this publicly, especially at this stage of the proceeding. We could certainly if, in fact, the -- and, again, the defense was exactly right. This is discretionary with Your Honor. But if Your Honor determined that in its discretion we needed to provide information related to individuals we believed were both coconspirators and whose statements we would

intend to offer as an exception to the hearsay rule, we would request that we do that in some form of letter or something to the defense where it's not done publicly at this stage.

THE COURT: All right. Anything further on that?

MR. GIBBS: Nothing further on that, Your Honor. Thank you.

THE COURT: Mr. MacDougall?

MR. MacDOUGALL: Nothing further, Your Honor. Thank you.

THE COURT: All right. With respect to the bill of particulars, I am going to order that the government identify any individuals whose statements they intend to introduce at trial as statements of a coconspirator in furtherance of the conspiracy. If the government thinks that that information needs to be provided by way of a protective order, it should discuss with counsel what that protective order is. If there are any issues there, just bring them to the attention of the Court.

With respect to the request for further information about the specific paragraphs of the indictment, I want to look at those a little more closely, and I'll get you an order out here very

quickly.

All right. Anything else on that?

MR. MacDOUGALL: Nothing further, Your Honor. Thank you.

THE COURT: All right. With respect to a trial date, I've looked at the motion.

Mr. Trout or Mr. MacDougall, anything else you want to tell the Court, since you filed that motion, about why you think a trial date in September is necessary? I will tell you: My reaction to the motion was we would have something in May or June. I'd be happy to hear from you as to why you think September is needed.

MS. MITCHELL: Thank you, Your Honor. May it please the Court. We had asked for an extended time period because, as counsel has conceded at the outset of this hearing, there is extensive discovery that's been provided to the tune of 10 terabytes on a couple of hard drives, as well as additional --

THE COURT: Right. Well, you've had a chance to start going through that now. I understand from the government's filings that they've tried to provide you some assistance --

MS. MITCHELL: And they have. In candor, they have been --

THE COURT: -- and they provided you some of their trial exhibits already.

MS. MITCHELL: That's absolutely correct, Your Honor. Notwithstanding that, we have our obligations and diligence to our client to look through this information, to look through these documents, and we are undertaking that.

Additionally, for the reasons that I'm confident Your Honor has reviewed in our *ex parte* filing, we have additional information that we are trying to track down on our own. While we have been doing that and working on that, not unexpectedly, we are running into some hurdles along the way and having difficulty getting our arms around all the information that's set forth in there. I think that will take some time. Once we achieve those goals, we'll need time to digest it and pull it together.

So we feel that a later trial date is good. If Your Honor is inclined, I think we could probably get ready maybe later -- perhaps June, July if that would please the Court.

I know it's not of utmost concern to the Court, but our client's daughter's wedding is the first week of August. So we'd like to make sure that we don't jam him up in that regard as well.

THE COURT: How long does the government think it's case in chief will take?

MR. GIBBS: We see this as a one-week trial, Judge.

THE COURT: All right. Give me a little more information about what it is that is going to take you a month to get your arms around and produce, Mr. Gibbs.

MR. GIBBS: You know, Your Honor, I think it really is sort of the last odds and ends of the discovery production. It would be some additional 302s, and again, we would have the defense come to the office to review those. It would be this video. I'm not sure there's a whole lot more beyond that. It's possible. We're being diligent as well. If we come across --

THE COURT: Right. As I understand it, Mr. MacDougall, you have a clearance.

But, Mr. Trout, yours is being processed; is that right?

MR. TROUT: That's right, Your Honor. I have finished my questionnaire. I thought I was going to get my fingerprints done today. I can't get it done today. It's going to be done on Friday.

THE COURT: All right.

MR. MacDOUGALL: Your Honor, I am,

apparently, from a prior case still qualified for clearance. I spoke with the security officer yesterday. She's contacting an equity holder for a compartment, and she hopes to have me ready in the next week.

THE COURT: All right. Mr. Gibbs, is that holding anything up in terms of what you're producing?

MR. GIBBS: No, Judge. Again, we've been in touch with Maura Peterson as well. We do have the one CIPA ruling from Your Honor we're waiting on. This is a -- I mean, there may be no documents that would require clearances. Obviously, out of an abundance of caution, we're proceeding with that.

THE COURT: All right. There are some aspects of the case that I appreciate may require a little more time to deal with than an ordinary case. I think that there will be more than ample time for a trial date in July. I'm going to set this down for trial on July 15.

I'm going to set some other dates as well. I'm going to set a date of April 1 for any Section 5 notices under CIPA by the defense. I'm going to set an April 15 motions deadline, and we'll have a hearing on any motions on May 10.

The Court will get an order out here shortly

on the remaining issues under the bill of particulars.

All right. Anything else?

MR. GIBBS: None from the government, Your Honor.

THE COURT: All right. Mr. MacDougall?

MR. MacDOUGALL: None from the government -- none from the defense, Your Honor. Sorry. It's been a long time.

THE COURT: I understand. Habits are hard to break sometimes.

All right. Very good. Thank you.

Counsel is excused. The Court will stand in recess.

----------------------------------

Time: 2:18 p.m.

I certify that the foregoing is a true and accurate transcription of my stenographic notes.

/s/
Rhonda F. Montgomery, CCR, RPR