**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| v. | : | **Criminal Case No. 1:18-CR-457 (AJT)** |
| | : | |
| **BIJAN RAFIEKIAN** | : | |
| | : | |
| and | : | |
| | : | |
| **KAMIL EKIM ALPTEKIN,** | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM IN SUPPORT OF DEFENDANT RAFIEKIAN'S**
**UNOPPOSED MOTION FOR A RULE 17(c) SUBPOENA**

Defendant Bijan Rafiekian submits this Memorandum in Support of his Motion under Rule 17(c) of the Federal Rules of Criminal Procedure for the issuance of subpoenas to Covington & Burling LLP ("Covington") and Kristen Verderame ("Verderame"). The requested subpoenas seek specific documents as described below and in Attachment A to the proposed form of subpoena, including: (a) certain corporate records of Flynn Intel Group, Inc. and (b) the client file including all notes, billing entries, memoranda, correspondence, research, and related documentation associated with Covington's legal advice to and representation of Flynn Intel Group, Inc.

**BACKGROUND**

A.   **The Corporation at Issue**

At the core of the Indictment in this case are the actions of a corporation assigned the pseudonym "Company A" and the activities of lawyers associated with Covington. "Company A" is Flynn Intel Group, Inc. ("FIG" or "the Corporation"), a corporation organized under the

1

laws of Delaware. According to public records maintained by the Delaware Secretary of State, FIG was incorporated on or about June 17, 2015, and dissolved on April 10, 2018, pursuant to a certificate of dissolution certified by Michael T. Flynn.

Mr. Rafiekian was the initial shareholder of FIG and later became a principal shareholder. During the life of the Corporation, Mr. Rafiekian served as a senior officer, the sole director, and at least since January 1, 2017, as one of only two members of the board of directors of FIG. According to the Corporation's duly adopted by-laws, Mr. Rafiekian was initially named Chairman of the Board, President, and Secretary of the Corporation.[1] As a principal shareholder, Mr. Rafiekian held 300,000 shares of the company's common stock out of a total 1,000,000 authorized common shares.

The records of the Delaware Secretary of State reflect that FIG has been dissolved, but how that dissolution lawfully took place is a mystery. On March 25, 2018, without notice or disclosure to Mr. Rafiekian, Mr. Flynn evidently attested to and signed a certificate of dissolution to end the corporate life of FIG. On April 10, 2018, a certificate of dissolution, purportedly executed by Mr. Flynn, was filed with the Delaware Secretary of State.[2] The execution and filing of the certificate of dissolution terminated the legal existence of the Corporation. In that certificate of dissolution, Mr. Flynn attested and certified that (a) the dissolution of the Corporation was authorized on March 25, 2018, (b) the dissolution was authorized by the board of directors and shareholders in accordance with the Delaware General Corporation Law, and (c) the only directors of FIG were Mr. Flynn and Mr. Rafiekian. Despite Mr. Flynn's sworn

---

[1] *See* Flynn Intel Group State of Delaware Certificate of Incorporation and Bylaws (June 17, 2015), attached hereto as Exhibit A.
[2] *See* Flynn Intel Group State of Delaware Certificate of Dissolution (Apr. 10, 2018), attached hereto as Exhibit B.

attestations to the Delaware Secretary of State that the requisite board and shareholder action took place before the Corporation was dissolved, Mr. Rafiekian—who constituted half of the board of directors and held approximately one third of the capital stock—received no notice and knew nothing about these purported corporate proceedings that are the subject of Mr. Flynn's sworn statement to the Delaware Secretary of State.[3]

### B. Counsel for the Corporation

Lawyers associated with Covington provided extensive legal advice to FIG at various times after the Corporation was organized. Statements allegedly made by Mr. Rafiekian and by others to the Covington lawyers figure prominently in the Indictment and in the evidence in this case (see, for example, Indictment at ¶¶ 52 to 54). At all relevant times, the Covington lawyers held themselves out to agencies of the United States government and others as counsel engaged by and representing FIG. The same Covington lawyers also indicated that they represented Mr. Flynn, and continue to represent him in his ongoing criminal case in the U.S. District Court for the District of Columbia.[4]

