IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 1:18-CR-457-AJT |
| BIJAN RAFIEKIAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL RECORDS

For the reasons that follow, the United States respectfully requests that the Court deny the defendant's motion to compel production of certain FBI summaries of interviews (302s) and other documents.

INTRODUCTION

To be perfectly clear, the government has already permitted the defense to review a number of 302s, including several 302s of General Flynn. We have offered upon reasonable conditions to give the defense an opportunity to review all of the General's 302s that were generated during its investigation of the crimes charged in the indictment,[1] *as well as* the 302s for all but one[2] of the other witnesses interviewed in connection with the present charges. Under similar conditions, we have invited the defense to review redacted versions of General Flynn's

---

[1] The conditions the government requested are listed in the attachment. We offered to negotiate these terms, but we have not heard from the defense. It is interesting, therefore, that the defense has filed this motion for all of General Flynn's unrelated 302s when that have not even taken the opportunity to review those actually relevant to this prosecution.

[2] This individual's identity is being protected for the time being to prevent any reprisals or tampering involving the witness.

302s that contain any mention the defendants or any reference to the other individuals or entities involved in the charged conspiracy – regardless of whether they relate to this prosecution or to other investigations by the Special Counsel's Office. So far, despite two requests, the defense has not provided a counterproposal to the conditions we have proposed.

Thus, as the case law, statutes, and rules make clear, the United States has far exceeded its discovery obligations and, in particular, has gone well beyond anything required by *Giglio* or its descendants. We draw the line, however, at the wholesale disclosure of information having no relevance or legitimate utility to the defense, particularly given the obvious sensitivity of the topics covered in interviews of General Flynn that have no relationship to the charges pending against the defendant.[3]

Taken to its logical conclusion, the defendant's request would require the production of *every* 302 in *every* case. As the defense position implicitly posits, the government is either incompetent to recognize, or corruptly unwilling to reveal, evidence that would constitute *Giglio* information concerning General Flynn. Apart from his notoriety, there is nothing unusual about General Flynn as a government witness. Thus, if the defendant's argument could be true for this witness – and it is emphatically not true – it would be equally true for *any* of the government's witnesses in *any* of its cases.

Moreover, the defendant's tortured logic would not end there. To ensure that the government was fulfilling its *Giglio* obligations, it would be necessary for the defense to review the entire personnel file of every testifying agent or other government witness so that the defense could make its own assessment of the value of any of that information. And why stop there? It

---

[3] For example, among other matters, the 302s contain information concerning ongoing investigations.

would also be necessary for the defendant to review the entire FBI case file lest there be some *Brady* or *Giglio* information lurking there that might have been overlooked or suppressed by the government. This is not some hypothetical parade of horribles. This is the inevitable extension of the defendant's argument, and it must be rejected.

ARGUMENT

I. *Brady* AND *Giglio* ARE PROSECUTORIAL DUTIES, NOT DISCOVERY TOOLS.

As the United States always has uppermost in its mind, "[t]he suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). This is a sacred duty, and we recognize that it is not diminished by the myriad holdings that *Brady* is not to be used as a discovery tool.[4]

We scrupulously observe that "[t]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). But the key word here is *prosecutor*. As the Supreme Court has expressly held, it is the duty of the government, not the defense, to review its files for the presence of *Brady* or *Giglio* information.

> A defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the Commonwealth's files. Although the eye of an advocate may be helpful to a defendant in ferreting out information,

---

[4] "*Brady* requests cannot be used as discovery devices." *United States v. Caro*, 597 F.3d 608, 619 (4th Cir. 2010). "There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one". *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *see also United States v. Wolf*, 860 F.3d 175, 193 (4th Cir. 2017). "Discovery request may not be so broad and baseless as to constitute a fishing expedition." *United States v. Wilson*, 901 F.2d 378, 381 (4th Cir. 1990).

