IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 1:18-CR 457 AJT |
| ) | |
| BIJAN RAFIEKIAN ) | |
| ) | |
| Defendant. ) | |

## NON-PARTY COVINGTON & BURLING LLP'S
## MEMORANDUM IN SUPPORT OF MOTION TO QUASH SUBPOENA IN PART

Pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure, non-party Covington & Burling LLP respectfully requests that this Court quash Item 8 of the subpoena served upon Covington by the Defendant, Bijan Rafiekian, which calls for production of attorney-client and work product privileged materials and imposes an undue burden. Covington has already accommodated Defendant by producing to his counsel any materials in its possession responsive to Items 1 through 7 of the subpoena, which did not call for production of privileged documents or information.

### INTRODUCTION

This motion seeks to quash, in part, a March 5, 2019 subpoena issued to Covington that, in relevant part, directs Covington to produce to counsel for Defendant Bijan Rafiekian "Covington's FIG [Flynn Intel Group, Inc.] client file, including, but not limited to, notes, memoranda, timesheets, billing records, and other documents associated with" the March 7, 2017 Foreign Agents Registration Act ("FARA") filing that Covington made on behalf of FIG. (*United States v. Rafiekian*, 1:18-CR-457, Docket No. 67, at 4).

DC: 6993911-2

Covington asks the Court to quash Item 8 of the subpoena in its entirety, because it encompasses documents over which FIG retains attorney-client and work product privileges. Moreover, the subpoena is overbroad and oppressive because it demands production of documents created over the course of a multi-year representation, the vast majority of which are not relevant, let alone essential, to the Defendant's trial defense regarding a FARA registration made near the outset of Covington's representation of FIG in March 2017.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In late December 2016, Covington was engaged by FIG, a consulting firm then based in Alexandria, Virginia, as well as by FIG's Chief Executive Officer, Lt. General Michael T. Flynn (Ret.), in his personal capacity, to represent them jointly in connection with an inquiry by the U.S. Department of Justice concerning their compliance with FARA. (*See* Declaration of Robert Kelner, at ¶ 2.) Subsequently, Covington represented both clients in investigations by the U.S. Attorney's Office for the Eastern District of Virginia and the Special Counsel's Office. (*See id.* at ¶ 3.) Both the U.S. Attorney's Office and the Special Counsel investigated the accuracy of statements made in the March 7, 2017 FARA filings, and those filings are now at the heart of the Indictment against the Defendant in this case.

Shortly after being contacted by the Special Counsel's Office in the fall of 2017, General Flynn began cooperating with the Special Counsel's investigation, and that cooperation was formalized in a plea agreement on December 1, 2017. (*See id.* at ¶ 4.) He cooperated extensively with the Special Counsel's Office, and, pursuant to his plea agreement, he continues to cooperate with the U.S. Attorney's Office in connection with this criminal case. (*See id.* at 5.)

During the course of his cooperation, General Flynn, as the CEO of FIG, authorized Covington, as counsel to FIG, to enter into an agreement under which Covington would share with the U.S. Attorney's Office certain factual information concerning the preparation of the March 7, 2017 FARA filing and would authorize FIG's former in-house general counsel, Robert Kelley, to be interviewed regarding legal advice he had provided to FIG, prior to Covington's retention, concerning whether FIG was required to register under FARA. (*See id.* ¶ 6 & Ex. B.)

In particular, the U.S. Attorney's Office sought a copy of a declaration that Covington had earlier obtained from Mr. Kelley. On behalf of its client FIG, Covington agreed (with the assent of Defendant's counsel in this case) to provide this declaration to the U.S. Attorney's Office. Covington did so on the condition that the U.S. Attorney's Office agree that, "to the extent the document memorializes privileged legal advice or other privileged communications, and to the extent, if any, that the document itself is deemed to be attorney work product, by producing the document to you FIG does not waive attorney-client privilege or work product privilege, except with respect to the document itself and advice that Robert Kelley provided to FIG concerning whether or not it was required to register under FARA." (*Id.* ¶ 7, Ex. B, at 1.) The U.S. Attorney's Office agreed to this stipulation. (*Id.* at 3.)

