IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA

Case No. 1:18-CR-457 (AJT)

vs.

BIJAN RAFIEKIAN,
          Defendant.

## DECLARATION OF ROBERT K. KELNER IN SUPPORT OF COVINGTON & BURLING LLP'S MOTION TO QUASH SUBPOENA IN PART

I, Robert K. Kelner, declare as follows:

1. I am an attorney at Covington & Burling LLP ("Covington") for Flynn Intel Group Inc. and Lt. General (Ret.) Michael T. Flynn. I am competent to testify to the matters stated herein.

2. In late December 2016, Covington was engaged by Flynn Intel Group Inc. ("FIG"), a consulting firm formerly based in Alexandria, Virginia, as well as by FIG's Chief Executive Officer, Lt. General (Ret.) Michael T. Flynn ("General Flynn"), in his personal capacity, to represent FIG and General Flynn jointly in connection with an inquiry by the U.S. Department of Justice concerning compliance with the Foreign Agents Registration Act ("FARA").

3. Subsequently, Covington represented both clients in investigations by the U.S. Attorney's Office for the Eastern District of Virginia and the Special Counsel's Office.

4. Shortly after being contacted by the Special Counsel's Office in the fall of 2017, General Flynn began cooperating with the Special Counsel's investigation, and that cooperation was formalized in a plea agreement on December 1, 2017.

5. General Flynn cooperated extensively with the Special Counsel's Office, and, pursuant to his plea agreement, he continues to cooperate with the U.S. Attorney's Office, in connection with this criminal case.

6. During the course of his cooperation, General Flynn, as the CEO of FIG, authorized Covington, as counsel to FIG, to enter into an agreement under which Covington would share with the U.S. Attorney's Office certain factual information concerning the preparation of FIG's March 7, 2017 FARA filing and would authorize FIG's former in-house general counsel, Robert Kelley, to be interviewed regarding legal advice he had provided to FIG, prior to Covington's retention, concerning whether FIG was required to register under FARA. In particular, the U.S. Attorney's Office sought a copy of a declaration that Covington had earlier obtained from Mr. Kelley.

7. Covington did so on the condition that the U.S. Attorney's Office agree that, "to the extent the document memorializes privileged legal advice or other privileged communications, and to the extent, if any, that the document itself is deemed to be attorney work product, by producing the document to you FIG does not waive attorney-client privilege or work product privilege, except with respect to the document itself and advice that Robert Kelley provided to FIG concerning whether or not it was required to register under FARA."

8. The U.S. Attorney's Office sought to question Mr. Kelley and his deputy regarding any legal advice they provided FIG concerning registration under FARA or the Lobbying Disclosure Act. On behalf of FIG, Covington authorized the U.S. Attorney's Office to

2

do so on condition that the government agree that, on the basis of such authorization, it would not assert that General Flynn or FIG "has waived any privilege with respect to Covington & Burling's subsequent defense" of them in connection with the Department of Justice's FARA investigation of General Flynn and FIG's submissions to the FARA Registration Unit. The U.S. Attorney's Office agreed to this stipulation.

9. Covington, on behalf of its clients, FIG and General Flynn, also authorized the U.S. Attorney's Office to ask General Flynn about "the contents of [the FARA] submissions and factual information he or others shared or did not share with Covington & Burling lawyers who were working on preparation of the letter and subsequent filing," on the condition that the U.S. Attorney's Office agree that, "to the extent we take the position that such purely factual communications in connection with preparation of the FARA filing were not privileged, you will not assert that any waiver of privilege resulted from General Flynn's answering those questions."

10. As authorized by General Flynn, as CEO of FIG, Covington permitted the U.S. Attorney's Office to interview Covington attorneys solely with respect to certain narrowly defined factual matters.

11. The Government agreed to limit its questions to cover only factual representations made to counsel by FIG personnel in connection with preparation of FIG's FARA filing; the sources of those factual representations; information concerning who reviewed drafts of the FARA filing and their comments, corrections, or questions; and how counsel received those communications from FIG personnel concerning the content of the FARA filing.

12. On February 7, 2019, Covington received a letter from the Defendant's attorney, Mark MacDougall, requesting that the firm provide copies of the following documents:

1. The board of directors' resolution, meeting minutes, or unanimous written consent authorizing the dissolution of FIG on March 25, 2018, as attested in the certificate of dissolution filed by Michael T. Flynn;

2. Any board of directors' resolution, meeting minutes, or unanimous written consent that resulted in the election of Michael Flynn (and any other person) to serve as an officer, director, or both of FIG;

3. The shareholders' resolution, meeting minutes, or unanimous written consent of the shareholders of FIG affirming dissolution of the corporation as attested in the certification of dissolution filed by Mr. Flynn;

4. Any and all engagement letters executed on behalf of FIG with Covington;

5. Any board resolution, consent, or other writing that authorizes or otherwise permits the waiver by FIG of the corporate attorney-client privilege or attorney work product doctrine on behalf of the corporation by Covington;

6. Any board resolution, consent, or other writing that authorizes or otherwise permits Covington to inform Robert N. Kelley—or any other lawyer who provided legal advice to FIG—of the purported waiver of the attorney-client privilege or attorney work product doctrine by FIG;

7. Any documents or correspondence detailing the identity of the lawyer or lawyers who prepared and filed the corporate dissolution certificate that was signed by Mr. Flynn on March 25, 2018, and filed with the Delaware Secretary of State on April 10, 2018.

13. On February 26, 2019, Covington informed counsel for the Defendant that it would respond to his request for documents by Monday, March 4.

14. On March 1, without waiting for Covington's response, Defendant filed a motion with this Court seeking issuance of a subpoena to Covington pursuant to Rule 17(c).

15. On March 4, Covington produced to Defendant all documents in its possession that were responsive to the requests specified in the February 7 letter from Defendant's counsel.

16. On March 5, Covington accepted service of the subpoena, which requires it to produce documents by March 18, 2019 at 10:00 AM.

17. The subpoena seeks production of the same seven categories of documents and information sought in the February 7 letter from Defendant's counsel, as to which Covington has already completed its production of responsive documents.

18. The demand for the entire "FIG client file" is burdensome not only due to the lack of any date limitation but also because Covington would need to devote significant time and resources to distinguish and segregate records of its FIG representation from records of its personal representation of General Flynn.

19. Because Covington represented both FIG and General Flynn simultaneously, some documents sought by the Defendant contain information pertaining to both representations.

20. Reviewing the documents and redacting any information related to the representation of General Flynn that is not reasonably construed as part of what Defendant calls the "FIG client file" would require a substantial effort, and would be particularly difficult to accomplish if required to be done in a compressed timeframe.

21. Attached hereto as Exhibit A is a true and correct copy of the Rule 17 subpoena issued by the Court, dated March 5, 2019.

22. Attached hereto as Exhibit B is a true and correct copy of the June 13, 2018, agreement between Covington and the U.S. Attorney's Office.

23. Attached hereto as Exhibit C is a true and correct copy of the February 7, 2019, letter from the Defendant's counsel.

24. Attached hereto as Exhibit D is a true and correct copy of Covington's March 4, 2019, letter in response to the February 7, 2019, letter from Defendant's counsel.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed on this 15th day of March 2019.

Robert K. Kelner