UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal Case No. 1:18-cr-457 (AJT) |
| ) | |
| BIJAN RAFIEKIAN ) | |
| and ) | |
| KAMIL EKIM ALPTEKIN ) | |

## MEMORANDUM IN SUPPORT OF NON-PARTY KRISTEN VERDERAME'S RULE 17(c)(2) MOTION TO QUASH

Through counsel, non-party subpoena recipient Kristen Verderame comes before this Court willing to provide Defendant Bijan Rafiekian ("Defendant") with materials responsive to his subpoena that are both admissible and relevant to the crimes charged in the Indictment. However, Ms. Verderame is an attorney with an obligation to safeguard her client's privileged materials, and a sole practitioner with limited resources that would easily be strained to the point of breaking if forced to respond to the fishing expedition this subpoena creates. As such, Ms. Verderame moves to quash Defendant's Rule 17(c) subpoena, or, in the alternative, seeks a judicial order that both requires production of privileged materials pursuant to a Federal Rule of Evidence 502(d) order providing that the production of such documents is not a waiver of any privilege claim belonging to Ms. Verderame's clients, and narrows the subpoena to materials directly relevant to refuting or confirming the charges put forth in the Indictment. This Memorandum in Support sets forth the essential facts, reasons, and points of authorities on which Ms. Verderame relies in making this request.

## BACKGROUND

**A. Ms. Verderame's Representation of FIG Inc. and Michael Flynn**

Ms. Verderame is a Washington, DC-based attorney who is the founder of, and the sole practitioner in, Pondera International LLC. Of relevance to this case, Ms. Verderame has represented General Michael Flynn in his personal capacity, as well as several other entities associated with General Flynn—including Flynn Intel Group, Inc. ("FIG Inc.").

Organized under Delaware law, FIG Inc. was incorporated on or about June 17, 2015. *See* Memorandum in Support of Defendant Rafiekian's Unopposed Motion for a Rule 17(c) Subpoena, Dkt. 53 at 2 (hereafter, "Def. Mem."). A State of Delaware Certificate of Dissolution indicates that there were only two directors and officers as of early 2018—General Flynn and Defendant. *Id*.

On or about the first week of January 2017, Covington and Burling LLP ("Covington") began its representation of the company. In connection with Covington's representation, Ms. Verderame provided Covington with substantially all documents in her possession relating to FIG Inc.

**B. The Subpoena**

Defendant was indicted on December 12, 2018 on allegations he conspired to make false statements or willful omissions on a Foreign Agent Registration Act ("FARA") filing, and both conspired to and did act in the United States as an agent for a Foreign Government. *See* Indictment, Dkt. 1. On March 1, 2019, Defendant petitioned this Court for a Rule 17(c) subpoena seeking the pretrial production of certain documents from Covington and Ms. Verderame. *See* Def. Mot. for Rule 17(c) Subpoenas, Dkt. 52, Exs. 2-3. The memorandum accompanying the motion describes the proposed subpoenas as seeking the production of information "all relating to ***legal advice and***

*counsel* given to FIG by Covington and Ms. Verderame." Def. Mem. at 5. Defendant proposed two subpoenas—virtually identical, save for the receiving party's name—requiring the production of eight categories of documents. *See* Def. Mot. for Rule 17(c) Subpoenas, Dkt. 52, Exs. 2-3. Categories one through seven pertain to corporate documents for FIG Inc., attorney engagement letters, and materials related to privilege waivers.[1] *Id.* Category eight broadly requests all materials in Ms. Verderame's FIG Inc. "client file." *Id.* The "client file" sought is described as materials in her possession "***including but not limited to*** notes, memoranda, timesheets, billing records, and other documents associated with the FARA filing on behalf of the company."[2] *Id.* This Court granted Defendant's motion, and the subpoenas issued on March 5, 2019 with a return date of March 18, 2019. Ms. Verderame secured counsel in short order, and counsel received her subpoena the evening of March 7, 2019.

