In the Matter of:

USA v. Rafiekian et al.

March 15, 2019



Phone: 703-837-0076
Fax: 703-837-8118
Toll Free: 877-837-0077

1010 Cameron Street
Alexandria, VA 22310
transcript@casamo.com

```
 1            UNITED STATES DISTRICT COURT

 2         FOR THE EASTERN DISTRICT OF VIRGINIA

 3               (Alexandria Division)

 4    -----------------------------------

 5    UNITED STATES OF AMERICA,

 6            Plaintiff,

 7       v.                        No. 1:18-CR-457 (AJT)

 8    BIJAN RAFIEKIAN,

 9            A/k/a "Bijan Kian,"

10       and

11    KAMIL EKIM ALPTEKIN,

12            Defendants.

13    -----------------------------------

14                                 March 15, 2019

15

16            The above-entitled matter came on to be

17    heard before the HONORABLE ANTHONY J. TRENGA, Judge

18    in and for the United States District Court for the

19    Eastern District of Virginia, located at 401

20    Courthouse Square, Alexandria, Virginia, commencing

21    at 9:35 a.m., before Rebecca Monroe, RPR, when were

22    present on behalf of the respective parties:
```

```
 1              A P P E A R A N C E S

 2

 3    ON BEHALF OF THE PLAINTIFF:

 4            JAMES PHILIP GILLIS, ESQUIRE

 5            EVAN N. TURGEON, ESQUIRE

 6            United States Attorney's Office

 7            Eastern District of Virginia

 8            2100 Jamieson Avenue

 9            Alexandria, Virginia  22314

10            (703) 299-3700

11

12    ON BEHALF OF THE DEFENDANT BIJAN RAFIEKIAN:

13            MARK J. MACDOUGALL, ESQUIRE

14            STACEY H. MITCHELL

15            Akin, Gump, Strauss, Hauer & Feld, LLP

16            1333 New Hampshire Avenue, Northwest

17            Washington, D.C.  20036

18            (202) 887-4510

19

20

21

22    (Contents continued on the following page.)
```

1    CONTENTS (continued):

2

3    ON BEHALF OF THE DEFENDANT BIJAN RAFIEKIAN:

4            ROBERT POWELL TROUT, ESQUIRE

5            Trout Cacheris & Solomon, PLLC

6            1627 Eye Street, Northwest

7            Suite 1130

8            Washington, D.C.  20006

9            (202) 464-3311

10

11

12

13

14

15

16

17

18

19

20

21

22

```
 1              P R O C E E D I N G S

 2              - - - - - - - - - - -

 3          THE CLERK:  Criminal Case Number

 4   1:18-cr-457, United States versus Bijan Rafiekian

 5   and Kamil Ekim Alptekin.

 6          And, counsel, will you please note your

 7   appearances for the record.

 8          MR. GILLIS:  Good morning, Your Honor.  Jim

 9   Gillis, attorney for the United States.

10          THE COURT:  Good morning.

11          MR. GILLIS:  Good morning.

12          MR. MACDOUGALL:  Good morning, Mark

13   MacDougall, Stacey Mitchell, and Robert Trout for

14   defendant, Bijan Rafiekian.  Good morning.

15          THE COURT:  Welcome.

16          MS. MITCHELL:  Good morning.

17          THE COURT:  We're here on the defendant's

18   motion to compel records.  I reviewed the briefing

19   on this.  Was there further -- from counsel -- have

20   there been any further discussions from counsel

21   about this?

22          MR. GILLIS:  Not since those filings, Your
```

1    Honor.

2              THE COURT:  All right.  Mr. MacDougall, who

3    is going to be --

4              MR. MACDOUGALL:  I am, Your Honor.  Yes.

5              THE COURT:  Yes.

6              MR. MACDOUGALL:  Your Honor, may it please

7    the Court.  Mr. Rafiekian, through counsel, is here

8    today.  I should note, by the way, we have a waiver

9    of appearance --

10             THE COURT:  All right.

11             MR. MACDOUGALL:  -- signed, so we can hand

12   that up.

13             THE COURT:  All right.  That's fine.

14             MR. MACDOUGALL:  Mr. Rafiekian, through

15   counsel, is here moving to compel the Government to

16   produce Giglio material.  This is an unusual motion

17   at this stage of a case.

18             THE COURT:  I don't think there's any

19   dispute about their obligation to produce Giglio

20   information.  I think the core of this is what role

21   defense counsel should be able to play in reviewing

22   those documents that may yield that kind of

1   information.

2           MR. MACDOUGALL:  Well, Your Honor, in this

3   instance, there was a great deal of public

4   information pointing toward Giglio in the

5   Government's files.  This is not an ordinary case by

6   any means.

7           THE COURT:  Right.

8           MR. MACDOUGALL:  The Office of Special

9   Counsel has disclosed that they have -- that they

10  interviewed Mr. Flynn, who is the key witness in

11  this case, 19 times.  If you add to that the

12  interview that led to his prosecution, that's at

13  least 20, probably more than that.

14          Those -- those interviews point toward a

15  great deal of information being able to glean from

16  public records that also qualifies as Giglio

17  material, multiple lies to transition team members,

18  FBI agents, the vice president of the United States,

19  payments from Russian companies that were not

20  disclosed to the Defense Intelligence Agency.  There

21  is a lot there, Your Honor.

22          And Mr. Flynn is not an ordinary witness.

1   He is the witness in this case.  I don't think

2   anyone would argue that if Mr. Rafiekian's business

3   partner was someone other than Mr. Flynn, this case

4   would have been handled civilly or administratively.

5           I should note, Your Honor, that the Office

6   of Inspector General, the Justice Department, did a

7   study in 2016, it recorded that over the previous 50

8   years there were a total of seven FARA prosecutions,

9   one of which led to a trial conviction.  And if you

10  look at most of those cases they were essentially

11  espionage cases --

12          THE COURT:  Right.

13          MR. MACDOUGALL:  -- where the Government

14  couldn't make it.

15          This is unusual in every sense and that's

16  the reason, Your Honor, that we're asking for

17  unusual relief at this stage.

18          THE COURT:  Well, what is it specifically

19  that you're asking for?  Because, again, I don't --

20  I don't hear the Government objecting to producing

21  the kinds of information that you're suggesting is

22  out there.  What I understand about the objection is

```
 1   that you think the redactions that they provided or

 2   that the information they're holding somehow

 3   shouldn't be withheld and that you should have the

 4   opportunity to review the unredacted documents

 5   yourself, which is unusual.

 6          MR. MACDOUGALL:  Well, Your Honor -- well,

 7   it's unusual but certainly not unique.  I mean, open

 8   file discovery, even in this courthouse, is not

 9   unprecedented.

10          THE COURT:  Right.

11          MR. MACDOUGALL:  The answer to that, Your

12   Honor, is the Government hasn't produced and is not

13   prepared to produce.  There's two factors here.  The

14   first is -- and Mr. Gillis attached to his pleading

15   his e-mail -- the Government is seeking to impose a

16   number of conditions that would essentially have

17   defense counsel waiving the rules of evidence --

18          THE COURT:  Okay.

19          MR. MACDOUGALL:  -- and agreeing e-mails

20   and text messages are businesses records, which of

21   course, they're not; agreeing to consult with the

22   Government before using 302 in cross-examination; we
```

```
 1    can't agree to any of that, Your Honor --

 2            THE COURT:  No, I understand.

 3            MR. MACDOUGALL:  -- and I don't think any

 4    competent defense lawyer would.  So that's -- that's

 5    that issue.  The second --

 6            THE COURT:  I understand that.  I

 7    understand there's a dispute about what the scope of

 8    Giglio is in this case, but as I understand it,

 9    those conditions are not being imposed for the

10    production of Giglio information, but simply being

11    requested to -- in connection with what they view is

12    disclosures beyond their obligations.

13            MR. MACDOUGALL:  Well, no, Your Honor, the

14    fact is that 302 and this is -- goes beyond 302.

15            THE COURT:  Right.

16            MR. MACDOUGALL:  The 302s that were made

17    available, there were five relating to Mr. Flynn,

18    there have to be at least 20.  And the five that

19    related to Mr. Flynn have not -- in the material

20    that we've laid out -- and none of the -- the

21    factual information that we've laid out, it's

22    clearly out there.
```

1        And -- and, you know, the Government has

2   said, well, it's sensitive.  Well, that's not

3   something we have to worry about.  And the

4   Government -- the Government has contended that --

5   that they should wait until a short time before

6   trial and that's just not fair, Your Honor.

7        And the reason that we're here before the

8   Court is, you know, Mr. Rafiekian has and through

9   his counsel has a great deal of work to do to put

10  together a cross-examination of Michael Flynn that's

11  effective.  This is not simply asking the witness if

12  he's got a conviction, was it for a false statement,

13  and sitting down.

14       There's a great deal there and in order for

15  us to be effective, Your Honor, we have to

16  understand what it is.  That has not been produced,

17  I think the Government made clear in its pleadings

18  that it wasn't going to be produced until some

19  future development.  We don't have much time.  We

20  have 30 days until our pretrial motions are due.

21       We -- without going into too much strategic

22  information, we have two law firms that have

1   received subpoenas.  I think those are going to have

2   to be litigated and those relate directly to what

3   we're trying to accomplish here in being effective

4   and being prepared.  That's all we're asking for,

5   Your Honor, is to be allowed to do our job and to

6   have access to information that the Court has -- is

7   entitled to.  There's no statute or rule that says

8   five days before trial --

9           THE COURT:  Right.

10          MR. MACDOUGALL:  -- you get Giglio

11  material.

