IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:18-CR-457 (AJT) |
| | ) | |
| BIJAN RAFIEKIAN | ) | |
| | ) | |
| Defendant. | ) | |

**NON-PARTY COVINGTON & BURLING LLP'S REPLY
IN SUPPORT OF ITS MOTION TO QUASH SUBPOENA IN PART**

Non-party Covington & Burling LLP ("Covington") respectfully submits this reply to

Defendant Bijan Rafiekian's Opposition to Non-Party Motions to Quash Subpoena, Dkt. No. 88

("Def.'s Memo").

Defendant persists in his efforts to obtain the entire "client file" of Flynn Intel Group,

Inc.'s ("FIG") lawyers. A review of Covington's Motion and Defendant's Opposition shows that

the Court is presented with five questions:

1. Does Defendant's subpoena meet the Supreme Court's *Nixon* standard when it seeks Covington's entire "FIG client file?"

2. Did FIG waive its attorney-client privilege or work product protections beyond the discussions between FIG and its former attorneys Robert Kelley and Thomas Spencer relating to the LDA and FARA?

3. Is Defendant entitled to FIG's attorney-client privileged and work product documents where he is seeking them not for any FIG purpose, but rather solely for a personal purpose?

4. Has Defendant overcome the presumption under Delaware law that the decision of General (Ret.) Michael T. Flynn ("General Flynn"), as FIG's Chairman and CEO, to waive the privilege was consistent with FIG's interest?

5. Does Defendant's interest in pretrial discovery justify the severe burden that his subpoena imposes on Covington?

The answer to each of these questions is, No.

First, as case law in this Circuit demonstrates, the subpoena's request for Covington's entire FIG file is the "paradigm" of a subpoena that fails the test established by the Supreme Court in *United States v. Nixon*, 418 U.S. 683, 689-99 (1974), which is applicable here.

Second, FIG has not waived attorney client privilege regarding any documents beyond those he already possesses. Defendant's assertion that there was a broader waiver, Def.'s Memo at 7, 8, ignores the limiting principles of Rule 502(a) of the Federal Rules of Evidence and the jurisprudence in this Circuit. FIG's very narrow waiver with respect to Robert Kelly's and Thomas Spencer's LDA and FARA advice does not extend to other subject matters or to Covington's representation of FIG, let alone to Covington's separate representation of General Flynn in his personal capacity. FIG disclosed only information that Defendant's counsel requested be disclosed and non-privileged facts.

Third, Defendant is not entitled to FIG's privileged documents. Defendant's argument that he is entitled to FIG's privileged and work product documents is based on outdated and inapplicable case law. The applicable Delaware law shows that Defendant has no right to such documents because he is requesting the documents solely for his personal defense in this case.

Fourth, General Flynn acted in FIG's best interest in making a waiver decision on its behalf. Under Delaware law, the FIG corporate entity retains powers and responsibilities for three years after dissolution. FIG received two federal grand jury subpoenas, and General Flynn exercised his corporate authority to cooperate with the federal investigation of FIG by making a very narrow waiver of FIG's privilege.

Fifth, even if some materials were no longer privileged, the Court should quash the subpoena because of the undue burden it imposes. The subpoena's breadth (it seeks thousands of documents generated by Covington over 27 months), combined with the limited relevance of the

entire "file" and the risk that expedited production could cause inadvertent production of General Flynn's confidences, requires quashing the subpoena.

Covington has already produced to Defendant the FIG documents responsive to subpoena categories 1 through 7, as well as all FIG documents responsive to category 8 that Covington had previously provided to the government. The Court should quash the rest of the subpoena.

## ARGUMENT

## I.    The Subpoena Fails the *Nixon* Standard.

Contrary to Defendant's position, Def.'s Memo at 10 n.13, the *Nixon* standard applies to his third-party subpoena to Covington. *United States v. Rand*, 835 F.3d 451, 463 (4th Cir. 2016) ("We decline to adopt a lower standard [than *Nixon*] for third-party subpoenas under Rule 17(c)."). His request for everything in Covington's FIG client files, irrespective of subject matter or time period, fails the *Nixon* specificity standard. *See, e.g., United States v. Richardson*, 607 F.3d 357, 368 (4th Cir. 2016) (affirming a district court order quashing, for lack of specificity, a defendant's third-party subpoena).

