UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| v. | : | **Criminal Case No. 1:18-CR-457 (AJT)** |
| | : | |
| **BIJAN RAFIEKIAN, et al.** | : | |

### DEFENDANT RAFIEKIAN'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO PRECLUDE USE OF "KICKBACK" AND SYNONYMOUS TERMS

Defendant Bijan Rafiekian, through counsel, respectfully submits this memorandum of law in support of his motion to preclude the government from using the term "kickback" and other similar pejorative terms to describe the payments Flynn Intel Group made to Ekim Alptekin and his company, Inovo BV, as referred to in paragraphs 31–38 of the Indictment. For the reasons stated below, such terms are not relevant to the claims or defenses in this case and would only confuse the jury and unfairly prejudice Mr. Rafiekian.

### BACKGROUND

Mr. Rafiekian is charged with (1) conspiracy to act as an agent of the government of Turkey without prior notification to the Attorney General, (2) conspiracy to submit false information in documents filed with the Attorney General under the provisions of the Foreign Agents Registration Act ("FARA"), and (3) acting as an agent for the government of Turkey without prior notification to the Attorney General in violation of 18 U.S.C. § 951. Indictment 17–19.

The Indictment describes several wire transfers among Flynn Intel Group ("FIG"), Inovo, BV ("Inovo"), and Defendant Ekim Alptekin:

- On or about September 9, 2016, ALPTEKIN caused $200,000 to be wire transferred from a Turkish bank account in ALPTEKIN's name to Company A's [*i.e.*, FIG's] U.S. bank account.

- On or about September 13, 2016, RAFIEKIAN caused $40,000 to be wire transferred from Company A's U.S. bank account to Company B's [*i.e.*, Inovo's] bank account in the Netherlands.

- On or about October 7, 2016, RAFIEKIAN sent ALPTEKIN Company A's invoice for $200,000. On or about October 11, 2016, RAFIEKIAN sent an email to an employee of Company A asking him to send a wire transfer to Company B "as soon as Mr. Alptekin sends us an invoice for consulting services that he is providing to [Company A] on the Confidence project."

- On or about October 11, 2016, ALPTEKIN caused $185,000 to be wire transferred from a Turkish bank account in ALPTEKIN's name to Company A's U.S. bank account.

- On or about October 14, ALPTEKIN sent RAFIEKIAN an invoice to Company A from Company B for $40,000 for "Consultancy Fee Confidence Project," which RAFIEKIAN approved the following day.

- On or about October 17, 2016, RAFIEKIAN caused $40,000 to be wire transferred from Company A's U.S. bank account to Company B's bank account in the Netherlands.

- On or about November 10, 2016, RAFIEKIAN sent ALPTEKIN an invoice for $200,000 for its third payment under the agreement. In the enclosing email, RAFIEKIAN wrote, "We will process a wire transfer to [Company B] for research and consultation services provided by [Company B] immediately after receipt of the payment for the attached invoice."

- On or about November 14, 2016, ALPTEKIN caused $145,000 to be wire transferred from a Turkish bank account in ALPTEKIN's name to Company A's U.S. bank account.

Indictment ¶¶ 31–38.

The government labels the $40,000 payments from FIG to Inovo as "kickbacks"—a loaded term that suggests an improper or illegal payment. *Id.* at 9. *See* Kickback, Black's Law Dictionary (10th ed. 2004) ("A sum of money illegally paid to someone in authority, esp. for arranging for a company to receive a lucrative contract; esp., a return of a portion of a monetary sum received, usu. as a result of coercion or a secret agreement."). The government does not allege, however, that these payments were illegal or otherwise improper, and its allegations

certainly do not support the notion that they were unlawful "kickbacks." Moreover, there is nothing about the character of these payments that is relevant to the criminal charges brought against Mr. Rafiekian. They have nothing to do with whether FIG was acting as an agent of the government of Turkey or with the allegations that the FARA filings prepared by Covington were false.

## ARGUMENT

The Court should exclude references to the term "kickback" because (1) how the payments are characterized is not probative of the criminal charges against this defendant, (2) to the extent that any probative value can be discerned, it is substantially outweighed by unfair prejudice, and (3) use of such term will confuse and mislead the jury,. *See* Fed. R. Evid. 403.

Count One of the indictment charging defendant Mr. Rafiekian is a conspiracy count. The alleged conspiracy is characterized as having two objects: , (a) to act as an agent for the government of Turkey without registering with the Attorney General;[1] and (b) to file documents under FARA which are false. While the indictment alleges that Mr. Rafiekian made a false representation about these payments to the attorneys preparing the FARA documents (*see* ¶ 53(e)), there is no allegation that such allegedly false representation found its way in the documents that Covington filed with the FARA unit (*see* ¶¶ 55–63). In short, however one characterizes the payments that FIG made to Inovo, that has nothing to do with the crime charged in the indictment, to wit, making false representations in the FARA documents that the attorneys filed with the Department of Justice.

---

[1] The other count against Mr. Rafiekian, Count Two, alleges the substantive offense under 19 USC § 951 of acting as an agent of the government of Turkey without prior notification to the Attorney General.

