IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | No. 1:18-CR-457-AJT |
| BIJAN RAFIEKIAN, *et al.*, ) | |
| ) | |
| Defendants. ) | |

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL RECORDS

The United States respectfully requests that the Court deny the defendant's motion to compel production of information related to the Muslim Brotherhood. In their Motion to Compel, the defense's agency argument effectively, and erroneously, transforms the audience for General Flynn's op-ed from the American people to the government of Turkey. The defense also seeks to compel the prosecution team to embark upon a breathtakingly broad search for information, in order to attempt to corroborate what was plainly a false statement on the part of the defendant's co-conspirator, Kamil Alptekin. Also, the op-ed that was ultimately published was fully consistent with the aims of this conspiracy, and the defendant was fully aware of that fact. Finally, the information that the defense is seeking is not *Brady*, and, in fact, it is not even relevant.

1. <u>Bijan Rafiekian and Kamil Alptekin Conspired to Influence the American Public</u>

The conspiracy that the defendants were engaged in had a very narrow focus. In fact, it had only one focus – to discredit Fetullah Gulen in the hope that the United States government would agree to extradite him back to Turkey. *See*, Indictment, Dkt. 1, Par. 3. The defense does not dispute this. In fact, they characterize the op-ed as a document that "demonized Gulen," and

they acknowledged that it "took aim at Fethullah Gulen, a Muslim cleric living in Pennsylvania, whom President Erdogan believed was the source of the coup attempt against him in July 2016." Defendant Bijan Rafiekian's Motion to Compel Records ("Def. Mot. Compel") at p. 2. In seeking to influence the American public about Gulen, the co-conspirators sought to conceal the fact that the government of Turkey was funding this entire effort. Simply put, that is the reason that this effort was a criminal conspiracy. The Turkish government wanted a free hand to influence the American public without revealing their central role in doing so.

That is why General Flynn's op-ed was drafted so that it appeared to represent his views alone. This had the effect of making it appear to be a critique of the United States' policy towards Turkey by a respected former member of the U.S. military. The defense parses the op-ed in order to find one passage that, they argue, appears inconsistent with the views of senior members of the Turkish government – "it has been reported that Erdogan is an ally of and otherwise sympathetic to the Muslim Brotherhood." Def. Mot. Compel at p. 3.[1] In arguing that a criticism of the Muslim Brotherhood is inconsistent with the views of the *Turkish government,* the defense overlooks the fact that the target audience for the op-ed was the *American public*. Yet even the defense acknowledges, the aim was to "demonize" Gulen. Analogizing Gulen and his group to the Muslim Brotherhood is a very effective way to do so. Regardless of how they

---

[1] The defense provides two citations in support of its claim that "it has been reported" that Erdogan is an ally of the Muslim Brotherhood and is sympathetic to the Muslim Brotherhood. Def. Mot. Compel at p. 3, FN 3. Plainly, the defense was able to obtain that information without any assistance from the government. If the defense wished to, it could undoubtedly find an expert witness who could testify to some of those facts. But whether an expert witness or a government witness testified about these facts, the information would undoubtedly contain a great deal of inadmissible hearsay, and it would not address the central issue – that is, whether one piece of information about the Muslim Brotherhood in this op-ed would be a deal-breaker for the Turkish government.

may be viewed in Turkey, the Muslim Brotherhood is seen in a very negative light in this country, and they were characterized in a very negative way in the op-ed.

Moreover, the comparison to the Muslim Brotherhood was only one of a number of unflattering comparisons in the article. From the Muslim Brotherhood it moved to a description of how the leaders of that group provided the inspiration for Al-Qaeda; it described Gulen as Turkey's Osama Bin Laden; and finally, it explicitly compared him to Ayatollah Khomeini.[2] From the perspective of the American public, these were frightening images. And regardless of how the senior levels of the Turkish government may have personally viewed the Muslim Brotherhood, they had to be happy about receiving exactly what they were paying for – an extremely negative portrayal of Fetullah Gulen that they hoped would influence American public opinion in favor of his extradition. Put simply, the contents of the op-ed were fully consistent with an agency relationship between the government of Turkey and the defendants.

