```
 1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF VIRGINIA
 2                       ALEXANDRIA DIVISION

 3  UNITED STATES OF AMERICA,    )  Case 1:18-cr-00457
                                 )
 4              Plaintiff,       )
                                 )
 5       v.                      )  Alexandria, Virginia
                                 )  April 19, 2019
 6  BIJAN RAFIEKIAN,             )  9:11 a.m.
                                 )
 7              Defendant.       )
                                 )  Pages 1 - 17
 8

 9             TRANSCRIPT OF STATUS HEARING

10       BEFORE THE HONORABLE ANTHONY J. TRENGA

11           UNITED STATES DISTRICT COURT JUDGE
```

25     COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

```
 1  APPEARANCES:

 2  FOR THE PLAINTIFF:

 3       JAMES P. GILLIS, ESQUIRE
         EVAN N. TURGEON, ESQUIRE
 4       OFFICE OF THE UNITED STATES ATTORNEY
         2100 Jamieson Avenue
 5       Alexandria, Virginia  22314
         (703) 299-3700
 6
     FOR DEFENDANT BIJAN RAFIEKIAN:
 7
         ROBERT P. TROUT, ESQUIRE
 8       TROUT, CACHERIS & SOLOMON, PLLC
         1627 I Street, N.W., Suite 1130
 9       Washington, D.C.  20006
         (202) 464-3300
10
         MARK J. MACDOUGALL, ESQUIRE, PRO HAC VICE
11       STACY H. MITCHELL, ESQUIRE, PRO HAC VICE
         AKIN, GUMP, STRAUSS, HAUER & FELD, LLP
12       Robert S. Strauss Building
         1333 New Hampshire Avenue, N.W.
13       Washington, D.C.  20036-1564
         (202) 887-4000
14
     FOR NON-PARTY COVINGTON & BURLING LLP:
15
         DANIEL E. JOHNSON, ESQUIRE
16       COVINGTON & BURLING LLP
         850 Tenth Street, N.W.
17       Washington, D.C.  20001
         (202) 662-6000
18

19

20

21

22

23

24

25
```

1  THE CLERK: Criminal Case 1:18-cr-457, *United States v. Bijan Rafiekian*.

2  Counsel, will you please note your appearances for the record.

3  MR. GILLIS: Jim Gillis and Evan Turgeon for the United States, Your Honor.

4  THE COURT: Good morning.

5  MR. GILLIS: Good morning.

6  MS. MITCHELL: Good morning, Your Honor. Stacey Mitchell, Mark MacDougall, and Robert Trout for the defense.

7  THE COURT: Good morning.

8  MR. TROUT: Good morning.

9  MR. JOHNSON: Good morning, Your Honor. Dan Johnson for Non-Party Covington & Burling.

10  THE COURT: Good morning.

11  We're here for a status conference as to certain deadlines and also for Covington's unopposed motion for an extension. Let me deal with that first.

12  Mr. Johnson, how much time are you requesting?

13  MR. JOHNSON: We're requesting until May 3, Your Honor, up to and including, which is the date that defendant has agreed to as well.

14  THE COURT: All right. The Court will extend

1  that time until May 3.
2         MR. JOHNSON:  Thank you, Your Honor.  If I
3  may stay here --
4         THE COURT:  Yes.
5         MR. JOHNSON:  -- there's one other issue
6  relating to the protective order.  Unfortunately, it
7  turned out we were not able to reach agreement.
8         THE COURT:  All right.
9         MR. JOHNSON:  Would you like to hear on that
10 now?
11        THE COURT:  Yes.
12        MR. JOHNSON:  Thank you, Your Honor.
13        Your April 9 order allowed the defendant
14 access to the fake file at Covington, including
15 privileged documents.  The Court said that any access
16 would be pursuant to an agreed protective order.  It
17 appears that that was prompted by the statement by
18 Mr. MacDougall.  He said, The client is just seeking
19 access to a legal file that he has a lawful right to.
20 Once he has access, if there are privilege issues,
21 those can be worked out with counsel or, if necessary,
22 with the Court's assistance.  The Court can deal with
23 the question of showing the prosecutors the file with a
24 protective order.
25        In light of the order and in light of

