UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Criminal Case No. 1:18-CR-457 (AJT) |
| | : | |
| BIJAN RAFIEKIAN, et al. | : | |

**DEFENDANT RAFIEKIAN'S REPLY IN SUPPORT OF
<u>MOTION TO COMPEL</u>**

Defendant Rafiekian, through counsel, respectfully submits this reply brief in support of his motion to compel the government to produce: (1) all information within the United States government's possession, including the Department of State and the intelligence agencies, that indicates that Recep Tayyip Erdoğan ("<u>Erdoğan</u>") has ever been a member of, or otherwise affiliated with or sympathetic to, the Muslim Brotherhood, and (2) all information within the United States government's possession, including within the Department of State, that tends to show that Turkish government officials, including Erdoğan, would disagree with or disapprove of any comparison between Fethullah Gülen ("<u>Gülen</u>") or his followers and the Muslim Brotherhood.

**ARGUMENT**

The government's opposition illustrates the fundamental flaw in the prosecution of this case—a flaw that the government seeks to obscure with an unsubstantiated claim (based on the discovery produced to date). The fundamental flaw that infects this prosecution is that the defendant and his colleagues at Flynn Intel Group ("<u>FIG</u>") are deemed to have been acting as agents of Turkey because they were pursuing a project and were expressing views that were in line with the views of senior Turkish officials. In other words, if the defendant expressed views

1

and pursued an agenda that were similar to what Turkish government officials would have embraced, that makes him an agent of the government of Turkey. But plainly, that is not the law. Under 18 U.S.C. § 951(d), the defendant is deemed to be an agent of a foreign government only if he "*agrees* to operate within the United States *subject to the direction or control* of a foreign government or official." (emphasis added). Countless examples abound in this country of organizations seamlessly aligned with government policies or with political candidates or parties that are neither deemed to be agents of the government or of a candidate or political party nor deemed to have agreed to act under the direction and control of some other person or entity.

The government seeks to obscure this flaw in its case by claiming that "[i]n seeking to influence the American public about Gülen, the co-conspirators sought to conceal the fact that the *government of Turkey was funding this entire effort*." Gov't Opp'n at 2 (emphasis added). And to make sure the point was not missed:

- The "Turkish government . . . had to be happy about receiving exactly *what they were paying for* . . . ." (Gov't Opp'n at 3, emphasis added);

- The op-ed "was *paid for* by the Turkish government . . . ." (Gov't Opp'n at 6, emphasis added);

- "[T]he fact that *they continued to pay*, even after the op-ed was published, demonstrated that they were satisfied with that document" (Gov't Opp'n at 8, emphasis added);

- "[G]iven that *we know [Turkey] did pay for the op-ed* . . . , it is apparent that the Turkish leadership approved of the op-ed" (Gov't Opp'n at 9, emphasis added).

Funding from the government of Turkey to FIG would be significant evidence if it were true *and if the defendant knew about it*. But in the discovery provided to date, the defense has seen no evidence that the government of Turkey was the source of funds that went from Inovo BV, Ekim Alptekin's company, to FIG, much less that the defendant was aware of any such

2

funding by the Turkish government. There is every indication that there is no such evidence, and that the government's claim that Turkey funded the payments to FIG is simply built on false assumptions and supposition. First, although the speaking indictment spares no detail in its 63 paragraphs, there is no allegation that Turkey was the source of the funds that were paid to FIG (or received by Alptekin for payment to FIG). On the contrary, the indictment alleges that FIG received payments from Alptekin, a private citizen and businessman. Indictment ¶¶ 31, 34, 38. In the exhibits that the government has identified to date, the only evidence of any payments to FIG show that they came from Alptekin's account. It is also noteworthy that although the government has alleged that Alptekin made four false statements when he was interviewed by the FBI on May 24, 2017, the charges against Alptekin do not include an allegation that he was lying when he said that he was the source of the funds paid to FIG. This case was originally scheduled for a February 11, 2019 trial, so if any evidence exists that Turkey funded FIG's work, the government is long overdue in producing such evidence in discovery.[1]

