UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Criminal Case No. 1:18-CR-457 (AJT) |
| | : | |
| BIJAN RAFIEKIAN, et al. | : | |

**DEFENDANT RAFIEKIAN'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR
ADDITIONAL PEREMPTORY CHALLENGES AND A JURY QUESTIONNAIRE**

Pursuant to Fed. R. Crim. P. 24(b) and Local Criminal Rule 24(b), Defendant Bijan Rafiekian, through counsel, respectfully submits this memorandum of law in support of his motion for additional peremptory challenges and use of a written jury questionnaire. Mr. Rafiekian requests that the Court grant defendant sixteen (16) peremptory challenges and issue a written questionnaire to prospective jurors in this case. If the Court grants this motion with respect to the jury questionnaire, Defendant proposes to file a suggested jury questionnaire seven days before trial.

## BACKGROUND

This case—a spinoff of Special Counsel Robert Muller's investigation—centers on allegations that Defendant Bijan Rafiekian conspired to and knowingly acted as an agent of Turkey without prior notification to the Attorney General while serving as an officer and director at Flynn Intel Group, Inc. ("FIG"). *See* Indictment at 17–19 (Dkt. 1). Since the charges were announced, news outlets have engaged in endless speculation about the allegations, fueled in part by Mr. Rafiekian's association with former national security advisor Michael Flynn, who was himself a target of the Special Counsel's investigation. A Lexis search of media sources for the

terms "Kian" near "trial" or "investigation" produced over 350,000 results in Virginia alone and over 2 million video and news transcripts worldwide.[1]

In addition to receiving substantial news coverage, the allegations have captured the attention of potential jurors, who have been actively researching the government's allegations. According to Google Trends (a website that tracks the popularity of search terms on Google's search engine), Google searches in Virginia for Mr. Rafiekian peaked in December 2018 when Mr. Rafiekian was indicted and have risen again in the past month as the media coverage has intensified due to the approaching trial.[2]

As a result of the widespread public interest in this case, there is considerable danger that potential jurors may have preconceived opinions on Mr. Rafiekian's guilt or innocence. *See United States v. Bakker*, 925 F.2d 728, 734 (4th Cir. 1991) ("In an era of rapid and widespread communications, trial courts must be vigilant to ensure that jurors are not biased and trials are not compromised by media attention surrounding a case."). Accordingly, Mr. Rafiekian respectfully requests that the Court take steps to ensure the impartiality of Mr. Rafiekian's jury by (1) granting him additional peremptory challenges and (2) issuing a written questionnaire to potential jurors in this case.

## ARGUMENT

**A. The Court Should Grant Mr. Rafiekian Additional Peremptory Challenges**

Defendants in non-capital felony cases ordinarily are permitted ten peremptory challenges. Fed. R. Crim. P. 24(b)(2); *see also United States v. Ricks*, 802 F.2d 731, 734 (4th Cir.

---

[1] This total does not include all sources of potentially prejudicial coverage—such as Facebook, Twitter, other social media, various blogs, and comments on online news stories, all of which have surely amplified likely juror's pre-trial exposure to the facts of this case.

[2] *See* Google Trends search for Bijan Rafiekian, http://www.google.com/trends (conducted May 28, 2019), attached as Exhibit A.

1986) (Peremptory strikes are a "right of such significance that denial or substantial impairment of the right constitutes per se reversible error"). The Court has discretion, however, to grant additional challenges. *See United States v. Hasan*, 747 F. Supp. 2d 642, 699 (E.D. Va. 2010) ("While providing additional peremptory challenges may protract jury selection to some degree, it is unlikely to be unduly burdensome. . . . In any event, the Court finds it to be an appropriate safeguard to ensure that Defendants are afforded a fair trial."). That exercise of discretion is especially appropriate where the nature of the case may make it more difficult to seat an unbiased jury, including cases that have received significant media attention. *See, e.g.*, *United States v. Salad*, No. 2:11CR34, 2013 WL 12203461, at *4 (E.D. Va. Mar. 29, 2013) ("Prejudicial pretrial media coverage may be a reason to grant additional peremptory challenges to the defendants, while holding the government to a smaller allotment."); *Hasan*, 747 F. Supp. 2d at 699 (granting 18 peremptory strikes to defendants and nine strikes to government in a case involving Somali pirates that had received media attention).

