UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Criminal Case No. 1:18-CR-457 (AJT) |
| | : | |
| BIJAN RAFIEKIAN, et al. | : | |

**DEFENDANT RAFIEKIAN'S OPPOSITION TO THE GOVERNMENT'S MOTION IN LIMINE TO PRECLUDE DEFENDANT FROM PRESENTING EVIDENCE OR ARGUMENT ON ADVICE OF COUNSEL OR THE LOBBYING DISCLOSURE ACT**

**PRELIMINARY STATEMENT**

The government asks this Court to exclude, on relevance grounds, one of the single most probative pieces of exculpatory evidence in this case. Mr. Rafiekian is charged with conspiring with Kamil Alptekin and members of the Turkish government to act as a foreign agent without prior notification to the Attorney General, in connection with work performed by Flynn Intel Group ("FIG"). Under the pertinent statutes, one of the ways Mr. Rafiekian could have given such notice was by registration under the Foreign Agents Registration Act ("FARA"). Because it is undisputed that Mr. Rafiekian (a) was aware of the existence and general provisions of FARA and (b) did not register under FARA (or otherwise give notice to the Attorney General), the evidence at trial will focus on the *reason* he failed to register. The government posits that Mr. Rafiekian did not file under FARA because he had reached an agreement (*i.e.*, conspired) with Alptekin and Foreign Government officials that he would not register as an agent of Turkey. The truth, as shown conclusively by the evidence the government now seeks to exclude, is far more benign and completely exculpatory.

The evidence will show that Mr. Rafiekian (a) fully expected and intended to file under FARA, and (b) sought the assistance of counsel for the specific purpose of completing

1

registration under FARA, but (c) was advised by his attorney that FARA registration was not required. As described in the declaration of Robert Kelly, in September 2016, several weeks after FIG began its work, Mr. Rafiekian contacted Mr. Kelley *for the specific purpose of registering under FARA*. The declaration describes Mr. Rafiekian's exact words: "*We have to register with FARA at the Justice Department*." Mr. Kelley then advised Mr. Rafiekian it was not necessary to register under FARA and that FIG should instead register under the Lobbying Disclosure Act ("LDA"). Mr. Kelley will surely testify at trial in a manner consistent with his sworn declaration.

The importance of this evidence cannot be overstated. With this evidence, a jury could—indeed, should—conclude that FIG's failure to register with the Attorney General was *not* the object of a conspiracy, but rather the result of Mr. Rafiekian's conversations with counsel, and that none of the alleged co-conspirators played any role in this decision. There was no agreement and no conspiracy with the Foreign Government. Instead, Mr. Rafiekian did not register with the Attorney General for the simple reason that his lawyer advised him that registration under the LDA was the proper course of action. This evidence alone is more than sufficient to allow the jury to acquit Mr. Rafiekian on the conspiracy charge. The evidence is independently relevant for two additional reasons: it goes directly to whether the government can prove that Mr. Rafiekian "knowingly" failed to register with the Attorney General, as well as to Mr. Rafiekian's potential fact-bound "advice of counsel" defense. For these reasons, the evidence easily meets the "low barrier" of relevance under Federal Rule of Evidence 401. The government's motion should be denied, and Mr. Rafiekian should be permitted to introduce this evidence at trial.

## BACKGROUND

I.  **THE INDICTMENT**

Count One of the Indictment charges a conspiracy in violation of 18 U.S.C. § 371 to (a) knowingly act as an agent of the government of Turkey without giving notice under 18 U.S.C. § 951 ("Count One-(a)"), and (b) to willfully make a false statement of a material fact in a filing pursuant to the Foreign Agents Registration Act, 22 U.S.C. § 611 et seq. ("Count One-(b)"). Count Two alleges that Mr. Rafiekian acted as an agent for the government of Turkey without giving notice under 18 U.S.C. § 951.

The charges against Mr. Rafiekian center on work performed by Flynn International Group ("FIG") relating to Turkey. FIG was directly engaged for this work by Inovo, BV ("Inovo") (Indictment ¶ 22). Inovo was a private company owned by co-defendant Altepkin, a private citizen and Turkish national. The government maintains that the engagement was in fact directed and controlled by the government of Turkey (*e.g.*, Indictment ¶¶ 39-40).

