# EXHIBIT H

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**     :
    :
        **Plaintiff,**     :  Criminal Action
    :  No. 17-232
**v.**     :
    :
**MICHAEL FLYNN,**     :  December 18, 2018
    :  11:00 a.m.
    :
    :
        **Defendant.**     :  Washington, D.C.
    :
.............................. :

**TRANSCRIPT OF SENTENCING PROCEEDINGS
BEFORE THE HONORABLE EMMET G. SULLIVAN,
UNITED STATES DISTRICT COURT JUDGE**

APPEARANCES:

  For the United States:     **Brandon Lang Van Grack, Assistant U.S. Attorney**
U.S. DEPARTMENT OF JUSTICE
Special Counsel's Office
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 616-0800
Email: Bvg@usdoj.gov

                                 **Zainab Naeem Ahmad, Assistant U.S. Attorney**
U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue NW
Room B-103
Washington, DC 20530
(202) 616-0800
Email: Zna@usdoj.gov

2

```
APPEARANCES:  Cont.

For the Defendant:          Robert K. Kelner, Esq.
                            COVINGTON & BURLING LLP
                            850 Tenth Street, NW
                            One City Center
                            Washington, DC 20001
                            (202) 662-5503
                            Fax: (202) 778-5503
                            Email: Rkelner@cov.com

                            Stephen Pierce Anthony, Esq.
                            COVINGTON & BURLING LLP
                            850 Tenth Street, NW
                            One City Center
                            Washington, DC 20001
                            (202) 662-5105
                            Fax: (202) 778-5105
                            Email: Santhony@cov.com

For the U.S. Probation      Kelly Kraemer-Soares, Probation
Department:                 Officer

                            Renee Moses-Gregory, Probation
                            Officer

Court Reporter:             Scott L. Wallace, RDR, CRR
                            Official Court Reporter
                            Room 6503, U.S. Courthouse
                            Washington, D.C. 20001
                            202.354.3196
                            scottlyn01@aol.com


Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.
```

1                    <u>**MORNING SESSION, DECEMBER 18, 2018**</u>

2    (11:16 a.m.)

3          THE COURT:  Good morning.

4          THE COURTROOM CLERK:  Good morning, Your Honor.

5          THE COURT:  Good morning.

6          THE COURTROOM CLERK:  Your Honor, this is criminal case

7    17-232, *United States of America versus Michael Flynn*.

8          Will all parties please come forward to this lectern and

9    identify yourselves for the record.

10         MR. VAN GRACK:  Good morning, Your Honor.  Brandon Van

11   Grack on behalf of the United States, and with me at counsel's

12   table is Zainab Ahmed and William McCausland from the FBI.

13         THE COURT:  Good morning, Counsel.

14         MS. AHMAD:  Good morning, Your Honor.

15         MR. KELNER:  Good morning, Your Honor.  Robert Kelner with

16   Covington & Burling for the defendant, Michael Flynn, and with me

17   at counsel table is Stephen Anthony.

18         THE COURT:  All right.  Good morning, Counsel.  Mr. Flynn,

19   good morning.  How are you?

20         THE DEFENDANT:  Good.

21         THE COURT:  From the Probation Department?

22         MS. KRAEMER-SOARES:  Good morning, Your Honor.  Kelly

23   Kraemer-Soares and Renee Moses-Gregory on behalf of U.S.

24   Probation.

25         THE COURT:  All right.  Good morning to you both.  The

1   case is in a very unique posture.  As everyone knows, I was not

2   the judge who took the plea of guilty from Mr. Flynn, so before I

3   focus on sentencing issues, I need to focus on some other issues.

4   I want to say a couple of things before I get to those issues.  I

5   read every filing very carefully in this case.  There's a great

6   deal of nonpublic information in this case, and I'll just leave

7   it at that.

8         If any of my questions require a party to disclose

9   nonpublic information, or if I begin to discuss something

10  nonpublic, don't be shy in telling me.  My clerks over the years

11  have learned to do this (indicating) if I get off of script or if

12  I get into areas where -- I won't get offended if you do it.  I

13  may not see you, so stand up and raise your hands or say

14  something, please.  I don't want to unintentionally say something

15  that should not be revealed on the public docket.

16        There's a new document that was filed at 10:19 this

17  morning.  The government filed a sealed motion alerting the Court

18  that it inadvertently omitted one document from the government's

19  in-camera production.

20        The Court understands that the defendant received this

21  document from the government on November the 8th of this year.

22  The Court received and read the document before I came on the

23  bench.  Does the defendant have any concerns about this

24  inadvertent omission before this hearing proceeds or otherwise

25  any objections?

1            MR. KELNER:  No, Your Honor.

2            THE COURT:  All right.  I want to focus on the plea first

3    because I think I need to.  And there are some questions that I'm

4    going to ask Mr. Flynn, and because this is an extension, in my

5    opinion, of the plea colloquy, I'm going to ask the courtroom

6    deputy at that time to administer the oath, because normally when

7    we have plea colloquies, we always require a defendant to be

8    under oath, and that's what I'm going to do this morning, unless

9    there are objections.

10           MR. KELNER:  No objection, Your Honor.

11           THE COURT:  All right.  And in Mr. Flynn's Memorandum in

12   Aid of Sentencing he states he, quote, does not take issue with

13   the description of the nature and circumstances of the offense

14   contained in the government's sentencing memorandum and the

15   presentence investigation report, end quote.  He also states that

16   he has, quote, frankly acknowledged, end quote, that, quote, his

17   actions were wrong and he accepted full responsibility for them,

18   end quote.

19           At the same time, however, Mr. Flynn focuses much of his

20   memorandum on certain, quote, additional facts, end quote,

21   regarding the circumstances surrounding the January 24, 2017 FBI

22   interview at which Mr. Flynn admittedly lied about several topics

23   to the FBI agents.

24           Mr. Flynn contends that such additional facts, quote,

25   warrant the Court's consideration as it evaluates the seriousness

1    of the offense relative to the circumstances of witness

2    interviews and typical cases charged under 18 U.S. Code Section

3    1001, end quote.

4        Mr. Flynn highlights the fact that former Deputy FBI

5    Director Andrew McCabe explained that the, quote, quickest, end

6    quote, way, to conduct the interview would be without involving

7    the White House counsel's office.

8        Mr. Flynn then agreed to meet the agents without any

9    additional participants.

10       Mr. Flynn also highlights that the FBI agents

11   intentionally decided not to warn him that lying to the FBI was a

12   crime to ensure that Mr. Flynn would be relaxed.

13       At the interview, Mr. Flynn was relaxed and unguarded.  He

14   implies that he was unguarded because he did not receive a

15   warning and was not represented by counsel.

16       In his sentencing memorandum, Mr. Flynn cited a January

17   24, 2017 FBI memorandum and an August commonly referred to as a

18   302, and an August 22nd -- strike that.  I misspoke.  It's the

19   memorandum -- and an August 22nd, 2017 FD-302 without providing

20   copies to the Court.

21       Mr. Flynn did not cite or quote the FD-302 prepared

22   immediately after his interview.  These documents were not

23   otherwise in the record.  The Court then ordered the defendant to

24   produce the cited material and ordered the government to produce

25   any other memoranda or FD-302 relevant to Mr. Flynn's FBI

1   interview.

2         After reviewing the produced material, the Court concluded

3   that the FD-302 prepared immediately after Mr. Flynn's interview

4   was relevant to sentencing and thus ordered the government to

5   file a redacted version on the public docket.

6         The Court takes its responsibility here today, as always,

7   very seriously.

8         Mr. Flynn's briefing concerned the Court, as he raised

9   issues that may affect or call into question his guilty plea,

10  and, at the very least, maybe his acceptance of responsibility.

11        As such, the Court concludes that it must now first ask

12  Mr. Flynn certain questions to ensure that he entered his guilty

13  plea knowingly, voluntarily, intelligently, and with fulsome and

14  satisfactory advice of counsel.

15        I cannot recall any incident in which the Court has ever

16  accepted a plea of guilty from someone who maintained that he was

17  not guilty, and I don't intend to start today.  So I'm going to

18  invite Mr. Flynn and his attorney or attorneys to come to the

19  podium, and I'm going to ask the courtroom deputy to administer

20  the oath to Mr. Flynn.

21        (MICHAEL FLYNN, DEFENDANT IN THE CASE, SWORN)

22        THE COURT:  All right.  And I will inform you, sir, that

23  any false answers will get you in more trouble.  Do you

24  understand that?

25        THE DEFENDANT:  Yes.

1        THE COURT:  You have to keep your voice up.  If you don't

2  understand my question, please tell me and I'll rephrase it.

3        Most importantly, you may consult with your attorney

4  privately before answering my questions or at any point in time.

5  Should you want the opportunity to attempt to withdraw your plea,

6  I will afford you that opportunity.  Do you understand that?

7        THE DEFENDANT:  Yes, Your Honor.

8        THE COURT:  Do you wish to challenge the circumstances on

9  which you were interviewed by the FBI?

10        THE DEFENDANT:  No, Your Honor.

11        THE COURT:  Do you understand that by maintaining your

12  guilty plea and continuing with sentencing, you will give up your

13  right forever to challenge the circumstances under which you were

14  interviewed?

15        THE DEFENDANT:  Yes, Your Honor.

16        THE COURT:  Do you have any concerns that you entered your

17  guilty plea before you or your attorneys were able to review

18  information that could have been helpful to your defense?

19        THE DEFENDANT:  No, Your Honor.

20        THE COURT:  At the time of your January 24th, 2017

21  interview with the FBI, were you not aware that lying to FBI

22  investigators was a federal crime?

23        THE DEFENDANT:  I was not -- I was aware.

24        THE COURT:  You were aware?

25        THE DEFENDANT:  Yeah.

1          THE COURT:  Your sentencing memorandum also states that

2     you pled guilty before certain, quote, revelations that certain

3     FBI officials involved in the January the 24th interview were

4     themselves being investigated for misconduct, end quote.  Do you

5     seek an opportunity to withdraw your plea in light of those

6     revelations?

7          THE DEFENDANT:  I do not, Your Honor.

8          THE COURT:  All right.  Now, again, at any time -- I

9     should have said this before I started asking questions, but

10     knowing what I was going to do, to have this colloquy with you,

11     I've made arrangements for a private room for you and your

12     attorneys to talk about any of these questions and your answers.

13     So, even though I've taken a number of answers from you, if you

14     want -- if you want that opportunity to speak privately with your

15     attorneys, then I'll certainly afford you that opportunity as

16     well.  Would you like to do that?

17          THE DEFENDANT:  No, Your Honor.

18          THE COURT:  All right.  Are you satisfied with the

19     services provided by your attorneys?

20          THE DEFENDANT:  I am.

21          THE COURT:  In certain special circumstances, I have over

22     the years appointed an independent attorney to speak with a

23     defendant, review the defendant's file, and conduct necessary

24     research to render a second opinion for a defendant.  Do you want

25     the Court to consider appointing an independent attorney for you

1    in this case to give you a second opinion?

2         THE DEFENDANT:  I do not, Your Honor.

3         THE COURT:  Do you feel that you were competent and

4    capable of entering into a guilty plea when you pled guilty on

5    December 1st, 2017?

6         THE DEFENDANT:  I do, Your Honor.

7         THE COURT:  Do you understand the nature of the charges

8    against you and the consequences of pleading guilty?

9         THE DEFENDANT:  I do understand, Your Honor.

10         THE COURT:  And that was covered extensively by Judge

11    Contreras.  I've read the transcript.

12         Are you continuing to accept responsibility for your false

13    statements?

14         THE DEFENDANT:  I am, Your Honor.

15         THE COURT:  Do you still want to plead guilty, or do you

16    want me to postpone this matter, give you a chance to speak with

17    your attorneys further, either in the courtroom or privately at

18    their office or elsewhere, and pick another day for a status

19    conference?  And I'm happy to do that.

20         THE DEFENDANT:  I appreciate that, but no, Your Honor.

21         THE COURT:  All right.  For your attorneys:  Do you have

22    any concerns that potential *Brady* material or other relevant

23    material was not provided to you?

24         MR. KELNER:  No, Your Honor.

25         THE COURT:  All right.  Do you contend that Mr. Flynn is

1   entitled to any additional information that has not been provided

2   to you?

3        MR. KELNER:  No, Your Honor.

4        THE COURT:  Do you wish to seek any additional information

5   before moving forward to sentencing?

6        MR. KELNER:  No, Your Honor.

7        THE COURT:  Do you believe the FBI had a legal obligation

8   to warn Mr. Flynn that lying to the FBI was a federal crime?

9        MR. KELNER:  No, Your Honor.

10       THE COURT:  Is it your contention that Mr. Flynn was

11   entrapped by the FBI?

12       MR. KELNER:  No, Your Honor.

13       THE COURT:  Do you believe Mr. Flynn's rights were

14   violated by the fact that he did not have a lawyer present for

15   the interview?

16       THE DEFENDANT:  No, Your Honor.

17       THE COURT:  Do you believe his rights were violated by the

18   fact that he may have been dissuaded from having a lawyer present

19   for the interview?

20       MR. KELNER:  No, Your Honor.

21       THE COURT:  The sentencing memorandum also states that

22   Mr. Flynn pled guilty before certain, quote, revelations that

23   certain FBI officials involved in the January 24th interview

24   were, themselves, being investigated for misconduct, end quote.

25   Is it your contention that any misconduct by a member of the FBI

1    raises any degree of doubt that Mr. Flynn intentionally lied to

2    the FBI?

3         MR. KELNER:  No, Your Honor.

4         THE COURT:  The references that I've mentioned that appear

5    in your sentencing memorandum raise some concerns on the part of

6    the Court.  And my question is, how is raising those contentions

7    about the circumstances under which Mr. Flynn lied consistent

8    with acceptance of responsibility?

9         MR. KELNER:  Your Honor, the principle reason we raised

10   those points in the brief was to attempt to distinguish the two

11   cases in which the Special Counsel's investigation has resulted

12   in incarceration, the Papadopoulos and Van der Zwaan cases in

13   which the Special Counsel had pointed out as aggravating factors

14   the fact that those defendants had been warned and the fact that

15   those defendants did have counsel and lied anyway, and we felt it

16   was important to identify for the Court that those aggravating

17   circumstances do not exist in this case relevant to sentencing.

18        But General Flynn has been, I think, clear from the

19   beginning and will be clear again to you today that he fully

20   accepts responsibility, stands by his guilty plea, which was made

21   based on knowing and willful conduct.

22        We did think there was information produced in the *Brady*

23   process that Your Honor might want to see, and that was relevant

24   strictly to the question of the history and circumstances of the

25   case for sentencing purposes.

1          Those are the reasons that was included.

2          THE COURT:  All right.  But you can understand why the

3     Court has some concern after --

4          MR. KELNER:  -- I can --

5          THE COURT:  -- reading those passages in the sentencing

6     memo.

7          MR. KELNER:  We absolutely understand your concerns, Your

8     Honor, yes.

9          THE COURT:  And you're not asking for a postponement to

10    give more time to whether you wish to file a motion to attempt to

11    withdraw Mr. Flynn's plea of guilty?

12         MR. KELNER:  We have no intention and the defendant has no

13    intention to withdraw the guilty plea, and we're certainly not

14    asking Your Honor to consider that.  We're ready to proceed to

15    sentencing.

16         THE COURT:  All right.  And you don't need any further

17    time to think about it?

18         MR. KELNER:  We do not, Your Honor.

19         THE COURT:  And nothing that's been filed within the last

20    week on the docket raises any concerns on your part about any

21    aspect of Mr. Flynn's guilty plea?

22         MR. KELNER:  That's correct, Your Honor.

23         THE COURT:  The other puzzling question I have is this:

24    Can you explain for the record why Mr. Flynn was interviewed by

25    the FBI on January the 24th but the 302 cited in his sentencing

1    memorandum is dated August the 22nd, 2017?  There's no reference,

2    and the January 24th is not highlighted at all.

3         MR. KELNER:  Yes, Your Honor.  Thank you for the

4    opportunity to address that.  I think there's been some public

5    confusion about that.  The original draft of our brief cited

6    specifically to the FD-302 for the interview of Special Agent

7    Strozk and cited it specifically to the McCabe memorandum, and

8    actually originally we intended to include those documents with

9    the filing.

10        Prior to the filing, we shared a draft copy of our brief

11   with the Special Counsel's Office really for two purposes:  One

12   was to make sure that we weren't including anything covered by

13   the protective order, which they objected to our including, which

14   would, perhaps, have to be redacted or filed under seal; and the

15   other reason, frankly, was generally to understand what their

16   reaction might be to particular points in the filing.

17        After that, the Special Counsel's Office discussed it with

18   us and asked that we consider removing the Strozk 302, and the

19   McCabe memorandum from the brief and to simply cite to them.

20   Given our position as cooperating in the investigation, we

21   acceded to that.

22        We then sent them a draft of the footnotes that we would

23   use to cite to the relevant documents, and originally those

24   footnotes, as drafted by us, named the McCabe memorandum

25   specifically and named the Strozk 302 specifically so that it

1   would be clear to the reader which documents we were talking

2   about.

3          The Special Counsel's Office requested that we change

4   those citations to simply reference the memorandum and date and

5   the FD-302 and date without the names.  We acceded to that

6   request, and I would add would not have acceded to it if in any

7   way we felt it was misleading, but we respected the preferences

8   of the Special Counsel's Office.

