UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Criminal Case No. 1:18-CR-457 (AJT) |
| | : | |
| BIJAN RAFIEKIAN, et al. | : | |

### DEFENDANT RAFIEKIAN'S MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO PRECLUDE THE GOVERNMENT FROM ARGUING THAT TURKEY FUNDED FIG'S WORK FOR INOVO

### BACKGROUND

The government's charges against Mr. Rafiekian hinge on allegations that he knowingly acted as an agent of the government of Turkey in connection with work performed by Flynn Intel Group ("FIG") on behalf of its client, Inovo BV ("Inovo").[1] Inovo is a Dutch company owned by co-defendant Ekim Alptekin, a private Turkish citizen and businessman.

The government clearly intends to prove its case by arguing that the government of Turkey "funded" the work performed by FIG on behalf of Inovo. For example, the government asserted in its recent opposition to Mr. Rafiekian's motion to compel (but without citation to any evidence) that "the government of Turkey was funding this entire effort." [ECF No. 125 at 2]. There is no indication of such evidence, and the government's claim that Turkey funded the payments to FIG relies solely on false assumptions and supposition.

First, although the speaking indictment spares no detail in its 63 paragraphs, there is no allegation that Turkey was the source of the funds paid to FIG. On the contrary, the indictment

---

[1] Count 1 of the Indictment alleges that Mr. Rafiekian (1) conspired to act as an agent of Turkey without prior notification to the Attorney General in violation of 18 U.S.C. § 951 and (2) willfully made false statements in, and omissions of material fact from, documents filed with the Attorney General under the provisions of the Foreign Agents Registration Act ("FARA"). Count 2 alleges that Mr. Rafiekian acted as an agent of Turkey without prior notification to the Attorney General in violation of 18 U.S.C. § 951.

alleges that FIG received payments from Mr. Alptekin. Indictment ¶¶ 31, 34, 38. The indictment does not allege that Mr. Alptekin received any money from the Turkish government in connection with the project or that the money he paid to FIG otherwise originated from the Turkish government.

In the proposed trial exhibits that the government has identified to date, the only evidence of payments to FIG show that they originated in Mr. Alptekin's account—not from any account controlled by the Turkish government. Moreover, although the government alleges that Mr. Alptekin made four false statements when he was interviewed by the FBI on May 24, 2017 the charges against Mr. Alptekin do not include an allegation that he was lying when he said during that same interview that he was the source of the funds paid to FIG.

This case was originally scheduled for a February 11, 2019 trial. The government is long overdue in producing any evidence that Turkey funded FIG's work. The government has represented that it has completed discovery, except for approximately fifty pages that it will produce upon agreement on a protective order. The defense has looked carefully at more than 1.5 million documents produced in discovery and has found nothing to support the government's contention that the Turkish government "funded" FIG's work.

Because there appears to be no evidence that the government of Turkey paid for work that FIG performed for Inovo, the government should be precluded from (1) claiming in its opening statement that such evidence exists, and (2) arguing in closing that the government of Turkey "funded" the project. Alternatively, the government should be required to (a) file a bill of particulars explaining the basis for its claim that the government of Turkey funded the work, and (b) identify with specificity the documents in its production that support this claim.

**ARGUMENT**

I. **THE GOVERNMENT SHOULD BE PRECLUDED FROM ARGUING THAT TURKEY "FUNDED" FIG'S WORK FOR INOVO**

Because there appears to be no evidentiary support for the claim that the Turkish government "funded" FIG's work for Inovo, the government should be precluded at trial from making that claim in its opening statement or closing argument.

A "prosecutor's opening statement should be an objective summary of the evidence reasonably expected to be produced, and the prosecutor should not use the opening statement as an opportunity to poison the jury's mind against the defendant or to recite items of highly questionable evidence." *United States v. Brockington*, 849 F.2d 872, 875 (4th Cir. 1988). Thus, a prosecutor commits error by referring to evidence in an opening statement that is ultimately not admitted during trial. *See United States v. Thomas*, 114 F.3d 228, 247 (D.C. Cir. 1997); *United States v. Novak*, 918 F.2d 107, 109-110 (10th Cir. 1990); *United States v. Murrah*, 888 F.2d 24, 26 (5th Cir. 1989); *United States v. Sawyer*, 799 F.2d 1494, 1507 (11th Cir. 1986); *United States v. Hernandez*, 779 F.2d 456, 459 (8th Cir. 1985).

