IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 1:18-CR-457-AJT |
| BIJAN RAFIEKIAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

GOVERNMENT'S MOTION *IN LIMINE*
TO ESTABLISH CRIME-FRAUD EXCEPTION

For the reasons that follow, the United States respectfully requests that the Court rule *in limine* that statements made by the defendant to attorneys for Flynn Intel Group ("FIG") are not covered by the attorney-client privilege because, *inter alia*, the statements fall within the crime-fraud exception to the privilege.[1]

INTRODUCTION

As discussed below, to establish a crime-fraud exception to the attorney-client privilege, the government must make a *prima facie* showing that the defendant was engaged in or planning a criminal scheme when he sought the advice of counsel and that the statements by the defendant to the attorney bear a close relationship to the defendant's scheme to commit the crime.[2]  We wish to make clear at the outset that there is no evidence – and no contention here – that FIG's

---

[1] By this motion, the government does not concede that the defendant has any individual attorney-client relationship with FIG's attorneys or that the defendant may contest a previous waiver of the privilege by an appropriate officer of the corporation.  These matters may form the basis for additional arguments in the future against an assertion by the defendant of FIG's attorney-client privilege.

[2] *See, e.g., United States v. Brown*, No. 01-4799, 52 Fed. App. 612, 614 (4th Cir. Dec. 12, 2002).

attorneys, Covington & Burling and Kristen Verderame, were aware that the statements that the defendant made to them were false or that they were otherwise in furtherance of any crime or fraud. No such showing is needed, however, to dissolve the attorney-client privilege.[3]

On December 12, 2018, and again on May 23, 2019, a grand jury in this District found probable cause to believe that the defendant had conspired with Ekim Alptekin to act as an agent of a foreign government and to make willfully false statements in FIG's filing under the Foreign Agents Registration Act ("FARA"). These false statements in the FARA filing are detailed in paragraphs 52 through 63 of the superseding indictment just returned by the Grand Jury. As the Grand Jury found, these false FARA statements were the direct result of a number of false statements made by the defendant and Alptekin to the FIG attorneys who prepared the filing. Given that two grand juries have already made a probable cause finding as to the existence of the conspiracy from July 2016 through March 2017, including at the time the false statements were made, there is ample evidence to establish a *prima facie* showing that the defendant was engaged in a crime or fraud at the time that he consulted FIG's attorneys and that the defendant's statements bear a close connection to the defendant's scheme to commit the crime. As discussed below, this is all that the government must establish to vitiate the privilege.

STATEMENT OF FACTS

The superseding indictment arises from a conspiracy involving the defendant and Alptekin, a Turkish national with close ties to the highest levels of the Government of Turkey. *See* Superseding Indictment ("Ind.") ¶ 2; *see also, e.g.,* GEX 9; GEX 14; GEX 15. The object of the conspiracy was to covertly and unlawfully influence U.S. politicians and public opinion

---

[3] *E.g., In re Grand Jury Proceedings*, 102 F.3d 748, 751 (4th Cir. 1996) ("[T]he attorney need know nothing about the client's ongoing or planned illicit activity for the exception to apply.").

concerning Fethullah Gulen, whose extradition request by the Government of Turkey was meeting resistance at the Department of Justice. Ind. ¶ 3; *see also, e.g.,* GEX 13. As found by the Grand Jury, the object of the conspiracy was to delegitimize Gulen in the eyes of politicians and the public, and ultimately to secure Gulen's extradition. *Id*; *see also, e.g.,* GEX 42, GEX 43B. Although the Government of Turkey, through Alptekin, directed the work, *see, e.g.,* GEX 14, GEX 15, GEX 16, the scheme was to conceal the Turkish government's involvement in the efforts to discredit Gulen. Ind. § 3. Among the means of the conspiracy was to use Inovo BV, a Dutch company owned by Alptekin, to serve as FIG's "client." *Id; see also, e.g.,* GEX 18A, GEX 22A, GEX 30B. Inovo was purportedly to pay FIG's fee, although it is clear that Turkish government officials approved the budget for the project, and, through Alptekin, received regular updates on, and ultimately directed and controlled, FIG's work. Ind. ¶¶ 3, 17, 18; *see also, e.g.,* GEX 9, GEX 15, GEX 16, GEX 24A & B, GEX 29, GEX 40.

