IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

UNITED STATES OF AMERICA

v.

BIJAN RAFIEKIAN, *et.al.*

Defendants.

Case No. 1:18-CR-457-AJT

GOVERNMENT'S RESPONSE TO MOTION
FOR USE OF A WRITTEN JURY QUESTIONNAIRE

The United States of America, by and through its undersigned counsel, hereby files this response in opposition to the defense Motion for a Written Jury Questionnaire (Docket Nos. 152-153).

The defense Motion and Memorandum of Law asks the Court to use a jury questionnaire prior to the in-court voir dire session normally used to select the members of a jury. The defense argues that a questionnaire is appropriate for three primary reasons: 1) due to the "significant pretrial publicity in this case;" 2) because they claim this "case will be more complex than in a typical criminal case;" and 3) because it will foster "transparency by permitting jurors to provide information on sensitive topics that are critical in Mr. Rafiekian's case, free from the influence of other jurors' responses." Memorandum of Law at 5-6. As a threshold matter, the Court can easily question the proposed jurors about any pretrial publicity they may have been exposed to without the aid of a questionnaire. Also, the government takes issue with the notion that this case will be more complex than a typical criminal case. This is a single defendant case in which the defendant is only charged in two counts. While these offenses are not charged extremely

1

frequently, this case will proceed as most criminal cases do - with the testimony of witnesses and the presentation of marked trial exhibits. There is nothing so unique or novel about this prosecution to warrant a jury questionnaire. Finally, if any proposed jurors feel uncomfortable answering certain questions, it would be appropriate to have them give those answers at the bench. This is a practice that is regularly followed in this District.

### A. The district court has broad discretion in conducting voir dire.

"The essential function of voir dire" is "to allow for the impaneling of a fair and impartial jury through questions which permit the intelligent exercise of challenges by counsel." *United States v. Brown*, 799 F.2d 134, 135 (4th Cir. 1986) (internal quotations omitted). The district court has broad discretion in conducting voir dire, *see, e.g.*, *Ristaino v. Ross*, 424 U.S. 589, 594-95 (1976), and particularly broad discretion in deciding which specific questions may be asked, *see, e.g.*, *Mu'Min v. Virginia*, 500 U.S. 415, 430 (1991). So long as the court conducts an adequate examination of potential jurors, it may deny defense counsel the ability to individually examine potential jurors. *United States v. Bailey*, 112 F.3d 758, 769 (4th Cir. 1997). The court's discretion extends to the method used to perform voir dire; there is no requirement that a questionnaire be used. *See, e.g.*, *United States v. Rivera*, 292 F. Supp. 2d 823, 826 n.3 (E.D. Va. 2003) (Ellis, J.) (holding that because the standard court-led voir dire procedure "provides an adequate means of ensuring the selection of an impartial jury in this case … defendants' pre-trial motion to permit the use of a juror questionnaire and counsel-conducted sequestered voir dire was properly denied").

### B. Nothing about this case suggests that the standard court-led voir dire would be ineffective.

While substantive juror voir dire questionnaires are sometimes used in capital cases—where the stakes for the defendant are so high, and where voir dire requires answers to difficult questions regarding whether jurors would *ever* vote to impose the death penalty—this case will not require proposed jurors to answer those sorts of questions. Simply put, nothing about this case is so unique that it requires a voir dire proceeding different than that used in other similar cases in this Court.

The Court has substantial experience conducting thorough and fair voir dire proceedings and jury selections. The defense does not dispute that. The argument, instead, is that prospective jurors would for whatever reason be more open and honest in filling out a questionnaire than they would be answering questions from a federal judge in person. That proposition rejects a basic premise of American law, which presupposes that in-court statements made under oath, where the declarant's demeanor can be observed and his answers subjected to further questioning, is the optimal way to test the truth. *Cf., e.g.*, *California v. Green*, 399 U.S. 149, 158 (1970). The defense argument is also in tension with the longstanding presumption that jurors are able to act impartially, heed jury instructions, and render a fair verdict based on the evidence. *See, e.g.*, *Irvin v. Dowd*, 366 U.S. 717, 722-23 (1961) (holding that there is no requirement jurors be totally ignorant of the facts and issues involved, and that preconceived notions regarding guilt or innocence are insufficient "to rebut the presumption of a prospective juror's impartiality"); *see also Poynter v. Ratcliff*, 874 F.2d 219, 221-22 (4th Cir. 1989).

A West Virginia district court rejected a nearly identical argument in *United States v. Montes*, in which the defense requested a juror questionnaire because "social and privacy concerns relating to [certain] sensitive questions will likely result in jurors being less forthcoming in the

3

conventional, open air voir dire process." Crim. Case No. 5:12cr29, 2013 WL 1347284, at *3 (N.D. W.Va. Apr. 3, 2013). As the court explained, "careful crafting of voir dire questions, as well as affording potential jurors the opportunity to answer more sensitive questions privately with only the Court, the parties, and counsel present, provides the same level of privacy as a questionnaire, and adequately addresses the defendants' concerns." *Id.* The court held, in denying the motion, that "not only can any concern regarding candor of potential jurors be adequately addressed in a traditional voir dire process, but also that the use of a written questionnaire may actually impair this Court and the parties' ability to assess potential jurors' fitness to serve on the jury in this case." *Id.*

The same is true here. The standard voir dire process used in this Court—in which prospective jurors identified by juror number answer the Court's questions, and then speak privately with the Court, parties, and counsel regarding any follow-up issues or questions of a sensitive nature—is more than adequate to select a fair and impartial jury.

### C. A jury questionnaire will impose a burden far beyond any benefit

The defense proposes to file its jury questionnaire within seven days of trial. Memorandum of Law at 7. Since the government has not seen any proposed questions, it cannot comment on the appropriateness of what the defense wishes to ask. Yet when the government has an opportunity to review proposed questions, it would want the opportunity to object to any questions which are primarily aimed at arguing the defense theory of the case. This would not be appropriate, and the government could potentially want to offer questions of its own. If the defense only allows seven days for this process, it is clear that there would be very little time to get the questions to the jury, get them back, and then evaluate the answers. Ultimately, the

4

foregoing demonstrates that this is an unwieldy and unnecessary process. Voir dire should be conducted in this case the way it is routinely done in this District – by the Court with input from the attorneys. There is no reason to deviate from this well-settled practice.

## **CONCLUSION**

For the reasons stated above, the Motion should be denied.

Respectfully submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

| | |
|---|---|
|         /s/ | By:     /s/ |
| Evan N. Turgeon | John T. Gibbs |
| Trial Attorney | Virginia Bar No.40380 |
| Counterintelligence | James P. Gillis |
|     and Export Control Section | Virginia Bar No. 65055 |
| National Security Division | Assistant United States Attorneys |
| United States Department of Justice | Katie Sweeten |
| 950 Pennsylvania Ave., NW | Special Assistant United States Attorney |
| Washington, DC 20530 | The Justin W. Williams |
| (202) 353-0176 |    United States Attorney's Office |
| Evan.Turgeon@usdoj.gov | 2100 Jamieson Avenue |
| | Alexandria, VA 22314 |
| | (703) 299-3700 |
| | (703) 299-3982 (fax) |
| | James.P.Gillis@usdoj.gov |
| | John.Gibbs@usdoj.gov |

CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2019, I electronically filed the foregoing using the CM/ECF system, which will send a notification of such filing to counsel of record.

Respectfully submitted,

/s/
John T. Gibbs
Assistant United States Attorney