IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.  )<br>) No. 1:18-CR-457-AJT<br>BIJAN RAFIEKIAN, et al.,  )<br>)<br>    Defendants.  ) | |

**SPECIALLY APPEARING DEFENDANT KAMIL. EKIM ALPTEKIN'S OPPOSITION TO <u>GOVERNMENT'S MOTION TO ESTABLISH CRIME-FRAUD EXCEPTION</u>**

## I.    <u>INTRODUCTION</u>

In July 2016, Defendant Kamil Ekim Alptekin approached the Flynn Intel Group, Inc. ("FIG") (headed by General Michael T. Flynn and Bijan Rafiekian) to, among other things, provide advice on certain aspects of the U.S.-Turkey relationship.  Although Alptekin retained FIG through his Dutch company, Inovo BV, it was his hope that ultimately the Turkish Government would take over and enlarge the scope of the Inovo-FIG contract and Alptekin would collect a commission for his efforts.  That never happened.  The Inovo-FIG contract expired on November 15, 2016.

The U.S. Government (the "Government") did not believe that Alptekin and Inovo retained FIG on their own behalf, but rather believed that they were fronts for the Turkish Government.  Accordingly, the Government indicted Alptekin for: (1) conspiring (with a FIG director Rafiekian) to violate 18 U.S.C. § 951 (acting as an undisclosed foreign agent) and 22 U.S.C. § 618(a)(1) (filing a false Foreign Agents Registration Act ("FARA") registration statement); (2) violating 18 U.S.C. § 951; and (3) violating 18 U.S.C. § 1001 (making false statements to the Government).

1

Now, the Government wants to vitiate the attorney-client privilege between Alptekin and Arent Fox LLP, his former counsel, on the ground that Alptekin allegedly made "false factual statements" to Arent Fox in furtherance of the crimes he is charged with in the indictment (except the 18 U.S.C. § 1001 count).

Setting aside the fact that Alptekin committed no crimes, the Government's attempt to invoke the crime-fraud exception fails for several additional reasons. *First*, the Government fails to introduce sufficient evidence that Alptekin was engaged in any crimes when he sought advice from Arent Fox. For the alleged violations arising out of 18 U.S.C. § 951, Alptekin could not have retained Arent Fox in connection with those violations because he retained Arent Fox only after those alleged violations took place. And for the alleged violation arising out of 22 U.S.C. § 618(a)(1), the Government's evidence simply does not make a *prima facie* case of any violations. *Second*, by failing to identify the information that it seeks under the crime-fraud exception, the Government fails to carry its burden of demonstrating that the documents it seeks bear a close relationship to any alleged crimes. Accordingly, the Court should deny the Government's Motion.

## II. THE GOVERNMENT'S INVOCATION OF THE CRIME-FRAUD EXCEPTION

To obtain attorney-client communications based on the crime-fraud exception, the proponent of the exception must make a *prima facie* showing that: "(1) the client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme, and (2) the documents containing the privileged materials bear a close relationship to the client's existing or future scheme to commit a crime or fraud." *In re Grand Jury Proceedings #5 Empanelled [Sic] Jan. 28, 2004*, 401 F.3d 247, 251 (4th Cir. 2005). As demonstrated below, the Government fails to satisfy either prong of this test.

As a preliminary matter, before reaching an analysis of the relevant test, the

Government's repeated references to the Superseding Indictment as establishing its *prima facie* for application of the crime-fraud exception demonstrates that the Government's entire motion is tautological and therefore should be denied.  The Government states that because the grand jury found probable cause to indict, it has made a *prima facie* case for the application of the crime-fraud exception.  Yet this approach has been rejected by courts before.  Judge Cedarbaum in the Southern District of New York addressed this particular situation:

> The Government's argument that the existence of the Indictment in this case eliminates attorney-client privilege or work product protection with regard to evidence relating to statements charged in the Indictment is not persuasive. The crime-fraud exception does not provide the broad elimination of attorney-client privilege and work product protection that the Government seeks. As Judge Winter pointed out in *In re Richard Roe,* "the crime-fraud exception does not apply simply because privileged communications would provide an adversary with evidence of a crime or fraud.  If it did, the privilege would be virtually worthless because a client could not freely give, or an attorney request, evidence that might support a finding of culpability." *In re Richard Roe, Inc.,* 68 F.3d 38, 40 (2d Cir. 1995). Instead, confidential communications must be in furtherance of the criminal or fraudulent conduct for the crime-fraud exception to apply.  *See id.* If the law were otherwise, every defendant accused of a crime involving the making of false statements to a government agency would lose the protection of the attorney-client privilege with respect to prior statements to his lawyer concerning the same subject matter.  Although an indictment may provide probable cause to believe that the crime charged was committed, an indictment, standing alone, does not provide probable cause to believe that Stewart's communications with her lawyers were in furtherance of the conduct charged in the Indictment.

