## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | **:** | |
| | **:** | |
| **v.** | **:** | **Criminal Case No. 1:18-CR-457 (AJT)** |
| | **:** | |
| **BIJAN RAFIEKIAN et al.** | **:** | |
| | **:** | |
| **Defendants.** | **:** | |

### DEFENDANT BIJAN RAFIEKIAN'S MEMORANDUM OF LAW IN SUPPORT OF
### <u>MOTION TO DISMISS THE INDICTMENT</u>

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................................1

BACKGROUND .............................................................................................................2

LEGAL STANDARD .....................................................................................................5

ARGUMENT ..................................................................................................................6

I.      COUNT TWO SHOULD BE DISMISSED .......................................................6

      A.      The Government Failed To Allege An Essential Element Of A Section 951 ...........6

            1.      Section 951 Requires The Government To Allege That The Defendant's Actions Are Not "Legal Commercial Transactions" ..............6

            2.      Whether An Act Is A "Legal Commercial Transaction" Is An Element Of The Section 951 Offense, Not An Affirmative Defense ..........9

            3.      "Legal Commercial Transaction" Should Be Construed As An Element Of The Section 951 Offense To Avoid Constitutional Concerns ............11

            4.      Even If An Affirmative Defense, The Face Of The Indictment Reveals Only "Legal Commercial Transactions" ....................................15

      B.      In the Alternative, Section 951 Is Unconstitutionally Vague As Applied To Rafiekian ...............17

II.     COUNT ONE SHOULD BE DISMISSED ........................................................21

      A.      Count One-(b) Should Be Dismissed Because It Fails To Allege A Necessary Element Of A Conspiracy ....................................21

      B.      Count One-(a) Should Also Be Dismissed...........................................24

CONCLUSION...............................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................23

*Boeckenhaupt v. United States*,
  392 F.2d 24 (4th Cir. 1968) ...........................................................................................20

*Bordenkircher v. Hayes*,
  434 U.S. 357 (1978) ........................................................................................................14

*Centro Tepeyac v. Montgomery Cty.*,
  722 F.3d 184 (4th Cir. 2013) .........................................................................................18

*Donaggio v. Arlington Cty., Va.*,
  880 F. Supp. 446 (E.D. Va. 1995), *aff'd*, 78 F.3d 578 (4th Cir. 1996) ....................14

*Elonis v. United States*,
  135 S. Ct. 2001 (2015) ....................................................................................................15

*Finn v. United States*,
  256 F.2d 304 (4th Cir. 1958) ...........................................................................................5

*Fondren v. United States*,
  63 F. Supp. 3d. 601 (E.D. Va. 2014) .............................................................................20

*Gooding v. Wilson*,
  405 U.S. 518 (1972) ........................................................................................................13

*Johnson v. United States*,
  135 S. Ct. 2551 (2015) ....................................................................................................18

*Jones v. United States*,
  526 U.S. 227 (1999) ........................................................................................................11

*Kolender v. Lawson*,
  461 U.S. 352 (1983) ........................................................................................................18

*Laird v. Tatum*,
  408 U.S. 1 (1972) ............................................................................................................13

*Liberty Lobby, Inc. v. Pearson*,
  390 F.2d 489 (D.C. Cir. 1967) .......................................................................................14

*Lytle v. Doyle*,
  197 F. Supp. 2d 481 (E.D. Va. 2001), *aff'd on other grounds*, 326 F.3d 463
  (4th Cir. 2003)...................................................................................................13

*Reno v. Am. Civil Liberties Union*,
  521 U.S. 844 (1997)...........................................................................................18

*Russell v. United States*,
  369 U.S. 749 (1962))......................................................................................5, 22

*Smith v. Goguen*,
  415 U.S. 566 (1974)...........................................................................................18

*United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*,
  389 U.S. 217 (1967)...........................................................................................14

*United States v. Aguilar*,
  515 U.S. 593 (1995)...........................................................................................14

*United States v. Amirnazmi*,
  645 F.3d 564 (3d Cir. 2011)..............................................................................20

*United States v. Balint*,
  258 U.S. 250  (1922)..........................................................................................15

*United States v. Campa*,
  529 F.3d 980 (11th Cir. 2008) ..........................................................................20

*United States v. Chung*,
  659 F.3d 815 (9th Cir. 2011) ............................................................................20

*United States v. Daniel*,
  3 F.3d 775 (4th Cir. 1993) ............................................................................9, 10

*United States v. Daniels*,
  973 F.2d 272 (4th Cir. 1992) ...........................................................................5, 6

*United States v. Darby*,
  37 F.3d 1059 (4th Cir. 1994) ..........................................................................5, 8

*United States v. Davis*,
  184 F.3d 366 (4th Cir. 1999) ............................................................................11

*United States v. Duran*,
  596 F.3d 1283 (11th Cir. 2010) ..........................................................12, 15, 21

*United States v. Feola*,
  420 U.S. 671 (1975)...........................................................................................23

*United States v. George*,
    568 F.2d 1064 (4th Cir. 1978) ............................................................................................24

*United States v. Hooker*,
    841 F.2d 1225 (4th Cir. 1988) ...............................................................................5, 6, 7, 22

*United States v. Hoskins*,
    73 F. Supp. 3d 154 (D. Conn. 2014)...................................................................................15

*United States v. Hurwitz*,
    459 F.3d 463 (4th Cir. 2006) .........................................................................................10, 11

*United States v. Jackson*,
    926 F. Supp. 2d 691 (E.D.N.C. 2013)..............................................................................9, 22

*United States v. Jaensch*,
    665 F.3d 83 (4th Cir. 2011) ...............................................................................................19

*United States v. Kingrea*,
    573 F.3d 186 (4th Cir. 2009) .........................................................................................5, 23

*United States v. Mariia Butina*,
    18-cr-218 (D.D.C. July 17, 2018) .........................................................................................9

*United States v. Nat'l Dairy Prod. Corp.*,
    372 U.S. 29 (1963)..............................................................................................................18

*United States v. Palin*,
    874 F.3d 418 (4th Cir. 2017) .............................................................................................22

*United States v. Pupo*,
    841 F.2d 1235 (4th Cir. 1988) .........................................................................................8, 9

*United States v. Quinn*,
    359 F.3d 666 (4th Cir. 2004) .............................................................................................22

*United States v. Sampson*,
    898 F.3d 270 (2d Cir. 2018)...............................................................................................15

*United States v. Soueid*,
    11-cr-494 (E.D. Va. Oct. 5, 2011) .......................................................................................9

*United States v. Spruill*,
    118 F.3d 221 (4th Cir. 1997) ...............................................................................................6

*United States v. Thomas*,
    367 F.3d 194 (4th Cir. 2004) ...............................................................................................6

*United States v. Thompson*,
  554 F.3d 450 (4th Cir. 2009) ...............................................................................9

*United States v. Truong Dinh Hung*,
  629 F.2d 908 (4th Cir. 1980) ......................................................................19, 20

