```
 1                 UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF VIRGINIA
 2                      ALEXANDRIA DIVISION

 3   UNITED STATES OF AMERICA,   )  Case 1:18-cr-00457
                                 )
 4             Plaintiff,        )
                                 )
 5        v.                     )  Alexandria, Virginia
                                 )  May 31, 2019
 6   BIJAN RAFIEKIAN,            )  9:05 a.m.
                                 )
 7             Defendant.        )
                                 )  Pages 1 - 17
 8

 9    TRANSCRIPT OF MOTION IN LIMINE TO PRECLUDE DEFENDANT

10      FROM PRESENTING EVIDENCE OR ARGUMENT ON ADVICE OF

11           COUNSEL OR THE LOBBYING DISCLOSURE ACT

12         BEFORE THE HONORABLE ANTHONY J. TRENGA

13            UNITED STATES DISTRICT COURT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25     COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES
```

```
 1  APPEARANCES:

 2  FOR THE PLAINTIFF:

 3       JAMES P. GILLIS, ESQUIRE
         EVAN N. TURGEON, ESQUIRE
 4       JOHN T. GIBBS, ESQUIRE
         OFFICE OF THE UNITED STATES ATTORNEY
 5       2100 Jamieson Avenue
         Alexandria, Virginia  22314
 6       (703) 299-3700

 7  FOR THE DEFENDANT:

 8       ROBERT P. TROUT, ESQUIRE
         TROUT, CACHERIS & SOLOMON, PLLC
 9       1627 I Street, N.W., Suite 1130
         Washington, D.C.  20006
10       (202) 464-3300

11       MARK J. MACDOUGALL, ESQUIRE, PRO HAC VICE
         STACEY H. MITCHELL, ESQUIRE, PRO HAC VICE
12       AKIN, GUMP, STRAUSS, HAUER & FELD, LLP
         Robert S. Strauss Building
13       1333 New Hampshire Avenue, N.W.
         Washington, D.C.  20036-1564
14       (202) 887-4000

15

16

17

18

19

20

21

22

23

24

25
```

1            THE CLERK:  Criminal Case 1:18-cr-457-1,
2    *United States v. Bijan Rafiekian*.
3            Counsel, will you please note your
4    appearances for the record.
5            MR. TURGEON:  Good morning, Your Honor.  Evan
6    Turgeon, Jim Gillis, and John Gibbs for the United
7    States.
8            THE COURT:  Good morning.
9            MR. GILLIS:  Good morning, Your Honor.
10           MR. MACDOUGALL:  Good morning, Your Honor.
11   Mark MacDougall, Robert Trout, and Stacey Mitchell for
12   Defendant Rafiekian.
13           THE COURT:  Good morning.  We're here on the
14   government's motion *in limine* to preclude defendants
15   from presenting evidence or argument on advice of
16   counsel or the Lobbying Disclosure Act.  I've reviewed
17   the briefing and would be pleased to hear further from
18   counsel on this.
19           MR. TURGEON:  Thank you, Your Honor.
20           By way of context -- and I think it's
21   important to remember that the indictment in this case
22   does not mention a duty to register under FARA or the
23   LDA at all.  In fact, it doesn't mention the LDA in any
24   capacity.
25           The information that we are requesting to

1  preclude from being introduced as evidence or to
2  preclude argument on is not relevant to either count
3  charged in the indictment.  As to Count 1, advice of
4  counsel is not relevant to the defendant's intent with
5  regard to conspiracy.
6              THE COURT:  Why not?  Why isn't it?
7              MR. TURGEON:  Well, there are a few reasons,
8  Your Honor.  First, the conspiracy had already been
9  formed, and overt acts had already been committed by
10 the time the defendant --
11             THE COURT:  Well, that's the government's
12 theory.  The jury might not think the conspiracy
13 started when the government has alleged.
14             MR. TURGEON:  That certainly could be the
15 case, Your Honor.
16             THE COURT:  All right.
17             MR. TURGEON:  However, the advice is also not
18 exculpatory because, in fact, it was an act in
19 furtherance of the conspiracy, as the government has
20 alleged.  In speaking with Kelley, the defendant spread
21 the falsehood that the client in this matter was
22 actually a private company, Inovo.
23             Third, I think the government -- it's
24 important to note the defendant will not be able to
25 meet the requirements of a formal advice of counsel

