# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | **Criminal Case No. 1:18-CR-457 (AJT)** |
| | : | |
| **BIJAN RAFIEKIAN, et al.** | : | |

## DEFENDANT BIJAN RAFIEKIAN'S MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS TO ESTABLISH CRIME-FRAUD EXCEPTION

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT..................................................................................1

BACKGROUND ....................................................................................................1

    I.      THE FARA FILING AND PERTINENT LEGAL ADVICE...................................1

    II.    THE INDICTMENT ........................................................................3

ARGUMENT ........................................................................................................5

    I.      THE GOVERNMENT SEEKS OPINION WORK PRODUCT AND
           ADMITS THAT NO ATTORNEYS WERE AWARE OF THE
           DEFENDANT'S ALLEGED CRIMINAL CONDUCT .......................................5

    II.    THE GOVERNMENT HAS FAILED TO MEET ITS BURDEN TO
           ESTABLISH THE CRIME-FRAUD EXCEPTION ........................................6

          A.    Legal Standard ..................................................................6

          B.    The Government Has Not Made a Prima Facie Showing that Mr.
               Rafiekian Was Engaged in or Planning a Criminal Scheme When
               He Sought Advice of Counsel....................................................8

               1.    The Section 951 Crimes (Count One-(a) and Count Two)
                     Cannot Support the Crime-Fraud Exception Because the
                     Privileged Communications Post-Date the Alleged Crimes ...........8

               2.    The Government Has Not Made a Prima Facie Showing of
                     Conspiracy to Violate 18 U.S.C. § 951 (Count One-(a)) ...............10

               3.    The Government Has Not Made a Prima Facie Showing of
                     a Crime Under FARA (Count One-(b)) ..................................11

               4.    The Government Has Not Made a Prima Facie Showing
                     That the Defendant Was Not Engaged in a Legal
                     Commercial Transaction (Count One-(a) and Count Two)...........19

          C.    The Government Has Not Made a Prima Facie Showing that Mr.
                Rafiekian Sought Advice of Counsel to Further the Alleged
                Criminal Scheme................................................................20

          D.    The Government Has Failed to Establish That the Privileged
                Information Bears a Close Relationship to the Alleged Criminal
                Scheme .........................................................................21

CONCLUSION......................................................................................................21

# TABLE OF AUTHORITIES

CASES:

*In re Grand Jury Proceedings #5 Empaneled Jan. 28, 2004,*
   401 F.3d 247 (4th Cir. 2005) ........................................................................................... *passim*

*In re: Grand Jury Subpoena,*
   870 F.3d 312 (4th Cir. 2017) ...................................................................................................6

*In re Green Grand Jury Proceedings,*
   492 F.3d 976 (8th Cir. 2007) ...................................................................................................6

*United States v. Stewart,*
   No. 03 CR. 717 (MGC), 2003 WL 23024461 (S.D.N.Y. Dec. 29, 2003) ...............................8

*United States v. Zolin,*
   491 U.S. 554 (1989) ...........................................................................................................7, 8, 9

STATUTES AND REGULATIONS:

18 U.S.C.
   § 951 ........................................................................................................................................9

28 C.F.R.
   § 73.1(f) ..................................................................................................................................19

OTHER AUTHORITIES:

Paul R. Rice, Attorney Client Privilege in the United States (2018 ed.) ........................................7

Defendant Bijan Rafiekian respectfully submits this memorandum of law in opposition to the government's motions to establish the crime-fraud exception.  [ECF Nos. 173, 182].  In addition, the Defendant respectfully renews its request that the Court hold an evidentiary hearing in connection with the government's crime-fraud motions.  [ECF No. 186].

## PRELIMINARY STATEMENT

Through its crime-fraud motions, the government tacitly acknowledges its error in wrongfully obtaining Flynn Intel Group's ("FIG") privileged information and now seeks a workaround.  That effort should be rejected.  The government seeks to use the crime-fraud exception to obtain opinion work product and therefore must show that the lawyers knew about the alleged criminal conduct.  The government concedes that it cannot make such a showing.  In addition, the government has failed to make a prima facie showing that the crime-fraud exception should be invoked.  The government has failed to offer any evidence at all of an agreement between the Defendant and anyone else to hide Turkey's alleged involvement in FIG's work and has likewise failed to demonstrate that any communications between the Defendant and FIG's lawyers were made to "further the scheme" or bear a "close relationship" to the crimes charged.  Accordingly, the government's motion should be denied.

## BACKGROUND

## I.    THE FARA FILING AND PERTINENT LEGAL ADVICE

The government's charges against Mr. Rafiekian hinge on allegations that he knowingly acted as an agent of the government of Turkey in connection with work performed by FIG on behalf of its client, Inovo BV ("Inovo").  Inovo is a Dutch company owned by co-defendant Ekim Alptekin, a private Turkish citizen and businessman.

In September 2016, acting on advice of Robert Kelley,[1] an attorney experienced with the Lobbying Disclosure Act ("LDA") and the Foreign Agents Registration Act ("FARA") who would become FIG's general counsel, FIG filed a registration under the LDA pertaining to its work for Inovo, rather than filing under FARA.[2]  In December 2016, shortly after the publication of an op-ed under Mr. Flynn's name, the Department of Justice unit responsible for enforcing FARA requested information to determine whether FIG had an obligation to register under FARA.  Mr. Flynn, on behalf of FIG and at the recommendation of Kristen Verderame, a lawyer representing FIG, contacted attorneys at Covington & Burling ("Covington") in late December 2016 for legal representation in responding to the inquiry.  On January 9, 2017, Covington issued an engagement letter undertaking to "provide Foreign Agents Registration Act Advice" to FIG, which was countersigned by Mr. Flynn on behalf of FIG.

