UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Criminal Case No. 1:18-CR-457 (AJT) |
| | : | |
| BIJAN RAFIEKIAN, et al. | : | |

**DEFENDANT RAFIEKIAN'S REPLY IN SUPPORT OF
MOTION *IN LIMINE* TO EXCLUDE OUT-OF-COURT
STATEMENTS BY CO-CONSPIRATORS**

Defendant Rafiekian, through counsel, respectfully submits this reply brief in support of his motion *in limine* to exclude out-of-court statements by alleged co-conspirators or in the alternative to hold a hearing to require the government to meet its burden before allowing the admission of such statements.

## ARGUMENT

In its opposition to Mr. Rafiekian's motion *in limine* to exclude out-of-court statements by alleged co-conspirators, the government misstates the scope of the charged conspiracy. The scope of the conspiracy alleged is critical to the court's consideration of these statements.

The grand jury returned an indictment charging Mr. Rafiekian with, among other things, conspiracy to (a) act as an agent of the government of Turkey ***without prior notification to the Attorney General***, and (b) to file false information in documents filed with the Attorney General under the provisions of FARA. Although Mr. Rafiekian disputes the allegation that he acted as an agent of a foreign government (or agreed with another to do the same), such actions would not, standing alone, be a crime. It would be a crime only if he knowingly failed to give notice to the Attorney General of that fact (or agreed with another that no such notice would be given). Here, although Mr. Rafiekian concededly did not file a notice under Section 951, the government

has not adduced any evidence that this was a result of an agreement with any other person.  In fact, the government has failed to proffer any evidence that Mr. Rafiekian agreed with anyone that Turkey's alleged involvement in the Inovo engagement should be kept a secret at all.  The evidence proffered by the government, therefore, fails to meet the preponderance of the evidence standard to admit out-of-court statements under Rule 801(d)(2)(E).

In support of its contention that a conspiracy existed, the government offers the following:

- "Alptekin told [Mr. Rafiekian] in a Skype message, 'will send the agreement.  Just left [Senior Turkish Leader #2's] office.'  Soon after telling the defendant that he had just left Senior Turkish Leader #2's office, Alptekin wired $200,000 from a Turkish bank account in his name to FIG's U.S. bank account." [ECF No. 198 at 5].

- "[Turkish Minister #1] met with [Mr. Rafiekian] and Alptekin and others to discuss this project in New York City on September 19th 2016. . . .  Ultimately, this meeting did occur, and attendees including the defendant, Alptekin, Turkish Minister # 1 and Turkish Minister #3[.]" [ECF No. 198 at 6].

- "[A written agreement] ultimately listed FIG as the advisor and INOVO as the client. . . . [S]oon thereafter, a second agreement was produced which listed Alptekin as the advisor and FIG as the client . . . ."  On September 9, 2016, the date of the first $200,000 payment to FIG, Alptekin told [Mr. Rafiekian] in a Skype message, "Since I had to wire from my personal account I suggest we alter the agreement to an agreement between fig and my person while Inovo invoices for services provided to fig.  What do you think?"  Ultimately the agreement was altered, and Alptekin did get reimbursed for what were characterized as "consultancy fees." [ECF No. 198 at n.3].

- "During the planning for [the September 19, 2016 meeting in New York City], Alptekin told the defendant at one point when it appeared that the meeting might not occur, 'Pls make sure MF does not communicate the meeting denial is motivated by me or anyone inside the Government of Turkey.'" [ECF No. 198 at n.4].

Putting aside the issue of whether these allegations are even true, they fail to demonstrate an agreement between Mr. Rafiekian and any person to act as an agent of Turkey—they are equally consistent with, if not more consistent with, a run-of-the-mill business transaction between FIG and Inovo/Alptekin.

