**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | **Criminal Case No. 1:18-CR-457 (AJT)** |
| | : | |
| **BIJAN RAFIEKIAN, et al.** | : | |

**DEFENDANT BIJAN RAFIEKIAN'S REPLY IN SUPPORT**
**OF MOTION TO DISMISS THE INDICTMENT AND**
**EXCLUDE AND SUPPRESS PRIVILEGED INFORMATION**

Defendant Bijan Rafiekian, through counsel, respectfully submits this Reply

Memorandum of Law in further support of his motion to (1) dismiss sub-paragraph (b) of Count

One of the indictment on the grounds of the government's violation of Mr. Rafiekian's Fourth

and Fifth Amendment rights, or alternatively (2) exclude and suppress privileged information

belonging to Flynn Intel Group, Inc. ("<u>FIG</u>") and Mr. Rafiekian in his capacity as a director of

FIG.  If the Court determines that factual issues preclude resolution of this motion on the current

record, Mr. Rafiekian respectfully requests that the Court hold an evidentiary hearing in order to

take testimony and otherwise establish the facts and evidence relevant to this motion.

**ARGUMENT**

**I.     THE DEFENDANT'S STATEMENTS TO FIG'S LAWYERS REGARDING THE**
**FARA FILING ARE PRIVILEGED**

The government argues that the Defendant's communications with FIG's counsel "were

never privileged" because they were made so that Covington "could convey the information to

the government on FIG's behalf."  Opp'n 1, 11-13.  This contention misstates both the law and

the facts.

As an initial matter, this doctrine can have no application in the context of *material*

*omissions*, which form the basis of many of the government's allegations of falsity (*e.g.*,

1

Indictment ¶¶ 56-57), because an omission cannot logically constitute "information conveyed" to an attorney. The government also fails to note the distinction between (i) information conveyed by a client to an attorney for the purpose of preparing a publicly filed document, and (ii) information conveyed by a client seeking legal advice so that the attorney may "research the possibility" of filing public papers. *United States v. (Under Seal)*, 748 F.2d 871, 876 (4th Cir. 1984). The Defendant's communications with FIG's lawyers, which the government seeks permission to introduce, fall into the second category. The Court need look no further than the indictment for confirmation. The government alleges:

> From approximately January 2017 through approximately March 2017, outside attorneys for [FIG] gathered information to determine **whether [FIG] or any of its employees had an obligation to register under FARA** based upon [FIG's] work on "Operation Confidence." ***During this process***, RAFIEKIAN and ALPTEKIN knowingly provided false information to [FIG's] attorneys . . . .

Indictment ¶ 51 (emphasis added). Thus, according to the government's own allegations, the Defendant's statements to counsel were made for the purpose of determining "*whether*" FIG had an obligation to register under FARA—*i.e.*, to support Covington's "research" pertaining to the possibility of registering under FARA. *Under Seal*, 748 F.2d at 876.

Covington's January 11, 2017 letter to DOJ also makes clear that Covington had not yet determined whether to file under FARA at the time it interviewed Mr. Rafiekian. In that letter, Covington wrote that "FIG's representation of Inovo *may have* called for registration under FARA," and that Covington had "*not yet reached a final determination* as to the foreign principals to be listed in a FARA registration." Reply Ex. A at 1. It is clear from these statements that Covington was still researching the possibility of registering under FARA—it had

not yet committed to that course.[1]  The Defendant had not manifested an intent that his

communications be published, and they were therefore privileged.[2]

The government's cited cases do not compel a different result.  None of those cases

involved a situation, like here, where the lawyers were continuing to "research the possibility" of

"whether" to make a public filing.  *Marietta*, the government's leading case, is also

distinguishable for the additional reason that the statements that caused the waiver in that case

explicitly referenced specific witness testimony and attributed specific facts to specific actors.  *In*

*re Martin Marietta Corp.*, 856 F.2d 619, 623 (4th Cir. 1988) ("The paper contains assertions:  'of

those consulted within the Company all will testify that any qualms they had about the

arrangement had nothing to do with worries about fraud' and 'there is no evidence, testimonial or

documentary, that any company officials in the meeting [of November 17, 1983] except Mr.

