# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | **:** | |
| | **:** | |
| **v.** | **:** | **Criminal Case No. 1:18-CR-457 (AJT)** |
| | **:** | |
| **BIJAN RAFIEKIAN, et al.** | **:** | |

## DEFENDANT BIJAN RAFIEKIAN'S REPLY MEMORANDUM IN SUPPORT OF <u>MOTION TO DISMISS INDICTMENT</u>

## TABLE OF CONTENTS

ARGUMENT ...................................................................................................................2

    I.       COUNT TWO SHOULD BE DISMISSED ...........................................................2

          A.      The Government Must Allege, As An Element Of The Offense, That Defendant's Actions Are Not "Legal Commercial Transactions" ....................................................................................2

                  *1.*     *Text and structure* ...................................................................3

                  *2.*     *Purpose and history* ...............................................................11

                  *3.*     *The constitutional avoidance canon* .............................................12

          B.      Even If The "Legal Commercial Transaction" Creates An Affirmative Defense, That Defense Is Plain On The Face Of The Complaint .........................................................................................13

          C.      This Indictment Demonstrates That Section 951 Is Unconstitutionally Vague ...........................................................15

    II.      COUNT ONE SHOULD ALSO BE DISMISSED .................................................17

CONCLUSION ..............................................................................................................17

i

# TABLE OF AUTHORITIES

C<span></span>ASES:

*Dixon v. United States,*
    548 U.S. 1 (2006) ........................................................................................3, 4, 6

*Flores-Figueroa v. United States,*
    556 U.S. 646 (2009) .............................................................................................5

*Jennings v. Rodriguez,*
    138 S. Ct. 830 (2018) ........................................................................................12

*McKelvey v. United States,*
    260 U.S. 353 (1922) ........................................................................................5, 6

*Rehaif v. United States,*
    No. 17-9560 (U.S. June 21, 2019) ...................................................1, 4, 11, 15

*Russell v. United States,*
    369 U.S. 749 (1962) ..........................................................................................17

*Scher v. United States,*
    305 U.S. 251 (1938) ............................................................................................6

*Smart v. Leeke,*
    873 F.2d 1558 (4th Cir. 1989) ...........................................................................3

*Smith v. United States,*
    568 U.S. 106 (2013) ........................................................................................3, 4

*United States v. Abdelshafi,*
    592 F.3d 602 (4th Cir. 2010) .............................................................................5

*United States v. Alerre,*
    430 F.3d 681 (4th Cir. 2005) .............................................................................9

*United States v. Cook,*
    84 U.S. (17 Wall.) 168 (1872) ...........................................................................6

*United States v. Daniel,*
    3 F.3d 775 (4th Cir. 1993) .................................................................................9

*United States v. Davis,*
    No. 18-431 (U.S. June 24, 2019) .....................................................................15

*United States v. Duran,*
    No. 07-20999-CR, 2008 WL 11333989 (S.D. Fla. Oct. 10, 2008)....................10
    596 F.3d 1283 (11th Cir. 2010) .................................................................15, 16

*United States v. George,*
    568 F.2d 1064 (4th Cir. 1978) .................................................................................17

*United States v. Hooker,*
    841 F.2d 1225 (4th Cir. 1988) (en banc) .........................................................3, 7

*United States v. Jackson,*
    926 F. Supp. 2d 691 (E.D.N.C. 2013).............................................................9, 10

*United States v. Lindauer,*
    No. S2 03-CR-807 (MBM), 2004 WL 2813168 (S.D.N.Y. Dec. 6, 2004)..............16

*United States v. Prentiss,*
    256 F.3d 971 (10th Cir. 2001) ..............................................................................5

*United States v. Royal,*
    731 F.3d 333 (4th Cir. 2013) ............................................................................7, 8

*United States v. Thompson,*
    554 F.3d 450 (4th Cir. 2009) .................................................................................3

*United States v. Truong Dinh Hung,*
    629 F.2d 908 (4th Cir. 1980) .........................................................................11, 12

*United States v. Turner,*
    836 F.3d 849 (7th Cir. 2016) ...............................................................................16
    840 F.3d 336 (7th. Cir. 2016) ..............................................................................16

*United States v. Wise,*
    221 F.3d 140 (5th Cir. 2000) .................................................................................5

## STATUTES AND REGULATION:

18 U.S.C.
    § 371.............................................................................................................17
    § 921(a)(3)...................................................................................................7, 8
    § 921(a)(16)(A)................................................................................................7
    § 921(a)(17)(A)................................................................................................7
    § 922(g).............................................................................................................7
    § 951(d).............................................................................................................4
    § 951(d)(4)........................................................................................................3

22 U.S.C.
    § 613(d).............................................................................................................8

28 C.F.R. § 73.1(f)..........................................................................................8, 16

**OTHER AUTHORITIES:**

Fed. R. Crim. P. 7(c) ................................................................................................17

S. REP. NO. 98-225 (1983) .......................................................................................11

Rafiekian and the government offer two fundamentally divergent conceptions of the offense defined in 18 U.S.C. § 951. In Rafiekian's view, the statute criminalizes knowingly acting only as an unregistered foreign "agent," and thus requires the government to allege the essential components of agency status—the "crucial element separating innocent from wrongful conduct." *Rehaif v. United States*, No. 17-9560, slip op. at 7 (U.S. June 21, 2019) (citation and internal quotation marks omitted).

