# EXHIBIT A
# (PROPOSED SUR-REPLY)

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | **Criminal Case No. 1:18-CR-457 (AJT)** |
| | : | |
| **BIJAN RAFIEKIAN, et al.** | : | |

### DEFENDANT BIJAN RAFIEKIAN'S SUR-REPLY TO GOVERNMENT'S MEMORANDUM REGARDING CRIME-FRAUD EXCEPTION TO THE WORK PRODUCT DOCTRINE

Defendant Bijan Rafiekian respectfully submits this response to the government's Memorandum Regarding the Crime-Fraud Exception to the Work Product Doctrine.

## I.      THE DOCUMENTS WERE PREPARED IN ANTICIPATION OF LITIGATION

The documents and information at issue in this motion—attorneys' notes, documents and testimony regarding conversations between Mr. Rafiekian and Flynn Intel Group, Inc.'s ("FIG") attorneys—were prepared in anticipation of litigation. "Investigation by a federal agency presents more than a remote prospect of future litigation, and provides reasonable grounds for anticipating litigation sufficient to trigger application of the work product doctrine." *Martin v. Monfort, Inc.*, 150 F.R.D. 172, 173 (D. Colo. 1993). Here, the documents and information at issue were prepared in response to an inquiry from the Department of Justice, which suggested that FIG may have broken the law by failing to register under FARA. The DOJ's inquiry satisfies the "anticipation of litigation" element. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992) (defining work product as documents "prepared because of the prospect of litigation when the preparer faces an actual claim *or a potential claim* following an actual event or series of events that reasonably could result in litigation") (emphasis omitted and added); *Martin v. Bally's Park Place Hotel &*

*Casino*, 983 F.2d 1252, 1261 (3d Cir. 1993) (holding that material prepared in response to an OSHA inquiry letter were prepared in anticipation of litigation); *SafeCard Servs. Inc. v. SEC*, 926 F.2d 1197, 1203 (D.C. Cir. 1991) (holding affidavits created during course of an SEC investigation are protected work product); *In re Gen. Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 532-533 (S.D.N.Y. 2015) (holding interview materials underlying a public report provided to Congress and the DOJ were protected work product in light of pending DOJ investigation); *Briggs & Stratton Corp. v. Concrete Sales & Servs.*, 174 F.R.D. 506, 509 (M.D. Ga. 1997) (holding that materials prepared in response to EPA investigation were protected work product).

The government incorrectly argues that these documents and information are not work product because they relate to the preparation of a public filing.  The cases cited by the government on this point, however, relate to non-adversarial situations involving tax compliance and accounting, not a response to an inquiry from a federal agency relating to potential criminal violations.  *See United States v. El Paso Co.*, 682 F.2d 530, 543–44 (5th Cir. 1982) (holding tax pool analysis was not work product because its "sole function . . . is to back up a figure on a financial balance sheet . . . [and] carries much more the aura of daily business"); *United States v. Textron Inc. & Subsidiaries*, 577 F.3d 21, 39 (1st Cir. 2009) (holding tax accrual work papers were not protected work product because their "only purpose" was to support financial filings and gain auditor approval).[1]

---

[1] *Suggs v. Whitaker*, 152 F.R.D. 501, 505-06 (M.D.N.C. 1993) is also no help to the government.  That case involved witness statements taken by an insurance adjustor, not a response to a federal inquiry, and the court held that the statements were protected work product in any event.

A publicly available article by attorneys at Covington & Burling—the same attorneys who represented FIG in connection with the FARA filing[2]—also supports the existence of work product protection.  In an article published on August 25, 2016, less than three months before the op-ed that triggered the FARA inquiry, Covington wrote of an impending "'tipping point' in FARA interest and enforcement" and the "growing enforcement of and interest in FARA."  Ex. A at 1.  The article also quoted a separate article in *Politico* from the same day, opining that "the feds might take a broader look at other firms and clients" in connection with FARA.  *Id.*  Thus, the same attorneys who prepared FIG's FARA registration are on record that they anticipated increased government enforcement activity in this area.  This further compels the conclusion that Covington's work relating to the FARA filing was done in anticipation of litigation.

## II.   THE DEFENDANT HAS SUFFICIENTLY IDENTIFIED THE PROTECTED DOCUMENTS AND INFORMATION

Mr. Rafiekian is not asserting the work product privilege "blanketly to whole categories of documents or information," as the government claims.  Gov't Memo. 2.  At this stage, where the government has not yet pointed to any specific documents or testimony it plans to introduce, the defense should not be required to identify every conceivable document or possible future testimony that implicates protected attorney work product.[3]

Regardless, the defense has identified specific categories of documents and testimony that are protected work product under Fourth Circuit precedent:  attorneys' notes, memoranda, and testimony regarding conversations between Mr. Rafiekian and FIG's attorneys.  *See In re*

---

[2] The article contained contact information for Richard Kelner and Brian Smith, two of the attorneys that represented FIG in connection with the FARA filing.

