# EXHIBIT 4

# Smith, Brian

**From:** Kelner, Robert
**Sent:** Monday, February 20, 2017 11:12 PM
**To:** 'K Verderame'
**Cc:** Smith, Brian; Langton, Alexandra; Anthony, Stephen
**Subject:** Outline for DOJ Meeting

PRIVILEGED & CONFIDENTIAL
ATTORNEY-CLIENT COMMUNICATION
ATTORNEY WORK PRODUCT

Here is an outline for what I propose to cover tomorrow at the meeting, though obviously they may lead us in other directions:

We wanted to come in, as we have done before potential retroactive filings for other clients, to walk through the draft filing and solicit any input, so that we could address any issues with the draft. But in this case, as we discussed with Heather, we also wanted to talk through the arguments for and against filing a FARA registration, in the circumstances presented here, to get the Unit's input.

We've addressed in the draft we brought with us the answers to the various questions you had in your letter. And I can walk you through those answers today. Let me do that briefly now.

[Walk through each question and our response]

The client that engaged FIG, Inovo BV, is a Netherlands based corporation. A business consulting firm. Its CEO, Ekim Alptekin, a US-Dutch citizen, indicated that he was interested in restoring confidence in the Turkish economy, and he viewed Mr. Gulen and his followers as an obstacle to that. Although FIG did know that initially Mr. Alptekin was in touch with the Turkish government about the possibility of engaging FIG, Alptekin ultimately engaged FIG directly through Inovo and indicated that the Turkish government would not be involved in directing or funding FIG's engagement.

FIG agreed to conduct research from public sources on Gulen and to develop a video based on the research, which could be disseminated through a PR firm that FIG would retain.

After a contract was executed in August 2016, FIG engaged various independent contractors who conducted the open source research and began preliminary work on the video. FIG later retained a PR firm, Sphere. Sphere engaged in some federal and state level outreach to public officials, engagement with the media, and preparation of a monopoly themed graphic about the Gulen organization, called Gulenopoly. FIG also engaged in some outreach on the Hill regarding Gulen, including a meeting with Chairman McCall's staff.

Originally, the expectation was that the initial 3-month contract would be extended so that the research and video could be disseminated. But the contract was allowed to lapse on Nov. 15 without being extended, in light of the expectation that Gen. Flynn would join the administration. FIG suspended operations in mid-November 2016 and began to shut down. To the best of FIG's knowledge, FIG's research and the early work on the video was not disseminated by FIG. We do not know what Inovo may have elected to do with work product that was in its possession. We have seen, for example, Gulenopoly popping up on social media and in publications such as The Hill. FIG is not involved in circulating Gulenopoly to the best of our knowledge.

1

As noted, toward the end of the initial contract period, General Flynn himself wrote an op-ed about Gulen. He was not asked to do this. He viewed this as something he was doing on his own. But the subject matter overlapped with the work for Inovo, he did seek input from Alptekin, and FIG did ask Sphere to place the article.

*Based on this fact pattern, a credible argument could be made that registering under LDA, as FIG did, was sufficient, under the terms of the LDA exemption to FARA registration.*

At the same time, we recognize that Gulen is a major focus for the Turkish government, and extradition of Gulen was probably the primary focus of the Turkish government in its dealings with the United States during the period in which FIG was performing work for Inovo. This raises the question of whether the Turkish government is the principal beneficiary of the work for Inovo, within the meaning of the Department's regulation applying the LDA exemption. Arguably the work could be viewed as principally benefiting the Turkish government.

During the course of performing work for Inovo, Aptekin arranged for General Flynn to meet two Turkish ministers while they were visiting New York. But we don't view this meeting by itself as resulting in agency on behalf of the government, and there is no indication that the meeting or any other contacts involved the Turkish government directing FIG's activities.

After the post-election publicity about FIG's work for Inovo, and after we received your letter, FIG also received a letter from Mr. Alptekin's counsel at Arent Fox. Arent Fox asserted that Inovo had retained FIG in connection with Mr. Alptekin's business dealings with an Israeli company that was involved with the Leviathan oil field.

So FIG had a commercial client with commercial objectives, and no known foreign government client. This left us somewhat straining to determine whether registration could be required solely on the basis that the work performed could be construed as principally benefiting the Turkish government rather than Inovo or business interests generally. *We welcome your input on that judgment call.*

[Then, depending on their response, distribute draft filing for discussion]

If they ask about the reported payments to Inovo, I expect to respond as follows:

We did see two payments of 40k each to Inovo. We've included them in the filing as they appear in accounting records. Early on, there was a proposed consulting agreement for Aptekin. These payments, based on available records, appear to tie to that contract. But we have also been told that while Aptekin did not end up playing a role as a consultant on the project, he did nonetheless want part of Inovo's funding of the project to be refunded. The details of the arrangement are not particularly clear, amid the shut down of operations. [Beyond that, I will punt for now, if they press.]

**Robert Kelner**

Covington & Burling LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001-4956
T +1 202 662 5503 | rkelner@cov.com
www.cov.com

## COVINGTON

This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail from your system. Thank you for your cooperation.