1

1          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF VIRGINIA
2              ALEXANDRIA DIVISION

3  UNITED STATES OF AMERICA,   )  Case 1:18-cr-00457
                               )
4              Plaintiff,      )
                               )
5         v.                   )  Alexandria, Virginia
                               )  July 12, 2019
6  BIJAN RAFIEKIAN,            )  11:32 a.m.
                               )
7              Defendant.      )
   _____)  Pages 1 - 34
8

9     TRANSCRIPT OF NON-PARTY MATTHEW M. NOLAN, ESQUIRE'S

10        EMERGENCY MOTION TO QUASH TRIAL SUBPOENA

11            AND OTHER MISCELLANEOUS MATTERS

12        BEFORE THE HONORABLE ANTHONY J. TRENGA

13            UNITED STATES DISTRICT COURT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25     COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

```
 1  APPEARANCES:

 2  FOR THE UNITED STATES OF AMERICA:

 3      JAMES P. GILLIS, ESQUIRE
        EVAN N. TURGEON, ESQUIRE
 4      S. KATE SWEETEN, ESQUIRE
        OFFICE OF THE UNITED STATES ATTORNEY
 5      2100 Jamieson Avenue
        Alexandria, Virginia  22314
 6      (703) 299-3700

 7  FOR BIJAN RAFIEKIAN:

 8      ROBERT P. TROUT, ESQUIRE
        TROUT, CACHERIS & SOLOMON, PLLC
 9      1627 I Street, N.W., Suite 1130
        Washington, D.C.  20006
10      (202) 464-3300

11      MARK J. MACDOUGALL, ESQUIRE, PRO HAC VICE
        STACEY H. MITCHELL, ESQUIRE, PRO HAC VICE
12      SAMANTHA J. BLOCK, ESQUIRE, PRO HAC VICE
        AKIN, GUMP, STRAUSS, HAUER & FELD, LLP
13      Robert S. Strauss Building
        1333 New Hampshire Avenue, N.W.
14      Washington, D.C.  20036-1564
        (202) 887-4000
15
    FOR MATTHEW M. NOLAN:
16
        RANDALL A. BRATER, ESQUIRE
17      BARBARA WAHL, ESQUIRE
        ARENT FOX, LLP
18      1717 K Street, N.W.
        Washington, D.C.  20006
19      (202) 857-6000

20  THE DEFENDANT, BIJAN RAFIEKIAN, IN PERSON

21

22

23

24

25
```

1          THE CLERK:  Criminal Case 1:18-cr-457, *United*

2 *States v. Bijan Rafiekian*.

3          Counsel, will you please note your

4 appearances for the record.

5          MR. GILLIS:  Good morning, Your Honor.  Jim

6 Gillis, Evan Turgeon, and Katie Sweeten for the United

7 States.

8          THE COURT:  Good morning.

9          MR. MACDOUGALL:  Good morning, Your Honor.

10 The defendant, Mr. Rafiekian, is present in court

11 today.  For Mr. Rafiekian, Mark MacDougall, Robert

12 Trout, Stacey Mitchell, and our colleague, Samantha

13 Block, will be arguing as well today.

14          THE COURT:  All right.  Very good.

15          MR. BRATER:  Good morning, Your Honor.  Randy

16 Brater and Barbara Wahl on behalf of Matt Nolan.

17          THE COURT:  All right.  We're here for a

18 number of miscellaneous matters.  First, I want to take

19 up the motion to quash the subpoena on behalf of

20 Mr. Nolan.  I'll hear from counsel.

21          MR. BRATER:  Thank you, Your Honor.  We're

22 here to ensure that the attorney-client privilege that

23 belongs to Mr. Nolan's former client, Mr. Alptekin, is

24 properly preserved.  The privilege belongs to

25 Mr. Alptekin, and as far as we know, it has not been

1    waived.  Therefore, Mr. Nolan has an ethical obligation

2    under Rule 1.6 of both the D.C. Bar and the Maryland

3    Bar where he's admitted to protect the confidences of

4    his former client.

5              So unless Mr. Alptekin waives the privilege

6    or this Court orders that Mr. Nolan must testify

7    because the privilege has been waived, Mr. Nolan must

8    maintain the privilege of his communications with his

9    prior client.

10             Now, as the Court knows, Mr. Nolan received a

11   subpoena to testify from counsel for Mr. Rafiekian that

12   was without limitation.  As well, the government has

13   filed a motion to establish the crime-fraud exception

14   with respect to all of the communications between

15   Mr. Nolan and Mr. Alptekin, which the Court, we

16   understand, has deferred ruling on.

