UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Criminal Case No. 1:18-CR-457 (AJT) |
| | : | |
| BIJAN RAFIEKIAN, et al. | : | |

**DEFENDANT BIJAN RAFIEKIAN'S MEMORANDUM IN SUPPORT OF PROPOSED JURY INSTRUCTIONS**

Defendant Bijan Rafiekian respectfully submits this memorandum in support of his proposed jury instructions and in opposition to the Government's proposed jury instructions.

**Defendant's Proposed Instruction Nos. 30 and 31 – Absence of Witness / Michael T. Flynn**

A missing witness instruction is proper if "(1) that the witness was peculiarly within the power of one of the parties and (2) that the witness is believed to have testimony that would elucidate the transaction." *United States v. Bran*, 950 F. Supp. 2d 863, 875 (E.D. Va. 2013) (alterations and quotations omitted). The first element is met "both [i] when a witness is physically available only to the opposing party and [ii] when the witness has a relationship with the opposing party that would in a pragmatic sense make his testimony unavailable to the opposing party regardless of physical availability." *United States v. Mahone*, 537 F.2d 922, 926 (7th Cir. 1976) (police officer, while physically available, was not practically available to defense because he was "closely associated with the United States Attorney in developing the case").

Flynn's testimony would "elucidate the transaction," as he was a central figure in the events at issue. In addition, Flynn has cooperated extensively with the Government in building its case—including sitting for multiple interviews and witness prep sessions, giving testimony to the grand jury, and causing FIG purportedly to waive privilege so that FIG's attorneys could

offer testimony against the Defendant. It is no exaggeration that without Flynn's cooperation, there would be no case against the Defendant at all. Flynn is also highly motivated to assist the Government because his sentencing in his own criminal case is still outstanding. The fact the Government has now decided not to call Flynn, its once-central witness, is a damning indictment of the Government's case, and the jury should be permitted to consider it.

**Defendant's Proposed Instruction No. 37 – Impermissible to Infer Participation from Association**

This instruction correctly states the law. *See United States v. Manjarrez*, 258 F.3d 618 (7th Cir. 2001). It is important that the instruction be given in this case because the Government's evidence is highly circumstantial—indeed, this Court has already observed that the Government has so far failed to prove a conspiracy even by a preponderance of the evidence. ECF 292 at 28. Because much of the Government's evidence will simply be evidence of association, rather than evidence of any criminal conspiracy, the jury should be told that merely associating with someone is insufficient to prove a conspiracy.

**Defendant's Proposed Instruction No. 38 – Law Enforcement Witness**

This instruction is adapted almost word-for-word from pattern instructions. *See* Sand, Modern Federal Jury Instructions, Criminal Instruction § 7-16. Because the Government intends to call certain law enforcement witnesses, the instruction is appropriate.

**Defendant's Proposed Instruction No. 40 – "Willfully" – Defined**

The Government has offered a competing definition of "Willfully (Gov. #25), which overlaps substantially with the Def. #40. The sole difference is the last sentence of Def. #40, which is not included in Gov. #25: "In addition, to act 'willfully, the defendant must act with knowledge that his conduct was unlawful." This is not a controversial statement—it is a well-

2

accepted definition derived from Supreme Court and Fourth Circuit precedent. *See United States v. Bursey*, 416 F.3d 301, 309 (4th Cir. 2005) (holding that for a defendant to have acted willfully, he must have "acted with knowledge that his conduct was unlawful") (quoting *Bryan v. United States*, 524 U.S. 184, 193 (1998)); *see also Bryan*, 524 U.S. at 191 ("[I]n the criminal law ["willfully"] also typically refers to a culpable state of mind," and "[a]s a general matter, when used in the criminal context, a 'willful' act is one undertaken with a 'bad purpose.'"). If this sentence is removed, then the definition of "willfully" becomes virtually indistinguishable from the definition of "knowingly." *See* Joint Instruction #32 (defining "knowingly"). That is certainly not the law. *See Bryan*, 524 U.S. at 193 (differentiating "knowingly," which does not require the jury to find culpable intent, from "willfully," which requires the jury to "find that the defendant acted with an evil-meaning mind, that is to say, that he acted with knowledge that his conduct was unlawful"). To prove the FARA violations applicable to this case, the Government must show that the Defendant acted "willfully." 22 U.S.C. § 618(c). It is therefore critical that the jury be instructed on the appropriate definition.

