UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Criminal Case No. 1:18-CR-457 (AJT) |
| | : | |
| BIJAN RAFIEKIAN, et al. | : | |

**DEFENDANT RAFIEKIAN'S RESPONSE TO GOVERNMENT'S PRE-TRIAL MEMORANDUM ON CO-CONSPIRATOR STATEMENTS**

Defendant Rafiekian, through counsel, respectfully submits this response to the Government's Pre-Trial Memorandum on Co-Conspirator Statements [ECF No. 310].

**ARGUMENT**

**I.   The Court Should not Consider the Government's Untimely Memorandum**

The government's third successive attempt to convince the Court to admit out-of-court statements of the Defendant's alleged co-conspirators should be rejected out-of-hand. This court has (twice) received briefing from both parties on the co-conspirator hearsay exception, and (twice) heard oral argument on Defendant's motion. At no time in either set of briefing or during either hearing did the government raise the theory that it now espouses: that the co-conspirator exception applies to conspirators and non-conspirators alike. Relying on the government's arguments, the Court dedicated considerable analysis—five full pages of its July 9 Omnibus Order [ECF No. 292]—to its application of the controlling law to the relevant facts.

For the first time (in its third opportunity), the government now raises yet another legal theory as to why the co-conspirator hearsay statements should be admitted. At some point, this issue must be put to rest. The government should not be permitted to have what amounts to a *third* bite at the apple.

## II. Before Admitting Co-Conspirator Hearsay, the Fourth Circuit Requires Proof of an Agreement to Commit an Unlawful Act

Even if the Court decides to consider the government's untimely brief, the government's latest argument—which relies solely on out-of-circuit authority—lacks merit.

The government contends that proof of an agreement to enter into "*any* agreed-upon joint venture, whether unlawful or lawful in nature," is sufficient to satisfy Rule 801(d)(2)(E). [ECF No. 310 at 2]. That is not the law in the Fourth Circuit. In contrast to the out-of-circuit cases cited by the Government, before admitting co-conspirator statements under Rule 801(d)(2)(E), the Fourth Circuit has in the past required a "clear demonstration of an illicit association." *United States v. Broome*, 732 F.2d 363, 364 n.1 (4th Cir. 1984); see *United States v. Chindawongse*, 771 F.2d 840, 844 (4th Cir. 1985) (noting evidence that "reasonably support a conclusion that the [D}efendant willfully participated in the *unlawful plan* with the intent to further some object or purpose of the conspiracy") (citation and internal quotation marks omitted) (emphasis added).

The Fourth Circuit's rule is in line with the plain text of the coconspirator's exception, Federal Rule 801(d)(2)(E), which provides that a statement is admissible against a party opponent only if "made by the party's coconspirator during and in furtherance of the conspiracy." The Rule uses precise words—"conspiracy" and "coconspirator"—that have longstanding, well-defined meanings closely associated with "unlawful" conduct. Thus, the Supreme Court has recognized that the "essence" of a conspiracy is "an agreement to commit an unlawful act," *Iannelli v. United States*, 420 U.S. 770, 777 (1975). The Fourth Circuit has repeatedly observed that "[a] conspiracy is an agreement between two or more individuals to commit a criminal act." *United States v. Baker*, 985 F.2d 1248, 1255 (4th Cir. 1993) (citing *Morrison v. Calif.*, 291 U.S. 82, 92 (1934)). And popular dictionaries (legal and nonlegal) define

it the same way. *See*, *e.g.*, CONSPIRACY, Black's Law Dictionary (11th ed. 2019) ("An agreement by two or more persons to commit an *unlawful act*, coupled with an intent to achieve the agreement's objective, and (in most states) action or conduct that furthers the agreement; a combination for an *unlawful purpose*."); COCONSPIRATOR, Black's Law Dictionary (11th ed. 2019) ("Someone who engages in a *criminal* conspiracy with another; a fellow conspirator."); *see also State v. Tonelli*, 749 N.W.2d 689, 694 (Iowa 2008) (citing Webster's and noting that, "in common usage, the term conspiracy implies unlawful conduct of some kind and not innocent undertakings").[1] Although the government urges this Court to rule that Rule 801(d)(2)(E) extends "broadly to statements [made] during and in furtherance of *any* agreed-upon joint venture," Br. 2, the Rule's drafters set forth an exception specifically for "*coconspirators*"—not all joint venturers.[2]