---

[3] If the Covington lawyers or Ms. Verderame were aware of this action, they would presumably have notified Mr. Rafiekian and otherwise acted in a manner consistent with their obligations under Rule 1.13 of the D.C. Rules of Professional Conduct, which provides: "If a lawyer for an organization knows that an officer, employee, or other person associated with the organization is engaged in action, intends to act or refuses to act in a matter related to the representation that is a violation of a legal obligation, or a violation of law which reasonably might be imputed to the organization, and is likely to result in substantial injury to the organization, the lawyer shall proceed as is reasonably necessary in the best interest of the organization. Unless the lawyer reasonably believes that it is not necessary in the best interest of the organization to do so, the lawyer shall refer the matter to higher authority in the organization, including, if warranted by the circumstances, to the highest authority that can act on behalf of the organization as determined by applicable law." D.C. RULES OF PROF'L CONDUCT 1.13.

[4] *See* Notice of Att'y Appearance, United States v. Flynn, 17-cr-232 (D.D.C. Dec. 11, 2017), ECF No. 2.

On November 30, 2017, Mr. Flynn pled guilty to lying to federal agents in violation of 18 U.S.C. § 1001 and entered into a cooperation agreement with the government.[5]

Pursuant to his plea agreement, Mr. Flynn agreed to provide cooperation and assistance to government agents and prosecutors in connection with this case. The Covington lawyer representing Mr. Flynn, at his most recent sentencing hearing in the U.S. District Court for the District of Columbia, stated on the record his hope and expectation that Mr. Flynn will be called to testify in the instant case and provide testimony against Mr. Rafiekian—his friend and former business partner charged with very serious crimes.[6]

Kristen Verderame, an attorney admitted to practice law in the District of Columbia, also provided legal services to the Corporation at various times personally and in collaboration with Covington. Ms. Verderame is not believed to be a member or employee of Covington or to otherwise have integrated her legal practice with that of Covington.

In or before August 2018, several months *after the legal dissolution* of FIG by Mr. Flynn, Covington repeatedly took actions and made representations to third parties—including other lawyers—in the name of and on behalf of the Corporation.[7] These actions and representations include, but are not limited to, (a) authorizing and communicating to government lawyers waivers of the Corporation's attorney-client privilege and rights under the attorney work product doctrine and (b) authorizing and communicating waivers of the attorney-client privilege and

---

[5] *See* Plea Agreement, United States v. Flynn, 17-cr-232 (D.D.C. Dec. 11, 2017) (available at https://www.justice.gov/file/1015121/download).

[6] *See* Transcript of Sentencing Proceeding at 46, United States v. Flynn, 17-cr-232 (D.D.C. Dec. 11, 2018) (available at https://www.justsecurity.org/wp-content/uploads/2018/12/121818am-USA-v-Michael-Flynn-Sentencing.pdf).

[7] *See* Letter from Robert K. Kelner, Covington & Burling LLP, to James P. Gillis and Evan N. Turgeon, Assistant United States Attorneys (June 13, 2018) (The USAO "has requested

work product doctrine to one or more other lawyers who had represented FIG during its legal existence in order to induce those lawyers to make disclosures of otherwise privileged information to the government. The question of how Covington could have lawfully issued sophisticated instructions to the government and to other lawyers who had advised the Corporation regarding waivers of the Corporation's attorney client privilege—long after FIG had evidently been dissolved by action of their client Mr. Flynn—suggests no obvious answer.

C. **The Documents Sought by Mr. Rafiekian**

The two Rule 17(c) subpoenas sought by Mr. Rafiekian pursuant to the instant Motion would be issued to (i) Covington and (ii) Ms. Verderame and would seek production of substantially the same books, records, data, files, correspondence, corporate proceedings, and other information, all relating to legal advice and counsel given to FIG by Covington and Ms. Verderame, respectively.

1. <u>Specific Corporate Records</u>

The requested Rule 17(c) subpoenas issued to each of Covington and Ms. Verderame seek copies of the following specific corporate records:

1. The board of directors' resolution, meeting minutes, or unanimous written consent authorizing the dissolution of FIG on March 25, 2018, as attested in the certificate of dissolution filed by Michael T. Flynn.