3

> this Court has never held . . . that a defendant alone may make the determination as to the materiality of the information. Settled practice is to the contrary. In the typical case . . . , it is the State that decides which information must be disclosed. Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, *the prosecutor's decision on disclosure is final*. Defense counsel has no constitutional right to conduct his own search of the State's files to argue relevance.

*Pennsylvania v. Ritchie*, 480 U.S. 39, 59–60 (1987) (citations and footnote omitted, emphasis added).

The Court should decline the defendant's request to create contrary precedent. As another district court has observed:

> The Government has represented, throughout this case, that it understands its *Brady* obligations, that it has produced all *Brady* material in its possession, and that it will continue to comply with its *Brady* obligations. With respect to *Giglio* requests, the Government indicates that it will disclose impeachment material well in advance of trial. Thus, further involvement or order from this Court is unnecessary at this time. . . . [T]he Court does not seek to set a precedent of such close regulation or policing of discovery. This is especially appropriate here, where the Court has not been presented with evidence of bad faith by the Government, and has no reason to doubt as to the Government's representations.

*United States v. Wilson*, No. 15-CR-00142-EAW-MJR, 2017 WL 1456984, at *6 (W.D.N.Y. Apr. 25, 2017) (footnote omitted), *aff'd sub nom. United States v. Pirk*, 282 F. Supp. 3d 585 (W.D.N.Y. 2017).

As the defendant himself has said in his motion, "the government provided assurances that it would 'of course comply with all of [the government's] *Brady*, *Giglio*, *Jencks*, and Rule 16 obligations.'" The Court has been presented with no reason to doubt this. Accordingly, as the Supreme Court has directed, unless the defendant shows "that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final." *Ritchie*, 480 U.S. at 59–60. The defendant's motion should be denied.

II.   FD-302S ARE NOT DISCOVERABLE UNDER THE JENCKS ACT OR THE FEDERAL RULES.

The Jencks Act applies to the production of a "statement or report in the possession of the United States which was made by a Government witness or prospective Government witness."

4

18 U.S.C. § 3500. Except as to the agent who prepared it, however, a 302 does not constitute the testifying witness's statement, cannot be used in an attempt to impeach a witness,[5] and is therefore not discoverable as *Jencks* material. Indeed, the Jencks Act virtually prohibits disclosure:

> One of the most important motive forces behind the enactment of this legislation was the fear that an expansive reading of *Jencks* would compel the undiscriminating production of agent's summaries of interviews regardless of their character or completeness. Not only was it strongly feared that disclosure of memoranda containing the investigative agent's interpretations and impressions might reveal the inner workings of the investigative process and thereby injure the national interest, but it was felt to be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations.

*Palermo v. United States*, 360 U.S. 343, 350 (1959).

The Fourth Circuit has made a similar observation:

> Congress, however, became concerned with the later "expansive reading of *Jencks*" by federal courts, and chose by enacting § 3500 . . . to "exercise its [own] power to define" the material producible for purpose of impeachment in a criminal trial in the federal courts, in order "to exclude from that definition various kinds of material which lower federal courts had been requiring the Government to produce because they had misinterpreted the narrow holding of the *Jencks* case itself."

*United States v. Hinton*, 719 F.2d 711, 715 (4th Cir. 1983) (footnote omitted, citations omitted).

---

[5] As a general rule, courts forbid the introduction of extrinsic evidence to contradict testimony that is collateral or non-material to the case in chief. *See United States v. Kohli*, 847 F.3d 483, 492-93 (7th Cir. 2017*); Simmons, Inc. v. Pinkerton's, Inc.*, 762 F.2d 591, 604 (7th Cir. 1985). *United States v. Kozinsky*, 16 F.3d 795, 805 (7th Cir. 1994). Referred to as the "collateral matter rule," if the matter being contradicted is deemed collateral, the opposing party may only seek to prove up the contradiction through the testimony of the witness being contradicted. *United States v. Payne*, 102 F.2d 289, 294 (7th Cir. 1996). Absent the collateral matter rule, the Court would end up conducting inefficient "mini-trials" in the middle of the case in chief if parties could introduce extrinsic evidence to contradict on any point merely for the sake of contradiction. *Simmons, Inc.*, 762 F.2d at 604.