The U.S. Attorney's Office sought to question Mr. Kelley and his deputy regarding any legal advice they provided FIG concerning registration under FARA. On behalf of FIG, Covington authorized the U.S. Attorney's Office to do so, on condition that the Government agree that it would not assert that, "by authorizing you to question Mr. Kelley and Mr. Spencer concerning such legal advice, General Flynn or FIG has waived any privilege with respect to Covington & Burling's subsequent defense of General Flynn and FIG in connection with the Department of Justice's FARA investigation or Covington's legal advice to FIG and General

—3—

Flynn regarding their submissions to the [Department of Justice] FARA Registration Unit." (*Id.*, at 1.) The U.S. Attorney's Office agreed to this stipulation. (*Id.* at 3.)

Covington, on behalf of its clients, FIG and General Flynn, also authorized the U.S. Attorney's Office to ask General Flynn about "the contents of [the FARA] submissions and *factual information* he or others shared or did not share with Covington & Burling lawyers who were working on preparation of the letter and subsequent filing," on the condition that the U.S. Attorney's Office agree that, "to the extent we take the position that such purely factual communications in connection with preparation of the FARA filing were not privileged, you will not assert that any waiver of privilege resulted from General Flynn's answering those questions." (*Id.* at 2) (emphasis added).

Lastly, as authorized by General Flynn, as CEO of FIG, Covington permitted the U.S. Attorney's Office to interview Covington attorneys solely with respect to certain narrowly defined *factual* matters. The Government agreed to limit its questions to cover only factual representations made to counsel by FIG personnel in connection with preparation of FIG's FARA filing; the sources of those factual representations; information concerning who reviewed drafts of the FARA filing and their comments, corrections, or questions; and how counsel received those communications from FIG personnel concerning the content of the FARA filing. (*Id.* at 2.)

On February 7, 2019, Covington received a letter from the Defendant's attorney, Mark MacDougall (Kelner Decl. ¶ 12, Ex. C), requesting that the firm provide copies of the following documents:

1. The board of directors' resolution, meeting minutes, or unanimous written consent authorizing the dissolution of FIG on March 25, 2018, as attested in the certificate of dissolution filed by Michael T. Flynn;

2. Any board of directors' resolution, meeting minutes, or unanimous written consent that resulted in the election of Michael Flynn (and any other person) to serve as an officer, director, or both of FIG;

3. The shareholders' resolution, meeting minutes, or unanimous written consent of the shareholders of FIG affirming dissolution of the corporation as attested in the certification of dissolution filed by Mr. Flynn;

4. Any and all engagement letters executed on behalf of FIG with Covington;

5. Any board resolution, consent, or other writing that authorizes or otherwise permits the waiver by FIG of the corporate attorney-client privilege or attorney work product doctrine on behalf of the corporation by Covington;

6. Any board resolution, consent, or other writing that authorizes or otherwise permits Covington to inform Robert N. Kelley—or any other lawyer who provided legal advice to FIG—of the purported waiver of the attorney-client privilege or attorney work product doctrine by FIG;

7. Any documents or correspondence detailing the identity of the lawyer or lawyers who prepared and filed the corporate dissolution certificate that was signed by Mr. Flynn on March 25, 2018, and filed with the Delaware Secretary of State on April 10, 2018.

*(see id.* Ex. C at 2.) On February 26, 2019, Covington informed counsel for the Defendant that it would respond to his request for documents by Monday, March 4. (*Id.* ¶ 13.)

On March 1, without waiting for Covington's response, Defendant filed a motion with this Court seeking issuance of a subpoena to Covington pursuant to Rule 17(c). On March 4, Covington produced to Defendant all documents in its possession that were responsive to the requests specified in the February 7 letter from Defendant's counsel. *See* Kelner Decl. ¶ 15, Ex. D.