With the hopes of devising a realistic and mutually-agreeable strategy for responding to the subpoena that would neither violate Ms. Verderame's professional obligation to protect FIG Inc.'s privilege nor create an undue burden, counsel for Ms. Verderame contacted the Defense to commence the meet and confer process less than 24 hours after receiving the subpoena.[3] After exchanging emails, the conversation culminated in a call the afternoon of March 12, 2019 in which undersigned counsel identified complicated issues of privilege and the burdens on Ms. Verderame

---

[1] It is Ms. Verderame's understanding that, earlier this month, Covington provided Defendant with documents responsive to requests one through seven, including documents she transferred at the onset of Covington's representation of FIG Inc.

[2] While request eight could be read as only requiring materials related to the FARA filing, Defense counsel indicated during a March 12, 2019 meet and confer call that they are more broadly seeking materials related to the FIG Inc. representation, particularly materials that could be used to impeach Government witness General Flynn.

[3] Initial outreach included a request to continue the return date until March 30, 2019 to allow counsel to get up to speed.

implicated by the subpoena, and counsel for Defendant stated that it was unable to alter the scope or return date for the subpoena.

Ms. Verderame stands ready and willing to provide the Defendant with any documents in her possession relevant to the charges set forth in the Indictment; however, she cannot respond to the subpoena in a way that violates her ethical duties or that places an undue burden on her and her one-woman law firm. As the parties have not reached an agreement that honors Ms. Verderame's obligation to protect privileged information and narrows the subpoena in a way that both comports with the principles of Rule 17 and removes undue burden, Ms. Verderame now asks that the Court quash the subpoena, or, in the alternative, substantially narrow it to require production only of documents that are relevant to Defendant's case in chief—*i.e.*, documents containing Defendant's statements, summaries of Defendant's statements, or statements about Defendant relevant, and made prior to, the FARA filing.

## ARGUMENT

Defendant's Rule 17 subpoena is inappropriate for at least two reasons. *First*, Defendant is seeking discovery of materials under the attorney-client privilege. Subpoenas that seek privileged materials are improper and subject to quashing or other appropriate modification. As counsel for FIG Inc., Ms. Verderame has an ethical duty to preserve privilege absent a client waiver. *Second*, Defendant's subpoena seeks materials outside the tight boundaries of Rule 17(c). The documents sought are not sufficiently specified in the subpoena, not admissible, and not relevant. This is exactly the sort of "fishing expedition" that Courts have routinely rejected. Pursuant to Rule 17(c)(2), which permits a court to "quash or modify [a] subpoena if compliance would be unreasonable or oppressive," this motion should be granted to prevent Defendant from unduly burdening Ms. Verderame with a wide-scale review and production obligation that is

unlikely to yield any admissible evidence that will support or refute the charges in the Indictment. At a minimum, to the extent the Court requires compliance, the subpoena should be narrowed to materials directly relevant to Defendant's case in chief and the production should be covered by a Rule 502(d) order to prevent unnecessary privilege waiver.

### A. The Subpoena Improperly Seeks Privileged Material that Ms. Verderame Cannot Produce Without a Court Order

As an initial matter, Ms. Verderame may not disclose privileged communications and work product of the ilk sought in the subpoena absent a waiver by FIG Inc., which holds the attorney-client privilege, or a court order. The attorney-client privilege is one of the oldest recognized privileges for confidential communications. *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). The privilege "serves a salutary and important purpose: 'to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" *In re Allen*, 106 F.3d 582, 600 (4th Cir. 1997) (citing *Upjohn*, 449 U.S. at 389). In the Fourth Circuit, information the Defendant explicitly requests—"***legal advice and counsel given to FIG by Covington and Ms. Verderame***" and information related thereto, Def. Mem. at 5,—is covered by privilege. *See, e.g.*, *In re Grand Jury Proceedings*, 102 F.3d 748, 750 (4th Cir.1996) ("No doubt exists that under normal circumstances, an attorney's advice provided to a client, and the communications between attorney and client are protected by the attorney-client privilege" (citing *Upjohn*, 449 U.S. at 389)). Here, the privilege covering the documents sought is controlled by FIG Inc., not Ms. Verderame. *See In re Grand Jury Proceedings #5 Empaneled Jan. 28, 2004,* 401 F.3d 247, 250 (4th Cir. 2005) ("Because the attorney-client privilege exists for the benefit of the client, the client holds the privilege."). It is of no relevance that papers to dissolve FIG Inc. were filed in 2018. Delaware corporations, like FIG Inc., continue to exist for purposes