12          It's a unique situation, Your Honor.

13  Mr. Rafiekian is a man who is, in my view, broken.

14  He's broken financially, pro bono counsel, he's, you

15  know, alienated from his life and his work.  All he

16  has to help us give him a fair trial is the Court

17  and --

18          THE COURT:  Well, specifically other

19  than -- other than ordering that the Giglio

20  information be produced expeditiously, what

21  specifically do you want the Court to consider

22  ordering?

```
 1            MR. MACDOUGALL:  I -- we ask the Court to

 2   also consider ordering the Government to inquire of

 3   other agencies and that would include the Office of

 4   Special Counsel, that would include the Defense

 5   Intelligence Agency, that would include the

 6   Department of Defense for other Giglio material.

 7            And there is specific reason for that.

 8   This is not a fishing expedition.  It's been widely

 9   reported from the payments that Mr. Flynn received

10   while a retired general, that according to the

11   general counsel, the Defense Department violated the

12   emoluments clause of the Constitution and also

13   several rules to which he was subject.

14            So there's a record here, it's -- it's --

15   part of it has kind of worked its way in the public

16   domain.  So we know it's out there and that's what

17   we're asking for.

18            THE COURT:  All right.

19            MR. MACDOUGALL:  Thank you, Your Honor.

20            THE COURT:  Mr. Gillis.

21            MR. GILLIS:  Thank you, Your Honor.  It's

22   obvious that the Court did read our filing, despite
```

1    the rather tardy production of it, although it was

2    produced within our time --

3              THE COURT:  Right.

4              MR. GILLIS:  -- frame.  I wish that we

5    would have been able to produce --

6              THE COURT:  Well, I didn't want to put off

7    the hearing because it seemed the issue could be

8    addressed now soon -- that they deserved to be

9    addressed now, sooner rather than later.

10             MR. GILLIS:  I couldn't -- I couldn't agree

11   more, Your Honor, depending on your point of view.

12   But the one thing -- first of all, I need to make a

13   couple of corrections to what my dear colleague has

14   said.

15             First of all, the documents are available

16   currently.  All of the -- all of the 302s that could

17   arguably relate to this case are available to then

18   review upstairs in -- in our office.  We made them

19   available earlier, not all of them, Your Honor, but

20   we've made them -- some of them available and we are

21   happy to make them -- the rest of them available,

22   but we've asked for some reasonable conditions that

1   are in the e-mails that are attached to our response

2   and we've made two subsequent requests.

3            We did have a phone call about their

4   objections to the conditions, I'm willing to be

5   corrected on this, but my recollection is in the

6   last phone call we had, Mr. Trout undertook to

7   respond to our conditions with what he thought were

8   the reasonable conditions that they could live with.

9   So we've been trying to negotiate this, but we

10  haven't heard yet from -- the ball is in their

11  court.

12           So we're not trying to hide the ball here

13  at all.  And in addition to all of the General's

14  302s having to do specifically with this

15  investigation, we're also willing to produce

16  redacted portions of any 302 of the General's that

17  were collected or made in the course of the Special

18  Counsel's investigation that do relate specifically

19  to this case.

20           Your Honor, we do draw the line though at a

21  fishing expedition into everything else that the

22  Special Counsel might have been investigating.  And,

1    of course, it is a sensitive investigation and also

2    there are pending investigations that concern or

3    concern the subjects that would be revealed by an

4    unfettered review of 19 302s.

5            By the way, my understanding is that 15 of

6    those -- 15 of those come from the Special Counsel's

7    Office.  Four of them were produced in connection

8    with our investigation and those, as I said, are

9    available in their entirety without any redactions

10   if we can just have some simple reasonable

11   conditions from the defense on that.

12           So apart from the sensitivities, that's not

13   what we're basing our argument on, Your Honor.

14   Regardless of how sensitive the materials might be

15   if they contain Brady or Giglio, they will be

16   disclosed.  You can take that to the bank, Your

17   Honor.  We are never going to -- going to fail to --

18   to live by our sacred obligations under Giglio and

19   Brady because some information might be sensitive.

20   And as the Court knows, even if it's classified, we

21   deal with it.

22           THE COURT:  Right.  I understand all

 1    counsel has -- has appearances now, so...

 2              MR. GILLIS:  That's true, Your Honor.  And

 3    so we would make available any information that

 4    directly related to the case.  To the extent that

 5    there might be something on the fence that's

 6    extraordinarily sensitive, we'll bring it to the

 7    Court's attention as provided under SEPA.

 8              So there will be no issue, Your Honor, in

 9    this case about production of Brady or Giglio,

10    regardless of where it comes from, regardless how

11    sensitive it might be; we will deal with that.  What

12    we're objecting to is just a frolic through

13    everything else that the Special Counsel's Office

14    produced in connection with entirely unrelated

15    matters.

16              THE COURT:  What about requests of the

17    scope of inquiry that they requested with respect to

18    other agencies?

19              MR. GILLIS:  Your Honor, as we do in every

20    single case where we have reason to believe that the

21    United States intelligence community or any other

22    part of the government may have relevant -- may have

1   Brady or Giglio information, we do a review of that.

2   We submit what's called a prudential search request

3   with a long list of the subjects that we want them

4   to produce documents for.  They do a thorough search

5   for those documents, they make them available to us

6   typically in the hundreds, often in the thousands of

7   documents, and we review them one by one to ensure

8   that there is no Brady or Giglio among that, and we

9   have done that.  And in some cases we brought those

10  already to the -- to the Court's attention.

11          We are continuing that review because we --

12  because of the volume but also because we learned of

13  some more recently, but we will continue that review

14  and we will make timely disclosure of that

15  information.

16          THE COURT:  But I take it the -- the Brady

17  and Giglio -- in particular, the Giglio information

18  that you have, that you know needs to be disclosed,

19  has been made available only as you've indicated,

20  you've told them you have the 302s available, you

21  can come look at them under certain conditions; is

22  that accurate or not accurate?

```
1            MR. GILLIS:  That's true, Your Honor.  One

2    of the conditions, for example, being that -- that

3    we'd like, in exchange, some stipulations with

4    respect to routine matters that are routinely

5    accepted.  These conditions are commonly asked for

6    and commonly agreed to by defense counsel in this

7    district including the Federal Public Defender's

8    Office and some of -- and many other attorneys that

9    are equally fine to these -- these attorneys'

10   excellent reputations.

11           And -- and you also make them available in

12   a way that they can take notes on them, they can

13   review them as often as they want, and those --

14   those binders we do keep because they concern

15   sensitive matters and we don't want them leaving our

16   office, and that's one of the conditions that

17   we've -- that we've asked for.

18           Now, those binders are -- are cordoned off

19   from anybody on the trial team.  The only -- the

20   only time anybody in our office touches them is when

21   they make a request to come over and see them.  We

22   set them up with a conference room and we'll let
```

1   them stay there for as long as they want.  They've

2   done that for five days with the materials that

3   we've already produced and they can look at them

4   from now until the trial as far as we're concerned.

5           Moreover, Your Honor, we will produce that

6   entire binder of evidence regardless of whether they

7   pertain to the Government's witness, we will produce

8   that entire binder of 302s that relate to this

9   investigation and this prosecution.  We'll make

10  those available for them to have at their table

11  during trial so that they can refer to them -- so

12  that they can refer to them there.

13          With respect to this -- with respect to

14  this request, Your Honor, we submit, as we did in

15  our papers, the Supreme Court forbids what they're

16  asking.  And Richie makes clear that with respect to

17  the Giglio and Brady obligations that we have,

18  unless there's some reason for the Court to suspect

19  that there might not have been full disclosure, as

20  the Supreme Court said, the prosecutor's decision on

21  disclosure is final.

22          Now, in the Stevens case that they refer

1    to, there are extraordinary circumstances.  There

2    they're certainly not president -- present here when

3    the Court might reasonably have found that that

4    condition had been triggered.  But reliance on

5    Stevens is completely out of place here because

6    nothing like that has been present in this case.

7            With respect to the Supreme Court's

8    direction to the Court with respect to Giglio and

9    Brady information, all that they have cited in

10   response -- or actually they haven't responded to

11   ours, we didn't give them time to do so

12   unfortunately, but -- but all that they have cited

13   are malum cases that recite our obligations that we

14   have no -- so --

15           THE COURT:  Right.  I understand.

16           MR. GILLIS:  You may have heard enough,

17   Your Honor.

18           THE COURT:  No.

19           MR. GILLIS:  So I just want to correct one

20   statement, which is that this is somehow -- that

21   this would not have been brought had General Flynn

22   not been a business partner of Mr. Rafiekian and

1    he -- Mr. MacDougall referred to the number of

2    prosecutions under the FARA statute.  This is not

3    such a prosecution, Your Honor.  This is a

4    prosecution for conspiracy to violate section 951

5    and that is an entirely different matter.

6            And, moreover, this case involves a

7    conspiracy to influence congressional and public

8    opinion for a specific goal of a foreign government

9    being undertaken at the direction and control of

10   high officials within the government of Turkey.  So

11   this is not a case that would not have been brought.

12           Mr. Rafiekian need not have had any partner

13   and under these circumstances this case certainly

14   would have been brought.  I just want to make --

15           THE COURT:  All right.

16           MR. GILLIS:  -- that perfectly clear.  If

17   the Court has any questions, I'd be happy to address

18   them.

19           THE COURT:  Mr. MacDougall.

20           MR. MACDOUGALL:  Just a couple of things,

21   Your Honor.  Thank you.

22           Your Honor, I need to correct a couple of

1   things my friend, Mr. Gillis, noted.  The first is

2   the Government can't change the question.  The

3   reference that the Court continues to hear is

4   "related to this case," Giglio material doesn't need

5   to be related to this case, a lie is a lie and a bad

6   act is a bad act.

7           With respect to sensitivity, Your Honor,

8   the Court is certainly available to enter a

9   comprehensive protective order, you know, among

10  Mr. Trout, Ms. Mitchell, and me, you probably have,

11  I hate to say, 100 years experience in criminal law.

12  You're not looking at Whitey Bulger here, you know,

13  we will obey a protective order as we always have.