This Court has quashed subpoenas that indiscriminately request "complete" files, finding that they are "paradigmatic example[s] of a fishing expedition." *United States v. Ging-Hwang Tsoa,* No. 1:13-cr-137, 2013 WL 5837631, at *2 (E.D. Va. Oct. 29,  2013) (quashing, for lack of specificity, subpoenas seeking "complete realtor files" and "complete mortgage broker files" concerning several real estate transactions) (citing *United States v. Williams*, No. 1:09-cr-414, 2010 WL 5113106, at *2 (E.D. Va. Dec. 6, 2010) (internal quotations omitted). The subpoena to Covington is precisely the type of subpoena that this Court has held lacks the specificity *Nixon* requires.

Defendant also has failed to demonstrate relevancy, as *Nixon* also requires. Documents that post-date the March 7, 2017 FARA filing are not relevant to the indictment in this case, in

light of the charges against Defendant and the time-frame of those offenses as indicated in the indictment. Defendant argues that these materials are relevant for impeachment evidence of General Flynn. *See* Def.'s Memo at 12. However, this claimed need is overly-broad, highly speculative, and attenuated. That material is simply not relevant to the defense in a case concerning false statements in the March 7, 2017 FARA filing. As the Fourth Circuit has repeatedly emphasized, "'a Rule 17 subpoena *duces tecum* cannot substitute for the limited discovery otherwise permitted in criminal cases and the hope of obtaining favorable evidence does not justify the issuance of such a subpoena.'" *Richardson*, 607 F.3d at 368-69 (quoting *United States v. Caro*, 597 F.3d 608, 620 (4th Cir. 2010).

Moreover, even if the Covington documents are relevant, all of them –including any notes of attorney interviews of General Flynn –would be inadmissible hearsay. *See United States v. Almonte*, 956 F.2d 27, 29 (2d Cir. 1992) (third-party's notes of a witness statement may not be admitted as an inconsistent statement unless they are a verbatim transcript of the witness's own words or the witness has subscribed to the characterization). Defendant has anticipated, but apparently has no answer to, this evidentiary hurdle. Def.'s Memo at 12-14.

## II.   FIG Did Not Waive Privilege with Respect to Any Documents Defendant Does Not Have Already.

To support his claim to Covington's entire FIG client file, Defendant contends that "FIG has . . . waived the attorney-client privilege for communications relating to the March 7, 2017 FARA filing" and that "FIG has also waived it as to all related documents in the possession of any of its lawyers."  Def.'s Memo at 7, 8. As support, Defendant points to Covington's June 13, 2018 letter on behalf of FIG allowing the government to (1) receive a copy of a declaration from former FIG General Counsel, Robert Kelley, (2) interview Mr. Kelley and Thomas Spencer regarding advice they provided FIG regarding LDA and FARA, and (3) interview Covington

lawyers solely regarding certain narrow factual matters. *See* Def.'s Memo at 7. These actions did not waive the privilege or destroy the work product protections for any documents beyond the documents Covington has provided to Defendant. Rather, FIG disclosed only information that Defendant's counsel requested be disclosed and non-privileged facts.

**A.    Neither FIG's production of Kelley's declaration, nor allowing the government to question Kelley and Spencer regarding their LDA or FARA advice, waived FIG's or General Flynn's privileges regarding Covington communications or Covington work product.**

As Defendant acknowledges, Covington, on behalf of its client FIG, provided the Kelley declaration to the government *at Defendant's counsel's request* (Defendant's counsel already had a copy). *See* Def.'s Memo at 5, n. 10. Because, as Defendant knew, the declaration summarized legal advice that Kelley provided to FIG concerning the LDA and FARA in 2016, before Covington was engaged, producing the declaration necessarily waived privilege as to that specific advice. FIG therefore also authorized Mr. Kelley and his deputy, Mr. Spencer, to be interviewed regarding the legal advice they provided to FIG, prior to Covington's engagement, concerning the LDA and FARA. Neither disclosure resulted in any waiver of the privilege or work product protection for other documents.