Even if evidence is relevant, a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "[U]nfair prejudice" refers to "an undue tendency of evidence to influence a jury to make a decision for reasons unrelated to the probative value of the evidence." *Carnell Constr. Corp. v. Danville Redevelopment & Hous. Auth.*, 745 F.3d 703, 719 (4th Cir. 2014). Courts should also exclude evidence "when there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and . . . this risk is disproportionate to the probative value of the offered evidence." *United States v. Hernandez*, 975 F.2d 1035, 1041 (4th Cir. 1992) (internal quotation marks and citation omitted); *see also United States v. Greenwood*, 796 F.2d 49, 53 (4th Cir. 1986) ("The prejudice which the rule is designed to prevent is jury emotionalism or irrationality.").

Applying Rule 403, courts routinely prohibit parties from using the term "kickback." *See, e.g.*, *United States v. Hedgepeth*, 418 F.3d 411, 420 (4th Cir. 2005) (noting that the "prejudicial impact" of a reference to the "kickback business" was "substantial" and any probative value was "marginal, at best"); *Evans v. Quintiles Transnational Corp.*, No. 4:13-CV-00987-RBH, 2015 WL 9455580, at * 7 (D.S.C. Dec. 23, 2015) (barring the use of the term "kickbacks" because it was "highly prejudicial," "unnecessarily inflammatory," and "implies illegality"); *United States v. Walters*, 226 F. Supp. 3d 821, 825 (E.D. Ky. 2016) ("[K]ickback evidence prejudices Defendants substantially more than it helps the Government prove its case, [and] the evidence will not be admitted at trial."); *cf. Dunn v. United States*, 307 F. 2d 883, 885–86 (5th Cir. 1962) (finding the government's insinuations that defendant's unreported income in

4

tax evasion case resulted from "kickbacks" was improper and jury instruction to "disabuse your minds of that statement" was insufficient to remove the prejudice).

Characterizing the payments as "kickbacks" is highly prejudicial because it presupposes a legal conclusion adverse to Mr. Rafiekian—that the payments from FIG to Inovo were illicit and improper. Suggesting that these payments were "kickbacks" also has no probative value because the government has not charged Mr. Rafiekian with any crimes arising from these payments, nor does the government contend that these payments themselves were illegal.[2] As such, referring to the payments as "kickbacks" would "distort[] the emphasis at trial away from the crimes covered by the indictment to those not so charged." *See United States v. O'Connor*, 580 F.2d 38, 43 (1978); *U.S. ex rel. Davis v. U.S. Training Ctr. Inc.*, 498 F. App'x 308, 318 n.16 (4th Cir. 2012) (noting "that whether the payments were actually bribes was contested and admission of this evidence could lead to a "side litigation").

Referring to these payments as "kickbacks" would also suggest to the jury that Mr. Rafiekian was "generally engaged in shady business practices." *Walters*, 226 F. Supp. 3d. at 825. The government's use of this term would serve only to cast a negative light on FIG's business practices, while obscuring the issues of consequence in this case—including whether Mr. Rafiekian actually served as an agent of Turkey. If the government is permitted to refer to the payments as "kickbacks," the jury might convict Mr. Rafiekian "because it thought [his] character was such that he frequently committed crimes," rather than based on evidence supporting the actual charges against him. *O'Connor*, 580 F.2d at 43. This is precisely what Rule 403 seeks to avoid.

---

[2] For this reason, references to "kickbacks" are not relevant and should also be excluded under Rule 401.

## **CONCLUSION**

For the foregoing reasons, Mr. Rafiekian respectfully requests that the Court grant this motion to preclude the government from characterizing FIG's payments to Inovo as "kickbacks" or any similar pejorative term.

Dated: April 26, 2019

Respectfully submitted,

/s/ _____
Mark J. MacDougall (*Pro Hac Vice*)
Stacey H. Mitchell (*Pro Hac Vice*)
John C. Murphy (*Pro Hac Vice*)
*Counsel for Bijan Rafiekian*
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036
Telephone:  (202) 887-4000
Fax:  (202) 887-4288
E-mail:   mmacdougall@akingump.com
              shmitchell@akingump.com


/s/ _____
Robert P. Trout (VA Bar # 13642)
*Counsel for Bijan Rafiekian*
Trout Cacheris & Solomon PLLC
1627 Eye Street, NW
Suite 1130
Washington, DC 20006
Telephone:  (202) 464-3311
Fax:  (202) 463-3319
E-mail:   rtrout@troutcahceris.com

## **CERTIFICATE OF SERVICE**

I hereby certify that, on the 26th day of April 2019, true and genuine copies of Defendant Rafiekian's Memorandum of Law in Support of Motion to Preclude Use of "Kickback" and Synonymous Terms was sent via electronic mail by the Court's CM/ECF system to the following:

    James P. Gillis
    John T. Gibbs
    Evan N. Turgeon
    U.S. Attorney's Office (Alexandria-NA)
    2100 Jamieson Avenue
    Alexandria, VA 22314
    Telephone: (703) 299-3700
    Email: james.p.gillis@usdoj.gov
           john.gibbs@usdoj.gov
           evan.turgeon@usdoj.gov

 

/s/
Robert P. Trout (VA Bar # 13642)