    2.  <u>The Government Should not be Compelled to Corroborate Alptekin's Lie</u>

The defense's Motion to Compel would require an incredibly broad search for information throughout a vast swath of the federal government,[3] and it would be predicated upon what was plainly a lie on the part of the defendant's co-conspirator, Kamil Alptekin. On November 2, 2016, the defendant emailed Alptekin a draft of the Gulen op-ed, and told him, "I appreciate it if you take a look and give me your thoughts at your earliest convenience."

---

[2] During the course of the conspiracy, the defendant frequently drew a connection between Gulen and Khomeini. *See*, Indictment at paragraphs 13 and 23.

[3] Even though the defense made its initial request for this information on January 18th, and even though they were informed by the government on January 25th that the information was not relevant (Def. Mot. Compel, Exhibits 1 & 2), they waited three months until April 26th to file the instant motion. Given the breadth of what they are seeking, this has the potential to place a substantial burden on the government for information that is plainly not relevant in this case.

Attachment A at p. 1.  The Muslim Brotherhood reference was included on the first page of the draft.  *Id*. at p. 2.

Two days later, the defendant sent Alptekin a second draft of the op-ed after telling him, "The attached article will be published on Monday. This is a very high profile exposure one day before the election."  Attachment B at p. 1.  This draft included the same language on the first page describing the Muslim Brotherhood and its influence on Al-Qaeda.  Approximately ten hours later, Alptekin responded to the defendant's email.  In that response, he made it clear that he had read the op-ed carefully, because he pointed out that President Erdogan's name was misspelled in the first and second paragraphs, and Gulen's first name was wrongly spelled with just one 'L' in the second paragraph.  Attachment C.  Yet despite his close reading of the document, Alptekin did not object to the reference to the Muslim Brotherhood, or to anything else in the document for that matter.  In fact, he told the defendant, "Hi Bijan – the General is right on target."  *Id*.

Despite his obvious satisfaction with the op-ed when it was published in 2016, Alptekin's tune had changed substantially when he was interviewed by the FBI in 2017.  This is perhaps not surprising given that by 2017 he had become aware that the U.S. Department of Justice was investigating Turkey's role in the dissemination of the op-ed.  During questioning by the FBI, he provided the following information:

> Alptekin did not see anything except for one article which he did not commission – Flynn's op-ed.  Rafiekian told Alptekin Flynn was going to do an article on radical extremists to include Gulen.  Alptekin said if Flynn was going to do that, then he wanted to be consulted.  Rafiekian sent him a draft, in which Flynn equated Gulen to the Muslim Brotherhood, which Alptekin thought was a terrible idea.  Alptekin asked if he could suggest changes.[4]  Rafiekian thought it would be inappropriate to suggest changes.

---

[4]  In the emails between Alptekin and Rafiekian where they discussed the op-ed, Alptekin never suggested making any changes, other than the edits related to the mis-spellings noted above.

4

FBI 302 of Kamil Alptekin interview on May 24, 2017 at p. 12.[5]

Given that Alptekin told the defendant when he saw the op-ed on November 4th that "the General is right on target," it is difficult to conclude anything about the May 24th interview, other than that Alptekin was lying to cover his involvement in causing the op-ed to be published. In fact, the day after the election, on November 9, 2016, Alptekin appeared in a panel discussion on Turkish television where he discussed the election results.[6] Significantly, he spoke glowingly about the op-ed, telling the panel, "Yesterday, Mike Flynn, he served as head of military intelligence organization, as a matter of fact he is listed on Trump's candidate list of vice presidents, highly likely will be named national security adviser, wrote an op-ed for the Hill, you know that it is widely read newspaper in Capitol Hill." *See*, Attachment D, FBI Summary Translation of CNN panel discussion conducted in Turkish, at p. 5. He went on to state that, "It hasn't made an impact yet but it will. I'd like to draw your attention that it was published on Election Day. It's a very important matter." *Id*. After being asked if the op-ed was about FETO (Fetullah Gulen's organization), he responded, "It is an op-ed that reveals FETO for what it is and clearly says that 'we are mistreating our ally, making a mistake. We need to rectify it.'" *Id*. Finally, Alptekin stated, after being asked if Trump would extradite Gulen, "The op-ed being

---

[5] The defense cited to this FBI 302 in its motion to compel in a way that suggested that Alptekin was telling the truth. Def. Mot. Compel at p. 3. They sought to bolster this argument by claiming that the government did not charge Alptekin with a false statement for the passage quoted above. *Id*. FN 4. In fact, the government did charge Alptekin with the substance of these false statements by alleging that he falsely told his attorneys that "he had not been consulted on the op-ed, and that he would have opposed it if he had been consulted." Indictment, Dkt. 1, Par. 54, a.