1   Mr. MacDougall's suggestion on April 10, the day after
2   the order, we asked the defendant to provide a draft,
3   which we got on the afternoon of the 16th.  It said, in
4   pertinent part, Except with the prior authorization of
5   the Court, the defendant and his attorneys shall not
6   disclose to anyone the contents of the documents
7   provided by Covington and Verderame.
8         So I'm happy to pass that up.  We're fine with
9   that order, but we did have some suggestions.  We made
10  those yesterday morning, which I can offer to the Court
11  if you want to see those as well.  But then late
12  yesterday the defendant retracted his proposed order
13  and wants the unfettered right to show to the
14  government and the public at trial whatever documents
15  he receives under the protective order.  That would
16  waive FIG's privilege.  He has no authority to do that,
17  and it would be adverse to FIG's interests.
18        It's also at this point, I think, entirely
19  hypothetical because he doesn't have any of those
20  documents under the protective order yet.  We don't
21  know whether there's one or half a dozen or more that
22  he may want to use after he sees that production.
23        So we'd suggest, Your Honor, you either enter the
24  order that they proposed this week or specify.  If
25  their concern is they may want to use some documents at

1  trial, you can add to that order a simple statement
2  that any use at trial would be subject to a separate
3  order, and we can cross that bridge when we get there.
4          THE COURT: All right. Mr. MacDougall.
5          MR. MACDOUGALL: Thank you, Your Honor.
6          If the Court is going to consider this, we
7  would like to have the opportunity to brief it.
8          Mr. Johnson has described a series of
9  documents. We disagree with the characterization.
10 There is no agreement on the protective order. Our
11 principal concern -- our only concern on this point,
12 Your Honor, is that Covington and Covington's partners
13 are clearly going to be witnesses. If not called by
14 the government, they will be called as hostile
15 witnesses, in both instances subject to
16 cross-examination.
17         What Mr. Johnson was suggesting and in the
18 counteroffer that they made that we rejected, they are
19 asking for the right to essentially vet our
20 cross-examination for their own partner in advance of
21 us doing it. That prevents us from trying our case,
22 Your Honor.
23         THE COURT: All right. Why don't you both
24 send me your proposed orders by next Wednesday with any
25 briefing you want on this. I'll look at it. Until

1   then, it shouldn't hold up any production.  I'm not
2   sure if it will in light of the May 3 date.  Until the
3   Court rules on this, they should be restricted to
4   counsel.
5           Mr. Gillis, are you taking any position on
6   this at this point in terms of the government's access
7   to these documents?
8           MR. GILLIS:  No, Your Honor.
9           THE COURT:  All right.
10          MR. JOHNSON:  Thank you, Your Honor.
11          THE COURT:  Yes.  All right.  With respect
12  to --
13          MR. JOHNSON:  May I be excused?
14          THE COURT:  Yes.
15          MR. JOHNSON:  All right.  Thank you.
16      (Mr. Johnson exits.)
17          THE COURT:  All right.  With respect to the
18  other issues, Mr. Trout or --
19          MS. MITCHELL:  Ms. Mitchell.
20          THE COURT:  Ms. Mitchell, do you want to be
21  heard on the Section 5 issue?
22          MS. MITCHELL:  Yes, the Section 5 issue.
23  Your Honor, we are seeking an extension of time within
24  which to file that notice.  The government itself has
25  actually acknowledged that it's unreasonable for us to

1  file a notice when they are continuing to produce
2  documents.  As far as I know, we still have no clearly
3  articulated deadline for that production of documents.
4  It's been rather amorphous from Mr. Gillis.
5              Rather than sort of continuing to throw this
6  down the line and come back with extensions, we would
7  propose to the Court that the Court have the government
8  inform both the defense and the Court when it has
9  completed that production and then allow us a week's
10 time after that to file our notice, after we've had an
11 opportunity to review the documents obviously.
12             THE COURT:  All right.  Mr. Gillis --
13             Yes, Mr. Trout, do you want to be heard on
14 this?
15             MR. TROUT:  Yes, if I could.  I just want to
16 bring to the Court's attention the status on
17 clearances.  Mr. MacDougall has been cleared.  I am
18 told that -- as recently as yesterday, I was told that
19 I'm still in interim status but that that interim
20 status does not get us where we need to be in order for
21 me to be able to look at these documents.  I think
22 Ms. Mitchell is in the same --
23             MS. MITCHELL:  I think I might even be behind
24 that.
25             MR. TROUT:  So that's where we are.  I've

1 been pushing them, but I'm not in charge.