It is not enough, therefore, for the government to show that Turkey would have liked most or all of the op-ed the Mr. Flynn published in *The Hill* on November 8, 2016. The threshold question is whether the defendant had **agreed to operate under the direction and control of Turkey or Turkish officials.** Whatever evidence the government seeks to introduce on that question, it is apparent that none will be given more emphasis than evidence relating to the Flynn op-ed. But whatever evidence the government has that the government of Turkey embraced the

---

[1] The defense has looked in all the likely places among the over one and a half million documents of discovery produced to date, so if it is somehow buried there, the government should be required to identify immediately where to find it.

op-ed after it came out,[2] that does not prove that the government of Turkey directed preparation or publication of the op-ed, had any control over its preparation, or even knew about the piece in advance.

It is increasingly clear that the op-ed contains elements that President Erdoğan or senior Turkish leaders would not have wanted included in the op-ed. While Erdoğan may well have embraced the op-ed's characterization of Fettulah Gülen as a terrorist, he would certainly have rejected the op-ed's characterization of the Muslim Brotherhood as a terrorist organization. Anything that would give traction in the United States to the proposition that the Muslim Brotherhood is a terrorist organization would not be a trifling matter for Turkey. *See generally*, Fehim Tastekin, *US Condemnation of Muslim Brotherhood Would Cost Turkey Dearly*, AL-MONITOR, May 10, 2019, https://www.al-monitor.com/pulse/originals/2019/05/turkey-can-erdogan-give-up-on-muslim-brotherhood.html, attached as Exhibit 1,[3] *see also*, *Tillerson: Blacklisting Muslim Brotherhood Problematic*, ALJAZEERA, June 14, 2017, https://www.aljazeera.com/news/2017/06/tillerson-blacklisting-muslim-brotherhood-

---

[2]  The government's opposition makes no reference to any reaction by Turkish government officials following the publication of the op-ed. Instead, the government places significant weight on a television appearance by Mr. Alptekin shortly after the publication of the op-ed and the fact that he did not raise any concerns about the op-ed's reference to the Muslim Brotherhood during this interview.  This is meaningless. First, there is no evidence that Mr. Alptekin was speaking on behalf of the government of Turkey. The topic of the Muslim Brotherhood did not come up during the program, and there is no reason to think Mr. Alptekin would want to raise the issue on national television, even if he disagreed with the op-ed's treatment of that organization. To the contrary, if Mr. Alptekin hoped that publication of the op-ed would grow his personal profile among members of the Turkish government, he certainly *would not* promote elements of the op-ed that could be viewed unfavorably within that circle.

[3]  The Article Summary: "If the Donald Trump administration brands the Muslim Brotherhood a terror organization to please its Gulf allies and Egypt, it will create a major headache for Turkey."

4

problematic-170614193311591.html; FY 2018 State Department Budget Request, Opening Remarks Before the House Committee on Foreign Affairs, 115th Cong. (2017) (statement of Rex W. Tillerson, Sec'y of state), *available at* https://www.c-span.org/video/?c4675478/rex-tillerson-muslim-brotherhood ("There are elements of [the] Muslim Brotherhood that have now become parts of governments. . . . There are members in Turkey that are parts of government."). That is why it is no answer for the government to say that Turkish officials would not care about reference to the Muslim Brotherhood in an op-ed intended for a U.S. audience, especially an opinion piece written by the incoming National Security Advisor.

The government's opposition goes to great lengths to describe how Mr. Alptekin embraced the op-ed and how he lied to the FBI when he said that equating the Gülenists to the Muslim Brotherhood was a terrible idea.[4] That misses the point. The question is not whether the defendant or FIG was operating under the direction and control of Alptekin or his company. The question is whether they were acting under the direction and control of the government of Turkey. If there are elements in the op-ed that quite clearly run counter to Turkish policy and the views of President Erdoğan, surely that is powerful evidence that this op-ed—the most visible work related to Turkey that was performed by anyone associated with FIG—was not directed or controlled by Turkey or by any senior Turkish official.