Additional peremptory challenges are appropriate in Mr. Rafiekian's case due to the significant media attention it has received and the highly polarizing nature of the Special Counsel's investigation that spawned this prosecution. It is likely that media coverage has influenced the opinions of many potential jurors, including through direct references to Mr. Rafiekian's association with Mr. Flynn, a divisive figure in his own right who has pled guilty to lying to the FBI.[3] Many articles tie directly to the prosecution's allegations, which Mr. Rafiekian

---

[3] *See, e.g.*, David Voreacos, *Flynn Associate Kian Pleads Not Guilty to Lobbying Charges*, BLOOMBERG (Dec. 18, 2018), https://www.bloomberg.com/news/articles/2018-12-18/flynn-s-ex-associate-kian-pleads-not-guilty-to-lobbying-charges; Josh Gerstein, *Flynn Questioned in 'Ongoing Investigations," Court Filing Reveals*, POLITICO (Mar. 13, 2019), https://www.politico.com/story/2019/03/13/michael-flynn-ongoing-investigation-mueller-1219353; Katelyn Polantz, *Michael Flynn To Be Star Witness in Trial of His Ex-Lobbying*

disputes.[4]  Indeed, some media coverage went so far as to conclude that the prosecutor's allegations are true, despite the fact that the trial has not even begun.[5]

There is no downside to granting Mr. Rafiekian additional peremptory challenges.  The modest increase that Mr. Rafiekian seeks will not unduly burden the Court or lengthen these proceedings, and any minimal delay is a fair price to pay to ensure that Mr. Rafiekian's fate is decided by an impartial jury.

### B. The Court Should Issue a Jury Questionnaire to Potential Jurors

Voir dire is the principal means of ensuring an impartial jury.  *See United States v. Lancaster*, 96 F.3d 734, 738 (4th Cir. 1996) ("[T]he principal purpose of voir dire is to probe

---

*Partner, Documents Say*, CNN (Mar. 1, 2019), https://www.cnn.com/2019/03/01/politics/michael-flynn-witness-lobbying-partner/index.html.

[4] *See, e.g.*, Rebecca Khell, *Turkey and Michael Flynn: Five Things to Know*, THE HILL (Dec. 17, 2018), https://thehill.com/policy/defense/421780-turkey-and-michael-flynn-five-things-to-know ("[The] op-ed was valuable to the Republic of Turkey's efforts to shape public opinion.") (internal quotation removed); Soon Rin Kim, *Two Ex-Business Associates of Michael Flynn Charged in Plot Centered on Turkish Cleric*, ABCNEWS (Dec. 17, 2018), https://abcnews.go.com/Politics/business-associates-michael-flynn-charged-plot-centered-turkish/story?id=59865091 ("Though not mentioned in the indictment, ABC News has also previously reported that Flynn was also accused of raising the idea of kidnapping Gulen to be turned over to the Turkish government."); Jabin Botsford, Devlin Barrett, and Karen DeYoung, *Michael Flynn, Lies and the Turkish Connection*, GULF NEWS WORLD (Dec. 18, 2018), https://gulfnews.com/world/americas/michael-flynn-lies-and-the-turkish-connection-1.61009483 ("Flynn already admitted last year to lying about his business with the Turkish government and agreed to cooperate with law enforcement in a deal with Special Counsel Robert Mueller's team . . . [t]hat almost certainly helped produce charges against Kian.").

[5] *See, e.g.*, Mark Mazzetti and Adam Goldman, *As Flynn Case Winds Down, Investigation of Turkish Lobbying Persists*, NYT (Dec. 5, 2018), https://www.nytimes.com/2018/12/05/us/politics/michael-flynn-turkey-investigation-virginia.html ("Mr. Flynn admitted to prosecutors last year that he had repeatedly violated that law.  He had said he wrote the op-ed at his own initiative, *concealing* that he did so at the direction of Turkey.") (emphasis added); Marshall Cohen, *Michael Flynn's Business Partner to Go on Trial in July*, CNN (Feb. 13, 2019), https://www.cnn.com/2019/02/13/politics/michael-flynn-bijan-kian/index.html ("Flynn acknowledged committing some of the same lobbying-related crimes that Kian was accused of, but he cut a cooperation deal and avoided prosecution.").

each prospective juror's state of mind to enable the trial judge to determine actual bias and to allow counsel to assess suspected bias or prejudice.") (internal citation omitted). A trial court has broad discretion over how to conduct voir dire. *See, e.g.*, *United States v. Jeffery*, 631 F.3d 669, 673 (4th Cir. 2011); *United States v. Bakker*, 925 F.2d 728, 733 (4th Cir. 1991); *United States v. Bailey*, 112 F.3d 758, 770 (4th Cir. 1997); *Morgan v. Illinois*, 504 U.S. 719, 729 (1992) ("[P]art of the guaranty of the defendant's right to an impartial jury is an adequate voir dire to identify unqualified jurors.").