Under the government's theory, FIG was required to register or give notice under either (1) 18 U.S.C. § 951, which makes it a crime to "act[] in the United States as an agent of a foreign government without prior notification to the Attorney General," or (2) the Foreign Registration Agents Registration Act ("FARA"), 22 U.S.C. § 612, which states that "[n]o person shall act as an agent of a foreign principal unless he has filed with the Attorney General" a registration statement under that section. Registration under FARA satisfies the notice requirements of 18 U.S.C. § 951. 28 C.F.R. § 73.3 ("Notification under 18 U.S.C. § 951 shall be effective only if it has been done in compliance with this section, *or if the agent has filed a registration under the Foreign Agents Registration Act . . . .*" (emphasis added)). Thus, although Mr. Rafiekian has been charged under Section 951, not under 22 U.S.C. § 618 (FARA), there can be no dispute that

3

if FIG had registered under FARA in September 2016, Mr. Rafiekian would not be facing criminal charges under Count One-(a) and Count Two.

## II. EVIDENCE RELATING TO THE LDA AND MR. RAFIEKIAN'S CONSULTATIONS WITH COUNSEL

The evidence at trial will show that Mr. Rafiekian, acting on behalf of FIG and on the advice of counsel, decided to register under a third statute, the Lobbying Disclosure Act ("LDA"), instead of either 18 U.S.C. § 951 or 22 U.S.C. § 611 (FARA). The government has possessed this information since before it issued the indictment, and it now seeks to exclude this evidence through the present motion in limine.

The facts are clear. In September 2016, Mr. Rafiekian approached an attorney, Robert Kelley, to seek legal counsel regarding registration under FARA in connection with FIG's work for Inovo. Kelley advised Mr. Rafiekian and FIG to file under the LDA rather than FARA. This legal advice is clearly set forth in a declaration prepared by Mr. Kelley in October 2017 ("Kelley Declaration"):

> Bijan called me up last year and said that his company had to register with FARA, the Foreign Agents Registration Act. At this time, I was not affiliated with FIG, Flynn Intel Group. ***It is important to note that I remember he said: "We have to register with FARA at the Justice Department."*** FARA is an Act, the Foreign Agents Registration Act, but it's administered by the National Security Division of the Department of Justice. You just register online. ***Bijan asked me to come out to his house to assist with the registration.***
>
> A few days later, on a Sunday afternoon, I went to Bijan's house. It was in September of 2016. While there, I said to Bijan: "Is this a foreign government or a foreign political party?" Bijan replied, "No, it's a foreign private company." ***I said: "Well, you don't have to register at FARA if it's a foreign private company."*** I asked Bijan if they were going to do any lobbying. Bijan told me that they might. ***I then said: "You can register with the U.S. Congress under the LDA which is the Lobby Disclosure Act."*** I also showed him the Federal Register that says it is not necessary for a private company to register with FARA. I did not ask any additional questions nor did I see the contract. I only asked if it was a private company.

Later that same week, I registered the company under the LDA." Ex. A, Kelley Decl. ¶¶ 7-9. The Declaration was prepared with the assistance of a seasoned investigator for the specific purpose of sharing with the government in connection with its investigation of Michael Flynn and Mr. Rafiekian.

As the Declaration makes clear, and as Mr. Kelley will surely testify at trial, Mr. Rafiekian fully intended to file under FARA. Indeed, Mr. Rafiekian invited Mr. Kelley to meet at his home for the specific purpose of addressing the FARA registration. As evidenced by his declaration, Mr. Kelley's testimony will establish other important facts as well. These include the fact that (1) the decision to file under the LDA was made by Mr. Kelley and Mr. Rafiekian alone, with no involvement from any of the alleged co-conspirators, and (2) Mr. Kelley completed the LDA filing less than a week after his conversation with Mr. Rafiekian— dramatically shortening the time in which any conspiracy could have been formed.