9          THE COURT:  All right.  Any objection to what counsel

10  said?  Anything that you wish to add to that?

11         MR. VAN GRACK:  Judge, just one point of clarification.

12         THE COURT:  Sure.

13         MR. VAN GRACK:  Which is what we've represented to defense

14  counsel in terms of what to and not to include, what we indicated

15  was anything in the Strozk 302 and the McCabe memorandum that

16  they thought was relevant can and should be included in their

17  submissions.  What we asked was that they not attach the

18  documents because, as the Court is aware, there are other

19  considerations in the material there that we wanted to be

20  sensitive to.

21         THE COURT:  All right.  Thank you, Counsel.  Thank you

22  both.

23         Mr. Flynn, anything else you want to discuss with me about

24  your plea of guilty?  This is not a trick.  I'm not trying to

25  trick you.  If you want some time to withdraw your plea or try to

1    withdraw your plea, I'll give you that time.  If you want to

2    proceed because you are guilty of this offense, I will finally

3    accept your plea.

4           THE DEFENDANT:  I would like to proceed, Your Honor.

5           THE COURT:  All right.  Because you are guilty of this

6    offense?

7           THE DEFENDANT:  Yes, Your Honor.

8           THE COURT:  All right.  I am satisfied that Mr. Flynn

9    entered his guilty plea while competent and capable.  He

10   understood at that time the nature of the charges against him and

11   the consequences of pleading guilty.  Having carefully read all

12   the materials provided to the Court in this case, including those

13   materials reviewed under seal and in-camera, I conclude that

14   there was and remains to be a factual basis for Mr. Flynn's plea

15   of guilty.  As such, there's no reason to reject his guilty plea

16   and I'll, therefore, move on to the sentencing phase.

17          What I would normally do at this point, Mr. Flynn, is to

18   ask you a few questions about the pretrial -- strike that -- the

19   presentence report.  Have you had an opportunity to read the

20   presentence report?

21          THE DEFENDANT:  I have.

22          THE COURT:  Did you read it?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  Do you have any questions that you want to ask

25   me about it?

1         THE DEFENDANT:  I don't believe so.

2         THE COURT:  All right.  At some point, if you would like

3    to say something, I'll give you an opportunity.  I would not hold

4    it against you if you decided you didn't want to say anything.

5         To your attorneys, I'm going to inquire whether or not

6    there are any objections to the mathematical calculations.  This

7    is a total offense level of 4, criminal history category of 1.

8    Mr. Flynn has no prior criminal history, and the advisory, and I

9    emphasize that word, the advisory guideline range is zero months

10   to six months.  This is a five-year statutory felony.  Are there

11   any objections to the mathematical calculations, Counsel?

12        MR. KELNER:  No, Your Honor.

13        THE COURT:  All right.  And the advisory range for

14   supervised release is one year to three years.

15        I'm going to request that you gentlemen have a seat

16   because I want to, for the record -- and again, because I wasn't

17   the original judge who accepted the plea in the first instance, I

18   want to talk about the plea agreement and the facts that are

19   relevant for the Court's consideration, and you gentlemen don't

20   have to stand there in front of me while I do that, all right.

21   You can have a seat.

22        MR. KELNER:  Thank you, Your Honor.

23        THE COURT:  Sure.  Mr. Flynn agreed to plead guilty to

24   Count 1 of the information, making false statements, in violation

25   of 18 U.S. Code Section 1001.  He stated that he understood the

1    maximum sentence is five years imprisonment, three years

2    supervised release, and a $250,000 fine.

3          The parties also agreed that his Guideline calculation

4    range was zero to six months.

5          His base offense level is 4 after a two-point reduction

6    for acceptance of responsibility, and he's in a criminal history

7    category of 1, and I believe he has no prior criminal history.

8          His Guideline fine range is 500 to $9,000.  Mr. Flynn also

9    attested that he understood and agreed that the Guidelines were

10   not binding on the Court and that the Court was not obligated to

11   grant a downward departure, quote, even if the government files a

12   motion pursuant to Section 5K1.1 of the Sentencing Guidelines,

13   end quote.  And even if the parties agree that there should not

14   be -- there should be a certain sentence, the Court's not

15   obligated to accept that recommendation.

16         Mr. Flynn also agreed to cooperate with the Special

17   Counsel's Office and agreed that any refusal to cooperate will

18   constitute a breach of the plea agreement.  He further agreed

19   that a breach of the plea agreement does not constitute a basis

20   for him to withdraw his plea.

21         Special Counsel's Office agreed to file a departure motion

22   pursuant to Section 5K1.1 of the U.S. Sentencing Guidelines if it

23   determined that Mr. Flynn, quote, provided substantial assistance

24   in the investigation, end quote.

25         Relevant here, Mr. Flynn also agreed that, quote,

1    sentencing in this case may be delayed until his efforts to

2    cooperate have been completed as determined by the government so

3    that the Court will have the benefit of all relevant information

4    before a sentence is imposed, end quote.

5        With respect to the Statement of Facts, when he pleaded

6    guilty Mr. Flynn agreed to the follow facts:  He served as an

7    advisor and surrogate for the Trump Campaign and the transition

8    team.  He later served as the National Security Advisor for

9    President Trump starting on January 20th, 2017.  Mr. Flynn made

10   materially false statements and omissions during a January 24th,

11   2017 interview with the FBI.

12       At that time, the FBI had an open investigation into

13   Russia's efforts to interfere with the 2016 presidential

14   election.  As part of that investigation, the FBI investigated,

15   quote, the nature of any links, end quote, between the Trump

16   campaign and Russia, and, quote, whether there was any

17   coordination, end quote, between the two.

18       Mr. Flynn admitted that his false statements or omissions

19   impeded and had a material impact on the investigation, and when

20   I ask questions of the government, I need to know answers about

21   how he impeded the investigation and what the material impact on

22   the investigation was.

23       The Statement of Facts further describes Mr. Flynn's false

24   statements.  One, Mr. Flynn falsely stated that he did not ask

25   the Russian Ambassador Sergey Kislyak to refrain from, quote,

1   escalating the situation, end quote, in response to sanctions the

2   Obama Administration had imposed upon Russia.

3        On December the 28th, 2016, then-President Obama signed

4   Executive Order 13757 which was to take effect on December the

5   29th, 2016.  The executive order announced sanctions against

6   Russia as a response to Russia's interference in the 2016

7   presidential election.

8        On December the 28th, 2016, the ambassador contacted

9   Mr. Flynn.  The next day Mr. Flynn called a senior transition

10  official who was with other senior officials at the Mar-a-Lago

11  Resort.  They discussed the sanctions and their shared desire

12  that Russia not escalate the situation.

13       Immediately after this phone call, Mr. Flynn called the

14  ambassador, quote, and requested that Russia not escalate the

15  situation and only respond in a reciprocal manner, end quote.

16       Shortly after this conversation, Mr. Flynn spoke again

17  with the senior official to report on the call.

18       Mr. Flynn also falsely stated that he did not remember a,

19  quote, follow-up conversation, end quote, in which the ambassador

20  stated that Russia had, quote, moderated its response to those

21  sanctions as a result of Mr. Flynn's request, end quote.

22       On December 30th, 2016, President Putin announced that he

23  would not take retaliatory measures in response to the sanctions

24  imposed by then-President Obama.

25       On December 31, 2016, the ambassador called Mr. Flynn to

1    inform him that Russia had chosen not to retaliate.  After this

2    call, Mr. Flynn spoke with senior members of the transition team

3    about the conversation and Russia's decision not to escalate the

4    situation.

5         Three:  Mr. Flynn also made statements, quote, about calls

6    he made to Russia and several other countries regarding a

7    resolution submitted by Egypt to the United Nations Security

8    Council on September 21, 2016, end quote.

9         Mr. Flynn told the FBI that he had only, quote, asked the

10   country's positions on the vote and that he did not request that

11   any of the countries take any particular action on the

12   resolution, end quote.

13        On December 21, 2016, Egypt submitted a resolution to the

14   United Nations Security Council on the issue of Israeli

15   settlements.  The resolution was aimed at preventing Israeli

16   settlements and Palestinian territories.  The U.N. Security

17   Council was scheduled to vote on the resolution the next day.

18        On December the 22nd, 2016, a, quote, very senior, end

19   quote, member of the transition team directed Mr. Flynn to

20   contact officials from foreign governments, including Russia to,

21   quote, learn where each government stood on the resolution, end

22   quote, and to, quote, influence those governments to delay the

23   vote or defeat the resolution, end quote.

24        That same day, Mr. Flynn contacted the ambassador about

25   the vote and informed him that the incoming administration was

```
 1   opposed to the resolution.  He requested that Russia vote against

 2   or delay the resolution.

 3        On December 23rd, 2016, Mr. Flynn again spoke to the

 4   ambassador who informed him that Russia would not vote against

 5   the resolution if it came to a vote.

 6        Four:  Finally, Mr. Flynn made false statements or

 7   omissions regarding his contacts with foreign governments,

 8   specifically, the Republic of Turkey, when filing documents with

 9   the Department of Justice pursuant to the Foreign Agents

10   Registration Act, commonly referred to as FARA.

11        On March 7th, 2017, Mr. Flynn filed multiple documents

12   pursuant to the Foreign Agents Registration Act.  In the filings,

13   he made false statements or omissions by stating that his

14   company, the Flynn Intel Group, Incorporated did not know whether

15   or the extent to which Turkey was involved in a project he and

16   his company performed, quote, for the principle benefit of

17   Turkey, end quote, when, in fact, Turkish officials had

18   supervised, approved, and directed the work his company

19   performed.

20        Mr. Flynn also made false statements by stating that his

21   company's Turkey project was, quote, focused on improving U.S.

22   business organizations' confidence regarding doing business with

23   Turkey, end quote, when that was not the primary purpose.

24        Finally, Mr. Flynn made a false statement that an op-ed he

25   published in the Hill on November 8th, 2016 was written at his
```

1     own initiative, when it was actually written for Turkey's benefit

2     at its direction and under its supervision.

3          At the time the Turkish officials were directing and

4     supervising this work, Mr. Flynn was also serving as a senior

5     national security official on the Trump Campaign.

6          With respect to the sentencing questions that the Court

7     needs to focus on and resolve today, the Court, pursuant to Title

8     18, U.S. Code section 3553(a), the Court must impose a sentence

9     that it fines sufficient but not greater than necessary to

10    reflect the seriousness of the crime, afford adequate deterrence,

11    and protect the public, among other things.

12         In determining the particular sentence to be imposed, the

13    Court must consider several factors as set forth in Title 18 U.S.

14    Code 3553(a).  Those factors include, one, the nature and

15    circumstances of the offense and the history and characteristics

16    of the defendant; two, the need for the sentence to reflect the

17    seriousness of the offense, to promote respect for the law and

18    provide just punishment; three, the need for the sentence to

19    afford adequate deterrence; four, the need, if any, for the

20    sentence to protect the public from further crimes of the

21    defendant; five, the need, if any, to provide the defendant with

22    correctional treatment; six, the sentences available, the

23    sentencing range, and any applicable policy statements set forth

24    in United States Sentencing Guidelines; seven, the need to avoid

25    unwarranted sentence disparities among similarly situated

1    defendants; and eight, the need, if any, to provide restitution

2    to victims.

3          The process is highly individualized.  As such, some of

4    these factors are not relevant in Mr. Flynn's case and some

5    factors, including the seriousness of the crime, which the Court

6    emphasizes, and the history and characteristics of the defendant,

7    weigh very heavily.

8          This is a very serious offense.  A high-ranking senior

9    official of the government making false statements to the Federal

10   Bureau of Investigation while on the physical premises of the

11   White House.

12         The Court will also consider the defendant's acceptance of

13   responsibility and his substantial assistance in several

14   investigations.  In Mr. Flynn's case, the government has filed a

15   motion for a downward departure pursuant to Section 5K1.1 of the

16   Sentencing Guidelines.  The memorandum states that Mr. Flynn

17   provided substantial assistance to certain investigations.

18         When the government files such a memorandum, the Court may

19   depart -- the Court's not obligated to do so -- and sentence the

20   defendant to a lower sentence than contemplated by the

21   Guidelines.  In determining whether a reduction is warranted, the

22   Court may consider the significance and usefulness of the

23   defendant's assistance, the truthfulness, completeness, and

24   reliability of the defendant's assistance, the nature and extent

25   of the defendant's assistance, any gains or injury the defendant

1    may have endured as a result of his assistance; and the

2    timeliness of the defendant's assistance, among other

3    considerations.

4         Mr. Flynn's total offense level is 4.  And having no other

5    criminal history, his criminal history category is 1.  Therefore,

6    the applicable Guideline range is zero to six months of

7    incarceration with one to three years of supervised release.

8         All that being said, the Guidelines, again, are advisory,

9    as I've said four, five, six times.  The Court could sentence the

10   defendant to a sentence above or below the Guidelines,

11   notwithstanding any Section 5K1.1 motion.

12        Now, I'd like to hear from the government first, all

13   right.  Would you come forward, Counsel, to the microphone.  And

14   your colleagues can join you if they wish to, whatever.

15        And again, I'm not intentionally trying to intrude on

16   matters that should not be on the public record, so I will

17   respect your resistance to answer a question, all right.

18        Is Mr. Flynn still cooperating with and providing

19   assistance to the government?

20        MR. VAN GRACK:  Your Honor, it remains a possibility that

21   General Flynn is continuing to cooperate with the government at

22   this time.

23        THE COURT:  All right.  It's a possibility?

24        MR. VAN GRACK:  Yes, Your Honor.

25        THE COURT:  All right.  And the reason I ask that is

1   because, as you know and most people don't know, most of these

2   cooperation agreements are conducted in sealed courtrooms, and

3   the public doesn't really know a lot about cooperation efforts by

4   individuals.  And it's for that reason -- not for that reason,

5   but the courts are reluctant to proceed to sentencing unless and

6   until cooperation has been completed, more often than not, for

7   cogent reasons.  Because the Court wants to be in a position to

8   fully evaluate someone's efforts to assist the government.

9        Had I taken the plea, I would have had a discussion with

10  Mr. Flynn probably along these lines:  I probably would have said

11  something like, as I say in every case in which someone is

12  cooperating, "the more you assist the government, the more you,

13  arguably, help yourself at the time of sentencing."

14       Now, I make no promises about that.  I mean, conceivably

15  the Court could thank someone at the end of their cooperation

16  after months or years and say "thank you" and sentence someone to

17  the maximum.  I don't recall ever doing that, but that's a

18  possibility, and I tell people that.  But I want people to have

19  the best opportunity to help themselves at the time of

20  sentencing.  That's why, more often than not, the Court will wait

21  until the government says, "this person is finished; this person

22  has testified in the Grand Jury" or "there have been pleas of

23  guilty entered, there's nothing else he can do to help us."

24       But there's still a likelihood that he could help, though,

25  correct?

```
 1          MR. VAN GRACK:  And, Your Honor, let me clarify that
 2    point.
 3          THE COURT:  Sure.
 4          MR. VAN GRACK:  Which is the determination on the path of
 5    the government to proceed is for a number of reasons, which is,
 6    one, based on the totality of the assistance that the defendant
 7    had provided at that point.  We believe that it did merit
 8    substantial assistance in the filing of a motion for a downward
 9    departure, and we made a submission summarizing that.
10          Related to that is, based on the government's view of not
11    only the assistance he provided, but the nature of the
12    investigations that he provided, that the defendant had provided
13    the vast majority of cooperation that could be considered.  And
14    so in order to fully inform the Court, the Court was in a
15    position to consider the vast majority of not just the
16    cooperation, but the potential benefit of that cooperation.  And
17    we'd like to bring to the Court's attention that we just had an
18    indictment unsealed in the Eastern District of Virginia charging
19    Bijan Rafiekian and Ekim Alptekin with various violations, and
20    the defendant provided substantial assistance to the attorneys in
21    the Eastern District of Virginia in obtaining that charging
22    document.
23          THE COURT:  All right.  Could the defendant have been
24    indicted in that indictment?  Could he have been charged in that
25    indictment?
```

1          MR. VAN GRACK:  And, Your Honor, the answer is yes, and

2     the reason for that is that in the Statement of Offense in this

3     case, the defendant refers to false statements in that FARA

4     filing that are part of the indictment filed in the Eastern

5     District of Virginia.

6          THE COURT:  All right.  And I can assume that the person

7     identified as "A" is the defendant, correct, or would you rather

8     not mention that?

9          MR. VAN GRACK:  Your Honor, having not conferred with

10    attorneys from the Eastern District of Virginia -- I just want to

11    be sensitive about --

12         THE COURT:  I think that's fair.  I think that's fair.

13    Your answer is he could have been charged in that indictment.

14         MR. VAN GRACK:  Yes, Your Honor.

15         THE COURT:  And that would have been -- what's the

16    exposure in that indictment if someone is found guilty?

17         MR. VAN GRACK:  Your Honor, I believe, if you'll give me a

18    moment, I believe it was a conspiracy, 18 U.S.C. 371, which I

19    believe is a five-year offense.  It was a violation of 18 U.S.C.

20    951, which is either a five- or ten-year offense, and false

21    statements -- under those false statements, now that I think

22    about it, Your Honor, pertain to Ekim Alptekin, and I don't

23    believe the defendant had exposure to the false statements of

24    that individual.

25         THE COURT:  Could the sentences have been run consecutive

1    to one another?