Likewise, the scope of a closing argument is limited to the facts in evidence. *United States v. Wilson*, 135 F.3d 291, 298 (4th Cir. 1998). Although "a prosecutor may argue that the evidence gives rise to an inference . . . , [the] inference must be reasonably drawn from the facts in evidence." *Id.* A prosecutor commits error by misrepresenting the evidence during a closing argument or suggesting that the jury draw inferences that the prosecutor has "every reason to doubt, and no good reason to support." *United States v. Earle*, 375 F.3d 1159, 1165 (D.C. Cir. 2004); *see also Wilson*, 135 F.3d at 298 (prosecutor's argument that the defendant "shot a man dead" was improper where it was not based on record evidence or a reasonable inference that could be drawn from the evidence, and prosecutor thus asserted as fact something that had not

3

been proved); *United States v. Reyes*, 577 F.3d 1069 (9th Cir. 2009) (granting new trial where prosecutors misrepresented evidence during closing).

Here, Mr. Rafiekian is aware of no evidence that would support the government's claim that the Turkish government "funded" FIG's work for Inovo. Accordingly, the government should be precluded from making that claim during its opening statement and closing argument unless specific evidence to support such a contention can be identified prior to trial.

## II. ALTERNATIVELY, THE GOVERNMENT SHOULD BE REQUIRED TO FILE A BILL OF PARTICULARS DETAILING THE EVIDENCE SUPPORTING ITS CLAIM THAT TURKEY FUNDED THE PROJECT

In response to this motion, the government may claim it *does* possess evidence that the government of Turkey funded FIG's work for Inovo. Such evidence is not present among any of the exhibits or core documents identified by the government to date. There appears to be no evidentiary basis for this contention and the government should be required to file a bill of particulars to explain this allegation.

Rule 7(f) provides that the Court "may direct the government to file a bill of particulars." The purpose of a bill of particulars "is to fairly apprise the defendant of the charges against him so that he may adequately prepare a defense and avoid surprise at trial." *United States v. Automated Med. Labs., Inc.*, 770 F.2d 399, 405 (4th Cir. 1985); *accord United States v. Valle*, No. 1:14-cr-135, 2015 WL 4994502, at *7 (E.D. Va. Aug. 18, 2015) (O'Grady, J.) (citing *United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir. 1996)) (purpose is to "amplify an indictment by providing missing or additional information so a defendant may effectively prepare for trial"); *United States v. Perry*, 30 F. Supp. 3d 514, 522-25 (E.D. Va. 2014) (granting motion for a bill of particulars in health care fraud case); *see also* Advisory Committee Notes to Rule 7(f) (1966

4

amendment) (noting elimination of "the requirement of a showing of cause" and that the rule has evolved "to encourage a more liberal attitude by the courts toward bills of particulars").

### A. The Enormous Size of the Government's Document Production Alone Warrants this Requested Bill of Particulars

The size of the government's document production alone warrant the particulars requested in this motion. As one court has stated, "[p]erhaps the most frequent case in which particulars are warranted is where discovery is overwhelmingly extensive and the government fails to designate which documents it intends to introduce and which documents are merely relevant to the defense." *United States v. Mahaffy*, 446 F. Supp. 2d 115, 119 (E.D.N.Y. 2006) (emphasis omitted). In three hard drives with a total capacity of ten TB, a thumb drive, and a DVD disc, the government has produced, according to its description, the entire data from the defendant's two laptops, plus 3.75 million TIFF files from other sources, plus approximately 68,500 pages of additional discovery. There is likely more to come.