At the beginning of the discussions about the project, it was called the "Truth Campaign" and was to be funded by the Turkish government. Ind. ¶¶ 9, 16; GEX 10, GEX 16. For his part, Alptekin was to receive twenty percent of the contract amount. Ind. ¶¶ 10, 17; GEX 17, GEX 19. Indeed, immediately upon the payment from Alptekin to FIG, FIG wired back twenty percent to Alptekin, supposedly for his "consultancy fees." *See, e.g.,* GEX 25A, B & C, GEX 3A, B & C, GEX 34, GEX 37. From the start, the defendant made clear that knowledge of the project was to be very tightly controlled and limited to the defendant, his partner Michael T. Flynn, and Alptekin. Ind. ¶¶ 8, 9, 10, 11; *see, e.g.,* GEX 8, GEX 10, GEX 11. On August 10, 2016, in emails to the defendant and Flynn, Alptekin told them that he had met with "Turkish Minister #1" and "Turkish Minister #2" and that he had their permission to discuss "confidentiality, budget and the scope of the contract." Ind. ¶ 16; GEX 16.

3

However, the very next day, on August 11, 2016, the defendant sent an email to a wider group of FIG principals claiming that FIG was to be engaged by a "Dutch client" for a project now called "Operation Confidence." Ind. ¶ 18; GEX 18, GEX 19. Nonetheless, the evidence shows that the focus of the "new" project did not change in any way from the "Truth Campaign" and remained focused throughout on discrediting Gulen and painting Gulen as a fraud and a terrorist. *See, e.g.,* GEX 22B, GEX 23A & B. The change from the "Truth Campaign" to "Operation Confidence" was a change in name only. *Compare* GEX 10 *with* GEX 18A, GEX 13 *with* GEX 26B. The work culminated in an op-ed piece supposedly written by Flynn himself, but in fact ghost-written by the defendant and approved by Alptekin. Ind. ¶¶ 41-50; GEX 42, GEX 45A & B, GEX 47, GEX 48A & B, GEX 49. The op-ed was highly critical of Gulen – portraying him as the Turkish equivalent of Ayatollah Khomeini – and parroted the Turkish government's position that Gulen was a radical Islamist who should not be given safe haven in the United States.

After the publication of the op-ed, the FARA Unit at the U.S. Department of Justice questioned FIG about the article and whether it had been written on behalf of the Turkish government, which would require FIG to register under FARA as a foreign agent. In response to this inquiry, FIG retained Verderame and Covington & Burling.[4] They conducted an investigation that included multiple interviews of the defendant, during which the defendant made numerous false factual representations and omitted numerous material facts. Through his attorney, Alptekin also made false factual representations to Verderame and Covington & Burling.

---

[4] Verderame and Covington & Burling also represented Flynn individually.

Ultimately, Covington & Burling drafted and filed a FARA registration for FIG, which the defendant reviewed in advance of filing. However, given the defendant's and Alptekin's lies to Verderame and Covington & Burling, the FARA filing contained a number of misrepresentations. Ind. ¶¶ 52-55. For example, FIG's FARA filing falsely claimed that Flynn's op-ed was written "on his own initiative" and that "[n]either Inovo BV, nor any other person requested or directed publication of the op-ed." GEX 61 (Bates no. 350). Further, the filing claimed that Inovo, Alptekin's company, had retained FIG because Inovo had been hired by an Israeli company with an interest in establishing an oil pipeline in Turkey. GEX 58 (Bates no. 318). The name of this supposed Israeli client was Ratio Oil Exploration LP ("Ratio"). However, documentary evidence obtained from Ratio itself shows that whatever was the work Alptekin and Inovo were to perform for Ratio, it had nothing to do with FIG or the Turkey project.

As the Grand Jury determined, the defendant and Alptekin violated 18 U.S.C. § 951 by concealing the Government of Turkey's direction and control of the work that FIG supposedly performed for Inovo. The violations of 22 U.S.C. § 618(a)(2) found by the Grand Jury are based upon several false statements and omissions that the defendant and Alptekin made to Covington & Burling and to Verderame for inclusion in FIG's March 2017 FARA filing. Ind. ¶¶ 51-63. These false statement furthered the defendants' continuing efforts to conceal the Turkish government's involvement in FIG's work. The superseding indictment returned by the Grand Jury supports all of these facts, and virtually every allegation is supported by, *inter alia*, the government exhibits accompanying this motion. The exhibits are numbered to correspond to the respective paragraphs in the indictment.