*United States v. Stewart*, No. 03 CR. 717 (MGC), 2003 WL 23024461 at *2 (S.D.N.Y. Dec. 29, 2003).  Here, as well, the Government is attempting to prove its prima facie case by simply relying on the allegations in the Indictment.  The Government's logic is that because the grand jury has alleged Alptekin lied, then they Court may assume that he lied to his lawyers.  That, however, is not sufficient to establish the crime-fraud exception.

3

### A. The First Prong: The Government Does Not Demonstrate That Alptekin Was Engaged In Any Criminal Conduct When He Sought Arent Fox's Advice

The Government fails to demonstrate that Alptekin was engaged in any criminal conduct when he sought Arent Fox's advice. The crimes that Government relies on to establish the crime-fraud exception are: (1) conspiracy to violate 18 U.S.C. § 951 (acting as an undisclosed foreign agent) and 22 U.S.C. § 618(a)(2) (filing a false FARA registration statement); and (2) violations of 18 U.S.C. § 951. (Mot. 7.) The Government does not establish this criminal conduct.

**18 U.S.C. § 951.** 18 U.S.C. § 951 makes it a crime for a person to act "as an agent of a foreign government without prior notification to the Attorney General." The Government contends that Alptekin violated this statute because he acted as an undisclosed agent of the Turkish Government during the Inovo-FIG contract. (*See generally* Mot.; Dkt. 141, Superseding Indictment, Count One, ¶ 2(a).)

Even if Alptekin violated 18 U.S.C. § 951 statute (which he did not), the violation could not serve as the basis of the crime-fraud exception's first prong. The Inovo-FIG engagement, which forms the basis of the Government's 18 U.S.C. § 951-related charges, ended on November 15, 2016. (Mot. Ex. 61 (Dkt. 182-8 at 14.) Alptekin retained Arent Fox *after* that date. (Mot. 3; Declaration of Nafiz Cekirge ("Cekirge Decl.") Ex. 1.) From a temporal perspective, it is impossible that Alptekin "was engaged in or planning a criminal or fraudulent scheme" arising out of 18 U.S.C. § 951 "when he sought the advice of [Arent Fox]." *In re Grand Jury Proceedings #5 Empanelled [Sic] Jan. 28, 2004*, 401 F.3d at 254. *See also United States v. Zolin*, 491 U.S. 554, 562-63 (1989) (holding that for the crime-fraud exception to apply, "the desired advice [must] refer[ ] . . . to *future wrongdoing*." (emphasis in the original)); *Cont'l Cas. Co. v. Am. Home Assur. Co.*, No. CIV.A. 2:00-0260, 2010 WL 692942, at *3 (S.D.W. Va.

Feb. 23, 2010) ("Inasmuch as the alleged fraudulent scheme identified by the magistrate judge could not extend past . . . June 6, 1997, . . . the crime-fraud exception in no way affects any privilege attached to document 81, which was created six months later on December 5, 1997.").

**22 U.S.C. § 618(a)(2).** The Government contends that Alptekin carried out his part in the conspiracy to violate 22 U.S.C. § 618(a)(2) in connection with FIG's FARA filing by making "several false statements and omissions . . . to Arent Fox for inclusion in FIG's March 2017 FARA filing." (Mot. 4-5.) Specifically, the Government claims that Alptekin falsely told FIG's lawyers that (1) General Flynn filed a November 2016 op-ed involving Turkey "on his own initiative" and Inovo did not "direct[ ] publication of the op-ed"; and (2) "Inovo . . . had retained FIG because Inovo had been hired by an Israeli company with an interest in establishing an oil pipeline in Turkey." (Mot. 5.)

The Op-Ed. Although the Government cites to a number of exhibits to support its position that Alptekin lied about not directing the op-ed, a close examination of the exhibits does not suggest in any way that Alptekin, Inovo, or the Turkish Government directed the op-ed. (Mot. 4, Exs. 42, 45A, 45B, 47, 48A, 48B.)[1] These exhibits only demonstrate that Rafiekian is keeping Alptekin in the loop on the article.

In fact, one of the Government's own exhibits suggests that Alptekin was not directing the op-ed efforts. In an e-mail to Alptekin, Kian acknowledges Alptekin's "concern[s]" regarding the article, yet General Flynn press forward with the article anyway. (Mot. Ex. 48A.) This is a telltale sign that Alptekin was not directing the op-ed process; if he was, General Flynn would surely have listened to his client Alptekin.