*United States v. Turner*,
  836 F.3d 849 (7th Cir. 2016) ............................................................................20

*United States v. Weaver*,
  659 F.3d 353 (4th Cir. 2011) ............................................................................16

*United States v. Ying Lin*,
  15-cr-601 (E.D.N.Y. Dec. 6, 2017)..................................................................7, 9

**Statutes**

18 U.S.C.

  § 2 ........................................................................................................................5

  § 951...................................................................................................................5

  § 951(a) ...............................................................................................6, 7, 9, 11

  § 951(d)(4) ...........................................................................................1, 6, 7, 11

21 U.S.C. § 841(a) ...................................................................................................10

22 U.S.C. § 613(d) ...................................................................................................17

Pub. L. No. 80-772, § 951, 62 Stat. 683, 743 (1948)..................................................12

Pub. L. No. 98-473, § 1209, 98 Stat 1837, 2164 (1984)..............................................12

**Other Authorities**

28 C.F.R. § 73.1(f)...............................................................................................7, 17

Communist Bloc Intelligence Gathering Activities on Capitol Hill: Hearing on S.
  1959 and S. 1963 Before the S. Comm. on Security and Terrorism, 97th Cong.
  37 (1982)....................................................................................................12, 16, 21

Department of Justice, Frequently Asked Questions, *available at*
  https://www.justice.gov/nsd-fara/general-fara-frequently-asked-questions .............................7

Fed. R. Crim. P.

  7(c)(1) ................................................................................................................22

12(b)(1) .................................................................................................................................5

12(b)(3)(B) .......................................................................................................................1, 5

S. Rᴇᴘ. Nᴏ. 98-225 (1983).......................................................................................12, 13

U.S. Const.,

amend. I..........................................................................................................................14

amend. V .........................................................................................................................18

## INTRODUCTION

Pursuant to Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure, Defendant Bijan Rafiekian, through counsel, respectfully moves the Court to dismiss the Superseding Indictment ("Indictment").  Both Counts of the Indictment suffer from critical flaws that compel dismissal.

Most glaringly, Count Two of the Indictment, which charges Rafiekian with acting as an "agent of a foreign government" in violation of 18 U.S.C. § 951, omits an essential element of the offense:  That Rafiekian's actions were not "legal commercial transactions." 18 U.S.C. § 951(d)(4). In 1983, Congress responded to vagueness and overbreadth concerns expressed by both the judicial and executive branches by narrowing the definition of an "agent of a foreign government" to exclude any individual engaged solely in a "legal commercial transaction."  The government's Indictment, however, makes no mention of that offense element.  Quite the opposite:  The only acts that the government alleges Rafiekian took as an "agent" are openly selling commercial services—specifically, lobbying and consulting services—to a paying client.  Such acts not only fit comfortably within the "legal commercial transaction" definition promulgated by the Department of Justice, but are also fully protected by the First Amendment to the U.S. Constitution. To avoid obvious due process and free speech concerns, the government should be required to present to the grand jury and bear the burden of proving that Rafiekian's acts were not mere "legal commercial transactions"; it should not be allowed to invert that burden and force Rafiekian to demonstrate that his actions were *legal*.  That is especially true given that the "legal" and "commercial" nature of the acts in question are apparent from the face of the Indictment.

In the alternative, Count Two is unconstitutionally vague as applied to Rafiekian.  Because the government never alleges that Rafiekian did anything as an agent that was inherently criminal or non-innocent (*i.e.*, other than the Section 951 violation itself), Rafiekian could have had no way of knowing that his actions were illegal in this circumstance.  Unlike the typical Section 951 case

1

involving foreign agents engaging in espionage or quasi-espionage, this prosecution appears to be the first time the government has ever charged an individual as a foreign agent for openly selling services to paying clients through his consulting company—and after seeking advice of counsel and registering as a lobbyist, no less.  Given the rarity of prosecutions like this, and the vast potential for selective prosecution, Count Two should be dismissed as unconstitutionally vague as applied to Rafiekian's expressive, legal conduct.

This Court should also dismiss Count One, a conspiracy with two alleged criminal objects. With respect to the second object of the conspiracy—a putative agreement to willfully make false statements on FARA forms—Count One fails to allege the most "essential fact" (Fed. Crim. P. 7(c)(1)) necessary to state that claim:  an agreement between Rafiekian and any co-conspirator. The heart of a conspiracy is an agreement; mere parallel conduct, without more, does not an agreement make.  The government never alleges any facts supporting any "agreement."  Because the first object of the conspiracy—a supposed agreement to violate Section 951—is equally infirm, the court should dismiss the Indictment in its entirety.

## BACKGROUND

The following facts are drawn from the allegations in the Indictment, which are taken as true at this stage of the proceedings.  The charges against Rafiekian center on work relating to Turkey performed by the Flynn Intelligence Group ("FIG") on behalf of Inovo, BV, a Dutch company owned by co-defendant Kamil Ekim Alptekin.  FIG was co-founded and co-owned by Rafiekian (FIG's Vice-Chairman, Director, Secretary, and Treasurer), and former National Security Adviser Michael Flynn (FIG's Chairman and Chief Executive Officer).  Indictment ¶ 1. Until it ceased operations shortly after the 2016 election, FIG was a "U.S. company based in Alexandria, Virginia, that offered various services to its clients based upon [Flynn's] national security experience."  *Id.*

Although it is undisputed that FIG was engaged directly by, and signed a contract solely with, Inovo (*e.g.*, Indictment ¶ 22), the government maintains that the work was performed at the Turkish government's "Direction and Control" (Indictment p.10).  Yet, other than a September 19, 2016 meeting in New York City at which Turkish officials were present (Indictment ¶ 28), the Indictment does not allege even a single contact between Rafiekian (or anyone else from FIG) and any Turkish government official.

According to the Indictment, all of the work that FIG and Rafiekian performed as alleged "agents" related to a Turkish citizen—an "imam, writer, and political figure," Indictment ¶ 4— who resides in the United States.  According to the Indictment, "the Turkish government has accused the Turkish citizen of plotting to overthrow the Turkish government," of "being behind" certain politically motivated investigations in Turkey, and of "leading an armed terrorist group." Indictment ¶ 5.  The Government of Turkey has formally and openly sought extradition of the Turkish citizen from the United States government—efforts that "intensified after a failed coup d'état attempt in Turkey" that the Turkish government maintained the Turkish citizen "orchestrated."  Indictment ¶¶ 6–7.