1  defense because the defendant did not make a full
2  disclosure of the facts to Kelley.  He told them only
3  one fact, which was a lie in furtherance of the
4  conspiracy and which sought to conceal the role of the
5  government of Turkey in the project.
6          THE COURT:  Well, at least based on the
7  affidavit, Mr. Kelley indicated he -- he asked the
8  question of who you were working for.  Mr. Rafiekian
9  said he was working for -- whether the client was a
10 private company or government, and he said it was a
11 private company.  Mr. Kelley never asked any other
12 questions about it.  I mean that's at least what's in
13 the record at this point.
14         MR. TURGEON:  Yes, Your Honor.  Those are the
15 facts that are before us.  So the facts before us are
16 the basis for the government's motion.
17         THE COURT:  All right.
18         MR. TURGEON:  I wanted to note, too, with
19 regard to that declaration -- and I have a copy of that
20 for Your Honor.  I don't believe this has been
21 submitted.
22         Thank you.
23    (Documents are passed up to the Court.)
24         MR. MACDOUGALL:  Excuse me.  Your Honor, for
25 reference, this actually was attached to our brief.

1           THE COURT: Yes. I've reviewed it.
2           MR. TURGEON: The government really wants to
3  make clear that the declaration itself is rank hearsay.
4  It was not obtained by the defendant for his use. It
5  was obtained by Covington & Burling in October 2017.
6  It came way after the end of the conspiracy, almost a
7  year later. Mr. Kelley was not subject to
8  cross-examination on the statements in the declaration.
9  It wasn't given in an official proceeding or a
10 deposition. It bears no *indicia* of reliability that
11 would qualify under the residual exception to hearsay.
12 Moreover, the defendant's statements in the declaration
13 are hearsay within hearsay and are self-serving.
14 They're being offered for the truth of the matter
15 asserted therein, that the defendant claims the client
16 was Inovo. For those reasons, the declaration itself
17 under no circumstances should be admitted as evidence.
18          THE COURT: All right.
19          MR. TURGEON: I'll also mention why the
20 advice of counsel evidence is not relevant to Count 2
21 of the indictment. First, as our motion to exclude,
22 Section 951 is a general intent crime. So there can be
23 no advice of counsel defense to that count.
24          Second --
25          THE COURT: I understand the argument as to

1  Count 2.  I'm having difficulty understanding the
2  argument within the context of Count 1, which is the
3  conspiracy specific intent crime, when the conspiracy
4  alleges that there was an effort that the conspiracy
5  was to conceal the involvement of the Turkish
6  government and that there was a conspiracy to act as an
7  agent without disclosure to the attorney general.  What
8  you're seeking to exclude is evidence that the
9  defendant, in fact, went to a lawyer, said he had to
10 register under FARA, the lawyer asked certain
11 questions, and there was some conduct other than
12 registering under FARA.  It's difficult for me to see
13 how that's not probative of the specific intent element
14 of the conspiracy charge.
15         MR. TURGEON:  Well, in general, yes, Your
16 Honor.  The advice of counsel can be in general a
17 defense to conspiracy because it's a specific -- but
18 under these facts, again, the advice would've had to
19 have come before the conspiracy was in effect and at
20 least as we've alleged in the indictment --
21         THE COURT:  Well, as I understand the
22 defendant's position, this is probative of their
23 position that there was no conspiracy.  The jury may or
24 may not buy that, but why isn't it probative of that
25 position?

1          MR. TURGEON:  That there was --

2          THE COURT:  That there was no conspiracy as
3  of the time that he went to Kelley because he was
4  seeking to do precisely what the government alleges
5  they were conspiring not to do.

6          MR. TURGEON:  Your Honor, the government is
7  not alleging that there was a conspiracy not to
8  register under FARA.  The government is alleging that
9  there was a conspiracy to obfuscate the role --

10         THE COURT:  Act as an agent without
11 notifying --

12         MR. TURGEON:  Without notifying anyone.

13         THE COURT:  -- notifying the government.

14         MR. TURGEON:  Yes.

15         THE COURT:  Right.

16         MR. TURGEON:  Your Honor, there's no -- the
17 defense has suggested that the defendant may have
18 misunderstood the requirements and believed that the
19 LDA registration would still give appropriate notice to
20 the attorney general.  I think that's what Your Honor
21 may be asking about.  But a duty to register under 951
22 only arises when one is acting on behalf of a foreign
23 government.