Beginning in January 2017, Covington reviewed FIG's corporate records and interviewed FIG officers and employees, including Mr. Rafiekian.  The objective of this work was to determine whether FIG was required to register under FARA for work performed by the company over a three-month period in the fall of 2016 for Inovo.  On March 7, 2017, after conducting its investigation, Covington filed retroactive FARA registration forms for FIG for the work performed on behalf of Inovo ("FARA Filing").[3]

---

[1] Mr. Rafiekian intends to assert a defense based on legal advice he received from Mr. Kelley and introduce such evidence at trial.  Mr. Rafiekian does not read the government's motion as seeking to establish the crime-fraud exception with respect to legal advice received from Mr. Kelley.  Likewise, nothing in this memorandum should be read to preclude Mr. Rafiekian from introducing evidence at trial pertaining to legal advice from Mr. Kelley.

[2] Mr. Rafiekian is charged for failing to give notice to the Attorney General under 18 U.S.C. § 951 and has not been charged for failing to register under FARA.  However, a filing under FARA constitutes sufficient notice under Section 951. 28 C.F.R. § 73.3(e) ("Notification under 18 U.S.C. § 951 shall be effective only if it has been done in compliance with this section, *or if the agent has filed a registration under the Foreign Agents Registration Act . . . .*") (emphasis added).

[3] Ex. A, FARA Filing dated March 7, 2017.

## II.      THE INDICTMENT

On December 18, 2018, a grand jury indicted Mr. Rafiekian.  The government obtained a superseding indictment ("Indictment") on May 24, 2019.  Count One of the Indictment alleges that Mr. Rafiekian conspired (a) to act as an agent of Turkey without prior notification to the Attorney General in violation of 18 U.S.C. § 951 ("Count One-(a)") and (b) to willfully make false statements in, and omissions of material fact from, the FARA Filing ("Count One-(b)").  Count Two alleges that Mr. Rafiekian acted as an agent of Turkey without prior notification to the Attorney General in violation of 18 U.S.C. § 951.

The government contends that Mr. Rafiekian caused false statements and material omissions in the FARA Filing by "knowingly provid[ing] false information to [FIG's] attorneys in an effort to hide from the attorneys—and ultimately from the FARA Unit—the involvement of Turkish government officials in the project."  Indictment ¶ 52.  In particular, the Indictment at ¶ 53 alleges that Mr. Rafiekian falsely told FIG's attorneys that:

a.  "[A] meeting on or about September 19, 2016 in New York City [between members of FIG and the Turkish government] had nothing to do with Project Confidence, and instead was in furtherance of an abandoned 'Project Truth' that was distinct from Project Confidence";

b.  "There were no other contacts with Turkish government officials regarding the project";

c.  "The op-ed was [Mr. Flynn's] own idea, and he wrote it on his own behalf, and unrelated to the project";

d.  "ALPTEKIN did not want the op-ed to be published"; and

e.  "Payments from Company A to Company B were refunds for lobbying and public relations work that Company A did not perform."[4]

---

[4] The government has not identified with specificity any other statements by Mr. Rafiekian that it claims should fall within the crime-fraud exception.  Thus, although the government's motion suggests that *all* statements by Mr. Rafiekian to Covington and Verderame are covered by the crime-fraud exception, it has not given sufficient information for the Court to make that finding.  The Court cannot, as a practical matter, find that a statement was made in furtherance of a crime or fraud without any information at all about the statement itself.  For this reason, the

The government hopes to use Mr. Rafiekian's alleged statements to FIG's attorneys as evidence of intent to cause false statements in the FARA Filings.  Mr. Rafiekian's alleged statements to his attorneys bear little (if any) relation to the purportedly false statements in the FARA Filing, set forth below:

56. Paragraph 7:  "List every foreign principal for whom the registrant is acting or has agreed to act."

   Response: "[Inovo]"

   . . .

57. Paragraph 8:  "[W]ill you engage or are you engaging now in activity on your own behalf which benefits any . . . of your foreign principals?"

   Response:  "[D]uring the course of the engagement and thereafter, [FIG] officials (particularly [Mr. Flynn], in his capacity as a public figure separate from [FIG]) frequently wrote, spoke, or provided interviews relating to national security. Although not undertaken at the direction of any foreign principal, including but not limited to [Inovo], it is possible that such activities may have had an indirect benefit to [Inovo]."

   . . .

58. Exhibit A to [FIG's] FARA Registration Statement falsely stated that "[FIG] does not know whether or the extent to which the Republic of Turkey was involved with its retention by [Inovo] for the three-month project."

59. Paragraph 8(b) of Exhibit A to [FIG's] FARA Registration Statement falsely stated that the named foreign principal, [Inovo], was not supervised by a foreign government or other foreign principal.

60. Paragraph 8(b) of Exhibit A to [FIG's] FARA Registration Statement falsely stated that the named foreign principal, [Inovo], was not directed by a foreign government or other foreign principal.

   . . .

61. Paragraph 13:  "In addition to the above described activities, if any, have you engaged in activity on your own behalf which benefits your foreign principal?"

---

government's motion should be construed as limited solely to statements referenced in paragraph 53 of the Indictment.