2

Even if these allegations *were* sufficient to establish an agency relationship between Mr. Rafiekian and the government of Turkey (and they are not), the government still has not met its burden to admit co-conspirator hearsay under Rule 801 because merely acting as an agent of a foreign government (or agreeing to do so) is not a crime. Instead, Mr. Rafiekian can only be guilty of conspiracy under Section 951 if he agreed to act as an agent of a foreign government *without prior notification to the Attorney General*. None of the evidence offered by the government has anything to do with an effort to hide from the Attorney General Turkey's involvement in FIG's work.[1] To that end, the government has fallen far short of establishing by a preponderance of evidence that the Turkish officials were part of the charged conspiracy.

With respect to Alptekin, the timing of the conspiracy to violate Section 951 is paramount. The work FIG performed for Inovo, and the underlying contract for that work, ended on November 15, 2016. Any conspiracy under Section 951 must necessarily have ended by that date because Mr. Rafiekian could no longer be "act[ing] as an agent of a foreign government." The government has proffered no evidence *prior to November 15, 2016* that Mr. Alptekin and Mr. Rafiekian agreed to hide Turkey's involvement from the Attorney General. Accordingly, the government cannot introduce out-of-court statements by Alptekin in connection with the Section 951 claim.

Nor is there any evidence that Mr. Rafiekian and Mr. Alptekin *agreed* to make false statements or omissions of fact in a FARA filing. The government makes a number of allegations that Mr. Rafiekian and Mr. Alptekin lied to their respective attorneys about a limited number of facts in connection with the FARA filing. But mere allegations of parallel conduct

---

[1] Tellingly, the government makes no mention whatsoever of the Turkish officials in its discussion of the FARA filing itself. See ECF No. 198 at 7. This omission amounts to a concession that the Turkish officials were not involved in any agreement to file false statements in a FARA filing.

like these, without more, are insufficient to allege—let alone prove by a preponderance of the evidence—that Mr. Rafiekian *agreed* with anyone else to make false statements. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (finding allegations of parallel conduct insufficient to state a claim for conspiracy under the Sherman Act because "[w]ithout more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unindentified point does not supply facts adequate to show illegality."). Such allegations are therefore insufficient to plead conspiracy to make false statements or omissions of fact in a FARA filing, let alone to do so by a preponderance of the evidence.

Even if the court found an agreement between Mr. Rafiekian and Mr. Alptekin to make false statements or omissions of fact in a FARA filing, these statements have nothing to do with Count One-(a), which alleges a separate conspiracy to violate Section 951. Accordingly, if the court finds evidence of such an agreement with respect to the FARA filing, the government cannot introduce every out-of-court statement by Mr. Alptekin; rather, it could only use the statements by Mr. Alptekin pertaining to the FARA filing itself.

The government also misstates the test used to admit under Rule 801 out-of-court statements by co-conspirators. It is not the "predictive nature" of a co-conspirator's out-of-court statements that establishes the existence of a conspiracy for the purposes of Rule 801; the test is whether there is "evidence that there was a conspiracy involving the declarant and the nonoffering party, and that the statement was made during the course and in furtherance of the conspiracy." *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987). The government, in its use of a "predictive nature" test, misstates the Court's holding in *Bourjaily*. In *Bourjaily*, the Supreme Court upheld the district court's admission of a co-conspirator's out-of-court statement because the statement itself provided evidence of the existence of a crime. In that case, the co-

conspirator's out-of-court statement indicated that he and the petitioner had agreed to buy a kilogram of cocaine and distribute it, and that the petitioner would be at the hotel parking lot, in his car, and would accept the cocaine from a government informant's car after the informant gave the car keys to the co-conspirator. *Id.* at 180. The out-of-court statement was sufficiently corroborated by independent evidence that the petitioner showed up at the prearranged spot, picked up the cocaine, and had a significant sum of money in his car. *Id.* at 181. Thus, the statement itself indicated the presence of a crime and was corroborated by the petitioner's illegal actions.

The fact that a co-conspirator's statements accurately predict the future is meaningless if those statements do not relate to illegal conduct. If true, the government's allegations at most show that Mr. Alptekin predicted FIG and Inovo would enter into business together or that Turkey may have had knowledge of the FIG/Inovo work. Neither would be a crime. The communications cited by the government are entirely consistent with a legitimate business transaction, and the court should not presume illegality.