Pollard and his Maxim employees, understood that Maxim had departed from the strict

procedures of its IVI contract.'").

The Manafort case, *In re Grand Jury Investigation* ("*Manafort*"), is distinguishable for

the same reason.  The FARA submissions in that case "made specific factual representations to

DOJ that are unlikely to have originated from sources other than the [investigation's] Targets,

---

[1] Covington attorney Stephen Anthony has submitted a declaration ("Anthony Declaration") stating that "the Covington attorneys who interviewed Mr. Rafiekian in January 2017 told him the facts they were gathering were to be included in a FARA registration to be submitted to the U.S. Department of Justice.  Anthony Decl. ¶ 6.  Anthony, however, admits he was not present at those meetings and has no personal knowledge of what transpired.  As such, his declaration on this point carries no evidentiary weight.  This statement is also directly contradicted by the government's own allegations as well as Covington's January 11, 2017 letter, further undermining its already questionable probative value.

[2] Nor does the Defendant's subsequent execution of a short-form FARA registration demonstrate an intent to publish his privileged communications with FIG's attorneys.  The short-form registration did not contain any of the purportedly false statements that the government claims the Defendant made to FIG's attorneys.  Instead, all such statements were contained on forms executed by Mr. Flynn.  Moreover, even the forms signed by Mr. Flynn do not attribute any statements specifically to Mr. Rafiekian, and as such, he would not have been on notice that publication of the FARA filing might constitute a waiver of privilege with respect to his own statements to FIG attorneys.

3

and, in large part, were explicitly attributed to one or both Targets' recollections." No. 17 Misc. 2336, 2017 WL 4898143, at *11 (D.D.C. Oct. 2, 2017). FIG's FARA filing, in contrast, did not attribute any statements specifically to Mr. Rafiekian or to anyone else. *See* Reply Ex. B, FARA filing, at A-45 ("This retroactive supplemental statement is . . . based on information that is currently available to Flynn Intel Group, to the best of its knowledge, after undertaking due diligence with the assistance of counsel.").

The government's insistence that these communications are not privileged is also directly contradicted by its past behavior. As the government admits, on May 24, 2018, it sent Defendant's counsel a draft privilege waiver that covered, among other things, "the 2017 communications between the defendant and Covington"—clearly implying that the government believed those statements were privileged. Opp'n 6-7. Only *after* Mr. Rafiekian declined to waive privilege did the government try to circumvent the Defendant and obtain the privileged information by other (wrongful) means.[3]

## II.      THE FARA FILING DID NOT CAUSE A WAIVER OF PRIVILEGE

The government next argues that even if the communications were initially privileged, that privilege was waived by the public filing of the FARA registration. Again, the government is wrong. Although the indictment lists five statements by the Defendant to FIG's attorneys that the government claims were false, *four of those statements were not included in the FARA filing*. Specifically, the FARA filing does *not* repeat any of the following statements alleged to have been made by the Defendant to FIG's attorneys:

---

[3] For this reason, the government's claim that it never "asked" FIG to waive privilege (*e.g.*, Opp'n 5) is both disingenuous and wrong. The government specifically asked Mr. Flynn (on behalf of FIG) to permit the government to question Covington lawyers about the Defendant's communications with counsel. Not only are such communications privileged (as discussed in Part I, *supra*), but the attorneys' recollections also constitute opinion work product (*see* Part III *infra*).

- that a "meeting on or about September 19, 2016 in New York City [between members of FIG and the Turkish government] had nothing to do with Project Confidence, and instead was in furtherance of an abandoned 'Project Truth' that was distinct from Project Confidence";

- that "[t]here were no other contacts [besides the September 19 meeting] with Turkish government officials regarding the project";

- that "ALPTEKIN did not want the op-ed to be published," and

- that "[p]ayments from [FIG] to [Inovo] were refunds for lobbying and public relations work that [FIG] did not perform."

Indictment ¶ 53(a), (b), (d), (e).[4]  Because these statements were not included in the FARA filing, they could not have effected a waiver of privilege.  *See Grand Jury*, 727 F.2d at 875 n.7 (explaining that attorney-client communications should not be disclosed if they are "not directly related to the published [filing]."); *Manafort*, 2336, 2017 WL 4898143, at *11 (noting that the targets waived privilege with respect to their communications with counsel only "to the extent that these communications related to the FARA Submissions' contents").