The government takes a different view: that *any* person who acts at the direction and control of a foreign government without notifying the Attorney General is *presumptively criminal*. That presumption, moreover, applies not only to clandestine spies, but also consular officers, lawyers representing the government in court, and even contractors repairing embassy roofs. If the government gets its way, it may freely prosecute any of those individuals without presenting proof to the grand jury of the facts that would render their offense illegal—and it is up to the consular officer, lawyer, or roof contractor, under threat of up to ten years' imprisonment, to prove to a jury that their status was "official" or conduct "legal."

That is not how our criminal justice system works. When, as here, Congress defines an offense to exclude a wide swatch of perfectly legal behavior, it is the *government's* burden to allege, present to a grand jury, and ultimately prove that something "unlawful" occurred—not the other way around. A "legal commercial transaction" is not an "exception" to conduct proscribed by the statute; instead, it is an integral part of the definition of "agent," an undisputed element of the offense. And given the sheer breadth of that language, it is incumbent on the government to explain to the grand jury why Rafiekian's conduct ran afoul of the statute's terms.

It is conspicuous that the government's opposition brief, like the Superseding Indictment ("Indictment"), *still* fails to explain what Rafiekian did that was not a "legal commercial

transaction."  In fact, the government appears to concede that the type of consulting, lobbying, legal, and public relations work Rafiekian did—*i.e.*, the core of the agency allegations—falls within the scope of that phrase.  Nevertheless, the government claims that Rafiekian acted illegally by "conceal[ing]" Turkey's role—something that would not be illegal if he was never required to register in the first place.  The government also makes (tenuous) allegations of false statements on FARA forms, but the government does not contend that those statements were made subject to Turkey's direction and control.  And surely the government cannot satisfy its pleading burden simply by calling otherwise legal (and First Amendment-protected) activities "unlawful."  That is not remotely sufficient to put Rafiekian on notice that his conduct ran afoul of Section 951.

As this case shows, adopting the government's proposed construction of Section 951 would allow it to prosecute anyone for failing to register, and then place the extraordinary burden on the *defendant* to prove that his or her activities were legal.  In addition to inverting the traditional burden of proof enshrined in centuries of American jurisprudence, that interpretation would be ripe for exploitation and selective prosecution.  Instead, at least where, as here, the government intends to prosecute a businessperson, lobbyist, or lawyer for selling legal services to the public, it should be required to present to a grand jury and prove at trial that the defendant has engaged in something more than mere "legal commercial transactions."

## ARGUMENT

## I.   COUNT TWO SHOULD BE DISMISSED

### A.  The Government Must Allege, As An Element Of The Offense, That Defendant's Actions Are Not "Legal Commercial Transactions"

The relevant tools of statutory construction—Section 951's text and structure, its purpose and history, and the constitutional avoidance canon—all lead to the same conclusion:  That the

government bears the burden of pleading, as an element of the offense, that Rafiekian engaged in activity other than a "legal commercial transaction."

       *1.    Text and structure*

    **a.**  Rafiekian's position is straightforward:  Section 951 criminalizes knowingly acting as an unregistered "agent," but defines "agent" in such a way as to exclude a broad swath of potential defendants—namely, "any person engaged in a legal commercial transaction."  18 U.S.C. § 951(d)(4).  By thus defining "agent," Congress made clear that "legal commercial transaction" should be deemed an element of the offense—*i.e.*, "one whose specification . . . is necessary to establish the very illegality of the behavior."  *United States v. Hooker*, 841 F.2d 1225, 1231 (4th Cir. 1988) (en banc) (citation and quotation omitted).