[3] The defense reserves the right to assert work product privilege over any document or testimony that the government attempts to elicit.

*Grand Jury Subpoena*, 870 F.3d 312, 317 (4th Cir. 2017) ("'[N]otes and memoranda of witnesses' oral statements . . . 'tend[ ] to reveal the attorney's mental processes,' and therefore enjoy the greater protection accorded to opinion work product.") (second alteration in original) (quoting *Hickman v. Taylor*, 329 U.S. 495, 512 (1947)); *In re Allen*, 106 F.3d 582, 608 (4th Cir. 1997) (protecting interview summary under work product doctrine—"[f]orcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes") (citation omitted).  Accordingly, the defense has met its burden of showing that the documents and information at issue are protected by the work product doctrine.

## III.   THE GOVERNMENT RELIES ON OUT-OF-CIRCUIT CASES THAT CONTRADICT CLEAR FOURTH CIRCUIT PRECEDENT

The government does not dispute that under binding Fourth Circuit precedent, a party seeking to compel the production of opinion work product under the crime-fraud exception must make a "prima facie showing that the attorney in question was aware of or a knowing participant in the criminal conduct."  *In re Grand Jury Proceedings #5 Empaneled Jan. 28, 2004*, 401 F.3d 247, 252 (4th Cir. 2005) (internal quotation marks and citation omitted).  *See In re Grand Jury Subpoena*, 870 F.3d 312, 316 (4th Cir. 2017); *In re Grand Jury Proceedings, Thursday Special Grand Jury Sept. Term 1991*, 33 F.3d 342, 349 (4th Cir. 1994).  The government concedes it cannot meet this element.  ECF No. 173 at 1-2. ("We wish to make clear at the outset that there is no evidence—and no contention here—that FIG's attorneys, Covington & Burling and Kristen Verderame, were aware that the statements that the defendant made to them were false or that they were otherwise in furtherance of any crime or fraud.").

4

Recognizing this, the government asks the Court to apply an entirely different and incompatible legal standard from another circuit—that "[t]he party intending crime or fraud cannot invoke the [opinion] work product doctrine" at all.  *In re Grand Jury Subpoenas*, 561 F.3d 408, 411 (5th Cir. 2009).  The Court should decline to do so.  The Fourth Circuit has never adopted this rule, and it directly conflicts with the Fourth Circuit standard.[4]  Under the Fifth Circuit rule, a party seeking to compel production of opinion work product can do so *without meeting with Fourth Circuit test*, which requires a showing that the attorney was aware of the criminal conduct.  Until the Fourth Circuit adopts a new standard, the Court is bound to follow it.

The conflict between the Fourth and Fifth Circuits is illustrated by the Fourth Circuit's decision in *Grand Jury Proceedings #5*.  Whereas the out-of-circuit cases cited by the government suggest that a defendant who commits a crime or fraud can never claim opinion work product protection, in *Grand Jury Proceedings # 5*, the Fourth Circuit entertained an appeal *by the defendants*, notwithstanding the fact that the government had presented evidence demonstrating that the defendants were committing or about to commit a crime.  *See* 401 F.3d at 249 ("The individuals [*i.e.*, defendants] intervened and moved to quash the subpoena [seeking testimony from their attorney] asserting both attorney-client and work product privileges."); *id.* at 255-56 ("While the Government did present evidence demonstrating that some violation of a federal criminal statute was ongoing or about to be committed under prong one, it did not demonstrate . . . that the attorney knew of the violation.").  In its decision, the Fourth Circuit *did not* hold that the defendants lacked the ability to assert work product protection or that their assertion was otherwise improper.  Instead, the court remanded the case and instructed that if a

---

[4] Indeed, even the Fifth Circuit acknowledged that this doctrine "may not be completely settled."  *See* 561. F.3d at 411 n.5.

prima facie case for the crime-fraud exception could be made with respect to the defendant but not with respect to the attorney, the district court would still be required to "redact any portions of the documents that contain opinion work product." *Id.* at 256.

Here, the Court is of course bound to follow Fourth Circuit precedent. As a result, to compel the production of opinion work product (or testimony regarding the same), the government must show that the attorney was aware of the underlying misconduct. Because the government cannot meet this burden, its crime-fraud motion must be denied with respect to all opinion work product—attorney including notes and memorandum regarding conversations between Mr. Rafiekian FIG's attorneys and the attorneys' recollections regarding those conversations.