17             At this point, Mr. Nolan does not know

18   whether, A, if he would be called to testify or, if he

19   is, what potential topics might be covered in that

20   testimony.  Now, we have had conversations with

21   Mr. Trout, counsel for Mr. Rafiekian, about whether

22   they plan to call Mr. Nolan or not and what might be

23   asked.  Understandably, Mr. Trout explained, consistent

24   with the paper that they filed last night, they do not

25   know whether Mr. Nolan would need to be called and on

1  what topics.

2          Now, we appreciate that position because

3  Mr. Rafiekian does not know what evidence the

4  government might present in this case and whether or

5  not they may feel they need Mr. Nolan's testimony or

6  not, but that puts Mr. Nolan in a tenuous position.

7          There are a number of topics that he could be

8  asked about, many of which would be subject to

9  privilege or work product, and there may also be

10  potential hearsay objections.  That is further

11  complicated by the fact that the privilege belongs to

12  Mr. Nolan's former client, Mr. Alptekin.

13          So to the extent that the Court terms that

14  there may be topics that are not privileged, not work

15  product, and not hearsay that could be covered in

16  Mr. Nolan's testimony, what we're seeking here is some

17  guidelines and ground rules for what would be the scope

18  of Mr. Nolan's testimony.

19          And in the paper that was filed last night,

20  counsel for Mr. Rafiekian proposed that the Court rule

21  on such objections on a case-by-case basis while

22  Mr. Nolan is on the stand.  That would be very

23  difficult for Mr. Nolan because his former client

24  likely won't be present in the courtroom to assert the

25  privilege, and Mr. Nolan may be put in the position to

1  both act as a witness and as his own lawyer while he's

2  testifying.

3          And plus -- and I'm sure we can work

4  something out with this -- if Mr. Nolan is going to be

5  called to testify, we would like some reasonable amount

6  of advance notice so that he can work within his

7  schedule to get here.

8          Now, the bottom line is Mr. Nolan is willing

9  to be cooperative here and testify if that is something

10  that Mr. Rafiekian's counsel believes is necessary and

11  that there is a clearly defined scope of what he might

12  have to testify about that's not privileged, not work

13  product.  But if he is, again, what we're seeking are

14  some clear guidelines about what might be asked and the

15  scope of the privilege that may be waived so that he

16  could be better prepared to handle the testimony.

17          THE COURT:  All right.  Thank you.

18          Yes.

19          MS. BLOCK:  Good afternoon, Your Honor.

20          THE COURT:  Yes.

21          MS. BLOCK:  We understand and are respectful

22  of Mr. Nolan's time, but we believe at this time it's

23  premature to quash the subpoena as we don't know what

24  evidence is going to be put on at trial.  We can't

25  predict how we are going to need to use that evidence

1  and whether or not we're going to need Mr. Nolan's

2  time.  But at the time that we realize we will need

3  him, we will give him advance notice so that he can be

4  present and be able to plan accordingly.

5          We do not take a position on the privilege.

6  We don't know what the extent of their relationship

7  was, but this is not the time to assert any privilege

8  arguments.  It's at trial when there's proper context

9  to understand the evidence.

10          As this Court mentioned in its order earlier

11  this week, it's deferring any rulings on the

12  crime-fraud until trial.  So at that time, Mr. Nolan or

13  his attorney may assert the attorney-client privilege.

14  But merely being an attorney is not a reason not to be

15  present in the courtroom.  As they just mentioned, they

16  are willing to be present.

17          We do have some nonprivilege questions that

18  we would like to ask Mr. Nolan should certain evidence

19  come in, but we, again, cannot predict and speculate

20  about what will be admitted at trial.  We would like

21  this Court to wait until trial to make any decisions

22  about the privilege when Mr. Nolan can assert it.

23          THE COURT:  Well, based on what the Court has

24  been told already, as I understand it, the connection

25  between Mr. Nolan and Arent Fox and the relevant issue

1  in this case is that there was a memo, an opinion

2  letter -- which I don't believe the Court has seen --

3  that was prepared by Mr. Nolan and submitted either

4  directly or through Mr. Rafiekian to Covington and that

5  Covington had that available to it when it composed and

6  filed the FARA statement that is the basis for the

7  claim here that Mr. Rafiekian caused the filing of a

8  false FARA statement.

9          Other than the fact that Mr. Nolan prepared a

10  memo that was delivered to Covington, what possible

11  relevance would anything that transpired between

12  Mr. Nolan and Arent Fox and Mr. Alptekin have to this

13  case?