**Defendant's Proposed Instruction No. 42 – Advice of Counsel**

To be entitled to a jury instruction on the advice of counsel, a defendant must establish "(a) full disclosure of all pertinent facts to an [attorney], and (b) good faith reliance on the [attorney's] advice." *United States v. Powell*, 680 F.3d 350, 356 (4th Cir. 2012). The evidence at trial will support the inclusion of this charge. The Defendant sought legal advice regarding whether FIG was required to register under FARA, truthfully answered all questions posed to him by his attorney, and scrupulously followed his attorney's advice by registering under the Lobbying Disclosure Act ("LDA") pursuant to an established exception under FARA. This evidence is relevant for a number of reasons.

3

The Government has argued that an advice of counsel defense applies only to specific intent crimes, and that Section 951 is a general intent crime to which the defense does not apply. [ECF No. 127].[1] *Conspiracy*, however, is a specific intent crime. *See United States v. Johnson*, 149 F. Supp. 3d 678, 684 (E.D. Va. 2016) (holding that proof of conspiracy requires proof of defendant's "specific intent to aid in the accomplishment of those unlawful acts."); *United States v. Friedman*, 300 F.3d 111, 124 (2d Cir. 2002) ("Charges of [] conspiracy . . . require the Government to prove, beyond a reasonable doubt, that the defendant knew the specific nature of the conspiracy or underlying crime. Proof that the Defendant knew that *some* crime would be committed is not enough."). In addition, as discussed *infra*, a conviction under Section 951 requires proof that the Defendant *knew* he was required to give notice to the Attorney General. If, as the evidence will show, the Defendant received legal advice that he was *not* required to give such notice, that evidence would be decisive proof of his innocence.

Furthermore, to prove its Section 951 claim, the Government must prove that the Defendant was not engaged in a legal commercial transaction. 18 U.S.C. § 951(d); ECF No. 292 at 2. The Government intends to prove this element by showing that the defendant "willfully" failed to register under FARA. *See* July 9 Order, ECF No. 292 at 24 (noting government's theory that lobbying "activities would violate FARA, and therefore be illegal, if they are covered activities and Rafiekian willfully engaged in them as an agent of the Turkish government and

---

[1] The Government made this argument in its motion in limine to exclude evidence regarding advice of counsel (ECF No. 127), and the Court denied that motion without prejudice. ECF No. 181. As the Court observed at the hearing on this issue, "It's difficult for [the Court] to see how [evidence of the Defendant's consultations with lawyers regarding FARA is] not probative of the specific intent element of the conspiracy charge." May 31, 2019 Tr. 7:12-14.

4

without a proper FARA registration"). Evidence of advice of counsel relating to FARA is directly relevant to whether the Defendant possessed the required mens rea to violate the statute.

**<u>Defendant's Proposed Instruction No. 43 – Nature of the Offense Charged – Count One</u>**

There are material differences between Def. #43 and the Government's analog, Gov. #27. Most significantly, the government's instruction omits a critical element of Section 951—that the Defendant must not have been engaged in a legal commercial transaction. 18 U.S.C. § 951(d); ECF No. 292 at 2. Inclusion of that element is consistent with the Court's July 9 order. In addition, the Government's proposed instruction omits important language from the pattern instruction describing that the Defendant has entered a plea of not guilty and that the Government must prove each element of the offense beyond a reasonable doubt. These are hardly controversial and are Constitutional protections afforded every defendant.