Consistent with the "essence" of conspiracy, to Defendant's knowledge, every Fourth Circuit case that has permitted the introduction of out-of-court statements under Rule 801(d)(2)(E) has done so in the context of a conspiracy to commit an unlawful act. *See, e.g.*, *United States v. Pratt*, 239 F.3d 640, 644 (4th Cir. 2001) (conspiracy to distribute cocaine);

---

[1] That is true even in the civil context. CONSPIRACY, Black's Law Dictionary (11th ed. 2019) (defining "civil conspiracy" as "[a]n agreement between two or more persons to commit an *unlawful* act that causes damage to a person or property") (emphasis added); *see, e.g., USF Red Star, Inc. v. N.L.R.B.*, 230 F.3d 102, 108 n.2 (4th Cir. 2000) (coconspirator statement admissible under exception for statement made in "furtherance of the conspiracy to terminate Hayes," which constituted a violation of the NLRA).

[2] The government cites legislative history for the proposition that a "joint venturer is considered as a coconspirator for the purpose of this rule even though no conspiracy has been charged." Br. 3. A similar rule is reflected in the Committee Notes to Rule 801: "While [Rule 801(d)(2)(E)] refers to a coconspirator, it is this committee's understanding that the rule is meant to carry forward the universally accepted doctrine that a joint venturer is considered as a coconspirator for the purposes of this rule even though no conspiracy has been charged." Fed. R. Evid. 801. These statements stand for the undisputed proposition that the rule does not require that a conspiracy be "charged"; they do not, by their terms or otherwise, suggest that there is such thing as a "lawful conspiracy" (a contradiction in terms). Indeed, both cases cited in the Committee Notes for this proposition involve conspiracies with "illegal" or "unlawful" ends. *See United States v. Rinaldi*, 393 F.2d 97, 99 (2d Cir. 1968) (defendant and the co-conspirator declarant "were engaged in an illegal joint enterprise"); *United States v. Spencer*, 415 F.2d 1301, 1304 (7th Cir. 1969) (admission proper because "when men enter into an agreement for an unlawful end, they become agents for one another").

3

*United States v. Shores*, 33 F.3d 438, 443 (4th Cir. 1994) (conspiracy to commit "various illegal acts," including murder, bribing a prison guard, and perjury); *United States v. Urbanik*, 801 F.2d 692, 698 (4th Cir. 1986) (conspiracy to distribute marijuana and cocaine); *United States v. Ruiz-Castillo*, 432 F. App'x 229, 231 (4th Cir. 2011) (conspiracy to distribute marijuana). For its part, the government cites no binding authority holding that proof of any legal joint venture is sufficient to satisfy Rule 801(d)(2)(E). If anything, the government's authority suggests the opposite: That a co-conspirator can "join[] the conspiracy" only if he has "an understanding of the *unlawful* nature thereof." Br. at 4 (citing *United States v. Burgos*, 94 F.3d 849, 858 (4th Cir. 1996) (en banc)) (emphasis added).[3]

The Fourth Circuit's interpretation of Rule 801(d)(2)(E) is also consistent with the purpose of the rule itself, which is that conspiracies, due to their secretive nature, require particularized methods of proof. *See United States v. Gil*, 604 F.2d 546, 549 (7th Cir. 1979) ("It has also been candidly proposed by commentators, and implicitly acknowledged by the Advisory Committee for the Federal Rules of Evidence, that the exception is largely a result of necessity, since it is most often invoked in conspiracy cases in which the proof would otherwise be very difficult and the evidence largely circumstantial."). Moreover, out-of-court statements by co-conspirators do not present the same concerns of untrustworthiness that ordinary hearsay presents. As the Fourth Circuit correctly noted, "[c]onspirators are likely to speak differently when talking to each other in furtherance of their *illegal* aims." *United States v.* Blevins, 960 F.2d 1252, 1257 (4th Cir. 1992) (quoting *United States v.* Inadi, 475 U.S. 387, 395 (1986))

---

[3] The lone Fourth Circuit case that the government cites in support of its joint venture argument mentions in a footnote that, for the purposes of Rule 801(d)(2)(E), the conspiracy need not be the one charged in the indictment. *United States v. Shores*, 33 F.3d 438, 442 n.3 (4th Cir. 1994). The Fourth Circuit cited *United States v. Layton*, 855 F.2d 1388, 1398 (9th Cir. 1988) for this proposition, without going so far as to adopt the Ninth Circuit's holding that the conspiracy need not involve an illegal objective.