2. Any board of directors' resolution, meeting minutes, or unanimous written consent that resulted in the election of Michael Flynn (and any other person) to serve as an officer, director, or both of FIG.

3. The shareholders' resolution, meeting minutes, or unanimous written consent of the shareholders of FIG affirming dissolution of the corporation as attested in the certification of dissolution filed by Mr. Flynn.

---

to interview *our client* . . . Flynn, in connection with an investigation by the USAO regarding the registration by *our client* the Flynn Intel Group, Inc . . ."). The letter is attached as Exhibit C.

5

4. Any and all engagement letters executed on behalf of FIG with Covington or Ms. Verderame.

5. Any board resolution, consent, or other writing that authorizes or otherwise permits the waiver by FIG of the corporate attorney-client privilege or attorney work product doctrine on behalf of the Corporation by Covington or Ms. Verderame.

6. Any board resolution, consent, or other writing that authorizes or otherwise permits Covington to inform Robert N. Kelley—or any other lawyer who provided legal advice to FIG—of the purported waiver of the attorney-client privilege or attorney work product doctrine by FIG.

7. Any documents or correspondence detailing the identity of the lawyer or lawyers who prepared and filed the corporate dissolution certificate that was signed by Mr. Flynn on March 25, 2018 and filed with the Delaware Secretary of State on April 10, 2018.

Mr. Rafiekian, through his counsel, made multiple attempts on January 24, 2019 and January 30, 2019 to contact Ms. Verderame regarding her representation of FIG and the foregoing list of corporate records. When finally contacted, Ms. Verderame directed undersigned counsel to speak with Covington, stating that Covington "would have any information I would have anyway since I handed everything over to [the firm]."[8] By letter of February 7, 2019, undersigned counsel requested from Covington the above documentation and associated information in Covington's possession relating to FIG. Despite several intervening requests, to date, Covington has produced none of the requested documents.

2. FIG's Client File and Associated Records

In addition to the seven sets of specific corporate records delineated above, Attachment A to the proposed Rule 17(c) subpoenas seeks production of the entire client file maintained by each of Covington and Ms. Verderame, relating to their respective legal representation of FIG. Such request includes, but is not limited to: all notes, recordings, memoranda, correspondence,

---

[8] Email from Kristen Verderame to Mark MacDougall (Jan. 30, 2019).

research, electronic communications, timesheets, billing records, and other documents associated with their legal representation of FIG including, but not limited to the preparation and submission of all registration materials and correspondence related to the registration of the Corporation under the Foreign Agents Registration Act.

## ARGUMENT

**The Requested Subpoena Should Be Issued.**

Mr. Rafiekian is legally entitled to the requested corporate records in his capacity as an officer, director, and principal shareholder of FIG. *See Henshaw v. Am. Cement Corp.*, 252 A.2d 125, 128 (Del. Ch. 1969) ("[D]irector of a Delaware corporation has the right to inspect corporate books and records"); *Amalgamated Bank v. Yahoo! Inc.*, 132 A.3d 752, 781 (Del. Ch. 2016) ("[M]anagement of the business and affairs of a Delaware corporation is entrusted to its directors, who are the duly elected and authorized representatives of the stockholders.") (internal quotation and citation omitted). And, Mr. Rafiekian is entitled to the requested records irrespective of the reason for his request. *State ex rel. Dixon v. Missouri-Kansas Pipe Line Co.*, 42 Del. 423, 428 (Del. Super. Ct. 1944) ("[A] Director need not state to his fellow Directors the reason for a desired examination by him of the corporate records, and [] fellow Directors cannot require such reasons.").