For this reason, the Fourth Circuit has been abundantly clear "that the Jencks Act [does] not require the government to turn over 302 reports written by FBI agents about witness interviews." *United States v. Roseboro,* 87 F.3d 642, 646 (4th Cir. 1996). "The notes of a government agent who has interviewed a witness do not constitute the witness's 'statements' in this context unless the witness has adopted those notes or the notes recite the witness's oral statements substantially verbatim." *United States v. Cavazos*, 542 F. App'x 263, 271 (4th Cir. 2013). The Fourth Circuit has also held that an agent's rough notes are also "not discoverable as either Jencks or *Brady* materials" unless they in fact contain exculpatory material. *United States v. Morgan*, 962 F.2d 8 (4th Cir. 1992).

Courts in this District have adhered to this rule. "An FBI FD–302 report has been held not to constitute material within the meaning of the Supreme Court's decision in *Jencks*. Although the Supreme Court held in *Jencks* that a criminal defendant has a constitutional right to inspect, for impeachment purposes, prior statements made to government agents by government witnesses, not all agent reports of an interview may be considered a statement for Jencks purposes." *United States v. Ward*, 85 F. Supp. 2d 629, 631 (E.D. Va. 2000) (Smith, J.) For purposes of both 18 U.S.C. § 3500(b) and FED. R. CRIM. P. 26.2(a), a "statement" need not be "the witness'[s] actual words." *United States v. Poulin*, 461 F. App'x 272, 285 (4th Cir. 2012) (citation omitted). Nonetheless, "it must in some way have been adopted or approved by the witness." *Id*.

Finally, even if a 302 constituted a "statement" of a witness – which of course it does not – even that would not justify giving the defendant access to all of General Flynn's 302s. The Act and the federal rules expressly state that a defendant is only entitled to the part of a witness's "statement" that "relates to the subject matter of the witness's testimony." FED. R. CRIM. P. 26.2.

6

*See also* 18 U.S.C. § 3500(c). But we have already produced or offered to produce all of the General's 302s that would even arguably relate to his testimony at trial. Moreover, the 302s and parts of 302s that have nothing to do with the allegations or testimony of General Flynn *still* do not go to the defendant. Instead, "the court must inspect the statement in camera." *Id.* And even then, the standard discovery order in this District provides that *Jencks* material be produced five days before trial. Of course, all of this is entirely academic, since the Fourth Circuit has made plain that a 302 is simply not *Jencks* material. Again, the defendant's motion fails.

III. CONCLUSION

For these reasons, the United States respectfully requests that the Court deny the defendant's Motion To Compel Records.

Respectfully submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

| /s/ | By: /s/ |
|---|---|
| Evan N. Turgeon | James P. Gillis |
| Trial Attorney | Virginia Bar No. 65055 |
| Counterintelligence | John T. Gibbs |
|    and Export Control Section | Virginia Bar No. 40380 |
| National Security Division | Assistant United States Attorneys |
| United States Department of Justice | S. Katie Sweeten |
| 950 Pennsylvania Ave., NW | Special Assistant United States Attorney |
| Washington, DC 20530 | The Justin W. Williams |
| (202) 353-0176 |    United States Attorney's Office |
| Evan.Turgeon@usdoj.gov | 2100 Jamieson Avenue |
| | Alexandria, VA 22314 |
| | (703) 299-3700 |
| | (703) 299-3982 (fax) |
| | James.P.Gillis@usdoj.gov |
| | John.Gibbs@usdoj.gov |

CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2019, I electronically filed the foregoing using the CM/ECF system, which will send a notification of such filing to counsel of record.

Respectfully submitted,

/s/
James P. Gillis
Assistant United States Attorney