On March 5, Covington accepted service of the subpoena, which requires it to produce documents by March 18, 2019 at 10:00 a.m. The subpoena seeks production of the same seven categories of documents and information sought in the February 7 letter from Defendant's counsel, as to which Covington has already completed its production of responsive documents.

But in addition, the subpoena demands production of a new, eighth category of documents consisting of "Covington's FIG client file, including, but not limited to, notes, memoranda, timesheets, billing records, and other documents associated with the FARA filing on behalf of the company." (*United States v. Rafiekian*, 1:18-CR-457, Docket No. 67, at 4). This demand includes no date or subject-matter restriction. Even though the FARA filing at issue in this case was submitted some ten weeks into the firm's joint representation of FIG and General Flynn, the subpoena seeks *all* "FIG client file" documents, including for the two-year period *after* the FARA filing.

## ARGUMENT

Covington has already complied with the seven items in Defendant's subpoena that are unobjectionable and do not call for privileged documents. Defendant is not, however, entitled under Rule 17(c) to obtain wide-ranging discovery of the privileged materials called for in Item 8 of the subpoena, the vast majority of which are manifestly not essential to his defense, and collection of which would present a significant burden.

1. **Production Of The Documents Demanded by the Subpoena Would Intrude Upon FIG's Attorney-Client and Work Product Privileges.**

Defendant seeks, through issuance of the subpoena, to place under his control a broad swath of documents from FIG's outside counsel's files that are covered by attorney-client and work product privileges of a corporation that he does not control, including a significant volume of privileged materials that post-date the FARA filing at issue in the Indictment and therefore could have no real bearing on his defense. He should not be permitted to engage in free-ranging discovery of FIG's privileged materials, potentially resulting in waiver of the corporation's privilege.

The attorney-client privilege is "one of the oldest recognized privileges for confidential communications" and "promote[s] broader public interests in the observance of law and the administration of justice." *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998) (internal citation omitted). It exists not only to protect the communication of legal advice to the client, but also "to enable [the lawyer] to give sound and informed advice." *Upjohn v. United States*, 449 U.S. 383, 390 (1981). It applies to corporations, not just individuals. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985).

Closely related to attorney-client privilege is the work-product doctrine, which safeguards "written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). Opinion work product, which the Fourth Circuit defines as "the actual thoughts and impressions of the attorney," is "more scrupulously protected." *In re Grand Jury Subpoena*, 870 F.3d 312, 316 (4th Cir. 2017) (citation omitted). It is entitled to a "broader protection" than the attorney-client privilege, and it is "designed to balance the needs of the adversary system: promotion of an attorney's preparation in representing a client versus society's general interest in revealing all true and material facts to the resolution of a dispute." *Bridges v. City of Charlotte*, No. 3:16-CV-564-GCM, 2017 WL 5715986, at *1 (W.D.N.C. Nov. 28, 2017) (quoting *In re Subpoena Duces Tecum*, 738 F.2d 1367, 1371 (4th Cir. 1984)). The Supreme Court has recognized that the role of the work-product doctrine is especially "vital" in the criminal context, playing a key role "in assuring the proper functioning of the criminal justice system." *U.S. v. Nobles*, 422 U.S. 225, 238 (recognizing a privilege for work product in criminal discovery). As a result, "opinion work product enjoys a nearly absolute immunity and can be

discovered only in very rare and extraordinary circumstances." *In re John Doe*, 662 F.2d 1073, 1080 (4th Cir. 1981) (quoting *In re Murphy*, 560 F.2d 326, 336 (8th Cir. 1977)).

Defendant's global demand, without limitation, for "Covington's FIG client file," represents a demand for precisely the "written statements, private memoranda and personal recollections prepared or formed" by counsel that the attorney-client privilege and the opinion work product doctrine are meant to protect. *Hickman*, 329 U.S. at 510.