of suit and winding up affairs for three years after expiration or dissolution. *See* 8 Del. C. 278. While the application of attorney-client privilege to a dissolved corporation is unsettled in the Fourth Circuit, *see In re Grand Jury Subpoena #06-1*, 274 F. App'x. 306, 309 (4th Cir. 2008), application of Delaware statutory law would not render FIG Inc. fully dissolved until 2021. As such, the privileges of FIG Inc. endure for purposes of this subpoena.

Further, regardless of whether FIG Inc. is completely dissolved, Ms. Verderame has an obligation to preserve FIG Inc.'s privilege. D.C. Ethics Opinion 299 makes it clear that "[t]he duty of confidentiality under [D.C. Ethics] Rule 1.6 encompasses the attorney-client privilege and continues after the termination of the client-lawyer relationship. Therefore, unless one of the exceptions to Rule 1.6 applies, an attorney must preserve the client's confidences even though the corporate client has ceased operations." *See* D.C. Bar Ethics Opinion No. 299, *Duty of Confidentiality to a Corporate Client That Has Ceased Operations* (Jun. 2000). Ms. Verderame, who practices and is barred in Washington, D.C., has an ethical obligation to preserve FIG Inc.'s privilege.

While Defendant is likely a member of FIG Inc.'s control group, he does not have the power to waive FIG Inc.'s privilege under present circumstances. Officers and directors may not waive privilege over corporate documents for the sole purpose of advancing their individual positions. *See Commodity Futures Trading Com'n v. Weintraub*, 471 U.S. 343, 349 (1985) (the power to waive privilege must be exercised as part of a "fiduciary duty to act in the best interests of the corporation and not of themselves as individuals"). Defendant cannot waive FIG Inc.'s privilege over the requested documents because he is not seeking them under his fiduciary duty to

act in the best interests of the corporation—he is seeking them to further his individual criminal defense.[4]

Absent an effective waiver, Ms. Verderame must assert all reasonable claims against disclosure and seek to limit the subpoena. Indeed, it appears that FIG Inc. is asserting privilege. *See generally*, Non-Party Covington & Burling LLP's Brief in Support of Motion to Quash Subpoena in Part, Dkt. no. pending. That includes taking the position that the subpoena must be quashed because it seeks privileged information. *See United States v. Mettatal*, Case No. 96-0034, 1997 WL 599296, at *1 (W.D. Va. Oct. 22, 1999) ("[A] subpoena should be quashed or modified if it calls for privileged matter").

In fidelity to her ethical obligation to preserve her client's privilege absent a court order, Ms. Verderame asks that this Court quash the subpoena on grounds it improperly requests privileged materials. If production of privileged materials is ordered, Ms. Verderame asks that the Court narrow the content sought as well as implement a 502(d) order to protect against further, or unanticipated, waiver.

---

[4] Defendant's Motion touts Defendant's alleged right to corporate documents. However, that right of inspection is a qualified right, existing only to the extent an officer or director is seeking documents in furtherance of a proper corporate—not personal—purpose. *See* Del. Code Ann. tit. 8, § 220 (providing directors right to inspect corporate records "for a purpose ***reasonably related to the director's position as a director***." (emphasis added)). Without asserting a proper purpose germane and reasonably related to protecting Defendant's interest as a stockholder/director, Defendant has no rights to inspect FIG Inc.'s corporate documents.