14          THE COURT:  Those all have been in place

15  yet?

16          MR. MACDOUGALL:  Well, there are some, but

17  I think a more robust protective order would

18  certainly be fine.

19          THE COURT:  Right.

20          MR. MACDOUGALL:  We're not interested --

21          THE COURT:  Right.

22          MR. MACDOUGALL:  -- in doing anything other

 1  than obeying that.

 2         Mr. Gillis noted that there were continuing

 3  investigations going on and that is just

 4  inconsistent with what the Special Counsel said two

 5  days ago in a status report in Mr. Flynn's case

 6  which ended with, in the Government's view, as

 7  cooperation, and otherwise complete and otherwise

 8  was -- this case -- the full sentence was, However,

 9  while the defendant remains in a position to

10  cooperate with law enforcement authorities and could

11  testify in an EDEA case, should it proceed to trial,

12  in the Government's view this cooperation is

13  otherwise complete.

14         So, you know, if there -- there's anything

15  to worry about with respect to ongoing

16  investigations, that seemed to put an end to it,

17  Your Honor.  There is one -- one note in

18  Mr. Gillis -- the Government's briefing that I did

19  want to bring to the Court's attention.  There's a

20  reference to the identity of a witness being

21  protected for the time being to prevent any

22  reprisals or tampering involving a witness.  We

1    don't understand that, Your Honor, certainly, you

2    know, I don't think the Court has any concerns about

3    us or Mr. Rafiekian having to do with -- with --

4    with that.

5            With respect to -- the Court did mention

6    that counsel was clear and that's true.  What hasn't

7    happened yet is the entry of a SEPA Section 3

8    order --

9            THE COURT:  Right.

10           MR. MACDOUGALL:  -- which the security

11   officer requires in order to read us in.  So I

12   understood that was going to be submitted today if

13   it can be submitted to the court soon.  That's not

14   our place to do, that's -- that's the Government's.

15           THE COURT:  The Government's, right.

16           MR. MACDOUGALL:  So, Your Honor, we've

17   spoken our piece.

18           THE COURT:  Correct.

19           MR. MACDOUGALL:  We would ask for the

20   Court's help here on behalf of Mr. Rafiekian.  Thank

21   you.

22           THE COURT:  Mr. Gillis, what is the status

```
 1   of that Section 3 order?

 2          MR. GILLIS:  It should be -- Your Honor, it

 3   will be filed by -- by Monday at the latest.

 4          THE COURT:  All right.

 5          MR. GILLIS:  May I have one --

 6          THE COURT:  Yes.

 7          MR. GILLIS:  -- last word, Your Honor.

 8   First of all --

 9          THE COURT:  Let Mr. Trout -- let's hear

10   from Mr. Trout first and then we'll --

11          MR. GILLIS:  Oh, I'm sorry, please.

12          MR. TROUT:  Thank you, Your Honor.  Robert

13   Trout.  I just wanted to correct one thing, my

14   clearance is not complete.  Mr. -- Mr. MacDougall is

15   cleared.  Without taking anything away from the

16   confidence that Mr. Rafiekian has in Mr. MacDougall,

17   I have been representing him for a good long time

18   and I know that he would like for me to be --

19          THE COURT:  I thought you had gotten your

20   clearance, but you haven't?

21          MR. TROUT:  I just checked about a week ago

22   and was told that its in process.  Also,
```

1   Ms. Mitchell, who is here and important to the

2   defense team, has also not been cleared.

3            THE COURT:  All right.

4            MR. TROUT:  Thank you, Your Honor.

5            MR. GILLIS:  And to be clear, Your Honor,

6   Mr. Trout and Mr. MacDougall have both been cleared

7   before.  I have no reason to doubt that Mr. Trout --

8            THE COURT:  All right.

9            MR. GILLIS:  -- will be -- will be cleared,

10  we have no control over that, but that process does

11  sometimes take time depending upon the last time

12  that there was a background investigation in place.

13           THE COURT:  Well, let's -- from your

14  perspective, what's the -- what's the problem in

15  producing earlier rather than later the documents

16  that you intend to produce before the trial?

17           MR. GILLIS:  None, Your Honor.  We're --

18  we're prepared to produce all the documents that

19  we've -- we're not suggesting that five days before

20  trial is -- is what we're planning.  As soon as we

21  become aware of Giglio information, we disclose it.

22  We're not --

```
 1              THE COURT:  Right.

 2              MR. GILLIS:  We're not -- we're not sitting

 3    on it until five days before trial.

 4              THE COURT:  And your objection is to

 5    providing actual copies as opposed to simply

 6    providing access?

 7              MR. GILLIS:  Well, to be clear, with

 8    respect to the -- and I don't think that they have

 9    objected to this aspect of it.  We, as a matter of

10    practice in this district, we -- it's not uniform, I

11    have to confess, but in a case like this we do not

12    want those 302s leaving the office, despite what

13    protective order might be in place.  We just don't

14    do it.

15              First of all, they're not entitled to them

16    at all.  We're going the extra mile by providing

17    them the actual 302s, even though the rules made

18    clear that they don't -- they're not entitled to

19    them.  We're producing all the 302s regardless if

20    they're going to be witnesses or not.

21              The only limitation that we have made to --

22    with respect to 302s and portions of 302s that
```

1   concern matters that are completely, completely

2   unrelated to this, and so with the respect -- the

3   rest of it, we don't have any chuck with the

4   defendants about getting access to that.  And, as I

5   said, we're prepared to provide them access right

6   away.

7            I do want to say that whatever the special

8   counsel's office may be doing, there are other

9   districts or at least one other district -- pardon

10  me, Your Honor.  I should not -- Your Honor -- and I

11  withdraw any representation as to how many there

12  are.

13            THE COURT:  All right.

14            MR. GILLIS:  I will say at least there are

15  other investigations that do not -- that would be or

16  could be hampered by disclosure of unfettered access

17  to the information that we -- that we propose to

18  redact.

19            If -- I mean, if this were even Jencks, if

20  I may get into that argument, Your Honor.  I

21  don't -- I don't want to tax the Court's patience.

22            THE COURT:  No, that's fine.

 1              MR. GILLIS:  But even if this could be

 2   considered Jencks material -- the 302s, which

 3   they're not; under the law, they're clearly not,

 4   under Fourth Circuit law, and based on the statutory

 5   language itself they're clearly not statements of

 6   any witness, including General Flynn.

 7              So even if we had General Flynn's

 8   statements, if you were going to consider the 302s

 9   to be statements, the law requires that the Court

10   examine those parts in camera where we say that they

11   do not relate to the subject matter of his -- of his

12   testimony.  That the Court would be required to

13   examine any portions of statements that the

14   Government presents to the Court ex parte.  So they

15   would not still get access to them, even if they

16   could be considered Jencks.

17              In this Court in this district, the Court's

18   have routinely accepted the Government's

19   representation that we will produce all Giglio and

20   all Brady that we're aware of and we make a diligent

21   search and we're continuing to do so.  We don't

22   expect to find much, if anything more, but our --

1    our trigger on that -- I have a hair -- personally,

2    I have a hair trigger for that, Your Honor, and I

3    don't know any good prosecutor that -- that doesn't.

4    So if I come across anything that is even arguably

5    remotely Giglio, it's going to get produced.

6           So it doesn't require -- so essentially

7    their motion is moot as to the district court in the

8    case that we cited found, and the Court should not

9    get into the mechanics of the discovery aspects

10   of --

11          THE COURT:  Well, a big piece of this, as I

12   understand, is really a dispute over the conditions

13   that have been imposed to have access to what you're

14   offering.

15          MR. GILLIS:  I don't know, Your Honor.

16   We're -- no.  I -- I -- I don't believe that that's

17   the case.  The conditions, as the Court can see,

18   are -- are fairly routine and reasonable.  I can't

19   imagine any reason why they would object to

20   stipulating to the authenticity of bank records or

21   telephone toll records, records of that kind that I

22   don't know whether they think we're going to slip in

1    something or the bank thinks that --

2            THE COURT:  Right.

3            MR. GILLIS:  You know, those are routinely

4    agreed to.

5            THE COURT:  Right.

6            MR. GILLIS:  I don't know that the Court

7    wants to hear from half a dozen custodians of

8    records in order to establish them, but that is not

9    the hub of this motion.  This motion doesn't even

10   really concern that.  And to the extent that they

11   have objections to the conditions that we've asked

12   for, I've asked for their response and I'm still

13   waiting for it.  So I don't -- I submit that the

14   Court should not get involved in that which we're

15   willing to try to work out.

16           So the conditions really aren't part of

17   this motion and I'm really not prepared to argue --

18           THE COURT:  All right.

19           MR. GILLIS:  -- that -- that part of it,

20   Your Honor.

21           THE COURT:  All right.  Mr. MacDougall, let

22   me hear from you.  Because I understood what was a

 1    big piece of this -- this problem here --

 2              MR. MACDOUGALL:  I'm sorry, Your Honor?

 3              THE COURT:  I understood the conditions

 4    that they've asked -- that they've imposed is a big

 5    piece of this problem.

 6              MR. MACDOUGALL:  Well, Your Honor, it is --

 7    it is a -- it's big problem for us, as I mentioned

 8    earlier.

 9              THE COURT:  Right.

10              MR. MACDOUGALL:  I mean, some of the things

11    they're asking for are just malpractice from our

12    point of view, we can't agree to them.  And we had

13    two lengthy conversations, Mr. Trout and I,

14    Ms. Mitchell was on one of them, on January 18th,

15    again on February 28th with Mr. Gillis about

16    resolution.