Defendant suggests that a party who discloses information waives privilege over undisclosed information that concerns the same subject matter. Def.'s Memo at 5 (citing Fed. R. Evid. 502(a)). But that is only part of the test. Rule 502(a) provides that there is a subject matter waiver *only* where each of three elements is met: (1) waiver was intentional, (2) undisclosed information concerns the same subject matter, *and* (3) "they ought in fairness to be considered together." Fed. R. Evid. 502(a); *see also In re Martin Marietta Corp.*, 856 F.2d 619, 623 (4th Cir. 1988). Application of the entire Rule requires rejection of Defendant's waiver arguments.

As shown by the Kelner Declaration provided with Covington's Motion, FIG's waiver of the privilege with respect to Messrs. Kelley and Spencer's LDA and FARA advice was confined to that subject. Dkt. No. 77 at 2-3. This is not the same subject matter as *Covington's* representation of FIG in connection with a later Department of Justice investigation regarding FARA, let alone Covington's Flynn representation – which did not coincide with Kelley's and Spencer's FIG representation – so there was no waiver regarding those separate subject matters or any documents pertaining to them.

Defendant suggests that he is nonetheless entitled to "all" documents in possession of "any" FIG lawyers, reasoning that FIG has waived the privilege for General Flynn's benefit but refused to provide the same materials to Defendant. Def's Memo at 8. But Defendant already has the Kelley declaration and all other documents FIG produced to the government. The only other documents Covington may have regarding the Kelley/Spencer advice are Covington notes and communications generated or received by the firm during Covington's separate representations of FIG and General Flynn in FARA and other matters, including subsequent congressional investigations. Because those documents pertain to separate subject matters, there was no waiver as to those documents.

Moreover, the narrow waiver regarding the Kelley/Spencer LDA and FARA advice did not waive any Covington opinion work product regarding that subject matter, so that work product is not discoverable. The Fourth Circuit held in *In re Martin Marietta Corp.* that, even in cases where disclosure to the government during a criminal investigation resulted in waiver of the attorney-client privilege and non-opinion work product on the same subject matter, the waiver does *not* extend to opinion work product. 856 F.2d 619, 626 (4th Cir. 1988). In so holding, the Fourth Circuit reasoned that "opinion work product is to be accorded great

protection by the courts," and "the underlying rationale for the doctrine of subject matter waiver

has little application in the context of a pure expression of legal theory or legal opinion." *Id.*;

*accord E.I. Du Pont de Nemours & Co. v. Kolon Indus., Inc.*, No. 3:09-cv-58, 2010 WL

1489966, at *8 (E.D. Va. Apr. 13, 2010) (holding that work product protection was not waived

by disclosure to the government).

      **B.**      **Allowing Covington lawyers to answer questions with respect to the factual matters listed in the June 13, 2018 agreement did not waive the privilege or opinion work product protection.**

FIG's agreement with the U.S. Attorney's Office for the Eastern District of Virginia, as

reflected in the June 13, 2018 letter, was restricted to the disclosure of certain non-confidential

facts leading to the March 7, 2017 FARA filing that Covington made for FIG. It did not result in

a waiver of attorney-client privilege because the privilege never attached to this purely factual

information, and any waiver that may have occurred would not diminish the opinion work

product protection.[1]