[6] The link to the panel discussion on CNN can be found at
https://www.youtube.com/watch?v=oGeoQQapKec

published on the Election Day is a significant thing. I don't think that Gulen feels comfortable today. In fact, he might have boarded a plane." *Id*.

At no time in the discussion does Alptekin raise any concerns about the Muslim Brotherhood reference in the Flynn op-ed. This is significant because the panel discussion was obviously aimed at a *Turkish* audience, and the conversation was conducted in Turkish. If equating Gulen to the Muslim Brotherhood was so anathema to the highest levels of the Turkish government, it is difficult to see how Ekim Alptekin, the president of the American-Turkish Council, would not raise that as a concern. The fact that he never brought it up until being confronted by the FBI demonstrates what a self-serving lie this was.

Despite this evidence, the defense has latched onto the idea that the op-ed could not have been part of any conspiracy with the Turkish government because of the reference to the Muslim Brotherhood. In order to be able to make this argument, they are seeking to compel the government to produce an incredibly broad array of information. First, they are seeking "all information within the United States government's possession, including the State Department and the intelligence agencies, that indicates that Recep Tayyip Erdogan (Erdogan) has ever been a member of, or otherwise affiliated with or sympathetic to, the Muslim Brotherhood." Def. Mot. Compel at p. 1. Undoubtedly, the State Department and U.S. intelligence agencies would have a great deal of information about foreign leaders. But even if some of that information would tend to show that Erdogan was a member of the Muslim Brotherhood, or even more tangentially, was "affiliated with or sympathetic to" the group, none of that information is relevant. The Muslim Brotherhood reference made it into the final op-ed that was published, it was specifically approved by Alptekin, it was paid for by the Turkish government, and no concerns were raised with it until law enforcement began to ask questions. Simply put, even if

6

there were some entities within the Turkish government who were favorably disposed towards the Muslim Brotherhood, that fact alone would not be enough to outweigh the value to the Turkish government of an op-ed written by a U.S. general that served to demonize Fetullah Gulen in the eyes of the American public.

The second massive category of information that the defense seeks is "all information within the United States government's possession, including within the State Department, that tends to show that Turkish government officials[7], including Erdogan, would disagree with or disapprove of any comparison between Fetullah Gulen or his followers and the Muslim Brotherhood." *Id.* Plainly the defense is seeking to compel the government to search the entire federal government for information that does not even relate to specific, concrete facts, but whether someone would *disagree with or disapprove of* a particular comparison. The irrefutable fact is that the op-ed did precisely what the conspiracy was intended to do. It portrayed Fetullah Gulen in a very negative light. It made him out to be a potential terrorist threat. And it hid the role of the Turkish government in getting that op-ed before the American public. Had the Turkish government wanted to object to the op-ed, they could have done so before it was published. That they did not, shows that they were in agreement with Alptekin that "the General is right on target."

      3.      <u>The op-ed was fully Consistent with the Aims of the Conspiracy</u>

With regards to this defendant, it is simply irrelevant whether someone in Turkey was "sympathetic" to the Muslim Brotherhood, or whether someone might "disapprove" of a

---

[7] The reference to "Turkish government officials" demonstrates once again how burdensome this motion to compel is. Does that refer simply to Turkish ministers? Agency heads? Judges? Prosecutors? Former government officials? The amount of information that this request implicates is enormous, especially when the metric is whether a person would "agree with" or "disapprove of" one comparison in a much longer article.

comparison to the Muslim Brotherhood. Plainly, the defendant was not aware of that information, even if it existed. Instead, he was focused on the task at hand – making sure that the Turkish government got what they had paid for, a smear campaign of Fetullah Gulen. Accordingly, when he sent Alptekin the final draft of the op-ed on November 4th, he described Gulen as a "masked terrorist using United States tax payer funds to destabilize our NATO ally." Attachment B at p. 1. He told Alptekin that "MF and I are confident that you will see a credible, easy to distribute piece that will help reveal this masked terrorist's ugly acts." *Id*. Finally, he described Gulen as a "slow moving cancer," and he said that the "U.S. needs to show Turkey serious support" because "FG and his followers are destabilizing Turkey and the region." *Id*.