2     THE COURT: All right. The Court is going to
3 make an inquiry as to where they are in that process.

4     MR. TROUT: Thank you.

5     MS. MITCHELL: Your Honor, I don't know if
6 you would like me to address a continuing concern we
7 have with respect to production from the government now
8 or you want Mr. Gillis to --

9     THE COURT: Well, let me hear from
10 Mr. Gillis.

11     Where are you with respect to your
12 production?

13     MR. GILLIS: Your Honor, I would like to
14 point out that this has been a very complicated
15 discovery case, one among the most difficult I've
16 experienced. It involves coordination with seven
17 different agencies outside the Department of Justice,
18 including parts of the United States' intelligence
19 community.

20     We are readying for production and will be
21 producing within a week a volume of discovery. But to
22 be clear, the most relevant parts of those have been
23 produced earlier. We went through the special
24 counsel's files and reviewed their materials. Most
25 of -- the bulk of what we're producing are business

1  records, such as toll records and bank records,
2  documents we received from third parties.  The
3  documents we received from third parties being
4  principally witnesses who were interviewed.  Those are
5  among the documents that we produced earlier.  To be
6  certain that there's nothing that's been missed, we are
7  going to be producing that.  It's just taken some time
8  that has been out of the prosecution team's -- out of
9  our hands pretty much to get that all approved and
10 ready for production.
11         That will be produced in an unclassified
12 version.  Some of that -- a large part of that material
13 needed to be declassified for us to produce it.  We've
14 done that.  Right now we're just in the technical
15 process of redacting the necessary documents, and those
16 will be produced within the week.
17         The largest part of the other documents
18 constitutes *Giglio* materials as to General Flynn and
19 another witness.  We are planning to produce those as
20 soon as possible, and we expect that those will be
21 produced in -- probably in the next two weeks.  Again,
22 obtaining the necessary approvals from folks outside
23 the Department of Justice.  That -- or actually within
24 the department but at a level above my head.
25         Those documents, I should point out, being

1  *Giglio* are not a tardy production.  We're doing our
2  best to get them produced even before we're required
3  to.  As the Court is aware, under the standard
4  discovery order, it's five days before trial.  We're
5  going to make that production well before that time.
6        So I just want to make clear that we have
7  been working as diligently as possible since the status
8  conference to get this discovery done.
9        THE COURT:  All right.  Ms. Mitchell, did you
10 want to respond to any of that?
11       MR. GILLIS:  I'm sorry.
12       MS. MITCHELL:  Go ahead.
13       MR. GILLIS:  If I may, Your Honor, the part
14 that we expect to be classified should be a relatively
15 small number of documents.  We may need to do --
16       THE COURT:  That's going to be produced
17 within a week, correct?
18       MR. GILLIS:  The classified materials we
19 expect to have produced within two weeks.
20       THE COURT:  All right.
21       MR. GILLIS:  There may be a need to file a
22 CIPA Section 4 with respect to one document, but apart
23 from that, that's basically the discovery on classified
24 materials.
25       THE COURT:  All right.  Ms. Mitchell.

1        MS. MITCHELL:  Thank you, Your Honor.
2        So Mr. Gillis has just touched on the second
3 concern that I was going to articulate to Your Honor.
4 We have made basically no progress since March 15 when
5 we were here before the Court on a motion to compel the
6 information with respect to General Flynn.
7        Your Honor, this is an unusual case.  This is
8 an unusual witness.  We strongly believe that those
9 302s are not only filled with *Giglio* material but also
10 potential *Brady* material.  We have, at the Court's
11 request on the 15th of March, immediately filed a list
12 of separate incidents in which General Flynn was lying
13 or directing others to lie with respect to various and
14 sundry matters, including to the vice president of the
15 United States.
16        It's only actually as of 5:30 p.m. last night
17 and then again this morning that we've had any response
18 from Mr. Gillis with respect to forward progress.  I
19 think it's actually -- I am concerned to call it
20 forward progress.
21        First, Your Honor, the responses that we got
22 to our direct requests for those eight items were
23 essentially boilerplate responses more or less telling
24 us, We'll produce them if we know about them, and
25 they're either known to -- I'm sorry -- if they exist

1  and if they're either known to us or in our possession.

2  Given that we have identified eight items
3  which we don't even believe is our obligation but we
4  were able to do so easily because we've read these
5  incidents in newspapers, that to me --

6  THE COURT: I think the Court directed that
7  that be done.

8  MS. MITCHELL: You're right, Your Honor.

9  Additionally, when we've asked for documents
10 to be produced from agencies and -- Mr. Gillis
11 indicated that it's been -- that he's looked at seven
12 agencies beyond the Department of Justice. If he's, in
13 fact, looked at the agencies we've asked for, we'd
14 appreciate it. With respect to some of our document
15 requests, we identified other agencies where these
16 documents may exist, and we were told essentially, If
17 you want it, go subpoena that agency.