In response to the defense argument that a critical issue is whether President Erdoğan and his subordinates would have directed an op-ed to be published that compared Gülen—Erdoğan's

---

[4] The government is quick to label Alptekin's statement as a lie here, but in the indictment, which catalogs four statements during the FBI interview that are alleged to be lies, there is no allegation that refers to this statement. The government responds that although they did not charge him with lying to the FBI about the op-ed, they did include an allegation that he lied to his lawyers about the op-ed.

archenemy—to the Muslim Brotherhood, the government asserts that "[p]lainly the only ones who can answer that question are President Erdoğan and his subordinates." Gov't Opp'n at 9. That assertion is either a forecast that the government intends to call as witnesses President Erdoğan or his subordinates—which the defense would welcome—or a revealing misunderstanding by the government of its burden of proof in this case.

      The government argues that "it is simply irrelevant whether *someone in Turkey* was 'sympathetic' to the Muslim Brotherhood, or whether *someone* might 'disapprove' of a comparison to the Muslim Brotherhood." Gov't Opp'n at 7-8 (emphasis added). This is not a serious argument. The defense is not talking about some person on some street in Istanbul. This is about the President of Turkey and his most senior subordinates. The government goes on, "Plainly, the defendant was not aware of that information, even if it existed." Gov't Opp'n at 8. First, there is every reason to believe the information exists, easily found within the Department of State Department or the intelligence agencies. Second, why on earth would the government assert that the defendant was "plainly" not aware of the information? The op-ed was published by the former Director of the Defense Intelligence Agency, who within days of publication was selected to be the National Security Advisor in the incoming administration.

      While the government points to evidence about Alptekin's reaction to the op-ed, nowhere is there any reference to evidence that any government official in Turkey reacted in any way to the op-ed, either approving or disapproving it. While there is evidence that the op-ed was shared with Alptekin before publication, nowhere is there any reference to evidence that any Turkish official received a copy of the op-ed in advance of its publication. The government of course is free to argue to a jury that even though there is no evidence that the op-ed was provided to the Turkish government, "[h]ad the Turkish government wanted to object to the op-ed, they could

have done so before it was published." Gov't Opp'n at 7. But for purposes of this motion, the government has plainly put the cart well in front of the horse.

The evidence that the defense seeks with this motion is plainly relevant and powerfully exculpatory. The truth of the premise will find deep support in evidence, in the possession of the Department of State or one of the intelligence agencies, that refutes the government's contention in this case that the government of Turkey was effectively directing the activities of FIG under its contract with Inovo. As an evidentiary matter, such evidence could well be dispositive in the minds of a jury trying to answer the question whether FIG and the defendant had agreed to operate under the direction and control of the government of Turkey.

## CONCLUSION

For the foregoing reasons, Mr. Rafiekian respectfully requests that the Court grant the Defendant's Motion to Compel.

Dated: May 14, 2019

Respectfully submitted,

/s/
Mark J. MacDougall (*Pro Hac Vice*)
Stacey H. Mitchell (*Pro Hac Vice*)
John C. Murphy (*Pro Hac Vice*)
*Counsel for Bijan Rafiekian*
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036
Telephone: (202) 887-4000
Fax: (202) 887-4288
E-mail: mmacdougall@akingump.com
shmitchell@akingump.com

/s/
Robert P. Trout (VA Bar # 13642)
*Counsel for Bijan Rafiekian*
Trout Cacheris & Solomon PLLC
1627 Eye Street, NW
Suite 1130
Washington, DC 20006
Telephone: (202) 464-3311
Fax: (202) 463-3319
E-mail: rtrout@troutcahceris.com

## CERTIFICATE OF SERVICE

I hereby certify that, on the 14th day of May 2019, true and genuine copies of Defendant's Reply in Support of Motion to Compel was sent via electronic mail by the Court's CM/ECF system to the following:

    James P. Gillis
    John T. Gibbs
    Evan N. Turgeon
    U.S. Attorney's Office (Alexandria-NA)
    2100 Jamieson Avenue
    Alexandria, VA 22314
    Telephone:  (703) 299-3700
    Email:  james.p.gillis@usdoj.gov
            john.gibbs@usdoj.gov
            evan.turgeon@usdoj.gov

                                          /s/
                                        Robert P. Trout (VA Bar # 13642)