In cases with extensive pretrial publicity, "[a] careful and exhaustive voir dire is crucial to ensure that these defendants will be tried by an impartial jury which will render its verdict on the basis of evidence adduced at trial rather than information from the newspapers or television." *In re S.C. Press Ass'n*, 946 F.2d 1037, 1041 (4th Cir. 1991) (internal quotation and citation omitted). Courts in this district and across the country have used jury questionnaires in conjunction with questioning by counsel to identify any potential jurors affected by pretrial publicity. *See Skilling v. United States*, 561 U.S. 358, 388 (2010) (noting role of juror questionnaire in ensuring impartial jury and fair trial of Enron CEO); *United States v. Rolle*, 204 F.3d 133, 135 (4th Cir. 2000) (noting that jury questionnaire assisted counsel in identifying sixteen biased members of the jury pool); *Runyon v. United States*, 228 F. Supp. 3d 569, 663 (E.D. Va. 2017) (explaining that the jury questionnaire enabled the court to "search for any bias or prejudice" and ensured an impartial jury).

Here, due to the significant pretrial publicity surrounding this case and the government's star witness, Mr. Flynn, it is important that the Court take all available steps to uncover any biases in the pool of potential jurors. The jury selection process in this case will be more complex than in a typical criminal case, and issuing a jury questionnaire prior to voir dire will

assist both parties and the Court by exposing any bias while also streamlining the jury selection process.[6] *See United States v. Bobbitt*, 203 F.3d 822, 2000 WL 102925, at *4 (4th Cir. 2000) (noting trial court's use of jury questionnaire inquiring into exposure to pretrial publicity).

A questionnaire will also allow the Court to focus voir dire on critical issues identified in the questionnaire, while fostering transparency by permitting jurors to provide information on sensitive topics that are critical in Mr. Rafiekian's case, free from the influence of other jurors' responses. *See Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 602 (1976) (explaining the importance of individualized questioning on sensitive subjects "particularly in cases of extensive publicity. . . . to maximize the likelihood that members of the venire will respond honestly to questions concerning bias, and to avoid contaminating unbiased members"); John H. Blume et. al., *Probing "Life Qualification" Through Expanded Voir Dire*, 29 HOFSTRA L. REV. 1209, 1254 (2001) ("Jurors are willing to admit unfavorable opinions in written responses to questionnaires that they would hesitate to reveal out loud.") (internal citation and quotation omitted). Unlike oral responses, a written questionnaire would also ensure that any prejudicial information seen or heard by one juror does not taint the entire jury pool.

## **CONCLUSION**

For the reasons stated above, and for any other reason that the Court may deem just and proper, Mr. Rafiekian respectfully requests that the Court grant his motion for additional peremptory challenges and permit the use of the proposed written jury questionnaire as a

---

[6] Should the court choose not to issue a written jury questionnaire, Mr. Rafiekian respectfully requests that the Court permit counsel to submit questions to be asked to prospective jurors.

supplement to oral voir dire.  If the Court grants this motion with respect to the jury questionnaire, Defendant proposes to file a suggested jury questionnaire seven days before trial.

Dated: May 28, 2019

Respectfully submitted,
/s/_____
James E. Tysse (VA Bar # 73490)
Mark J. MacDougall (Pro Hac Vice)
Stacey H. Mitchell (Pro Hac Vice)
John C. Murphy (Pro Hac Vice)
Adam A. Bereston (Pro Hac Vice)
Samantha J. Block (Pro Hac Vice)
Counsel for Bijan Rafiekian
Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
Telephone:  (202) 887-4000
Fax:  (202) 887-4288
E-mail:   mmacdougall@akingump.com
          shmitchell@akingump.com


/s/_____
Robert P. Trout (VA Bar # 13642)
*Counsel for Bijan Rafiekian*
Trout Cacheris & Solomon PLLC
1627 Eye Street, NW
Suite 1130
Washington, DC 20006
Telephone:  (202) 464-3311
Fax:  (202) 463-3319
E-mail:   rtrout@troutcahceris.com

Case 1:18-cr-00457-AJT   Document 151   Filed 05/28/19   Page 8 of 8 PageID# 1055

**CERTIFICATE OF SERVICE**

I hereby certify that, on the 28th day of May 2019, true and genuine copies of Defendant's Memorandum of Law in Support of Motion for Additional Peremptory Challenges and a Jury Questionnaire was sent via electronic mail by the Court's CM/ECF system to the following:

James P. Gillis
John T. Gibbs
Evan N. Turgeon
U.S. Attorney's Office (Alexandria-NA)
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone:  (703) 299-3700
Email:  james.p.gillis@usdoj.gov
john.gibbs@usdoj.gov
evan.turgeon@usdoj.gov

/s/
Robert P. Trout (VA Bar # 13642)