As discussed below, the evidence the government seeks to exclude is substantial and quite possibly exculpatory evidence supporting Mr. Rafiekian's innocence, and Mr. Rafiekian should be allowed to present it at trial.

## ARGUMENT

### I. EVIDENCE RELATING TO THE LDA AND MR. RAFIEKIAN'S CONSULTATIONS WITH COUNSEL IS PROBATIVE OF HIS INNOCENCE

#### A. Legal Standard

"Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. Relevance is a "low barrier requiring only that evidence be worth consideration by the jury." *Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 349 (4th Cir. 2014)

(citation and internal quotation marks omitted); *accord United States v. Recio*, 884 F.3d 230, 235 (4th Cir. 2018) ("The threshold for determining whether evidence is relevant is comparatively low.") (citation and internal quotation marks omitted); *United States v. Smallwood*, 306 F. Supp. 2d 582, 586 (E.D. Va. 2004) (holding that to be relevant, evidence need only "have a plus value") (citation and internal quotation marks omitted). In determining whether evidence is relevant, the district court "may not consider the weight or sufficiency of the evidence. Its consideration should be limited to whether the evidence has any tendency to support a consequential fact." *United States v. Fulcher*, 188 F. Supp. 2d 627, 634 (W.D. Va. 2002) (citing 2 Weinstein's Federal Evidence, 2d ed., § 401.06, at 401-403 (Bender 2001).

### B. The Evidence is Relevant to Refute the Government's Conspiracy Allegation

Evidence that Mr. Rafiekian consulted with counsel and expected and intended to file under FARA—only to be told by his attorney that it was unnecessary—is powerfully exculpatory and directly contradicts the government's core theory of the case. It is plainly worth the jury's consideration and more than meets the "low barrier" of relevance required by the Federal Rules.

Mr. Rafiekian's consultations with counsel and efforts to comply with the law are broadly relevant to disprove the existence of the conspiracy alleged by the government. As a preliminary matter, a "[c]onspiracy is a specific intent crime" requiring the government to prove that Mr. Rafiekian entered into an agreement with "the specific intent to violate the substantive statute." *United States v. Johnson*, 149 F. Supp. 3d 678, 685 (E.D. Va. 2016) (quoting *United States v. DiTommaso*, 817 F.2d 201, 218 (2d Cir. 1987)). The government thus must prove that Mr. Rafiekian entered into the scheme with the "specific intent to aid in the accomplishment of th[e] unlawful ends" of the conspiracy. *Id.* (quoting *United States v. Svoboda*, 347 F.3d 471, 477 (2d Cir. 2003). What Mr. Rafiekian's lawyer told him about his FARA filing obligations is plainly

6

relevant to whether he entered into a conspiracy with the specific intent to act as an unregistered foreign agent.

Beyond that, the government does not claim that Mr. Rafiekian's failure to register as a foreign agent was merely accidental. Rather, the government posits a vast criminal conspiracy involving not only Mr. Alptekin but also various high-level members of the Foreign Government, whose goal was to "to conceal the fact that the government of Turkey was funding" FIG's work.[1] ECF No. 125 at 2. In the government's view, one of the ways in which the conspirators tried to conceal Turkey's role was by registering under the LDA rather than giving notice under Section 951 or registering under FARA. If Mr. Kelley testifies at trial consistent with his Declaration, the government's theory will be shown to be false. Mr. Rafiekian filed under the LDA not because he wanted to hide some purported involvement by the government of Turkey, but because he was following the advice given him by the company's lawyer. Indeed, if the government's theory were true, Mr. Rafiekian never would have approached Mr. Kelley about compliance with FARA. Moreover, he would never have told Mr. Kelley that "we *have to* register with FARA." The conversation as recounted by Mr. Kelley cannot coexist with a conspiracy to avoid filing under Section 951 or FARA.