2        MR. VAN GRACK:  I believe so.

3        THE COURT:  So the exposure would have been grave, then,

4    would have been -- it would have been -- exposure to Mr. Flynn

5    would have been significant had he been indicted?

6        MR. VAN GRACK:  Yes.  And, Your Honor, if I may just

7    clarify.  That's similar to the exposure for pleading guilty to

8    18 U.S.C. 1001.

9        THE COURT:  Right.  Exactly.  I'm not minimizing that at

10   all.  It's a five-year felony.

11       MR. VAN GRACK:  Yes, Your Honor.

12       THE COURT:  Excuse me one second.

13       (Brief pause in proceedings.)

14       THE COURT:  Yes, Counsel.

15       MR. VAN GRACK:  Your Honor, I'd clarify that the maximum

16   penalty for 18 U.S.C. 951 is a ten-year felony and five years --

17       THE COURT:  Ten-years.  All right.  Thank you.

18       I want to thank you at this point.  I'm going to invite

19   Mr. Flynn back at this point and his attorneys.  Thank you,

20   Counsel.

21       So, at this point you've paid attention to what the

22   attorney said, Mr. Flynn, correct?

23       THE DEFENDANT:  Yes, Your Honor.

24       THE COURT:  I want to ensure that you want to move forward

25   today with sentencing.  The government's publicly filed Addendum

1   in Aid of Sentencing, quote, seeks to provide a comprehensive

2   description of the benefit the government has thus far obtained

3   from your substantial assistance, end quote, but cautions that

4   some of that benefit may not be fully realized at this time, end

5   quote, and that's not different from what counsel just said.

6   There could be a need for further cooperation from you.  Did you

7   understand that?

8           THE DEFENDANT:  I believe I understand that, yes, Your

9   Honor.

10          THE COURT:  All right.  And I don't know what that could

11  be, but I accept the government's representations, and it could

12  involve that case in Virginia, it could involve other matters for

13  which you've spoken with the government, because you've had 19

14  interviews with the government, correct?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  All right.

17          You've asked to proceed to sentencing at this time and for

18  the Court to assess your cooperation and substantial assistance

19  and what impact that will have on the Court's sentencing, and

20  that's your desire, to proceed with sentencing today, correct?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  All right.  You've heard me say that

23  sentencing a cooperating defendant before cooperation has ended

24  is relevant, is rare.  Normally, these discussions we're having

25  now are held in sealed courtrooms with people, and more often

1  than not, I may weigh in and say, "let's wait because more is

2  expected of this defendant," and, arguably, "he or she should

3  have a chance to argue for the full benefit of that assistance."

4       And it's only fair because the Court's not bound by the

5  recommendations.  The Court has to be in a position to say, "I

6  can consider everything now, the full extent of a defendant's

7  cooperation."

8       I can't do that in your case because, arguably, you could

9  be required to provide more cooperation to the government.  Do

10  you understand that?

11       THE DEFENDANT:  Yes, Your Honor.

12       THE COURT:  So, if you proceed to sentencing today, which

13  is your prerogative and only yours, the Court will have to impose

14  a sentence without fully understanding the true extent and nature

15  of your assistance.  Do you understand that?

16       THE DEFENDANT:  Yes, Your Honor.

17       THE COURT:  If you want to postpone this and come back at

18  some later point -- and I don't know what that later point will

19  be -- that's fine with me.  Because at that time I can say the

20  book is closed, the government is satisfied, there's nothing else

21  that Mr. Flynn can do, and I can evaluate everything that you've

22  done or not done.

23       I have to caution you, Mr. Flynn, that the sentence the

24  Court imposes today, if sentencing proceeds, may not be the

25  sentence that you would receive after your cooperation ends.  I

1    don't know that to be a fact.  I don't know.  I mean, who knows?

2    I don't have the proverbial crystal ball, but I always approach

3    sentencing with an open mind, and I'm fully prepared to listen to

4    the attorneys and the defendant and consider the full extent of

5    someone's cooperation.

6         In other words, the Court likes to be in a position to say

7    there's nothing else this defendant can do to help the United

8    States of America.  He's done everything that he can do.  And

9    then the Court focuses on what impact that has under the advisory

10   Guidelines.

11        I'm going to be frank with you.  This crime is very

12   serious.  As I stated, it involves false statements to the

13   Federal Bureau of Investigation agents on the premises of the

14   White House, in the White House in the West Wing by a high-

15   ranking security officer with, up to that point, had an

16   unblemished career of service to his country.  That's a very

17   serious offense.

18        You know, I'm going to take into consideration the 33

19   years of military service and sacrifice, and I'm going to take

20   into consideration the substantial assistance of several

21   ongoing -- several ongoing investigations, but I'm going to also

22   take into consideration the aggravating circumstances, and the

23   aggravating circumstances are serious.  Not only did you lie to

24   the FBI, but you lied to senior officials in the Trump Transition

25   Team and Administration.  Those lies caused the then-Vice

1  President-Elect, incoming Chief of Staff, and then-Press

2  Secretary to lie to the American people.  Moreover, you lied to

3  the FBI about three different topics, and you made those false

4  statements while you were serving as the National Security

5  Advisor, the President of the United States' most senior national

6  security aid.  I can't minimize that.

7       Two months later you again made false statements in

8  multiple documents filed pursuant to the Foreign Agents

9  Registration Act.  So, all along you were an unregistered agent

10 of a foreign country, while serving as the National Security

11 Advisor to the President of the United States.

12      I mean, arguably, that undermines everything this flag

13 over here stands for (indicating).  Arguably, you sold your

14 country out.  The Court's going to consider all of that.  I

15 cannot assure you that if you proceed today you will not receive

16 a sentence of incarceration.  But I have to also tell you that at

17 some point, if and when the government says you've concluded with

18 your cooperation, you could be incarcerated.

19      It could be that any sentence of incarceration imposed

20 after your further cooperation is completed would be for less

21 time than a sentence may be today.  I can't make any guarantees,

22 but I'm not hiding my disgust, my disdain for this criminal

23 offense.

24      THE DEFENDANT:  Yes, Your Honor.

25      THE COURT:  But it's your call, Mr. Flynn.  I'm just being

```
1   up front with you, as I would with anyone else, and everyone who
2   knows me knows that.  If you want to proceed to sentencing today,
3   I can't promise anything other than I'll give full consideration
4   to anything you wish to say, if you want to say anything at all.
5   You may say, "Judge, my lawyers have said everything possible.  I
6   don't want to say anything."  I would not hold that against you,
7   sir.  Do you understand that?
8            THE DEFENDANT:  Yes, sir.
9            THE COURT:  But if you want some more time and to come
10  back later after it's clear that you've done everything you
11  possibly can for the United States of America, I'm going to grant
12  that request.
13           Now, if you would like to take a recess now and talk to
14  your attorneys, I'm happy to accommodate you in that regard as
15  well.  Would you like to do that?
16           THE DEFENDANT:  Yes, Your Honor.
17           THE COURT:  All right.  Fair enough.  Why don't you have a
18  seat.  Let me ask the government a few more questions that I want
19  you to consider as well.
20           Counsel.  And these are questions -- answers to which the
21  Court's going to consider in attempting to determine an
22  appropriate sentence.  The conversation with the Russian
23  ambassador in December, is that a violation of law?
24           MR. VAN GRACK:  Your Honor --
25           THE COURT:  I hate to be so blunt.  Could he have been
```

```
1    charged with a criminal offense?

2         MR. VAN GRACK:  Let me answer two ways.

3         THE COURT:  Okay.

4         MR. VAN GRACK:  Which is the facts could potentially,

5    potentially support a violation of the Logan Act, which I think

6    is, perhaps, what the Court is referring to.

7         THE COURT:  Is that the Act that no one has ever been

8    prosecuted under?

9         MR. VAN GRACK:  That's right, which is why I want to be

10   clear in terms of the government's consideration of potential

11   charges against General Flynn.  That is not one of the charges

12   that the government was considering in its interfacing with --

13        THE COURT:  Fair enough.  Good.  That's the answer I

14   wanted.  Were there other charges that could have been brought

15   against Mr. Flynn, Other than FARA violations, false statements?

16   I'm not minimizing either one of those.

17        MR. VAN GRACK:  The government's Statement of Offense

18   represents a representation of the unlawful activity that the

19   government was -- believes that the defendant committed in terms

20   of beyond a reasonable doubt.  And in terms of other offenses,

21   they were not sort of in consideration in our interfacing with

22   the defendant.

23        THE COURT:  All right.  I really don't know the answer to

24   this question, but given the fact that the then-President of the

25   United States imposed sanctions against Russia for interfering
```

1   with federal elections in this country, is there an opinion about

2   the conduct of the defendant the following days that rises to the

3   level of treasonous activity on his part?

4        MR. VAN GRACK:  The government did not consider -- I

5   shouldn't say -- I shouldn't say did not consider, but in terms

6   of the evidence that the government had at the time, that was not

7   something that we were considering in terms of charging the

8   defendant.

9        THE COURT:  All right.  Hypothetically, could he have been

10  charged with treason?

11       MR. VAN GRACK:  Your Honor, I want to be careful what I

12  represent.

13       THE COURT:  Sure.

14       MR. VAN GRACK:  And not having that information in front

15  of me and because it's such a serious question, I'm hesitant to

16  answer it, especially because I think it's different than asking

17  if he could be charged under FARA or if there were other 1001

18  violations, for example.

19       THE COURT:  The government filed a sentencing memorandum

20  in which it recommended sentencing at the low end of the

21  Guidelines, including probation.  Subsequent thereto, the

22  government filed its reply, which did not include the language

23  "including probation."  Now, I'm going to assume that was

24  intentional.

25       MR. VAN GRACK:  Your Honor, thank you for the opportunity

1   to clarify.  The government's recommendation is that a sentence

2   at the low end of the Guideline range is appropriate and

3   warranted period.  And, in fact, the conclusion of the

4   government's sentencing memo states that very point.  The

5   clarification in that opening paragraph of "including a term of

6   no incarceration" was to represent that when we say "low end of

7   the Guideline range," that, in fact, could include a term of no

8   incarceration.  And in particular, it was to distinguish some

9   other representations that the Special Counsel's Office had made

10  in other cases in which there was a specific recommendation for a

11  term of incarceration.  So it was meant to clarify the position

12  from the beginning, including in its reply, was intended to be

13  consistent.

14       THE COURT:  All right.  So, there was an intention to be

15  consistent, then?

16       MR. VAN GRACK:  Yes, yes.  The government's representation

17  that a sentence at the low end of the Guideline range is

18  warranted.

19       THE COURT:  All right.  The points raised by Mr. Flynn in

20  his sentencing memorandum concerned the Court.  Do you have an

21  opinion as to whether he's forfeited the adjustment points for

22  acceptance of responsibility by raising questions about the

23  circumstances surrounding his interview with the FBI agents on

24  January the 24th?

25       MR. VAN GRACK:  Your Honor, we believe that he has

1    accepted responsibility, not just from his statements to the

2    Court today, but throughout the proceedings, including the

3    statements he made under oath in front of Judge Contreras that he

4    has accepted responsibility and acknowledges that his false

5    statements were knowing and willful.

6         THE COURT:  All right.  Because in your memo you say

7    "assuming he continues to accept responsibility."  So, was there

8    some doubt in your mind that he was wavering on acceptance?

9         MR. VAN GRACK:  Your Honor, though the government

10   interpreted the defendant's submission in the way that it was

11   presented to the Court, which is to identify distinguishing

12   characteristics to two other matters that the Special Counsel's

13   Office had prosecuted, it was also aware of the potential

14   implications that the memorandum had made and wanted to clarify

15   under no uncertain terms its position that those were not

16   mitigating circumstances in any way, and is satisfied both in

17   terms of the representations the defense counsel has made and his

18   statements today that we do not doubt that he has accepted

19   responsibility.

20        THE COURT:  All right.  Excuse me one second, Counsel.

21        (Brief pause in proceedings.)

22        THE COURT:  Yes, Counsel.

23        MR. VAN GRACK:  No, Your Honor.

24        THE COURT:  Nothing further?  All right.  I'm going to --

25   at Mr. Flynn's request, I'm going to give them a -- we're going

1    to take a recess.  I can never see that clock because there's a

2    glare on that clock there.  It's 12:04.  Until 12:30.  Will that

3    be enough time?

4         MR. KELNER:  Yes, Your Honor.

5         THE COURT:  Do you have any other questions that you want

6    to ask me before we take a recess?

7         MR. KELNER:  Not at this time, Your Honor.

8         THE COURT:  All right.  Any questions, Counsel?

9         MR. VAN GRACK:  No, Your Honor.

10        THE COURT:  All right.  The Court will stand in recess

11   until 12:30.  There's no need to stand.

12        THE COURT:  Marshal Ruffin.  There's a room available for

13   you to speak privately with your client, Counsel, and Marshal

14   Ruffin will accommodate you.  Thank you.

15        (Thereupon, a recess in the proceedings occurred from

16   12:09 p.m. until 12:45 p.m.)

17        THE COURT:  All right.  Thank you.

18        THE COURTROOM CLERK:  Your Honor, resuming Criminal Case

19   17-232, *United States of America versus Michael Flynn*.

20        THE COURT:  All right.  I just want to ask a couple of

21   questions.  This is directed to either government counsel or

22   defense counsel.  I made a statement about Mr. Flynn acting as a

23   foreign agent while serving in the White House.  I may have

24   misspoken.  Does that need to be corrected?

25        MR. VAN GRACK:  Yes, Your Honor, that would be correct,

1    which is that the conduct ended, I believe, in mid-November 2016.

2        THE COURT:  All right.  That's what I thought, and I felt

3    terrible about that.  I just want the record clear on that.  You

4    agree with that, Counsel?

5        MR. KELNER:  Yes, Your Honor.

6        THE COURT:  All right.  I also asked about -- and this is

7    very important -- I also asked about the Special Counsel's

8    Office.  I also asked questions about the Special Counsel and

9    the -- and other potential offenses for the purpose of

10   understanding the benefit, if any, that Mr. Flynn has received in

11   the plea deal.  I wasn't suggesting he's committed treason.  I

12   wasn't suggesting he committed violations.  I was just curious as

13   to whether or not he could have been charged, and I gave a few

14   examples.  And, you know, there are a lot of conspiracy theorists

15   out there.  I'm not taking the elements of any of the uncharged

16   offenses into consideration at the time of sentencing.  I was

17   just trying to determine the benefit of and the generosity of the

18   government in bestowing a benefit on Mr. Flynn.  That was the

19   reason why.

20       MR. VAN GRACK:  Yes, Your Honor.

21       THE COURT:  And I said early on, Don't read too much into

22   the questions I ask.  But I'm not suggesting he committed

23   treason.  I just asked a legitimate question.

24       MR. VAN GRACK:  Yes, Your Honor.  And that affords us an

25   opportunity to clarify something on our end which is, with

1    respect to treason, I said I wanted to make sure I had the

2    statute in front of me.  The government has no reason to believe

3    that the defendant committed treason; not just at the time, but

4    having proffered with the defendant and spoken with him through

5    19 interviews, no concerns with respect to the issue of treason.

6         THE COURT:  Right, right, and I've never presided over a

7    treasonous offense and couldn't tell you what the elements are

8    anyway.  I just asked the question.  All right.  Thank you very

9    much.  How would you like to proceed, Counsel.

10        MR. KELNER:  Your Honor, with your indulgence, if I could

11   make a few points.

12        THE COURT:  Sure.

13        MR. KELNER:  First of all, let me make very clear, Your

14   Honor, that the decisions regarding how to frame General Flynn's

15   sentencing memorandum made by counsel, made by me, made by

16   Mr. Anthony, are entirely ours and really should not and do not

17   diminish in any way General Flynn's acceptance of responsibility

18   in this case.  And I want to make that --

19        THE COURT:  That point is well taken, but you understand

20   why I had to make the inquiry?

21        MR. KELNER:  I do.

22        THE COURT:  Because I'm thinking, this sounds like a

23   backpedaling on the acceptance of responsibility.  It was a

24   legitimate area to inquire about.  And I don't want to be too

25   harsh when I say this, but I know you'll understand.  I would

1    never penalize any client for what his or her attorney has said.

2    I'm not saying that you misspoke at all, but you understand

3    absolutely why I had to make the inquiry.

4         MR. KELNER:  I absolutely understand.  We understand the

5    Court's --

6         THE COURT:  And I wouldn't take it out on him or anyone

7    else, for that matter, what the attorneys say, no.

8         MR. KELNER:  Right.  We understand the Court's reason for

9    concern.  I just wanted to make very clear the very specific

10   reasons that those sections in the brief were included, to

11   distinguish the Papadopoulos and Van der Zwaan cases, which did

12   result in incarceration, we think are meaningfully

13   distinguishable in many respects.

14        THE COURT:  Let me stop you on that point, because I'm

15   glad you raised that, and I was going to raise this point at some

16   point.  We might as well raise it now since you brought up

17   Papadopoulos and Van der Zwaan.  The Court's of the opinion that

18   those two cases aren't really analogous to this case.  I mean,

19   neither one of those individuals was a high-ranking government

20   official who committed a crime while on the premises of and in

21   the West Wing of the White House.  And I note that there are

22   other cases that have been cited in the memorandum with respect

23   to other individuals sentenced in 2017, I believe, for 1001

24   offenses, and the point being made -- and I think it's an

25   absolutely good point -- the point being made that no one

1    received a jail sentence.