As Judge Davis in this District stated in granting a motion for a bill of particulars: "A defendant is not fairly apprised of the necessary information merely because the government provided 'mountains of documents to defense counsel who were left unguided as to which documents" would be relevant at trial. *Perry*, 30 F. Supp. 3d at 523 (quoting *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987)); *see also United States v. Ramirez*, 609 F.3d 495, 503 (2d Cir. 2010) (stating that the "district court made clear that it ordered a bill of particulars because so much discovery was produced to the defendants, not too little"); *United States v. Aispuro*, No. CR 08-2936 JB, 2010 WL 1404196, at *6 (D.N.M. Mar. 16, 2010) ("The Court also finds persuasive the Defendants' argument that, in a complex case with voluminous unorganized discovery, a bill of particulars is particularly necessary to avoid surprise at trial."); *Mahaffy*, 446 F. Supp. 2d at 120 ("[A] large volume of discovery warrants a bill of particulars if it obfuscates

the allegedly unlawful conduct and unfairly inhibits the defendant's preparation for trial."); *United States v. Bin Laden*, 92 F. Supp. 2d 225, 234 (S.D.N.Y. 2000) ("[S]ometimes, the large volume of material disclosed is precisely what necessitates a bill of particulars."). The government has made a critical allegation—the work done by FIG was "funded" by Turkey. If the government has evidence to support this pivotal claim, a bill of particulars under these circumstances is the appropriate mechanism to surface this evidence from the morass of discovery in this case.

> B. **The Government Should Be Required to Identify All Evidence Relating to the Turkish Government's "Funding" of FIG's Work for Inovo**

If the government has evidence that the Turkish government directly or indirectly funded FIG's work for Inovo, it is critical that Mr. Rafiekian must be informed of that evidence. Funding from the government of Turkey to FIG would be significant evidence if it were true *and if the defendant knew about it*. If any such evidence exists, Mr. Rafiekian's trial strategy would be largely driven by the need to address and rebut such evidence. If the intent of the government is to surprise the defense at trial with some purported evidence of Turkish government funding— that lies undiscovered, in some obscure form, in the depths of millions of pages of discovery— then Mr. Rafiekian will surely and directly be denied his rights under the Confrontation Clause as well as his right to effective assistance of counsel under the Sixth Amendment. Accordingly, the government should be required to (1) file a bill of particulars explaining the basis of its claim that the government of Turkey funded FIG's work for Inovo, and (2) identify with specificity (including by document ID where available) any evidence in its productions that support this claim.

## CONCLUSION

For the foregoing reasons, Mr. Rafiekian respectfully requests that the Court preclude the government from (1) claiming in its opening statement that such evidence exist and (2) arguing in closing that the government of Turkey "funded" the project. Alternatively, the Court should require the government to (a) file a bill of particulars explaining the basis of its claim that the government of Turkey funded the project and (b) identify with specificity the documents produced in discovery that support this factual allegation.

Dated: May 28, 2019

Respectfully submitted,

*/s/*                           
James E. Tysse (VA Bar # 73490)
Mark J. MacDougall (*Pro Hac Vice*)
Stacey H. Mitchell (*Pro Hac Vice*)
John C. Murphy (*Pro Hac Vice*)
Adam A. Bereston (*Pro Hac Vice*)
Samantha J. Block (*Pro Hac Vice*)
*Counsel for Bijan Rafiekian*
Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 887-4000
Fax: (202) 887-4288
E-mail: mmacdougall@akingump.com
          shmitchell@akingump.com


*/s/*                           
Robert P. Trout (VA Bar # 13642)
*Counsel for Bijan Rafiekian*
Trout Cacheris & Solomon PLLC
1627 Eye Street, NW
Suite 1130
Washington, DC 20006
Telephone: (202) 464-3311
Fax: (202) 463-3319
E-mail: rtrout@troutcahceris.com

**CERTIFICATE OF SERVICE**

I hereby certify that, on the 28th day of May 2019, true and genuine copies of Defendant Rafiekian's Memorandum in Support of Motion *In Limine* to Preclude the Government from Arguing that Turkey Funded FIG's Work for Inovo were sent via electronic mail by the Court's CM/ECF system to the following:

    James P. Gillis
    John T. Gibbs
    Evan N. Turgeon
    U.S. Attorney's Office (Alexandria-NA)
    2100 Jamieson Avenue
    Alexandria, VA 22314
    Telephone: (703) 299-3700
    Email: james.p.gillis@usdoj.gov
           john.gibbs@usdoj.gov
           evan.turgeon@usdoj.gov

                                                  /s/
                                              Robert P. Trout (VA Bar # 13642)