ARGUMENT

It is well settled that the attorney-client privilege is lost "when a client gives information to an attorney for the purpose of committing or furthering a crime or fraud." *In re Grand Jury Proceedings #5*, 401 F.3d 247, 251 (4th Cir. 2005). *See also, e.g.*, *In re Grand Jury Subpoena*, 884 F.2d 124, 127 (4th Cir. 1989). To overcome the privilege, "the government must make a prima facie showing that the communications fall within the crime-fraud exception." *Id. See also In re Grand Jury Proceedings*, 674 F.2d 309, 310 (4th Cir. 1982). Significantly, "[i]n satisfying this prima facie standard, proof either by a preponderance or beyond a reasonable doubt of the crime or fraud is not required." *In re Grand Jury Proceedings #5*, 401 F.3d 247 (4th Cir. 2005). Indeed, the *prima facie* showing need only be "sufficient to justify, but not necessarily to compel, a finding" that the communications fall within the exception. *See Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215, 1220 (4th Cir. 1976) (citing *Wright v. Rockefeller*, 376 U.S. 52, 57 (1963)). *See also In re Grand Jury Proceedings #5*, 401 F.3d at 251. Further, in determining whether the privilege applies, the district court may rely upon evidence that is not ordinarily admissible at trial. *E.g., In re Grand Jury Subpoena*, 884 F.2d at 127 (collecting cases).

The Fourth Circuit has held that to establish the crime-fraud exception, the government must make a *prima facie* showing that:

> (1) the client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme, and (2) the [statements] containing the privileged [information] bear a close relationship to the client's existing or future scheme to commit a crime or fraud.

*In re Grand Jury Proceedings #5*, 401 F.3d at 251. *See also Chaudhry v. Gallerizzo,* 174 F.3d 394, 403 (4th Cir. 1999); *In re Grand Jury Proceedings*, 33 F.3d 342, 349, n.13 (4th Cir. 1994) *Brown*, 52 Fed. Appx. at 614.

Here, the probable cause finding by the Grand Jury and the evidence supporting the allegations contained in the superseding indictment are more than sufficient to meet the government's burden to establish that "the client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme." We have established a *prima facie* showing, at the very least, that for his part in the "Truth Campaign" or "Operation Confidence," no matter how it was styled, the defendant had "agree[d] to operate within the United States subject to the direction or control of a foreign government or official." 18 U.S.C. § 951(d).

The government has also established the relationship between the privileged information and the scheme to commit the crimes charged. From its inception, the defendant and Alptekin sought to conceal the role of the Turkish government in the project. *See, e.g.*, Ind. at ¶¶ 8-11, 16, 19. As the grand jury found, their attempts at obfuscation included a conspiracy to make false statements in FIG's FARA filing. The government now seeks evidence of what factual representations the defendant made to the attorneys drafting FIG's FARA filing. The defendant's false factual representations clearly bear a close relationship to the conspiracy to violate 18 U.S.C. § 951 because they were acts undertaken in furtherance of the conspiracy – they served to conceal the defendant's crimes and to prevent the Government of Turkey's involvement in the project from becoming known. The false representations also bear a close relationship to the conspiracy to make material false statements and omissions on a FARA filing because they form the very basis for that charge.

CONCLUSION

For these reasons, the United States respectfully requests that the Court rule *in limine* that statements made by the defendant to Covington & Burling and to Kristen Verderame are not covered by the attorney-client privilege because, *inter alia*, the statements fall within the crime-fraud exception to the privilege.

Respectfully submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

_____/s/_____
Evan N. Turgeon
Trial Attorney
Counterintelligence
    and Export Control Section
National Security Division
United States Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530
(202) 353-0176
Evan.Turgeon@usdoj.gov

By: _____/s/_____
James P. Gillis
Virginia Bar No. 65055
John T. Gibbs
Virginia Bar No. 40380
Assistant United States Attorneys
The Justin W. Williams
    United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3700
(703) 299-3982 (fax)
James.P.Gillis@usdoj.gov
John.Gibbs@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2019, I electronically filed the foregoing using the CM/ECF system, which will send a notification of such filing to counsel of record.

Respectfully submitted,

/s/
James P. Gillis
Assistant United States Attorney