Similarly, in an e-mail from Alptekin to Rafiekian approximately a month after the op-ed

---

[1] Although the Government cites to Exhibit 49, that Exhibit appears to be missing.

5

was published, Alptekin states that he "very clearly . . . advised against" the op-ed and "did not write or ask for the article to be written." (Cekirge Decl. Ex. 2.)

Moreover, the Government's theory that FIG's "FARA filing contained . . . misrepresentations" regarding the op-ed because of "Alptekin's lies" is illogical. (Mot. 5.) FIG knew who was in control of the op-ed just as well as Alptekin. It does not make sense that FIG would rely on Alptekin's statements in making representations about the op-ed in its FARA filing.

Further, anyone with any familiarity with the current Turkish Government would know that it is unthinkable that someone like Alptekin, who was trying to have the Turkish Government take over the Inovo-FIG contract, would approve an op-ed that compared Fetullah Gülen, who was the Turkish Government's arch-nemesis, to the Muslim Brotherhood, which was well-liked by the Turkish Government. *See* Krishnadev Calamur, "The Turkish President's Arch-Nemesis," The Atlantic (July 18, 2016), *https://www.theatlantic.com/news/archive/2016/07/fethullah-gulen-reading-list/491720/*; Fehim Tastekin, "US Condemnation of Muslim Brotherhood Would Cost Turkey Dearly," Al-Monitor (May 10, 2019), https://www.al-monitor.com/pulse/originals/2019/05/turkey-can-erdogan-give-up-on-muslim-brotherhood.html. This comparison would have been a serious blunder. This Court should not rely on allegations that are illogical on their face to establish a *prima facie* case.

The Ratio Contract. The Government also claims that Alptekin lied about engaging FIG in connection with its contract with an Israeli company called Ratio Oil Exploration LP interested in establishing an oil pipeline in Turkey. (Mot. 5.) Despite claiming that "documentary evidence obtained from Ratio itself show[ed] that whatever was the work Alptekin and Inovo were to perform for Ratio, it had nothing to do with FIG or the Turkey project," the

Government proffers none of this allegedly existing evidence to demonstrate that Alptekin was being untruthful on the Ratio issue. (Mot. 5.)

Thus, the Government does not establish that Alptekin was committing any crimes at the time it hired Arent Fox vis-à-vis Ratio. The Government therefore fails to meet the first prong of the crime-fraud exception.

### B. The Second Prong: The Government Does Not Demonstrate That The Materials It Seeks From Arent Fox Bear A Close Relationship To Alptekin's Alleged Fraud

The scope of the crime-fraud exception is narrow: it "does not extend to all communications made in the course of the attorney-client relationship, but rather is limited to those communications and documents in furtherance of the contemplated or ongoing criminal or fraudulent conduct." *In re Grand Jury Subpoena*, 419 F.3d 329, 343 (5th Cir. 2005).

For a court to properly determine what documents fall within the crime-fraud exception, the proponent of the exception must proffer some "evidence of the contents of the[ ] documents" at issue; otherwise, there is simply no way for this Court to "conclude[ ] that any sort of relationship exists between the allegedly privileged documents and the alleged crime." *In re Grand Jury Proceedings #5 Empanelled [Sic] Jan. 28, 2004*, 401 F.3d at 254.

Here, the Government does not identify any documents that it seeks, let alone provide any evidence of their contents and how they relate to Alptekin's alleged crimes.[2] Rather, the Government asks for all "statements made by defendant Ekim Alptekin to his attorneys at Arent Fox LLP, or other information or documents provided by him to the firm," so that it can obtain "evidence of what factual representations Alptekin made to the attorneys in connection with the drafting of FIG's FARA filing." (Mot. 1, 7.)

---

[2] The fact that there are no documents in front of the Court to even review demonstrates that the Government's Motion is premature and should be denied on this ground alone.

In essence, the Government is not seeking attorney-client communications after it determined that these communications facilitated a fraud but rather it is seeking information from Arent Fox to determine if a crime or fraud was committed in the first place. This is highly improper. The crime-fraud exception is not a broad evidence-gathering device—even if the privileged information that the Government seeks "would provide [it] with evidence of a crime or fraud." *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995). What the Government is doing here is exactly the type of "groundless fishing expedition[ ]" that courts have cautioned against. *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1416 (11th Cir. 1994) (internal quotations and citation omitted). The Court should deny the Government's Motion.

### III.  CONCLUSION

Casting its *allegations* as undisputed criminal conduct, the Government asks the Court to issue a limitless order giving the Government access to all of Alptekin's privileged materials, so that it can go on a fishing expedition to find documents that it hopes can bolster its deeply flawed case. This is a misuse of the crime-fraud exception. The Court should see it for what it is and deny the Government's Motion.