Although the Indictment generally alleges that "RAFIEKIAN and ALPTEKIN conspired covertly and unlawfully to influence U.S. politicians and public opinion concerning a Turkish citizen living in the United States," Indictment ¶ 3, it specifically alleges only two relevant "acts" on behalf of the Turkish government and ministers—neither of which is alleged to be illegal.  First, the Indictment alleges that "RAFIEKIAN and others involved in the project visited with and lobbied a member of Congress, a Congressional staffer, and a state government official in an attempt to depict the Turkish citizen as a threat who should be returned to Turkey and to persuade them to hold Congressional hearings regarding the Turkish citizen."  Indictment ¶ 30.  Second, the

Indictment alleges that Rafiekian, working with Alptekin and Flynn, helped draft an op-ed concerning the Turkish citizen, and then helped place it for publication in The Hill newspaper under Flynn's name.  Indictment ¶ 5.  The Indictment fails to identify any other acts that Rafiekian is alleged to have undertaken as an agent of anyone else, let alone any such acts that allegedly violate federal or state law.  Instead, the government's own theory is that FIG merely provided consulting and lobbying "services" to the Turkish government, Indictment ¶ 1, which were designed to "influence U.S. politicians and public opinion," *id.* ¶ 3.[1]

According to the government, the publication of the op-ed triggered an inquiry by the FARA Registration Unit of the U.S. Department of Justice regarding whether FIG had a registration obligation.  Indictment ¶ 51.  In response to the inquiry, FIG hired attorneys with the law firm Covington & Burling LLP ("Covington") to assist with evaluating whether a FARA filing was required.  Covington ultimately filed a retroactive FARA registration on March 7, 2017, which the government alleges contains certain false statements.  Indictment ¶ 55.  The Indictment, however, does not allege that Rafiekian and Alptekin actually made any false statements themselves—nor could it, given that it was Flynn who actually signed the filings.  Instead, the government's theory is that Rafiekian conspired to have false statements made on the FARA forms, provided false information to the Covington attorneys in furtherance of that conspiracy, and the Covington attorneys then prepared the allegedly false forms that Flynn signed and filed.  *See* Indictment ¶ 52.

The Superseding Indictment, returned on May 23, 2019, charges two counts against Rafiekian.  Count One charges a conspiracy with Alptekin and others in violation of 18 U.S.C.

---

[1] Although not mentioned in the Indictment, Rafiekian also sought legal advice on his registration obligations on multiple occasions—and did, in fact, register as a lobbyist under the Lobbying Disclosure Act early in the relationship with Inovo.  *See generally* Dkts 127, 156, 176 (motion-in-limine briefing on advice of counsel defense).

§ 371 (a) to knowingly act and cause others to act in the United States as an agent for the government of Turkey without notifying the Attorney General in violation of 18 U.S.C. § 951 ("Count One-(a)"), and (b) to willfully file false information in the FARA Filing ("Count One-(b)"). Count Two alleges that Rafiekian knowingly acted and caused others to act in the United States as an agent for the government of Turkey without notifying the Attorney General in violation of 18 U.S.C. §§ 951, 2.

## LEGAL STANDARD

A criminal defendant "may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits," including "a defect in the indictment" such as a "failure to state an offense," Fed. R. Crim. P. 12(b)(1), (3)(B). In reviewing the indictment prior to the verdict, courts "apply a heightened scrutiny." *United States v. Hooker*, 841 F.2d 1225, 1229 (4th Cir. 1988) (en banc); *cf. Finn v. United States*, 256 F.2d 304, 307 (4th Cir. 1958) ("'Indictments and informations are construed more liberally after verdict than before.'").

"An indictment must contain the elements of the offense charged, fairly inform a defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense." *United States v. Daniels*, 973 F.2d 272, 274 (4th Cir. 1992) (citing *Russell v. United States*, 369 U.S. 749, 763–64 (1962)); *accord United States v. Kingrea*, 573 F.3d 186, 191 (4th Cir. 2009). "These criteria ensure that a defendant is afforded his constitutional guarantees under the Fifth Amendment, which provides that a defendant cannot be prosecuted for a capital or infamous crime except on presentment or indictment of a grand jury, and under the Sixth Amendment, which provides 'that a defendant must be informed of the nature and cause of the accusation against him.'" *United States v. Darby*, 37 F.3d 1059, 1063 (4th Cir. 1994) (quoting *Daniels*, 973 F.2d at 274).

To challenge the sufficiency of an indictment, a defendant must "demonstrate that the allegations therein, even if true, would not state an offense." *United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004).  If the government fails to allege all essential elements of an offense, a court should dismiss the faulty indictment and vacate any conviction thereunder.  *See Hooker*, 841 F.2d at 1230; *see also United States v. Spruill*, 118 F.3d 221, 227 (4th Cir. 1997) (vacating conviction where count failed to charge essential element of offense); *Daniels*, 973 F.2d at 275 (reversing conviction and remanding with instructions to dismiss count that was "fatally defective because it failed to specifically include every essential element of the charged offense").

## ARGUMENT

### I.     COUNT TWO SHOULD BE DISMISSED

#### A.     The Government Failed To Allege An Essential Element Of A Section 951 Offense

Count Two of the Indictment should be dismissed because it fails to allege an essential element of the offense:  that Rafiekian actions were not "legal commercial transaction[s]."  18 U.S.C. § 951(d)(4).

##### 1.     *Section 951 Requires The Government To Allege That The Defendant's Actions Are Not "Legal Commercial Transactions"*

Count Two charges Rafiekian with violating 18 U.S.C. § 951, which provides that "[w]hoever, other than a diplomatic or consular officer or attaché, acts in the United States as an agent of a foreign government without prior notification to the Attorney General . . . shall be fined under this title or imprisoned not more than ten years, or both."  18 U.S.C. § 951(a).  Subsection (d) defines an "agent of a foreign government" as "an individual who agrees to operate within the United States subject to the direction or control of a foreign government or official, except that such term does not include— . . . any person engaged in a *legal commercial transaction*."  18 U.S.C. § 951(d)(4) (emphasis added).  According to Department of Justice regulations, a "legal

commercial transaction" is "any exchange, transfer, purchase or sale, of any commodity, service or property of any kind, including information or intellectual property, not prohibited by federal or state legislation or implementing regulations."  28 C.F.R. § 73.1(f).

Although neither the Supreme Court or Fourth Circuit has ever specified the elements of a Section 951 offense, the statute's text requires that the government must affirmatively allege (and ultimately prove beyond a reasonable doubt) that a defendant was *not* engaged in "a legal commercial transaction."  That is because the definition of "agent of a foreign government" explicitly excludes "any person engaged in a legal commercial transaction."  18 U.S.C. § 951(a), (d)(4).  Otherwise, a person could face indictment and trial for being an "agent of a foreign government" even if he or she was never an "agent"—and thus did nothing illegal—under the statute's terms.  *See Hooker*, 841 F.2d at 1231 ("essential element of a crime" is "one whose specification . . . is necessary to establish the very illegality of the behavior and thus the court's jurisdiction") (internal quotations and citation omitted; alteration in original).  That is presumably why, in a recent indictment in the Eastern District of New York charging a Section 951 violation, the government expressly alleged that "[t]he offense conduct charged herein engaged in by the defendant . . . did not constitute a legal commercial transaction."  Superseding Indictment, *United States v. Ying Lin*, 15-cr-601 (E.D.N.Y. Dec. 6, 2017), at ¶ 16.[2]