24         So according to the defendant, if he's to be
25 believed, he never believed that he was acting on

1  behalf of the government of Turkey.  He sought advice
2  to -- whether as an agent of Inovo, a foreign private
3  company, he needed to register under FARA or under the
4  LDA.  So if the government establishes the defendant
5  knew he was taking direction from a foreign government,
6  it would also have established the defendant lied to
7  Kelley about the client being Inovo, and there could be
8  no advice of counsel defense under those circumstances.
9  If the government failed to establish that, the advice
10 of counsel would be moot.  So, really, under either --
11 whether you believe the government's theory or not,
12 Your Honor, the advice of counsel here is simply not
13 relevant to Count 1.
14         THE COURT:  I take it you don't intend to
15 present Mr. Kelley as a witness during your case in
16 chief.
17         MR. TURGEON:  The government as of right now
18 does not plan to.
19         THE COURT:  All right.  Mr. MacDougall.
20         MR. MACDOUGALL:  Thank you, Your Honor.
21         Your Honor, the government is not really
22 worried about the Kelley declaration being admitted or
23 a jury charge being given about advice of counsel.
24 What they don't want is for the jury to hear a fact,
25 and they don't question it's a fact.  The fact is that

1  Mr. Rafiekian called a lawyer at or about the time they
2  started the engagement with Inovo and said, We have to
3  register with FARA with the justice department.  He's
4  not asking a question.  He said, We have to register.
5              That's in there, and the government doesn't
6  say that's not true.  They just don't want the jury to
7  hear about it, and the reason they don't want the jury
8  to hear about it is because it's compelling exculpatory
9  evidence, Your Honor.  It's exculpatory evidence that
10 will demonstrate, we believe, clearly to the jury that
11 Mr. Rafiekian did not commit a crime.
12             Mr. Turgeon noted -- and I think it's
13 important -- this Kelley declaration was not obtained
14 by Mr. Rafiekian's lawyers.  It was obtained by
15 Covington, which the Court now knows from other
16 proceedings is no friend of the defense, and was
17 obtained before any charges had been brought against
18 Mr. Flynn.  So it has numerous *indicia* of accuracy.
19             The government wants essentially ban from the
20 courtroom the fact that Mr. Rafiekian went to a lawyer
21 and said, We have to register with FARA.  I want you to
22 do that for me.  The lawyer said, No.  We need to file
23 with the LDA.
24             That's the record, and that's the fact that
25 the government is keenly interested in the jury not

1  hearing.
2         The government asked that three aspects of
3  this evidence be withheld and be suppressed and not
4  exposed to the jury. The first is the legal advice
5  from Mr. Kelley, the attorney, on the theory that this
6  is a general intent defense. Well, Judge Brinkema's
7  opinion in *U.S. v. Johnson* could not be clearer. The
8  conspiracy charge, the 371 charge, is a specific intent
9  defense, and the analysis is as straightforward as can
10 be. You could not have a conspiracy where two
11 defendants are charged and the object of one is armed
12 robbery and the other is a campaign finance defense
13 where each is charged separately. There has to be a
14 specific crime that has to be proven as the object of
15 the conspiracy. That clearly makes 371 in this
16 instance a specific intent offense and takes it out of
17 the context of some of the case law that would suggest
18 that a general intent defense doesn't qualify for
19 advice of counsel.
20        With respect to the second matter, the Kelley
21 statement, there are numerous exceptions to the hearsay
22 rule that under some circumstances would permit
23 admission of that statement, including if Mr. Kelley
24 testifies and his testimony varies from his
25 recollection. Under 803(5), it could be admitted. It

1  could certainly be admitted to show Mr. Rafiekian's
2  statement of mind under some circumstances, and the
3  residual exception under Rule 807 would permit the
4  Court, if those elements are met, to admit the
5  statement.
6             Finally, with respect to the LDA filing, it
7  goes to the heart of the government's theory.  The
8  government in its briefing does not note the fact that
9  the LDA can satisfy FARA, and there are tens of
10 thousands of lobbyists and lawyers walking around
11 Washington every day who make that decision, to file
12 under the LDA and not FARA.  None of them are being
13 prosecuted.
14            Mr. Rafiekian went to see a lawyer, and the
15 lawyer gave him that advice.  The evidence of that
16 advice is the LDA filing.  So we would respectfully ask
17 the Court to deny the motion in its entirety.  If the
18 Court so chooses -- the government has briefed its
19 position -- any of these matters can be taken up again
20 in the course of trial once the Court and the jury has
21 heard the evidence.
22            Thank you, Your Honor.
23            THE COURT:  All right.  Counsel.
24            MR. TURGEON:  Your Honor, I just want to
25 correct two things essentially for the record.