Response: "Because of its expertise, [FIG] officials write, speak, and give interviews relating to national security. Although not undertaken at the direction or control of a foreign principal, it is possible that such activities may have an indirect benefit to a principal. On his own initiative, [Mr. Flynn] published an op-ed in The Hill on November 8, 2016, that related to the same subject matters as [FIG's] work for [Inovo]. Neither [Inovo], nor any other person requested or directed publication of the op-ed."

. . .

62. The Attachment to [FIG's] FARA Supplemental Statement falsely stated that "[FIG] understood the engagement to be focused on improving U.S. business organizations' confidence regarding doing business in Turkey, particularly with respect to the stability of Turkey and its suitability as a venue for investment and commercial activity."

63. The Attachment to [FIG's] FARA Supplemental Statement falsely stated that the September 19, 2016, meeting in New York with Turkish government officials was "for the purpose of understanding better the political climate in Turkey at the time, as background for the project."

Indictment ¶¶ 56-63.

## ARGUMENT

## I.   THE GOVERNMENT SEEKS OPINION WORK PRODUCT AND ADMITS THAT NO ATTORNEYS WERE AWARE OF THE DEFENDANT'S ALLEGED CRIMINAL CONDUCT

Although in most cases, an attorney's knowledge of the alleged criminal conduct is irrelevant to the crime-fraud inquiry, an important exception to this rule exists in the context of opinion work product. Where a party attempts to invoke the crime-fraud exception with respect to opinion work product, it must make a "prima facie showing that the attorney in question was aware of or a knowing participant in the criminal conduct." *In re Grand Jury Proceedings #5 Empaneled Jan. 28, 2004*, 401 F.3d 247, 252 (4th Cir. 2005). The government *concedes* it cannot meet this element. It writes: "there is no evidence – and no contention here – that FIG's attorneys, Covington & Burling and Kristen Verderame, were aware that the statements that the defendant made to them were false or that they were otherwise in furtherance of any crime or

fraud." Mot. 1-2 [ECF No. 173]. Because the government's motion seeks opinion work product, it must fail by the government's own admission.

The Fourth Circuit has clearly held that "a lawyer's recollection of a witness interview constitutes opinion work product entitled to heightened protections." *In re: Grand Jury Subpoena*, 870 F.3d 312, 317-18 (4th Cir. 2017); *accord In re Green Grand Jury Proceedings*, 492 F.3d 976, 978 (8th Cir. 2007) (holding that an attorney's "recollections of conversations . . . would reveal the attorney's mental impressions and thought processes" and as such qualify as opinion work product"). That is precisely what the government seeks to offer here: evidence of FIG's attorneys' recollections of statements made by the Defendant during the attorneys' interviews of the Defendant. To elicit this evidence, the government must place FIG's attorneys on the stand and ask them what they remember about their conversations with the Defendant. Such questions "expose [the attorney's] mental processes by revealing which witness statements [the attorney] deemed important enough to commit to memory." *Grand Jury*, 870 F.3d at 317. As a result, questions like "what did the witness tell you?" are opinion work product. *Id.* at 318 (alternations omitted). Because the government has conceded it cannot meet one of the elements required to establish the crime-fraud exception with respect to opinion work product—the attorneys' knowledge of the alleged crime or fraud—the government's motion must be denied.

## II.   THE GOVERNMENT HAS FAILED TO MEET ITS BURDEN TO ESTABLISH THE CRIME-FRAUD EXCEPTION

### A.  Legal Standard

"The party asserting the crime-fraud exception [here, the government] must make a prima facie showing that the privileged communications fall within the exception." *Grand Jury*, 401

F.3d at 251.[5]  Specifically, "the party invoking the crime-fraud exception must make a prima facie showing that (1) the client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme, and (2) the documents containing the privileged materials bear a close relationship to the client's existing or future scheme to commit a crime or fraud."  *Id.*  To meet the prima facie standard, "the proof must be such as to subject the opposing party to the risk of non-persuasion if the evidence as to the disputed fact is left unrebutted."  *Id.* (citation and quotations omitted).  This "requir[es] enough evidence to support a verdict in favor of the person making the claim" that the privilege does not apply.  Paul R. Rice, Attorney-Client Privilege in the United States § 8:6 (2018 ed.).

A court may consider the content of the privileged documents to determine if the crime-fraud exception should apply.  *Grand Jury*, 401 F.3d at 253 (typically conducted in an *in camera* review).  However, before considering the statements or documents "to determine the applicability of the crime-fraud exception, the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person that [the] review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies."  *Zolin*, 491 U.S. at 562 (citation and quotations omitted).

Here, the government has skipped this step and asked the Court to immediately consider the content of the privileged communications themselves in applying the crime-fraud exception. *See* Indictment ¶53 (describing allegedly false statements made by Mr. Rafiekian to his attorneys); Mot. 5 [ECF No. 173] ("The violations of 22 U.S.C. § 618(a)(2) [FARA] found by the Grand Jury are based upon several false statements and omissions that the defendant and

---

[5] Questions of privilege that arise in the course of the adjudication of federal rights are "governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."  *United States v. Zolin*, 491 U.S. 554, 562 (1989) (citation omitted).