Moreover, the Fourth Circuit is clear that, for the purposes of admitting out-of-court statements by co-conspirators under Rule 801, the existence of a conspiracy must be proved by independent evidence. *See, e.g.*, *United States v. Afridi*, 241 F. App'x 81, 84 (4th Cir. 2007) ("The proponent of the [out-of-court] statements must show the existence of the conspiracy and the declarant's role in the conspiracy through independent evidence but may supplement that evidence with the statements of the declarant."); *United States v. Borders*, 69 F. App'x 130, 132 (4th Cir. 2003) ("To admit a co-conspirator's out-of-court statement, the Government must demonstrate the existence of the conspiracy by evidence extrinsic to the hearsay statements."). In this case, the out-of-court statements themselves, even when viewed together with the alleged

independent evidence, are insufficient to establish an *agreement* to deprive the Attorney General of notification under Section 951 or to make false statements or omissions of fact in a FARA filing.

Lastly, although a trial court is not *required* to hold a pretrial hearing to determine whether a conspiracy exists before admitting out-of-court statements under Rule 801, courts have discretion to do so. Where, as here, the court has all of the information it needs to determine whether a conspiracy existed for the purposes of Rule 801, the court should exercise its discretion to hold such a hearing. There are at least five indicted and unindicted co-conspirators whose out-of-court statements the government seeks to introduce in evidence. *See* ECF No. 109 at 1. Moreover, the out-of-court statements are numerous. *See* ECF No. 155 at n.2. The government must meet its above-mentioned burden with respect to each out-of-court statement by each co-conspirator. Waiting until trial to resolve the issues raised in this motion will result in a significant interruption to the trial itself and potentially prejudice Mr. Rafiekian if the statements are later found inadmissible. The court can easily avoid this problem by holding a pretrial hearing on Mr. Rafiekian's motion. Accordingly, Mr. Rafiekian respectfully requests that the court exclude out-of-court statements by alleged co-conspirators or in the alternative, hold a hearing to require the government to meet its burden before allowing the admission of such statements.

## CONCLUSION

For the foregoing reasons, Mr. Rafiekian respectfully requests that the Court grant the Defendant's Motion *In Limine* to Exclude Out-Of-Court Statements by Co-Conspirators.

Dated: June 11, 2019                    Respectfully submitted,

/s/_____
Mark J. MacDougall (*Pro Hac Vice*)
Stacey H. Mitchell (*Pro Hac Vice*)
John C. Murphy (*Pro Hac Vice*)
Adam A. Bereston (*Pro Hac Vice*)
Samantha J. Block (*Pro Hac Vice*)
*Counsel for Bijan Rafiekian*
Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
Telephone:  (202) 887-4000
Fax:  (202) 887-4288
E-mail:   mmacdougall@akingump.com
              shmitchell@akingump.com


/s/_____
Robert P. Trout (VA Bar # 13642)
*Counsel for Bijan Rafiekian*
Trout Cacheris & Solomon PLLC
1627 Eye Street, NW
Suite 1130
Washington, DC 20006
Telephone:  (202) 464-3311
Fax:  (202) 463-3319
E-mail:   rtrout@troutcahceris.com

## CERTIFICATE OF SERVICE

I hereby certify that, on the 11th day of June 2019, true and genuine copies of Defendant's Reply in Support of Motion *In Limine* to Exclude Out-Of-Court Statements by Co-Conspirators was sent via electronic mail by the Court's CM/ECF system to the following:

James P. Gillis
John T. Gibbs
Evan N. Turgeon
U.S. Attorney's Office (Alexandria-NA)
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone:  (703) 299-3700
Email:  james.p.gillis@usdoj.gov
john.gibbs@usdoj.gov
evan.turgeon@usdoj.gov

*/s/*_____
Robert P. Trout (VA Bar # 13642)