## III.    THE GOVERNMENT SEEKS DISCLOSURE OF OPINION WORK PRODUCT

FIG's attorneys cannot be compelled to testify about their conversations with Mr. Rafiekian because their recollections of those conversations constitutes opinion work product. As argued more fully in the Defendant's opposition to the government's crime-fraud motions [ECF No. 195], the Fourth Circuit recently held that opinion work product encompasses exactly this type of inquiry—including questions posed to an attorney such as "[w]hat did the [defendant] tell you?"  *In re Grand Jury Subpoena*, 870 F.3d 312, 317-18 (4th Cir. 2017).

---

[4] Indictment ¶ 53(d) alleges that Mr. Rafiekian falsely told FIG's attorneys that "[t]he op-ed was [Flynn's] own idea, and he wrote it on his own behalf, and unrelated to the project."  The FARA filing contains a parallel statement.  This does not result in a waiver of privilege, however, for the reasons stated in Parts I, III, and IV of this reply.

*Marietta*, one of the main cases relied on by the government, is decisive for the Defendant on this point.  In *Marietta*, the Fourth Circuit held that in the case of a publicly disseminated document based on underlying attorney-client communications, any waiver of privilege with respect to the underlying communications *did not* extend to a waiver of opinion work product.  *In re Martin Marietta Corp.*, 856 F.2d at 625-26.  Thus, even if the FARA filing caused a waiver of privilege with respect to certain of the Defendant's communications with FIG's counsel (and for the reasons discussed *infra*, it did not), such waiver still does not permit the government to intrude upon opinion work product—including questions about the attorneys' recollections of conversations with the Defendant.

For similar reasons, the *Manafort* decision does not carry the day for the government.  In that case, which was decided in the U.S. District Court for the District of Columbia, the court considered and *expressly rejected* the Fourth Circuit rule discussed above—*i.e.*, that asking an attorney about his recollection of client communications constitutes opinion work product—and instead followed contrary D.C. Circuit precedent.  *Manafort*, 2017 WL 4898143, at *13.  Here, of course, Fourth Circuit precedent is controlling and cannot be disregarded.

## IV.    FIG DID NOT VALIDLY WAIVE PRIVILEGE

The government next argues that it should be entitled to introduce FIG's privileged information at trial because FIG's attorney-client privilege was waived by Michael Flynn, a cooperating government witness.  This theory suffers from fatal and obvious flaws.

The government's argument ignores fundamental restrictions on the waiver of the corporate attorney-client privilege that are dispositive on the facts in this case.  First, company management "can only waive a corporation's privilege if the agent is *acting within the scope of his or her authority*."  *Interfaith Housing Del., Inc. v. Town of Georgetown*, 841 F. Supp. 1393, 1399 (D. Del. 1994) (emphasis added).  And second, as set forth in the government's own cited

cases, an officer "must exercise the privilege in a manner consistent with their fiduciary duty to act in the *best interests of the corporation and not of themselves as individuals*." *CFTC v. Weintraub*, 471 U.S. 343, 349 (1985) (emphasis added). Mr. Flynn's purported waiver of FIG's privilege flunks both of these tests.

First, when Mr. Flynn purported to waive privilege on behalf of FIG, he was acting as an agent of the federal government, and not within the scope of his authority as CEO. The government has not even attempted to rebut this conclusion—and indeed, it is irrefutable. As discussed in the Defendant's moving brief, Mr. Flynn caused FIG to waive privilege in response to the government's explicit request, in furtherance of his cooperation agreement, and for the purpose of aiding the government's investigation and prosecution of the Defendant. Mot. 26-28. The Waiver Letter itself specifies that the waiver was made "pursuant to [Flynn's] plea and cooperation agreement with the Special Counsel's Office." Mot. Ex. G at 1. The Cooperation Agreement, in turn, was signed by Mr. Flynn in his *individual capacity*—not as CEO and certainly not on behalf of FIG. Mot. Ex. E at 10. The fact is that when Mr. Flynn took action to purportedly waive privilege on behalf of FIG, he did so in his individual capacity and outside the scope of his authority as CEO. Accordingly, his purported waiver was ineffective. *See Interfaith Hous.*, 841 F. Supp. at 1399-1400 (statement by town council member did not waive privilege on behalf of the council where there was no evidence that the member had authority to waive the council's privilege).