    That definition is not consistent with the definition of an affirmative defense, which "excuses punishment for a crime the elements of which have been established and admitted." *Smart v. Leeke*, 873 F.2d 1558, 1574 n.22 (4th Cir. 1989) (citation and quotations omitted); *see also United States v. Thompson*, 554 F.3d 450, 452 n.2 (4th Cir. 2009) ("Affirmative defenses operate to excuse criminal liability.").  Classic affirmative defenses—like self-defense, statute of limitations, duress, or insanity—excuse already-completed crimes.  *See Smith v. United States*, 568 U.S. 106, 111–12 (2013).  For example, "[a] statute-of-limitations defense does not call the criminality of the defendant's conduct into question, but rather reflects a policy judgment by the legislature that the lapse of time may render criminal acts ill suited for prosecution."  *Id.* at 112. Likewise, the common-law defense of duress "is an excuse that allows an exception from liability." *Dixon v. United States*, 548 U.S. 1, 14 n.9 (2006) (emphasis added).  What these defenses have in

common is that, while they "may inhibit prosecution," they do "not render the underlying conduct noncriminal." *Smith*, 568 U.S. at 111-12.[1]

By defining "agent" in Section 951 to specifically exclude those selling legal commercial services, Congress has not excused an established criminal act, as a statute-of-limitations or duress defense would; rather, it has "render[ed] the underlying conduct noncriminal."  Especially considering how much legal activity Section 951 implicates, it is consistent with this well-recognized distinction—and indisputably more protective of defendants' constitutional rights—for the government to present to the grand jury that the defendant did not engage in a mere "legal commercial transaction."  After all, agency "status" in Section 951 is the "crucial element separating innocent from wrongful conduct." *Rehaif*, slip op. at 7; *cf. id.* at 6 (recognizing that, where statute criminalizes gun-possession conduct that "can be entirely innocent" in many circumstances, it is "the defendant's *status*, and not his conduct alone, that makes the difference").

**b.**  The government takes a different approach.  In its view, the default rule is that all unregistered activity taken on behalf of a foreign government is presumptively illegal, and it is therefore the defendant's burden to prove that he or she engaged in only a "legal commercial transaction" (or acted as a "duly accredited diplomatic or consular officer," an "officially and publicly acknowledged and sponsored official or representative," or a staff member or employee of such a diplomatic official).  *See* 18 U.S.C. § 951(d).

---

[1] The government points out that "insanity" need not be "specifically charged in an indictment that otherwise alleges that the defendant had the intent necessary to commit the charged crime," Opp'n 14, but that is because Congress codified the "insanity defense" specifically as an "affirmative defense[]" in 1984.  *See Dixon v. United States*, 548 U.S. 1, 12 (2006) ("Congress overruled [case requiring government to prove sanity under some laws] by statute in 1984, requiring a defendant to prove his insanity by clear and convincing evidence, 98 Stat. 2057, codified at 18 U.S.C. § 17(b).").

The government gleans this rule from *McKelvey v. United States*, which the government contends mechanically distinguishes between affirmative defenses "set out in distinct clauses or provisions," versus language set forth in the "general provision defining the elements of an offense[.]"   Opp'n 8 (citing *McKelvey v. United States*, 260 U.S. 353, 357 (1922)).   The government argues that because "Section 951(a) defines the offense and sets out the prohibited conduct," and because "[t]he 'legal commercial transaction' language relied upon by [Rafiekian] does not appear in Section 951(a)" (but is rather set out in subsection (d)), it must "be treated as giving rise to an affirmative defense." *Id.* at 10.

Immediately after announcing that rule, however, the government breaks it.  It contends that a different proviso that plainly "*does* appear in Section 951(a)"—namely, whether a defendant is a "diplomatic or consular officer, or attaché"—is nonetheless *not* an offense element, either. Opp'n 12 n.2.  The government is wrong about that, too, as its indictments in other recent Section 951 cases show.  *See* Mot. to Dismiss n.1.[2]  But it also demonstrates that the government overreads "*McKelvey's* general provision/proviso dichotomy," which is not an inexorable command but "only one interpretative aid among several that should be applied in parsing statutes that define offenses."  *See United States v. Prentiss*, 256 F.3d 971, 979–80 (10th Cir. 2001).  Indeed, as one of the government's own cases demonstrates, there are circumstances where

> the exception, though in a subsequent clause or section, or even in a subsequent statute . . . is so incorporated as an amendment with the words antecedently employed to define the offence, that it would be impossible to frame the actual

---

[2] To explain this discrepancy, the government relies on out-of-circuit authority construing the phrase "without lawful authority" to argue that, because the language in Section 951(a) is set off by commas, it triggers *McKelvey's* rule too.  *See* Opp'n 12-13 n.2 (citing *United States v. Wise*, 221 F.3d 140, 148–89 (5th Cir. 2000)).  But subsequent binding authority from the Supreme Court and Fourth Circuit, interpreting the same comma-offset "without lawful authority" phrase in a different statute, holds otherwise.  *See Flores-Figueroa v. United States*, 556 U.S. 646, 650 (2009) ("without lawful authority" part of "listed elements of the crime" of identity theft); *United States v. Abdelshafi*, 592 F.3d 602, 607 (4th Cir. 2010) (analyzing "the second element of a § 1028A(a)(1) offense," regarding whether defendant's "use of Medicaid patients' identifying information was not 'without lawful authority'").