## CONCLUSION

For the foregoing reasons, Mr. Rafiekian respectfully requests that the Court exclude and suppress all privileged information. If the Court concludes that the defense has not identified the documents or testimony with sufficient specificity, the defense requests an opportunity to do so.

Dated: June 26, 2019                                       Respectfully submitted,

                                                           /s/
                                                           Mark J. MacDougall (*Pro Hac Vice*)
                                                           Stacey H. Mitchell (*Pro Hac Vice*)
                                                           John C. Murphy (*Pro Hac Vice*)
                                                           Adam A. Bereston (*Pro Hac Vice*)
                                                           Samantha J. Block (*Pro Hac Vice*)
                                                           *Counsel for Bijan Rafiekian*
                                                           Akin Gump Strauss Hauer & Feld LLP
                                                           2001 K Street NW
                                                           Washington, DC 20006
                                                           Telephone: (202) 887-4000
                                                           Fax: (202) 887-4288
                                                           E-mail: mmacdougall@akingump.com

shmitchell@akingump.com

/s/_____
Robert P. Trout (VA Bar # 13642)
*Counsel for Bijan Rafiekian*
Trout Cacheris & Solomon PLLC
1627 Eye Street, NW
Suite 1130
Washington, DC 20006
Telephone:  (202) 464-3311
Fax:  (202) 463-3319
E-mail:   rtrout@troutcahceris.com

## CERTIFICATE OF SERVICE

I hereby certify that, on the 26th day of June 2019, true and genuine copies of Defendant

Bijan Rafiekian's Sur-Reply to Government's Memorandum Regarding the Crime-Fraud

Exception to the Work Product Doctrine was sent via electronic mail by the Court's CM/ECF

system to the following:

James P. Gillis
John T. Gibbs
Evan N. Turgeon
U.S. Attorney's Office (Alexandria-VA)
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone:  (703) 299-3700
Email:  james.p.gillis@usdoj.gov
        john.gibbs@usdoj.gov
        evan.turgeon@usdoj.gov

_/s/_____
Robert P. Trout (VA Bar # 13642)

# EXHIBIT A

## COVINGTON

# Have We Reached A FARA "Tipping Point"?

August 25, 2016

Election and Political Law

This month, the Foreign Agents Registration Act (FARA), an obscure, almost 80-year old, statute has rocketed to national headlines. FARA, a sweeping federal criminal statute, requires certain individuals and companies acting on behalf of foreign principals to register with the Department of Justice and file regular detailed reports of their activities. As we face a potential "tipping point" in FARA interest and enforcement, this advisory provides a basic compliance primer for those working for or contracting with foreign companies, governments, political parties, and individuals.

## The Recent Surge In Interest In FARA

The *New York Times*, earlier this month, reported that "secret ledgers" in Ukraine show $12.7 million in cash payments designated for former Donald Trump campaign chairman Paul Manafort from Ukraine's pro-Russian political party. Days later, the Associated Press reported that Manafort helped the pro-Russian party "secretly route at least $2.2 million in payments to two prominent Washington lobbying firms." These stories sparked a flurry of questions about whether Manafort and others unlawfully failed to register with the Department of Justice as foreign agents. This coverage, in turn, has sent "shockwaves" in Washington, with *Politico* today noting that "reps from multiple firms who lobby for foreign entities think this might be a tipping point, and the feds might take a broader look at other firms and clients."

To some extent, these stories are not new. But we are seeing them with greater frequency. Over the last several years, we have noted – and been tracking for many clients – the growing enforcement of and interest in FARA. In 2014, for example, the *New York Times* ran a lengthy investigative report on foreign government donations to U.S. think tanks and the FARA concerns arising out of those donations. In 2011, a major Boston consulting firm registered and filed back reports under FARA after questions arose regarding its dealings with foreign governments. The Manafort story falls squarely within this pattern of increased enforcement interest and public attention on those representing foreign entities.

## FARA In A Nutshell

FARA is a complicated and arcane statute – its application can swing quickly between very different outcomes, depending on the specific factual situation involved. Applying the law requires examining the relationship between the U.S. entity and the foreign entity, the specific activities undertaken, and even the physical location of the activities, among other considerations.

FARA requires "agents of foreign principals" to register and file detailed reports with the U.S. Department of Justice or face criminal penalties. These reports must include, among other things, disclosures itemizing meetings with U.S. officials and income and expenses associated with certain activities in which the registrant engaged, the underlying agreements with the foreign principal, and copies of reports and research materials disseminated by the foreign agent.. Importantly, both individuals and their employers can become foreign agents, subject to these registration and reporting requirements.