14          MS. BLOCK:  Well, should the memorandum be

15  admitted, the underlying facts that -- and

16  conversations that Mr. Nolan had with Mr. Alptekin then

17  would no longer be privileged as well that pertain to

18  the subject matter of the letter.  So there may be some

19  relevant questions there that we would like to question

20  Mr. Nolan about.

21          THE COURT:  But if that information was not

22  conveyed to Covington -- as I understand it, the only

23  thing that was conveyed to Covington was what was in

24  the memo unless there's some evidence that there were

25  separate conversations between Covington and either

1 Mr. Alptekin or Mr. Nolan.  How would anything beyond
2 the actual memo itself bear on anything that's going to
3 be tried in this case?
4          MS. BLOCK:  Well, Your Honor, the
5 conversations, though, that Mr. Nolan had with
6 Mr. Alptekin when making that memorandum may relate to
7 the FARA filing and some of the issues in this case.
8          THE COURT:  How would it if the only thing
9 that was conveyed to Covington is the memo?
10          MS. BLOCK:  Because should the memo come in,
11 then I'm under the impression that the Fourth Circuit
12 would say that the underlying conversations that relate
13 to that subject matter would also no longer be
14 privileged.
15          THE COURT:  How is that relevant?  How would
16 that be relevant to the claims in this case?
17          MS. BLOCK:  Sorry, Your Honor.
18          THE COURT:  Go ahead.
19          MS. BLOCK:  It may relate to the FARA filing.
20 It may relate -- we're not clear whether or not he
21 spoke with Mr. Rafiekian when making the memorandum.
22 So there potentially could be conversations there.
23 Again, we were not part of that transaction.  When he
24 was representing Mr. Alptekin, we were not.  So we
25 can't speculate.

1              THE COURT:  Well, conversations between

2   Mr. Nolan and Mr. Rafiekian wouldn't, at least on their

3   face, appear to be privileged, correct?

4              MS. BLOCK:  Sorry, Your Honor?  Would they be

5   privileged?

6              THE COURT:  Would not appear to be

7   privileged.

8              MS. BLOCK:  Again, we were not part of the

9   transaction.  So we don't know if there was a common

10  interest or --

11             THE COURT:  All right.

12             MS. BLOCK:  Thank you, Your Honor.

13             THE COURT:  Mr. Gillis, do you want to say

14  something about this?

15             MR. GILLIS:  Yes, please, Your Honor.  As the

16  Court knows, we do have a pending motion to establish

17  the crime-fraud exception with respect to Alptekin's

18  attorney-client privileges.  We are mindful of the

19  Court's opinion which we received recently.  And also,

20  in light of recent developments, we are trying to

21  reassess, in some part, how we are planning to present

22  the case.

23             We do know that there were statements from

24  Mr. Nolan to the Covington lawyers about what Alptekin

25  had said to Nolan.  So those were communicated in

1    addition to just this opinion letter.  So the

2    government may want to speak with Mr. Nolan directly,

3    and depending upon what transpires at trial, we may

4    decide ourselves to call Mr. Nolan, especially in light

5    of the Court's ruling that what was said to him in

6    connection with the FARA filing would not be

7    privileged.

8                THE COURT:  But there still has to be a

9    relevance issue.

10               MR. GILLIS:  Of course, Your Honor.  We would

11   have to establish that as well.  But in terms of

12   whether we could speak with him or whether he could

13   testify at trial, there would certainly have to be

14   relevance to that.

15               But in light of the Court's rulings, we are

16   attempting to figure out where that may place him.  I'm

17   not saying at this point that we would call him.  It's

18   possible that we might call him in rebuttal depending

19   upon what's in the defendant's case.  Certainly, if the

20   defense calls him, we'd want to cross-examine him with

21   some of those statements.

22               THE COURT:  Right.

23               MR. GILLIS:  So for those reasons

24   independently, I just wanted to advise the Court of our

25   position on that.

1           THE COURT:  All right.  Counsel.

2           MR. BRATER:  Briefly, Your Honor.  We agree

3  that there's a question of relevance here.  Of course,

4  we're not familiar with all the facts that the parties

5  are dealing with in this case.  But to the extent that

6  the only thing at issue here is the letter or memo that

7  we understand both parties have and there's a

8  question -- it sounds to me like no one is really sure

9  if there's anything beyond that that might be relevant.

10           We would ask the Court to quash the

11  testimony.  We, of course, would be willing to accept

12  service of a subpoena if the parties decide they do

13  need Mr. Nolan's testimony, and we can work with them

14  independently in order to determine an appropriate time

15  for him to be available to testify.

16           THE COURT:  All right.  Anything further on

17  this?

18           MR. GILLIS:  May I have one moment, Your

19  Honor?

20           THE COURT:  Yes.

21      (Counsel confer.)

22           MR. GILLIS:  Your Honor, I'm informed that we

23  know that there was information conveyed by Nolan

24  concerning what Alptekin had said to Covington.  Up

25  until this point, we have not been able to explore that

1 pending the outcome of the Court's memorandum which

2 came out recently.

3            THE COURT:  Right.

4            MR. GILLIS:  So we would like to be able to

5 explore that more not only with the Covington lawyers

6 but also perhaps with Nolan himself.  So those are the

7 government's interests.