**<u>Defendant's Proposed Instruction No. 44 – Essential Elements of the Offense – Count One</u>**

There are material differences between Def. #44 and the Government's analog, Gov. #29. Most significantly, the Government's instruction misstates the nature of the charged conspiracy in element One by failing to mention three critical elements of the offense: (1) that the Defendant *knowingly and willfully* conspired (2) to act as an agent of a foreign Government *without prior notification to the Attorney General*, (3) other than in connection with a *legal commercial transaction*. Any proposed instruction regarding the nature of the offense with respect to Count One should incorporate these elements.

**<u>Defendant's Proposed Instruction No. 45 – Conspiracy – Existence of an Agreement</u>**

The parties have agreed to use O'Malley § 31:04. The remaining dispute is that the Defendant requests the following language, to which the Government objects: "But a conspiracy cannot be inferred from ambiguous conduct that is consistent with both lawful and unlawful

action." This is an accurate statement of the law derived from Supreme Court precedent and should be included in the instruction. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that inferences of illegal intent may not be drawn from ambiguous conduct that is consistent with both lawful and unlawful intent). This instruction is particularly important because the Government has so far been unable to proffer evidence sufficient to prove a conspiracy even by a preponderance of the evidence—let alone beyond reasonable doubt. Because there is a significant question as to whether the Government will be able to prove its case, it is appropriate to caution the jury that ambiguous conduct is insufficient to meet the Government's burden.

**Defendant's Proposed Instruction No. 46 – Conspiracy – Membership in an Agreement**

The first two paragraphs of the proposed instruction are derived from pattern jury instructions and are not objectionable. O'Malley, Federal Jury Practice and Instructions § 31:05 (6th ed. 2019). Presumably, the Government's objection is to the remainder of the instruction, but those portions are supported as well. Conspiracy is a specific intent crime that requires the Government to prove beyond a reasonable doubt that the Defendant knew the "specific nature of the conspiracy or underlying crime." *Friedman*, 300 F.3d at 124; *Johnson*, 149 F. Supp. at 678. Accordingly, the Court should instruct the jury that it must find that the Defendant intended to commit the underlying substantive offenses.

**Defendant's Proposed Instruction No. 47 – "Material" – Defined**

The parties agree that the jury charge should define "material." *See* Gov. #32. FARA, however, does not supply a definition, and the parties disagree on the appropriate one. The Government proposes that the test should be whether the statement has a "natural tendency to influence Governmental action," but that definition is vague, confusing, and unlikely to be helpful to a jury—it is not at all clear what type of statement might "influence Government

6

action." The Defendant submits that a better definition can be derived from well-established securities law jurisprudence: a fact is "material" if there is a substantial likelihood that a reasonable person would consider the statement or fact to be significant or important. *See* O'Malley, Federal Jury Practice and Instructions § 162:281 ("A material fact is one a reasonable person would attach importance to in determining his choice of action in the transaction in question."); *SEC v. Pirate Inv. Co.*, 580 F.3d 233, 240 (4th Cir. 2009) (explaining that a fact is material if there is a substantial likelihood that a reasonable purchaser or seller of a security would consider the fact important in deciding whether to buy or sell the security).

**Defendant's Proposed Instruction No. 50 – Single or Multiple Conspiracies**

This is a standard jury instruction derived almost verbatim from pattern instructions, and it is not objectionable. *See* O'Malley, Federal Jury Practice and Instructions § 31:09.

**Defendant's Proposed Instruction No. 51 – Nature of the Offense – Count Two**

There are material differences between Def. #51 and the Government's analog, Gov. #38, similar to Gov. #27, discussed above. Most significantly, the Government's instruction omits a critical element of Section 951—that the Defendant must not have been engaged in a legal commercial transaction. 18 U.S.C. § 951(d); ECF No. 292 at 2. At a minimum, that element should be included, consistent with the Court's July 9 order. In addition, the Government's instruction omits important language from the pattern instruction describing that the Defendant has entered a plea of not guilty and that the Government must prove each element of the offense beyond a reasonable doubt. Lastly, any such instruction should not reference Ekim Alptekin. Alptekin is not on trial, and the reference to him is superfluous and may confuse the jury.