4

(emphasis added). This logic does not apply where the statements are in furtherance of a *legal* joint venture.

It is true, as the government points out, that some other circuits have held (contrary to the Rule's plain text) that the "coconspirator's exception" actually covers any joint venture, even lawful ones. But there is caselaw to the contrary. *See State v. Tonelli*, 749 N.W.2d 689, 694 (Iowa 2008) (concluding that "identical" state rule "may be applied where there is evidence of a conspiracy to accomplish a criminal or unlawful act, or to do a lawful act in an unlawful manner, *but not to combinations or agreements in furtherance of entirely lawful goals advanced by lawful means*") (emphasis added); *see generally* Ben Trachtenberg, COCONSPIRATORS, "COVENTURERS," AND THE EXCEPTION SWALLOWING THE HEARSAY RULE, 61 Hastings L.J. 581, 612–13 (2010) (surveying caselaw and noting the "troubling recent development," by which "in recent years certain federal prosecutors have advanced a revised definition of the Exception itself, arguing that the 'conspiracy' joined by the defendant and declarant need not 'have as its object an unlawful purpose,'" and that instead, "a 'conspiracy' may, for purposes of the Exception, involve purely lawful, even laudable, conduct"); 4 JONES ON EVIDENCE § 27:48 (7th ed.) (rejecting idea that exception covers "lawful" conspiracies because "[t]he essence of a conspiracy is an actual agreement to engage in unlawful conduct"); Everytrial Criminal Defense Resource Book § 31:14 (reciting arguments against "lawful" conspiracy rule).

The JONES ON EVIDENCE treatise specifically criticized as "unfortunate" the line of cases the government relies on, for two reasons: it negates the word "conspiracy," and it makes Rule 801(d)(2)(D) (the "agency" exception) redundant:

> Citing a 1917 decision by the Supreme Court, the Tenth Circuit held, in *U.S. v. LaHue*, that for purposes of Fed. R. Evid. 801(d)(2)(E), a "conspiracy" can include a lawful plan in which several people participate. The holding is unfortunate in that it contradicts the common understanding of the word

5

> "conspiracy." The same result could be arrived at by categorizing the participants as agents of one another and admitting such statements under Rule 801(d)(2)(D).

4 Jones on Evidence § 27:48 (7th ed.). Indeed, the Committee Notes to Rule 801 specifically reject the "wider admissibility of statements of co-conspirators" on agency grounds, as "the agency theory of conspiracy is at best a fiction and ought not to serve as a basis for admissibility beyond that already established" by Rule 801(d)(2)(D).

The government's same "unfortunate" reading should be rejected here, and for the same reasons: not only does it controvert the ordinary meanings of the words "conspiracy" and "conspirator," it also largely duplicates Rule 801(d)(2)(D) for non-criminal joint venture relationships (while simultaneously eliminating that subsection's limitations). Instead, before the Government can admit statements of the Defendant's alleged co-conspirators, it must prove by a preponderance of the evidence the existence of a conspiracy to commit an *unlawful* act—namely, to deprive the Attorney General of notice under Section 951 or to make false statements in a FARA filing. The Government cannot meet this burden, as this Court has already held.

### III.   The Government has Failed to Prove the Existence of a Conspiracy

The government asserts that circumstantial evidence is sufficient to establish the existence of a conspiratorial agreement. Br. at 5. The circumstantial evidence proffered by the government to date, however, was insufficient to meet this burden, and it will be unable to offer any additional compelling evidence to support it.

In its July 9 order, after considering the circumstantial evidence presented by the government, the Court correctly ruled that "one cannot sufficiently infer [from the evidence proffered by the government to date] that *Rafiekian* was conspiring to act as an undisclosed Turkish agent or to cause the filing of a false FARA statement." [ECF No. 292 at 29]. In making this determination, the Court considered "not only whether the United States has made the

requisite showing with respect to the conspiracy alleged in Count One, but also any other conspiracy, whether charged or not." *Id.*