Mr. Rafiekian has been forced to seek Rule 17(c) subpoenas in an effort to obtain corporate records to which he is legally entitled because Covington has failed to produce these records following a written request that they do so on February 7, 2019. Rule 17(c) provides for subpoenas requiring the production of documents or data. *See* FED. R. CRIM. P. 17(C). The Fourth Circuit has held that Rule 17(c) "implements the Sixth Amendment guarantee that an accused have compulsory process to secure evidence in his favor." *United States v. Caro*, 597

F.3d 608, 619-20 (4th Cir. 2010) (quoting *In re Martin Marietta Corp.*, 856 F.2d 619, 621 (4th Cir. 1988)).  Under Rule 17(c), the court is authorized to "direct the witness to produce the designated items in court before trial *or before they are to be offered in evidence*." FED. R. CRIM. P. 17(c)(1) (emphasis added).  Courts in this Circuit routinely order the pretrial production of documents under Rule 17(c), which expressly contemplates pre-trial production of records in order to "expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951); *see also In re Martin Marietta Corp.*, 856 F.2d at 621 (upholding district court order compelling pre-trial production of materials under Rule 17(c)).

In *Caro*, the Fourth Circuit applied the standard announced in *United States v. Nixon*, 418 U.S. 683 (1974) to the issuance of Rule 17(c) subpoenas to third parties.  In *Nixon*, the Supreme Court required the requesting party to show:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*Nixon*, 418 U.S. at 699–700.  "Accordingly, a defendant seeking a Rule 17(c) subpoena 'must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity.'" *Caro*, 597 F.3d at 620 (quoting *Nixon*, 418 U.S. at 700).

The Fourth Circuit previously affirmed a defendant's right to obtain evidence through issuance of a Rule 17(c) subpoena in an analogous case.  In *In re Martin Marietta Corp.*, the defendant sought through Rule 17(c) subpoenas notes, transcripts, electronic filings, and an internal audit relating to an Administrative Settlement Agreement.  856 F.2d at 622.  Ultimately,

the court held that the defendant's Rule 17(c) subpoenas were warranted and satisfied the *Nixon* requirements. *See id.* The court noted that the defendant's six-category subpoena was limited in scope and satisfied the specificity requirement of Rule 17(c). *See id.* at 621–22.

The *Nixon* court left open the possibility that the "evidentiary" requirement—which does not appear in the text of Rule 17—does not apply to defense subpoenas to third parties. *See*, *e.g.*, *United States v. Nachamie*, 91 F. Supp. 2d 552, 562–63 (S.D.N.Y. 2000) (stating that the appropriate test for a Rule 17(c) subpoena to a third party is whether it was "(1) reasonable, construed using the general discovery notion of 'material to the defense;' and (2) not unduly oppressive for the producing party to respond"). While Mr. Rafiekian submits that the appropriate standard for subpoenas served on third parties is the standard described in *Nachamie*, the proposed subpoena passes the test applied in both *Nachamie* and *Caro.*

This Court has emphasized that a Rule 17(c) subpoena from a defendant to a third party does not run the risk of creating an "end-run" around Rule 16 discovery. *See*, *e.g.*, *United States v. King*, 194 F.R.D. 569, 573 n.3 (E.D.V.A. 2000) ("Although district courts are admonished that their discretion in issuing Rule 17(c) subpoenas is circumscribed by the responsibility to prevent Rule 17(c) from being improperly used as a discovery alternative to FED. R. CRIM. P. 16, where, as here, the subpoena is directed to a third party, that precise problem is not presented because Rule 16 regulates the discovery obligations of the United States and the defendant, and does not address how the United States or the defendant may secure evidence in the possession of third-parties.").

As a threshold matter, the documents sought through the requested Rule 17(c) subpoenas are specific. They focus on corporate records and related filings for a period of approximately three years. Just like the requests in *In re Martin Marietta Corp.*, which sought documents and

correspondence relating to an Administrative Settlement Agreement, Mr. Rafiekian is only requesting information relating to FIG. And, unlike the subpoenas at issue in *Caro*, which sought documents spanning a twenty-year period, these requests cast a narrow net and cannot be described as a "fishing expedition." *See Caro*, 597 F.3d at 616–17, 620.

Moreover, the documents sought under the requested Rule 17(c) subpoenas are not the property of Covington or Ms. Verderame. *See United States v. Wujkowski*, 929 F.2d 981, 984 (4th Cir. 1991) ("[R]ecords of a corporation belong to the corporation and [] the holder of the records is simply a custodian who has assumed a duty to produce the records upon proper demand . . ."). Rather, the requested materials—notably including the full client file—was the property of the Corporation (until the filing by Mr. Flynn of the certificate of dissolution assuming that certificate was lawfully executed). That ambiguity notwithstanding, there is nothing to suggest that these documents are the property of Ms. Verderame or Covington.