Covington recognizes that the Defendant may have a legitimate defense interest in having access to the factual content of interview notes that were used in preparing the March 7, 2017 FARA filing that is at the center of this case. But even these notes constitute work product and are therefore protected from disclosure. *See In re Grand Jury Subpoena*, 870 F.3d at 317. If the Court declines to quash the subpoena as to Item 8 in its entirety, it should strictly limit any compelled disclosure, such as by compelling only the factual portions of interview notes predating the March 7, 2017 FARA filing, redacted to remove any attorney opinion work product and remove material that is solely relevant to the individual representation of General Flynn.

2. **FIG Should Not Have to Forfeit its Privilege Claims Through Production of Covington's Entire FIG Client File.**

Beyond possible disclosure of such interview notes, however, FIG should not be made to forfeit its privilege claims by wholesale disclosure of the entire FIG client file. Defendant does not possess an "absolute" right to present a defense in this case. *Rock v. Arkansas*, 483 U.S. 64, 55 (1987). Rather, his right to present a defense "may, in appropriate cases, bow to accommodate other legitimate interests." *Id.* In the context of assertions of privilege in criminal cases, the Supreme Court has held that the Sixth Amendment does not provide defendants "an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988). Indeed, courts

discovered only in very rare and extraordinary circumstances." *In re John Doe*, 662 F.2d 1073, 1080 (4th Cir. 1981) (quoting *In re Murphy*, 560 F.2d 326, 336 (8th Cir. 1977)).

Defendant's global demand, without limitation, for "Covington's FIG client file," represents a demand for precisely the "written statements, private memoranda and personal recollections prepared or formed" by counsel that the attorney-client privilege and the opinion work product doctrine are meant to protect. *Hickman*, 329 U.S. at 510.

Covington recognizes that the Defendant may have a legitimate defense interest in having access to the factual content of interview notes that were used in preparing the March 7, 2017 FARA filing that is at the center of this case. But even these notes constitute work product and are therefore protected from disclosure. *See In re Grand Jury Subpoena*, 870 F.3d at 317. If the Court declines to quash the subpoena as to Item 8 in its entirety, it should strictly limit any compelled disclosure, such as by compelling only the factual portions of interview notes predating the March 7, 2017 FARA filing, redacted to remove any attorney opinion work product and remove material that is solely relevant to the individual representation of General Flynn.

2. **FIG Should Not Have to Forfeit its Privilege Claims Through Production of Covington's Entire FIG Client File.**

Beyond possible disclosure of such interview notes, however, FIG should not be made to forfeit its privilege claims by wholesale disclosure of the entire FIG client file. Defendant does not possess an "absolute" right to present a defense in this case. *Rock v. Arkansas*, 483 U.S. 64, 55 (1987). Rather, his right to present a defense "may, in appropriate cases, bow to accommodate other legitimate interests." *Id.* In the context of assertions of privilege in criminal cases, the Supreme Court has held that the Sixth Amendment does not provide defendants "an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988). Indeed, courts

have held that a Rule 17(c) subpoena "should be quashed or modified if it calls for privileged matter." *United States v. Reyes*, 239 F.R.D. 591, 598 (N.D. Cal. 2006) (quoting 2 Federal Practice & Procedure § 275, at 258). Moreover, the Supreme Court has rejected arguments by defendants in criminal cases that courts should apply a balancing test to weigh the probative and exculpatory value of the evidence at issue against a corporation's privilege. *See Swidler & Berlin* 524 U.S. at 409 ("[W]e have rejected use of a balancing test in defining the contours of the privilege.").