Additionally, while focusing on Defendant's right to corporate documents, Defendant's Motion neglects to mention that, by requesting the documents under Rule 17(c), he would effectively be waiving corporate privilege because both parties "may" inspect materials produced pursuant to that rule. *See* Fed. R. Crim. P. 17(c)(1). Even to the extent the Government opts not to inspect the documents, using the documents—something one would expect of materials obtained pursuant to a Rule 17 subpoena—is impossible without waiving privilege.

### B. The Overly Broad and Unduly Burdensome Subpoena Must Be Quashed or Narrowed to Comport with Rule 17

Rule 17(c) is not a discovery tool "and the hope of obtaining favorable evidence does not justify the issuance of such a subpoena." *United States v. Caro*, 597 F.3d 608, 620 (4th Cir. 2010) (internal citation omitted). Indeed, "courts uniformly have rejected attempts at procuring additional or advance discovery through the use of Rule 17(c) subpoenas." *United States v. Beckford*, 964 F. Supp. 1010, 1032 (E.D. Va. 1997). Courts thus have broad authority to "quash or modify" Rule 17(c) subpoenas where "compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). A subpoena is unreasonable or oppressive unless the requesting party demonstrates:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition.

*United States v. Nixon*, 418 U.S. 683, 699-700 (1974). Under this framework, "a defendant seeking a Rule 17(c) subpoena 'must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity.'" *United States v. Caro*, 597 F.3d 608, 620 (4th Cir. 2010) (quoting *Nixon*, 418 U.S. at 700).[5] Here, Defendant's failure to clear any of these hurdles has created an undue burden for Ms. Verderame.

#### 1. Most of the Requested Documents Are Not Relevant to Defendant's Case

First, Defendant has not explained why the files in each of the eight categories of documents he requests are relevant to his defense. Materials sought under Rule 17(c) must relate

---

[5] Defendant argues that the Court should disregard this test in the context of a third-party subpoena and instead apply the one set forth in *United States v. Nachamie*, 91 F. Supp. 2d 552, 562–63 (S.D.N.Y. 2000). The Fourth Circuit has explicitly rejected lowering the *Nixon/Caro* standard for third-party subpoenas. *United States v. Rand*, 835 F.3d 451, 463 (4th Cir. 2016) ("We decline to adopt a lower standard [than *Nixon*] for third-party subpoenas under Rule 17(c).").

to the offenses charged in the case. *See Nixon*, 418 U.S. at 699 (subpoenaed tapes relevant where at least part of each tape "relate[d] to the offenses charged in the indictment"). Here, Defendant has been charged with conspiring to violate FARA by causing another to act as an unregistered agent and causing the submission of a false FARA filing, between July 2016 and March 2017. *See* Indictment, Dkt. 1. However, the majority of the documents he has requested are unrelated to these charges or any defense thereto. The first seven categories seek documents related to FIG Inc.'s corporate dissolution, its engagement of outside counsel, and its waiver of certain privileges. Defendant has not, and indeed cannot, explain how any of these documents would prove or disprove that he conspired to violate FARA between July 2016 and March 2017. Defendant's position that the documents sought are relevant because they "directly relate to the circumstances surrounding FIG's dissolution . . . and the authority of FIG's outside counsel to grant a series of waivers of the attorney-client and related privileges on behalf of the company," Def. Mem. at 11, is misplaced. It is farfetched to suggest that materials showing the "circumstances surrounding FIG's dissolution" contain information that Defendant could use to prove or disprove the allegations a hand. If Defendant is trying to argue Government evidence is inadmissible because Covington's limited waiver of privilege was ineffective, the argument would be moot to the extent this Court orders Covington and/or Ms. Verderame to produce the same privileged information—inherently waiving the privilege for purposes of trial. Neither dissolution nor waiver is relevant to proving or undermining the allegations in the Indictment.