17              The issue here, Your Honor, is not what's

18    in the redacted book of 302s that --

19              THE COURT:  Right.

20              MR. MACDOUGALL:  -- that Mr. Gillis talked

21    about.  And it's -- and it's not really in the

22    sacred duty he talks about.  We have identified a

1    dozen situations that I'm sure were the subject of

2    inquiries by FBI agents, special counsel lawyers,

3    Department of Justice lawyers that are clearly

4    within the subject -- within the scope of the

5    Giglio.  False statements, money from Russians,

6    violations of law; none of that is in the five

7    heavily redacted 302s we've gotten.

8           So even if we were to reach agreement with

9    the Government about the terms, which I'm not

10   optimistic we will, and if we were, what's being

11   offered is -- doesn't contain the Giglio that we

12   know is out there, not to mention the Giglio that

13   the media or others haven't identified yet.  That's

14   the heart of our defense, Your Honor, and that's the

15   heart of our --

16          THE COURT:  All right.  Mr. Gillis, speak

17   to that specifically, that what you've produced

18   doesn't reflect what has been publicly reported,

19   arguably the Giglio.  Have you looked into those --

20   those issues and --

21          MR. GILLIS:  Of course, Your Honor.

22          THE COURT:  -- inquiry into the FBI, the

1   other -- the other agencies that have been mentioned

2   for any -- any Giglio information that would pertain

3   to Mr. Flynn?

4           MR. GILLIS:  Absolutely, Your Honor, we

5   have.  And we have carefully reviewed all of the 15

6   302s that we obtained from the special counsel's

7   office.  We have carefully reviewed all of the

8   documents that we've been able to get so far from

9   the USIC and from any other agency that might have

10  relevant information that we would need to examine.

11          What -- what the case law makes clear,

12  including the Supreme Court, is that our obligation

13  is to produce Giglio information.  We're not obliged

14  to produce every single document in which it might

15  be contained.

16          So we have an obligation to produce Giglio,

17  if there's a single line in the 302 that suggests

18  that there is Giglio or Brady in there, we certainly

19  make that information available to the defense.

20  There is no argument there, Your Honor.

21          What we -- what we're objecting to is that

22  because there may be a single line in a single

1    20-page 302, we have to produce to them the entire

2    302.

3           The implicit part of their argument is that

4    we, as the Government, are either incompetent to

5    make that -- to recognize it or that we are

6    willfully unwilling to produce it, corruptly, in

7    other words, unwilling to produce it.

8           And that is an argument that would pertain

9    in any case, any time any defendant came into this

10   court they could say, look, there's, you know, this

11   is an important government witness, we need to see

12   every single 302, we -- we -- we need to review it

13   ourselves.  And why stop there?  It would only make

14   logical sense that you go from there right into the

15   entire Government's file in case there is some

16   possibility that we missed some bit of Giglio or

17   Brady.

18          THE COURT:  Mr. MacDougall, let me ask you

19   this, have you itemized to -- for Mr. Gillis

20   specific areas that you've mentioned to the Court?

21          MR. MACDOUGALL:  We -- well, we have to

22   some extent, Your Honor, but I'm certainly able to

1    do it now on the record.

2            THE COURT:  All right.  Well, no need to do

3    that, but -- all right.  That's been -- that's been

4    done.

5            MR. MACDOUGALL:  Well, we will certainly

6    send him a writing by the end of the day with all

7    that in.  Thank you, Your Honor.

8            THE COURT:  All right.  All right.

9    Anything else on this?

10           MR. GILLIS:  Not from us, Your Honor.

11           THE COURT:  All right.  The Court is having

12   difficulty understanding really the confluence of

13   the dispute.  As I understand it, there are two

14   issues.  There is no dispute as to the underlying --

15   Government's underlying obligations to produce

16   Giglio and I am concerned to the extent the

17   Government is conditioning that obligation on

18   other -- the agreement of the conditions; the Court

19   can address that.

20           But the other issue is that the Government

21   has not produced Giglio within areas that the

22   defense believes has been publicly reported as

1    containing Giglio information.  What I'm going to do

2    is this, the Government obviously has an obligation

3    to produce Giglio information, they're reported to

4    do that as expeditiously as possible if they haven't

5    already done it.

6         I don't think you can qualify the

7    production of any information -- Giglio information

8    by requiring them to agree to any conditions as to

9    that.  Can they be -- can be reasonable -- I'm sure

10   counsel will engage in reasonable agreements, but to

11   the extent that they can't agree on a condition, you

12   can't withhold information because they haven't

13   agreed to a specific condition.

14        MR. GILLIS:  Of course --

15        THE COURT:  To the -- to the extent that

16   you're producing information you believe is beyond

17   your Giglio obligation and are asking for conditions

18   with respect to that scope of production, then I

19   think you can engage in -- in discussions about what

20   conditions they can agree to; but if you can't agree

21   on those conditions, you still have the obligation

22   to produce the underlying Giglio information.

```
 1          MR. GILLIS:  Yeah, of course.  I'm sorry, I

 2   didn't mean to interrupt.

 3          THE COURT:  All right.  Let me just

 4   continue.

 5          Also, I ask Mr. MacDougall to send to the

 6   Government the specific listing of those areas in

 7   which you think Giglio information exists, and in

 8   which you've not received any Giglio information,

 9   the Government can specifically respond that they've

10   discharged their obligation in that respect.

11          I understand from Mr. Gillis that he has

12   viewed his Giglio obligation of inquiry broadly and

13   that there is no need for the Court to -- to say

14   much more about that.  I -- I'm fully confident that

15   he will discharge his obligation with that broad

16   scope.

17          MR. GILLIS:  May I just say one word, Your

18   Honor?

19          THE COURT:  Yes.

20          MR. GILLIS:  To be clear, I have not and

21   would not ever condition our Giglio obligations upon

22   any stipulations.
```

1          THE COURT:  Okay.

2          MR. GILLIS:  And that has never been an

3   issue in this case.

4          THE COURT:  All right.

5          MR. GILLIS:  If there is Giglio, we have

6   and are prepared to disclose it.  That is not the

7   condition we've asked for, it's simply a condition

8   for the wholesale, which we're offering --

9          THE COURT:  Right.

10          MR. GILLIS:  -- but the wholesale of review

11   of all of the witnesses' 302s, including those of

12   General Flynn, and so -- but to the extent there's

13   any Giglio involved in that, we have never

14   conditioned our obligation on that and I certainly

15   would never do so.

16          THE COURT:  All right.  Mr. MacDougall, I'm

17   not sure I've responded fully to the scope of your

18   motion, but if I haven't, tell me now.

19          MR. MACDOUGALL:  Thank you, Your Honor.

20   It's -- it's -- I think the Court's order will be --

21   will be helpful.  One request I'd like to make is

22   once we convey the list of matters we've identified

```
 1  in the public domain, we'd like to include that in

 2  the record of the case and file it with the court.

 3            THE COURT:  All right.  That's fine.

 4            MR. MACDOUGALL:  Thank you, Your Honor.

 5            THE COURT:  All right.  The Court will

 6  issue an order on this.

 7            MR. GILLIS:  Thank you.

 8            MR. MACDOUGALL:  Thank you, Your Honor.

 9            THE COURT:  Counsel is excused.

10            (Whereupon, the proceedings at 10:11 a.m.

11  were concluded.)

12

13

14

15

16

17

18

19

20

21

22
```

```
 1          COMMONWEALTH OF VIRGINIA AT LARGE, to wit:

 2              I, REBECCA MONROE, Court Reporter and

 3     Notary Public in and for the Commonwealth of

 4     Virginia at Large, and whose commission expires

 5     August 31, 2021, do certify that the foregoing is a

 6     true, correct, and full transcript of the

 7     proceedings.

 8              I further certify that I am neither related

 9     to nor associated with any counsel or party to the

10     proceedings; nor otherwise interested in the event

11     thereof.

12

13

14
                   _____
15

16                   Rebecca Monroe

17                   Notary Public

18                   Commonwealth of Virginia at Large

19                   Notary No. 7243327

20

21

22
```

### WORD INDEX

**< 1 >**
**1:18-CR-457**  1:7
  4:4
**10:11**  40:10
**100**  22:11
**1130**  3:7
**1333**  2:16
**15**  1:14  15:5, 6
  34:5
**1627**  3:6
**18th**  32:14
**19**  6:11  15:4

**< 2 >**
**20**  6:13  9:18
**20006**  3:8
**20036**  2:17
**2016**  7:7
**2019**  1:14
**202**  2:18  3:9
**2021**  41:5
**20-page**  35:1
**2100**  2:8
**22314**  2:9
**28th**  32:15
**299-3700**  2:10

**< 3 >**
**3**  24:7  25:1
**30**  10:20
**302**  8:22  9:14, 14
  14:16  34:17  35:1,
  2, 12
**302s**  9:16  13:16
  14:14  15:4  17:20
  19:8  27:12, 17, 19,
  22, 22  29:2, 8
  32:18  33:7  34:6
  39:11
**31**  41:5

**< 4 >**

**401**  1:19
**464-3311**  3:9

**< 5 >**
**50**  7:7

**< 7 >**
**703**  2:10
**7243327**  41:19

**< 8 >**
**887-4510**  2:18

**< 9 >**
**9:35**  1:21
**951**  21:4

**< A >**
**a.m**  1:21  40:10
**able**  5:21  6:15
  13:5  34:8  35:22
**above-entitled**  1:16
**Absolutely**  34:4
**accepted**  18:5
  29:18
**access**  11:6  27:6
  28:4, 5, 16  29:15
  30:13
**accomplish**  11:3
**accurate**  17:22, 22
**act**  22:6, 6
**actual**  27:5, 17
**add**  6:11
**addition**  14:13
**address**  21:17
  36:19
**addressed**  13:8, 9
**administratively**
  7:4
**agencies**  12:3
  16:18  34:1
**Agency**  6:20  12:5
  34:9
**agents**  6:18  33:2
**ago**  23:5  25:21