---

[1] FIG limited the scope of the interview to the type of questions that Chief Judge Howell of the U.S. District Court for the District of Columbia held were permissible to ask another defendant's FARA attorney regarding the contents of that defendant's FARA filing. *See In re Grand Jury Investigation*, No. MC 17-2336 (BAH), 2017 WL 4898143, at *6, 15 (D.D.C. Oct. 2, 2017) (granting government's Motion to Compel with respect to questions that constituted fact work product, were unprotected by the attorney-client privilege, or fell within the crime-fraud exception; denying the government's Motion to Compel with respect to questions that called for opinion work product). FIG's agreement with the U.S. Attorney's Office provided that the scope of questioning of Covington attorneys would be limited to the following:

- factual representations made to counsel, in connection with preparation of FIG's FARA filing;
- the sources of such factual representations;
- factual information concerning who (other than counsel) reviewed drafts of the FARA filing;
- factual information concerning any comments or corrections or questions made by people who reviewed drafts of the FARA filing (other than counsel) concerning the filing; and

Covington prepared the FARA filing based on facts FIG and others provided. The Fourth Circuit and other federal courts have recognized that the attorney-client privilege does not protect communications where the attorney is acting solely as a conduit of factual information to a third party. *See In re Grand Jury Proceedings*, 727 F.2d 1352, 1356 (4th Cir. 1984); *Burlington Industries v. Exxon Corp*., 65 F.R.D. 26, 39, 19 Fed. R. Serv. 2d 533 (D. Md. 1974).

In this instance, Covington's interviews with the government related solely to certain facts Covington attorneys received to prepare the public FARA filing and did not involve Covington's legal advice to FIG. These *facts* disclosed to the government were not privileged in the first instance, *id.*, so the interviews waived no privilege. Moreover, they did not relate to any other subjects. In any event, even if FIG's consent to these interviews were deemed a privilege waiver, or the waiver of Covington non-opinion work product, it did not waive FIG's right to protect the Covington opinion work product. *Martin Marietta*, 856 F.2d at 626.

Producing FIG's entire client file, which includes both fact and opinion work product as well as thousands of documents unrelated to the Kelly/Spencer advice or the FARA filing, would lead to a broad breach of both FIG and General Flynn's privileges that were not waived when FIG produced the Kelley declaration, allowed Kelley and Spencer to be interviewed about their FARA and LDA advice, and allowed Covington to provide a narrow set of non-privileged facts to the government. To the extent that the Court allows Defendant to receive any documents he does not have already, such as the factual content of interview notes Covington used to prepare the March 7, 2017 FARA filing, Covington should be allowed sufficient time to redact the

---

- When, how, and in what form counsel received communications from FIG personnel concerning the content of the FARA filing.

Dkt. No. 77, Ex. B at 2.

portions of those documents that contain opinion work product or that are unrelated to the March 7, 2017 FARA filing or its representation of FIG. *See Radowich v. U.S. Atty. Dist. of Maryland*, 501 F. Supp. 284, 286 (D. Md. 1980) (segregating materials of a factual nature from materials that revealed the deliberative process or mental impressions of attorneys).

### III.   Defendant is Not Entitled to FIG's Privileged Documents.

Defendant asserts that, under Delaware law, his position as a director of FIG entitles him to FIG's privileged documents. *See* Def.'s Memo at 8-9. He is seeking these documents, however, not in his role as a "director," but rather solely for his personal defense, and therefore he has no right to them. Whether as a director or as a former director—Defendant alternates between presenting himself as one or the other—he has no right to FIG privileged materials under the subpoena.

Defendant has cited *State ex rel. Dixon v. Missouri-Kansas Pipe Line Co.*, 42 Del. 423, 428 (Del. Super. Ct. 1944), for the proposition that "a Director need not state to his fellow Directors the reason for a desired examination by him of the corporate records." Dkt. No. 53 at 7. But that dicta is outdated. Delaware courts have subsequently held that directors do not have an unfettered right to review corporate records, stating that a director's demand for records must "spring[] from his duty to protect and preserve the corporation." *State ex rel. Farber v. Seiberling Rubber Co.*, 168 A.2d 310, 312 (Del. Super. Ct. 1961). *See also Holdgreiwe v. Nostalgia Network, Inc.*, No. CIV. A. 12914, 1993 WL 144604, at *3 (Del. Ch. Apr. 29, 1993) ("These rights of inspection are not absolute, however . . . if it can be established that [a director's] motives are improper, or that they are in derogation to the interest of the corporation, then his right to inspect ceases to exist." (citing *State ex rel. Farber*, 168 A.2d at 312)). Indeed, the Delaware legislature has codified this principle, decreeing that a director's right to examine a

corporation's books and records is limited to those "purpose[s] reasonably related to the director's position as a director." Del. Code Ann. tit. 8, § 220(d).