Further demonstrating that this was a conspiracy to discredit Gulen in the eyes of the United States, the defendant also told Alptekin in that email that he was working on a teaser and a full video, and that the "teaser will go to the entire congress and select USG agencies." *Id*. He further assured Alptekin that the "team is already communicating/educating USG on pertinent points." *Id*. So the smear campaign against Gulen was not limited to just the American public. It was also set up to take aim at the U.S. Congress.

By his own admission, then, the defendant acknowledged that the goal of the op-ed was to portray Gulen as a "terrorist" and a "cancer" to the American people. In addition, the conspiracy extended to trying to influence U.S. government officials who would ultimately have the final say in whether Gulen was extradited to Turkey. Given that the government of Turkey was the only entity that would benefit from Gulen's extradition, it is clear that this entire conspiracy was driven by the government of Turkey. And from the defendant's perspective, the fact that they continued to pay, even after the op-ed was published, demonstrated that they were satisfied with that document. On November 14th, less than a week after the op-ed was published,

$145,000 was wired from a Turkish bank account in Alptekin's name to the bank account in the United States controlled by the defendant. *See*, Indictment, Dkt. 1, Par. 38. Ultimately, the defense argument that there could not have been agency between the government of Turkey and the defendant due to the Muslim Brotherhood reference is belied by the fact that such a relationship plainly existed, both before and after the publication of the op-ed.

    4.    <u>The Information the Defense Seeks is not *Brady* and is, in fact, Not Relevant</u>

Perhaps the most significant flaw in the defense motion to compel is in mis-characterizing information that might be found at the State Department or one of a number of U.S. intelligence agencies as *Brady* information. The defense argues that the critical issue is "whether President Erdogan and his subordinates *would have directed* an op-ed to be published that compared Erdogan's archenemy to the Muslim Brotherhood." [Emphasis added]. Def. Mot. Compel at p. 3. Plainly the only ones who can answer that question are President Erdogan and his subordinates. Even if a document existed at the State Department or some intelligence agency where an analyst concluded that the Turkish leadership was favorably disposed towards the Muslim Brotherhood, it does not necessarily, or even logically, follow that the Turkish leadership would not have approved of the op-ed. It does not logically follow that they would have refused to pay for the op-ed. It does not logically follow that they would have ended their criminal conspiracy with Bijan Rafiekian and Kamil Alptekin. Especially where the aims of the conspiracy, discrediting Gulen and trying to secure his extradition, was argued so forcefully in the op-ed.

In fact, given that we know that they did pay for the op-ed, and given that the criminal conspiracy did continue for some period of time after the publication of the op-ed, it is apparent that the Turkish leadership approved of the op-ed. Whether they approved of it because or, or in

9

spite of, the reference to the Muslim Brotherhood, is something that only they know. Any information in the U.S. government's possession speculating about the Turkish government and its views towards the Muslim Brotherhood would be so tangential to this issue as to be irrelevant.

CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny the defendant's motion to compel production of information related to the Muslim Brotherhood.

Respectfully submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

| | |
|---|---|
| /s/ | By: /s/ |
| Evan N. Turgeon | James P. Gillis |
| Trial Attorney | Virginia Bar No. 65055 |
| Counterintelligence | John T. Gibbs |
|    and Export Control Section | Virginia Bar No. 40380 |
| National Security Division | Assistant United States Attorneys |
| United States Department of Justice | Katie Sweeten |
| 950 Pennsylvania Ave., NW | Special Assistant United States Attorney |
| Washington, DC 20530 | The Justin W. Williams |
| (202) 353-0176 |    United States Attorney's Office |
| Evan.Turgeon@usdoj.gov | 2100 Jamieson Avenue |
| | Alexandria, VA 22314 |
| | (703) 299-3700 |
| | (703) 299-3982 (fax) |
| | James.P.Gillis@usdoj.gov |
| | John.Gibbs@usdoj.gov |

CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2019, I electronically filed the foregoing using the CM/ECF system, which will send a notification of such filing to counsel of record.

Respectfully submitted,

_____/s/_____
John T. Gibbs
Assistant United States Attorney