18 So to us, that's nonresponsive, Your Honor.

19 Perhaps most pointedly, as Your Honor
20 astutely noted at that March 15 hearing, part of the
21 problem here is that our access to these 302s and this
22 information continues to be conditioned. We have --
23 Mr. Gillis has not moved off what we believe are sort
24 of untenable conditions, as Mr. MacDougall pointed out
25 in that March 15 hearing, some of which we feel are

1 tantamount to malpractice on our part.

2 We believe there should be no conditions put
3 on our access to *Brady* or *Giglio* material.  Some of the
4 conditions that Mr. Gillis is suggesting are, A,
5 unrelated and, B -- again, I repeat -- untenable.  One
6 is a general stipulation with respect to bank records
7 and toll records.  We don't know what bank records or
8 what toll records.  We haven't seen them.  They haven't
9 been specifically identified.  It seems to me
10 nonsensical to correlate access to *Brady* and *Giglio* to
11 bank records and other documents.

12 We are not looking to extend any potential
13 trial here by calling custodians, but we need to know
14 if, in fact, that's appropriate.  We can't know that,
15 and we can't stipulate without having seen them.

16 Now, Your Honor, there are some additional
17 conditions, and I would just continue to say that
18 they're not appropriate.

19 THE COURT:  All right.

20 MS. MITCHELL:  I won't sort of belabor the
21 point here.

22 With respect to timing, Your Honor, the
23 defense is anxious and really is interested in keeping
24 the existing trial date.  We currently have and are
25 prepared to file a number of motions that don't pertain

1 to the information either from the Covington and
2 Verderame law firms or from the delay of the production
3 to this *Giglio* and other material from the government.
4 If it would help facilitate staying on track, we are
5 prepared to do that.
6 But unsurprisingly, we anticipate filing sort
7 of at the current time, based on what we anticipate
8 will be in these documents -- and I guess the Court can
9 appreciate that that's a little bit of guesswork. We
10 anticipate at least two motions that are going to be
11 informed by the production of those documents. So
12 we're happy to stagger if that facilitates staying on
13 track. Also, we're looking to the Court for guidance
14 on this, but we're prepared to keep this moving.
15 THE COURT: All right. Thank you.
16 Mr. Gillis, anything else you want to add on
17 this?
18 MR. GILLIS: Well, Your Honor, for the same
19 reasons I articulated last time, I disagree with the
20 assertion.
21 THE COURT: I understand.
22 Here's what I'm going to do. I'm going to
23 set some deadlines. The government is going to
24 complete its production as to all documents other than
25 classified and *Giglio* and *Brady* by April 29. It will

1  produce the balance of its production with respect to
2  classified documents and *Giglio* by May 6.  With respect
3  to *Giglio* and *Brady*, if there are items that they have
4  not produced because they have not been able to
5  complete their investigation and obtain all of those
6  documents from all of the relevant sources, that
7  production should be accompanied by a detailed
8  explanation of what remains outstanding and what needs
9  to be done and how long they anticipate it will take.
10             All right.  As I'm sure everyone appreciates,
11 we're going to keep our July 15 trial date.  So please
12 proceed in confidence that we will be going to trial on
13 July 15.
14             All right.  If you want to file those motions
15 that you suggested, that's fine.
16             MS. MITCHELL:  Your Honor, if I may, with
17 respect to motions deadlines for the additional
18 motions?
19             THE COURT:  A week after you receive the
20 classified information.
21             MS. MITCHELL:  Fantastic. Thank you, Your
22 Honor.
23             THE COURT:  All right.  Anything else?
24             MR. GILLIS:  Yes, Your Honor.  Just the
25 Section 5 notice would be a week after --

1    THE COURT: After your production of the
2 classified documents on March -- I'm sorry -- May 6.
3    MR. GILLIS: Thank you, Your Honor.
4    May we either try to work out with the
5 defense or seek the Court's assistance in having a
6 protective order entered with respect to both
7 categories of documents?
8    THE COURT: Yes.
9    MR. GILLIS: Thank you, Your Honor.
10    THE COURT: All right. Thank you.
11    Counsel is excused.
12    ------------------------------------
         Time: 9:29 a.m.
13
14
15
16
17
18
19
20
21    I certify that the foregoing is a true and
22  accurate transcription of my stenographic notes.
23
24
                                    _____/s/_____
25                                  Rhonda F. Montgomery, CCR, RPR