The fact that it was Mr. Kelley that advised Mr. Rafiekian not to file under FARA undermines the government's case for another reason: If Mr. Kelley's statement is true, then there was no time for a conspiracy to be hatched. That is, there could be no conspiracy *before* Mr. Rafiekian's consultation with Mr. Kelley because before that time Mr. Rafiekian intended to file under FARA. Thus, to prove a conspiracy, the government must prove an agreement was

---

[1] As Mr. Rafiekian has argued elsewhere, the government has yet to proffer any actual evidence—or even a non-conclusory allegation—that the government of Turkey funded this project.

reached *between the time Mr. Rafiekian consulted with Mr. Kelley and the time Mr. Kelley filed the LDA registration less than a week later*. The government has proffered no evidence in this case to suggest that anyone other than Mr. Rafiekian and Mr. Kelley were involved in the decision to file under the LDA rather than Section 951 or FARA. Further, the government certainly has proffered no evidence that Mr. Alptekin or any member of the Foreign Government was involved in this decision at any time, let alone during that one-week period between the legal consultation and the filing with FARA. In sum, Mr. Kelley's testimony will show that the decision to file under the LDA was made by Mr. Rafiekian and Mr. Kelley alone, with no involvement from Mr. Alptekin or any of the alleged Foreign Government co-conspirators.

### C. The Evidence is Relevant to Show that Mr. Rafiekian Never "Knowingly" Failed to Notify the Attorney General

As the government itself concedes, "courts have permitted defendants to introduce evidence of their interactions with attorneys to show that they lacked the *mens rea* required for conviction," regardless of whether the facts would support a jury instruction on the advice of counsel defense. Mot. 4 (citing *United States v. United Med. & Surgical Supply Corp.*, 989 F.2d 1390, 1403 (4th Cir. 1993)). Good faith reliance on advice of counsel is "one factor a jury may consider when determining [the defendant's] state of mind." *United Med.*, 989 F.2d at 1403; *see also Linden v. United States*, 254 F.2d 560, 568 (4th Cir. 1958) ("That the defendants proceeded under advice of a lawyer is a fact to be considered together with other facts in determining the question of the defendants' good faith.").

While Section 951 does not state a *mens rea* requirement, courts have held that a defendant must at least act "knowingly" to be guilty of the crime. *See United States v. Duran*, 596 F.3d 1283, 1292 (11th Cir. 2010). Thus, the government must prove that Mr. Rafiekian (i)

8

*knowingly* acted as an agent of a foreign government and (ii) *knowingly* failed to notify the Attorney General.  *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994) ("[T]he presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct.").  Mr. Rafiekian's interactions with Mr. Kelley are powerful—and most certainly "relevant"—facts that tend to negate the government's contention that Mr. Rafiekian *knowingly* committed the acts for which he has been charged.

First, they are relevant to whether he *knowingly did not give notice* to the Attorney General.  As the government acknowledges, it must prove that Mr. Rafiekian "must have known that [he] had not provided prior notification to the Attorney General."  Mot. 6 (citing *United States v. Duran*, 596 F.3d 1283, 1292 (11th Cir. 2010)).  The evidence will show that Mr. Rafiekian knew FIG needed to give notice under *some* statute, but that he was not familiar with the technical compliance requirements regarding what exactly needed to be filed and who exactly needed to be notified.  Thus, Mr. Rafiekian approached his counsel specifically to register under FARA but was advised to register under the LDA instead.  Given those circumstances, Mr. Rafiekian could reasonably have believed that while the statute had changed, the LDA registration would still give appropriate notice to the Attorney General—and thus he did not *knowingly* fail to give notice.  This is confirmed by FARA itself, which *specifically exempts* from registration any foreign agent engaged in lobbying activities who has registered under the LDA.  *See* 22 U.S.C. § 613(h) (FARA registration inapplicable where "the agent has engaged in lobbying activities and has registered under the [LDA] in connection with the agent's representation of such person or entity").