2          My guess is that not one of those defendants was a

3    high-ranking government official who, while employed by the

4    President of the United States, made false statements to the FBI

5    officers while on the premises of and in the West Wing of the

6    White House.  That's my guess.  Now, if I'm wrong, then you can

7    point me to any one or more of those cases.

8          This case is in a category by itself right now, but I

9    understand why you cited them.  I appreciate that.

10          MR. KELNER:  Your Honor, we don't disagree.  We recognize

11    that General Flynn served in a high-ranking position, and that is

12    unique and relevant.  But I --

13          THE COURT:  Absolutely.

14          MR. KELNER:  But I would submit to you a couple of points

15    in response for the Court's consideration.

16          Number one, because of his high rank and because of his

17    former high office, when it came time to deal with this

18    investigation and to deal with the Special Counsel's Office,

19    that, too, set a higher standard for him, and he did understand

20    that as a three-star general and a former National Security

21    Advisor, what he did was going to be very consequential for the

22    Special Counsel's investigation, and very consequential for the

23    nation, so he made decisions early on to remain low profile, not

24    to make regular public statements, as some other people did.

25    That was acknowledged by the Special Counsel's Office when we did

1    first hear from them, the value of that silence.

2         And then he made the decision publicly and clearly and

3    completely and utterly to cooperate with this investigation,

4    knowing that, because of his high rank, that was going to send a

5    signal to every other potential cooperator and witness in this

6    investigation, and that was consequential, and we appreciate the

7    fact that the Special Counsel memorialized that in his brief.

8    That did make a decision, and that was another kind of high

9    standard that was set for him and that he rose to and met

10   decisively.  In addition, there have been other cases --

11        THE COURT:  Can I just stop you right now?  Is -- How do

12   you wish to proceed?  Do you wish to proceed with sentencing

13   today or do you want to defer it?

14        MR. KELNER:  Thank you, Your Honor.

15        THE COURT:  Or are you leading up to that point?

16        MR. KELNER:  I'm leading up to that.

17        THE COURT:  No, that's fine.

18        MR. KELNER:  Just a bit of indulgence, if I may.

19        THE COURT:  No, no.  Go ahead.  That's fine.

20        MR. KELNER:  And let me just finish that last point.

21        THE COURT:  No, no, no.  I'm not trying to curtail you.  I

22   just wanted to make sure I didn't miss anything.

23        MR. KELNER:  I'm building up to it.  I'm building up to

24   it, Your Honor.

25        THE COURT:  All right.

```
1          MR. KELNER:  In addition, I would note there have been

2     other high profile cases, one involving a four-star general,

3     General Petraeus.

4          THE COURT:  I don't agree with that plea agreement,

5     but don't --

6          MR. KELNER:  It's a classic --

7          THE COURT:  He pled to a misdemeanor?

8          MR. KELNER:  He was allowed after lying to the FBI --

9          THE COURT:  -- right --

10         MR. KELNER:  -- to plead to a misdemeanor and was

11    sentenced to probation.

12         THE COURT:  All right.  Well, I'm not going to

13    criticize -- I don't know any of the facts about that case, other

14    than what I've read in -- what I've read, so....

15         MR. KELNER:  I'll just briefly highlight those examples.

16    The Sandy Berger case, also involving a former National Security

17    Advisor, also included lies to government officials.  He was also

18    allowed to plead to a misdemeanor and also sentenced to

19    probation.  So there is precedence.  But I want to be clear.  We

20    absolutely take your point.  General Flynn recognizes the

21    obligations that came with high office and that this is a serious

22    offense.  We don't in any way dispute that.

23         But at the same time, knowing that high standard, he made

24    use of it in sending a signal as part of the larger Special

25    Counsel's investigation.
```

```
 1          Your Honor, I would like to also emphasize that our
 2   understanding, and I think it's been reiterated today, is that it
 3   remains the position of the Special Counsel's Office that a
 4   sentence at the low end of the Guidelines range, quote, including
 5   a sentence that does not impose a term of incarceration, is
 6   appropriate and warranted in the government's view, and we've
 7   just reconfirmed that with them.
 8          I'd like to highlight that General Flynn has held nothing
 9   back, nothing in his extensive cooperation with the Special
10   Counsel's Office.  He's answered every question that's been
11   asked.  I believe they feel that he's answered them truthfully,
12   and he has.  He's complied with every request that's been made,
13   as has his counsel.
14          Nothing has been held back.  That said, it is true that
15   this EDVA case that was indicted yesterday is still pending, and
16   it's likely, I would think, that General Flynn may be asked to
17   testify in that case.  We haven't been told that, but I think
18   it's likely, and he's prepared to testify.  And while we believe
19   that the Special Counsel's Office views his cooperation as having
20   been very largely complete, completed at this point, it is true
21   that there's this additional modicum of cooperation that he
22   expects to provide in the EDVA case, and for that reason, we are
23   prepared to take Your Honor up on the suggestion of delaying
24   sentencing so that he can eke out the last modicum of cooperation
25   in the EDVA case to be in the best position to argue to the
```

1   Court the great value of his cooperation.

2        THE COURT:  Let me tell you something.  It didn't occur to

3   me to do that.  I just raised the thought.  I'm prepared to go

4   forward today, but I think it's only fair to say exactly what I

5   did say.

6        MR. KELNER:  Yes.

7        THE COURT:  So, you know, call it a suggestion or a

8   thought.  It was a thought.  I didn't, you know, say, you know,

9   wink-wink, nod-nod, you need to do this.  So if you want to

10  proceed today, I'm prepared to do so.

11       MR. KELNER:  We do not take it as a wink-wink, nod-nod.

12       THE COURT:  And I'm not promising anything either.

13       MR. KELNER:  And we understand that.

14       THE COURT:  All right.

15       MR. KELNER:  But from the beginning of this process,

16  literally from the beginning, General Flynn has cooperated with

17  Director Mueller and the Special Counsel's investigation in every

18  way imaginable, and he's prepared to continue that cooperation

19  with respect to the EDVA case, which I think is the only area

20  which there is anything left to give, probably just consisting of

21  his testimony at trial in that case.

22       But we would like to request a continuance of sentencing

23  to allow him to complete that cooperation, and I might suggest,

24  perhaps, a status conference in 90 days, if it -- if it makes

25  sense to the Court.

1        THE COURT:  That's fine with the Court.

2        Mr. Flynn, why don't you join your attorney at the

3   microphone.  Mr. Flynn.

4        All right, sir.  You've heard your attorney indicate that

5   you would like to postpone this.  Again, the Court's not making

6   any promises.  The Court was just being up front with you, like

7   I've been up front with people for more than 30 years, and that's

8   all I was doing.  If you want to proceed today, I would proceed

9   today, but I'm not making any promise as to what the sentence

10  will be in the event you cooperate with that matter, about this

11  or other matters.  Do you understand that?

12       THE DEFENDANT:  Yes, I understand Your Honor.

13       THE COURT:  All right.  Okay.  Does the government have an

14  objection to doing this?

15       MR. VAN GRACK:  No, Your Honor.

16       THE COURT:  All right.  Let me just say this.  I probably

17  shouldn't.  Having said that, I probably shouldn't.  I don't

18  agree with the Petraeus sentence.  I'm sorry.  I don't see how a

19  four-star general gives classified information to someone not

20  authorized to receive it and then is allowed to plead to a

21  misdemeanor, but I don't know anything about it.  Maybe there

22  were extenuating circumstances.  I don't know.  It's none of my

23  business, but it's just my opinion.

24       And that has no impact -- I would not take that into

25  consideration in whatever sentence I impose here.  Just based

```
 1    upon what I know about that case, I just disagreed with it.
 2    That's all.
 3             MR. KELNER:  Understood.
 4             THE COURT:  Counsel, what day would you want?  I mean, I
 5    can probably accommodate -- the 12th is not a good date.  March
 6    12th is not a good date, but otherwise, if you want to suggest a
 7    date that's convenient for everyone, that's fine with me.
 8             MR. ANTHONY:  May I confer?
 9             THE COURT:  Sure.
10             (Discussion had off the record.)
11             MR. KELNER:  Your Honor, after consulting with the
12    government, we suggest a status report rather than a status
13    conference.
14             THE COURT:  Sure.
15             MR. KELNER:  And for a date, I believe March 13th would
16    work.
17             THE COURT:  Any date you want now, that's fine, to file a
18    status report.  That's fine.
19             MR. KELNER:  We propose March 13th for the status report.
20             THE COURT:  Sure, that's fine.  Let's just say by noon on
21    the 13th of March.
22             MR. KELNER:  Thank you, Your Honor.
23             THE COURT:  All right.  Anything further?
24             MR. KELNER:  Nothing further from us.
25             THE COURT:  From government counsel?
```

1          MR. VAN GRACK:  No, Your Honor.

2          THE COURT:  Mr. Flynn, do you have any questions you want

3     to ask me or your attorneys?  Do you have any questions you want

4     to ask me?

5          THE DEFENDANT:  I have none, Your Honor.

6          THE COURT:  All right.  Excuse me one second.

7          (Brief pause in proceedings.)

8          THE COURT:  Let me just throw this out.  Let me just share

9     this with you.

10          What I could do, and maybe it's not appropriate to do it

11     now, and maybe it's not appropriate to do it in March.  At some

12     point -- it probably won't surprise you that I had many, many,

13     many more questions, and at some point what I may do is share

14     those questions with counsel so you can give some thought, maybe

15     do some additional research to be prepared for an eventual

16     sentencing.  I'm not sure if I want to do that.  I was not going

17     to spend another hour and share those questions with you in open

18     court today, had you decided to postpone sentencing, but I may do

19     that.  I'm not sure.  These are questions that you would be

20     prepared to answer anyway, such as, you know, how the

21     government's investigation was impeded?  What was the material

22     impact of the criminality?  Things like that.

23          MR. KELNER:  Your Honor, I think we would find it very

24     helpful, actually, and would welcome the opportunity.

25          THE COURT:  I thought you might say that.  I'll give it

1    some thought, because my purpose is not to sandbag anyone.  I

2    want your best thoughts, your best answers about questions that

3    are -- that I believe are very relevant and important, but it's

4    not time to do that now, and it won't be time to do it before

5    March 13th, but I may do that.

6         MR. KELNER:  Thank you, Your Honor.

7         THE COURT:  All right.  Sure.  Would the government find

8    that of any benefit?  You probably know the questions I'm going

9    to ask anyway, impeding the investigation, materiality impact.

10        MR. VAN GRACK:  We would not object to any clarification

11   from the Court.

12        THE COURT:  Okay.  All right.  Thank you, all.  And happy

13   holidays, everyone.  Thank you.

14        MR. KELNER:  Thank you, Your Honor.

15        (Proceedings adjourned at 1:01 p.m.)

16              C E R T I F I C A T E

17

18              I, Scott L. Wallace, RDR-CRR, certify that
        the foregoing is a correct transcript from the record of
19      proceedings in the above-entitled matter.

20
        /s/ Scott L. Wallace              12/18/18
21
        ----------------------------      ----------------
22      Scott L. Wallace, RDR, CRR              Date
          Official Court Reporter
23

24

25

## $

$250,000 [1] - 18:2
$9,000 [1] - 18:8

## /

/s [1] - 51:20

## 1

1 [4] - 17:7, 24; 18:7; 25:5
1001 [5] - 6:3; 17:25; 29:8; 36:17; 42:23
10:19 [1] - 4:16
11:00 [1] - 1:6
11:16 [1] - 3:2
12/18/18 [1] - 51:20
12:04 [1] - 39:2
12:09 [1] - 39:16
12:30 [2] - 39:2, 11
12:45 [1] - 39:16
12th [2] - 49:5
13757 [1] - 20:4
13th [4] - 49:15, 19, 21; 51:5
17-232 [3] - 1:4; 3:7; 39:19
18 [10] - 1:6; 3:1; 6:2; 17:25; 23:8, 13; 28:18; 29:8, 16
19 [2] - 30:13; 41:5
1:01 [1] - 51:15
1st [1] - 10:5

## 2

20001 [3] - 2:4, 8, 15
2016 [13] - 19:13; 20:3, 5-6, 8, 22, 25; 21:8, 13, 18; 22:3, 25; 40:1
2017 [10] - 5:21; 6:17, 19; 8:20; 10:5; 14:1; 19:9, 11; 22:11; 42:23
2018 [2] - 1:6; 3:1
202 [6] - 1:16, 21; 2:4, 9
202.354.3196 [1] - 2:16
20530 [2] - 1:16, 20
20th [1] - 19:9
21 [2] - 21:8, 13
22nd [4] - 6:18; 14:1; 21:18
23rd [1] - 22:3
24 [2] - 5:21; 6:17
24th [7] - 8:20; 9:3; 11:23; 13:25; 14:2; 19:10; 37:24
28th [2] - 20:3, 8
29th [1] - 20:5

## 3

30 [1] - 48:7

302 [5] - 6:18; 13:25; 14:18, 25; 15:15
30th [1] - 20:22
31 [1] - 20:25
33 [1] - 32:18
3553a [1] - 23:8
3553(a) [1] - 23:14
371 [1] - 28:18

## 4

4 [3] - 17:7; 18:5; 25:4

## 5

500 [1] - 18:8
5K1.1 [4] - 18:12, 22; 24:15; 25:11

## 6

616-0800 [2] - 1:16, 21
6503 [1] - 2:15
662-5105 [1] - 2:9
662-5503 [1] - 2:4

## 7

778-5105 [1] - 2:9
778-5503 [1] - 2:5
7th [1] - 22:11

## 8

850 [2] - 2:3, 7
8th [2] - 4:21; 22:25

## 9

90 [1] - 47:24
950 [2] - 1:15, 19
951 [2] - 28:20; 29:16

## A

a.m [2] - 1:6; 3:2
able [1] - 8:17
above-entitled [1] - 51:19
absolutely [6] - 13:7; 42:3, 25; 43:13; 45:20
acceded [3] - 14:21; 15:5
accept [5] - 10:12; 16:3; 18:15; 30:11; 38:7
acceptance [8] - 7:10; 12:8; 18:6; 24:12; 37:22; 38:8; 41:17, 23
accepted [5] - 5:17; 7:16; 17:17; 38:1, 4, 18

accepts [1] - 12:20
accommodate [3] - 34:14; 39:14; 49:5
acknowledged [2] - 5:16; 43:25
acknowledges [1] - 38:4
Act [5] - 22:10, 12; 33:9; 35:5, 7
acting [1] - 39:22
action [1] - 21:11
Action [1] - 1:4
actions [1] - 5:17
activity [2] - 35:18; 36:3
add [2] - 15:6, 10
Addendum [1] - 29:25
addition [2] - 44:10; 45:1
additional [7] - 5:20, 24; 6:9; 11:1, 4; 46:21; 50:15
address [1] - 14:4
adequate [2] - 23:10, 19
adjourned [1] - 51:15
adjustment [1] - 37:21
administer [2] - 5:6; 7:19
Administration [2] - 20:2; 22:25
administration [1] - 21:25
admitted [1] - 19:18
admittedly [1] - 5:22
advice [1] - 7:14
advisor [1] - 19:7
Advisor [5] - 19:8; 33:5, 11; 43:21; 45:17
advisory [5] - 17:8, 13; 25:8; 32:9
affect [1] - 7:9
afford [4] - 8:6; 9:15; 23:10, 19
affords [1] - 40:24
Agent [1] - 14:6
agent [2] - 33:9; 39:23
agents [5] - 5:23; 6:8, 10; 32:13; 37:23
Agents [3] - 22:9, 12; 33:8
aggravating [4] - 12:13, 16; 32:22
agree [4] - 18:13; 40:4; 45:4; 48:18
agreed [10] - 6:8; 17:23; 18:3, 9, 16-18, 21, 25; 19:6
agreement [4] - 17:18; 18:18; 45:4
agreements [1] - 26:2
ahead [1] - 44:19
Ahmad [1] - 1:18
AHMAD [1] - 3:14
Ahmed [1] - 3:12
Aid [2] - 5:12; 30:1
aid [1] - 33:6
aided [1] - 2:18
aimed [1] - 21:15
alerting [1] - 4:17
allow - 47:23
allowed [3] - 45:8, 18; 48:20
Alptekin [2] - 27:19; 28:22
Ambassador [1] - 19:25
ambassador [7] - 20:8, 14, 19, 25; 21:24; 22:4; 34:23
America [4] - 3:7; 32:8; 34:11; 39:19
AMERICA [1] - 1:3