Respectfully submitted this 6th day of June 2019.

> By: /s/ Rodney F. Page
> Rodney F. Page (Virginia Bar No. 12401)
> Jennifer Kies Mammen (Virginia Bar No. 73102)
> **BRYAN CAVE LEIGHTON PAISNER LLP**
> 1155 F Street, N.W.
> Suite 700
> Washington, D.C. 20004
> Telephone: (202) 508-6000
> Facsimile: (202) 508-6200
> Rodney.Page@bclplaw.com
> Jennifer.Mammen@bclplaw.com
>
> *Attorneys for Specially-Appearing Defendant Kamil Ekim Alptekin*

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 1:18-CR-457-AJT |
| ) | |
| BIJAN RAFIEKIAN, et al., ) | |
| ) | |
| Defendants. ) | |

DECLARATION OF NAFIZ CEKIRGE

I, Nafiz Cekirge, declare:

1. I am an attorney duly licensed to practice law before the courts of New York and California. I am a partner of the law firm of Bryan Cave Leighton Paisner LLP, counsel for Specially Appearing Defendant K. Ekim Alptekin. I submit this declaration in support of Alptekin's Opposition to the Government's Motion to Establish Crime-Fraud Exception (the "Motion"). I have personal knowledge of the matters set forth in this declaration, and if called upon to testify as a witness, I could and would testify competently as to such matters.

2. Attached as Exhibit 1 is a true and correct copy of a Document Bates numbered Alptekin 000926 produced by Alptekin to the Government.

3. Attached as Exhibit 2 is a true and correct copy of a Document Bates numbered Alptekin 000927-28 produced by Alptekin to the Government.

I declare under penalty of perjury under the laws of the United States and the State of New York that the foregoing is true and correct.

Executed on June 6, 2019, at New York, New York.

Nafiz Cekirge

1

# CEKIRGE DECLARATION EXHIBIT 1

---------- Forwarded message ----------
From: **Ekim Alptekin** <ekimalptekin@gmail.com>
Date: Mon, Dec 26, 2016 at 6:00 PM
Subject: Article of General Flynn
To: BK <bijanklan@gmail.com>

You are reading a secure message, protected by Virtru
No expiration date

---

Dear Bijan,

As I stated to members of the press repeatedly I never interacted with General Flynn regarding his article that appeared in the Hill and when I became aware of his intentions to publish I very clearly told you that I advised against it. You answered that you couldn't convince the General not to publish upon which I asked if I could advice certains changes which you said would be inappropriate to suggest.

In short, I did not write or ask for the article to be written. On the contrary. Our email communications should clarify this but I was unable to retrieve them.

Best regards,

Ekim Alptekin

Alptekin 000926

# CEKIRGE DECLARATION EXHIBIT 2



---------- Forwarded message ----------
From: **Ekim Alptekin** <ekimalptekin@gmail.com>
Date: Wed, Jan 18, 2017 at 2:45 PM
Subject: Fwd: Time sensitive- Ekim Alptekin- engagement letter
To: Bijan Kian <bijankian@gmail.com>


Dear Bijan,

I hope you are well. I know you are busy but frankly this is a priority for me and I thought it might be good for you to have as well.

As my integrity was questioned, I asked one of the most reputable legal experts in Washington DC whether any of the accusations in some media reports have legal basis.

Alptekin 000927

Although there is no connection between INOVO BV and TAIK, he looked at TAIK too in great detail. He even asked for all available pictures of my election process as chairman of TAIK which are attached. The research took weeks and they kept asking additional information. I supplied him with everything he asked for and anything I could possibly think of including emails, official statutes etc and asked him to independently validate and research everything. All documents were independently translated by sworn translators and notarized. Attached is his legal opinion and I am happy to report he agrees with me (pls remember I am a lawyer too) that there is absolutely no legal basis to any of the criticism that came my way.

My good name has suffered a blow for no reason whatsoever and I hope you will take the time to read the opinion.

Best regards,

Ekim Alptekin


Begin forwarded message:

> **From:** "Nolan, Matthew" <Matthew.Nolan@arentfox.com>
> **Date:** 18 January 2017 at 12:39:36 GMT-5
> **To:** Ekim Alptekin <ekimalptekin@gmail.com>
> **Cc:** "Akyuz, Sule" <Sule.Akyuz@arentfox.com>
> **Subject: RE: Time sensitive- Ekim Alptekin- engagement letter**
>
> Ekim Bey:
>
> Final version attached.
>
> I have signed the memo.
>
> Best regards,
>
> **Matthew M. Nolan**
>
> Partner

Alptekin 000928