Nothing in this Indictment, however, makes such an allegation—not even in conclusory fashion.  *See Hooker*, 841 F.2d at 1227–28 ("[I]n testing the sufficiency of an indictment, 'it is the statement of facts in the pleading, rather than the statutory citation that is controlling.'") (internal

---

[2] That reading is also consistent with the DOJ's website, which explicitly carves out those engaged in "legal commercial transactions" from the statute's reach.  *See* Department of Justice, Frequently Asked Questions, *available at*  https://www.justice.gov/nsd-fara/general-fara-frequently-asked-questions  ("18 U.S.C. § 951 provides criminal penalties for anyone, other than a diplomat, to operate as an agent of a foreign government without first notifying the Attorney General, *unless the agent is engaged in legal commercial transaction*.") (emphasis added).

citations omitted).  In fact, the only two "acts" the government alleges Rafiekian did as an agent

of Turkey (or anyone else) are the following:

- that "in or about September  and October 2016, RAFIEKIAN and others involved in the project visited with and lobbied a member of Congress, a Congressional staffer, and a state government official in an attempt to depict the Turkish citizen as a threat who should be returned to Turkey and to persuade them to hold Congressional hearings regarding the Turkish citizen."

- that Rafiekian played a role in drafting, revising, and placing for publication (under Michael Flynn's name) an editorial in *The Hill* and on its website.

Indictment ¶¶ 30, 41–50.  But the government never contends that those acts (or any other) are not

"commercial"—let alone not "legal."  Accordingly, the grand jury returned an indictment without

ever being asked to consider whether the nature of the conduct alleged excluded Rafiekian from

the statute's reach, and prevented him from being a foreign "agent," as a matter of law.

　　"[W]hen an indictment fails to include an essential element of the offense charged, it

thereby fails to charge *any* federal offense."  *United States v. Pupo*, 841 F.2d 1235, 1239 (4th Cir.

1988).  Because "[t]he Fifth Amendment requires a grand jury to examine and find sufficient

evidence of every element of the offense listed in the indictment," *Darby*, 37 F.3d at 1064 n.3,

"mere reference to the applicable statute does not cure the defect," *id.* at 1063.  For the same

reason, "a jury instruction cannot cure the omission from the indictment of an essential element of

the offense."  *Id.* at 1064 n.3.  The proper recourse is therefore dismissal.  *See Pupo*, 841 F.2d at

1239 ("We have uniformly dismissed on objection before verdict indictments for failure to include

an essential statutory element despite the inclusion of a citation to the statute itself in the

indictment.").[3]

---

[3] For similar reasons, the Indictment also fails to allege another essential element of a Section 951 violation: That Rafiekian is not "a diplomatic or consular officer or attaché."  *See* 18 U.S.C. § 951(a) ("Whoever, *other than a diplomatic or consular officer or attaché*, acts in the United States as an agent of a foreign government without prior notification to the Attorney General if required in subsection (b), shall be" punished.) (emphasis added).  That omission is all the more glaring because it stands in stark contrast to the government's recent charging practices in

2.   *Whether An Act Is A "Legal Commercial Transaction" Is An Element Of The Section 951 Offense, Not An Affirmative Defense*

Whether an action constitutes a "legal commercial transaction" is an element of the offense, and is not properly considered an affirmative defense.   "The Fourth Circuit . . . has a narrower definition of affirmative defenses" than some other circuits.   *United States v. Jackson*, 926 F. Supp. 2d 691, 716 (E.D.N.C. 2013).   In this Circuit, "'an affirmative defense does not negate an element of a crime; it excuses punishment for a crime the elements of which have been established and admitted.'"   *United States v. Thompson*, 554 F.3d 450, 452 n.2 (4th Cir. 2009) (unlike statutory elements, "[a]ffirmative defenses operate to excuse criminal liability").   As already noted, the government cannot "establish[]" that Rafiekian was an unregistered "agent of a foreign government" without alleging that his actions were not "legal commercial transactions."   In other words, 18 U.S.C. § 951(d)(4) does not "excuse[] punishment" for a specific category of foreign "agents," as an affirmative defense would; instead, the statute never even considers an individual engaged in legal commerce to be a foreign "agent" in the first place.   Because being a foreign agent is the *sine qua non* of the Section 951 offense, an indictment's failure to adequately allege agency status means that it "fails to charge *any* federal offense."   *Pupo*, 841 F.2d at 1239.

The Fourth Circuit's analysis in *United States v. Daniel*, 3 F.3d 775 (4th Cir. 1993), is instructive.   That case involved an alleged violation of 21 U.S.C. § 841, which provides that, "[e]xcept as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally-- (1) to manufacture, distribute, or dispense, or possess with intent to manufacture,

---

other cases.  *See, e.g.*, Superseding Indictment, *United States v. Ying Lin*, 15-cr-601 (E.D.N.Y. Dec. 6, 2017), at ¶ 15 ("At no time was the defendant . . . a duly accredited diplomatic or consular official of a foreign government," nor did he otherwise fall within Sections 951(d)(1)–(3)); Indictment, *United States v. Mariia Butina*, 18-cr-218 (D.D.C. July 17, 2018), at ¶ 4 ("At no time was BUTINA a duly accredited diplomatic or consular officer," nor did she otherwise fall with Subsections 951(d)(1)–(3)); Indictment, *United States v. Soueid*, 11-cr-494 (E.D. Va. Oct. 5, 2011), at ¶ 4 ("At no time material to this Indictment was defendant … a duly accredited diplomatic or consular officer of a foreign government," nor did he otherwise fall within Subsections 951(d)(1)–(3)).

distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a). A separate section, Section 822(b), "authorizes distribution and dispensation by registrants"—usually medical doctors—"'to the extent authorized by their registration and in conformity with the other provisions of this subchapter.'" *Daniel*, 3 F.3d at 778. Reading those two sections together, the Fourth Circuit interpreted the elements of a distribution charge brought against a doctor to require a specific allegation that the distribution was done "in a way not authorized by this subchapter"—a requirement satisfied by "the indictment's allegations that the attempted distributions or dispensations were 'not . . . for a legitimate medical purpose.'" *Id.* Subsequent cases involving doctors have gone on to characterize the "not for a legitimate medical purpose" language as an element of the offense. *See, e.g., United States v. Hurwitz*, 459 F.3d 463, 475 (4th Cir. 2006) (describing elements necessary to "convict a doctor for violating § 841" as "(1) 'that the defendant distributed or dispensed a controlled substance'; (2) that the defendant 'acted knowingly and intentionally'; and (3) 'that the defendant's actions *were not for legitimate medical purposes* in the usual course of his professional medical practice or were beyond the bounds of medical practice.'") (emphasis added).