 1              First, Mr. MacDougall suggested the defendant
 2   consulted Mr. Kelley around the time that the work
 3   began.  That's not true.  In fact, as alleged in the
 4   indictment, there's an e-mail from the defendant to his
 5   coconspirator, Mr. Alptekin, saying -- and that e-mail
 6   is dated September 3 -- saying, We've been at work on
 7   this project since July.
 8              So the work had already begun on the project.
 9   The conspiracy had already been formed much earlier
10   than the advice of counsel was sought.
11              Second, the defendant lied to Mr. Kelley
12   about who the client was.  I mean, had he been
13   truthful, arguably, yes, that -- had he said to
14   Mr. Kelley, We are doing work for the government of
15   Turkey and I want to disclose that fully and
16   completely, then yes, arguably, that could be
17   exculpatory evidence.  Here it was simply another
18   instance of the defendant lying about who the client
19   was.
20              Finally, the LDA filing can serve as an
21   exception to FARA when lobbying is being done on behalf
22   of a private company, but there's no LDA exception to
23   Section 951.  In fact, if you look at the LDA filing
24   that was actually submitted by FIG in this case, it
25   didn't mention Turkey anywhere.  It didn't disclose

1 anything truthful about the project at all.  So the
2 suggestion that the LDA filing can somehow be relevant
3 to this matter simply is not correct.
4      THE COURT:  All right.  I've reviewed the
5 motion *in limine*.  The issue is whether at this point
6 the Court should preclude the defense from presenting
7 any evidence or argument concerning conduct by the
8 defendant during the alleged conspiracy period that
9 related to his efforts to file under FARA and the fact
10 that he, in fact, filed under the Lobbying Disclosure
11 Act.
12      At this point, the Court can't conclude that
13 this is not probative, not relevant with respect to at
14 least the conspiracy count, which is a specific intent
15 count that alleges that there was, in fact, a
16 conspiracy to act on behalf of a foreign government
17 without providing the required notification.  On the
18 face of it, it appears to the Court that this evidence
19 could be relevant and probative of whether the
20 defendant had the required *mens rea* specific intent
21 that's alleged for the purposes of the conspiracy
22 count.
23      So at this point, the Court is going to deny
24 the motion *in limine*.  Once the Court hears evidence,
25 it may reconsider the scope of evidence that may be

 1  presented by the defense, but the Court is going to
 2  deny the motion *in limine.*
 3              With respect to the Kelley affidavit, on the
 4  face of it, it appears to be hearsay.  Nevertheless,
 5  there are large numbers of exceptions that may or may
 6  not apply.  The Court is simply not in a position to
 7  rule on whether it would be admissible if offered at
 8  trial.  The Court will have to wait and see,
 9  particularly if Mr. Kelley testifies.
10              All right.  The Court will issue the order.
11              MR. TURGEON:  Your Honor, based on Your
12  Honor's ruling, the government would ask that the
13  defense be precluded from raising advice of counsel in
14  its opening until evidence comes in that would allow
15  Your Honor --
16              THE COURT:  I'm not going to make that
17  ruling.  I'll reflect on it, but I'm not inclined to do
18  that.  I'll definitively rule before trial.
19              All right.  Anything else?
20         (No response.)
21              THE COURT:  All right.  Thank you.
22              MS. MITCHELL:  We have one administrative
23  matter, Your Honor.
24              THE COURT:  Yes.
25              MS. MITCHELL:  It's a logistical matter.

Case 1:18-cr-00457-AJT   Document 194   Filed 06/10/19   Page 16 of 17 PageID# 1849

16

Yesterday or earlier this week defense filed a motion *in limine* with respect to the crime-fraud exception.

THE COURT: Right.

MS. MITCHELL: Rather than having another hearing next Friday, we are wondering if the Court would be amenable to setting it with the other motions that are already set.

THE COURT: Thank you for raising that. I wanted to raise that myself. Why don't you all confer, and I'd like to have --

MS. MITCHELL: We have conferred. The government agrees.

THE COURT: I'd like to have all of those motions especially set once they're fully briefed. My thought was to do it on Friday, the 13th -- I'm sorry -- Thursday, the 13th of June.

MS. MITCHELL: I think that would work for the group. We had also wondered, Your Honor. We had been conferring whether Tuesday, the 18th, would work for the Court. If not, we will certainly make the 13th work.

THE COURT: Let me see.

MS. MITCHELL: Your Honor, actually, as it turns out, Mr. Trout has limited availability. We'll stick with the 13th and work out the briefing schedule.

1           THE COURT:  I have a trial scheduled that day
2  anyway at least at this point.
3           MS. MITCHELL:  All right.  Thank you.
4           THE COURT:  So we'll hear all the pending
5  motions at 10:00 on Thursday, June 13.
6           MS. MITCHELL:  Fantastic.  Thank you.
7           MR. GILLIS:  Thank you, Your Honor.
8           THE COURT:  All right.  Thank you.
9           -----------------------------------
                    Time:  9:22 a.m.

    I certify that the foregoing is a true and
 accurate transcription of my stenographic notes.

                                   ___/s/_____
                                   Rhonda F. Montgomery, CCR, RPR