Alptekin made to Covington and Burling and to Verderame for inclusion in FIG's March 2017

FARA Filing." (citing, among other things, Indictment ¶ 53)).  Under *Zolin*, however, the Court

cannot consider the content of the privileged communications until after it has determined there

is a "factual basis adequate to support a good faith belief by a reasonable person" that the

communications themselves may reveal evidence to establish the crime-fraud exception.  *Zolin*,

491 U.S. at 572 (citation quotations omitted).

### B.  The Government Has Not Made a Prima Facie Showing that Mr. Rafiekian Was Engaged in or Planning a Criminal Scheme When He Sought Advice of Counsel

The first prong of the crime-fraud exception is satisfied by a "*prima facie* showing of

evidence that, if believed by a trier of fact, would establish the elements of some violation that

was ongoing or about to be committed."  *Grand Jury*, 401 F.3d at 251.  As an initial matter, the

government cannot prove its *prima facie* case simply by relying in the allegations in the

indictment—particularly where the privileged statements themselves are contained in the

indictment—as such logic would eliminate the attorney-client privilege in virtually every

criminal case.  *See United States v. Stewart*, No. 03 CR. 717 (MGC), 2003 WL 23024461, at *2

(S.D.N.Y. Dec. 29, 2003) ("The Government's argument that the existence of the Indictment in

this case eliminates attorney-client privilege or work product protection with regard to evidence

relating to statements charged in the Indictment is not persuasive.").  The government has also

failed to establish this element in connection with any of the charges in the Indictment for the

additional reasons below.

### 1.  The Section 951 Crimes (Count One-(a) and Count Two) Cannot Support the Crime-Fraud Exception Because the Privileged Communications Post-Date the Alleged Crimes

Neither Count One-(a) (conspiracy to violate 18 U.S.C. § 951) nor Count Two (violation

of 18 U.S.C. § 951) can support the application of the crime-fraud exception because the

privileged communications that the government seeks to introduce post-date the commission of those alleged crimes.  The privileged communications that the government seeks to introduce apparently were made between January and March 2017.  As alleged in the Indictment:

> *From approximately January 2017 through approximately March 2017*, outside attorneys for [FIG] [*i.e.*, Covington and Verderame] gathered information to determine whether [FIG] or any of its employees had an obligation to register under FARA based upon [FIG's work on 'Operation Confidence.'"  During this process, RAFIEKIAN and ALPTEKIN knowingly provided false information to [FIG's] attorneys in an effort to hide from the attorneys – and ultimately from the FARA Unit – the involvement of Turkish government officials in the project.

Indictment ¶ 52 (emphasis added).

Section 951 makes it a crime to act as an agent of a foreign government without prior notification to the Attorney General.  18 U.S.C. § 951.  By November 2016, however—three months *before* FIG engaged Covington for advice relating to FARA—FIG was no longer performing any work under the Inovo engagement and thus could no longer have been acting as an agent of Turkey.  The government does not allege (and offers no evidence to support) that FIG undertook any action on behalf of the Turkish government after November 8, 2016, the date of the publication of the op-ed.  *See* Indictment ¶ 50.  Likewise, the engagement between FIG and Inovo formally ended on November 15, 2016.  Mot. Ex. 61 at 14 ("The contract between Inovo BV and Flynn Intel Group ended by its terms on November 15, 2016.").

As a result, the Defendant could not have been "engaged in or planning a criminal or fraudulent scheme" under Section 951 at the time he was communicating with Covington attorneys relating to FARA.  *See Grand Jury*, 401 F.3d at 254; *Zolin*, 491 U.S. at 562-63 (holding that for the crime-fraud exception to apply, "the desired advice [must] refer[] . . . to *future wrongdoing*.").  In fact, the government has effectively conceded that the privileged statements it seeks to introduce are relevant only to the FARA filing charge, and not to Section 951.  *See* ECF

No. 192 ("[T]he advice sought here . . . was to 'further the scheme' – that is, *to submit a FARA filing containing the defendant's false statements*." (emphasis added)).

> 2.  <u>The Government Has Not Made a Prima Facie Showing of Conspiracy to Violate 18 U.S.C. § 951 (Count One-(a))</u>

The government's motion is premised on a significant misstatement of the scope of the charged conspiracy.  The government incorrectly asserts that the fundamental allegation is that Mr. Rafiekian engaged in a conspiracy to "operate within the United States subject to the direction or control of a foreign government or official."  Mot. 7.  Rather, Mr. Rafiekian is charged in the indictment with operating as an agent of a foreign government in the U.S. "*without prior notification to the Attorney General*."  Indictment at 18.  This element is critical.  Although Mr. Rafiekian did not act as an agent of a foreign government (or to agree with another to do the same), such actions would not, standing alone, be a crime.  It would be a crime only if he knowingly failed to give notice to the Attorney General of that fact (or agreed with another that no such notice would be given).  The government has not adduced any evidence that Mr. Rafiekian's alleged failure to give such notice under Section 951 was the result of an *agreement* with any other person.  In fact, the government has failed to proffer any evidence that Mr. Rafiekian agreed with anyone that Turkey's alleged involvement in the Inovo engagement should be kept a secret at all.

Instead, the evidence shows that Mr. Rafiekian took steps to file a registration under FARA (which would have qualified as notice under Section 951), but he was advised by an attorney he consulted for that purpose, Robert Kelley, that he should file under the LDA instead.  This legal advice is set forth in a declaration prepared by Mr. Kelley in October 2017 ("<u>Kelley</u>

Declaration"), attached hereto.[6]  The Kelley Declaration shows that Mr. Rafiekian sought to

comply with the law and that any decision about whether or not to register under FARA was a

decision made by Mr. Rafiekian in consultation with Mr. Kelley—and not pursuant to any

agreement between Mr. Rafiekian and Mr. Alptekin or anyone else.  Because the government has

not established the existence of a conspiracy to violate Section 951, this charge cannot justify a

crime-fraud exception.