Likewise, Mr. Flynn's purported waiver certainly was not carried out to advance the best interests of FIG. He acted to advance either the interests of the government in prosecuting the Defendant or his own personal interest in cooperating with the government's investigation. The overriding goal of his actions was to avoid significant incarceration. The government has not

7

even suggested that Mr. Flynn considered best interests of FIG when he purported to waive the company's privilege.  Any such contention cannot be taken seriously.  The purported waiver allowed the government to access evidence it hopes to use in its prosecution of Mr. Rafiekian.  The conviction of the Defendant would, of course, effectively ensure the conviction of FIG of the same offenses under *respondeat superior* principles.  To the Defendant's knowledge, Mr. Flynn did not obtain any assurance from the government that FIG would be immunized in exchange for the waiver.

The purported waiver suffered from other fundamental flaws.  Mr. Flynn had caused FIG to be dissolved by filing a fraudulent certificate of dissolution, which falsely stated that FIG's board of directors or shareholders had met and acted to dissolve the corporation as required under the Delaware General Corporation Law.  Mot. Ex. A.  No such meeting or similar corporate proceeding ever took place, and Mr. Rafiekian was never given notice that Mr. Flynn intended to dissolve the company without his knowledge or consent.  Mr. Flynn, moreover, was hopelessly conflicted from the moment he began cooperating with the government and failed to recuse himself from any decision in which his personal interests conflicted with the interests of the corporation and its shareholders.  *See De Simone v. VSL Pharms., Inc.*, 352 F. Supp. 3d 471, 485-86 (D. Md. 2018) ("Under Delaware law, which controls the substantive issues on these claims, a corporate officer or director owes a fiduciary duty to the corporation and therefore must exhibit an 'undivided and unselfish loyalty to the corporation,' such that there is 'no conflict between duty and self-interest.'"); *Cf. Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985) ("Since a director is vested with the responsibility for the management of the affairs of the corporation, he must execute that duty with the recognition that he acts on behalf of others.  Such obligation does not tolerate faithlessness or self-dealing.").

Mr. Flynn's purported waiver of FIG's privilege was particularly egregious because he did so specifically to further his personal interests at the expense of Mr. Rafiekian.  At all relevant times, Mr. Rafiekian was a co-owner, co-officer, co-shareholder, and joint client of Covington with an equal claim to FIG's privilege.  Mr. Rafiekian's right to the privilege is only reinforced by the fact that he contributed tens of thousands of dollars of his personal funds towards the payment of FIG's legal fees in connection with the FARA filing.  Reply Exs. C, D; *see also* Opp'n 3 n.2 ("The government has uncovered evidence suggesting that the defendant partially reimbursed General Flynn for Covington's fees for conducting its inquiry and drafting and filing FIG's FARA registration.").[5]

## V.      THE CRIME-FRAUD EXCEPTION DOES NOT APPLY

The government repeats its contention here that the crime-fraud exception vitiates the privilege.  For the reasons stated in the Defendant's opposition to that motion [ECF No. 195], that argument fails.  Mr. Rafiekian respectfully refers the Court to that memorandum of law.

## VI.     GOOD FAITH DOES NOT ABSOLVE THE GOVERNMENT

The government argues that because it acted in good faith, it should be permitted to introduce privileged testimony and related evidence at trial.  Again, the government is wrong.  Even if the Court determines that the government acted in good faith, that exception to the exclusionary rule would impact only the constitutional objections not the evidentiary obstacles to admission.  *See United States v. Clenney*, 631 F.3d 658, 666 (4th Cir. 2011) ("The exclusion of