> statutory charge . . . without an allegation showing that the accused was not within the exception contained in the subsequent clause, section, or statute.  Obviously such an exception must be pleaded, as otherwise the indictment would not present the actual statutory accusation, and would also be defective for the want of clearness and certainty.

*United States v. Cook*, 84 U.S. (17 Wall.) 168 (1872).  Thus, the government's reliance on *McKelvey* simply begs the question of what constitutes the "general provision defining the elements of an offense" in Section 951, as well as whether the "legal commercial transaction" language is "so incorporated" therein that it "must be pleaded" regardless.  *See* Opp'n 15.

None of the statutes construed in the cases cited by government shares Section 951's structure, nor expressly defines a critical liability element to exclude a broad swath of legal conduct in the way Section 951 does.  For example, consistent with an affirmative defense, the statute in *McKelvey* simply carved out an exception to otherwise established liability:  "Provided, this section shall not be held to affect" the rights of those acting "in good faith."  *McKelvey*, 260 U.S. at 357 (emphasis added); *see also Dixon*, 548 U.S. at 14 n.9 (describing the "the defense at issue in *McKelvey*," like the common-law defense of duress, to be "an excuse that allows an exception from liability").[3]

The statute at issue in *Scher* is similar.  It proscribed transactions involving untaxed liquor, but then specified that "[t]he provisions of this title . . . shall not apply to," among other things, "(f) Distilled spirits not intended for sale or for use in the manufacture or production of any article intended for sale."  *Scher v. United States*, 305 U.S. 251, 252 n.1 (1938).  As in *McKelvey*, the

---

[3] As the government acknowledges, *Dixon* did not involve a dispute over whether common-law duress was an affirmative defense or an element, but rather whether the government had to "disprove" that defense beyond a reasonable doubt.  Opp'n 9.

statute in *Scher* carved out an exception for which the "provisions of this title" did not apply; it did not purport to narrowly define a critical offense element, as Section 951 does.

The closest the government comes is *United States v. Royal*, 731 F.3d 333 (4th Cir. 2013). But that case, which involved a post-verdict challenge, not a pre-verdict challenge subject to "heightened scrutiny" like this one, *Hooker*, 841 F.2d at 1229—cannot bear the weight the government places on it. As the government's own description makes clear (Opp'n 10), the link between the definition and offense element in that case was far more attenuated than here: the analysis began with the offense itself, which prohibited the defendant from knowingly possessing "any firearm or ammunition," *id.* (citing 18 U.S.C. § 922(g)); next, that provision linked to the definition of "ammunition," which was "set out in a separate section" entirely, *id.* (citing 18 U.S.C. § 921(a)(17)(A)); that definition, in turn, required looking to "[a]nother provision," where the definition of the term "firearm" was found, *id.* (citing 18 U.S.C. § 921(a)(3)); and finally, that definition linked to "yet another provision"—*i.e.*, the "antique firearm" provision actually at issue. *Id.* (citing 18 U.S.C. § 921(a)(16)(A)). Thus, quite unlike Rafiekian's straightforward argument linking subsection (a) (applying only to "agents") and subsection (d) (defining "agent" to exclude "legal commercial transactions") of Section 951, the four degrees of nested definitional separation in *Royal* belie the strained characterization of the statute at issue as "similar in structure to Section 951." *Id.* at 9.

If anything, *Royal* supports Rafiekian. That is because the Fourth Circuit specifically distinguished between the "antique firearms" affirmative defense, which "stands alone as a separate sentence untethered to the general definition of 'firearm,'" and the "designed for use in any firearm" portion of the definition of "ammunition," which it deemed "part and parcel of the definitional sentence." 731 F.3d at 338–339; *see* 18 U.S.C. § 921(a)(17)(A) ("The term

'ammunition' means ammunition . . . designed for use in any firearm."). "Consequently," unlike with the "antique firearms" exception, "it is the *government's initial burden to prove as an element* of the [Section 922(g)(1)] offense that the rounds were 'designed for use in any firearm.'" *Royal*, 731 F.3d at 339 (emphasis added). By the same token, because the "legal commercial transaction" language is "part and parcel of the definitional sentence" of "agent," it is the government's initial burden to prove that element as well.

**c.** Section 951 differs from the statute at issue in *Royal* in another significant respect. Section 922(g), the statute at issue in that case, criminalized a broad range of behavior—a felon's possession of all manner of "firearms"—but in a separate section carved out a narrow exception for "antique firearm[s]," *i.e.*, those manufactured before 1898. 18 U.S.C. § 921(a)(3). As the *Royal* court observed, moreover, a criminal defendant is best positioned to prove the underlying facts implicating the "antique firearms" defense in the rare case where it applies. *See Royal*, 731 F.3d at 338.