It is a common misconception that FARA applies only to work on behalf of foreign governments and political parties. While foreign governments and political parties are "foreign principals," the term also includes any non-U.S. individual or "partnership, association, corporation," or "organization." It is therefore essential that foreign companies with operations or interests in the United States pay special attention to FARA.

**Broad Triggers**

To become a "foreign agent," an individual or entity must engage — **within the United States —** in certain activities as a representative of, or at the order, request, or under the control of, the foreign principal. FARA-triggering activities include:

1. "political activities," a defined term under the statute that encompasses any activity that is intended to influence the U.S. government *or any section* of the U.S. public on a matter of foreign or domestic policy;

2. acting as a "public-relations counsel," "publicity agent," "information-service employee," or "political consultant;"

3. collecting or dispensing money; or

4. representing the interests of the foreign principal before an agency or official of the United States government, generally by making direct contacts with government officials.

These triggers are extremely broad. Unlike the better known Lobbying Disclosure Act ("LDA"), which has significant *de minimis* thresholds including a 20 percent time threshold, FARA can be triggered even by the slightest activity that meets the statutory tests. A single meeting, for example, with U.S. officials by an executive of a company headquartered outside the United States might satisfy the "representation" trigger. And the mere act of hosting a conference, writing a policy report, or reaching out to opinion leaders on behalf of a foreign client could satisfy the "political activities' trigger.

As a result of these broad registration requirements, it is very easy to trigger the statute unintentionally unless FARA considerations are taken into account when negotiating and drafting the underlying contract documents. Even then, the parties must remain vigilant throughout the relationship to avoid crossing the line and triggering the statute, notwithstanding any legal language in a carefully drafted document.

**Vague Exemptions**

Even when the registration triggers are satisfied, there are several exemptions from the registration and reporting requirements. Unfortunately, many of these exemptions are poorly defined and the Department of Justice's FARA Unit has issued few regulations or advisory guidance interpreting them.

The Commercial Exemption. FARA's "commercial exemption" exempts "private and nonpolitical activities in furtherance of the bona fide trade or commerce" of the foreign principal. Implementing regulations indicate that trade and commerce includes the purchase and sale of commodities, services, or property. In 2003, the Department extended this exemption to cover political activities (seeking to influence the U.S. government or U.S. public on a matter of policy) undertaken for a foreign corporation "in furtherance of the bona fide commercial, industrial, or financial operations of the foreign corporation." There remains, however, considerable uncertainty regarding the reach and boundaries of this commercial exemption. And it does not apply when the activities are directed or controlled by a foreign government or political party.

The LDA Exemption. When Congress strengthened lobbying disclosure requirements in the mid-1990s, it simultaneously added an exemption to FARA that permits an agent of a foreign private sector principal to satisfy any FARA obligation by registering under the LDA if the agent has engaged in lobbying activities. This exemption is not available to an agent of a foreign government or foreign political party. Many entities that would otherwise be foreign agents choose to satisfy FARA, where applicable, by registering and reporting under the LDA, which is generally considered less burdensome.

*        *        *

Although FARA is relatively esoteric, Covington's experience in this area spans more than 50 years. (One of the leading FARA cases is *Attorney General v. Covington & Burling*, where we established that the attorney-client privilege applies to FARA.) We also defended a consulting firm targeted in the Department of Justice's largest FARA investigation of recent memory and have played key roles in some of the most recent high-profile FARA matters.

If you have any questions concerning the material discussed in this client alert, please contact the following members of our Election and Political Law practice:

| | | |
|---|---|---|
| **Robert Kelner** | +1 202 662 5503 | rkelner@cov.com |
| **Bob Lenhard** | +1 202 662 5940 | rlenhard@cov.com |
| **Zack Parks** | +1 202 662 5208 | zparks@cov.com |
| **Brian Smith** | +1 202 662 5090 | bdsmith@cov.com |
| **Derek Lawlor** | +1 202 662 5091 | dlawlor@cov.com |
| **Andrew Garrahan** | +1 202 662 5841 | agarrahan@cov.com |

This information is not intended as legal advice. Readers should seek specific legal advice before acting with regard to the subjects mentioned herein.

Covington & Burling LLP, an international law firm, provides corporate, litigation and regulatory expertise to enable clients to achieve their goals. This communication is intended to bring relevant developments to our clients and other interested colleagues. Please send an email to unsubscribe@cov.com if you do not wish to receive future emails or electronic alerts.