8            THE COURT:  All right.

9            MR. GILLIS:  So we really don't know what

10 might be relevant there, but we've been precluded so

11 far, at least until very recently, from talking with

12 the Covington lawyers about that.

13            THE COURT:  All right.  Obviously, the Court

14 can't make any final decisions until it actually hears

15 the evidence and what's being proposed.  But at least,

16 as the Court understands the case, what seems to the

17 Court to be the case is that what would be relevant is

18 what was conveyed to Covington either by way of the

19 memo or in direct conversations.

20            A substantial issue for the Court is, even

21 under those circumstances, if there were conversations

22 between the Arent Fox lawyers and Mr. Nolan and

23 Covington, whether it would be relevant what

24 Mr. Alptekin said if that wasn't, in fact, conveyed to

25 Covington.

1           So at this point, I'm not going to quash the

2   subpoena in its entirety.  Mr. Nolan will still be

3   subject to subpoena to testify.  I'm going to quash for

4   production, at least at this point, any documents that

5   Arent Fox or Mr. Nolan may have with respect to his

6   conversations with Mr. Alptekin subject, of course, to

7   the Court reviewing that once it hears some actual

8   evidence about what may have transpired between Arent

9   Fox and Mr. Nolan and Covington that may place him --

10  not only relevance, but make discoverable any

11  conversations that would otherwise be privileged or as

12  between Arent Fox and Mr. Alptekin.

13          All right.

14          MR. GILLIS:  May I ask one further question,

15  Your Honor?

16          THE COURT:  Yes.

17          MR. GILLIS:  As I said, we do have a pending

18  motion with respect to the crime-fraud exception and

19  the work product issue.  We believe the Court could be

20  in a position to rule with respect to Alptekin's

21  privilege in the same way that the Court handled the

22  Covington and Verderame issues.  So we would ask that

23  the Court issue an order similar to the order that the

24  Court has issued already with respect to Covington and

25  Verderame.

1         THE COURT:  Again, Mr. Gillis, I'm having
2   difficulty with how anything Alptekin said to -- he's
3   not being tried.  Mr. Rafiekian is the only defendant
4   at this point being tried.  I'm having difficulty
5   understanding how what Mr. Alptekin said to Mr. Nolan
6   or any other lawyer is relevant unless that was passed
7   on to Covington for its use in determining what to file
8   under the FARA statement.
9         MR. GILLIS:  Well, Your Honor, to the extent
10  it was passed on by Nolan to Covington, that would be
11  hearsay.  So we'd like to hear from Nolan directly
12  about what his client said to Nolan that caused him to
13  pass that information to --
14        THE COURT:  Again, I'm not going to make any
15  rulings, but I don't understand why that has any
16  relevance.  The only issue is what information
17  Covington had and relied on and used that affected the
18  filing because the whole case here is that the false
19  filing is attributed to Mr. Rafiekian.
20        MR. GILLIS:  Well, Your Honor, I understand
21  the Court's ruling with respect to the preponderance of
22  the evidence standard --
23        THE COURT:  Right.
24        MR. GILLIS:  -- and coconspirators.  However,
25  without knowing what Alptekin said to him, I submit

1   that it's reasonable to assume that there would be

2   statements made there that could be in furtherance of

3   the conspiracy, especially with respect to the

4   conspiracy to commit to make false statements.  There

5   also may be evidence that Alptekin revealed to Nolan

6   concerning what the defendant said to Alptekin that was

7   passed on to Nolan.

8            THE COURT:  All right.

9            MR. GILLIS:  So for those reasons, we --

10           THE COURT:  All right.

11           MR. GILLIS:  Yes, Your Honor.  Thank you.

12           THE COURT:  All right.  I'm not going to rule

13  beyond what I have at this point.

14           MR. GILLIS:  Thank you, Your Honor.

15           THE COURT:  All right.  The next is

16  miscellaneous issue is pertaining to the notice of

17  correction and the effect of the decision not to call

18  Mr. Flynn.

19           Mr. Trout.

20           MR. TROUT:  Thank you, Your Honor.

21           Your Honor, we think this case was broken the

22  moment that the government had Mr. Flynn sign the

23  statement of offense that they created for his guilty

24  plea in December 2017.  We think it's become more of a

25  mess ever since with manipulations undertaken to

1   shoehorn innocent facts into a narrative of guilt.

2          We think we've described this case as a case

3   where the government is making it up as it goes along.

4   It's as apt a description as there is to describe where

5   we are now where the government has relabeled or seeks

6   to relabel Mr. Flynn as a coconspirator after as

7   recently as June 13 declaring unequivocally to this

8   Court that he was not a coconspirator.  They label it a

9   correction of the record.  It's not a correction of the

10  record.  It's just a change of mind.