**Defendant's Proposed Instruction No. 52 – Elements of the Offense – Count Two**

There are material differences between Def. #52 and the Government's analog, Gov. #41. Most significantly, the Government omits two elements of the offense: (1) that the Defendant was not engaged in a legal commercial transaction, *see* 18 U.S.C. § 951(d); ECF No. 292 at 2; and (2) that the Defendant was required to notify the Attorney General that he would be acting in the United States as an agent of Turkey, *see* 18 U.S.C. § 951(a) (criminalizing "act[ing] in the United States as an agent of a foreign Government without prior notification to the Attorney General *if required in subsection (b)*"). Both elements should be included in the instruction.

**Defendant's Proposed Instruction No. 53 – "Agent" – Defined**

Acting as an "agent of a foreign Government" is an element of Section 951, and it is important for the Court to instruct the jury on what that means. The definition in the Def. #53 is derived straight from the statute: "For purposes of this section, the term 'agent of a foreign Government' means an individual who agrees to operate within the United States subject to the direction or control of a foreign Government or official, except that such term does not include . . . any person engaged in a legal commercial transaction." 18 U.S.C. § 951(d). At a minimum, this definition should be included. The remainder of the instruction is a simple extrapolation from the statutory definition. Because agency under the statute requires "direction or control," the mere fact that the Defendant's actions "benefited" Turkey, or that Turkey viewed those actions "favorably," is insufficient to meet the element. In the end, that is all the government will be able to show, and the jury should be instructed accordingly.

**Defendant's Proposed Instruction No. 54 – "Legal Commercial Transaction" – Defined**

The Government has objected to this instruction and has proposed to use the definition contained in 28 C.F.R. § 73.1. A more specific instruction, however, is required. In addition to

incorporating the statutory definition (which is stated in the second paragraph of the Def. #54), the instruction should also make clear that the Defendant's (i) failure to give notice under Section 951 and (ii) alleged false statements in the FARA filing do not suffice to prove an absence of a legal commercial transaction. To the extent the Government argues that the Defendant's failure to give notice to the Attorney General was itself the "illegal" transaction, that argument would be circular and would render the "legal commercial transaction" requirement meaningless. And this Court has already held that "the alleged false statements [in the FARA filing] are not a sufficient basis for a Section 951 charge that Rafiekian acted as a foreign agent with respect to some activity other than a legal commercial transaction." July 9 Order, ECF No. 292 at 24 n.12.

**Defendant's Proposed Instruction No. 54A – Foreign Agents Registration Act**

Although the government did not charge Defendant with a failure to register under FARA, the government's theory is that the Defendant was not engaged in a legal commercial transaction because his (otherwise-legal) actions would have violated FARA if he was required to register and willfully failed to do so. *See* ECF No. 292 at 24 ("Although Rafiekian is not charged with a FARA violation under 22 U.S.C. 612(a), these [lobbying] activities would violate FARA, and therefore be illegal, if they are covered activities and Rafiekian willfully engaged in them as an agent of the Turkish government and without a proper FARA registration."); *see also* 22 U.S.C. § 618(a)(1) (liability only for one who "willfully violates" FARA). Thus, for the jury to decide the case, it must be instructed on the elements of a FARA violation based on the Defendant's alleged willful failure to register. That is what Def. #54A seeks to accomplish. Without this instruction or something similar, the jury will be left without any guidance as to how to determine whether the Defendant's actions constituted a "legal commercial transaction."