Thus, to admit co-conspirator hearsay statements at trial, the government must come forward with *additional* evidence that establishes (i) the existence of a conspiracy, (ii) that Mr. Rafiekian was a member of that conspiracy, and (iii) that the offered statements were made during and in furtherance of that conspiracy. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987). Moreover, such evidence must be independent of the hearsay statements themselves. *See, e.g.*, *United States v. Afridi*, 241 F. App'x 81, 84 (4th Cir. 2007) ("The proponent of the [out-of-court] statements must show the existence of the conspiracy and the declarant's role in the conspiracy through independent evidence but may supplement that evidence with the statements of the declarant."); *United States v. Borders*, 69 F. App'x 130, 132 (4th Cir. 2003) ("To admit a co-conspirator's out-of-court statement, the Government must demonstrate the existence of the conspiracy by evidence extrinsic to the hearsay statements.").

Whatever evidence the government may introduce at trial, the fact remains (as this Court held) that "any inference of an agreement by Rafiekian to act as an undisclosed Turkish agent is substantially undercut by his contemporaneous conduct, which included seeking out legal advice concerning his FARA disclosure obligations in August 2016 (from Covington) and again in September 2016 (from Kelley), and subsequently filing an LDA disclosure statement pursuant to Kelley's advice." [ECF No. 292 at 29]. Rafiekian's actions to seek out legal advice concerning his FARA disclosure obligations, his filing of an LDA disclosure statement, and the FARA statement and related filings, are highly probative of his lack of intent to hide anything from the Attorney General. The Defendant's consultations with counsel seriously undercut any suggestion that he was involved in a criminal conspiracy.

7

The government also contends that "a party to a conspiracy may have the requisite knowledge of its nature through willful[] blindness or deliberate ignorance." [ECF No. 310 at 4]. But that doctrine does not apply here. Willful blindness requires that: "(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." In the criminal context, willful blindness requires that the government show the Defendant was willfully blind to a fact that would render his conduct *illegal*. *See United States v. Hale*, 857 F.3d 158, 168 (4th Cir. 2017) (quotation omitted) ("[R]equests for willful blindness instructions should be handled with caution . . . because of the risk that the instruction could mislead a jury into believing that it could convict the defendant for his mere negligence or recklessness with respect to a key fact making his conduct *illegal*." (emphasis added) (internal citation omitted)).

Willful blindness is inapplicable here because the Defendant was not willfully blind to any fact suggesting illegal conduct. None of the Defendant's communications with Alptekin, for example, involved a suggestion of illegal conduct. At most, those conversations show discussions relating to a lawful business venture, not a criminal conspiracy.

## CONCLUSION

For the reasons discussed above, the government has not met its burden by a preponderance of the evidence to establish a conspiracy under Rule 801(d)(2)(E) and will be unable to do so at trial.

Dated: July 16, 2019

Respectfully submitted,

*/s/*
Mark J. MacDougall (*Pro Hac Vice*)
Stacey H. Mitchell (*Pro Hac Vice*)
James E. Tysse (VA Bar #73490)
John C. Murphy (*Pro Hac Vice*)
Adam A. Bereston (*Pro Hac Vice*)
Samantha J. Block (*Pro Hac Vice*)

        *Counsel for Bijan Rafiekian*
        Akin Gump Strauss Hauer & Feld LLP
        2001 K Street, NW
        Washington, DC 20006
        Telephone:  (202) 887-4000
        Fax:  (202) 887-4288
        E-mail:   mmacdougall@akingump.com
                  shmitchell@akingump.com


*/s/*
Robert P. Trout (VA Bar # 13642)
*Counsel for Bijan Rafiekian*
Trout Cacheris & Solomon PLLC
1627 Eye Street, NW
Suite 1130
Washington, DC 20006
Telephone:  (202) 464-3311
Fax:  (202) 463-3319
E-mail:   rtrout@troutcahceris.com

## **CERTIFICATE OF SERVICE**

I hereby certify that, on the 16th day of July 2019, true and genuine copies of Defendant Rafiekian's Response to Government's Pre-Trial Memorandum on Co-Conspirator Statements were sent via electronic mail by the Court's CM/ECF system to the following:

James P. Gillis
John T. Gibbs
Evan N. Turgeon
U.S. Attorney's Office (Alexandria-NA)
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 299-3700
Email: james.p.gillis@usdoj.gov
john.gibbs@usdoj.gov
evan.turgeon@usdoj.gov

*/s/*
Robert P. Trout (VA Bar # 13642)