Further, the law is well settled that a client as well as a former client retains a property interest in its file that is superior to any interest of the attorney. *Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn L.L.P.*, 91 N.Y.2d 30, 36 (1997). "An attorney is obligated to deliver to the client, not later than promptly after representation ends, such originals and copies of other documents possessed by the lawyer relating to the representation as the . . . former client reasonably needs." *Id* at 35 (internal quotation omitted).

The corporate records and related disclosures associated with FIG are unquestionably relevant to the defense of this case and directly relate to the offenses charged in the Indictment, which alleges that "[f]rom approximately January 2017 through approximately March 2017, outside attorneys for [FIG] gathered information to determine whether [FIG] or any of its employees had an obligation to register under FARA." Indictment ¶ 52. The requested

10

documents directly relate to the circumstances surrounding FIG's dissolution and purported waiver of applicable privileges, including the legitimacy of the board's consent to the dissolution of FIG and the authority of FIG's outside counsel to grant a series of waivers of the attorney-client and related privileges on behalf of the company. The documents identified in Attachment A, as being Covington client files, are also necessary to the defense. From the Indictment it is clear that the government believes it has evidence from FIG's outside lawyers that Mr. Rafiekian lied to the lawyers who were investigating the facts to determine whether to register under FARA and what to say in any FARA filing. While the lawyers have apparently provided information to the government about what Mr. Rafiekian said to them, the requested documents will include the underlying documents created in real time, such as notes or memos about the conversations with Mr. Rafiekian and with Mr. Flynn as well as with any other person who provided information on which the lawyers may have relied in preparing the FARA filings.[9] Other documents, such as timesheets, invoices and the like will show when, for how long, and who else was present for any such conversations with FIG representatives. Lastly, the documents requested from FIG's outside counsel will allow the defense to develop at trial whether FIG's outside counsel (i) gathered from Mr. Rafiekian information that he believed was privileged and (ii) used that otherwise privileged information that was obtained from one shareholder (Mr. Rafiekian) for the exclusive benefit of another shareholder (Mr. Flynn) in an admitted effort to reduce Flynn's sentence in the case to which he has pled guilty in the District of Columbia. *See* Transcript of

---

[9] Mr. Rafiekian should have not just the underlying documents purporting to show what he said to the lawyers preparing the FARA filings. He should also receive the underlying documents showing what any FIG representative may have said to the lawyers. For example, why should a jury believe that Mr. Rafiekian should be responsible for information given to Covington, if the same or more detailed information was also given by Mr. Flynn on a matter about which Mr. Flynn was more knowledgeable.

Sentencing Proceedings at 46:8–47:21, *United States v. Michael Flynn*, No. 17-232 (D.D.C. Dec. 18, 2018).  These documents are critical to Mr. Rafiekian's defense, they are records to which he is legally entitled irrespective of any discovery obligations, and they are not privileged or otherwise protected by any cognizable legal doctrine or rule.

## CONCLUSION

For the foregoing reasons, Mr. Rafiekian respectfully moves this Court to grant his motion for a Rule 17(c) subpoena and that the proposed subpoena be issued directing Covington and Ms. Verderame to produce the requested documents no later than March 18, 2019.

Dated: March 1, 2019                                          Respectfully submitted,

*/s/*
Mark J. MacDougall (*Pro Hac Vice*)
Stacey H. Mitchell (*Pro Hac Vice*)
*Counsel for Bijan Rafiekian*
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036
Telephone:  (202) 887-4000
Fax:  (202) 887-4288
E-mail:   mmacdougall@akingump.com
              shmitchell@akingump.com

*/s/*
Robert P. Trout (VA Bar # 13642)
*Counsel for Bijan Rafiekian*
Trout Cacheris & Solomon PLLC
1627 Eye Street, NW
Suite 1130
Washington, DC 20006
Telephone:  (202) 464-3311
Fax:  (202) 464-3319
E-mail:   rtrout@troutcacheris.com