To be sure, in *Swidler & Berlin*, the Court addressed "whether the information at issue was (or remained) privileged in the first instance, not . . . whether the privilege could be overcome." *United States v. Wells Fargo Bank, N.A.*, 132 F. Supp. 3d 558, 562 (S.D.N.Y. 2015). In a footnote, it also acknowledged that "exceptional circumstances implicating a criminal defendant's constitutional rights might warrant breaching the privilege." *Swidler & Berlin*, 524 U.S. at 408 n.3. Crucially, though, the Court declined to reach the issue "since such exceptional circumstances clearly [were] not presented." *Id.*

Similarly, no such exceptional circumstances exist here. The vast majority of the materials covered by Item 8 of Defendant's subpoena pertain to privileged communications and/or protected opinion work product from internal communications that *post-date* the FARA filing at issue. That material is not relevant to his defense in a case concerning false statements he allegedly caused to be made in the March 7, 2017 FARA filing. As a result, lack of access to those documents would not implicate his constitutional rights, there are no "exceptional circumstances" demanding such access, and this Court should not permit Defendant's proposed intrusion upon the privilege.

Holding that the Defendant can force disclosure of FIG's privileged information, for use in his personal defense, would essentially transform a corporation's attorney-client privilege into a qualified privilege. *See Wells Fargo Bank*, 132 F. Supp. 3d at 563. But as the Supreme Court has held, such "[a]n uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all." *Upjohn*, 449 U.S. at 393. And piercing FIG's privilege here "would also upend the carefully calibrated doctrine governing when the privilege exists and who has authority to waive it." *Wells Fargo Bank*, 132 F. Supp. 3d at 563.

The consequences of granting this motion to quash would not be, on the other hand, unduly harsh for the Defendant. As mentioned, the vast majority of the documents sought would necessarily be irrelevant to the Defendant's case. And Covington has already responded to Items 1 through 7 of the subpoena. Quashing Item 8 of the subpoena, as Covington respectfully requests, would thus not impinge on the Defendant's Sixth Amendment Rights in any meaningful sense.

### 3. Compliance with the Subpoena Would be Unduly Burdensome.

The demand for the entire "FIG client file" would also impose an undue burden, as it would require an extensive review of more than two years' worth of client files to distinguish between items relating to FIG and items relating only to General Flynn. Under Federal Rule of Criminal Procedure 17(c)(2), this Court "may quash or modify the subpoena if compliance would be unreasonable or oppressive." This supervisory role of the Court is buttressed by the Fourth Amendment, which requires a court to "disallow[]" a subpoena "if it is 'far too sweeping in its terms to be regarded as reasonable.'" *United States v. Calandra*, 414 U.S. 338, 346 (1974) (quoting *Hale v. Henkel*, 201 U.S. 43, 76 (1906), *overruled on other grounds by Murphy v. Waterfront Comm'n of N.Y. Harbor*, 378 U.S. 52 (1964)).

Furthermore, Rule 17(c) "is not intended to provide a means of pretrial discovery." *United States v. Richardson*, 607 F.3d 357, 368 (4th Cir. 2010) (citing *United States v. Nixon*, 418 U.S. 683, 689–99 (1974)). Instead, its primary purpose is simply "to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *Id.* (quoting *Nixon*, 418 U.S. at 689–99) And discovery in the criminal context is far more limited than civil discovery. Courts must ensure that rule 17(c) "is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases." *In re Grand Jury 87-3 Subpoena Duces Tecum*, 884 F.2d 772, 777 (4th Cir. 1989) (quoting *United States v. Cuthbertson*, 630 F.2d 139, 146 (3d Cir. 1980)) (*rev'd on other grounds, United States v. R. Enterprises Inc.*, 498 U.S. 292 (1991).

To prevent abuse of Rule 17(c) subpoenas, a party seeking production of documents bears the burden of demonstrating:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*Nixon*, 418 U.S. at 699–700 (1974) (footnote omitted). The Supreme Court "distilled this showing into three requirements: "(1) relevancy; (2) admissibility; [and] (3) specificity." *Id.* at 700. In addition, "some courts have recognized that Rule 17(c) enables district courts to quash a subpoena that intrudes gravely on significant interests outside of the scope of a recognized privilege, if compliance is likely to entail consequences more serious than even severe inconveniences occasioned by irrelevant or overbroad requests for records." *In re Grand Jury, John Doe No. G.J. 2005-2*, 478 F.3d 581, 585 (4th Cir. 2007) (quoting *in re Grand Jury Matters*, 751 F.2d 13, 18 (1st Cir. 1984). *See also United States v. Kalter*, 5 F.3d 1166, 1169 (8th Cir.