Instead of being relevant to his case in chief, these requests are truly an attempt to discover evidence to impeach General Flynn, a possible Government witness—a reality that was made clear

during a March 12, 2019 telephone call between counsel for Ms. Verderame and Defendant.[6] But "the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." *Nixon*, 418 U.S. at 701.

Similarly, Defendant has not demonstrated how FIG Inc.'s client file – particularly items like timesheets, billing records, emails not involving his representations to counsel, or any items post-dating March 2017—would bolster his defense against the relevant charges. He does not claim that such records would show that he did not conspire to violate FARA. The only potential use for this file would be to fish for documents he could use to impeach General Flynn. Rule 17(c) may not be used for such a fishing expedition. *Nixon*, 418 U.S. at 700. As Defendant is entirely unable to show that the documents he requests "are evidentiary and relevant," the subpoena should be quashed or significantly modified to cover only documents relevant to his case in chief.

### 2. The Requested Documents Are Not Admissible

Under *Nixon*, a party seeking a Rule 17(c) subpoena must show that each of the requested documents "contains evidence admissible with respect to the offenses charged in the indictment." *Id.* Further, although they may be subject to Rule 17, documents that are only useful for impeachment "generally are not subject to production and inspection by the moving party prior to trial" because they "ripen into evidentiary material . . . only if and when the witness testifies at trial." *United States v. Cuthbertson*, 630 F.2d 139, 144 (3d Cir. 1980) (citing *Nixon,* 418 U.S. at 701).

Although Defendant acknowledges in his memorandum that *Nixon* and *Caro* require him to demonstrate admissibility, he makes no argument that the documents he requests are actually

---

[6] During the March 12, 2019 telephone call referenced above, Defense counsel reiterated that it was seeking documents beyond the scope of Defendant's statements to counsel for impeachment purposes.

admissible. As explained in detail above, much of what Defendant seeks is privileged. Without obtaining a waiver, he would be unable to use these documents at trial. Likewise, many of the communications he alludes to in the client file would likely be considered hearsay. Even if Defendant could resolve these issues, he plans to introduce the requested materials as impeachment evidence. Without another ground for admissibility, he does not meet the standard set forth in *Nixon* and *Caro* and the subpoena should be quashed. *Nixon*, 418 U.S. at 701-02 (allowing subpoena where special prosecutor sought evidence for impeachment *and* showed "other valid potential evidentiary uses for the same material").

### 3. Defendant's Requests are Not Sufficiently Specific

"The Fourth Circuit has repeatedly stressed that Rule 17(c) is not a general discovery device, and to that end, the party requesting the information must identify with specificity what is sought." *United States v. Ging-Hwang Tsoa*, No. 1:13cr137, 2013 WL 5837631, at *2 (E.D.Va. Oct. 29, 2013). The "specificity requirement set forth in *Nixon* . . . mandates that the party requesting the information identify the item sought and what the item contains." *United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002); *see also United States v. Crosland*, 821 F.Supp. 1123, 1129 (E.D.Va. 1993) ("The specificity requirement announced in *Nixon* is designed to ensure that the use of trial subpoenas is limited to securing the presence at trial of particular documents or sharply defined categories of documents."). Without such specificity, the requesting party "is merely fishing for evidence that might support his theory, as if he were in the discovery phase of a civil action." *United States v. Richardson*, 607 F.3d 357, 368 (4th Cir. 2010).