**agree**  9:1  13:10
  32:12  37:8, 11, 20,
  20
**agreed**  18:6  31:4
  37:13
**agreeing**  8:19, 21
**agreement**  33:8
  36:18
**agreements**  37:10
**AJT**  1:7
**Akin**  2:15
**Alexandria**  1:3, 20
  2:9
**alienated**  11:15
**allowed**  11:5
**ALPTEKIN**  1:11
  4:5
**AMERICA**  1:5
**answer**  8:11
**ANTHONY**  1:17
**anybody**  18:19, 20
**apart**  15:12
**appearance**  5:9
**appearances**  4:7
  16:1
**areas**  35:20  36:21
  38:6
**arguably**  13:17
  30:4  33:19
**argue**  7:2  31:17
**argument**  15:13
  28:20  34:20  35:3,
  8
**asked**  13:22  18:5,
  17  31:11, 12  32:4
  39:7
**asking**  7:16, 19
  10:11  11:4  12:17
  19:16  32:11
  37:17
**aspect**  27:9
**aspects**  30:9
**associated**  41:9
**attached**  8:14
  14:1

**attention**  16:7
  17:10  23:19
**attorney**  4:9
**attorneys**  18:8, 9
**Attorney's**  2:6
**August**  41:5
**authenticity**  30:20
**authorities**  23:10
**available**  9:17
  13:15, 17, 19, 20,
  21  15:9  16:3
  17:5, 19, 20  18:11
  19:10  22:8  34:19
**Avenue**  2:8, 16
**aware**  26:21
  29:20

**< B >**
**background**  26:12
**bad**  22:5, 6
**ball**  14:10, 12
**bank**  15:16  30:20
  31:1
**based**  29:4
**basing**  15:13
**behalf**  1:22  2:3,
  12  3:3  24:20
**believe**  16:20
  30:16  37:16
**believes**  36:22
**beyond**  9:12, 14
  37:16
**big**  30:11  32:1, 4,
  7
**BIJAN**  1:8, 9
  2:12  3:3  4:4, 14
**binder**  19:6, 8
**binders**  18:14, 18
**bit**  35:16
**bono**  11:14
**book**  32:18
**Brady**  15:15, 19
  16:9  17:1, 8, 16
  19:17  20:9  29:20
  34:18  35:17

briefing 4:*18*
23:*18*
bring 16:*6* 23:*19*
broad 38:*15*
broadly 38:*12*
broken 11:*13, 14*
brought 17:*9*
20:*21* 21:*11, 14*
Bulger 22:*12*
business 7:*2*
20:*22*
businesses 8:*20*

< C >
Cacheris 3:*5*
call 14:*3, 6*
called 17:*2*
camera 29:*10*
carefully 34:*5, 7*
Case 4:*3* 5:*17*
6:*5, 11* 7:*1, 3* 9:*8*
13:*17* 14:*19* 16:*4,*
9, 20 19:*22* 20:*6*
21:*6, 11, 13* 22:*5*
23:*5, 8, 11* 27:*11*
30:*8, 17* 34:*11*
35:*9, 15* 39:*3*
40:*2*
case, 22:*4*
cases 7:*10, 11*
17:*9* 20:*13*
certain 17:*21*
certainly 8:*7* 20:*2*
21:*13* 22:*8, 18*
24:*1* 34:*18* 35:*22*
36:*5* 39:*14*
certify 41:*5, 8*
change 22:*2*
checked 25:*21*
chuck 28:*3*
Circuit 29:*4*
circumstances
20:*1* 21:*13*
cited 20:*9, 12*

30:*8*
civilly 7:*4*
classified 15:*20*
clause 12:*12*
clear 10:*17* 19:*16*
21:*16* 24:*6* 26:*5*
27:*7, 18* 34:*11*
38:*20*
clearance 25:*14, 20*
cleared 25:*15*
26:*2, 6, 9*
clearly 9:*22* 29:*3,*
5 33:*3*
CLERK 4:*3*
colleague 13:*13*
collected 14:*17*
come 15:*6* 17:*21*
18:*21* 30:*4*
comes 16:*10*
commencing 1:*20*
commission 41:*4*
commonly 18:*5, 6*
COMMONWEAL
TH 41:*1, 3, 18*
community 16:*21*
companies 6:*19*
compel 4:*18* 5:*15*
competent 9:*4*
complete 23:*7, 13*
25:*14*
completely 20:*5*
28:*1, 1*
comprehensive
22:*9*
concern 15:*2, 3*
18:*14* 28:*1* 31:*10*
concerned 19:*4*
36:*16*
concerns 24:*2*
concluded 40:*11*
condition 20:*4*
37:*11, 13* 38:*21*
39:*7, 7*
conditioned 39:*14*
conditioning 36:*17*

conditions 8:*16*
9:*9* 13:*22* 14:*4, 7,*
8 15:*11* 17:*21*
18:*2, 5, 16* 30:*12,*
17 31:*11, 16* 32:*3*
36:*18* 37:*8, 17, 20,*
21
conference 18:*22*
confess 27:*11*
confidence 25:*16*
confident 38:*14*
confluence 36:*12*
congressional 21:*7*
connection 9:*11*
15:*7* 16:*14*
consider 11:*21*
12:*2* 29:*8*
considered 29:*2,*
16
conspiracy 21:*4, 7*
Constitution 12:*12*
consult 8:*21*
contain 15:*15*
33:*11*
contained 34:*15*
containing 37:*1*
contended 10:*4*
Contents 2:*22* 3:*1*
continue 17:*13*
38:*4*
continued 2:*22*
3:*1*
continues 22:*3*
continuing 17:*11*
23:*2* 29:*21*
control 21:*9*
26:*10*
conversations
32:*13*
convey 39:*22*
conviction 7:*9*
10:*12*
cooperate 23:*10*
cooperation 23:*7,*

12
copies 27:*5*
cordoned 18:*18*
core 5:*20*
correct 20:*19*
21:*22* 24:*18*
25:*13* 41:*6*
corrected 14:*5*
corrections 13:*13*
corruptly 35:*6*
counsel 4:*6, 19, 20*
5:*7, 15, 21* 6:*9*
8:*17* 10:*9* 11:*14*
12:*4, 11* 14:*22*
16:*1* 18:*6* 23:*4*
24:*6* 33:*2* 37:*10*
40:*9* 41:*9*
Counsel's 14:*18*
15:*6* 16:*13* 28:*8*
34:*6*
couple 13:*13*
21:*20, 22*
course 8:*21* 14:*17*
15:*1* 33:*21* 37:*14*
38:*1*
COURT 1:*1, 18*
4:*10, 15, 17* 5:*2, 5,*
7, 10, 13, 18 6:*7*
7:*12, 18* 8:*10, 18*
9:*2, 6, 15* 10:*8*
11:*6, 9, 16, 18, 21*
12:*1, 18, 20, 22*
13:*3, 6* 14:*11*
15:*20, 22* 16:*16*
17:*16* 19:*15, 18,*
20 20:*3, 8, 15, 18*
21:*15, 17, 19* 22:*3,*
8, 14, 19, 21 24:*2,*
5, 9, 13, 15, 18, 22
25:*4, 6, 9, 19* 26:*3,*
8, 13 27:*1, 4*
28:*13, 22* 29:*9, 12,*
14, 17 30:*7, 8, 11,*
17 31:*2, 5, 6, 14,*
18, 21 32:*3, 9, 19*

33:*16*, *22*  34:*12*
35:*10*, *18*, *20*  36:2,
8, *11*, *11*, *18*  37:*15*
38:*3*, *13*, *19*  39:*1*,
*4*, *9*, *16*  40:*2*, *3*, *5*,
*5*, *9*  41:2
**Courthouse**  1:*20*
8:*8*
**Court's**  16:7
17:*10*  20:7  23:*19*
24:*20*  28:*21*
29:*17*  39:*20*
**Criminal**  4:*3*
22:*11*
**cross-examination**
8:*22*  10:*10*
**currently**  13:*16*
**custodians**  31:7

**< D >**
**D.C**  2:*17*  3:*8*
**day**  36:*6*
**days**  10:*20*  11:*8*
19:2  23:5  26:*19*
27:*3*
**deal**  6:*3*, *15*  10:*9*,
*14*  15:*21*  16:*11*
**dear**  13:*13*
**decision**  19:*20*
**DEFENDANT**
2:*12*  3:*3*  4:*14*
23:*9*  35:*9*
**Defendants**  1:*12*
28:*4*
**defendant's**  4:*17*
**Defender's**  18:7
**defense**  5:*21*  6:*20*
8:*17*  9:*4*  12:*4*, *6*,
*11*  15:*11*  18:*6*
26:2  33:*14*  34:*19*
36:*22*
**Department**  7:*6*
12:*6*, *11*  33:*3*
**depending**  13:*11*

26:*11*
**deserved**  13:*8*
**despite**  12:*22*
27:*12*
**development**  10:*19*
**different**  21:*5*
**difficulty**  36:*12*
**diligent**  29:*20*
**direction**  20:*8*
21:*9*
**directly**  11:2  16:*4*
**discharge**  38:*15*
**discharged**  38:*10*
**disclose**  26:*21*
39:*6*
**disclosed**  6:*9*, *20*
15:*16*  17:*18*
**disclosure**  17:*14*
19:*19*, *21*  28:*16*
**disclosures**  9:*12*
**discovery**  8:*8*
30:*9*
**discussions**  4:*20*
37:*19*
**dispute**  5:*19*  9:7
30:*12*  36:*13*, *14*
**DISTRICT**  1:*1*, 2,
*18*, *19*  2:7  18:7
27:*10*  28:9  29:*17*
30:7
**districts**  28:9
**Division**  1:*3*
**document**  34:*14*
**documents**  5:*22*
8:*4*  13:*15*  17:*4*, *5*,
*7*  26:*15*, *18*  34:*8*
**doing**  22:*22*  28:*8*
**domain**  12:*16*
40:*1*
**doubt**  26:7
**dozen**  31:7  33:*1*
**draw**  14:*20*
**due**  10:*20*
**duty**  32:*22*