Here, it is indisputable that Defendant is seeking FIG privileged documents not for any corporate purpose, but rather solely for his personal use to defend himself against personal criminal charges. The subpoena has been issued in this, his criminal case, not in some separate action to vindicate corporate rights. Defendant therefore has no basis to demand FIG's privileged documents.

Defendant nonetheless argues that, under Delaware law, he is entitled to FIG's privileged communications because, he says, directors are considered "joint clients" of company counsel. Def.'s Memo at 9 (citing *Kirby v. Kirby*, No. 8604, 1987 WL 14862, at *7 (Del. Ch. July 29, 1987)). *Kirby* does establish that former directors asserting *a direct legal claim against the company itself* (under Section 225 of the Delaware Code) are joint clients and therefore entitled to a corporation's privileged communications so long as those communications were made while they were directors. *Kirby*, 1987 WL at *7-8. But former directors possess a right of equal access to such documents *only* "in the context of an action under 8 Del. C. § 225 or some other litigation asserting a colorable claim against the company. . . ." *King v. DAG SPE Managing Member, Inc.*, No. CIV.A. 7770-VCP, 2013 WL 6870348, at *7 (Del. Ch. Dec. 23, 2013). This case is no such direct action or claim against the company.

This is not a civil direct action or other suit by Defendant against FIG to vindicate corporate rights. Rather, Defendant is seeking privileged FIG documents for a purely personal purpose—his personal criminal defense. He therefore has no right to obtain FIG's privileged materials.

**IV.    By Providing A Narrow Waiver on Behalf of FIG, General Flynn Acted in FIG's Interest.**

Defendant contends that, because FIG ceased operations in November 2016 and later dissolved, any action taken by General Flynn could only have been done "solely to serve Michael Flynn's personal interests—not the interests of FIG." *See* Def.'s Memo at 3. In doing so, Defendant misreads Delaware law and mischaracterizes the interests of both General Flynn and FIG. As CEO, General Flynn possessed a sound basis to conclude that FIG's interests were best served by cooperating with the government's criminal investigation and authorizing the narrow waiver of FIG's attorney-client privilege. His conclusion was later proven correct.

Defendant implies that, because FIG ceased operations in November 2016 and was later dissolved, General Flynn must have acted improperly when he made a narrow privilege waiver to foster FIG's cooperation with the government. Def.'s Memo at 3. This is a red herring. Under Delaware law, which applies here, corporations survive dissolution "for the term of 3 years from such expiration or dissolution . . . for the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them . . . ."  8 Del. C. 278.[2] Courts in the Fourth Circuit have also recognized that the attorney-client privilege survives dissolution, if, under the relevant state law, the corporation continues to exist for the purposes of suit. *See PCS Nitrogen, Inc. v. Ross Dev. Corp.*, No. CIV.A. 2:09-3171-MBS, 2011 WL 3665335, at *4 (D.S.C. Aug. 19, 2011) ("Since South Carolina law permits a dissolved corporation to be sued, the court finds that it follows that a dissolved corporation could assert the attorney-client privilege where former

---

[2] The Fourth Circuit has established that where there is a statutory promulgation of corporate life beyond dissolution, the laws of the state of incorporation apply. *See Johnson v. RAC Corp.*, 491 F.2d 510, 511 n.3 (4th Cir. 1974) ("Whether there is such statutory 'promulgation' of corporate life in a particular case, so as to permit 'a partial continuation of the existence of a corporation' after dissolution for purposes of suit, is determinable by reference to the laws of the state of incorporation of the dissolved corporation.").

directors or others properly exercise authority to do so."). *See also S.E.C. v. Carrillo Huettel LLP*, 2015 WL 1610282, at *3 (S.D.N.Y. Apr. 8, 2015) ("Cases that hold that the privilege survives the dissolution of a corporation generally do so on the basis of state law.").