Second, Mr. Rafiekian's consultations with counsel are relevant to whether he knowingly acted as "agent of a foreign government."  It is undisputed that FIG contracted directly with

9

Inovo, not the Turkish government. It is likewise undisputed that Mr. Alptekin, a private citizen who was not a member of the Turkish government, was FIG's primary point of contact. Mr. Rafiekian truthfully conveyed to Mr. Kelley that the client was "a foreign private company" rather than a "foreign government or a political party." Mr. Kelley told Mr. Rafiekian in response that "you don't have to register at FARA if it's a foreign private company." Based solely on this simple exchange with FIG's lawyer, Mr. Rafiekian could have reasonably believed that FIG was not acting as an agent of a foreign government.

### D. The Evidence is Relevant to a Potential Advice-Of-Counsel Defense

In seeking to exclude this evidence from trial, the Government focuses myopically on the formal requirements of an "advice of counsel" defense, and argues that 18 U.S.C. § 951 is not a "specific intent" crime. Mot. 5-6. This argument is simply mistaken: conspiracy *is* a specific intent crime. *See United States v. Johnson*, 149 F. Supp. 3d 678 ("[T[o prove conspiracy, the fundamental legal question is . . . whether the evidences establishes beyond a reasonable doubt that a particular defendant entered into an agreement with others with knowledge of the criminal purpose of the scheme and with the ***specific intent*** to aid in the accomplishment of those unlawful acts.").

In any event, whether an instruction on the advice of counsel defense will or will not be given to the jury is an issue for the charging conference, to take place *after* the Court has heard the evidence and ruled on its admissibility. To be entitled to a jury instruction on the advice of counsel, a defendant must establish "(a) full disclosure of all pertinent facts to an [attorney], and (b) good faith reliance on the [attorney's] advice." *United States v. Powell*, 680 F.3d 350, 356 (4th Cir. 2012) (alterations in original). The government does not claim these elements have not been met, and trial testimony from Mr. Kelley, among others, will be required to establish the

factual basis for the defense. It is not an appropriate issue for resolution on a motion in limine—the present motion is a Hail Mary to keep out the testimony of Kelley, which significantly undermines the government's case.

The government's "specific intent" argument is also red herring and misses the mark completely. In fact, *none* of the decisions cited by the government resulted in exclusion of evidence pertaining to consultations with counsel. Moreover, Mr. Rafiekian *is not* arguing that he should be acquitted because he was ignorant of the law; rather, as discussed above, evidence relating to Mr. Rafiekian's consultations with counsel is highly relevant to refuting the existence of a conspiracy, among other things.[2]

### E. The Government's Motion to Exclude Evidence Relating to the LDA Should be Denied

The government's additional request to exclude all evidence relating to the LDA filing (Mot. 8) should also be denied for the same reasons as above. The LDA filing is integral to the exculpatory facts surrounding Mr. Rafiekian's conversations with Mr. Kelley. The government's suggestion that "there is no allegation in the indictment that mentions the defendant's or [FIG's] failure to register under FARA" is disingenuous. To the contrary, that is the entire thrust of the government's theory of Count One-(a) and Count Two. The government asserts that FIG should have (but did not) file under FARA. Although the government has charged Mr. Rafiekian under

---

[2] Many of these cases did not involve evidence of advice of counsel at all. *United States v. Duran*, 596 F.3d 1283, 1291 (11th Cir. 2010); *United States v. Ducore*, 312 F. Supp. 3d 535, 537 (E.D. Va. 2018); *United States v. Campa*, 529 F.3d 980, 999 (11th Cir. 2008); *United States v. Dumeisi*, 424 F.3d 566, 581 (7th Cir. 2005). At issue in *United States v. Polytarides* were proposed jury instructions regarding the advice of counsel defense, which the court considered *only after evidence pertaining to advice of counsel had been admitted*. 584 F.2d 1350 (1978). Likewise, the court in *United States v. Custer Channel Wing Corp.* did not hold that evidence pertaining to advice of counsel was inadmissible, but merely held that the defense did not apply to the facts of that case because the defendant did not follow counsel's advice. 376 F.2d 675, 682 (4th Cir. 1967). And in *Stevens*, the court denied a motion to preclude an advice of counsel defense and did not address whether evidence relating to consultation with counsel could be relevant outside the confines of a formal advice of counsel defense. *United States v. Stevens*, 771 F. Supp. 2d 556, 560 (D. Md. 2011).