**American** [1] - 33:2
**analogous** [1] - 42:18
**Andrew** [1] - 6:5
**announced** [2] - 20:5, 22
**answer** [8] - 25:17; 28:1, 13; 35:2, 13, 23; 36:16; 50:20
**answered** [2] - 46:10
**answering** [1] - 8:4
**answers** [6] - 7:23; 9:12; 19:20; 34:20; 51:2
**Anthony** [3] - 2:6; 3:17; 41:16
**ANTHONY** [1] - 49:8
**anyway** [4] - 12:15; 41:8; 50:20; 51:9
**appear** [1] - 12:4
**APPEARANCES** [2] - 1:12; 2:1
**applicable** [2] - 23:23; 25:6
**appointed** [1] - 9:22
**appointing** [1] - 9:25
**appreciate** [3] - 10:20; 43:9; 44:6
**approach** [1] - 32:2
**appropriate** [5] - 34:22; 37:2; 46:6; 50:10
**approved** [1] - 22:18
**area** [2] - 41:24; 47:19
**areas** [1] - 4:12
**arguably** [5] - 26:13; 31:2, 8; 33:12
**argue** [2] - 31:3; 46:25
**arrangements** [1] - 9:11
**aspect** [1] - 13:21
**assess** [1] - 30:18
**assist** [2] - 26:8, 12
**assistance** [18] - 18:23; 24:13, 17, 23-25; 25:1, 19; 27:6, 8, 11, 20; 30:3, 18; 31:3, 15; 32:20
**Assistant** [2] - 1:13, 18
**assume** [2] - 28:6; 36:23
**assuming** [1] - 38:7
**assure** [1] - 33:15
**attach** [1] - 15:17
**attempt** [3] - 8:5; 12:10; 13:10
**attempting** [1] - 34:21
**attention** [2] - 27:17; 29:21
**attested** [1] - 18:9
**Attorney** [2] - 1:14, 18
**attorney** [8] - 7:18; 8:3; 9:22, 25; 29:22; 42:1; 48:2, 4
**attorneys** [15] - 7:18; 8:17; 9:12, 15, 19; 10:17, 21; 17:5; 27:20; 28:10; 29:19; 32:4; 34:14; 42:7; 50:3
**August** [4] - 6:17-19; 14:1
**authorized** [1] - 48:20
**available** [2] - 23:22; 39:12
**Avenue** [2] - 1:15, 19
**avoid** [1] - 23:24
**aware** [5] - 8:21, 23-24; 15:18; 38:13

### B

**B-103** [1] - 1:20

**backpedaling** [1] - 41:23
**ball** [1] - 32:2
**base** [1] - 18:5
**based** [4] - 12:21; 27:6, 10; 48:25
**basis** [2] - 16:14; 18:19
**BEFORE** [1] - 1:11
**begin** [1] - 4:9
**beginning** [4] - 12:19; 37:12; 47:15
**behalf** [2] - 3:11, 23
**believes** [1] - 35:19
**below** [1] - 25:10
**bench** [1] - 4:23
**benefit** [11] - 19:3; 22:16; 23:1; 27:16; 30:2, 4; 31:3; 40:10, 17-18; 51:8
**Berger** [1] - 45:16
**best** [4] - 26:19; 46:25; 51:2
**bestowing** [1] - 40:18
**between** [2] - 19:15, 17
**beyond** [1] - 35:20
**Bijan** [1] - 27:19
**binding** [1] - 18:10
**bit** [1] - 44:18
**blunt** [1] - 34:25
**book** [1] - 31:20
**bound** [1] - 31:4
**Brady** [2] - 10:22; 12:22
**Brandon** [2] - 1:13; 3:10
**breach** [2] - 18:18
**brief** [6] - 12:10; 14:5, 10, 19; 42:10; 44:7
**Brief** [3] - 29:13; 38:21; 50:7
**briefing** [1] - 7:8
**briefly** [1] - 45:15
**bring** [1] - 27:17
**brought** [2] - 35:14; 42:16
**building** [1] - 44:23
**Bureau** [2] - 24:10; 32:13
**Burling** [1] - 3:16
**BURLING** [2] - 2:2, 7
**business** [2] - 22:22; 48:23
**businesses** [1] - 22:22
**bvg@usdoj.gov** [1] - 1:17

### C

**calculation** [1] - 18:3
**calculations** [2] - 17:6, 11
**camera** [2] - 4:19; 16:13
**Campaign** [2] - 19:7; 23:5
**campaign** [1] - 19:16
**cannot** [2] - 7:15; 33:15
**capable** [2] - 10:4; 16:9
**career** [1] - 32:16
**careful** [1] - 36:11
**carefully** [2] - 4:5; 16:11
**case** [27] - 3:6; 4:1, 5-6; 10:1; 12:17, 25; 16:12; 19:1; 24:4, 14; 26:11; 28:3; 30:12; 31:8; 41:18; 42:18; 43:8; 45:13, 16; 46:15, 17, 22, 25; 47:19, 21; 49:1

**Case** [1] - 39:18
**CASE** [1] - 7:21
**cases** [10] - 6:2; 12:11; 37:10; 42:11, 18, 22; 43:7; 44:10; 45:2
**category** [4] - 17:7; 18:7; 25:5; 43:8
**caused** [1] - 32:25
**caution** [1] - 31:23
**cautions** [1] - 30:3
**Center** [2] - 2:3, 8
**certain** [9] - 5:20; 7:12; 9:2, 21; 11:22; 18:14; 24:17
**certainly** [2] - 9:15; 13:13
**certify** [1] - 51:18
**challenge** [2] - 8:8, 13
**chance** [2] - 10:16; 31:3
**change** [1] - 15:3
**characteristics** [3] - 23:15; 24:6; 38:12
**charged** [7] - 6:2; 27:24; 28:13; 35:1; 36:10, 17; 40:13
**charges** [5] - 10:7; 16:10; 35:11, 14
**charging** [3] - 27:18, 21; 36:7
**Chief** [1] - 33:1
**chosen** [1] - 21:1
**circumstances** [15] - 5:13, 21; 6:1; 8:8, 13; 9:21; 12:7, 17, 24; 23:15; 32:22; 37:23; 38:16; 48:22
**citations** [1] - 15:4
**cite** [3] - 6:21; 14:19, 23
**cited** [7] - 6:16, 24; 13:25; 14:5, 7; 42:22; 43:9
**City** [2] - 2:3, 8
**clarification** [3] - 15:11; 37:5; 51:10
**clarify** [7] - 27:1; 29:7, 15; 37:1, 11; 38:14; 40:25
**classic** [1] - 45:6
**classified** [1] - 48:19
**clear** [9] - 12:18; 15:1; 34:10; 35:10; 40:3; 41:13; 42:9; 45:19
**clearly** [1] - 44:2
**CLERK** [3] - 3:4, 6; 39:18
**clerks** [1] - 4:10
**client** [2] - 39:13; 42:1
**clock** [2] - 39:1
**closed** [1] - 31:20
**Code** [4] - 6:2; 17:25; 23:8, 14
**cogent** [1] - 26:7
**colleagues** [1] - 25:14
**colloquies** [1] - 5:7
**colloquy** [2] - 5:5; 9:10
**COLUMBIA** [1] - 1:1
**committed** [6] - 35:19; 40:11, 22; 41:3; 42:20
**commonly** [2] - 6:17; 22:10
**company** [3] - 22:14, 16, 18
**company's** [1] - 22:21
**competent** [2] - 10:3; 16:9
**complete** [2] - 46:20; 47:23
**completed** [4] - 19:2; 26:6; 33:20; 46:20

**completely** [1] - 44:3
**completeness** [1] - 24:23
**complied** [1] - 46:12
**comprehensive** [1] - 30:1
**computer** [1] - 2:18
**computer-aided** [1] - 2:18
**conceivably** [1] - 26:14
**concern** [2] - 13:3; 42:9
**concerned** [2] - 7:8; 37:20
**concerns** [7] - 4:23; 8:16; 10:22; 12:5; 13:7, 20; 41:5
**conclude** [1] - 16:13
**concluded** [2] - 7:2; 33:17
**concludes** [1] - 7:11
**conclusion** [1] - 37:3
**conduct** [5] - 6:6; 9:23; 12:21; 36:2; 40:1
**conducted** [1] - 26:2
**confer** [1] - 49:8
**conference** [3] - 10:19; 47:24; 49:13
**conferred** [1] - 28:9
**confidence** [1] - 22:22
**confusion** [1] - 14:5
**consecutive** [1] - 28:25
**consequences** [2] - 10:8; 16:11
**consequential** [1] - 43:21; 44:6
**consider** [14] - 9:25; 13:14; 14:18; 23:13; 24:12, 22; 27:15; 31:6; 32:4; 33:14; 34:19, 21; 36:4
**consideration** [11] - 5:25; 17:19; 32:18, 20, 22; 34:3; 35:10, 21; 40:16; 43:15; 48:25
**considerations** [2] - 15:19; 25:3
**considered** [1] - 27:13
**considering** [2] - 35:12; 36:7
**consistent** [3] - 12:7; 37:13, 15
**consisting** [1] - 47:20
**conspiracy** [2] - 28:18; 40:14
**constitute** [2] - 18:18
**consult** [1] - 8:3
**consulting** [1] - 49:11
**Cont** [1] - 2:1
**contact** [1] - 21:20
**contacted** [2] - 20:8; 21:24
**contacts** [1] - 22:7
**contained** [1] - 5:14
**contemplated** [1] - 24:20
**contend** [1] - 10:25
**contends** [1] - 5:24
**contention** [2] - 11:10, 25
**contentions** [1] - 12:6
**continuance** [1] - 47:22
**continue** [1] - 47:18
**continues** [1] - 38:7
**continuing** [3] - 8:12; 10:12; 25:21
**Contreras** [2] - 10:11; 38:3
**convenient** [1] - 49:7
**conversation** [4] - 20:16, 19; 21:3; 34:22

**cooperate** [6] - 18:16; 19:2; 25:21; 44:3; 48:10
**cooperated** [1] - 47:16
**cooperating** [4] - 14:20; 25:18; 26:12; 30:23
**cooperation** [23] - 26:2, 6, 15; 27:13, 16; 30:6, 18, 23; 31:7, 9, 25; 32:5; 33:18, 20; 46:9, 19, 21, 24; 47:1, 18, 23
**cooperator** [1] - 44:5
**coordination** [1] - 19:17
**copies** [1] - 6:20
**copy** [1] - 14:10
**correct** [8] - 13:22; 26:25; 28:7; 29:22; 30:14, 20; 39:25; 51:18
**corrected** [1] - 39:24
**correctional** [1] - 23:22
**Council** [3] - 21:8, 14, 17
**Counsel** [16] - 3:13, 18; 12:13; 15:21; 17:11; 25:13; 29:14, 20; 38:20, 22; 39:8, 13; 40:4, 8; 41:9; 44:7
**counsel** [16] - 3:17; 6:15; 7:14; 12:15; 15:9, 14; 30:5; 34:20; 38:17; 39:21; 41:15; 46:13; 49:4, 25; 50:14
**Counsel's** [19] - 1:15; 12:11; 14:11, 17; 15:3, 8; 18:17, 21; 37:9; 38:12; 40:7; 43:18, 22, 25; 45:25; 46:3, 10, 19; 47:17
**counsel's** [2] - 3:11; 6:7
**Count** [1] - 17:24
**countries** [2] - 21:6, 11
**country** [4] - 32:16; 33:10, 14; 36:1
**country's** [1] - 21:10
**couple** [3] - 4:4; 39:20; 43:14
**court** [1] - 50:18
**Court** [52] - 2:14; 4:17, 20, 22; 6:20, 23; 7:2, 6, 8, 11, 15; 9:25; 12:6, 16; 13:3; 15:18; 16:12; 18:10; 19:3; 23:6-8, 13; 24:5, 12, 18, 22; 25:9; 26:7, 15, 20; 27:14; 30:18; 31:5, 13, 24; 32:6, 9; 35:6; 37:20; 38:2, 11; 39:10; 47:1, 25; 48:1, 6; 51:11, 22
**Court's** [14] - 5:25; 17:19; 18:14; 24:19; 27:17; 30:19; 31:4; 33:14; 34:21; 42:5, 8, 17; 43:15; 48:5
**Courthouse** [1] - 2:15
**courtroom** [3] - 5:5; 7:19; 10:17
**COURTROOM** [3] - 3:4, 6; 39:18
**courtrooms** [2] - 26:2; 30:25
**courts** [1] - 26:5
**covered** [2] - 10:10; 14:12
**Covington** [1] - 3:16
**COVINGTON** [2] - 2:2, 7
**crime** [7] - 6:12; 8:22; 11:8; 23:10; 24:5; 32:11; 42:20
**crimes** [1] - 23:20
**Criminal** [1] - 1:4; 39:18
**criminal** [9] - 3:6; 17:7; 18:6; 25:5; 33:22; 35:1
**criminality** [1] - 50:22
**criticize** [1] - 45:13

**CRR** [3] - 2:14; 51:18, 22
**crystal** [1] - 32:2
**curious** [1] - 40:12
**curtail** [1] - 44:21

**D**

**D.C** [2] - 1:8; 2:15
**date** [7] - 15:4; 49:5-7, 15, 17
**Date** [1] - 51:22
**dated** [1] - 14:1
**days** [2] - 36:2; 47:24
**DC** [4] - 1:16, 20; 2:4, 8
**deal** [4] - 4:6; 40:11; 43:17
**DECEMBER** [1] - 3:1
**December** [11] - 1:6; 10:5; 20:3, 8, 22, 25; 21:13, 18; 22:3; 34:23
**decided** [3] - 6:11; 17:4; 50:18
**decision** [3] - 21:3; 44:2, 8
**decisions** [2] - 41:4; 43:23
**decisively** [1] - 44:10
**defeat** [1] - 21:23
**Defendant** [2] - 1:8; 2:2
**defendant** [32] - 3:16; 4:20, 23; 5:7; 6:23; 9:23; 13:12; 23:16, 21; 24:6, 20, 25; 25:10; 27:6, 12, 20, 23; 28:3, 7, 23; 30:23; 31:2; 32:4, 7; 35:19, 22; 36:2, 8; 41:3
**DEFENDANT** [34] - 3:20; 7:21, 25; 8:7, 10, 15, 19, 23, 25; 9:7, 17, 20; 10:2, 6, 9, 14, 20; 11:16; 16:4, 7, 21, 23; 17:1; 29:23; 30:8, 15, 21; 31:11, 16; 33:24; 34:8, 16; 48:12; 50:5
**defendant's** [8] - 9:23; 24:12, 23-25; 25:2; 31:6; 38:10
**defendants** [4] - 12:14; 24:1; 43:2
**defense** [4] - 8:18; 15:13; 38:17; 39:22
**defer** [1] - 44:13
**degree** [1] - 12:1
**delay** [2] - 21:22; 22:2
**delayed** [1] - 19:1
**delaying** [1] - 46:23
**depart** [1] - 24:19
**DEPARTMENT** [2] - 1:14, 19
**Department** [3] - 2:11; 3:21; 22:9
**departure** [4] - 18:11, 21; 24:15; 27:9
**deputy** [2] - 5:6; 7:19
**Deputy** [1] - 6:4
**der** [3] - 12:12; 42:11, 17
**describes** [1] - 19:23
**description** [2] - 5:13; 30:2
**desire** [2] - 20:11; 30:20
**determination** [1] - 27:4
**determine** [2] - 34:21; 40:17
**determined** [2] - 18:23; 19:2
**determining** [2] - 23:12; 24:21
**deterrence** [2] - 23:10, 19
**different** [3] - 30:5; 33:3; 36:16
**diminish** [1] - 41:17

**directed** [3] - 21:19; 22:18; 39:21
**directing** [1] - 23:3
**direction** [1] - 23:2
**Director** [2] - 6:5; 47:17
**disagree** [1] - 43:10
**disagreed** [1] - 49:1
**disclose** [1] - 4:8
**discuss** [2] - 4:9; 15:23
**discussed** [2] - 14:17; 20:11
**Discussion** [1] - 49:10
**discussion** [1] - 26:9
**discussions** [1] - 30:24
**disdain** [1] - 33:22
**disgust** [1] - 33:22
**disparities** [1] - 23:25
**dispute** [1] - 45:22
**dissuaded** [1] - 11:18
**distinguish** [3] - 12:10; 37:8; 42:11
**distinguishable** [1] - 42:13
**distinguishing** [1] - 38:11
**District** [4] - 27:18, 21; 28:5, 10
**DISTRICT** [3] - 1:1, 11
**docket** [3] - 4:15; 7:5; 13:20
**document** [5] - 4:16, 18, 21-22; 27:22
**documents** [8] - 6:22; 14:8, 23; 15:1,
18; 22:8, 11; 33:8
**done** [4] - 31:22; 32:8; 34:10
**doubt** [4] - 12:1; 35:20; 38:8, 18
**downward** [3] - 18:11; 24:15; 27:8
**draft** [3] - 14:5, 10, 22
**drafted** [1] - 14:24
**during** [1] - 19:10