A similar analysis applies in this case. To establish a Section 951 violation—at least, where, as here, the defendant is a business owner, lawyer, or other individual who legally sells commercial services to the public—the government must allege and ultimately prove beyond a reasonable doubt that the person has "act[ed] in the United States as an agent of a foreign government without prior notification to the Attorney General," and that the relevant "acts" are not "legal commercial transaction[s]." 18 U.S.C. § 951(a), (d)(4). Whether the "legal commercial transaction" is described as a component of another element (as in *Daniel*), or as a standalone element of the offense (as in *Hurwitz*), the end result is the same: Requiring the government to

10

charge and prove that element ensures that the grand jury only returns charges under Section 951 against actual foreign "agents" as defined by the statute.

>      3.      *"Legal Commercial Transaction" Should Be Construed As An Element Of The Section 951 Offense To Avoid Constitutional Concerns*

Even if there were some doubt about whether the "legal commercial transaction" language is an element of the offense or an affirmative defense, "[a]ny doubt" should be resolved under the rule, repeatedly affirmed, that 'where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter.'" *Jones v. United States*, 526 U.S. 227, 239 (1999). For example, the Supreme Court in *Jones*, relying in part on constitutional avoidance principles, construed the statutory term "serious bodily injury" to be an element of the offense that must be "charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt," rather than a mere sentencing consideration. *Id.* at 232; *see, e.g.*, *United States v. Davis*, 184 F.3d 366, 371 (4th Cir. 1999) (construing phrase "as an offense element under the canon of constitutional avoidance").

The constitutional avoidance rule applies out of "respect for Congress," which is presumed to legislate within constitutional boundaries. *Jones*, 526 U.S. at 239–40. In fact, the legislative history of Section 951 indicates that Congress added 18 U.S.C. § 951(d) in 1983 in response to specific concerns from both the Executive and Judicial branches regarding incipient constitutional concerns over an overbroad definition of foreign "agent." For many years following a 1948 amendment, the statute penalized anyone "other than a diplomatic or consular officer or attaché" who "acts in the United States as an agent of a foreign government without prior notification to the Secretary of State," without further qualification. Pub. L. No. 80-772, § 951, 62 Stat. 683, 743 (1948); *see United States v. Duran*, 596 F.3d 1283, 1295 n.7 (11th Cir. 2010). But at a

congressional hearing in 1982, the Department of Justice warned Congress of vagueness concerns

that had been expressed by at least one federal court.  *See* Communist Bloc Intelligence Gathering

Activities on Capitol Hill: Hearing on S. 1959 and S. 1963 Before the S. Comm. on Security and

Terrorism, 97th Cong. 37 (1982) ("Security and Terrorism Hearing") (statement of Mark Richard,

Deputy Assistant Att'y Gen., Criminal Division, Department of Justice ) ("[T]he Department does

believe that the Congress should define the term 'agent of a foreign government' . . . narrowly to

avoid the problems presented in the recent IRA gun smuggling case in Philadelphia, in which the

judge indicated that in the absence of clarifying regulations Section 951 was too vague to

adequately warn defendants that their conduct was proscribed.").  The State Department agreed

and also urged a narrower definition of the term "agent of a foreign government":

> We share the Department of Justice's concern that the absence of a definition of "agent of a foreign government" may cause problems. . . . We also believe that certain legitimate activities in this country on behalf of foreign governments should be exempt from the statute.  I have in mind American attorneys who represent foreign governments in American courts and individuals involved in legitimate business activities on behalf of a foreign client.

*Id.* at 27–28 (statement of Jeffrey H. Smith, State Department); *see also id.* at 31 (among

individuals who "need not, in our view, register with the Attorney General" are "people engaged

in legitimate representation of foreign governments in commercial activities").

In response to these and related concerns, Congress added subsection (d) to Section 951 in

1984.  *See* Pub. L. No. 98-473, § 1209, 98 Stat 1837, 2164 (1984).  The Senate Report for the

proposed bill specified that the amendment was designed to narrow the statute's reach to, among

other things, no longer "cover those individuals engaged in routine commercial matters."  S. REP.

NO. 98-225, at 451 (1983); *see id.* ("By excluding from the notification requirement several classes

of individuals who are presently covered, the proposal also limits the coverage of the statute by

focusing only on those in whom the United States government has a necessary interest," such as "individuals who represent foreign governments in political activities[.]").

In accord with Congress's goal of narrowing Section 951's scope to avoid vagueness and overbreadth concerns, the statute should be construed to require the government to allege that the defendant did not engage in a legal commercial transaction as an element of the offense. Section 951 implicates the First Amendment in at least two ways: It compels speech (by requiring potential speakers to register with the Attorney General in certain circumstances) and threatens to chill speech (by potentially discouraging speech from those unable or unwilling to register). *See Laird v. Tatum*, 408 U.S. 1, 11 (1972) ("[C]onstitutional violations may arise from the deterrent, or 'chilling,' effect of governmental regulations that fall short of a direct prohibition against the exercise of First Amendment rights."); *Gooding v. Wilson*, 405 U.S. 518, 521 (1972) (observing that "persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions provided by a statute susceptible of application to protected expression"). Courts apply "heightened scrutiny" to laws that "affect[] the First Amendment" by potentially "chilling" speech. *See Lytle v. Doyle*, 197 F. Supp. 2d 481, 489 (E.D. Va. 2001), *aff'd on other grounds*, 326 F.3d 463 (4th Cir. 2003). At a minimum, the government would have to demonstrate that "the statute in question is narrowly drawn." *See id.*

Here, Rafiekian faces a ten-year prison sentence for engaging in activities that are indisputably protected by the First Amendment to the U.S. Constitution. According to the government's own theory, the expressive activities in question were "services" FIG provided for a paying client that were designed to "influence U.S. politicians and public opinion," Indictment ¶ 3—*i.e.*, the sort of run-of-the-mill services routinely performed by lobbyists and lawyers. But the right to lobby—*i.e.*, "to petition the Government for a redress of grievances"—is not only legal,

but enshrined in the First Amendment to the U.S. Constitution.  U.S. Const., amend. I; *see Liberty Lobby, Inc. v. Pearson*, 390 F.2d 489, 491 (D.C. Cir. 1967) (Burger, J.) ("While the term 'lobbyist' has become encrusted with invidious connotations, every person or group engaged, as this one allegedly has been, in trying to persuade Congressional action is exercising the First Amendment right of petition.").  As this case makes clear, moreover, the right to petition is "intimately connected, both in origin and in purpose, with the other First Amendment rights of free speech and free press."  *United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967); *see Donaggio v. Arlington Cty., Va.*, 880 F. Supp. 446, 456 (E.D. Va. 1995) ("Lobbying is an activity at the core of the First Amendment, involving the rights to 'freedom of speech' and to 'petition the Government for a redress of grievances.'"), *aff'd*, 78 F.3d 578 (4th Cir. 1996).