> 3.   The Government Has Not Made a Prima Facie Showing of a Crime Under FARA
>      (Count One-(b))

The government has also failed to make a prima facie showing that Mr. Rafiekian

conspired to make false statements under FARA, for two reasons.

The government has not made a prima facie showing that Mr. Rafiekian entered into an

agreement with any alleged co-conspirator to make false statements in the FARA Filing.  Instead,

according to the Indictment, the contents of the FARA Filing were determined by FIG and its

counsel.  *See* Indictment ¶ 52 ("[O]utside attorneys for [FIG] gathered information to determine

whether Company A or any of its employees had an obligation to register under FARA . . . .").

And while the government does allege that Mr. Alptekin gave false information to FIG's

attorneys in connection with the FARA Filing, the government does not allege (and has offered

no evidence to support) that he did so pursuant to an agreement with Mr. Rafiekian or that these

allegedly false statements even contributed to any alleged false statements in the FARA Filing

itself.[7]

---

[6] Ex. B, Decl. of Robert Kelley ¶¶ 7-9.

[7] Specifically, the Indictment alleges that Mr. Alptekin, through his attorneys, falsely told FIG's attorneys
that "ALPTEKIN had not been consulted on the op-ed, and that he would have opposed it if he had been consulted."
Indictment ¶ 54(a).  But the government does not allege that the FARA Filing contained any false or misleading
statements regarding whether Mr. Alptekin "consulted on" or "opposed" the op-ed.  Rather, the FARA Filing
correctly disclosed, *contrary to Mr. Alptekin's representation*, that "a draft of the op-ed was shared with Inovo in
advance of publication," and "[n]o changes, other than technical edits, were made to the op-ed based on feedback
from Inovo."  Ex. A, FARA Filing at A-46.  Tellingly, the government does not allege that this statement was false.

Second, the government has not made a prima facie showing that the FARA Filing contained any actual false statements or material omissions.  Instead, the statements that the government claims were false have been cherry-picked from the complete FARA Filing and stripped of important context.  A comparison of the complete FARA Filing to the government's allegations shows that the statements the government claims were false or misleading were, in fact, fully accurate .

**Statements Regarding Purpose of the Engagement**.  First, the government claims FIG misrepresented the purpose of its engagement by Inovo.  The government alleges FIG falsely stated that "[FIG] understood the engagement to be focused on improving U.S. business organizations' confidence regarding doing business in Turkey, particularly with respect to the stability of Turkey and its suitability as a venue for investment and commercial activity." Indictment ¶ 62.  The government does not explain why this statement is false or what material facts it believes FIG omitted.  Presumably, the answer lies in the government's view that the purpose of the engagement was to "influence U.S. politicians and public opinion concerning a Turkish citizen living in the United States [Fethullah Gülen] whose extradition was then being sought by the Government of Turkey."  Indictment ¶ 3.

A review of the FARA Filing, however, shows that FIG was fully transparent in its explanation of the engagement.  In fact, in the *very next paragraph* after the statement quoted in paragraph 62, FIG *expressly disclosed* that its work pertained to Mr. Gülen:

> Under the contract, Flynn Intel Group conducted open-source research for Inovo and at Inovo's direction.  The research, which was conducted by independent contractors retained for this purpose, *focused on Mr. Fethullah Gulen and charter*

---

The government also alleges that Mr. Alptekin, through his attorneys, falsely told FIG's attorneys that "[t]he project was done on behalf of an Israeli company that owned a share in a natural gas consortium seeking to do business in Turkey."  Indictment ¶ 54(b).  But again, the government does not allege that FIG made any false statement in the FARA Filing pertaining to the Israeli company.

> *schools in the United States that are associated with, or allegedly associated with, Mr. Gulen.*

Ex. A, FARA Filing at A-45.  The cover letter accompanying the FARA Filing likewise disclosed that the engagement focused on Mr. Gülen:

> [B]ecause of the subject matter of Flynn Intel Group's work for Inovo BV, *which focused on Mr. Fethullah Gulen, whose extradition is sought by the Government of Turkey*, the engagement could be construed to have principally benefitted the Republic of Turkey.

Ex. A, FARA Filing at A-1.

Moreover, the government's exhibits themselves are replete with evidence that focus of the engagement in fact was to "improv[e] U.S. business organizations' confidence regarding doing business in Turkey."  *See* Ex. 17 ("Engagement purpose:  The business community is engaging FIG to restore 'confidence through clarity' in the trade and investment climate.") (emphasis omitted); Ex. 23B at 4 ("[T]he following objectives would define the initiative: . . . . Reestablish international confidence in Turkey's economic fundamentals and highlight the stability of its investment and business environment.").

Accordingly, there is no basis to claim that the statement in paragraph 62 of the Indictment was false or omitted material facts, and it cannot support a charge against Mr. Rafiekian.

**Statements Regarding Direct or Indirect Control by Turkey**.  The thrust of the Indictment is that the FARA Filing obscured the government of Turkey's purported role in FIG's work for Inovo.  The government, however, ignores key portions of the FARA Filing that disclosed a wealth of information regarding Turkey's relationship to the project.

When asked to "[l]ist every foreign principal for whom the registrant is acting or has agreed to act," FIG responded "[Inovo]."  Indictment ¶ 56.  The government claims this was false because FIG omitted that it was also acting for the government of Turkey and certain

13

Turkish government officials.  *Id*.  This is contradicted by both the Indictment and the FARA Filing as a whole.