---

[5] The government does not rely on the Anthony Declaration to support its legal arguments in any meaningful way.  Instead, the government seeks to cast doubt on the credibility of the Defendant's assertion of privilege over information belonging to FIG.  If so, that matter has already been resolved.  As the Court has already ruled, Mr. Rafiekian was a joint client of FIG's lawyers as a matter of law.  Order, *United States v. Rafiekian*, No. 18 Cr. 457 (E.D. Va. Apr. 9, 2019) [ECF No. 101] ("[T]he interests of FIG appear to largely conflate with the interests of Rafiekian and Flynn, as they are FIG's only officers, directors and shareholders.  Under these circumstances, courts have viewed the directors of a corporation, in this case, Rafiekian and Flynn, as the joint clients of the corporation's lawyers, together with the corporate entity itself.").

inculpatory evidence represents a judicially implied remedy for a constitutional violation."); *United States v. Thomas*, 908 F.3d 68, 72 (4th Cir. 2018) (explaining that the good faith doctrine is an "exception" to the exclusionary rule).  As a result, even if there were no constitutional violation, the information would still be privileged and properly excluded on that basis alone. *See United States v. Haynes*, 216 F.3d 789, 798 (9th Cir. 2000) (holding that exclusion of privileged information was appropriate even though the government was vigilant about the privilege and established safeguards to protect privileged information, and government's actions did not constitute a denial of due process).

For the reasons stated in the Defendant's moving brief, the government's wrongful procurement and use of FIG's privilege information was a violation of the defendant's constitutional rights.  Once a constitutional violation has been found, it is the government's burden to establish a good faith defense.  *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 706 (9th Cir. 2009).  That burden has not been met.  The government clearly believed the Defendant's communications with FIG's counsel were covered by the attorney-client privilege, as evidenced by the fact that the government specifically asked the Defendant to waive that privilege in May 2018.  Opp'n 6-7.  When Mr. Rafiekian declined, the government decided it would find another way.  Thus, the government leveraged its control over Michael Flynn, a cooperating witness and *de facto* government agent, to cause a purported waiver to advance his personal interests by acting in a manner that was directly contrary to the interests of the company itself and its other principal shareholder.  The government surely knew Mr. Flynn was conflicted—there can be no doubt—but proceeded anyway.

The Court should not condone such conduct.  The privileged evidence should be excluded and suppressed, and Count One-(b) of the indictment should be dismissed.

10

## CONCLUSION

For the foregoing reasons, Mr. Rafiekian respectfully moves this Court to (1) dismiss sub-paragraph (b) of Count One of the indictment, and (2) exclude and suppress all privileged information belonging to FIG that the government procured through FIG's improper waiver of the attorney-client privilege.  If the Court determines that factual issues preclude resolution of this motion on the current record, Mr. Rafiekian respectfully requests that the Court hold an evidentiary hearing in order to take testimony and otherwise establish the facts and evidence relevant to this motion.

Dated June 12, 2019                                    Respectfully submitted,

*/s/*_____
Mark J. MacDougall (*Pro Hac Vice*)
Stacey H. Mitchell (*Pro Hac Vice*)
John C. Murphy (*Pro Hac Vice*)
*Counsel for Bijan Rafiekian*
Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
Telephone:  (202) 887-4000
Fax:  (202) 887-4288
E-mail:   mmacdougall@akingump.com
                shmitchell@akingump.com

*/s/*_____
Robert P. Trout (VA Bar # 13642)
*Counsel for Bijan Rafiekian*
Trout Cacheris & Solomon PLLC
1627 Eye Street, NW
Suite 1130
Washington, DC 20006
Telephone:  (202) 464-3311
Fax:  (202) 463-3319
E-mail:   rtrout@troutcahceris.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the 12th day of June 2019, true and genuine copies of Defendant

Rafiekian's Reply In Support of Motion to Dismiss the Indictment and Exclude and Suppress

Privileged Information was sent via electronic mail by the Court's CM/ECF system to the

following:

James P. Gillis
John T. Gibbs
Evan N. Turgeon
U.S. Attorney's Office (Alexandria-NA)
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone:  (703) 299-3700
Email:  james.p.gillis@usdoj.gov
        john.gibbs@usdoj.gov
        evan.turgeon@usdoj.gov



                                        _/s/_____
                                        Robert P. Trout (VA Bar # 13642)