Section 951, by contrast, inverts that structure by exempting all manner of "legal commercial transactions" from the statute's notice requirement, and requiring notice only for those foreign agency relationships that (as relevant here) are not legal and commercial in nature. Thus, unlike *Royal*'s narrow proviso (and unlike even FARA's commercial activity exception, which the government ignores, *cf.* Mot. at 17 (citing 22 U.S.C. § 613(d)), there is no dispute that the DOJ's definition of "legal commercial transaction" covers an exceptionally broad swath of potential statutory applications: virtually all legal commerce. *See* 28 C.F.R. § 73.1(f) (applying to "*any* exchange, transfer, purchase or sale, of any commodity, service or property *of any kind*, including information or intellectual property, not prohibited by federal or state legislation or implementing regulations") (emphasis added). Given that, a defendant is hardly better positioned than the

government to argue over whether his underlying activity was a "legal commercial transaction." Indeed, it is totally unclear how a defendant could go about proving that his activities were "legal," especially where, as here, the government has never specified the underlying "illegal" behavior.

In circumstances analogous to this one, where a criminal statute expressly permits a wide range of lawful conduct as applied to a significant portion of potential defendants, the Fourth Circuit has recognized that the government must allege as an element of the offense that the defendant took unlawful conduct when prosecuting those defendants. That was the rule in *United States v. Daniel*, 3 F.3d 775 (4th Cir. 1993), in which the court of appeals permitted prosecutions of doctors and pharmacists only if the government alleges, as an element of the drug-distribution offense, that the distribution was not "for a legitimate medical purpose"—even though that language is *not* part of "the provision describing the prohibited conduct." Opp'n 10. As the government's cases explain, the doctors and pharmacists are subject to an "enhanced analysis" in *Daniel* and its progeny because the statute expressly authorizes "such persons . . . to distribute controlled substances to the extent authorized by their registrations." *United States v. Alerre*, 430 F.3d 681, 689 (4th Cir. 2005).

The same construction was given to an analogous statute excluding a lawyer's provision of "bona fide legal representation" from an "obstruction of justice" offense in *United States v. Jackson*, 926 F. Supp. 2d 691 (E.D.N.C. 2013). The government attempted to prosecute a company's general counsel for a violation of 18 U.S.C. § 1515(c), which criminalizes obstruction of justice but expressly does not "prohibit or punish the providing of lawful, bona fide legal representation services in connection with or anticipation of an official proceeding." *Id*. at 715. (quotation omitted). Relying on *Daniel*, the court held that, given that the defendant was an attorney presumptively engaged in offering bona fide legal representation, the government was

9

required to allege that he was *not* providing lawful, bona fide legal representation as an element of the offense.  *Id.* at 717.  Like *Daniel*, the court's holding in *Jackson* was premised on the fact that the statute expressly excluded from its reach such a broad range of otherwise "lawful" conduct.[4]

The government acknowledges that the analysis in *Daniel* (and by extension, *Jackson*) is "based on the rationale that doctors and pharmacists are generally permitted to dispense controlled substances under other provisions of the [statute]."  Opp'n 15.  That is exactly right—indeed, it is the point.  Just as doctors are allowed to dispense controlled substances, and just as lawyers are allowed to engage in bona fide legal services, businessmen like Rafiekian are allowed by Section 951 to engage in legal commercial transactions on behalf of foreign governments without any requirement to notify the Attorney General under Section 951.

Given the sheer breadth of the "legal commercial transaction" language, it would make sense for the government to be put to the minimal burden of alleging that the activity alleged was not a "legal commercial transaction" in every case.  *E.g.*, Superseding Indictment at ¶ 16.2, *United States v. Ying Lin*, No. 15-cr-601 (E.D.N.Y. Dec. 6, 2017), ECF No. 87 (alleging that "[t]he offense conduct charged herein engaged in by the defendant . . . did not constitute a legal commercial transaction").  But this Court need not got so far to resolve Rafiekian's motion.  Instead, it can simply follow *Daniel*'s (and *Jackson*'s) lead and hold that where, as here, the defendant is a business owner, lawyer, or other individual ordinarily engaged in selling legal commercial services to the general public, the government must allege in any indictment that the relevant acts are not "legal commercial transactions."  Such a minimal safeguard would ensure that the government

---

[4] *Jackson* also demonstrates why the government's reliance on *United States v. Duran,* No. 07-20999-CR, 2008 WL 11333989 (S.D. Fla. Oct. 10, 2008), is unavailing."  In *Jackson*, the court rejected the government's reliance on a similar Eleventh Circuit case because the Fourth Circuit, in contrast to the Eleventh Circuit, "has a narrower definition of affirmative defenses."  *Jackson*, 926 F. Supp. 2d at 716.

only prosecutes those whom the grand jury has determined to have attained the "status" of an agent, which is what ultimately separates the innocent from the wrongful conduct.  *See Rehaif*, slip op. at 4.