11         No facts exist or have been proffered to say,

12  We have discovered something that Mr. Flynn did during

13  the time of the conspiracy that we didn't know about

14  before that causes us to change our view of him and to

15  conclude that he actually was a coconspirator even when

16  we previously thought he was not.

17         There is nothing that has changed.  The only

18  thing that has changed is that the government has

19  concluded that he is not credible about matters

20  relating to this case.  So rather than having him

21  testify and be subject to cross-examination, they want

22  him to be a declarant where he cannot be cross-examined

23  even though he is not credible on matters relating to

24  this case.

25         Your Honor, we think it's wrong.  It,

1  obviously, is not in keeping with the Court's order

2  that we be given advance notice of coconspirator

3  hearsay so that we can prepare for it.  We have spent a

4  lot of time preparing for him as a witness.  We have

5  spent no time preparing for him as a hearsay declarant.

6          So, Your Honor, we respectfully submit that

7  the Court should exclude all of Mr. Flynn's hearsay,

8  whether it's the single document that they attach to

9  their response or any hearsay coming from any witness

10 whatsoever.

11         Thank you.

12         THE COURT:  Well, as I understand it, another

13 aspect of your motion was to dismiss the indictment

14 itself.

15         MR. TROUT:  Well, it was, Your Honor.

16 Ms. Mitchell was actually going to address the issue of

17 the grand jury.

18         THE COURT:  All right.

19         MR. TROUT:  We're trying to divide it up so

20 that we're not all --

21         THE COURT:  All right.  Why don't we hear

22 from Ms. Mitchell, and then I'll let the government

23 respond to both issues.

24         MS. MITCHELL:  Good morning, Your Honor --

25 oh, good afternoon.  No.  It's good morning still.

1              THE COURT:  It's still morning.

2              MS. MITCHELL:  You are correct, Your Honor.

3  We also believe that the government should produce the

4  grand jury testimony of Mr. Flynn and allow both the

5  defense and the Court to determine whether or not the

6  indictment was procured upon an irregularity that

7  operated to Mr. Kian's prejudice.

8              Your Honor is well aware of the standard.  A

9  prejudice can exist where either an irregularity

10  substantially influences the decision to indict or

11  there is grave doubt that the decision to indict was

12  free from substantial influence of regularities.

13             The government points to the presumption of

14  regularity before the grand jury.  That's a fundamental

15  principle with which we don't quibble, Your Honor.  But

16  as with any presumption, it's rebuttable, and I think

17  we've more than reached a tipping point, Your Honor.

18             In its response, the government actually

19  demurrers on the question of whether Mr. Flynn

20  testified before the grand jury or that his testimony

21  was used in the context of the superseding indictment.

22  That's to be contrasted, Your Honor, with the e-mail

23  from them four days earlier in which they note,

24  according to Flynn's counsel, his testimony would

25  remain consistent with the facts of his plea colloquy,

1   his statement of offense, and his testimony before the

2   grand jury.

3           We do not necessarily agree with that

4   characterization.  They implicitly adopt that Mr. Flynn

5   has testified.

6           As the defense has pointed out on numerous

7   occasions, Your Honor, there is little room for doubt

8   that the prosecution has proceeded only because

9   Mr. Flynn, as part of his plea agreement, was willing

10  to sign a statement of offense that essentially threw

11  in an unrelated recitation of facts related to this

12  matter.  Mr. Flynn undoubtedly subsequently testified

13  in what can only be presumed to be a somewhat starring

14  role before the grand jury consistent with what the

15  government's theory of the case was, Your Honor.  Now

16  they say they don't believe, based on the statements of

17  his attorney, that he would testify consistently.

18          In further support of their motion, Your

19  Honor, the government suggests that there are volumes

20  of evidence that the government has produced to the

21  defense.  It's a characterization with which we

22  strenuously disagree and, actually, which has been

23  called into question by this Court.  They've produced

24  volumes of material, very little of which supports the

25  government theory in this case.

1        Your Honor, we believe at this point the

2    presumption of regularity has been fairly called into

3    question.  We've hit the tipping point.  And at

4    minimum, a reasonable first step is to allow the

5    defense, the Court to review the testimony of Mr. Flynn

6    and depending on that, Your Honor, quite likely dismiss

7    this indictment.

8        THE COURT:  All right.  Mr. Gillis.

9        MR. GILLIS:  Your Honor, first, I have to

10   address something that my colleagues have said both in

11   writing and now in front of this Court, that in some

12   way the government concocted a statement of facts and

13   insisted upon Flynn filing something that was concocted

14   by the government.  I find that offensive.  It is

15   certainly untrue, and it's unwarranted.  I'll leave

16   that there.