In addition to stating the basic elements of a FARA violation, the instruction should incorporate the Lobbying Disclosure Act ("LDA") exemption to FARA registration. FARA exempts from registration "[a]ny agent of a person described in section 611(b)(2) of this title or an entity described in section 611(b)(3) of this title if the agent has engaged in lobbying activities and has registered under the Lobbying Disclosure Act of 1995 in connection with the agent's representation of such person or entity." 22 U.S.C. § 613(h). Sections 611(b)(2) and 611(b)(3), in turn, describe any person or entity other than the government of a foreign country or a foreign political party—for example, Ekim Alptekin[2] or Inovo, BV. 22 U.S.C. § 611(b)(2)-(3). The LDA exemption does not apply, however, "where a foreign government or foreign political party is the principal beneficiary." 28 C.F.R. § 5.307. Def. #54A attempts to distill these interlocking exceptions to a concise and understandable form.

It is critical that the jury be instructed on the LDA exemption. If the exemption applies, then FIG was not required to register under FARA, and thus the Defendant's failure to register would not establish the absence of a legal commercial transaction. The exemption is also important for the jury's assessment of the Defendant's *intent* to violate FARA. Even if the jury concludes that FIG did not qualify for the LDA exemption, it may decide that the Defendant *reasonably believed* FIG qualified for the exemption and thus did not violate FARA willfully. Indeed, the Defendant received legal advice on precisely this topic, and the LDA exemption is central to the Defendant's theory of the case.

---

[2] Def. #54A mistakenly excludes reference to Ekim Alptekin. Defendant respectfully requests that Def. #54A be modified as follows: "Registration under FARA was not required if the Defendant was engaged in lobbying activities on behalf of a foreign company (Inovo B.V.) **or a foreign person (*e.g.*, Ekim Alptekin)** . . . ."

10

**Defendant's Proposed Instruction No. 55 – "Knowingly" – Defined**

The bedrock of this instruction—that scienter applies to *every* element of a crime that criminalizes otherwise innocent conduct—is well established under Supreme Court precedent. *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994) ("[T]he presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct."); *Rehaif v. United States*, 139 S. Ct. 2191, 2195 (2019) (describing same "longstanding presumption, traceable to the common law," which applies "even when Congress does not specify any scienter in the statutory text").  The Defendant's activities were "otherwise innocent."  He was engaged in consulting, lobbying, public relations, and investigative services that were themselves not inherently wrongful; the only reason he was charged with a crime under Section 951 is that he did not give notice of those innocent activities to the Attorney General.

As a result, to prove a violation of Section 951, the government must prove that the Defendant *knew* he was required to give notice to the Attorney General.  Although it is true that ignorance of the law is typically no excuse for breaking it, "the maxim does not normally apply where a defendant has a mistaken impression concerning the legal effect of some collateral matter and that mistake results in his misunderstanding the full significance of his conduct, thereby negating an element of the offense." *Rehaif v. United States*, 139 S. Ct. 2191, 2198 (2019).  Thus, permitting the government to prove this crime without showing that Defendant "knew" he was required to give notice to the Attorney General "would be to criminalize a broad range of apparently innocent conduct." *Liparota v. United States*, 471 U.S. 419, 426 (1985). *Liparota* is instructive.  There, the court interpreted a statute that made it a crime to "knowingly use[], transfer[], acquire[], alter[], or possess[] coupons or authorization cards [*i.e.*, food stamps] in any manner not authorized by this chapter or the regulations issued pursuant to this

11

chapter . . . ." *Id.* at 421 n.1 (quoting 7 U.S.C. § 2024(b)(1)). The government argued that a person should be found guilty under the statute if he "knew that he acquired or possessed food stamps and if in fact that acquisition or possession was in a manner not authorized by statute or regulations," and that no *mens rea* was necessary for conviction. *Id.* at 423. The Supreme Court disagreed and held that the statute "requires a showing that the defendant knew his conduct to be unauthorized by statute or regulations." *Id.* at 425. The court explained:

> The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil." Thus, in *United States v. United States Gypsum Co.*, 438 U.S. 422, 438 (1978), we noted that "[c]ertainly far more than the simple omission of the appropriate phrase from the statutory definition is necessary to justify dispensing with an intent requirement" and that criminal offenses requiring no *mens rea* have a "generally disfavored status." Similarly, in this case, the failure of Congress explicitly and unambiguously to indicate whether *mens rea* is required does not signal a departure from this background assumption of our criminal law.
>
> *This construction is particularly appropriate where, as here, to interpret the statute otherwise would be to criminalize a broad range of apparently innocent conduct.*

*Id.* at 426 (emphasis added) (citations omitted).

18 U.S.C. § 951 bears strong similarities to the statute at issue in *Liparota* in two important ways. First, both statutes define the criminal conduct by reference to the underlying regulations. In *Liporta* the statute made it illegal to act "in any manner not authorized by this chapter or regulations"; likewise, a failure to notify the Attorney General is illegal under Section 951 only if notification is required by the "rules and regulations establishing requirements for notification" established by the Attorney General. 18 U.S.C. § 951(a)-(b).

And second, both statutes criminalize otherwise innocent conduct. In *Liporata*, the "innocent" behavior was the possession of food stamps; here, it is acting in the United States as

12

an agent of a foreign government. Although the phrase "agent of a foreign government" may bring to mind traitors and spies, countless people act in the United States as "agents" of foreign governments every day for lawful purposes. Section 951 acknowledges this explicitly by exempting from the notice requirements any person engaged in a "legal commercial transaction." 18 U.S.C. § 951(d)(4). There is certainly no allegation here that the Defendant engaged in any inherently wrongful conduct like espionage or anything of the sort.

  The harsh penalty for violating Section 951—up to ten years' imprisonment—further supports the notion that a violation of Section 951 requires knowledge of the requirement to register. *See* Rehaif, 139 S. Ct. 2191, 2197 (2019) ("potential penalty of 10 years in prison" is a "harsh" penalty). As the Fourth Circuit has observed, a "harsh penalty [is] especially good evidence that Congress intended to punish the cognizant rather than the ignorant." *United States v. Forbes*, 64 F.3d 928, 932 (4th Cir. 1995) (citing *United States v. Staples*, 511 U.S. 600 (1994) ("[W]here, as here, dispensing with *mens rea* would require the defendant to have knowledge only of traditionally lawful conduct, a severe penalty is a further factor tending to suggest that Congress did not intend to eliminate a *mens rea* requirement. In such a case, the usual presumption that a defendant must know the facts that make his conduct illegal should apply.")). For these reasons, the jury should be instructed that the Government must prove beyond a reasonable doubt that the Defendant not only knew that he failed to register under Section 951, but also knew that he was *required* to register.

**Government's Proposed Instruction No. 17 – Pleading in the Conjunctive (and); Proving in the Disjunctive (or)**

The Defendant objects to this charge because would be confusing to the average juror and will not aid the jury in reaching its decision. At worst, the jury may misinterpret the instruction and render a verdict based on a faulty understanding of the law.

**Government's Proposed Instruction No. 23 – False Exculpatory Statements**

The Defendant objects to this charge because the Government has not established the required factual predicate. By its terms, the instruction applies only to statements made by the Defendant "upon being informed that a crime had been committed or upon being accused of a criminal charge." Here, to the extent the Government seeks to introduce statements made by the Defendant to FIG's lawyers in connection with the FARA filing, those statements were made *before* the Defendant was informed that a crime had been committed. If the Government fails to introduce evidence at trial regarding statements made *after* he became aware a crime had been committed, a false exculpatory instruction should not be given.