1993) (holding that the district court did not abuse its discretion in quashing a subpoena because the burden of producing subpoenaed records greatly outweighed any relevance they may have to the case).

The Defendant fails to meet his burden under *Nixon*. The Indictment in this case pertains to his actions prior to the FARA filing on March 7, 2017. *See* Indictment, *United States of America v. Bijan Rafiekian*, Docket No. 1, 1:18-CR-457 (E.D. Va. 2018). Yet the subpoena seeks documents covering a two-year period after the FARA filing, a period in which, as the public record reflects, Covington was heavily engaged in the representation of FIG and General Flynn in ongoing investigations, including in matters entirely unrelated to the FARA filing. The Defendant has no reasonable need for documents post-dating the FARA filing. And the burden of collecting, reviewing, and producing all FIG-related records would be significant.

The demand for the entire "FIG client file" is burdensome not only due to the lack of any date limitation but also because Covington would need to devote substantial time and resources to distinguishing between records of its FIG representation and records of its personal representation of General Flynn. Because Covington represented both FIG and General Flynn simultaneously, some documents sought by the Defendant contain information pertaining to both representations. Reviewing the documents and redacting any information related to the representation of General Flynn that is not reasonably construed as part of what Defendant calls the "FIG client file" would require extraordinary effort, and would be virtually impossible to accomplish in the compressed time frame mandated by the subpoena. The possibility of error under such an emergency time frame—or that some documents could not be sufficiently redacted to safeguard confidential and privileged information related to General Flynn—raises precisely the scenario discussed in *In re Grand Jury, John Doe No. G.J. 2005-2*: The subpoena could

intrude gravely on General Flynn's interest in a manner "more serious than even [the] severe inconvenience[] occasioned by irrelevant or overbroad requests." 478 F.3d at 585. (Indeed, if the Court were to deny this motion, this burdensome process would require the protection of a non-waiver order under Federal Rule of Evidence 502(d).)

In light of the Indictment, the demand for Covington's entire "FIG client file" cannot be justified by the Defendant's defense needs. The demand in Item 8 of the subpoena is therefore unreasonable and oppressive, and the Court should quash it pursuant to Rule 17(c)(2).

## CONCLUSION

The subpoena, from an individual who is not a Covington client, seeks to compel the firm to produce attorney-client and work product privileged documents of a firm client. This Court should quash Item 8 of the subpoena, which calls for all documents from the firm's "FIG client file." In the alternative, the Court should modify the subpoena to require only the production of interview notes utilized by Covington in preparing the March 7, 2017 FARA filing that is at issue in the Indictment (with appropriate redactions to remove attorney opinion work product and material unrelated to the firm's representation of FIG).

March 15 , 2019

Respectfully submitted,

Daniel E. Johnson (VSB 88696)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Tel: (202) 662-5224
Fax: (202) 778-5224
dejohnson@cov.com

*Counsel for Covington & Burling LLP*

## CERTIFICATE OF SERVICE

I, Daniel E. Johnson, hereby certify that on the 15th Day of March, 2019, a true copy of the foregoing was served via hand delivery to the following:

Mark J. MacDougall
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Ave., N.W.
Washington, D.C. 20036

Stacey Mitchell
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Ave., N.W.
Washington, D.C. 20036

Robert Trout
Trout Cacheris & Solomon PLLC
1627 Eye Street, N.W.
Suite 1130
Washington, D.C. 20006

James Gillis
Assistant U.S. Attorney
401 Courthouse Square
Alexandria, VA 22314

Daniel E. Johnson (VSB 88696)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Tel: (202) 662-5224
Fax: (202) 778-5224
dejohnson@cov.com
*Counsel for Covington & Burling LLP*