Defendant's requests are not remotely specific enough to meet this standard. For example, he requests "the entire client file" related to Ms. Verderame's representation of FIG Inc. Def. Mem. at 6. He could have easily asked for materials in her possession that reflect his contributions

to the FARA filing. Instead, he has demanded that she produce her entire "client file" so that he can comb through it in search of impeachment material should General Flynn testify. This request is akin to civil discovery and is not allowed by Rule 17. *See Rand*, 835 F.3d at 463-64 (defendant failed to tailor his request for accounting, budgetary, and financial entries to the ones at issue in the case or "justify his broad request," turning it into "more of a fishing expedition, frowned upon by *Nixon*"). Similarly, most of Defendant's other requests set forth categories of information he wants and ask for "any" document within those categories rather than pinpointing specific documents that Defendant knows exists and needs produced before trial. *See* Def. Memo. at 5-6. Although narrower in scope than his request for the entire client file, it is clear that many of these requests are also meant to uncover new evidence that might help Defendant at trial. This Court has explicitly held that "the hope of obtaining favorable evidence" is not sufficient to issue a subpoena under Rule 17(c). *Caro*, 597 F.3d at 620. Because Defendant has not identified the specific items he demands or explained the relevant contents within them, the subpoena should be quashed or at least significantly narrowed.

### 4. Compliance with the Subpoena Would be Unreasonable and Oppressive

The true implications of the subpoena's failure to meet the relevance, admissibility, and specificity requirements established in *Nixon* manifest in the undue burden it imposes on Ms. Verderame. Under Federal Rule of Criminal Procedure 17(c)(2), this Court "may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). Ms. Verderame is a solo practitioner whose resources—both temporal and monetary—would be stretched to the limit if she were compelled to find every single document in her possession that could be part of a FIG Inc. "client file," make redactions to protect other clients' privileges, and

produce.[7] Indeed, as further explained below, it may be impossible for her to do so before the April 15, 2019 motion deadline in this case—a deadline Defense has emphasized in discussion with undersigned counsel.

Ms. Verderame's representation of General Flynn in his personal capacity, along with several commercial enterprises he founded, amplifies the burden associated with responding to this broad subpoena.[8] Clients represented in dual capacities often discuss both representations within a single email, note, or phone call. This is certainly the case here. The tenure and depth of Ms. Verderame's representation of General Flynn in his personal capacity significantly exceeds her representation of FIG Inc. As such, it is more likely than not that almost *all* her correspondence with General Flynn about FIG Inc. included information relevant to her personal representation of General Flynn or her representation of entities he directed.[9] To provide FIG Inc.'s file without disclosing General Flynn's privileged materials, Ms. Verderame must carefully review every communication and record involving General Flynn to determine its responsiveness. She would further be required to make redactions on any documents containing more than one client's privileged information. Given her unique knowledge of the issues addressed in such materials, and the overlap of the actors involved, Ms. Verderame would have to personally review and make

---

[7] Like many practitioners, Ms. Verderame does not have a "client file" for FIG Inc. that she can simply take off the shelf. The materials Defendant calls the "client file" are stored in multiple locations.

[8] In addition to FIG Inc., Ms. Verderame's files contain references to corporations associated with General Flynn including, but not limited to, FIG LLC, FIG Cyber, and FIG Aviation.

[9] For example, at the time Ms. Verderame was associated with the FARA filing, early 2017, she was also involved in at least four other highly sensitive matters for other clients including, and related to, General Flynn.

redactions to almost every communication produced.[10] If ordered to comply with most or all of this subpoena, Ms. Verderame would need several weeks to complete this review.[11]

Given the tremendous burden the subpoena places on Ms Verderame in these particular circumstances, she respectfully requests that this Court quash or narrow it to specific, identifiable documents that can be reviewed, redacted if needed, and produced in a timely manner. Specifically, Ms. Verderame suggests that this Court limit the response to materials created between July 2016 and March 2017 containing Defendant's statements, summaries of Defendant's statements, or others' statements about the Defendant related to the FARA filing. In addition to encompassing the most helpful (or harmful) documents for the Defense, the suggested production universe can be easily identified and isolated for review and redaction via search terms (*e.g.*, the Defendant's name and date parameters).