**< E >**
**earlier**  13:*19*
26:*15*  32:*8*
**EASTERN**  1:2, *19*
2:7
**EDEA**  23:*11*
**effective**  10:*11*, *15*
11:*3*
**either**  35:*4*
**EKIM**  1:*11*  4:*5*
**e-mail**  8:*15*
**e-mails**  8:*19*  14:*1*
**emoluments**  12:*12*
**ended**  23:*6*
**enforcement**  23:*10*
**engage**  37:*10*, *19*
**ensure**  17:7
**enter**  22:*8*
**entire**  19:*6*, *8*
35:*1*, *15*
**entirely**  16:*14*
21:*5*
**entirety**  15:*9*
**entitled**  11:7
27:*15*, *18*
**entry**  24:7
**equally**  18:*9*
**espionage**  7:*11*
**ESQUIRE**  2:*4*, *5*,
*13*  3:*4*
**essentially**  7:*10*
8:*16*  30:*6*
**establish**  31:*8*
**EVAN**  2:*5*
**event**  41:*10*
**evidence**  8:*17*
19:*6*
**ex**  29:*14*
**examine**  29:*10*, *13*
34:*10*
**example**  18:*2*
**excellent**  18:*10*
**exchange**  18:*3*

**excused**  40:*9*
**exists**  38:7
**expect**  29:*22*
**expedition**  12:*8*
14:*21*
**expeditiously**
11:*20*  37:*4*
**experience**  22:*11*
**expires**  41:*4*
**extent**  16:*4*  31:*10*
35:*22*  36:*16*
37:*11*, *15*  39:*12*
**extra**  27:*16*
**extraordinarily**
16:*6*
**extraordinary**  20:*1*
**Eye**  3:*6*

**< F >**
**fact**  9:*14*
**factors**  8:*13*
**factual**  9:*21*
**fail**  15:*17*
**fair**  10:*6*  11:*16*
**fairly**  30:*18*
**false**  10:*12*  33:*5*
**far**  19:*4*  34:*8*
**FARA**  7:*8*  21:*2*
**FBI**  6:*18*  33:*2*, *22*
**February**  32:*15*
**Federal**  18:7
**Feld**  2:*15*
**fence**  16:*5*
**file**  8:*8*  35:*15*
40:*2*
**filed**  25:*3*
**files**  6:*5*
**filing**  12:*22*
**filings**  4:*22*
**final**  19:*21*
**financially**  11:*14*
**find**  29:*22*
**fine**  5:*13*  18:*9*
22:*18*  28:*22*  40:*3*
**firms**  10:*22*

first  8:*14*  13:*12*,
*15*  22:*1*  25:*8*, *10*
27:*15*
fishing  12:*8*  14:*21*
five  9:*17*, *18*  11:*8*
*19*:2  26:*19*  27:*3*
33:*6*
Flynn  6:*10*, *22*
*7*:*3*  9:*17*, *19*
*10*:*10*  12:*9*  20:*21*
*29*:*6*  34:*3*  39:*12*
Flynn's  23:*5*  29:*7*
following  2:*22*
forbids  19:*15*
foregoing  41:*5*
foreign  21:*8*
found  20:*3*  30:*8*
Four  15:*7*
Fourth  29:*4*
frame  13:*4*
friend  22:*1*
frolic  16:*12*
full  19:*19*  23:*8*
*41*:*6*
fully  38:*14*  39:*17*
further  4:*19*, *20*
*41*:*8*
future  10:*19*

< G >
General  7:*6*
*12*:*10*, *11*  20:*21*
*29*:*6*, *7*  39:*12*
General's  14:*13*,
*16*
getting  28:*4*
Giglio  5:*16*, *19*
*6*:*4*, *16*  9:*8*, *10*
*11*:*10*, *19*  12:*6*
*15*:*15*, *18*  16:*9*
*17*:*1*, *8*, *17*, *17*
*19*:*17*  20:*8*  22:*4*
*26*:*21*  29:*19*  30:*5*
*33*:*5*, *11*, *12*, *19*
*34*:*2*, *13*, *16*, *18*

35:*16*  36:*16*, *21*
37:*1*, *3*, *7*, *17*, *22*
38:*7*, *8*, *12*, *21*
39:*5*, *13*
GILLIS  2:*4*  4:*8*,
*9*, *11*, *22*  8:*14*
*12*:*20*, *21*  13:*4*, *10*
*16*:*2*, *19*  18:*1*
*20*:*16*, *19*  21:*16*
*22*:*1*  23:*2*, *18*
*24*:*22*  25:*2*, *5*, *7*,
*11*  26:*5*, *9*, *17*
*27*:*2*, *7*  28:*14*
*29*:*1*  30:*15*  31:*3*,
*6*, *19*  32:*15*, *20*
*33*:*16*, *21*  34:*4*
*35*:*19*  36:*10*
*37*:*14*  38:*1*, *11*, *17*,
*20*  39:*2*, *5*, *10*  40:*7*
give  11:*16*  20:*11*
glean  6:*15*
go  35:*14*
goal  21:*8*
goes  9:*14*
going  5:*3*  10:*18*,
*21*  11:*1*  15:*17*, *17*
*23*:*3*  24:*12*  27:*16*,
*20*  29:*8*  30:*5*, *22*
*37*:*1*
Good  4:*8*, *10*, *11*,
*12*, *14*, *16*  25:*17*
*30*:*3*
gotten  25:*19*  33:*7*
Government  5:*15*
*7*:*13*, *20*  8:*12*, *15*,
*22*  10:*1*, *4*, *4*, *17*
*12*:*2*  16:*22*  21:*8*,
*10*  22:*2*  29:*14*
*33*:*9*  35:*4*, *11*
*36*:*17*, *20*  37:*2*
*38*:*6*, *9*
Government's  6:*5*
*19*:*7*  23:*6*, *12*, *18*
*24*:*14*, *15*  29:*18*
*35*:*15*  36:*15*

great  6:*3*, *15*  10:*9*,
*14*
Gump  2:*15*

< H >
hair  30:*1*, *2*
half  31:*7*
hampered  28:*16*
Hampshire  2:*16*
hand  5:*11*
handled  7:*4*
happened  24:*7*
happy  13:*21*
*21*:*17*
hate  22:*11*
Hauer  2:*15*
hear  7:*20*  22:*3*
*25*:*9*  31:*7*, *22*
heard  1:*17*  14:*10*
*20*:*16*
hearing  13:*7*
heart  33:*14*, *15*
heavily  33:*7*
help  11:*16*  24:*20*
helpful  39:*21*
hide  14:*12*
high  21:*10*
holding  8:*2*
Honor  4:*8*  5:*1*, *4*,
*6*  6:*2*, *21*  7:*5*, *16*
*8*:*6*, *12*  9:*1*, *13*
*10*:*6*, *15*  11:*5*, *12*
*12*:*19*, *21*  13:*11*,
*19*  14:*20*  15:*13*,
*17*  16:*2*, *8*, *19*
*18*:*1*  19:*5*, *14*
*20*:*17*  21:*3*, *21*, *22*
*22*:*7*  23:*17*  24:*1*,
*16*  25:*2*, *7*, *12*
*26*:*4*, *5*, *17*  28:*10*,
*10*, *20*  30:*2*, *15*
*31*:*20*  32:*2*, *6*, *17*
*33*:*14*, *21*  34:*4*, *20*
*35*:*22*  36:*7*, *10*

38:*18*  39:*19*  40:*4*,
*8*
HONORABLE
*1*:*17*
hub  31:*9*
hundreds  17:*6*

< I >
identified  32:*22*
*33*:*13*  39:*22*
identity  23:*20*
imagine  30:*19*
implicit  35:*3*
important  26:*1*
*35*:*11*
impose  8:*15*
imposed  9:*9*
*30*:*13*  32:*4*
include  12:*3*, *4*, *5*
*40*:*1*
including  18:*7*
*29*:*6*  34:*12*  39:*11*
incompetent  35:*4*
inconsistent  23:*4*
indicated  17:*19*
influence  21:*7*
information  5:*20*
*6*:*1*, *4*, *15*  7:*21*
*8*:*2*  9:*10*, *21*
*10*:*22*  11:*6*, *20*
*15*:*19*  16:*3*  17:*1*,
*15*, *17*  20:*9*  26:*21*
*28*:*17*  34:*2*, *10*, *13*,
*19*  37:*1*, *3*, *7*, *7*, *12*,
*16*, *22*  38:*7*, *8*
inquire  12:*2*
inquiries  33:*2*
inquiry  16:*17*
*33*:*22*  38:*12*
Inspector  7:*6*
instance  6:*3*
Intelligence  6:*20*
*12*:*5*  16:*21*
intend  26:*16*

**interested** 22:*20*
41:*10*
**interrupt** 38:*2*
**interview** 6:*12*
**interviewed** 6:*10*
**interviews** 6:*14*
**investigating** 14:*22*
**investigation**
14:*15, 18* 15:*1, 8*
19:*9* 26:*12*
**investigations**
15:*2* 23:*3, 16*
28:*15*
**involved** 31:*14*
39:*13*
**involves** 21:*6*
**involving** 23:*22*
**issue** 9:*5* 13:*7*
16:*8* 32:*17* 36:*20*
39:*3* 40:*6*
**issues** 33:*20* 36:*14*
**itemized** 35:*19*
**its** 10:*17* 12:*15*
25:*22*

**< J >**
**JAMES** 2:*4*
**Jamieson** 2:*8*
**January** 32:*14*
**Jencks** 28:*19*
29:*2, 16*
**Jim** 4:*8*
**job** 11:*5*
**Judge** 1:*17*
**Justice** 7:*6* 33:*3*