Defendant asks why General Flynn had the authority to waive FIG's privilege, but Defendant does not. Def.'s Memo at 12. Unlike General Flynn, Defendant is not seeking to waive the privilege to serve a FIG corporate interest, *see* § III *supra*.[3] Further, General Flynn, as FIG's Chairman and CEO – superior positions to any held by Defendant -- had the authority to waive FIG's privilege to serve FIG's interests. The power to waive a corporation's privilege "rests with the corporation's management." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348-49 (1985) (internal citation omitted); *see also Morris v. Spectra Energy Partners (DE) GP, LP*, No. CV 12110-VCG, 2018 WL 2095241, at *4 (Del. Ch. May 7, 2018) ("A corporation invokes the attorney-client privilege through its officers and directors; those individuals owe a duty as fiduciaries to the stockholders to exercise the privilege in the best interests of the corporation." (internal citation omitted)). And Delaware law presumes that directors act in good faith and in the best interest of the corporation. *See Kaplan v. Centex Corp.*, 284 A.2d 119, 124 (Del. Ch. 1971) ("The acts of directors are presumptively acts taken in good faith and inspired for the best interests of the corporation.").

Operating under his Chairman and CEO authority—and according to his fiduciary duty to exercise privilege in FIG's best interest—General Flynn determined that it was indeed in FIG's best interest to cooperate with the government's investigation. According to both Fourth Circuit and Delaware law, the criminal acts of the corporations employees, including its officers and

---

[3] In addition, although Defendant refers to himself as a FIG "principal" shareholder, he always held fewer shares than General Flynn.

directors, may be imputed to the corporation. *See, e.g., United States v. Automated Med. Labs., Inc.*, 770 F.2d 399, 406 (4th Cir. 1985) (holding that a corporation "may be held criminally liable . . . if its agents were acting within the scope of their employment . . . "); *Stewart v. Wilmington Tr. SP Servs., Inc.*, 112 A.3d 271, 303 (Del. Ch.), *aff'd*, 126 A.3d 1115 (Del. 2015) ("Delaware law adheres to this general rule of imputation—of holding a corporation liable for the acts and knowledge of its agents."). The U.S. Attorney's Office of the Eastern District of Virginia was conducting a criminal investigation of FIG. *See* Dkt. No. 77, at 1. As part of that investigation, FIG received two grand jury subpoenas from the U.S. Attorney's Office before General Flynn authorized FIG's cooperation with the government. *See id.* at 2.

FIG faced a clear threat of criminal action and had a powerful incentive to take legitimate action to avoid prosecution and any penalties that might flow to FIG and its shareholders. This action included cooperation because the U.S. Sentencing Guidelines encourage corporations to self-report, cooperate, and accept responsibility for corporate wrongdoing by minimizing corporate liability when doing so. *See* United States Sentencing Guidelines § 8C2.5(g)(1).

Carefully weighing the manifest risk of prosecution and the potential benefits of cooperation—from avoiding prosecution entirely to receiving a reduced sentence if prosecuted—General Flynn upheld his fiduciary duty to exercise privilege in FIG's best interest by determining that cooperation with the government was the prudent course. Later events proved the wisdom of that course—the government did not pursue charges against FIG.

Defendant not only attacks General Flynn's motives, but also mischaracterizes Covington's papers. Def.'s Memo at 3, 6. It was of course in both FIG's interest and General Flynn's personal interest to cooperate with the investigation. Far from revealing a conflict of interest, this underscores that their interests were aligned. Defendant has not overcome the

presumption under Delaware law that General Flynn acted according to his obligations as director and in the unambiguous interest of FIG.