18 U.S.C. § 951 rather than under FARA, this charging decision ignores the fact that registration under FARA serves as the requisite notice to the Attorney General under 18 U.S.C. § 951, *see* 28 C.F.R. § 73.3—and that LDA registration can satisfy FARA requirements as well. *See* 22 U.S.C. § 613(h).

## II.   THE COURT SHOULD DEFER A DECISION ON THE ADMISSIBILITY OF THE DECLARATION UNTIL TRIAL

It is premature for the Court to be asked to determine the admissibility of Mr. Kelley's Declaration. Admissibility will depend on a number of factors that cannot be known until Mr. Kelley actually appears and testifies. At that time, the Court and the parties will have the opportunity to determine whether the Declaration meets the criteria for well-recognized hearsay exclusions and exceptions. In particular, if Mr. Kelley does not appear at trial, or if he appears at trial but does not testify consistently with his Declaration or does not remember the pertinent events, there will be ample basis under the Rules of Evidence to seek admission of the Declaration.

First, depending on the events at trial, the statement may not be hearsay at all because it qualifies as a declarant-witness's prior statement under Rule 801(d)(1). That rule provides:

> (d) **Statements That Are Not Hearsay**. A statement that meets the following conditions is not hearsay:
>
> > (1) **A Declarant-Witness's Prior Statement**. The declarant testifies and is subject to cross-examination about a prior statement, and the statement:
> >
> > > (A) is inconsistent with the declarant's testimony and was given under penalty of perjury at a trial, hearing, or other proceeding or in a deposition;
> > >
> > > (B) is consistent with the declarant's testimony and is offered:
> > >
> > > > (i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or

>> (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground; or

> (C) identifies a person as someone the declarant perceived earlier.

Fed. R. Evid. 801(d)(1).

If Mr. Kelley gives testimony at trial that is inconsistent with his Declaration, then the Declaration would meet the requirements of Rule 801(d)(1)(A) because it was (a) made under penalty of perjury and (b) provided to the government in connection with the government's criminal proceedings against Mr. Rafiekian. *See United States v. Scruggs*, 356 F.3d 539, 547 n.4 (4th Cir. 2004) (holding that witness's prior sworn statement of facts was admissible under Rule 801(d)(1)(A) where the witness testified inconsistently with the sworn statement at trial). Alternatively, if the government attacks Mr. Kelley's trial testimony, then the Declaration would be admissible under Rule 801(d)(1)(B). *See United States v. Allen*, 69 F. App'x 602, 604 (4th Cir. 2003) (holding that statement of facts contained in witness's plea agreement was properly admitted under Rule 801(d)(1)(B) to rehabilitate witness's credibility); *United States v. Casoni*, 950 F.2d 893, 902-06 (3rd Cir. 1991) (holding that attorney proffer and underlying notes were admissible under Rule 801(d)(1)(B)); *Whitlock v. Brueggemann*, 682, F.3d 567, 575-76 (7th Cir. 2012) (holding that witness's signed and sworn affidavit to State Attorney was admissible under Rule 801(d)(1)(B)).

Second, depending on the events at trial, the Declaration may qualify as a recorded recollection. A recorded recollection is "[a] record that (A) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately; (B) was made or adopted by the witness when the matter was fresh in the witness's memory; and (C) accurately reflects the witness's knowledge." Fed. R. Evid. 803(5). Given the level of detail contained in the

Declaration, Mr. Kelley would surely testify that the document was written when the relevant events were fresh in his memory. Given that Mr. Kelley signed the declaration under penalty of perjury, he would surely agree that the Declaration accurately reflected his knowledge. Thus, if Mr. Kelley's memory at trial falters, the requirements of Rule 803(5) would be met and the Declaration would be admissible.

Third, the declaration may fall within the residual hearsay exception of Rule 807. That rule provides:

> (a) **In General**. Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804:
>
> > (1) the statement has equivalent circumstantial guarantees of trustworthiness;
> >
> > (2) it is offered as evidence of a material fact;
> >
> > (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
> >
> > (4) admitting it will best serve the purposes of these rules and the interests of justice.