**E**

**early** [2] - 40:21; 43:23
**Eastern** [4] - 27:18, 21; 28:4, 10
**ed** [1] - 22:24
**EDVA** [4] - 46:15, 22, 25; 47:19
**effect** [1] - 20:4
**efforts** [4] - 19:1, 13; 26:3, 8
**Egypt** [2] - 21:7, 13
**eight** [1] - 24:1
**either** [5] - 10:17; 28:20; 35:16; 39:21;
47:12
**eke** [1] - 46:24
**Ekim** [2] - 27:19; 28:22
**Elect** [1] - 33:1
**election** [2] - 19:14; 20:7
**elections** [1] - 36:1
**elements** [2] - 40:15; 41:7
**elsewhere** [1] - 10:18
**Email** [4] - 1:17, 21; 2:5, 10
**EMMET** [1] - 1:11
**emphasize** [2] - 17:9; 46:1
**emphasizes** [1] - 24:6
**employed** [1] - 43:3
**end** [33] - 5:15, 18, 20; 6:3, 5; 9:4;
11:24; 18:13, 24; 19:4, 15, 17; 20:1, 15,
19, 21; 21:8, 12, 18, 21, 23; 22:17, 23;
26:15; 30:3; 36:20; 37:2, 6, 17; 40:25;
46:4
**ended** [2] - 30:23; 40:1
**ends** [1] - 31:25
**endured** [1] - 25:1
**ensure** [3] - 6:12; 7:12; 29:24
**entered** [4] - 7:12; 8:16; 16:9; 26:23
**entering** [1] - 10:4
**entirely** [1] - 41:16
**entitled** [2] - 11:1; 51:19
**entrapped** [1] - 11:11
**escalate** [2] - 20:12, 14; 21:3
**escalating** [1] - 20:1
**especially** [1] - 36:16
**Esq** [2] - 2:2, 6
**evaluate** [2] - 26:8; 31:21
**evaluates** [1] - 5:25
**event** [1] - 48:10
**eventual** [1] - 50:15
**evidence** [1] - 36:6
**exactly** [2] - 29:9; 47:4
**example** [1] - 36:18
**examples** [2] - 40:14; 45:15
**excuse** [3] - 29:12; 38:20; 50:6
**Executive** [1] - 20:4
**executive** [1] - 20:5
**exist** [1] - 12:17
**expected** [1] - 31:2
**expects** [1] - 46:22
**explain** [1] - 13:24
**explained** [1] - 6:5
**exposure** [3] - 28:16, 23; 29:3, 7
**extension** [1] - 5:4
**extensive** [1] - 46:9
**extensively** [1] - 10:10
**extent** [5] - 22:15; 24:24; 31:6, 14;
32:4
**extenuating** [1] - 48:22

**F**

**fact** [11] - 6:4; 11:14, 18; 12:14; 22:17;
32:1; 35:24; 37:3, 7; 44:7
**factors** [5] - 12:13; 23:13; 24:4
**Facts** [2] - 19:5, 23
**facts** [6] - 5:20, 24; 17:18; 19:6; 35:4;
45:13
**factual** [1] - 16:14
**fair** [6] - 28:12; 31:4; 34:17; 35:13;
47:4
**false** [21] - 7:23; 10:12; 17:24; 19:10,
18, 23; 22:6, 13, 20, 24; 24:9; 28:3,
20-21, 23; 32:12; 33:3, 7; 35:15; 38:4;
43:4
**falsely** [2] - 19:24; 20:18
**far** [1] - 30:2
**FARA** [4] - 22:10; 28:3; 35:15; 36:17
**Fax** [2] - 2:5, 9
**FBI** [28] - 3:12; 5:21, 23; 6:4, 10-11,
17, 25; 8:9, 21; 9:3; 11:7, 11, 23, 25;
12:2; 13:25; 19:11, 14; 21:9; 32:24;
33:3; 37:23; 43:4; 45:8
**FD-302** [6] - 6:19, 21, 25; 7:3; 14:6;
15:5
**Federal** [2] - 24:9; 32:13
**federal** [3] - 8:22; 11:8; 36:1
**felony** [3] - 17:10; 29:10, 16
**felt** [2] - 12:15; 15:7; 40:2
**few** [4] - 16:18; 34:18; 40:13; 41:11
**file** [5] - 7:5; 9:23; 13:10; 18:21; 49:17
**filed** [11] - 4:16; 13:19; 14:14; 22:11;
24:14; 28:4; 29:25; 33:8; 36:19, 22
**files** [2] - 18:11; 24:18
**filing** [7] - 4:5; 14:9, 16; 22:8; 27:8;
28:4
**filings** [1] - 22:12
**finally** [3] - 16:2; 22:6, 24
**fine** [10] - 18:2, 8; 31:19; 44:17, 19;
48:1; 49:7, 17-18, 20
**fines** [1] - 23:9
**finish** [1] - 44:20
**finished** [1] - 26:21
**first** [6] - 5:2; 7:11; 17:17; 25:12;
41:13; 44:1
**five** [8] - 17:10; 18:1; 23:21; 25:9;
28:19; 29:10, 16
**five-year** [3] - 17:10; 28:19; 29:10
**flag** [1] - 33:12
**Flynn** [82] - 3:7, 16, 18; 4:2; 5:4, 19,
22, 24; 6:4, 8, 10, 12-13, 16, 21; 7:12,
18, 20; 10:25; 11:8, 10, 22; 12:1, 7, 18;
13:24; 15:23; 16:8, 17; 17:8, 23; 18:8,
16, 23, 25; 19:6, 9, 18, 24; 20:9, 13, 16,
18, 25; 21:2, 5, 9, 19, 24; 22:3, 6, 11,
14, 20, 24; 23:4; 24:16; 25:18, 21;
26:10; 29:4, 19, 22; 31:21, 23; 33:25;
35:11, 15; 37:19; 39:19, 22; 40:10, 18;
43:11; 45:20; 46:8, 16; 47:16; 48:2;
50:2
**FLYNN** [2] - 1:6; 7:21
**Flynn's** [16] - 5:11; 6:25; 7:3, 8; 11:13;
13:11, 21; 16:14; 19:23; 20:21; 24:4,
14; 25:4; 38:25; 41:14, 17
**focus** [4] - 4:3; 5:2; 23:7
**focused** [1] - 22:21
**focuses** [2] - 5:19; 32:9
**follow** [2] - 19:6; 20:19
**follow-up** [1] - 20:19
**following** [1] - 36:2
**footnotes** [2] - 14:22, 24
**FOR** [1] - 1:1
**foregoing** [1] - 51:18
**foreign** [4] - 21:20; 22:7; 33:10; 39:23
**Foreign** [3] - 22:9, 12; 33:8
**forever** [1] - 8:13
**forfeited** [1] - 37:21
**former** [4] - 6:4; 43:17, 20; 45:16

56

**forth** [2] - 23:13, 23
**forward** [5] - 3:8; 11:5; 25:13; 29:24; 47:4
**four** [5] - 22:6; 23:19; 25:9; 45:2; 48:19
**four-star** [2] - 45:2; 48:19
**frame** [1] - 41:14
**frank** [1] - 32:11
**frankly** [2] - 5:16; 14:15
**front** [7] - 17:20; 34:1; 36:14; 38:3; 41:2; 48:6
**full** [5] - 5:17; 31:3, 6; 32:4; 34:3
**fully** [6] - 12:19; 26:8; 27:14; 30:4; 31:14; 32:3
**fulsome** [1] - 7:13

## G

**gains** [1] - 24:25
**general** [3] - 43:20; 45:2; 48:19
**General** [11] - 12:18; 25:21; 35:11; 41:14, 17; 43:11; 45:3, 20; 46:8, 16; 47:16
**generally** [1] - 14:15
**generosity** [1] - 40:17
**gentlemen** [2] - 17:15, 19
**given** [2] - 14:20; 35:24
**glad** [1] - 42:15
**glare** [1] - 39:2
**government** [42] - 4:17, 21; 6:24; 7:4; 18:11; 19:2, 20; 21:21; 24:9, 14, 18; 25:12, 19, 21; 26:8, 12, 21; 27:5; 30:2, 13-14; 31:9, 20; 33:17; 34:18; 35:12, 19; 36:4, 6, 19, 22; 38:9; 39:21; 40:18; 41:2; 42:19; 43:3; 45:17; 48:13; 49:12, 25; 51:7
**government's** [12] - 4:18; 5:14; 27:10; 29:25; 30:11; 35:10, 17; 37:1, 4, 16; 46:6; 50:21
**governments** [3] - 21:20, 22; 22:7
**GRACK** [35] - 3:10; 15:11, 13; 15:20, 24; 27:1, 4; 28:1, 9, 14, 17; 29:2, 6, 11, 15; 34:24; 35:2, 4, 9, 17; 36:4, 11, 14, 25; 37:16, 25; 38:9, 23; 39:9, 25; 40:20, 24; 48:15; 50:1; 51:10
**Grack** [2] - 1:13; 3:11
**Grand** [1] - 26:22
**grant** [2] - 18:11; 34:11
**grave** [1] - 29:3
**great** [2] - 4:5; 47:1
**greater** [1] - 23:9
**Gregory** [2] - 2:12; 3:23
**Group** [1] - 22:14
**guarantees** [1] - 33:21
**guess** [2] - 43:2, 6
**guideline** [1] - 17:9
**Guideline** [6] - 18:3, 8; 25:6; 37:2, 7, 17
**Guidelines** [11] - 18:9, 12, 22; 23:24; 24:16, 21; 25:8, 10; 32:10; 36:21; 46:4

**guilty** [29] - 4:2; 7:9, 12, 16-17; 8:12, 17; 9:2; 10:4, 8, 15; 11:22; 12:20; 13:11, 13, 21; 15:24; 16:2, 5, 9, 11, 15; 17:23; 19:6; 26:23; 28:16; 29:7

## H

**hands** [1] - 4:13
**happy** [1] - 10:19; 34:14; 51:12
**harsh** [1] - 41:25
**hate** [1] - 34:25
**hear** [2] - 25:12; 44:1
**heard** [2] - 30:22; 48:4
**hearing** [1] - 4:24
**heavily** [1] - 24:7
**held** [3] - 30:25; 46:8, 14
**help** [5] - 26:13, 19, 23-24; 32:7
**helpful** [2] - 8:18; 50:24
**hesitant** [1] - 36:15
**hiding** [1] - 33:22
**high** [12] - 24:8; 32:14; 42:19; 43:3, 11, 16-17; 44:4, 8; 45:2, 21, 23
**high-ranking** [4] - 24:8; 42:19; 43:3, 11
**higher** [1] - 43:19
**highlight** [2] - 45:15; 46:8
**highlighted** [1] - 14:2
**highlights** [2] - 6:4, 10
**highly** [1] - 24:3
**Hill** [1] - 22:25
**history** [9] - 12:24; 17:7; 18:6; 23:15; 24:6; 25:5
**hold** [2] - 17:3; 34:6
**holidays** [1] - 51:13
**Honor** [88] - 3:4, 6, 10, 14-15, 22; 5:1, 10; 8:7, 10, 15, 19; 9:7, 17; 10:2, 6, 9, 14, 20, 24; 11:3, 6, 9, 12, 16, 20; 12:3, 9, 23; 13:8, 14, 18, 22; 14:3; 16:4, 7, 23; 17:12, 22; 25:20, 24; 27:1; 28:1, 9, 14, 17, 22; 29:6, 11, 15, 23; 30:9, 15, 21; 31:11, 16; 33:24; 34:16, 24; 36:11, 25; 37:25; 38:9, 23; 39:4, 7, 9, 18, 25; 40:5, 20, 24; 41:10, 14; 43:10; 44:14, 24; 46:1, 23; 48:12, 15; 49:11, 22; 50:1, 5, 23; 51:6, 14
**HONORABLE** [1] - 1:11
**hour** [1] - 50:17
**House** [7] - 6:7; 24:11; 32:14; 39:23; 42:21; 43:6
**hypothetically** [1] - 36:9

## I

**identified** [1] - 28:7
**identify** [3] - 3:9; 12:16; 38:11
**imaginable** [1] - 47:18
**immediately** [2] - 6:22; 7:3; 20:13
**impact** [7] - 19:19, 21; 30:19; 32:9;

48:24; 50:22; 51:9
**impeded** [3] - 19:19, 21; 50:21
**impeding** [1] - 51:9
**implications** [1] - 38:14
**implies** [1] - 6:14
**important** [3] - 12:16; 40:7; 51:3
**importantly** [1] - 8:3
**impose** [4] - 23:8; 31:13; 46:5; 48:25
**imposed** [6] - 19:4; 20:2, 24; 23:12; 33:19; 35:25
**imposes** [1] - 31:24
**imprisonment** [1] - 18:1
**improving** [1] - 22:21
**IN** [1] - 7:21
**in-camera** [2] - 4:19; 16:13
**inadvertent** [1] - 4:24
**inadvertently** [1] - 4:18
**incarcerated** [1] - 33:18
**incarceration** [9] - 12:12; 25:7; 33:16, 19; 37:6, 8, 11; 42:12; 46:5
**incident** [1] - 7:15
**include** [5] - 14:8; 15:14; 23:14; 36:22; 37:7
**included** [4] - 13:1; 15:16; 42:10; 45:17
**including** [11] - 14:12; 16:12; 21:20; 24:5; 36:21, 23; 37:5, 12; 38:2; 46:4
**incoming** [2] - 21:25; 33:1
**Incorporated** [1] - 22:14
**independent** [2] - 9:22, 25
**indicate** [1] - 48:4
**indicated** [1] - 15:14
**indicating** [1] - 4:11
**indicating)** [1] - 33:13
**indicted** [3] - 27:24; 29:5; 46:15
**indictment** [6] - 27:18, 24-25; 28:4, 13, 16
**individual** [1] - 28:24
**individualized** [1] - 24:3
**individuals** [3] - 26:4; 42:19, 23
**indulgence** [2] - 41:10; 44:18
**influence** [1] - 21:22
**inform** [3] - 7:22; 21:1; 27:14
**information** [10] - 4:6, 9; 8:18; 11:1, 4; 12:22; 17:24; 19:3; 36:14; 48:19
**informed** [2] - 21:25; 22:4
**initiative** [1] - 23:1
**injury** [1] - 24:25
**inquire** [2] - 17:5; 41:24
**inquiry** [2] - 41:20; 42:3
**instance** [1] - 17:17
**Intel** [1] - 22:14
**intelligently** [1] - 7:13
**intend** [1] - 7:17
**intended** [2] - 14:8; 37:12
**intention** [2] - 13:12; 37:14
**intentional** [1] - 36:24
**intentionally** [3] - 6:11; 12:1; 25:15
**interfacing** [2] - 35:12, 21

**interfere** [1] - 19:13
**interference** [1] - 20:6
**interfering** [1] - 35:25
**interpreted** [1] - 38:10
**interview** [14] - 5:22; 6:6, 13, 22; 7:1, 3; 8:21; 9:3; 11:15, 19, 23; 14:6; 19:11; 37:23
**interviewed** [3] - 8:9, 14; 13:24
**interviews** [3] - 6:2; 30:14; 41:5
**intrude** [1] - 25:15
**investigated** [3] - 9:4; 11:24; 19:14
**Investigation** [2] - 24:10; 32:13
**investigation** [17] - 5:15; 12:11; 14:20; 18:24; 19:12, 14, 19, 21-22; 43:18, 22; 44:3, 6; 45:25; 47:17; 50:21; 51:9
**investigations** [4] - 24:14, 17; 27:12; 32:21
**investigators** [1] - 8:22
**invite** [2] - 7:18; 29:18
**involve** [2] - 30:12
**involved** [3] - 9:3; 11:23; 22:15
**involves** [1] - 32:12
**involving** [3] - 6:6; 45:2, 16
**Israeli** [2] - 21:14
**issue** [3] - 5:12; 21:14; 41:5
**issues** [4] - 4:3; 7:9
**itself** [1] - 43:8

## J

**jail** [1] - 43:1
**January** [10] - 5:21; 6:16; 8:20; 9:3; 11:23; 13:25; 14:2; 19:9; 37:24
**join** [2] - 25:14; 48:2
**Judge** [3] - 10:10; 34:5; 38:3
**judge** [4] - 4:2; 15:11; 17:17
**JUDGE** [1] - 1:11
**Jury** [1] - 26:22
**JUSTICE** [2] - 1:14, 19
**Justice** [1] - 22:9

## K

**keep** [1] - 8:1
**Kelly** [2] - 2:11; 3:22
**KELNER** [52] - 3:15; 5:1, 10; 10:24; 11:3, 6, 9, 12, 20; 12:3, 9; 13:4, 7, 12, 18, 22; 14:3; 17:12, 22; 39:4, 7; 40:5; 41:10, 13, 21; 42:4, 8; 43:10, 14; 44:14, 16, 18, 20, 23; 45:1, 6, 8, 10, 15; 47:6, 11, 13, 15; 49:3, 11, 15, 19, 22, 24; 50:23; 51:6, 14
**Kelner** [2] - 2:2; 3:15
**kind** [1] - 44:8
**Kislyak** [1] - 19:25
**knowing** [5] - 9:10; 12:21; 38:5; 44:4; 45:23
**knowingly** [1] - 7:13

**knows** [4] - 4:1; 32:1; 34:2
**Kraemer** [2] - 2:11; 3:23
**KRAEMER** [1] - 3:22
**Kraemer-Soares** [2] - 2:11; 3:23
**KRAEMER-SOARES** [1] - 3:22

## L

**Lago** [1] - 20:10
**Lang** [1] - 1:13
**language** [1] - 36:22
**largely** [1] - 46:20
**larger** [1] - 45:24
**last** [3] - 13:19; 44:20; 46:24
**law** [2] - 23:17; 34:23
**lawyer** [2] - 11:14, 18
**lawyers** [1] - 34:5
**leading** [2] - 44:15
**learn** [1] - 21:21
**learned** [1] - 4:11
**least** [1] - 7:10
**leave** [1] - 4:6
**lectern** [1] - 3:8
**left** [1] - 47:20
**legal** [1] - 11:7
**legitimate** [2] - 40:23; 41:24
**less** [1] - 33:20
**level** [4] - 17:7; 18:5; 25:4; 36:3
**lie** [2] - 32:23; 33:2
**lied** [6] - 5:22; 12:1, 7, 15; 32:24; 33:2
**lies** [2] - 32:25; 45:17
**light** [1] - 9:5
**likelihood** [1] - 26:24
**likely** [2] - 46:16, 18
**lines** [1] - 26:10
**links** [1] - 19:15
**listen** [1] - 32:3
**literally** [1] - 47:16
**LLP** [2] - 2:2, 7
**Logan** [1] - 35:5
**low** [6] - 36:20; 37:2, 6, 17; 43:23; 46:4
**lower** [1] - 24:20
**lying** [4] - 6:11; 8:21; 11:8; 45:8