Allowing Section 951 to be construed to permit the government to prosecute consultants (or lobbyists, or lawyers) for publishing newspaper editorials and petitioning the government, absent a requirement that a grand jury consider whether the underlying actions were "legal" and "commercial," would raise significant vagueness and overbreadth concerns.  *See Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort."); *see also Elonis v. United States*, 135 S. Ct. 2001, 2009 (2015) ("Although there are exceptions, the 'general rule' is that a guilty mind is 'a necessary element in the indictment and proof of every crime.'") (quoting *United States v. Balint*, 258 U.S. 250, 251 (1922)).  That is particularly true because the government may argue that it is *Rafiekian's* burden, rather than the government's, to prove that the speech in question was "legal"—inverting the ordinary burden-of-proof presumption.  To avoid those significant constitutional concerns, Section 951 should at a minimum be construed to require the government to present to the grand jury, and later bear the burden of proving, that the actions in

question are not "legal commercial transactions"—at least where, as here, the defendant and his company hold themselves out to be engaged in legal commerce.  That minimal safeguard would help ensure that service providers who sell lawful services avoid improper prosecution, while reserving criminal liability for actual foreign agents engaging in underlying illegal, criminal, or otherwise "non-innocent" conduct.  *Cf. Duran*, 596 F.3d at 1296 n.9 (reserving question of constitutionality "of possible applications of § 951 to completely innocent conduct").

### 4.      *Even If An Affirmative Defense, The Face Of The Indictment Reveals Only "Legal Commercial Transactions"*

Regardless, Count Two should be dismissed even if the "legal commercial transaction" is an affirmative defense, as the legality of the commercial transactions at issue is clear from the face of the Indictment.  *See United States v. Sampson*, 898 F.3d 270, 279 (2d Cir. 2018) (noting circumstances where a "party may raise and establish a statute-of-limitations defense via a Rule 12(b) motion, such as when the defense is clear from the face of the indictment"); *cf. United States v. Hoskins*, 73 F. Supp. 3d 154, 161 (D. Conn. 2014) (dismissal inappropriate where "a defendant asserts an affirmative defense that is *not* plain from the face of the indictment and that he or she bears the burden of proving") (emphasis added).  Although the Federal Rules of Criminal Procedure have no summary judgment mechanism, a district court may grant a motion to dismiss an indictment based on undisputed facts "where the government does not dispute the ability of the court to reach the motion and proffers, stipulates, or otherwise does not dispute the pertinent facts." *United States v. Weaver*, 659 F.3d 353, 355 n.* (4th Cir. 2011).

Even accepting all the government's allegations as true, the Indictment nowhere alleges that Rafiekian undertook any actions that were not "legal."  As already noted, the only actions Rafiekian and FIG are alleged to have taken on behalf of the government of Turkey are certain meetings with Congress, as well as the drafting and placement of an opinion piece in The Hill

publication (under Flynn's name). But beyond the general allegation that Rafiekian "conspired covertly and unlawfully to influence U.S. politicians and public opinion," Indictment ¶ 3, the Indictment never alleges that any of acts taken by Rafiekian were illegal. (Obviously, any notion that these activities were "illegal" because done without notifying the Attorney General as required by Section 951 would constitute impermissible bootstrapping.)

Nor does the government dispute that Rafiekian was engaged in "commercial transactions." On the contrary, the government alleges that Rafiekian and his company contracted with Alptekin's company, Inovo, "to receive a total of $600,000 broken into three $200,000 payments," in exchange for lobbying and consulting work. Indictment ¶ 22; *see id.* ¶¶ 25, 31, 34 (alleging receipt of payments). To be sure, the government intimates—though never squarely alleges—that the Turkish government was somehow funding FIG's work. *E.g.*, ¶ 3 ("Company B was also to pay Company A's fee, although it is clear that Turkish government officials approved the budget for, and received regular updates on, the progress of Company A's work."). But even assuming those hazy allegations to be true, the transactions plainly are still "commercial" in nature—as distinguished from, for example, "espionage." *Cf.* Security and Terrorism Hearing, at 4 (Senator Denton: "I believe Section 951 of Title 18, United States Code is an important statute. Its usefulness has been demonstrated repeatedly in espionage prosecutions, where its violation is often used as a secondary offense and as an investigative predicate for the FBI.").

Finally, as the DOJ regulation implementing Section 951 makes clear, the "legal commercial transaction" exception sweeps broadly, encompassing "*any* exchange, transfer, purchase or sale" of not only "commodit[ies]" and "property," but also of "service[s]"—including "information" specifically. 28 C.F.R. § 73.1(f). As noted, lobbying and public relations are (legal) commercial "services"—and the face of the Indictment makes clear that FIG's alleged contract to

"deliver findings [*i.e.*, 'information'] and results" to Inovo precisely fits the bill of such a "service" transaction. *See* Indictment ¶ 22 (describing contract as requiring FIG to "deliver findings and results including but not limited to making criminal referrals"); *id.* ¶ 1 (acknowledging that FIG "offers various services to its clients based upon [Flynn's] national security expertise"). Of note, DOJ's definition of a "legal commercial transaction" stands in clear contrast to the commercial activity exception in FARA—a statute under which Rafiekian was *not* charged with failing to register. That is, FARA's commercial activity exception applies only to "private and nonpolitical activities in furtherance of the bona fide trade or commerce of such foreign principal." 22 U.S.C. § 613(d). Neither Section 951 itself, nor DOJ's implementing regulations, contains similar limitations on what activities qualify as "commercial."

Because the Indictment nowhere disputes—and in fact, the face of the Indictment makes clear—that the only acts Rafiekian engaged in are "legal commercial transactions," Count Two should be dismissed.

### B.     In the Alternative, Section 951 Is Unconstitutionally Vague As Applied To Rafiekian

Even if this Court concludes that the Indictment sufficiently alleges the elements of Count Two, it should still dismiss that Count as unconstitutionally vague as applied to Rafiekian. The Due Process Clause provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const., amend. V. "[T]he Government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 135 S. Ct. 2551, 2556–57 (2015) (citing *Kolender v. Lawson*, 461 U.S. 352, 357–358 (1983)). Put another way, "[v]oid for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his

contemplated conduct is proscribed." *United States v. Nat'l Dairy Prod. Corp.*, 372 U.S. 29, 32–33 (1963). "In determining the sufficiency of the notice," moreover, "a statute must of necessity be examined in the light of the conduct with which a defendant is charged." *Id.* at 33.

Vagueness concerns are especially salient where, as here, the statute implicates First Amendment interests. *See Centro Tepeyac v. Montgomery Cty.*, 722 F.3d 184, 191 n.4 (4th Cir. 2013) ("[A] potentially vague law that interferes with First Amendment rights deserves greater scrutiny because of its obvious chilling effect on free speech.") (internal quotation marks omitted). That is because "[t]he severity of criminal sanctions may well cause speakers to remain silent rather than communicate even arguably unlawful words, ideas, and images." *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 871–72 (1997); *see Smith v. Goguen*, 415 U.S. 566, 573 (1974) ("Where a statute's literal scope, unaided by a narrowing . . . interpretation, is capable of reaching expression sheltered by the First Amendment, the [vagueness] doctrine demands a greater degree of specificity than in other contexts.").