First, the government itself acknowledges that FIG was *directly* engaged and supervised by Inovo.  FIG's contract was with Inovo, not the Turkish government.  Indictment ¶ 22.  The Indictment also makes clear that Mr. Alptekin, the owner of Inovo, was FIG's primary point of contact on the project, describing a range of communications between Mr. Alptekin and Mr. Rafiekian.  This is supported by the exhibits that the government has attached to its motion, which detail a wide range of communications between Mr. Alptekin and members of FIG—*but not a single email or telephone call between FIG and members of the Turkish government*.  While the government claims that Mr. Alptekin had "close ties to the highest levels of the Government of Turkey" (Indictment ¶ 2), the government pointedly does not claim that Mr. Alptekin was himself a member of the Turkish government.

In contrast to FIG's frequent communications with Mr. Alptekin, the Indictment alleges just a single contact between FIG and members of the Turkish government:  a "high level" meeting on September 19, 2016.  Indictment ¶¶ 26-30.  But the government does not allege (and provides no evidence to support) that any member of the Turkish government gave any direction to FIG at this meeting or sought to exercise control over the engagement at that time.

FIG, moreover, was completely transparent about the September meeting and disclosed it in the FARA Filing:

> In early September 2016, Flynn Intel Group was invited by Mr. Alptekin to meet with a group of government officials from Turkey for the purpose of understanding better the political climate in Turkey at the time, as background from the project.

Ex. A, FARA Filing at A-45.  Although the government claims this statement was false (Indictment ¶ 63), the government has provided no support for this—not in the Indictment or any

of the exhibits attached to the Motion.  The government elsewhere alleges that the meeting "centered on the Turkish citizen and the Turkish government's efforts to convince the U.S. government to extradite the Turkish citizen to Turkey" (Indictment ¶ 28), but that description is entirely consistent with FIG's summary in the FARA Filing that the meeting focused on the "political climate in Turkey."

Because the government does not allege that FIG *directly* acted on behalf of anyone other than Inovo, it apparently intends to argue at trial that FIG *indirectly* acted on behalf of the Turkish government.  Thus, the government alleges that FIG falsely stated that Inovo was not "supervised" or "directed" by a foreign principle.  Indictment ¶¶ 59, 60.  Here again, the government ignores important context in the FARA Filing.  In fact, the FARA Filing expressly disclosed that FIG's engagement by Inovo "*could be construed to have principally benefitted the Republic of Turkey*."  Ex. A, FARA Filing at A-1 (emphasis added).  The FARA Filing also disclosed Mr. Alptekin's contacts with Turkish officials, stating that "Mr. Alptekin consulted with officials of the Republic of Turkey regarding potential work by Flynn Intel Group."  Ex. A, FARA Filing at A-12.

The government claims FIG falsely stated that it "does not know whether or the extent to which the Republic of Turkey was involved with its retention by [Inovo] for the three-month project."  Indictment ¶ 58.  The *very next sentence* of the FARA Filing, however, disclosed Mr. Alptekin's contacts with Turkish officials.  Ex. A, FARA Filing at A-12.  And while it appears true that Mr. Alptekin was in contact with Turkish officials regarding the engagement, the government does not allege or provide any evidence to support that (i) FIG participated in those communications, (ii) FIG had any firsthand knowledge of those communications, (iii) Mr. Alptekin accurately conveyed the substance of those communications to FIG, (iv) Mr. Alptekin

conveyed the *entire* substance of those communications to FIG, and (v) Mr. Alptekin accurately and completely conveyed to FIG the substance of *every* communication he had with a Turkish official relating to the engagement.

FIG, in sum, did not have visibility into Mr. Alptekin's communications with Turkish officials and thus could not truthfully say one way or the other whether Inovo was "supervised" or "directed" by the Turkish government.  FIG could only state what it knew:  that "Mr. Alptekin consulted with officials of the Republic of Turkey regarding potential work by Flynn Intel Group."  Ex. A, FARA Filing at A-12.  Tellingly, the government does not allege that this statement was false.  Because FIG accurately and transparently disclosed its sole direct contact with Turkish officials as well as Mr. Alptekin's own communications with the Turkish government, the government's allegations that FIG made false statements regarding Turkey relationship to the engagement (Indictment ¶¶ 56, 59, 60) cannot support the crime-fraud exception.

**Statements Regarding the Op-Ed**.  Lastly, the government alleges that FIG made false statements regarding the publication of the op-ed, including the following statement:

> Because of its expertise, [FIG] officials write, speak, and give interviews relating to national security.  Although not undertaken at the direction or control of a foreign principal, it is possible that such activities may have an indirect benefit to a principal.  On his own initiative, [Mr. Flynn] published an op-ed in The Hill on November 8, 2016, that related to the same subject matters as [FIG's] work for [Inovo].  Neither [Inovo], nor any other person requested or directed publication of the op-ed.

Indictment ¶ 61.

Indictment ¶ 57 alleges a false statement with respect to a similar but more generic statement of the same facts.  The government lists five reasons why the statement in ¶ 57 was purportedly false, none of which are satisfactory:

16

    a.  It failed to list as foreign principals the Government of Turkey, Senior Turkish Leader #1, Senior Turkish Leader #2, Turkish Minister #1, Turkish Minister #2, or Turkish Minister #3.

    b.  It stated that [Mr. Flynn's] activities were undertaken as a public figure separate and apart from [FIG], when in fact they were undertaken as part of [FIG's] agreement with [Inovo] and on behalf of the Government of Turkey or the Turkish officials listed above.

    c.  It stated that [FIG's] activities were not undertaken at the direction of any foreign principal, when in fact they were undertaken at the direction of the Government of Turkey or the Turkish officials listed above.

    d.  It stated that [FIG's] activities were not undertaken at the direction of [Inovo], when in fact they were undertaken at the direction [Inovo], as well as the Government of Turkey or the Turkish officials listed above

    e.  It implied that [Mr. Flynn's] activities had only an indirect benefit to [Inovo], when in fact they were undertaken as part of [FIG's] agreement with [Inovo] and on behalf of the Government of Turkey or the Turkish officials listed above.