### 2.    *Purpose and history*

The government also argues that the "history of Section 951 reinforces th[e] conclusion" that the "legal commercial transaction" language must be treated as an affirmative defense.  Opp'n 10.  In so doing, the government eschews any direct response to the detailed discussion of the legislative history in Rafiekian's motion—including the concerns expressed by coordinate branches of government that the statute was, for example, inappropriately sweeping in "American attorneys who represent foreign governments in American courts and individuals involved in legitimate business activities on behalf of a foreign client."  Mot. to Dismiss 12 (citation and internal quotation marks omitted).

Instead, the government finds "notable" that the Fourth Circuit easily ascertained the elements of the "earlier version of Section 951, which provided no definition for the term 'agent of a foreign government.'"  Opp'n 11 (citing *United States v. Truong Dinh Hung*, 629 F.2d 908, 920 (4th Cir. 1980)).  Needless to say, the Fourth Circuit's 1980 interpretation of an earlier version of Section 951 sheds no light on what Congress intended with amendments enacted three years later.  If anything, the government draws exactly the wrong conclusion from Congress's intervention.  The government does not dispute that, in amending the statute to add a definition of "agent of a foreign government" for the first time, Congress explicitly set out to *narrow the statute's reach* and ensure that it no longer "cover[ed] those individuals engaged in routine commercial matters," but instead "focus[ed] only on those in whom the United States government has a necessary interest."  S. REP. NO. 98-225, at 415 (1983).  By cabining these new limitations

to mere affirmative defenses, the government's position would blunt the significant new protection Congress afforded.

### 3. *The constitutional avoidance canon*

To the extent there is any ambiguity about whether the legal commercial transaction language constitutes an offense element or an affirmative defense, it should be resolved in favor of Rafiekian under the constitutional avoidance canon.  The government does not dispute that Section 951 "implicates the First Amendment" in multiple ways, and therefore is subject to "heightened scrutiny."  Mot. to Dismiss 13.  Nor does the government deny that the lobbying activities and drafting of the op-ed are legal, expressive acts protected by the Constitution. Accordingly, adopting Rafiekian's interpretation of the statute would avoid the First Amendment concerns that would arise if Section 951 were used to prosecute individuals for engaging in the type of activities alleged in this complaint, and avoid the due process concerns associated with requiring Rafiekian to bear the burden at trial of proving that his own conduct was "*legal*."

The government's primary response is to argue that "[i]n the absence of more than one plausible construction, the canon [of constitutional avoidance] simply has no application."  Opp'n 16 (citing *Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018)) (alterations in original).  As discussed, however, the Defendant's proposed construction of Section 951 is correct—and certainly "plausible," especially in light of *Daniel* and *Jackson*.  The government also argues that Section 951 is not facially overbroad, and relies on *United States v. Truong Dinh Hung*, 629 F.2d 908, 920 (4th Cir. 1980), to argue further that the statute is not facially vague.  *See id.*  But as discussed below, *see infra*, Part C, Rafiekian's challenge is as-applied, not facial.

**B. Even If The "Legal Commercial Transaction" Creates An Affirmative Defense, That Defense Is Plain On The Face Of The Complaint**

Even if the "legal commercial transaction" language was properly considered an affirmative defense, the Court may still dismiss an Indictment where, as here, the facts establishing the defense are clear on the Indictment's face. *See* Mot. to Dismiss 15. The government does not dispute this basic principle.

As in its indictment, the government's opposition brief is bereft of any allegation that Rafiekian engaged in any activity whatsoever on behalf of the government of Turkey other than "legal commercial transactions." The government never disputes that its indictment alleges "only two relevant 'acts' on behalf of the Turkish government and ministers": "lobb[ying] a member of Congress, a Congressional staffer, and a state government official," and "help[ing] draft an op-ed concerning the Turkish citizen, and then help[ing] place it for publication in The Hill newspaper under Flynn's name." Mot. to Dismiss 3–4, 8. The government does not deny that these actions are legal or commercial, nor that they constitute "legal commercial transactions" under the statute and DOJ's exceptionally broad definition, *see id.* 15–17.[5]

The government nevertheless contends that "Defendant's work in the United States under the direction or control of the Government of Turkey went well beyond mere 'legal commercial transactions'" and was "plainly unlawful." Opp'n 17, 21. But it offers little to support that contention.