17       As the Court is aware, we've submitted

18   volumes of evidence to support the charges in the

19   indictment.  The presumption of regularity certainly

20   obtains in this case with respect to whether or not

21   Mr. Flynn testified before the grand jury.  We didn't

22   implicitly adopt or deny anything.  Rule 6(e) prevents

23   us from doing that, Your Honor.  However, we simply

24   relayed to them factual -- as we were obliged to do, we

25   simply relayed to them factually what had been

1    conferred to us by Flynn's attorneys.

2            So there is no grounds for looking behind the

3    indictment, certainly no grounds for providing the

4    transcripts to the defense.  There's no indication from

5    the defense, nor any other suggestion of irregularity

6    with respect to the superseding indictment.

7            For those reasons, Your Honor, we submit the

8    defense should not have access to those transcripts,

9    nor should the Court consider dismissal of the

10   indictment.

11           With respect to the question of Flynn being

12   considered a coconspirator, Your Honor, at the time

13   that the Court asked me the question is the government

14   alleging that Mr. Flynn was part of this conspiracy, I

15   responded we are not, Your Honor.  At the time, whether

16   Mr. Flynn was or was not a coconspirator was really not

17   of terrific concern to us since we expected that he

18   would be a witness at the time and that there would be

19   no hearsay offered through him, which I believe in

20   context is how the Court's question came up.  Although,

21   at the present time, I don't have the entire transcript

22   before me.  But in any case, there is no prejudice to

23   the defense from our -- if it's late, our late

24   indication that Mr. Flynn is going to be regarded as a

25   coconspirator.

1            There are two operate questions, Your Honor,

2    whether the government believed that there was

3    sufficient evidence to charge Mr. Flynn as a

4    coconspirator in an indictment or other charging

5    document.  That's standard within the government's

6    manual, the justice manual:  Do we have a reasonable

7    good faith basis to believe that we can prove the case

8    beyond a reasonable doubt?  That was not a decision

9    that was made by EDVA, Your Honor.  That was a

10   decision, presumably, that was made by the special

11   counsel's office.  We received the case in the state in

12   which it was, which was after Mr. Flynn had pled

13   guilty.

14            Now, as I said, we expected him to be a

15   witness at trial.  Therefore, we did not expect to have

16   to enter into evidence any hearsay statements.  Once we

17   made the decision that we would not be calling

18   Mr. Flynn, one document became relevant, one document

19   that the defense has had since the very beginning of

20   this case.  It's Exhibit 40 which is attached to our

21   motion.

22            They certainly were aware that we would be

23   introducing that document for reasons not the least of

24   which would be the effect on the hearer.  But as the

25   Court has already acknowledged, that is a legitimate

1    ground for admitting documents of this kind in this

2    case.

3            That we would argue an additional ground that

4    he is a coconspirator in the case for purposes of

5    introducing that particular document, particularly for

6    the truth of it, the substantive value rather than the

7    effect on the hearer.  We would want to introduce it

8    for that purpose.  To do so, we need to establish by a

9    preponderance of the evidence that Mr. Flynn was a part

10   of this conspiracy.

11           So there are really two different concerns,

12   Your Honor.  It was not a concern at the time that we

13   represented to the Court that we did not regard him as

14   a coconspirator.  We were not actually alleging at the

15   time that he was a part of that conspiracy.  It was

16   unnecessary for us to do so.  But as to whether we can

17   establish by a preponderance of the evidence for the

18   evidentiary purpose of introducing that document, which

19   they've had for months, is no prejudice that should

20   justify preventing us from offering it in that manner.

21           Your Honor, to remind the Court, yes, we did

22   have an obligation to identify the coconspirators

23   through whom we expected to introduce hearsay

24   statements under the coconspirator exception.  We did

25   not identify Flynn for the same reason that I've

1  articulated.  However, the Court did not require us to

2  identify the statements that would be put in through

3  those coconspirator declarants.  So there, again, is no

4  real prejudice to them discovering now that we plan to

5  introduce Government's Exhibit 40 on that additional

6  grounds.

7           Also, Your Honor, we were not obliged to

8  provide them with a witness list until yesterday or the

9  day before.  So they were not entitled to know whether

10 we were going to be calling Mr. Flynn or not.  They

11 operated on a presumption that we were.  Frankly, so

12 did we.  But circumstances have changed.  They are not

13 prejudiced by being told in advance that we will not be

14 calling Flynn.  It gives them more time to, as they

15 said, devote to other things apart from calling

16 Mr. Flynn.

17          So for those reasons, Your Honor, we request

18 that that part of the motion be denied.

19          THE COURT:  All right.  Mr. Trout.

20          MR. TROUT:  Yes.  If I could be heard just

21 briefly, Your Honor.  To be clear, of course they can

22 call who they want to.  That's not our complaint.  Our

23 complaint is relabeling this individual as a

24 coconspirator when they were unmistakable in telling

25 the Court last month that he was not a coconspirator.