**Government's Proposed Instruction No. 31 – "False, Fictitious or Fraudulent Statements and Representations – Defined**

The Defendant objects to this charge for two reasons. First, there is no need to define the word "false"; it is a basic term that will be understood by everyone. Second, the second sentence of the instruction, defining a "fraudulent" statement, should not be given because the Defendant has not been charged with making any "fraudulent" statement or committing "fraud" of any kind.

**Government's Proposed Instruction No. 28 – Statute Defining the Offense – Count One & Government's Proposed Instruction No. 40 – Statute Defining the Offense – Count Two**

It is unnecessary to give the jury the statutory language underlying the crimes charged. Most (if not all) of the jurors will not be lawyers, and they should not be tasked with statutory

construction or interpretation.  These instructions are also duplicative of other instructions, such as those defining the nature and elements of the offenses, and will only serve to confuse.  At a minimum, if these instruction are read to the jury, they should incorporate the "legal commercial transaction" exception contained in 18 U.S.C. § 951(d)(4).

**Government's Proposed Instruction No. 36 – All Means and Methods Need Not Be Proven**

This instruction is unnecessarily confusing and conflicts with other instructions.  In particular, the second paragraph, which describes "what the evidence in the case must show beyond a reasonable doubt," is duplicative of instructions that state the elements of Count One, and there are significant differences between the "elements" set forth in Gov. #36 and those set forth in Gov. #29.  To avoid confusion, this instruction should be rejected.

**Government's Proposed Instruction No. 39 – Proof of Conspiracy by Circumstantial Evidence**

The Defendant objects to this instruction for two reasons.  First, the first sentence is duplicative of Gov. #9, which already acknowledges that circumstantial evidence is entitled to no less weight than direct evidence.  There is no need to restate this concept specifically with respect to a conspiracy.  And second, the second sentence is inapplicable to this case.  It references a "fraudulent scheme," but the Defendant is not accused of fraud.  Moreover, the case cited by the Government bears no relation to this case.  *United States v. Valdez*, 726 F.3d 684, 691 (5th Cir. 2013).  *Valdez* involved "promotion money laundering" under a statute prohibiting financial transactions "with the intent to promote the carrying on of specified unlawful activity"—quite different from the false statement and failure-to-register charges at issue here. 18 U.S.C. § 1956.  The instruction is simply not applicable, and the Court should reject it.

Dated: July 14, 2019

Respectfully submitted,

/s/
Mark J. MacDougall (*Pro Hac Vice*)
Stacey H. Mitchell (*Pro Hac Vice*)
John C. Murphy (*Pro Hac Vice*)
Adam A. Bereston (*Pro Hac Vice*)
Samantha J. Block (*Pro Hac Vice*)
*Counsel for Bijan Rafiekian*
Akin Gump Strauss Hauer & Feld LLP
2001 K Street NW
Washington, DC 20006
Telephone:  (202) 887-4000
Fax:  (202) 887-4288
E-mail:  mmacdougall@akingump.com
           shmitchell@akingump.com


/s/
Robert P. Trout (VA Bar # 13642)
*Counsel for Bijan Rafiekian*
Trout Cacheris & Solomon PLLC
1627 Eye Street, NW
Suite 1130
Washington, DC 20006
Telephone:  (202) 464-3311
Fax:  (202) 463-3319
E-mail:  rtrout@troutcahceris.com

16

## CERTIFICATE OF SERVICE

I hereby certify that, on the 14th day of July 2019, true and genuine copies of Defendant Bijan Rafiekian's Memorandum in Support of Jury Instructions was sent via electronic mail by the Court's CM/ECF system to the following:

    James P. Gillis
    John T. Gibbs
    Evan N. Turgeon
    U.S. Attorney's Office (Alexandria-VA)
    2100 Jamieson Avenue
    Alexandria, VA 22314
    Telephone: (703) 299-3700
    Email: james.p.gillis@usdoj.gov
           john.gibbs@usdoj.gov
           evan.turgeon@usdoj.gov

                                                */s/*
                                          Robert P. Trout (VA Bar # 13642)