---

[10] This is a challenging task with highest of stakes. Ms. Verderame handled extremely-sensitive matters for General Flynn, who has pled guilty to a federal crime and is now awaiting sentencing. Unfortunately, the period of time in which Ms. Verderame was most active with FIG Inc. was also a time in which she was frequently communicating with General Flynn about four or five other hot-button issues. As such, there are many communications in which Ms. Verderame advised General Flynn on multiple issues for multiple clients. Ms. Verderame now finds herself in a particularly perilous position. If she inadvertently misses a redaction, she could waive another client's privilege. Given the media attention surrounding General Flynn, such a mistake could cause serious consequences for her clients (and jeopardize her livelihood). On the other hand, an over-redaction could compromise her compliance with the subpoena. As such, Ms. Verderame would likely require frequent input from outside counsel during the redaction and review process, thus both delaying her ability to respond to the subpoena and further exacerbating the strain on Ms. Verderame's resources.

[11] Should the Court order Ms. Verderame to produce materials responsive to the subpoena (either in its current or a more narrowed form), Ms. Verderame recommends adopting a rolling production schedule so that Defendant receives the most critical documents as soon as possible.

-15-

## C. If Compliance with Any Part of the Subpoena is Required, an Order Under Federal Rule of Evidence 502(d) is Necessary to Safeguard Against Further Privilege Waiver

If this Court orders compliance with any part of the subpoena, Ms Verderame respectfully requests it also enter a Rule 502(d) order to protect produced documents. Rule 502 permits a court to "order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court—in which event the disclosure is also not a waiver in any other federal or state proceeding." Fed. R. Evid. 502(d). Unquestionably, almost any production in response to this subpoena implicates serious issues of privilege—not only for FIG Inc, but also Ms. Verderame's other clients whose confidential information may be entangled with responsive materials. A Rule 502(d) order would help to alleviate potential client concerns and help Ms. Verderame fulfil her ethical duties to protect client confidence.

## CONCLUSION

For the foregoing reasons, Ms. Verderame respectfully requests that the subpoena be quashed or, in the alternative, substantially narrowed to include only documents that are relevant to Defendant's case in chief—*i.e.*, documents containing Defendant's statements, summaries of Defendant's statements, or statements about Defendant related to the FARA filing during the relevant period. To the extent this Court requires the production of privileged documents, Ms. Verderame asks that such productions be pursuant to a Rule 502(d) order.

March 15, 2019

                        KRISTEN VERDERAME
                        By counsel

          By:   /s/ *Brandon J. Moss*
                  Mark B. Sweet (*Pro Hac Vice* pending)
                  Brandon J. Moss (VA Bar No. 82449)
                  Wiley Rein LLP
                  rlwalker@wileyrein.com
                  Wiley Rein LLP
                  1776 K Street, NW
                  Washington, DC 20006
                  Tel: (202) 719-7000
                  Fax: (202) 719-7049
                  msweet@wileyrein.com
                  bmoss@wileyrein.com

                  *Counsel for Kristen Verderame*

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of March 2019, a true and correct copy of the foregoing document was served via email, as consented to by recipients:

**On behalf of Defendant Rafiekian:**
Robert Powel Trout
rtrout@troutcacheris.com
Trout Cacheris & Janis PLLC
1350 Connecticut Ave NW
Suite 300
Washington, DC 20036
(202) 464-3300
Fax: (202) 463-3319

Mark J. MacDougall (*Pro Hac Vice*)
mmacdougall@akingump.com
Stacey H. Mitchell (*Pro Hac Vice*)
shmitchell@akingump.com
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036
(202) 887-4000
Fax: (202) 887-4288

**On behalf of the United States:**
James Philip Gillis
james.p.gillis@usdoj.gov
Evan N. Turgeon
evan.turgeon@usdoj.gov
John T. Gibbs
john.gibbs@usdoj.gov
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3897
Fax: (703) 299-3982

By: /s/ *Brandon J. Moss*
Brandon J. Moss (VA Bar No. 82449)
Wiley Rein LLP
1776 K Street, NW
Washington, DC 20006
Tel: (202) 719-7000
Fax: (202) 719-7049
bmoss@wileyrein.com

*Counsel for Kristen Verderame*