**< K >**
**KAMIL** 1:*11* 4:*5*
**keep** 18:*14*
**key** 6:*10*
**Kian,** 1:*9*
**kind** 5:*22* 12:*15*
30:*21*
**kinds** 7:*21*

**know** 10:*1, 8*
11:*15* 12:*16*
17:*18* 22:*9, 12*
23:*14* 24:*2* 25:*18*
30:*3, 15, 22* 31:*3,*
*6* 33:*12* 35:*10*
**knows** 15:*20*

**< L >**
**laid** 9:*20, 21*
**language** 29:*5*
**LARGE** 41:*1, 4,*
*18*
**latest** 25:*3*
**law** 10:*22* 22:*11*
23:*10* 29:*3, 4, 9*
33:*6* 34:*11*
**lawyer** 9:*4*
**lawyers** 33:*2, 3*
**learned** 17:*12*
**leaving** 18:*15*
27:*12*
**led** 6:*12* 7:*9*
**lengthy** 32:*13*
**lie** 22:*5, 5*
**lies** 6:*17*
**life** 11:*15*
**limitation** 27:*21*
**line** 14:*20* 34:*17,*
*22*
**list** 17:*3* 39:*22*
**listing** 38:*6*
**litigated** 11:*2*
**live** 14:*8* 15:*18*
**LLP** 2:*15*
**located** 1:*19*
**logical** 35:*14*
**long** 17:*3* 19:*1*
25:*17*
**look** 7:*10* 17:*21*
19:*3* 35:*10*
**looked** 33:*19*
**looking** 22:*12*
**lot** 6:*21*

**< M >**
**MACDOUGALL**
2:*13* 4:*12, 13* 5:*2,*
*4, 6, 11, 14* 6:*2, 8*
7:*13* 8:*6, 11, 19*
9:*3, 13, 16* 11:*10*
12:*1, 19* 21:*1, 19,*
*20* 22:*16, 20, 22*
24:*10, 16, 19*
25:*14, 16* 26:*6*
31:*21* 32:*2, 6, 10,*
*20* 35:*18, 21* 36:*5*
38:*5* 39:*16, 19*
40:*4, 8*
**malpractice** 32:*11*
**malum** 20:*13*
**man** 11:*13*
**March** 1:*14*
**MARK** 2:*13* 4:*12*
**material** 5:*16*
6:*17* 9:*19* 11:*11*
12:*6* 22:*4* 29:*2*
**materials** 15:*14*
19:*2*
**matter** 1:*16* 21:*5*
27:*9* 29:*11*
**matters** 16:*15*
18:*4, 15* 28:*1*
39:*22*
**mean** 8:*7* 28:*19*
32:*10* 38:*2*
**means** 6:*6*
**mechanics** 30:*9*
**media** 33:*13*
**members** 6:*17*
**mention** 24:*5*
33:*12*
**mentioned** 32:*7*
34:*1* 35:*20*
**messages** 8:*20*
**Michael** 10:*10*
**mile** 27:*16*
**missed** 35:*16*

**MITCHELL** 2:*14*
4:*13, 16* 22:*10*
26:*1* 32:*14*
**Monday** 25:*3*
**money** 33:*5*
**Monroe** 1:*21*
41:*2, 16*
**moot** 30:*7*
**morning** 4:*8, 10,*
*11, 12, 14, 16*
**motion** 4:*18* 5:*16*
30:*7* 31:*9, 9, 17*
39:*18*
**motions** 10:*20*
**moving** 5:*15*
**multiple** 6:*17*

**< N >**
**need** 13:*12* 21:*12,*
*22* 22:*4* 34:*10*
35:*11, 12* 36:*2*
38:*13*
**needs** 17:*18*
**negotiate** 14:*9*
**neither** 41:*8*
**never** 15:*17* 39:*2,*
*13, 15*
**New** 2:*16*
**Northwest** 2:*16*
3:*6*
**Notary** 41:*3, 17, 19*
**note** 4:*6* 5:*8* 7:*5*
23:*17*
**noted** 22:*1* 23:*2*
**notes** 18:*12*
**Number** 4:*3* 8:*16*
21:*1*

**< O >**
**obey** 22:*13*
**obeying** 23:*1*
**object** 30:*19*
**objected** 27:*9*
**objecting** 7:*20*
16:*12* 34:*21*

objection  7:22
27:4
objections  14:4
31:11
obligation  5:19
34:12, 16  36:17
37:2, 17, 21  38:10,
12, 15  39:14
obligations  9:12
15:18  19:17
20:13  36:15
38:21
obliged  34:13
obtained  34:6
obvious  12:22
obviously  37:2
offered  33:11
offering  30:14
39:8
Office  2:6  6:8
7:5  12:3  13:18
15:7  16:13  18:8,
16, 20  27:12  28:8
34:7
officer  24:11
officials  21:10
Oh  25:11
Okay  8:18  39:1
once  39:22
ongoing  23:15
open  8:7
opinion  21:8
opportunity  8:4
opposed  27:5
optimistic  33:10
order  10:14  22:9,
13, 17  24:8, 11
25:1  27:13  31:8
39:20  40:6
ordering  11:19, 22
12:2
ordinary  6:5, 22

< P >

page  2:22
papers  19:15
pardon  28:9
part  12:15  16:22
31:16, 19  35:3
parte  29:14
particular  17:17
parties  1:22
partner  7:3  20:22
21:12
parts  29:10
party  41:9
patience  28:21
payments  6:19
12:9
pending  15:2
perfectly  21:16
personally  30:1
perspective  26:14
pertain  19:7  34:2
35:8
PHILIP  2:4
phone  14:3, 6
piece  24:17  30:11
32:1, 5
place  20:5  22:14
24:14  26:12
27:13
Plaintiff  1:6  2:3
planning  26:20
play  5:21
pleading  8:14
pleadings  10:17
please  4:6  5:6
25:11
PLLC  3:5
point  6:14  13:11
32:12
pointing  6:4
portions  14:16
27:22  29:13
position  23:9
possibility  35:16
possible  37:4

POWELL  3:4
practice  27:10
prepared  8:13
11:4  26:18  28:5
31:17  39:6
present  1:22  20:2,
6
presents  29:14
president  6:18
20:2
pretrial  10:20
prevent  23:21
previous  7:7
pro  11:14
probably  6:13
22:10
problem  26:14
32:1, 5, 7
proceed  23:11
proceedings  40:10
41:7, 10
process  25:22
26:10
produce  5:16, 19
8:13  13:5  14:15
17:4  19:5, 7
26:16, 18  29:19
34:13, 14, 16  35:1,
6, 7  36:15  37:3, 22
produced  8:12
10:16, 18  11:20
13:2  15:7  16:14
19:3  30:5  33:17
36:21
producing  7:20
26:15  27:19
37:16
production  9:10
13:1  16:9  37:7,
18
propose  28:17
prosecution  6:12
19:9  21:3, 4
prosecutions  7:8

21:2
prosecutor  30:3
prosecutor's  19:20
protected  23:21
protective  22:9, 13,
17  27:13
provide  28:5
provided  8:1  16:7
providing  27:5, 6,
16
prudential  17:2
public  6:3, 16
12:15  18:7  21:7
40:1  41:3, 17
publicly  33:18
36:22
put  10:9  13:6
23:16

< Q >
qualifies  6:16
qualify  37:6
question  22:2
questions  21:17

< R >
RAFIEKIAN  1:8
2:12  3:3  4:4, 14
5:7, 14  10:8
11:13  20:22
21:12  24:3, 20
25:16
Rafiekian's  7:2
reach  33:8
read  12:22  24:11
really  30:12
31:10, 16, 17
32:21  36:12
reason  7:16  10:7
12:7  16:20  19:18
26:7  30:19
reasonable  13:22
14:8  15:10  30:18
37:9, 10
reasonably  20:3

Rebecca  1:*21*
41:*2, 16*
received  11:*1*
12:*9*  38:*8*
recite  20:*13*
recognize  35:*5*
recollection  14:*5*
record  4:*7*  12:*14*
36:*1*  40:*2*
recorded  7:*7*
records  4:*18*  6:*16*
8:*20*  30:*20, 21, 21*
31:*8*
redact  28:*18*
redacted  14:*16*
32:*18*  33:*7*
redactions  8:*1*
15:*9*
refer  19:*11, 12, 22*
reference  22:*3*
23:*20*
referred  21:*1*
reflect  33:*18*
Regardless  15:*14*
16:*10, 10*  19:*6*
27:*19*
relate  11:*2*  13:*17*
14:*18*  19:*8*  29:*11*
related  9:*19*  16:*4*
22:*4, 5*  41:*8*
relating  9:*17*
relevant  16:*22*
34:*10*
reliance  20:*4*
relief  7:*17*
remains  23:*9*
remotely  30:*5*
report  23:*5*
reported  12:*9*
33:*18*  36:*22*  37:*3*
Reporter  41:*2*
representation
28:*11*  29:*19*
representing  25:*17*

reprisals  23:*22*
reputations  18:*10*
request  17:*2*
18:*21*  19:*14*
39:*21*
requested  9:*11*
16:*17*
requests  14:*2*
16:*16*
require  30:*6*
required  29:*12*
requires  24:*11*
29:*9*
requiring  37:*8*
resolution  32:*16*
respect  16:*17*
18:*4*  19:*13, 13, 16*
20:*7, 8*  22:*7*
23:*15*  24:*5*  27:*8,*
*22*  28:*2*  37:*18*
38:*10*
respective  1:*22*
respond  14:*7*  38:*9*
responded  20:*10*
39:*17*
response  14:*1*
20:*10*  31:*12*
rest  13:*21*  28:*3*
retired  12:*10*
revealed  15:*3*
review  8:*4*  13:*18*
15:*4*  17:*1, 7, 11,*
*13*  18:*13*  35:*12*
39:*10*
reviewed  4:*18*
34:*5, 7*
reviewing  5:*21*
Richie  19:*16*
right  5:*2, 10, 13*
6:*7*  7:*12*  8:*10*
9:*15*  11:*9*  12:*18*
13:*3*  15:*22*  20:*15*
21:*15*  22:*19, 21*
24:*9, 15*  25:*4*
26:*3, 8*  27:*1*  28:*5,*