## V.     The Subpoena Imposes an Undue Burden.

Defendant suggests that a subpoena calling for over two years of client files on various topics, for two different clients, does not impose an undue burden because Covington "failed to keep their respective clients' files separate."  Def.'s Memo at 14-15. Defendant misses the point. Covington engaged in a joint representation of FIG and General Flynn personally, which were initially identical, but later evolved to also involve distinct issues for only General Flynn. In such a joint representation, the generation and storing of overlapping materials is unavoidable.[4] An expedited review of all FIG files and redaction of General Flynn's materials could lead to inadvertent production of General Flynn's privileged materials.

In assessing this burden, the Court should balance Defendant's need, if any, for the materials against the burden of identifying, redacting, and producing them.[5] The fact that Defendant seeks broad-brush production of thousands of documents that have little to no conceivable relevance to this case shows that the burden outweighs the utility of enforcing the subpoena.

A Rule 502(d) order would not fully address either the burden or the risk of inadvertent production. Ethically, Covington cannot simply give its combined General Flynn and FIG files to

---

[4] Defendant cites *Meier v. Travelers Home & Marine Ins. Co.*, No. C15-0022RSL, 2016 WL 4447050, at *2 (W.D. Wash. Aug. 24, 2016) for the proposition that there is no attorney-client privilege over a single file containing two clients' documents. Def.'s Memo at 16. *Meier* analyzed the application of privilege to insurance claims files under Washington State rules, which is inapposite to the application of attorney-client privilege of Covington's joint representation of FIG and General Flynn in this matter.

[5] No such balancing is appropriate for privileged materials because any need the Defendant may have must yield to the privilege, even in this criminal case. *Swidler & Berlin v. United States*, 524 U.S. 399, 408-09 (1998).

Defendant even if the Court does issue a 502(d) order. Therefore, unless the Court quashes or significantly narrows category 8 of the subpoena, Covington will be faced with the burden of sorting out FIG from General Flynn's files, regardless whether a Rule 502(d) order is entered.

## CONCLUSION

Covington respectfully requests that this Court quash Item 8 of the March 5, 2019 subpoena except to the extent Covington has already produced responsive documents. In the alternative, the Court should modify the subpoena to require only the production of interview notes utilized by Covington in preparing the March 7, 2017 FARA filing that is at issue in the Indictment (with appropriate redactions to remove attorney opinion work product and material unrelated to Covington's representation of FIG in the March 7, 2017 FARA filing).

Dated: March 27, 2019                    Respectfully submitted,

                                                  _/s/Daniel E. Johnson_____
                                                  Daniel E. Johnson (VSB 88696)
                                                  COVINGTON & BURLING LLP
                                                  One CityCenter
                                                  850 Tenth Street, NW
                                                  Washington, DC 20001
                                                  Tel: (202) 662-5224
                                                  Fax: (202) 778-5224
                                                  dejohnson@cov.com
                                                  *Counsel for Covington & Burling LLP*

## CERTIFICATE OF SERVICE

I hereby certify that, on the 27th day of March 2019, a true copy of the foregoing was filed via the Court's CM/ECF system, which will send a copy via electronic email to the following:

Mark J. MacDougall
Stacey Mitchell
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Ave., N.W.
Washington, D.C. 20036
mmcacdougall@akingump.com
shmitchell@akingump.com

Robert Trout
Trout Cacheris & Solomon PLLC
1627 Eye Street, N.W.
Suite 1130
Washington, D.C. 20006
rtrout@troutcacheris.com

James P. Gillis
John T. Gibbs
Evan N. Turgeon
U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
james.p.gillis@usdoj.gov
john.gibbs@usdoj.gov
evan.turgeon@usdoj.gov

_____/s/ Daniel E. Johnson_____
Daniel E. Johnson (VSB 88696)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Tel: (202) 662-5224
Fax: (202) 778-5224
dejohnson@cov.com
*Counsel for Covington & Burling LLP*