Fed. R. Evid. 807(a).

The Declaration was made under oath in connection with a federal criminal proceeding and therefore has significant guarantees of trustworthiness. The trustworthiness of the statements will be further bolstered by Mr. Kelley's testimony at trial, who will testify that he gave similar statements to multiple people at multiple times, and that the declaration was drafted with the assistance of an experienced investigator. Its trustworthiness will also be bolstered by other evidence at trial that corroborates the statements made in the Declaration. The Declaration would support the material facts discussed in Part I above that disprove the alleged conspiracy at issue in Count One-(a). Depending on the content of Mr. Kelley's trial testimony and the state of

his memory, the Declaration may also prove more probative than any other evidence that can be obtained on those facts. And given the probative value of the evidence, its trustworthiness, and its tendency to prove Mr. Rafiekian's innocence, admitting the Declaration into evidence would serve the purpose of the Federal Rules of Evidence and the interests of justice. *See United States v. Clarke*, 2 F.3d 81, 83 (4th Cir. 1993) (holding that defendant's prior testimony was admissible under residual hearsay exception (formerly Rule 804(b)(5)) because, among other things, it was made voluntarily under oath and contemporaneously recorded); *United States v. Dunford*, 148 F.3d 385, 393 (4th Cir. 1998) (holding that witnesses' prior statements were admissible under residual hearsay exception (formerly Rule 803(24) because the statements were repeated at different times to different people, were made to government investigators under serious circumstances, and were corroborated by other evidence at trial); *United States v. Ellis*, 951 F.2d 580, 583 (4th Cir. 1991) (holding that statements were properly admitted under residual hearsay exception where they were made voluntarily to government agents under circumstances that required the declarant to be truthful).

Much of this analysis, however, depends on whether Mr. Kelley will testify at trial and the state of his memory of key events. For this reason, the Court should defer ruling on the admissibility of the Declaration until the issue is presented at trial.

## CONCLUSION

For the foregoing reasons, Mr. Rafiekian respectfully requests that the Court deny the Government's Motion in Limine to Preclude Defendant from Presenting Evidence or Argument on Advice of Counsel or the Lobbying Disclosure Act.

Dated: May 28, 2019

Respectfully submitted,

*/s/*

James E. Tysse (VA Bar # 73490)
Mark J. MacDougall (*Pro Hac Vice*)
Stacey H. Mitchell (*Pro Hac Vice*)
John C. Murphy (*Pro Hac Vice*)
Adam A. Bereston (*Pro Hac Vice*)
Samantha J. Block (*Pro Hac Vice*)
*Counsel for Bijan Rafiekian*
Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
Telephone:  (202) 887-4000
Fax:  (202) 887-4288
E-mail:   mmacdougall@akingump.com
              shmitchell@akingump.com

*/s/*

Robert P. Trout (VA Bar # 13642)
*Counsel for Bijan Rafiekian*
Trout Cacheris & Solomon PLLC
1627 Eye Street, NW
Suite 1130
Washington, DC 20006
Telephone:  (202) 464-3311
Fax:  (202) 463-3319
E-mail:   rtrout@troutcahceris.com

**CERTIFICATE OF SERVICE**

      I hereby certify that, on the 28th day of May 2019, true and genuine copies of Defendant's Opposition to the Government's Motion in Limine to Preclude Defendant from Presenting Evidence or Argument on Advice of Counsel or the Lobbying Disclosure Act was sent via electronic mail by the Court's CM/ECF system to the following:

    James P. Gillis
    John T. Gibbs
    Evan N. Turgeon
    U.S. Attorney's Office (Alexandria-NA)
    2100 Jamieson Avenue
    Alexandria, VA 22314
    Telephone:  (703) 299-3700
    Email:  james.p.gillis@usdoj.gov
           john.gibbs@usdoj.gov
           evan.turgeon@usdoj.gov

                                                */s/*_____
                                              Robert P. Trout (VA Bar # 13642)