## M

**machine** [1] - 2:17
**maintained** [1] - 7:16
**maintaining** [1] - 8:11
**majority** [2] - 27:13, 15
**manner** [1] - 20:15
**Mar** [1] - 20:10
**Mar-a-Lago** [1] - 20:10
**March** [7] - 22:11; 49:5, 15, 19, 21; 50:11; 51:5
**marshal** [1] - 39:12
**Marshal** [1] - 39:13
**material** [8] - 6:24; 7:2; 10:22; 15:19;

19:19, 21; 50:21
**materiality** [1] - 51:9
**materially** [1] - 19:10
**materials** [2] - 16:12
**mathematical** [2] - 17:6, 11
**matter** [4] - 10:16; 42:7; 48:10; 51:19
**matters** [4] - 25:16; 30:12; 38:12; 48:11
**maximum** [3] - 18:1; 26:17; 29:15
**McCabe** [5] - 6:5; 14:7, 19, 24; 15:15
**McCausland** [1] - 3:12
**mean** [5] - 26:14; 32:1; 33:12; 42:18; 49:4
**meaningfully** [1] - 42:12
**meant** [1] - 37:11
**measures** [1] - 20:23
**meet** [1] - 6:8
**member** [2] - 11:25; 21:19
**members** [1] - 21:2
**memo** [3] - 13:6; 37:4; 38:6
**memoranda** [1] - 6:25
**Memorandum** [1] - 5:11
**memorandum** [21] - 5:14, 20; 6:16, 19; 9:1; 11:21; 12:5; 14:1, 7, 19, 24; 15:4, 15; 24:16, 18; 36:19; 37:20; 38:14; 41:15; 42:22
**memorialized** [1] - 44:7
**mention** [1] - 28:8
**mentioned** [1] - 12:4
**merit** [1] - 27:7
**met** [1] - 44:9
**Michael** [3] - 3:7, 16; 39:19
**MICHAEL** [2] - 1:6; 7:21
**microphone** [2] - 25:13; 48:3
**mid** [1] - 40:1
**mid-November** [1] - 40:1
**might** [5] - 12:23; 14:16; 42:16; 47:23; 50:25
**military** [1] - 32:19
**mind** [2] - 32:3; 38:8
**minimize** [1] - 33:6
**minimizing** [2] - 29:9; 35:16
**misconduct** [3] - 9:4; 11:24
**misdemeanor** [4] - 45:7, 10, 18; 48:21
**misleading** [1] - 15:7
**miss** [1] - 44:22
**misspoke** [2] - 6:18; 42:2
**misspoken** [1] - 39:24
**mitigating** [1] - 38:16
**moderated** [1] - 20:20
**modicum** [2] - 46:21, 24
**moment** [1] - 28:18
**months** [6] - 17:9; 18:4; 25:6; 26:16; 33:7
**moreover** [1] - 33:2
**MORNING** [1] - 3:1
**morning** [13] - 3:3-5, 10, 13-15, 18-19, 22, 25; 4:17; 5:8
**Moses** [2] - 2:12; 3:23

**Moses-Gregory** [2] - 2:12; 3:23
**most** [4] - 8:3; 26:1; 33:5
**motion** [7] - 4:17; 13:10; 18:12, 21; 24:15; 25:11; 27:8
**move** [2] - 16:16; 29:24
**moving** [1] - 11:5
**MR** [88] - 3:10, 15; 5:1, 10; 10:24; 11:3, 6, 9, 12, 20; 12:3, 9; 13:4, 7, 12, 18, 22; 14:3; 15:11, 13; 17:12, 22; 25:20, 24; 27:1, 4; 28:1, 9, 14, 17; 29:2, 6, 11, 15; 34:24; 35:2, 4, 9, 17; 36:4, 11, 14, 25; 37:16, 25; 38:9, 23; 39:4, 7, 9, 25; 40:5, 20, 24; 41:10, 13, 21; 42:4, 8; 43:10, 14; 44:14, 16, 18, 20, 23; 45:1, 6, 8, 10, 15; 47:6, 11, 13, 15; 48:15; 49:3, 8, 11, 15, 19, 22, 24; 50:1, 23; 51:6, 10, 14
**MS** [2] - 3:14, 22
**Mueller** [1] - 47:17
**multiple** [2] - 22:11; 33:8
**must** [3] - 7:11; 23:8, 13

## N

**Naeem** [1] - 1:18
**named** [2] - 14:24
**names** [1] - 15:5
**nation** [1] - 43:23
**national** [2] - 23:5; 33:5
**National** [5] - 19:8; 33:4, 10; 43:20; 45:16
**Nations** [2] - 21:7, 14
**nature** [8] - 5:13; 10:7; 16:10; 19:15; 23:14; 24:24; 27:11; 31:14
**necessary** [2] - 9:23; 23:9
**need** [14] - 4:3; 5:3; 13:16; 19:20; 23:16, 18-19, 21, 24; 24:1; 30:6; 39:11, 24; 47:9
**needs** [1] - 23:7
**never** [3] - 39:1; 41:6; 42:1
**new** [1] - 4:16
**next** [2] - 20:9; 21:17
**nod-nod** [2] - 47:9, 11
**none** [2] - 48:22; 50:5
**nonpublic** [3] - 4:6, 9
**noon** [1] - 49:20
**normally** [3] - 5:6; 16:17; 30:24
**note** [2] - 42:21; 45:1
**nothing** [9] - 13:19; 26:23; 31:20; 32:7; 38:24; 46:8, 14; 49:24
**notwithstanding** [1] - 25:11
**November** [3] - 4:21; 22:25; 40:1
**number** [3] - 9:13; 27:5; 43:16
**NW** [4] - 1:15, 19; 2:3, 7

## O

**oath** [4] - 5:6, 8; 7:20; 38:3
**Obama** [3] - 20:2, 24

**object** [1] - 51:10
**objected** [1] - 14:13
**objection** [3] - 5:10; 15:9; 48:14
**objections** [4] - 4:25; 5:9; 17:6, 11
**obligated** [3] - 18:10, 15; 24:19
**obligation** [1] - 45:21
**obligations** [1] - 45:21
**obtained** [1] - 30:2
**obtaining** [1] - 27:21
**occur** [1] - 47:2
**occurred** [1] - 39:15
**OF** [5] - 1:1, 3, 10, 14, 19
**offended** [1] - 4:12
**Offense** [2] - 28:2; 35:17
**offense** [17] - 5:13; 6:1; 16:2, 6; 17:7; 18:5; 23:15, 17; 24:8; 25:4; 28:19; 32:17; 33:23; 35:1; 41:7; 45:22
**offenses** [4] - 35:20; 40:9, 16; 42:24
**office** [4] - 6:7; 10:18; 43:17; 45:21
**Office** [15] - 1:15; 14:11, 17; 15:3, 8; 18:17, 21; 37:9; 38:13; 40:8; 43:18, 25; 46:3, 10, 19
**Officer** [2] - 2:11, 13
**officer** [1] - 32:15
**officers** [1] - 43:5
**official** [6] - 20:10, 17; 23:5; 24:9; 42:20; 43:3
**Official** [2] - 2:14; 51:22
**officials** [8] - 9:3; 11:23; 20:10; 21:20; 22:17; 23:3; 32:24; 45:17
**often** [3] - 26:6, 20; 30:25
**omission** [1] - 4:24
**omissions** [4] - 19:10, 18; 22:7, 13
**omitted** [1] - 4:18
**One** [2] - 2:3, 8
**one** [21] - 4:18; 14:11; 15:11; 17:14; 19:24; 23:14; 25:7; 27:6; 29:1, 12; 35:7, 11, 16; 38:20; 42:19, 25; 43:2, 7, 16; 45:2; 50:6
**ongoing** [1] - 32:21
**op** [1] - 22:24
**op-ed** [1] - 22:24
**open** [3] - 19:12; 32:3; 50:17
**opening** [1] - 37:5
**opinion** [7] - 5:5; 9:24; 10:1; 36:1; 37:21; 42:17; 48:23
**opportunity** [12] - 8:5; 9:5, 14-15; 14:4; 16:19; 17:3; 26:19; 36:25; 40:25; 50:24
**opposed** [1] - 22:1
**order** [3] - 14:13; 20:5; 27:14
**Order** [1] - 20:4
**ordered** [2] - 6:23; 7:4
**organizations'** [1] - 22:22
**original** [2] - 14:5; 17:17
**originally** [2] - 14:8, 23
**otherwise** [3] - 4:24; 6:23; 49:6
**own** [1] - 23:1

## P

**p.m** [3] - 39:16; 51:15
**paid** [1] - 29:21
**Palestinian** [1] - 21:16
**Papadopoulos** [3] - 12:12; 42:11, 17
**paragraph** [1] - 37:5
**part** [6] - 12:5; 13:20; 19:14; 28:4; 36:3; 45:24
**participants** [1] - 6:9
**particular** [4] - 14:16; 21:11; 23:12; 37:8
**parties** [3] - 3:8; 18:3, 13
**party** [1] - 4:8
**passages** [1] - 13:5
**path** [1] - 27:4
**pause** [3] - 29:13; 38:21; 50:7
**penalize** [1] - 42:1
**penalty** [1] - 29:16
**pending** [1] - 46:15
**Pennsylvania** [2] - 1:15, 19
**people** [7] - 26:1, 18; 30:25; 33:2; 43:24; 48:7
**performed** [2] - 22:16, 19
**perhaps** [3] - 14:14; 35:6; 47:24
**period** [1] - 37:3
**person** [3] - 26:21; 28:6
**pertain** [1] - 28:22
**Petraeus** [2] - 45:3; 48:18
**phase** [1] - 16:16
**phone** [1] - 20:13
**physical** [1] - 24:10
**pick** [1] - 10:18
**Pierce** [1] - 2:6
**Plaintiff** [1] - 1:4
**plea** [31] - 4:2; 5:2, 5, 7; 7:9, 13, 16; 8:5, 12, 17; 9:5; 10:4; 12:20; 13:11, 13, 21; 15:24; 16:1, 3, 9, 14-15; 17:17; 18:18-20; 26:9; 40:11; 45:4
**plead** [5] - 10:15; 17:23; 45:10, 18; 48:20
**pleaded** [1] - 19:5
**pleading** [3] - 10:8; 16:11; 29:7
**pleas** [1] - 26:22
**pled** [4] - 9:2; 10:4; 11:22; 45:7
**podium** [1] - 7:19
**point** [29] - 8:4; 15:11; 16:17; 17:2; 18:5; 27:2, 7; 29:18, 21; 31:18; 32:15; 33:17; 37:4; 41:19; 42:14-16, 24-25; 43:7; 44:15, 20; 45:20; 46:20; 50:12
**pointed** [1] - 12:13
**points** [5] - 12:10; 14:16; 37:19, 21; 41:11; 43:14
**policy** [1] - 23:23
**position** [10] - 14:20; 26:7; 27:15; 31:5; 32:6; 37:11; 38:15; 43:11; 46:3, 25
**positions** [1] - 21:10
**possibility** [3] - 25:20, 23; 26:18

**possible** [1] - 34:5
**possibly** [1] - 34:11
**postpone** [4] - 10:16; 31:17; 48:5; 50:18
**postponement** [1] - 13:9
**posture** [1] - 4:1
**potential** [6] - 10:22; 27:16; 35:10; 38:13; 40:9; 44:5
**potentially** [2] - 35:4
**precedence** [1] - 45:19
**preferences** [1] - 15:7
**premises** [4] - 24:10; 32:13; 42:20; 43:5
**prepared** [10] - 6:21; 7:3; 32:3; 46:18, 23; 47:3, 10, 18; 50:15, 20
**prerogative** [1] - 31:13
**present** [2] - 11:14, 18
**presented** [1] - 38:11
**presentence** [3] - 5:15; 16:19
**presided** [1] - 41:6
**President** [9] - 19:9; 20:3, 22, 24; 33:1, 5, 11; 35:24; 43:4
**President-Elect** [1] - 33:1
**presidential** [2] - 19:13; 20:7
**Press** [1] - 33:1
**pretrial** [1] - 16:18
**preventing** [1] - 21:15
**primary** [1] - 22:23
**principle** [2] - 12:9; 22:16
**private** [1] - 9:11
**privately** [4] - 8:4; 9:14; 10:17; 39:13
**probation** [4] - 36:21, 23; 45:11, 19
**Probation** [5] - 2:11; 3:21, 24
**proceed** [16] - 13:14; 16:2, 4; 26:5; 27:5; 30:17, 20; 31:12; 33:15; 34:2; 41:9; 44:12; 47:10; 48:8
**Proceedings** [2] - 2:17; 51:15
**PROCEEDINGS** [1] - 1:10
**proceedings** [6] - 29:13; 38:2, 21; 39:15; 50:7; 51:19
**proceeds** [2] - 4:24; 31:24
**process** [3] - 12:23; 24:3; 47:15
**produce** [2] - 6:24
**produced** [3] - 2:17; 7:2; 12:22
**production** [1] - 4:19
**proffered** [1] - 41:4
**profile** [2] - 43:23; 45:2
**project** [2] - 22:15, 21
**promise** [2] - 34:3; 48:9
**promises** [2] - 26:14; 48:6
**promising** [1] - 47:12
**promote** [1] - 23:17
**propose** [1] - 49:19
**prosecuted** [2] - 35:8; 38:13
**protect** [2] - 23:11, 20
**protective** [1] - 14:13
**proverbial** [1] - 32:2
**provide** [6] - 23:18, 21; 24:1; 30:1; 31:9; 46:22

**provided** [11] - 9:19; 10:23; 11:1; 16:12; 18:23; 24:17; 27:7, 11-12, 20
**providing** [2] - 6:19; 25:18
**public** [8] - 4:15; 7:5; 14:4; 23:11, 20; 25:16; 26:3; 43:24
**publicly** [2] - 29:25; 44:2
**published** [1] - 22:25
**punishment** [1] - 23:18
**purpose** [3] - 22:23; 40:9; 51:1
**purposes** [2] - 12:25; 14:11
**pursuant** [7] - 4:17; 12, 22; 22:9, 12; 23:7; 24:15; 33:8
**Putin** [1] - 20:22
**puzzling** [1] - 13:23

# Q

**questions** [26] - 4:8; 5:3; 7:12; 8:4; 9:9, 12; 16:18, 24; 19:20; 23:6; 34:18, 20; 37:22; 39:5, 8, 21; 40:8, 22; 50:2, 13-14, 17, 19; 51:2, 8
**quickest** [1] - 6:5
**quote** [53] - 5:12, 15-16, 18, 20, 24; 6:3, 5-6, 21; 9:2, 4; 11:22, 24; 18:11, 13, 23-25; 19:4, 15-17, 25; 20:1, 14-15, 19-21; 21:5, 8-9, 12, 18-19, 21-23; 22:16, 21, 23; 30:1, 3, 5; 46:4

# R

**Rafiekian** [1] - 27:19
**raise** [4] - 4:13; 12:5; 42:15
**raised** [5] - 7:8; 12:9; 37:19; 42:15; 47:3
**raises** [2] - 12:1; 13:20
**raising** [2] - 12:6; 37:22
**range** [10] - 17:9, 13; 18:4, 8, 23:23; 25:6; 37:2, 7, 17; 46:4
**rank** [2] - 43:16; 44:4
**ranking** [5] - 24:8; 32:15; 42:19; 43:3, 11
**rare** [1] - 30:24
**rather** [2] - 28:7; 49:12
**RDR** [3] - 2:14; 51:18, 22
**RDR-CRR** [1] - 51:18
**reaction** [1] - 14:16
**read** [9] - 4:5, 22; 10:11; 16:11, 19, 22; 40:21; 45:14
**reader** [1] - 15:1
**reading** [1] - 13:5
**ready** [1] - 13:14
**realized** [1] - 30:4
**really** [5] - 14:11; 26:3; 35:23; 41:16; 42:18
**reason** [11] - 12:9; 14:15; 16:15; 25:25; 26:4; 28:2; 40:19; 41:2; 42:8; 46:22
**reasonable** [1] - 35:20
**reasons** [4] - 13:1; 26:7; 27:5; 42:10