The test for determining whether a statute is impermissibly vague is if it "(1) fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits or (2) authorizes or even encourages arbitrary and discriminatory enforcement." *United States v. Jaensch*, 665 F.3d 83, 89 (4th Cir. 2011). Both are true in this case.[4]

First, as applied to the facts of this case, Section 951 does not give a person of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Even accepting the government's allegations as true, nothing would allow Rafiekian to reasonably understand that his

---

[4] In 1980, the Fourth Circuit held that a facial challenge to a prior version of Section 951, in which the "principal objection [was] to the word 'agent,'" was not "impermissibly vague and overbroad." *See Truong Dinh Hung*, 629 F.2d at 920 (holding that "'[a]gent' as used in this context, however, is a readily understandable term which provides adequate notice of the conduct proscribed by the statute"). But that decision does not control the instant vagueness challenge, which attacks a portion of the statute (the phrase "legal commercial transaction") that was not added until the 1983 amendment. *See* pp. 12-13, *supra*.

legal and commercial conduct—under which Rafiekian and his company offered "services" (including "information") for payment, 28 C.F.R. § 73.1(a), (f)—was proscribed. Rafiekian is not a clandestine agent or an employee of a foreign government; instead, he is a citizen of the United States who co-owned a business that was openly offering consulting and lobbying services to the public in exchange for money. As this Indictment shows, a business owner like Rafiekian could have had no way of knowing whether the expressive, legal, commercial activities he allegedly engaged in for a paying client would render him a foreign "agent" subject to prosecution—particularly given that he sought legal advice and registered as a lobbyist under the Lobbying Disclosure Act from the outset. *See* note 1, *supra*.

Second, as the allegations in this case make clear, the phrase "legal commercial transaction" is so vague as to be standardless and invite arbitrary enforcement. To Rafiekian's knowledge, every reported Section 951 prosecution decision in this Circuit has involved espionage-related activities on behalf of foreign intelligence agents or assets—actions that are often clandestine, and always illegal. *See, e.g.*, *United States v. Truong Dinh Hung,* 629 F.2d 908, 911–12 (4th Cir. 1980) (espionage-related allegations included transferring "copies of diplomatic cables and other classified papers of the United States government dealing with Southeast Asia," which had been obtained "surreptitiously" and with classification markings removed); *Boeckenhaupt v. United States*, 392 F.2d 24, 25 n. 1 (4th Cir. 1968) (espionage-related allegations including "conspir[ing] with an employee of the Soviet Embassy . . . to communicate, deliver, and transmit information relating to the national defense of the United States to a foreign government"); *Fondren v. United States*, 63 F. Supp. 3d. 601, 605–06 (E.D. Va. 2014) (espionage-related allegations including providing Taiwanese government "with information and documents, including sensitive information and drafts of government documents" and other "classified"

19

materials).  Even then, the district court directed a verdict of acquittal on the Section 951-related

counts in each of the latter two cases.  *See Boeckenhaupt*, 392 F.2d at 25 n.1 ("The district judge

directed a verdict of acquittal as to count three, which alleged a violation of 18 U.S.C. § 371 for

conspiring to act as a foreign agent without registering as required by 18 U.S.C. § 951."); *Fondren*,

63 F. Supp. 3d at 606 (noting that "this Court granted the Petitioner's Motion For Judgment Of

Acquittal with respect to" the conspiracy to act as an unregistered agent in violation of Section

951).[5]

     To Rafiekian's knowledge, this is the first time the government has *ever* prosecuted

someone under Section 951 for engaging in activities that are legal and commercial on their face.

Nor, to Rafiekian's knowledge, has the government prosecuted an individual under Section 951

for engaging in paid consulting or lobbying activities.  *Cf.* Statement of Jeffrey H. Smith, State

Department, at 38 (expressing view that "American lawyers who represent foreign governments

in American courts" should not be considered agents and face Section 951 liability).  Accordingly,

if an indictment like this one may lawfully be brought, the government essentially has free rein to

prosecute consultants, lobbyists, lawyers, or individuals practicing other professions for selling

routine and legal commercial services otherwise available to the general public.  Rather than allow

---

[5] Most—perhaps all—nationwide Section 951 prosecutions likewise involve espionage, quasi-espionage, or otherwise illegal activity.  *See United States v. Turner*, 836 F.3d 849, 856 (7th Cir. 2016) (defendant allegedly acted to evade U.S. sanctions on behalf of Zimbabwean officials; jury acquitted on Section 951 charge); *United States v. Amirnazmi*, 645 F.3d 564, 571 (3d Cir. 2011) (defendant allegedly engaged in various financial transactions designed to evade Iranian sanctions; jury acquitted on both Section 951 and related conspiracy charges); *United States v. Chung*, 659 F.3d 815, 823–24 (9th Cir. 2011) (defendant allegedly engaged in economic espionage on behalf of China, after he "gathered and delivered technical information regarding the structural design of aircraft in specific response to requests from Chinese officials"); *United States v. Campa*, 529 F.3d 980, 987 (11th Cir. 2008) (describing case as involving "[f]ive agents of the Cuban Directorate of Intelligence who were members of La Red Avispa (in English, 'The Wasp Network') [who] challenge[d] their convictions and sentences for their espionage against the military of the United States and Cuban exiles in southern Florida").

this prosecution to proceed, the court should find the statute unconstitutionally vague in violation of the First and Fifth Amendments as applied to Rafiekian, and dismiss Count Two.

It is true that at least one circuit has upheld the constitutionality of the current version of Section 951 against a vagueness challenge. *See United States v. Duran*, 596 F.3d 1283 (11th Cir. 2010). But it came to that conclusion without considering the application of the "legal commercial transaction" language, given the illegal and otherwise "not innocent" nature of the conduct the Defendant allegedly engaged in—namely, a "form of bribery or extortion on behalf of the Venezuelan government" that included "illegal kickbacks to various Venezuelan government officials." *Id.* at 1296, 1298. Accordingly, in declining to hold the statute unconstitutionally vague, the Eleventh Circuit specifically noted that it "need not in this case express an opinion as to the constitutionality of possible applications of § 951 to completely innocent conduct." *Id.* at 1296 n.9. That reserved question is the one now presented here.

## II.     COUNT ONE SHOULD BE DISMISSED

In addition to Count Two, Count One of the Indictment—which sets forth a putative conspiracy claim with two objects: (a) to act as a foreign agent and (b) to cause false statements and willful omissions to be made in a FARA filing, Indictment ¶¶ 55–63—should also be dismissed in its entirety.