Indictment ¶ 57.

First, as discussed above, given FIG's disclosure of its own single contact with Turkish officials, its disclosure of Mr. Alptekin's communications with Turkey, and the undisputable fact that FIG lacked visibility into Mr. Alptekin's communications with Turkish officials, any purported failure to list the Turkish government (or its officials) as a "principal" cannot support the crime-fraud exception here.

The government's contention that Mr. Flynn undertook to publish the op-ed at the direction of (and pursuant to its agreement with) Inovo or Turkish officials is also not a sufficient explanation for why the above statement would be false. For one thing, although the Indictment alleges that FIG *discussed* the op-ed with Mr. Alptekin, it contains no allegations (and the government has provided no evidence) to support the conclusion that Mr. Alptekin or any other foreign principal "requested" or "directed" publication of the op-ed, such as would make the above statement false.

17

The FARA Filing, moreover, contained far more detail on the op-ed than the small portion cited by the government:

> In late October and early November 2016, Gen. Flynn of Flynn Intel Group developed an op-ed article based, in part, on the research conducted by Flynn Intel Group under the Inovo engagement.  The op-ed was not written or published at the request of, or under the direction or control of, Inovo, the Republic of Turkey, or any other party.  No compensation was received for the publication of the op-ed.  In addition to Gen. Flynn, Bijan Rafiekian and an editor, Hank Cox, participated in the drafting.  Inovo, Mr. Alptekin, and the Republic of Turkey did not participate in the drafting.  Nonetheless, the op-ed addresses subject matter related to the research that Flynn Intel Group conducted for Inovo, and a draft of the op-ed was shared with Inovo in advance of publication.  No changes, other than technical edits, were made to the op-ed based on feedback from Inovo.  To the best of our knowledge, Inovo did not communicate with the Republic of Turkey regarding the op-ed or provide the draft op-ed to the government.  S.G.R. LLC Government Relations and Lobbying assisted Flynn Intel Group with placement of the op-ed with *The Hill* publication.

Ex. A, FARA Filing at A-46.  Remarkably, other than a single sentence plucked from its context, the government does not allege that the facts stated in the above paragraph are false.  But if all of the other supporting facts are accurate, the baseline conclusion cannot possibly be false.

Moreover, even if the government could convince a jury that some or all of the above statements in the FARA Filing were false, they are not so obviously false as to support a conclusion that the Defendant *knew* they were false, as required to support the charge.  The FARA Filing was carefully crafted by experienced attorneys after a review of FIG corporate records (including many of the same documents that the government has attached to the Motion) and interviews with several FIG personnel—not just Mr. Rafiekian.  Given Covington's experience and attention to detail, there is simply no basis to conclude that the Defendant *knew* that any of the statements in the FARA Filing were false.[8]

---

[8] The government will likely respond that Mr. Rafiekian "knew" the statements were false because he allegedly gave false information to his attorneys.  This argument must fail because there is virtually no correlation between the Defendant's supposedly "false" statements to the attorneys and the allegedly "false" statements in the FARA Filing, as discussed below.

18

Because the government has not made a prima facie showing that any of the alleged false statements underlying Count One-(b) were knowingly false or misleading when read in the context of the complete FARA Filing, Count One-(b) cannot support the application of the crime-fraud exception here.

4.   <u>The Government Has Not Made a Prima Facie Showing That the Defendant Was Not Engaged in a Legal Commercial Transaction (Count One-(a) and Count Two)</u>

The counts pertaining to Section 951 (Count One-(a) and Count Two) likewise cannot support the crime-fraud exception because the government has failed to allege, much less make a prima facie showing (or indeed offer any evidence at all) that the Defendant was not engaged in a "legal commercial transaction," as required to support a charge under 18 U.S.C. § 951(d)(4).  As described in greater detail in Mr. Rafiekian's motion to dismiss the indictment [ECF No. 191], Section 951(d)(4) defines an "agent of a foreign government" as "an individual who agrees to operate within the United States subject to the direction or control of a foreign government or official, *except that such term does not include— . . . any person engaged in a legal commercial transaction*."  18 U.S.C. § 951(d)(4) (emphasis added).  According to Department of Justice regulations, a "legal commercial transaction" is "any exchange, transfer, purchase or sale, of any commodity, service or property of any kind, including information or intellectual property, not prohibited by federal or state legislation or implementing regulations."  28 C.F.R. § 73.1(f).  The statute's plain text thus requires that the government must allege, as an element of the offense, that a defendant was not engaged in "a legal commercial transaction."  The government has neither alleged, nor offered any evidence to support this element, and therefore cannot meet its burden here.

19

**C.  The Government Has Not Made a Prima Facie Showing that Mr. Rafiekian
Sought Advice of Counsel to Further the Alleged Criminal Scheme**

In addition to failing to make a prima facie showing of any criminal scheme at all, the

government has also failed to offer any evidence that Mr. Rafiekian sought the advice of counsel

to "further the scheme." *Grand Jury*, 401 F.3d at 251.  This is because the statements by Mr.