First, the government argues it has pled the "illegal transaction" element merely because the Indictment alleges that the Defendant's scheme was to "covertly and *unlawfully* . . . influence

---

[5] For this reason, it is not accurate for the government to say that, to the extent its omission of a required element makes the indictment "defective, that is something that [it] could correct with a brief superseding indictment." Hr'g Tr. 16 (June 13, 2019), ECF No. 213. If the government cannot allege an activity other than a "legal commercial transaction," it cannot state a Section 951 offense at all.

U.S. politicians and public opinion" about the Turkish citizen.  Opp'n 18 (citing Indictment ¶ 3) (emphasis in original).  But inserting the word "unlawfully" before a description of a First Amendment-protected activity does not render it unlawful.  Nor does it fairly inform a defendant of the nature of the charge against him, or allow the Court to ascertain whether the grand jury actually charged a crime.

Second, the government argues that Rafiekian's actions involved an attempt "to conceal the Turkish government's involvement in the efforts to discredit Gulen."  Opp'n 18.  But the government does not explain why such "concealment" is illegal, so long as the underlying activities were "legal" and "commercial."  To the extent the government is suggesting (in circular fashion) that it was illegal to "conceal" the Turkish government's identity *from the Attorney General in violation of Section 951*, that constitutes impermissible bootstrapping.  Such an interpretation would render the "legal commercial transaction" language meaningless by requiring that notice be given for all legal commercial transactions.

Finally, the government contends that the alleged false statements in the FARA filing satisfy the "illegal transaction" element.  But unlike the core "agency" activities alleged—the lobbying and the op-ed—the government never alleges, either in its indictment or in its brief, that Rafiekian made those false statements *as an agent* under the direction and control of the Turkish government.  That is, the government claims that Turkey directed FIG's work between August and November 2016 (culminating in an op-ed), but fails to allege any direction or control by the Turkish government over the FARA filing itself.  As such, those putatively false statements cannot possibly suffice to establish the validity of the Section 951 count.  Indeed, if they did suffice, that would mean that the actions Rafiekian took to *satisfy Section 951* would be the same actions that

14

triggered the requirement to give notice under Section 951 in the first place—an illogical and paradoxical result.[6]

### C.  This Indictment Demonstrates That Section 951 Is Unconstitutionally Vague

"In our constitutional order, a vague law is no law at all."  *United States v. Davis*, No. 18-431, slip op. at 1 (U.S. June 24, 2019).  Vague laws violate the constitution by "hand[ing] off the legislature's responsibility for defining criminal behavior to unelected prosecutors and judges, and . . . leave people with no sure way to know what consequences will attach to their conduct."  *Id.*  As the motion to dismiss explains, Rafiekian had no way to expect that he would face the "harsh" penalty of up to ten years imprisonment, *Rehaif*, slip op. at 6, for engaging in petitioning and speech activities that are undisputedly "not only legal, but enshrined in the First Amendment to the U.S. Constitution."  Mot. to Dismiss 13–14.

The government's response largely misses that point.  It spends a great deal of time arguing that Section 951 is not vague *on its face*, but Rafiekian does not challenge the facial validity of the statute.   Instead, his contention is that, if the language of Section 951 and its implementing regulations support a criminal prosecution here, then it is unconstitutionally vague *as applied to this case* for failing to give people of ordinary intelligence knowledge of what conduct it prohibits, and for inviting arbitrary and discriminatory enforcement.  As a result, *Truong* and the other cases cited by the government involving facial challenges are irrelevant to this analysis.  So are the cases that never grapple with the "legal commercial transaction" carve-out.  *United States v. Duran*, 596

---

[6] Notably, even if those statements satisfied the government's burden, that would still leave nothing but legal commercial activities allegedly performed for Turkey.  The government alleges that the Defendant began working on the FARA filing in January 2017, three months *after* the op-ed was published in November 2016.  Indictment ¶ 52. Thus, the government's case would be limited to the FARA filing itself, and not any of the work that preceded it.

F.3d 1283 (11th Cir. 2010); *United States v. Lindauer*, No. S2 03-CR-807 (MBM), 2004 WL 2813168, *4 (S.D.N.Y. Dec. 6, 2004).

The government makes no effort to explain how someone like Rafiekian should have been aware that engaging in paid lobbying and other legal and First Amendment-protected work should have put him on notice that he fell outside the scope of Section 951(d), particularly in light of the government's exceptionally broad definition of the "legal commercial activity" exception. *See* Opp'n 21 (citing 28 C.F.R. § 73.1(f)). As noted, the government concedes (by failing to address) that the core work performed by FIG—namely, consulting and lobbying—was a "legal commercial transaction" within the scope of Section 951(d). Legal transactions do not become "plainly unlawful" simply because the government deems them so. *Id.*