1  I don't believe that it is appropriate for the Court --

2  excuse me -- for the government to simply on the theory

3  that we can make up who the coconspirators are as we

4  think about it or we can declare them to be

5  coconspirators or not as a matter of whim.  That's just

6  not appropriate.

7          When the Court asked the government was he a

8  coconspirator and they said no, I believe that they

9  were obliged to base that on the evidence that they had

10 based on the two years that they've been working on

11 this case and the Court was entitled to accept that as

12 fact from the government.

13         Now they want to change their mind, not

14 because of anything that they've since discovered about

15 what happened during the course of the conspiracy.

16         Your Honor, I do want to make one other

17 point.  The Flynn statement of offense is

18 unquestionably not accurate.  It was prepared by the

19 government.  They had the FARA forms to be able to

20 state it accurately.  Moreover, it clearly does not

21 include material information that was included in the

22 FARA form.  So in a case that is built on false

23 representations and material omissions, I think the

24 Court can appreciate why we regard that to be ironic at

25 the very least.

```
 1            So we would probably not be quite so critical
 2   of the government for this inaccuracy and its failure
 3   to include material information if the government had
 4   not been so harshly judgmental and accusatory in a
 5   criminal case about the language that Covington &
 6   Burling chose to put in this FARA form.  So we think
 7   that our criticism of the government on that is
 8   absolutely valid and appropriate.
 9            THE COURT:  All right.
10            MR. TROUT:  Thank you.
11            THE COURT:  Ms. Mitchell.
12            MS. MITCHELL:  Nothing further, Your Honor.
13            THE COURT:  All right.  With respect to the
14   defense's motion to dismiss the indictment, I don't
15   think that the decision by the government not to call
16   Mr. Flynn or to recharacterize his role in the
17   conspiracy in and of itself is sufficient to dismiss
18   the indictment.
19            Mr. Flynn has not disavowed what is in the
20   statement of facts.  He has, through his lawyers,
21   indicated that there is context that needs to be
22   considered with what he said.  But in any event, I
23   don't think at this point there's been sufficient
24   evidence that would rebut the presumption of regularity
25   before the grand jury.
```

1          With respect to Mr. Flynn's statement coming

2    in as a coconspirator statement, there's a couple of

3    issues that are distinct.  The first is whether the

4    government is either estopped or, by way of a judicial

5    admission, prevented from changing its position that

6    Mr. Flynn went from not being a part of the conspiracy

7    to a part of the conspiracy for the purposes of

8    admitting his otherwise hearsay statement pursuant to

9    Rule 801(d)(2)(E).

10         The other issue is irrespective of whether

11   the government is estopped, whether there has been a

12   sufficient showing that would allow that hearsay

13   statement to come in under 801(d)(2)(E).

14         The Court has already ruled that the

15   government, at least up until this point, has not

16   presented sufficient information through Rule 104 to

17   establish that Mr. Rafiekian was participating in the

18   alleged conspiracies and, therefore, has not made the

19   foundational showing for the admission of any hearsay

20   statements under Rule 801(d)(2)(E).  Until there's some

21   additional evidence presented, presumably at trial,

22   that lack of showing would extend to any hearsay

23   statement by Mr. Flynn irrespective of whether or not

24   the Court would allow him to be considered a

25   coconspirator.

1          So at this point, I don't know that the Court

2    needs to rule any further.  If and when the government

3    presents sufficient evidence to make its foundational

4    showing, the Court can consider whether the government

5    is estopped either by way of a judicial admission or

6    inconsistent positions from offering that statement.  I

7    think that resolves it at least at this point.

8          All right.  Anything further that we haven't

9    dealt with?

10         MR. GILLIS:  Not from the government, Your

11   Honor.

12         THE COURT:  All right.

13         Yes, Mr. MacDougall.

14         MR. MACDOUGALL:  Your Honor, there is one

15   matter that the Court is aware of.  Before we choose a

16   jury on Monday, this is the last time we'll be before

17   the Court.  So we would like to take this opportunity

18   to bring it up and put it on the record and make an

19   objection and ask for some relief.  The Court is aware

20   of this matter.

21         We were just before this hearing handed a

22   statement by Mr. Turgeon by the government.  It's one

23   sentence.  If I may read it for purposes of the record:

24   The United States government is in possession of

25   multiple independent pieces of information relating to

1   the Turkish government's efforts to influence United

2   States policy on Turkey and Fethullah Gulen, including

3   information relating to communications, interactions,

4   and a relationship between Ekim Alptekin and Michael

5   Flynn and Ekim Alptekin's engagement of Michael Flynn

6   because of Michael Flynn's relationship with an ongoing

7   presidential campaign without any reference to the

8   defendant or FIG.