*13*  31:*2, 5, 18, 21*
32:*9, 19*  33:*16*
35:*14*  36:*2, 3, 8, 8,*
*11*  38:*3*  39:*4, 9,*
*16*  40:*3, 5*
ROBERT  3:*4*
4:*13*  25:*12*
robust  22:*17*
role  5:*20*
room  18:*22*
routine  18:*4*
30:*18*
routinely  18:*4*
29:*18*  31:*3*
RPR  1:*21*
rule  11:*7*
rules  8:*17*  12:*13*
27:*17*
Russian  6:*19*
Russians  33:*5*

< S >
sacred  15:*18*
32:*22*
says  11:*7*
scope  9:*7*  16:*17*
33:*4*  37:*18*  38:*16*
39:*17*
search  17:*2, 4*
29:*21*
second  9:*5*
section  21:*4*  24:*7*
25:*1*
security  24:*10*
see  18:*21*  30:*17*
35:*11*
seeking  8:*15*
send  36:*6*  38:*5*
sense  7:*15*  35:*14*
sensitive  10:*2*
15:*1, 14, 19*  16:*6,*
*11*  18:*15*
sensitivities  15:*12*
sensitivity  22:*7*

sentence  23:*8*
SEPA  16:*7*  24:*7*
set  18:*22*
seven  7:*8*
short  10:*5*
signed  5:*11*
simple  15:*10*
simply  9:*10*
10:*11*  27:*5*  39:*7*
single  16:*20*
34:*14, 17, 22, 22*
35:*12*
sitting  10:*13*  27:*2*
situation  11:*12*
situations  33:*1*
slip  30:*22*
Solomon  3:*5*
soon  13:*8*  24:*13*
26:*20*
sooner  13:*9*
sorry  25:*11*  32:*2*
38:*1*
speak  33:*16*
Special  6:*8*  12:*4*
14:*17, 22*  15:*6*
16:*13*  23:*4*  28:*7*
33:*2*  34:*6*
specific  12:*7*  21:*8*
35:*20*  37:*13*  38:*6*
specifically  7:*18*
11:*18, 21*  14:*14,*
*18*  33:*17*  38:*9*
spoken  24:*17*
Square  1:*20*
STACEY  2:*14*
4:*13*
stage  5:*17*  7:*17*
statement  10:*12*
20:*20*
statements  29:*5, 8,*
*9, 13*  33:*5*
STATES  1:*1, 5,*
*18*  2:*6*  4:*4, 9*
6:*18*  16:*21*

**status** 23:*5* 24:*22*
**statute** 11:*7* 21:*2*
**statutory** 29:*4*
**stay** 19:*1*
**Stevens** 19:*22*
  20:*5*
**stipulating** 30:*20*
**stipulations** 18:*3*
  38:*22*
**stop** 35:*13*
**strategic** 10:*21*
**Strauss** 2:*15*
**Street** 3:*6*
**study** 7:*7*
**subject** 12:*13*
  29:*11* 33:*1, 4*
**subjects** 15:*3* 17:*3*
**submit** 17:*2*
  19:*14* 31:*13*
**submitted** 24:*12,*
*13*
**subpoenas** 11:*1*
**subsequent** 14:*2*
**suggesting** 7:*21*
  26:*19*
**suggests** 34:*17*
**Suite** 3:*7*
**Supreme** 19:*15,*
*20* 20:*7* 34:*12*
**sure** 33:*1* 37:*9*
  39:*17*
**suspect** 19:*18*

**< T >**
**table** 19:*10*
**take** 15:*16* 17:*16*
  18:*12* 26:*11*
**talked** 32:*20*
**talks** 32:*22*
**tampering** 23:*22*
**tardy** 13:*1*
**tax** 28:*21*
**team** 6:*17* 18:*19*
  26:*2*

**telephone** 30:*21*
**tell** 39:*18*
**terms** 33:*9*
**testify** 23:*11*
**testimony** 29:*12*
**text** 8:*20*
**Thank** 12:*19, 21*
  21:*21* 24:*20*
  25:*12* 26:*4* 36:*7*
  39:*19* 40:*4, 7, 8*
**thereof** 41:*11*
**thing** 13:*12* 25:*13*
**things** 21:*20* 22:*1*
  32:*10*
**think** 5:*18, 20*
  7:*1* 8:*1* 9:*3*
  10:*17* 11:*1* 22:*17*
  24:*2* 27:*8* 30:*22*
  37:*6, 19* 38:*7*
  39:*20*
**thinks** 31:*1*
**thorough** 17:*4*
**thought** 14:*7*
  25:*19*
**thousands** 17:*6*
**time** 10:*5, 19*
  13:*2* 18:*20* 20:*11*
  23:*21* 25:*17*
  26:*11, 11* 35:*9*
**timely** 17:*14*
**times** 6:*11*
**today** 5:*8* 24:*12*
**told** 17:*20* 25:*22*
**toll** 30:*21*
**total** 7:*8*
**touches** 18:*20*
**transcript** 41:*6*
**transition** 6:*17*
**TRENGA** 1:*17*
**trial** 7:*9* 10:*6*
  11:*8, 16* 18:*19*
  19:*4, 11* 23:*11*
  26:*16, 20* 27:*3*
**trigger** 30:*1, 2*
**triggered** 20:*4*

**TROUT** 3:*4, 5*
  4:*13* 14:*6* 22:*10*
  25:*9, 10, 12, 13, 21*
  26:*4, 6, 7* 32:*13*
**true** 16:*2* 18:*1*
  24:*6* 41:*6*
**try** 31:*15*
**trying** 11:*3* 14:*9,*
*12*
**TURGEON** 2:*5*
**Turkey** 21:*10*
**two** 8:*13* 10:*22*
  14:*2* 23:*4* 32:*13*
  36:*13*
**typically** 17:*6*

**< U >**
**underlying** 36:*14,*
*15* 37:*22*
**understand** 7:*22*
  9:*2, 6, 7, 8* 10:*16*
  15:*22* 20:*15* 24:*1*
  30:*12* 36:*13*
  38:*11*
**understanding**
  15:*5* 36:*12*
**understood** 24:*12*
  31:*22* 32:*3*
**undertaken** 21:*9*
**undertook** 14:*6*
**unfettered** 15:*4*
  28:*16*
**unfortunately**
  20:*12*
**uniform** 27:*10*
**unique** 8:*7* 11:*12*
**UNITED** 1:*1, 5,*
*18* 2:*6* 4:*4, 9*
  6:*18* 16:*21*
**unprecedented** 8:*9*
**unredacted** 8:*4*
**unrelated** 16:*14*
  28:*2*
**unusual** 5:*16*

  7:*15, 17* 8:*5, 7*
**unwilling** 35:*6, 7*
**upstairs** 13:*18*
**USIC** 34:*9*

**< V >**
**versus** 4:*4*
**vice** 6:*18*
**view** 9:*11* 11:*13*
  13:*11* 23:*6, 12*
  32:*12*
**viewed** 38:*12*
**violate** 21:*4*
**violated** 12:*11*
**violations** 33:*6*
**VIRGINIA** 1:*2,*
*19, 20* 2:*7, 9* 41:*1,*
*4, 18*
**volume** 17:*12*

**< W >**
**wait** 10:*5*
**waiting** 31:*13*
**waiver** 5:*8*
**waiving** 8:*17*
**want** 11:*21* 13:*6*
  17:*3* 18:*13, 15*
  19:*1* 20:*19* 21:*14*
  23:*19* 27:*12* 28:*7,*
*21*
**wanted** 25:*13*
**wants** 31:*7*
**Washington** 2:*17*
  3:*8*
**way** 5:*8* 12:*15*
  15:*5* 18:*12*
**week** 25:*21*
**Welcome** 4:*15*
**Well** 6:*2* 7:*18*
  8:*6, 6* 9:*13* 10:*2,*
*2* 11:*18* 13:*6*
  22:*16* 26:*13* 27:*7*
  30:*11* 32:*6* 35:*21*
  36:*2, 5*

**We're** 4:*17* 7:*16*
10:*7* 11:*3, 4*
12:*17* 14:*12, 15*
15:*13* 16:*12* 19:*4*
22:*20* 26:*17, 18,*
*19, 20, 22* 27:*2, 2,*
*16, 19* 28:*5* 29:*20,*
*21* 30:*16, 22*
31:*14* 34:*13, 21*
39:*8*
**we've** 9:*20, 21*
13:*20, 22* 14:*2, 9*
18:*17, 17* 19:*3*
24:*16* 26:*19*
31:*11* 33:*7* 34:*8*
39:*7, 22*
**Whitey** 22:*12*
**wholesale** 39:*8, 10*
**widely** 12:*8*
**willfully** 35:*6*
**willing** 14:*4, 15*
31:*15*
**wish** 13:*4*
**wit** 41:*1*
**withdraw** 28:*11*
**withheld** 8:*3*
**withhold** 37:*12*
**witness** 6:*10, 22*
7:*1* 10:*11* 19:*7*
23:*20, 22* 29:*6*
35:*11*
**witnesses** 27:*20*
39:*11*
**word** 25:*7* 38:*17*
**words** 35:*7*
**work** 10:*9* 11:*15*
31:*15*
**worked** 12:*15*
**worry** 10:*3* 23:*15*
**writing** 36:*6*

**< Y >**
**Yeah** 38:*1*
**years** 7:*8* 22:*11*
**yield** 5:*22*