**receive** [4] - 6:14; 31:25; 33:15; 48:20
**received** [4] - 4:20, 22; 40:10; 43:1
**recess** [5] - 34:13; 39:1, 6, 10, 15
**reciprocal** [1] - 20:15
**recognize** [1] - 43:10
**recognizes** [1] - 45:20
**recommendation** [3] - 18:15; 37:1, 10
**recommendations** [1] - 31:5
**recommended** [1] - 36:20
**reconfirmed** [1] - 46:7
**record** [8] - 3:9; 6:23; 13:24; 17:16; 25:16; 40:3; 49:10; 51:18
**redacted** [2] - 7:5; 14:14
**reduction** [2] - 18:5; 24:21
**reference** [2] - 14:1; 15:4
**references** [1] - 12:4
**referred** [2] - 6:17; 22:10
**referring** [1] - 35:6
**refers** [1] - 28:3
**reflect** [2] - 23:10, 16
**refrain** [1] - 19:25
**refusal** [1] - 18:17
**regard** [1] - 34:14
**regarding** [5] - 5:21; 21:6; 22:7, 22; 41:14
**Registration** [3] - 22:10, 12; 33:9
**regular** [1] - 43:24
**reiterated** [1] - 46:2
**reject** [1] - 16:15
**related** [1] - 27:10
**relative** [1] - 6:1
**relaxed** [2] - 6:12
**release** [3] - 17:14; 18:2; 25:7
**relevant** [14] - 6:25; 7:4; 10:22; 12:17, 23; 14:23; 15:16; 17:19; 18:25; 19:3; 24:4; 30:24; 43:12; 51:3
**reliability** [1] - 24:24
**reluctant** [1] - 26:5
**remain** [1] - 43:23
**remains** [3] - 16:14; 25:20; 46:3
**remember** [1] - 20:18
**removing** [1] - 14:18
**render** [1] - 9:24
**Renee** [2] - 2:12; 3:23
**rephrase** [1] - 8:2
**reply** [2] - 36:22; 37:12
**report** [7] - 5:15; 16:19; 20:17; 49:12, 18
**reported** [1] - 2:17
**Reporter** [3] - 2:14; 51:22
**represent** [2] - 36:12; 37:6
**representation** [2] - 35:18; 37:16
**representations** [3] - 30:11; 37:9; 38:17
**represented** [2] - 6:15; 15:13
**represents** [1] - 35:18
**Republic** [1] - 22:8
**request** [8] - 15:6; 17:15; 20:21; 21:10; 34:12; 38:25; 46:12; 47:22

**requested** [3] - 15:3; 20:14; 22:1
**require** [2] - 4:8; 5:7
**required** [1] - 31:9
**research** [2] - 9:24; 50:15
**resistance** [1] - 25:17
**resolution** [10] - 21:7, 12-13, 15, 17, 21, 23; 22:1, 5
**resolve** [1] - 23:7
**Resort** [1] - 20:11
**respect** [8] - 19:5; 23:6, 17; 25:17; 41:1, 5; 42:22; 47:19
**respected** [1] - 15:7
**respects** [1] - 42:13
**respond** [1] - 20:15
**response** [5] - 20:1, 6, 20, 23; 43:15
**responsibility** [15] - 5:17; 7:6, 10; 10:12; 12:8, 20; 18:6; 24:13; 37:22; 38:1, 4, 7, 19; 41:17, 23
**restitution** [1] - 24:1
**result** [3] - 20:21; 25:1; 42:12
**resulted** [1] - 12:11
**resuming** [1] - 39:18
**retaliate** [1] - 21:1
**retaliatory** [1] - 20:23
**revealed** [1] - 4:15
**revelations** [3] - 9:2, 6; 11:22
**review** [2] - 8:17; 9:23
**reviewed** [1] - 16:13
**reviewing** [1] - 7:2
**rights** [2] - 11:13, 17
**rises** [1] - 36:2
**rkelner@cov.com** [1] - 2:5
**Robert** [2] - 2:2; 3:15
**room** [2] - 9:11; 39:12
**Room** [2] - 1:20; 2:15
**rose** [1] - 44:9
**Ruffin** [2] - 39:12, 14
**run** [1] - 28:25
**Russia** [12] - 19:16; 20:2, 6, 12, 14, 20; 21:1, 6, 20; 22:1, 4; 35:25
**Russia's** [3] - 19:13; 20:6; 21:3
**Russian** [2] - 19:25; 34:22

## S

**sacrifice** [1] - 32:19
**sanctions** [6] - 20:1, 5, 11, 21, 23; 35:25
**sandbag** [1] - 51:1
**Sandy** [1] - 45:16
**santhony@cov.com** [1] - 2:10
**satisfactory** [1] - 7:14
**satisfied** [4] - 9:18; 16:8; 31:20; 38:16
**scheduled** [1] - 21:17
**Scott** [4] - 2:14; 51:18, 20, 22
**scottlyn01@aol.com** [1] - 2:16
**script** [1] - 4:11
**seal** [2] - 14:14; 16:13
**sealed** [3] - 4:17; 26:2; 30:25

**seat** [3] - 17:15, 21; 34:18
**second** [5] - 9:24; 10:1; 29:12; 38:20; 50:6
**Secretary** [1] - 33:2
**section** [1] - 23:8
**Section** [6] - 6:2; 17:25; 18:12, 22; 24:15; 25:11
**sections** [1] - 42:10
**Security** [8] - 19:8; 21:7, 14, 16; 33:4, 10; 43:20; 45:16
**security** [3] - 23:5; 32:15; 33:6
**see** [4] - 4:13; 12:23; 39:1; 48:18
**seek** [2] - 9:5; 11:4
**seeks** [1] - 30:1
**send** [1] - 44:4
**sending** [1] - 45:24
**senior** [9] - 20:9, 17; 21:2, 18; 23:4; 24:8; 32:24; 33:5
**sense** [1] - 47:25
**sensitive** [2] - 15:20; 28:11
**sent** [1] - 14:22
**sentence** [29] - 18:1, 14; 19:4; 23:8, 12, 16, 18, 20, 25, 24:19; 25:9; 26:16; 31:14, 23, 25; 33:16, 19, 21; 34:22; 37:1, 17; 43:1; 46:4; 48:9, 18, 25
**sentenced** [3] - 42:23; 45:11, 18
**sentences** [2] - 23:22; 28:25
**sentencing** [41] - 4:3; 5:14; 6:16; 7:4; 8:12; 9:1; 11:5, 21; 12:5, 17, 25; 13:5, 15, 25; 16:16; 19:1; 23:6, 23; 26:5, 13, 20; 29:25; 30:17, 19-20, 23; 31:12, 24; 32:3; 34:2; 36:19; 37:4, 20; 40:16; 41:15; 44:12; 46:24; 47:22; 50:16, 18
**SENTENCING** [1] - 1:10
**Sentencing** [6] - 5:12; 18:12, 22; 23:24; 24:16; 30:1
**September** [1] - 21:8
**Sergey** [1] - 19:25
**serious** [6] - 24:8; 32:12, 17, 23; 36:15; 45:21
**seriously** [1] - 7:7
**seriousness** [4] - 5:25; 23:10, 17; 24:5
**served** [3] - 19:6, 8; 43:11
**service** [2] - 32:16, 19
**services** [1] - 9:19
**serving** [4] - 23:4; 33:4, 10; 39:23
**SESSION** [1] - 3:1
**set** [4] - 23:13, 23; 43:19; 44:9
**settlements** [1] - 21:15
**seven** [1] - 23:24
**several** [6] - 5:22; 21:6; 23:13; 24:13; 32:20
**share** [3] - 50:8, 13, 17
**shared** [2] - 14:10; 20:11
**shorthand** [1] - 2:17
**shortly** [1] - 20:16
**shy** [1] - 4:10
**signal** [2] - 44:5; 45:24
**signed** [1] - 20:3

**significance** [1] - 24:22
**significant** [1] - 29:5
**silence** [1] - 44:1
**similar** [1] - 29:7
**similarly** [1] - 23:25
**simply** [2] - 14:19; 15:4
**situated** [1] - 23:25
**situation** [4] - 20:1, 12, 15; 21:4
**six** [5] - 17:10; 18:4; 23:22; 25:6, 9
**so...** [1] - 45:14
**SOARES** [1] - 3:22
**Soares** [2] - 2:11; 3:23
**sold** [1] - 33:13
**someone** [6] - 7:16; 26:11, 15-16; 28:16; 48:19
**sorry** [1] - 48:18
**sort** [1] - 35:21
**sounds** [1] - 41:22
**special** [1] - 9:21
**Special** [23] - 1:15; 12:11, 13; 14:6, 11, 17; 15:3, 8; 18:16, 21; 37:9; 38:12; 40:7; 43:18, 22, 25; 44:7; 45:24; 46:3, 9, 19; 47:17
**specific** [2] - 37:10; 42:9
**specifically** [5] - 14:6, 25; 22:8
**spend** [1] - 50:17
**spoken** [2] - 30:13; 41:4
**Staff** [1] - 33:1
**stand** [4] - 4:13; 17:20; 39:10
**standard** [3] - 43:19; 44:9; 45:23
**stands** [2] - 12:20; 33:13
**star** [3] - 43:20; 45:2; 48:19
**start** [1] - 7:17
**started** [1] - 9:9
**starting** [1] - 19:9
**statement** [2] - 22:24; 39:22
**Statement** [4] - 19:5, 23; 28:2; 35:17
**statements** [25] - 10:13; 17:24; 19:10, 18, 24; 21:5; 22:6, 13, 20; 23:23; 24:9; 28:3, 21, 23; 32:12; 33:4, 7; 35:15; 38:1, 3, 5, 18; 43:4, 24
**STATES** [3] - 1:1, 3, 11
**states** [6] - 5:12, 15; 9:1; 11:21; 24:16; 37:4
**States** [10] - 1:13; 3:7, 11; 23:24; 32:8; 33:11; 34:11; 35:25; 39:19; 43:4
**States'** [1] - 33:5
**stating** [2] - 22:13, 20
**status** [6] - 10:18; 47:24; 49:12, 18
**statute** [1] - 41:2
**statutory** [1] - 17:10
**Stephen** [2] - 2:6; 3:17
**still** [4] - 10:15; 25:18; 26:24; 46:15
**stood** [1] - 21:21
**stop** [2] - 42:14; 44:11
**Street** [2] - 2:3, 7
**strictly** [1] - 12:24
**strike** [2] - 6:18; 16:18
**Strozk** [4] - 14:7, 18, 25; 15:15

**submission** [2] - 27:9; 38:10
**submissions** [1] - 15:17
**submit** [1] - 43:14
**submitted** [2] - 21:7, 13
**subsequent** [1] - 36:21
**substantial** [8] - 18:23; 24:13, 17; 27:8, 20; 30:3, 18; 32:20
**sufficient** [1] - 23:9
**suggest** [1] - 47:23; 49:6, 12
**suggesting** [3] - 40:11, 22
**suggestion** [2] - 46:23; 47:7
**SULLIVAN** [1] - 1:11
**summarizing** [1] - 27:9
**supervised** [4] - 17:14; 18:2; 22:18; 25:7
**supervising** [1] - 23:4
**supervision** [1] - 23:2
**support** [1] - 35:5
**surprise** [1] - 50:12
**surrogate** [1] - 19:7
**surrounding** [2] - 5:21; 37:23
**SWORN** [1] - 7:21

## T

**table** [2] - 3:12, 17
**Team** [1] - 32:25
**team** [3] - 19:8; 21:2, 19
**ten** [3] - 28:20; 29:16
**ten-year** [2] - 28:20; 29:16
**ten-years** [1] - 29:17
**Tenth** [2] - 2:3, 7
**term** [4] - 37:5, 7, 11; 46:5
**terms** [8] - 15:14; 35:10, 19-20; 36:5, 7; 38:15, 17
**terrible** [1] - 40:3
**territories** [1] - 21:16
**testified** [1] - 26:22
**testify** [2] - 46:17
**testimony** [1] - 47:21
**themselves** [3] - 9:4; 11:24; 26:19
**then-President** [2] - 20:3, 24; 35:24
**then-Press** [1] - 33:1
**then-Vice** [1] - 32:25
**theorists** [1] - 40:14
**therefore** [2] - 16:16; 25:5
**thereto** [1] - 36:21
**Thereupon** [1] - 39:15
**thinking** [1] - 41:22
**thoughts** [1] - 51:2
**three** [7] - 17:14; 18:1; 21:5; 23:18; 25:7; 33:3; 43:20
**three-star** [1] - 43:20
**throughout** [1] - 38:2
**throw** [1] - 50:8
**timeliness** [1] - 25:2
**Title** [2] - 23:7, 13
**today** [20] - 7:6, 17; 12:19; 23:7; 29:25; 30:20; 31:12, 24; 33:15, 21; 34:2; 38:2,

18; 44:13; 46:2; 47:4, 10; 48:8; 50:18
**took** [1] - 4:2
**topics** [2] - 5:22; 33:3
**total** [1] - 17:7; 25:4
**totality** [1] - 27:6
**TRANSCRIPT** [1] - 1:10
**transcript** [3] - 2:17; 10:11; 51:18
**transcription** [1] - 2:18
**Transition** [1] - 32:24
**transition** [4] - 19:7; 20:9; 21:2, 19
**treason** [6] - 36:10; 40:11, 23; 41:1, 3, 5
**treasonous** [2] - 36:3; 41:7
**treatment** [1] - 23:22
**trial** [1] - 47:21
**trick** [2] - 15:24
**trouble** [1] - 7:23
**true** [3] - 31:14; 46:14, 20
**Trump** [5] - 19:7, 9, 15; 23:5; 32:24
**truthfully** [1] - 46:11
**truthfulness** [1] - 24:23
**try** [1] - 15:25
**trying** [4] - 15:24; 25:15; 40:17; 44:21
**Turkey** [5] - 22:8, 15, 17, 21, 23
**Turkey's** [1] - 23:1
**Turkish** [2] - 22:17; 23:3
**two** [9] - 12:10; 14:11; 18:5; 19:17; 23:16; 33:7; 35:2; 38:12; 42:18
**two-point** [1] - 18:5
**typical** [1] - 6:2

## U

**U.N** [1] - 21:16
**U.S** [13] - 1:14, 18-19; 2:11, 15; 3:23; 6:2; 17:25; 18:22; 22:21; 23:8, 13
**U.S.C** [4] - 28:18; 29:8, 16
**unblemished** [1] - 32:16
**uncertain** [1] - 38:15
**uncharged** [1] - 40:15
**under** [13] - 5:8; 6:2; 8:13; 12:7; 14:14; 16:13; 23:2; 28:21; 32:9; 35:8; 36:17; 38:3, 15
**undermines** [1] - 33:12
**understood** [4] - 16:10; 17:25; 18:9; 49:3
**unguarded** [2] - 6:13
**unintentionally** [1] - 4:14
**unique** [2] - 4:1; 43:12
**UNITED** [3] - 1:1, 3, 11
**United** [13] - 1:13; 3:7, 11; 21:7, 14; 23:24; 32:7; 33:5, 11; 34:11; 35:25; 39:19; 43:4
**unlawful** [1] - 35:18
**unless** [2] - 5:8; 26:5
**unregistered** [1] - 33:9
**unsealed** [1] - 27:18
**unwarranted** [1] - 23:25
**up** [14] - 4:13; 8:1, 12; 20:19; 32:15;

34:1; 42:16; 44:15, 23; 46:23; 48:6
**usefulness** [1] - 24:22
**utterly** [1] - 44:3

## V

**value** [2] - 44:1; 47:1
**VAN** [35] - 3:10; 15:11, 13; 25:20, 24; 27:1, 4; 28:1, 9, 14, 17; 29:2, 6, 11, 15; 34:24; 35:2, 4, 9, 17; 36:4, 11, 14, 25; 37:16, 25; 38:9, 23; 39:9, 25; 40:20, 24; 48:15; 50:1; 51:10
**Van** [5] - 1:13; 3:10; 12:12; 42:11, 17
**various** [1] - 27:19
**vast** [2] - 27:13, 15
**version** [1] - 7:5
**versus** [2] - 3:7; 39:19
**Vice** [1] - 32:25
**victims** [1] - 24:2
**view** [2] - 27:10; 46:6
**views** [1] - 46:19
**violated** [2] - 11:14, 17
**violation** [4] - 17:24; 28:19; 34:23; 35:5
**violations** [4] - 27:19; 35:15; 36:18; 40:12
**Virginia** [5] - 27:18, 21; 28:5, 10; 30:12
**voice** [1] - 8:1
**voluntarily** [1] - 7:13
**vote** [7] - 21:10, 17, 23, 25; 22:1, 4

## W

**wait** [2] - 26:20; 31:1
**Wallace** [4] - 2:14; 51:18, 20, 22
**wants** [1] - 26:7
**warn** [2] - 6:11; 11:8
**warned** [1] - 12:14
**warning** [1] - 6:15
**warrant** [1] - 5:25
**warranted** [4] - 24:21; 37:3, 18; 46:6
**Washington** [6] - 1:8, 16, 20; 2:4, 8, 15
**wavering** [1] - 38:8
**ways** [1] - 35:2
**week** [1] - 13:20
**weigh** [2] - 24:7; 31:1
**welcome** [1] - 50:24
**West** [3] - 32:14; 42:21; 43:5
**White** [7] - 6:7; 24:11; 32:14; 39:23; 42:21; 43:6
**willful** [2] - 12:21; 38:5
**William** [1] - 3:12
**Wing** [3] - 32:14; 42:21; 43:5
**wink** [4] - 47:9, 11
**wink-wink** [2] - 47:9, 11
**wish** [8] - 8:8; 11:4; 13:10; 15:10; 25:14; 34:4; 44:12

62

**withdraw** [7] - 8:5; 9:5; 13:11, 13; 15:25; 16:1; 18:20
**witness** [2] - 6:1; 44:5
**word** [1] - 17:9
**words** [1] - 32:6
**written** [2] - 22:25; 23:1

## Y

**year** [7] - 4:21; 17:10, 14; 28:19; 29:10, 16
**years** [11] - 4:10; 9:22; 17:14; 18:1; 25:7; 26:16; 29:16; 32:19; 48:7
**yesterday** [1] - 46:15
**yourself** [1] - 26:13
**yourselves** [1] - 3:9

## Z

**Zainab** [2] - 1:18; 3:12
**zero** [3] - 17:9; 18:4; 25:6
**zna@usdoj.gov** [1] - 1:21
**Zwaan** [3] - 12:12; 42:11, 17