### A.     Count One-(b) Should Be Dismissed Because It Fails To Allege A Necessary Element Of A Conspiracy

To satisfy the pleading requirements of Federal Rule of Criminal Procedure 7(c), an indictment must contain a statement of "essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). It is not enough, in other words, to merely recite the statutory elements; instead, "[w]hen the words of a statute are used to describe the offense generally, they must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific

21

offence, coming under the general description, with which he is charged." *United States v. Palin*, 874 F.3d 418, 424 (4th Cir. 2017) (internal citation and quotations omitted); *see Hooker*, 841 F.2d at 1227–28 (emphasizing that "'it is the statement of facts in the pleading, rather than the statutory citation that is controlling'"); *see also Russell*, 369 U.S. at 765 (noting that an indictment must "descend to particulars" where the definition of an offense includes generic terms (quotation marks omitted)). "Thus, the indictment must also contain a 'statement of the *essential facts* constituting the offense charged.'" *United States v. Quinn*, 359 F.3d 666, 673 (4th Cir. 2004) (quoting Fed. R. Crim. P. 7(c)(1)); *see, e.g.*, *Jackson*, 926 F. Supp. 2d at 717–18 (indictment fatally defective where, despite naming statutory elements, it failed to list "essential facts constituting the offense charged").

A conspiracy under Section 371 requires, among other things, "an agreement between two or more people to commit a crime." *Kingrea*, 573 F.3d at 195. Count One-(b) of the Indictment alleges (in conclusory fashion) that Rafiekian "knowingly and intentionally conspired" with Alptekin and Turkish government co-conspirators to "willfully" make false statements in a FARA filing. But there is not a single factual allegation that Rafiekian *agreed with Alptekin* (or any other co-conspirator) to lie to the Covington attorneys completing the FARA forms. Instead, the Indictment merely lists Rafiekian and Alptekin's independent contacts with Covington and the allegedly false statements they each individually made.[6] Indictment ¶¶ 51–63. Accepting the factual allegations in the light most favorable to the government, the Indictment merely alleges that Rafiekian and Alptekin each *separately* provided false statements or omitted material facts. *See* Indictment ¶ 53 ("RAFIEKIAN falsely told [FIG]'s attorneys that…"); *id.* ¶ 54 ("Through his own attorneys, ALPTEKIN falsely told [FIG]'s attorneys that…"); *id.* ¶ 55 ("RAFIEKIAN and

---

[6] Rafiekian was not the only FIG officer to review the FARA filing. In fact, FIG's final registration contained only one signature—Michael Flynn—indicating he was the final decision maker on what was to be included.

ALPTEKIN caused to be made [certain] false statements of material fact…"); *id.* ("RAFIEKIAN reviewed the filings and provided comments . . . before the filings were submitted…").  But mere allegations of parallel conduct like these, without more, are insufficient to allege that Rafiekian *agreed* with anyone else to make false statements.  *Cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007) (finding allegations of parallel conduct insufficient to state a claim for conspiracy under the Sherman Act because "[w]ithout more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality").

That is especially true given that the conspiracy to violate FARA requires the government to prove that the co-conspirators agreed to "*willfully*" do so.  *See* Count One-(b) (alleging that defendants conspired "[t]o willfully" make false statements and omissions); *see also United States v. Feola*, 420 U.S. 671, 686 (1975) ("Our decisions establish that in order to sustain a judgment of conviction on a charge of conspiracy to violate a federal statute, the Government must prove at least the degree of criminal intent necessary for the substantive offense itself.").  Even if bare allegations of parallel conduct sufficed to support an agreement of some sort, they are surely inadequate, without more, to support the notion that Rafiekian agreed with someone else to *willfully make false statements*.  Indeed, the Indictment states that it was Covington who "solicited" Alptekin's assistance with the FARA filing—further corroboration that the alleged false statements were not part of some conspiracy to "willfully" commit a crime.  Indictment ¶ 54.

In short, the Indictment fails to allege the "essential fact" that Rafiekian agreed with anyone to achieve the object of making a false FARA statement—and certainly not an agreement to do so *willfully*.  Accordingly, the Court should dismiss Count One of the Indictment for failure to state an offense.

### B.      Count One-(a) Should Also Be Dismissed

Count One-(a) should be dismissed for all the reasons that the substantive count, Count Two, should be dismissed:  namely, that the government failed to allege an essential element of the conspiracy; that an affirmative defense is plain on the face of the Indictment; and, in the alternative, that Section 951 is unconstitutionally vague as applied to Rafiekian.  Because the substantive count should be dismissed, the related conspiracy charge should go, too.  *See United States v. George*, 568 F.2d 1064, 1072 (4th Cir. 1978) (reversing conspiracy conviction because, where "the thing actually done[,] . . . standing alone, does not constitute [a substantive violation of conducting an illegal gambling business], the agreement to do that thing cannot be said to be an illegal conspiracy in contravention of § 371").

In addition, Count One-(a) should be dismissed for all the reasons set forth in the Motion to Dismiss the Indictment and Exclude and Suppress Privileged Information (Dkt. 163).  Rafiekian respectfully asks to incorporate by reference those arguments herein.

***

Because Count One is defective with respect to both objects of the conspiracy, it fails to state a conspiracy offense and should be dismissed in its entirety.

### CONCLUSION

For the foregoing reasons, Rafiekian respectfully requests that the Court dismiss the Indictment.

Dated: June 6, 2019

Respectfully submitted,

/s/
James E. Tysse (VA Bar # 73490)
Mark J. MacDougall (Pro Hac Vice)
Stacey H. Mitchell (Pro Hac Vice)
John C. Murphy (Pro Hac Vice)
Adam A. Bereston (Pro Hac Vice)
Samantha J. Block (Pro Hac Vice)
*Counsel for Bijan Rafiekian*
Akin Gump Strauss Hauer & Feld LLP
2001 K Street NW
Washington, DC 20006
Telephone:  (202) 887-4000
Fax:  (202) 887-4288
E-mail:   jtysse@akingump.com
           mmacdougall@akingump.com
           shmitchell@akingump.com
           jmurphy@akingump.com


/s/
Robert P. Trout (VA Bar # 13642)
*Counsel for Bijan Rafiekian*
Trout Cacheris & Solomon PLLC
1627 Eye Street, NW
Suite 1130
Washington, DC 20006
Telephone:  (202) 464-3311
Fax:  (202) 463-3319
E-mail:   rtrout@troutcahceris.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the 6th day of June 2019, true and genuine copies of Defendant

Bijan Rafiekian's Memorandum in Support of his Motion to Dismiss the Indictment was sent via

electronic mail by the Court's CM/ECF system to the following:

> James P. Gillis
> John T. Gibbs
> Evan N. Turgeon
> U.S. Attorney's Office (Alexandria-VA)
> 2100 Jamieson Avenue
> Alexandria, VA 22314
> Telephone:  (703) 299-3700
> Email:  james.p.gillis@usdoj.gov
>              john.gibbs@usdoj.gov
>              evan.turgeon@usdoj.gov

                                        <u>/s/</u>_____
                                        Robert P. Trout (VA Bar # 13642)