Rafiekian to his attorneys bear almost no relation to any purportedly false statement contained in

the FARA Filing:

a.  The government asserts that Mr. Rafiekian falsely told FIG's attorneys that a
"meeting on or about September 19, 2016 in New York City [between members of
FIG and the Turkish government] had nothing to do with Project Confidence, and
instead was in furtherance of an abandoned 'Project Truth' that was distinct from
Project Confidence." Indictment ¶ 53(a).  Even if true, however, this could not have
furthered a criminal scheme because the FARA Filing contains no statements
regarding whether this meeting related to Project Truth or Project Confidence (or
neither, or both), and the government does not allege that the FARA Filing contained
any false statements pertaining to subject matter of the September 19 meeting.

b.  The government asserts that Mr. Rafiekian falsely told FIG's attorneys that "[t]here
were no other contacts [besides the September 19 meeting] with Turkish government
officials regarding the project." Indictment ¶ 53(b).  Even if true, however, this could
not have furthered a criminal scheme because the government does not allege that the
FARA Filing contained any misrepresentation regarding the number of contacts
between FIG and Turkish government officials, nor does the government offer any
evidence of any other contact between FIG and Turkish government officials.

c.  The government asserts that Mr. Rafiekian falsely told FIG's attorneys that
"ALPTEKIN did not want the op-ed to be published." Indictment ¶ 53(d).  Even if
true, however, this could not have furthered a criminal scheme because the FARA
Filing contains no statement—let alone any statement alleged to be false—regarding
whether Alptekin wanted the op-ed to be published.

d.  The government asserts that Mr. Rafiekian falsely told FIG's attorneys that
"[p]ayments from [FIG] to [Inovo] were refunds for lobbying and public relations
work that [FIG] did not perform." Indictment ¶ 53(e).  Even if true, however, this
could not have furthered a criminal scheme because it does not allege that the FARA
Filing contains any false statements pertaining to these payments.[9]

---

[9] The government also claims Mr. Rafiekian falsely told his lawyers that "[t]he op-ed was Person A's own
idea, and he wrote it on his own behalf, and unrelated to the project." Indictment ¶ 53(c).  Unlike the other allegedly
false statements made by Mr. Rafiekian to his attorneys, the government does allege that the FARA Filing contained
a parallel "false" statement on this point.  Indictment ¶ 61.  As discussed above, however, the government has not

Because the government has not established that any purportedly false statements made by Mr. Rafiekian to his attorneys actually resulted in any false statements in the FARA Filing, the government has not met its burden to make a prima facie showing that Mr. Rafiekian's communications with counsel were done to "further the scheme."

### D. The Government Has Failed to Establish That the Privileged Information Bears a Close Relationship to the Alleged Criminal Scheme

The second prong of the crime-fraud exception is satisfied by "a showing of a close relationship between the attorney-client communications and the possible criminal or fraudulent activity." *Grand Jury*, 401 F.3d at 251. The analysis in Part II(C) above applies equally to this element. For the same reasons that the government has failed to make a showing that the Defendant made statements to FIG's attorneys to "further the scheme," it has also failed to establish a "close relationship" between those statements and the alleged criminal activity. There can be no "close relationship" if the defendant's purportedly false statements to his attorneys did not result in any actual false statements in the FARA Filing.

### CONCLUSION

For the foregoing reasons, the Defendant respectfully requests that the Court deny the government's motions to establish the crime-fraud exception. In addition, the Defendant respectfully repeats its request that the Court hold an evidentiary hearing in connection with the government's crime-fraud motions [ECF No. 186].

---

met its burden to show that the FARA Filing was actually false or misleading or that the Defendant knew it was false or misleading.

Dated June 10, 2019                          Respectfully submitted,

                                             */s/*_____
                                             Mark J. MacDougall (*Pro Hac Vice*)
                                             Stacey H. Mitchell (*Pro Hac Vice*)
                                             John C. Murphy (*Pro Hac Vice*)
                                             *Counsel for Bijan Rafiekian*
                                             Akin Gump Strauss Hauer & Feld LLP
                                             2001 K Street, NW
                                             Washington, DC 20006
                                             Telephone:  (202) 887-4000
                                             Fax:  (202) 887-4288
                                             E-mail:   mmacdougall@akingump.com
                                                       shmitchell@akingump.com


                                             */s/*_____
                                             Robert P. Trout (VA Bar # 13642)
                                             *Counsel for Bijan Rafiekian*
                                             Trout Cacheris & Solomon PLLC
                                             1627 Eye Street, NW
                                             Suite 1130
                                             Washington, DC 20006
                                             Telephone:  (202) 464-3311
                                             Fax:  (202) 463-3319
                                             E-mail:   rtrout@troutcahceris.com

## CERTIFICATE OF SERVICE

I hereby certify that, on the 10th day of June 2019, true and genuine copies of Defendant

Rafiekian's Memorandum in Opposition to the Government's Motion to Establish Crime-Fraud

Exception was sent via electronic mail by the Court's CM/ECF system to the following:

James P. Gillis
John T. Gibbs
Evan N. Turgeon
U.S. Attorney's Office (Alexandria-NA)
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone:  (703) 299-3700
Email:   james.p.gillis@usdoj.gov
         john.gibbs@usdoj.gov
         evan.turgeon@usdoj.gov

                                        _/s/_____
                                        Robert P. Trout (VA Bar # 13642)