Nor does the government meaningfully respond to Rafiekian's argument that, if Section 951 allows a prosecution like this one—which is far different from the typical Section 951 case, *see* Mot. to Dismiss 19-20 (citing cases)—it invites standardless and discriminatory enforcement. The government's response (in a footnote) does not deny that most Section 951 prosecutions involve "espionage-related" activities; it merely contends that "Section 951 is not by its terms limited to espionage or like activities." Opp'n 21 n.7 (citing *Duran*, 596 F.3d at 1295–1296). But that is the point: If this case may proceed, then the statute allows standardless and discretionary prosecutions of underlying conduct that is not alleged to be illegal. *Cf. Duran*, 596 F.3d at 1296 n.9 (reserving question of constitutionality "of possible applications of § 951 to completely innocent conduct"). The government also argues that it has prosecuted other individuals for "lobbying U.S. officials," Opp'n 21 n.7—ignoring the fact that the jury in that case *acquitted the defendant on both Section 951 charges*, instead convicting him only for violating IEEPA sanctions. *See United States v. Turner*, 836 F.3d 849, 856 (7th Cir.), as supplemented, 840 F.3d 336 (7th Cir.

2016) (jury convicted solely on IEEPA violation).  *Turner* thus hardly supports the government's view.

## II.     COUNT ONE SHOULD ALSO BE DISMISSED

The Indictment contains not a single factual allegation that Rafiekian agreed with anyone else not to give notice under Section 951 or to make false statements in a FARA filing.  The omission of that "essential fact[]," Fed. R. Crim. P. 7(c), goes to the very heart of whether a conspiracy crime was committed at all.  "Where guilt depends so crucially upon such a specific identification of fact, . . . an indictment must do more than simply repeat the language of the criminal statute."  *Russell v. United States*, 369 U.S. 749, 764 (1962).  Count One-(b) should be dismissed, both for that reason and for the reasons set forth in the Motion to Dismiss the Indictment and Exclude and Suppress Privileged Information (Dkt. 163).

Equally meritless is the government's claim that the Section 951 conspiracy count (Count One-(a)) may survive even if the underlying Section 951 charge (Count Two) is dismissed.  The government points out that "the completion of a substantive offense is not required to prove a conspiracy to commit that offense."  (Opp'n 22).  True, but irrelevant.  If the substantive Section 951 count is dismissed, it is because the government has failed to state any offense against Rafiekian at all; if so, he cannot then be charged with conspiring to commit that non-offense.  *See* 18 U.S.C. § 371 (making it a crime to "conspire either to *commit any offense* against the United States") (emphasis added); *United States v. George*, 568 F.2d 1064, 1072 (4th Cir. 1978) (where the "thing actually done" is no crime, "the agreement to do that thing cannot" violate Section 371).

## CONCLUSION

For the foregoing reasons, Mr. Rafiekian respectfully requests that the Court dismiss the Indictment in its entirety.

Dated: June 25, 2019                                    Respectfully submitted,

                                                        /s/
                                                        _____
                                                        James E. Tysse (VA Bar # 73490
                                                        Mark J. MacDougall (*Pro Hac Vice*)
                                                        Stacey H. Mitchell (*Pro Hac Vice*)
                                                        John C. Murphy (*Pro Hac Vice*)
                                                        Adam A. Bereston (*Pro Hac Vice*)
                                                        Samantha J. Block (*Pro Hac Vice*)
                                                        *Counsel for Bijan Rafiekian*
                                                        Akin Gump Strauss Hauer & Feld LLP
                                                        2001 K Street NW
                                                        Washington, DC 20006
                                                        Telephone:  (202) 887-4000
                                                        Fax:  (202) 887-4288
                                                        E-mail:   mmacdougall@akingump.com
                                                                  shmitchell@akingump.com


                                                        /s/
                                                        _____
                                                        Robert P. Trout (VA Bar # 13642)
                                                        *Counsel for Bijan Rafiekian*
                                                        Trout Cacheris & Solomon PLLC
                                                        1627 Eye Street, NW
                                                        Suite 1130
                                                        Washington, DC 20006
                                                        Telephone:  (202) 464-3311
                                                        Fax:  (202) 463-3319
                                                        E-mail:  rtrout@troutcahceris.com

18

## CERTIFICATE OF SERVICE

I hereby certify that, on the 25th day of June 2019, true and genuine copies of Defendant

Bijan Rafiekian's Reply Memorandum of Law in Support of Motion to Dismiss Indictment was

sent via electronic mail by the Court's CM/ECF system to the following:

> James P. Gillis
> John T. Gibbs
> Evan N. Turgeon
> U.S. Attorney's Office (Alexandria-VA)
> 2100 Jamieson Avenue
> Alexandria, VA 22314
> Telephone:  (703) 299-3700
> Email:  james.p.gillis@usdoj.gov
>         john.gibbs@usdoj.gov
>         evan.turgeon@usdoj.gov

_/s/_____
Robert P. Trout (VA Bar # 13642)