9          Now, Your Honor, as I parse that sentence, it

10  says that the government has evidence that there was a

11  separate relationship between Mr. Flynn and

12  Mr. Alptekin acting on behalf of Turkey because of

13  Flynn's relationship with a presidential campaign and

14  without reference to, which I read to be without the

15  knowledge of Mr. Rafiekian or the involvement of FIG.

16         Your Honor, it's hard to come up with a

17  rationale that that kind of evidence would not be

18  exculpatory with respect to the guilt or innocence of

19  Mr. Rafiekian.  It goes right to the question of what

20  happened and what he knew and what statements were made

21  and who was making them.

22         Your Honor, this case, as Mr. Trout said very

23  clearly, was born of Michael Flynn's guilty plea.

24  Until the government concluded that Mr. Flynn was no

25  longer credible, it was classic *Giglio* if he had, as

1  this statement suggests, a secret relationship.

2          Now, Your Honor, we understand the burden the

3  Court has with regard to classified information under

4  the Classified Information Protection Act.  It's a

5  difficult process just from the distance with which we

6  see it.  But, Your Honor, the defense lawyers have all

7  been cleared.  I've been cleared from the beginning and

8  later Mr. Trout and Ms. Mitchell.  We have not seen

9  this evidence.  We believe we would be cleared to see

10 this evidence.  We have not been given the opportunity

11 to argue to the Court the relevance of that evidence.

12 We believe, just based on this little bit of

13 information, it quite clearly is *Brady*.

14         If Mr. Rafiekian is convicted without his

15 counsel having access to this exculpatory evidence, we

16 believe it will go right to the heart of his due

17 process and confrontation rights.  So, Your Honor, we

18 would object to the government having this evidence of

19 Mr. Flynn's separate relationship with Mr. Alptekin

20 evidently involving Turkey, evidently secretly acting

21 on behalf of Turkey.  We would urgently move the Court

22 to reconsider given the pendency of the trial.

23         Thank you, Your Honor.

24         THE COURT:  All right.  The Court will take

25 that under advisement.  At this point, we're going to

1    proceed as the Court has already determined based on

2    that unclassified summary.  Obviously, as the case

3    develops, the Court understands the defense's concern

4    and will continue to consider whether additional

5    disclosure of information bear on this.

6                MR. MACDOUGALL:  Thank you, Your Honor.

7                THE COURT:  All right.  We have scheduled to

8    appear 102 jurors on Monday.  Because of the size of

9    that *voir dire* panel, we're going to conduct jury

10   instructions in Courtroom 900, Judge Ellis' courtroom,

11   just for jury instruction.  We'll have overflow

12   monitored in Courtroom 1000 for jury selection.  Then

13   once we select a jury, we'll proceed back here into

14   this courtroom, and we'll have an overflow monitor to

15   the extent I deem it's necessary to have appropriate

16   public viewing.

17               We'll meet on Monday.  We should meet here in

18   this courtroom on Monday at 9:00 before we proceed to

19   jury selection.

20               MR. GILLIS:  I'm looking forward to it, Your

21   Honor.  Thank you.

22               MR. MACDOUGALL:  There's one other matter I

23   wanted to make the Court aware of.

24               THE COURT:  Yes.

25               MR. MACDOUGALL:  With the Monday start, it

1   might not be relevant.  We have two witnesses who we

2   loose access to after next Thursday, after Friday.  I

3   understand the Court won't be having trial on Friday if

4   we go that far.

5           THE COURT:  Right.

6           MR. MACDOUGALL:  We are speculating that with

7   Mr. Flynn no longer on the government's list, it may be

8   a shorter government presentation.  We would expect to

9   be asking the Court and asking the government's

10  concession to allow a couple of witnesses to be heard

11  out of turn if it turns out that way.

12          THE COURT:  All right.  Why don't you-all

13  discuss that, and if there's something the Court needs

14  to deal with, it will.

15          MR. MACDOUGALL:  All right, Your Honor.

16          THE COURT:  Mr. Gillis, how long do you

17  anticipate the government's case in chief will take at

18  this point?

19          MR. GILLIS:  I would expect at this point,

20  Your Honor, it would take about three to four days.

21          THE COURT:  All right.  Anything else?

22          MR. GILLIS:  Not from us, Your Honor.

23          MR. MACDOUGALL:  Not from the defense, Your

24  Honor.

25          THE COURT:  All right.  We'll see everybody

1   on Monday.

2          The Court will stand in recess.

3         -----------------------------------

4              Time:  12:15 p.m.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21      I certify that the foregoing is a true and

22  accurate transcription of my stenographic notes.

23

24

                                 /s/

25                    Rhonda F. Montgomery, CCR, RPR