916

```
 1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF VIRGINIA
 2                   ALEXANDRIA DIVISION

 3   UNITED STATES OF AMERICA,    )  Case 1:18-cr-00457
                                  )
 4                 Plaintiff,     )
                                  )
 5        v.                      )  Alexandria, Virginia
                                  )  July 19, 2019
 6   BIJAN RAFIEKIAN,             )  2:30 p.m.
                                  )
 7                 Defendant.     )  Day 5
     _____ )  Pages 916 - 955
 8

 9                    TRANSCRIPT OF TRIAL

10        BEFORE THE HONORABLE ANTHONY J. TRENGA

11          UNITED STATES DISTRICT COURT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25      COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES
```

APPEARANCES:

FOR THE UNITED STATES OF AMERICA:

     EVAN N. TURGEON, ESQUIRE
     JOHN T. GIBBS, ESQUIRE
     S. KATE SWEETEN, ESQUIRE
     OFFICE OF THE UNITED STATES ATTORNEY
     2100 Jamieson Avenue
     Alexandria, Virginia  22314
     (703) 299-3700

FOR BIJAN RAFIEKIAN:

     ROBERT P. TROUT, ESQUIRE
     TROUT, CACHERIS & SOLOMON, PLLC
     1627 I Street, N.W., Suite 1130
     Washington, D.C.  20006
     (202) 464-3300

     MARK J. MACDOUGALL, ESQUIRE, *PRO HAC VICE*
     STACEY H. MITCHELL, ESQUIRE, *PRO HAC VICE*
     JOHN C. MURPHY, ESQUIRE, *PRO HAC VICE*
     JAMES E. TYSSE, ESQUIRE
     AKIN, GUMP, STRAUSS, HAUER & FELD, LLP
     Robert S. Strauss Building
     1333 New Hampshire Avenue, N.W.
     Washington, D.C.  20036-1564
     (202) 887-4000

THE DEFENDANT, BIJAN RAFIEKIAN, IN PERSON

1          THE CLERK:  Criminal Case 1:18-cr-457, *United*
2  *States v. Bijan Rafiekian*.

3          Counsel, will you please note your
4  appearances for the record.

5          MR. GIBBS:  Good afternoon, Your Honor.  John
6  Gibbs, Katie Sweeten, and Evan Turgeon on behalf of the
7  government, and Special Agent Alfredo is also in court.

8          THE COURT:  Good afternoon.

9          MR. MACDOUGALL:  Good afternoon, Your Honor.
10 Mr. Rafiekian is present here.  For Mr. Rafiekian, Mark
11 MacDougall, James Tysse, Stacey Mitchell, Jack Murphy,
12 and Robert Trout.  Mr. Trout and I, with the Court's
13 permission, will take the backseat.  We would like to
14 also ask the Court's permission for two of our summer
15 law students, Parnia Zahedi and Madeline Bardi, to join
16 us in the well.

17         THE COURT:  Yes.  We're delighted to have
18 them.

19         MR. MACDOUGALL:  Thank you, Your Honor.

20         THE COURT:  What I'd like to do is spend some
21 time talking about the jury instructions.  What I plan
22 on doing is fashioning a set of instructions
23 provisionally to distribute to counsel with the benefit
24 of today's discussions.  Then everybody will have
25 another opportunity to respond to them.

1          I've reviewed the briefing that's been

2    provided, and I'm not going to go through all the

3    disputed items, but there are a few I do want to focus

4    on.  The first one I'd like to take up is the

5    defendant's proposed Instructions 30 and 31 pertaining

6    to missing witness instruction.

7          MR. MURPHY:  Good afternoon, Your Honor.

8    Jack Murphy.

9          THE COURT:  Yes.

10         MR. MURPHY:  With regards to Defendant's

11   Instructions 30 and 31, the government has argued that

12   this instruction is not appropriate because the defense

13   has the ability to subpoena Mr. Flynn.

14         THE COURT:  I take it you're not going to

15   call Mr. Flynn.

16         MR. MURPHY:  The defense does not intend to

17   call Mr. Flynn as a witness, Your Honor.

18         THE COURT:  All right.

19         MR. MURPHY:  There are circumstances,

20   however -- and we've cited some cases in our brief --

21   where even though a witness is physically available to

22   the defendant, the missing witness instruction is

23   nevertheless appropriate.  That occurs where the

24   witness is practically unavailable to a party even if

25   they're physically available.

1              The case we cited for this is *United States*

2  *v. Mahone* out of the Seventh Circuit.  So at issue in

3  *Mahone* was a police officer who was closely associated

4  with the United States Attorney in developing the case.

5              THE COURT:  Have you been restricted in any

6  way in trying to interview Mr. Flynn or having access

7  to Mr. Flynn?

8              MR. MURPHY:  We have not been restricted to

9  interview or access Mr. Flynn, Your Honor.

10             THE COURT:  All right.

11             MR. MURPHY:  However, given the close

12 relationship between Mr. Flynn and the government, as

13 evidenced by several witnesses that Mr. Flynn -- excuse

14 me -- several interviews that Mr. Flynn participated in

15 with the government, several witness prep sessions --

16             THE COURT:  All of which you know about

17 through the 302s.

18             MR. MURPHY:  All of which we're aware of

19 through the 302s and various filings in this case --

20             THE COURT:  Right.

21             MR. MURPHY:  -- and in Mr. Flynn's criminal

22 case.

23             For all intents and purposes, Mr. Flynn was

24 acting as an agent of the government.  He was their

25 presumptive star witness.

1            So for that reason, we would say that under

2    *United States v. Mahone*, Mr. Flynn was practically

3    unavailable to the defense.   Therefore, a missing

4    witness instruction is appropriate.

5            THE COURT:  All right.  Mr. Gibbs.

6            MR. GIBBS:  Just briefly, Judge.  Your Honor,

7    I think your questions cut right to the heart of the

8    matter.  You asked if the defense intended to call

9    Mr. Flynn.  They said they did not.  Significantly,

10   they didn't say they couldn't call Mr. Flynn.  They

11   simply said they had chosen not to do so.  You then

12   asked them if they were restricted in any way, and they

13   candidly acknowledged that they were not restricted.

14   So I think to somehow give the jury an instruction that

15   says this witness is peculiarly within the power of the

16   government to produce is simply inaccurate factually.

17           I also think the *Mahone* case from the Seventh

18   Circuit from 1976 that they quote is -- well, first of

19   all, I haven't seen any corresponding case law to that

20   effect in the Fourth Circuit.  I'm confident the

21   defense would have found it if it existed.  In that

22   case --

23           THE COURT:  Is that the one with the

24   confidential informant?  Is that the case, the Seventh

25   Circuit case?

1          MR. GIBBS:  I believe it was a police

2    officer.

3          THE COURT:  Right.

4          MR. GIBBS:  I think the holding was sort of

5    along the lines of a police officer is part of the

6    government team.  So even if you call him, he's not

7    going to be able to testify against his team.

8          I think General Flynn probably feels less

9    kinship with the government right now than he ever has

10   in his entire career.  So that is certainly not the

11   case with him.

12         I think for all of those reasons, Judge, 30

13   and 31 should not be given to the jury.

14         Thank you.

15         THE COURT:  All right.  Thank you.

16         This really cuts across a number of the

17   instructions.  Really, how the Court's ruling with

18   respect to the essential elements of the offense under

19   951, which relates to the legal commercial transaction

20   aspect, is to be incorporated into the instructions.  I

21   know the defense has proposed several instructions that

22   captures that.

23         The government, I think, has not really

24   proposed incorporating that language very much

25   anywhere.  I'd like to hear from you in terms of how we

1    should do that and how we capture the aspect of the

2    definition of "legal commercial transaction" that

3    qualifies it by indicating "unless prohibited by law."

4              Mr. Turgeon.

5              MR. TURGEON:  Thank you, Your Honor.

6              We drafted a short three-page brief that we

7    have just given to defense counsel.  We'd like to hand

8    it up to Your Honor as well.

9              THE COURT:  All right.

10             MR. TURGEON:  It's drafted in the style of an

11   opposition to the defendant's proposed instruction,

12   Your Honor.

13             Thank you.

14        (Documents are given to the Court.)

15             MR. TURGEON:  So in this brief, Your Honor,

16   we highlight two points, but there's a third element to

17   add.

18             The first of those points is the government

19   does not need to prove a criminal violation of any

20   statute, including FARA, to establish the defendant's

21   conduct was not only a commercial transaction.  All the

22   government needs to prove -- and this is in the FARA

23   regulations -- is that the conduct at issue was not

24   legal, was prohibited by, in this case, a federal law.

25             So for that reason, the defense's proposed

1    instruction, which, I believe, inserts -- or at least

2    suggests that the insertion of a *mens rea*

3    requirement -- which would mean the government needs to

4    prove that the defendant criminally violated FARA --

5    that's simply not what the law is, Your Honor.   Our

6    brief on that point makes that quite clear.   That's

7    consistent with how 951 cases have been charged

8    consistently.   The conduct at issue for most 951 cases

9    is not inherently criminal.

10           Here, though, we are alleging that it is a

11   criminal violation pursuant to Your Honor's order.   It

12   is violation of FARA, and it's a violation of what FARA

13   requires whether or not the defendant committed a

14   criminal violation of FARA that could be independently

15   prosecuted.   FARA is prosecuted civilly as well, for

16   example.

17           So, again, Your Honor, as our brief makes

18   clear, we believe there's no *mens rea* requirement as to

19   what the government is required to prove to establish

20   that the defendant's conduct was not a legal commercial

21   transaction.

22           There are a couple of other points.

23           THE COURT:   What would you need to establish?

24   Simply what?   That there was false information?

25           MR. TURGEON:   So if I understand correctly,

1    Your Honor, what we're talking about here is the prong

2    of 951 --

3              THE COURT:  Yes.

4              MR. TURGEON:  -- for a legal commercial

5    transaction.

6              THE COURT:  Right, which speaks to whether

7    the person is an agent.

8              MR. TURGEON:  Yes, Your Honor.

9              For that, we would need to establish

10   essentially what the regulations say, that there was

11   some conduct that was illegal.

12             THE COURT:  Right.

13             MR. TURGEON:  By illegal, that means

14   prohibited by law whether or not the government has

15   proved a criminal violation of that law.

16             THE COURT:  How would you instruct the jury

17   on that aspect of it?  What would you tell them?

18             MR. TURGEON:  Your Honor, we'd ask that the

19   jury be instructed just what the regulations say.

20             THE COURT:  How do they make a judgment about

21   whether it's illegal or not?

22             MR. TURGEON:  Your Honor, we do propose the

23   jury be told in this case what the elements of FARA

24   are.  However, we don't -- or rather, you know what,

25   Your Honor?  I'd like to strike that last comment.

1          I agree.  It's important for the jury to be
2   instructed what conduct constitutes a violation of
3   FARA.  We really haven't figured out the best way to go
4   about doing that.

5          But the number one concern of ours is that
6   the jury cannot be instructed that to find that the
7   conduct was in violation of law and, therefore, was not
8   a legal commercial transaction, that there's any sort
9   of willfulness requirement there.

10          The second point, Your Honor, with regard to
11   the instructions -- or the defendant's proposed
12   instruction, rather, is that the second paragraph says
13   that in order to find that the defendant conspired to
14   violate Section 951 --

15          THE COURT:  What instruction are you reading
16   from?

17          MR. TURGEON:  I'm sorry, Your Honor.  It's
18   the Defendant's Proposed Instruction No. 54A.

19          THE COURT:  All right.

20          MR. TURGEON:  Now, under 54A, it says, In
21   order to find that the defendant conspired to violate
22   Section 951 for Count 1, the government must also prove
23   beyond a reasonable doubt that the defendant conspired
24   to violate FARA.

25          That's simply not the law.  We don't need to

1    prove any separate conspiracy for the reason I just

2    stated and also because an individual violation of FARA

3    would be enough to render the conduct -- not even an

4    individual violation of FARA, but simply any conduct

5    that was in violation of the FARA statute, whether or

6    not prosecuted or prosecutable, renders that conduct

7    not a legal commercial transaction.  So we'd object to

8    that paragraph as well.

9            The third point, Your Honor -- a couple of

10   lines down there under first -- or it says where the

11   defendant acted in the United States as an agent of a

12   foreign principal, specifically in this case the

13   government of Turkey.

14           Your Honor, we object to -- we would object

15   to specifying in this case the foreign principal for

16   which the defendant must've acted to find their conduct

17   was not a legal commercial transaction.  That's because

18   if the defendant were to have acted on behalf of

19   Alptekin and if Your Honor were to find that that

20   conduct -- or if the jury were to find, rather, that

21   that conduct was not for the principal benefit of the

22   government of Turkey, that's still a FARA violation.

23   It doesn't have to be just the government of Turkey.

24   It's for any foreign principal as long as -- it's a

25   violation if you act for any foreign principal and the

1    principal beneficiary of that action is a foreign

2    government or a foreign political party.

3                THE COURT:  Well, they disclosed they were

4    acting on behalf of Inovo, which is Alptekin, right?

5                MR. TURGEON:  Yes, Your Honor.  However, if

6    the conduct were for -- again, under the LDA

7    exception -- and we have some points on that as well,

8    some suggested edits to the instruction on that as

9    well.

10               THE COURT:  All right.

11               MR. TURGEON:  The LDA exception is not

12   available if the conduct was for the principal benefit

13   of a foreign government or a foreign political party.

14   So even if the defendant were acting on behalf of

15   Alptekin, if that action was for the principal benefit

16   of the government of Turkey, that's still a violation

17   of FARA, Your Honor.

18               THE COURT:  All right.  Well, let me ask you

19   this:  What should -- and this, again, gets to the

20   issue that -- let's stay with Count 1 where we're

21   talking about the conspiracy.  We have two prongs.  One

22   is conspiracy to violate 951, and then the other is

23   conspiracy to violate 618.

24               What should they be told?  They're going to

25   be instructed on 951 separate and apart in Count 2, but

1   what should they be told about the 918 charge?

2           MR. TURGEON:  The 618 charge, Your Honor?

3           THE COURT:  The 618 charge, yes.

4           MR. TURGEON:  Well, the 618 charge is

5   essentially making material false statements on a FARA

6   registration.

7           THE COURT:  Right.  Do you agree they need to

8   be instructed on what the elements of that offense are

9   for the purposes of the conspiracy count?

10          MR. TURGEON:  Yes, Your Honor, with regard to

11  that part of the conspiracy count.  Although, it's

12  important to remember here that there are essentially

13  two different FARA offenses that we've been talking

14  about.  There's the false statements, and then there's

15  the other conduct, including failure to register and

16  failure to comply with other provisions of FARA.

17          THE COURT:  Right.

18          MR. TURGEON:  So with regard to the material

19  false statements on the FARA filing, I'd like to confer

20  with my team for one moment.

21          THE COURT:  All right.

22      (Counsel confer.)

23          MR. TURGEON:  Your Honor, Proposed

24  Instruction No. 29, the first part of that --

25          THE COURT:  Hold on.  Hold on a second.

1           All right.  No. 29?

2           MR. TURGEON:  Yes, Your Honor, No. 29.

3           THE COURT:  All right.

4           MR. TURGEON:  So under what we have there,

5    under one, it says, The conspiracy, agreement, or

6    understanding to act as an agent of a foreign

7    government and to make false statements and wishful

8    omissions in a FARA filing.

9           So, Your Honor, we think to make false

10   statements and willful omissions in a FARA filing

11   really requires no further explanation.  We did submit

12   an instruction on materiality.  Between that

13   instruction and this one, Your Honor, we don't know if

14   anything more is required along, of course, with the

15   general conspiracy instructions that apply to both

16   prongs of the conspiracy.  We don't think anything else

17   is required.

18          THE COURT:  Well, the trouble I'm having is

19   the object of the conspiracy is the unlawful conduct,

20   right, these two prongs?

21          MR. TURGEON:  Yes.

22          THE COURT:  The first prong of the unlawful

23   conduct is 951.

24          MR. TURGEON:  Yes.

25          THE COURT:  Acting as an agent of a foreign

1  government isn't a violation of 951, right?  I mean,

2  that's not a statement of unlawful activity.

3          MR. TURGEON:  Your Honor, well, acting under

4  the direction and control of a foreign government is --

5          THE COURT:  Without notification.

6          MR. TURGEON:  Yes.

7          THE COURT:  But that's not in your proposal.

8          That aspect of FARA, again, getting back

9  to -- you say it's a FARA violation.  The FARA

10  violation that would make an otherwise legal commercial

11  transaction unlawful and, therefore, outside of the

12  definition of a legal commercial transaction is not the

13  false statements on a FARA registration form; is it?

14  It would be the acting as an undisclosed foreign agent

15  as those terms are used within --

16          Is it 612?

17          MR. TURGEON:  Yes, Your Honor, that's right.

18          THE COURT:  -- 612 made criminal under

19  618(a), right?

20          MR. TURGEON:  And otherwise civilly

21  prosecuted, yes.

22          THE COURT:  Right.

23          MR. TURGEON:  Your Honor is correct.  We're

24  not alleging that the legal commercial transaction was

25  related to the false statements on the filing.  We're

1  talking about the other FARA violative conduct.

2              THE COURT:  Right.  So for the jury to make a

3  determination as to whether the conduct is essentially

4  exempted and thereby taking the conduct outside of 951

5  or places it within 951, they need to have some

6  guidance on what they have to focus on in order to

7  determine whether it's unlawful conduct or not, right?

8              MR. TURGEON:  That's right.

9              THE COURT:  Which gets into the details of

10  what 612 would require.

11             MR. TURGEON:  612 in a subsequent section --

12             THE COURT:  Right, which in turn relates to

13  the definition of an agent and the kinds of activities

14  and conduct that would make that conduct illegal.

15             I'm just having trouble -- I mean, I

16  appreciate wanting to simplify this into understandable

17  language, but the reality of these charges is that

18  they're caught up with a lot of fairly technical

19  definitions.

20             MR. TURGEON:  Yes, Your Honor, I agree with

21  that.

22             Your Honor, our number one concern was we

23  wanted to make clear to Your Honor that a separate

24  criminal violation of FARA need not be proved.

25             THE COURT:  That just goes to the *mens rea*

1    aspect of it.

2             MR. TURGEON:  Excuse me, Your Honor?

3             THE COURT:  You're focused on the *mens rea*

4    aspect of it.  You want to excise from what the jury

5    has to find for the purposes of 951 the *mens rea* aspect

6    that would apply to a 612 violation or 618(a)

7    violation.

8             MR. TURGEON:  Yes, Your Honor, that's right.

9             However, Your Honor -- I take Your Honor's

10   point, which is, I believe, the jury does need to be

11   instructed in some way on what conduct violates FARA

12   and whether that's -- I wouldn't suggest providing the

13   jury a copy of the statute, but I think, Your Honor, we

14   should go back and try to draft an instruction that

15   adequately lays out for the jury what they would need

16   to find to determine whether the defendant's conduct

17   was in violation of specific provisions of FARA.

18             THE COURT:  All right.

19             MR. TURGEON:  Thank you.

20             THE COURT:  All right.  Counsel.

21             MR. MURPHY:  Your Honor, I think it's pretty

22   telling that during that entire presentation, the

23   government didn't offer any sort of proposed

24   instruction for how they would describe the legal

25   commercial transaction element of this.  They seem to

1  agree that they need to prove an absence of a legal

2  commercial transaction.  They say that that absence of

3  a legal commercial transaction was a violation of FARA,

4  but they haven't actually proposed any sort of

5  instruction as to how the jury should be informed as to

6  what that violation was.

7          Having to show a legal commercial transaction

8  just begs the question:  What is that illegal

9  commercial transaction?

10          THE COURT:  Right.

11          MR. MURPHY:  And the jury does need to be

12  informed as to what that is.  The fact the government

13  is here now and hasn't been able to articulate any sort

14  of standard, you know, really creates a significant

15  problem of notice.  If the government can't articulate

16  it now, how is the defendant supposed to figure that

17  out on his own back in 2016?  It's clearly a very

18  complicated standard, and there are some significant

19  notice concerns there.

20          The fact that --

21          THE COURT:  I'm looking for your competing

22  instruction as to their Instruction 29.

23          MR. MURPHY:  Just a moment, Your Honor.

24          So Defense Instruction 54 would be our

25  proposed --

1           THE COURT:  Your competing instruction.  All

2  right.

3           MR. MURPHY:  It's our proposed instruction on

4  the legal commercial transaction and the description of

5  a FARA violation.

6           THE COURT:  All right.

7           MR. MURPHY:  So Section 951 contains the

8  requirement of a legal commercial transaction.  The

9  word "legal" or "illegal" just simply begs the

10  question:  What is the legal or illegal act?

11           THE COURT:  Right.  What makes it illegal?

12           MR. MURPHY:  Exactly.

13           What the government is essentially saying

14  here is that the defendant can be prosecuted for

15  something that was not itself a violation of FARA, that

16  he can be prosecuted for something that essentially

17  doesn't require a *mens rea.*

18           We think that the requirement of an illegal

19  commercial transaction implies that there's some *mens*

20  *rea* component to that and the *mens rea* is willfulness

21  under the statute, Your Honor.

22           With respect to the government's objection to

23  Instruction No. 54A, to the first element that the

24  defendant acted in the United States as an agent of a

25  foreign principal, specifically in this case the

1  government of Turkey, I think it's very strange that

2  the government is objecting to that language.

3              Their theory of the case for the entire case

4  has been that the defendant was engaged as an agent of

5  a foreign principal, the government of Turkey.  They

6  have categorically rejected any suggestion the

7  defendant was acting on behalf of Inovo or Alptekin.

8              If the jury doesn't think that the defendant

9  was acting as an agent of the government of Turkey,

10  well, he can't be found liable under Section 951 at

11  all.  So we think this is an entirely appropriate

12  addition.

13              THE COURT:  All right.

14              MR. MURPHY:  I'm looking to see if I have

15  anything else in my notes, Your Honor.

16              So we would request -- we just received a

17  copy of this brief immediately before the hearing.  So

18  we would request an opportunity to address it and

19  respond to it this weekend.

20              THE COURT:  That's fine.

21              MR. MURPHY:  Thank you, Your Honor.

22              THE COURT:  All right.  Mr. Turgeon, let me

23  follow up with you.  Explain to me how conduct could be

24  unlawful under FARA without that conduct being willful,

25  which is what the statute says.

1          MR. TURGEON:  Your Honor, the regulations
2  that define legal commercial transaction --
3          THE COURT:  Right.
4          MR. TURGEON:  -- don't say criminally
5  prosecutable.
6          THE COURT:  No.  It says unlawful or
7  prohibited by law.
8          MR. TURGEON:  Yes, Your Honor.
9          THE COURT:  Right.
10         MR. TURGEON:  For example, the Department of
11  Justice enforces FARA civilly.  In fact, we did so
12  earlier this year.
13         THE COURT:  Right.  But that doesn't mean
14  there's no willfulness.  There's no strict liability,
15  is there, even on the civil side?
16         MR. TURGEON:  Your Honor, the *mens rea*
17  requirement for 951 is knowing, and that's what's
18  required to prove a violation of 951.  However, for the
19  legal commercial transaction aspect --
20         THE COURT:  Right.  That's what I'm focused
21  on.
22         MR. TURGEON:  Your Honor, there is no *mens*
23  *rea* requirement there.  That's because the question is
24  not whether a separate prosecution could have occurred
25  or whether there's separate liability.  The question is

1  whether the conduct was prohibited by law or not.

2          THE COURT:  Explain to me how conduct could

3  be unlawful or prohibited by law in the absence of a

4  *mens rea* aspect to it.

5          MR. TURGEON:  That's because, Your Honor,

6  there's a distinction between whether a defendant can

7  be prosecuted for something and whether the conduct

8  itself is lawful or unlawful.

9          For example, there are labeling requirements

10 in FARA.  There are requirements to disclose in advance

11 of lobbying the fact that you're lobbying for a foreign

12 principal.  There are requirements to file copies of --

13         THE COURT:  Right.  We're talking about a

14 specific part of FARA, that is the failure to disclose.

15         MR. TURGEON:  Failure to register, Your

16 Honor.

17         THE COURT:  Failure to register.

18         MR. TURGEON:  With respect, I disagree with

19 that because the conduct at issue is not simply failure

20 to disclose.  The conduct the defendant in this case

21 was doing was a violation of FARA whether or not it was

22 intended to be one.

23         So I would point, Your Honor, as well to the

24 *Manafort* case that we cite in our brief.  In that case,

25 that case made clear, I believe -- FARA prohibits

1   acting as an unregistered agent, not just failure to

2   register.  So any of those actions as a foreign agent

3   or acting as an unregistered agent, any of those

4   actions are unlawful whether or not there was a failure

5   to register apart from that.  That's what the *Manafort*

6   case held, Your Honor.

7              THE COURT:  All right.

8              MR. TURGEON:  But, Your Honor, we do take

9   your point, and we would request the chance to come

10  back with --

11             THE COURT:  Yes.  I'm having difficulty

12  understanding how you could have unlawful conduct under

13  FARA without the *mens rea* aspect to it.  Otherwise, it

14  becomes -- even on the civil side, you don't have

15  strict liability; do you?

16             MR. TURGEON:  Well, Your Honor, it's because

17  the questions are separate.  The questions of whether

18  someone is guilty of something versus whether --

19             THE COURT:  Well, what makes them guilty as

20  opposed to engaging in the act?

21             MR. TURGEON:  Your Honor, the *mens rea* is --

22  I'm speaking only of FARA.

23             THE COURT:  Right.

24             MR. TURGEON:  Under FARA, the *mens rea* is

25  what makes them guilty, but the conduct itself is

1    prohibited.   The law prohibits certain conduct, and

2    someone is guilty of it if they have the requisite *mens*

3    *rea*.   But the prohibition stands --

4               THE COURT:   I understand.   I understand the

5    point you're making.

6               MR. TURGEON:   Thank you, Your Honor.

7               THE COURT:   Anything more on that?

8               MR. MURPHY:   Briefly, Your Honor.

9               THE COURT:   Yes.

10              MR. MURPHY:   Your Honor, 612 is titled

11   Registration.   It deals with the requirement to

12   register.   That is only a violation of FARA through

13   618, which makes it a willful violation to fail to

14   register.

15              Now, the government didn't prosecute the

16   defendant under FARA.   They didn't charge him civilly

17   for violating FARA.   What they're really trying to do

18   here is to bootstrap the FARA case they didn't make

19   into a Section 951 case.   They can't just say in

20   generalized fashion that the defendant violated FARA.

21   They need some specificity into what that violation was

22   so that the jury can determine that there was a

23   violation of FARA.

24              THE COURT:   All right.

25              MR. MURPHY:   Thank you, Your Honor.

1           THE COURT:  Let's talk about the defendant's

2     instructions pertaining to advice of counsel.

3           I've read your position.  Let me hear from

4     the government on this one first as far as why it

5     wouldn't be appropriate based on what we've heard so

6     far.

7           MR. GIBBS:  Sure, Your Honor.  I think the

8     defense's instruction under certain factual scenarios

9     may well be appropriate.  This is not that case.  They

10    accurately cite to O'Malley for the advice of counsel

11    instruction, and what that says is that the defendant

12    made a full and accurate report or disclosure to this

13    attorney of all important and material facts of which

14    he had knowledge or had the means of knowing and then

15    acted strictly in accordance with the advice.

16          As we heard yesterday from Mr. Kelley, he

17    wasn't really even acting as an attorney in this case.

18    He was acting as a friend.  He knew the defendant for a

19    long period of time.  They and their wives were very

20    friendly.  They spent time together.

21          He got a call, came to the defendant's house.

22    The defendant told him he needed to file under FARA.

23    He asked him one question.  There's no evidence that

24    the defendant made a full and accurate report or

25    disclosure.

```
 1            THE COURT:  Isn't that something the jury
 2    could sort out?  In the instruction, it advises them
 3    that this only applies if under certain conditions, one
 4    of which is as you've outlined.
 5            MR. GIBBS:  Well, I suppose that's true, Your
 6    Honor.  But, again, Your Honor is the gatekeeper for
 7    these instructions and for advising the jury on the
 8    law.  It seems that factually this is so far from being
 9    an instance where --
10            THE COURT:  I'm getting tired of the gate.
11            MR. GIBBS:  I understand, Judge.  It's a
12    lonely job, I'm sure.
13            And the other issue that we have -- I agree
14    with you -- it is something the jury probably could
15    sort out.  We certainly -- I think everybody would
16    agree that we have a good jury.  I think they've been
17    very diligent.  The concern we always have is if they
18    get that instruction from Your Honor and they're
19    advised about advice of counsel.  They may read more
20    into that than is really there instead of --
21            THE COURT:  I understand.
22            MR. GIBBS:  So instead of saying, well,
23    clearly, he didn't fully disclose all of the relevant
24    facts and just dismiss it, they may say, well, Judge
25    Trenga did advise us.  Maybe we need to think about
```

1   this more.  Is there some nuance or something here
2   we're missing?
3           So, again, I don't want to --
4           THE COURT:  Well, the defense is going to
5   argue seeking out legal advice irrespective -- they can
6   talk about what they did in seeking out legal advice
7   irrespective of this instruction.  I would think it may
8   even be helpful to the government to have this kind of
9   an instruction.
10          MR. GIBBS:  That's true, Judge, but I think
11  it sort of cuts both ways.
12          THE COURT:  It does.
13          MR. GIBBS:  Again, it's that, you know, if
14  they -- they make the argument.  We make the
15  counterargument in rebuttal.
16          THE COURT:  It does.
17          MR. GIBBS:  To some extent, I think it
18  carries a little more weight when they hear the dueling
19  arguments.  Then when they're instructed on the law,
20  there is an advice of counsel instruction.
21          If I could just have one moment.
22          THE COURT:  Yes.
23      (Counsel confer.)
24          MR. GIBBS:  That's all I've got, Judge.
25          Thank you.

1                THE COURT:  All right.  Counsel.

2                MR. MURPHY:  Your Honor, counsel for the

3    government conceded that this is something that the

4    jury could and should sort out.  We think this is an

5    appropriate matter to be submitted to the jury.

6                In order to give the charge to the jury, the

7    Court does not need to make a determination that the

8    defendant did make a full recounting of the facts to

9    the attorney or that the defendant did act in good

10   faith on the advice of the attorney.  All the Court

11   needs to find here is that there is sufficient evidence

12   for a reasonable jury to make that determination on its

13   own.  We think without question there is sufficient

14   evidence for the jury to at least consider that

15   argument and to be given that charge.

16               The facts show that Mr. Kelley asked

17   questions of the defendant.  The defendant answered

18   those questions truthfully, honestly, and the defendant

19   followed Mr. Kelley's advice.  That, frankly, is all

20   that's required.

21               We don't concede that Mr. Kelley was not

22   acting as an attorney.  While he was a friend of the

23   defendant, he was giving legal advice.  He was

24   providing advice on a legal topic, whether to register

25   under the LDA versus FARA.  So the fact that he was a

1  friend we don't think is material here.

2          THE COURT:  All right.  The next item I'd

3  like to talk about is where the parties differ on the

4  definition of "materiality."  I know you use different

5  language, but it's not clear to me in substance what

6  the difference is.

7          Let me hear from the defense on this first.

8          MR. MURPHY:  Your Honor, just briefly --

9          THE COURT:  You want the security's law

10  definition basically.

11         MR. MURPHY:  Yes, that's right.  We don't

12  think that the security's law definition is anything

13  that any person could quibble with.  It is a reasonable

14  and easy-to-understand definition of the word

15  "material" that is used in courts across the country.

16         The definition that the government proposes,

17  we think, is, frankly, just difficult to understand.

18  I'm not sure how the jury is supposed to make an

19  accurate determination of what type of statement or

20  misstatement is capable of influencing government

21  action.  That's a very mirky standard here that I don't

22  think the jury would be able to apply with any sort

23  of --

24         THE COURT:  There's also no evidence of it.

25         MR. MURPHY:  There's also no evidence of

1  that, Your Honor.  That's correct.

2          But even so, we think that specificity and an

3  instruction that is easy to understand would be

4  preferable to one that may be capable of

5  misunderstanding.

6          THE COURT:  All right.

7          MR. MURPHY:  Thank you, Your Honor.

8          MR. GIBBS:  Your Honor, just a couple of

9  points I would make.  I believe that in terms of

10 materiality, a big part of the reason we're seeking the

11 instruction is the witness from the FARA unit who

12 testified, J.J. Gilday, he went through in a lot of

13 detail about the filing requirements and what is done

14 with it and how that does, in fact, influence

15 government action.  So we would submit that a

16 materiality instruction is appropriate.

17         In terms of that instruction, both parties

18 have submitted one.  I think the argument that the

19 government's instruction is confusing or difficult to

20 follow is hard to square with the fact that it's very

21 short.  I believe it's been used in this district and

22 it's been approved in the Fourth Circuit.  But it says,

23 The test of materiality is whether the false statement

24 has a natural tendency to influence a governmental

25 action or is capable of influencing a governmental

1  action.  It is not necessary for the government to
2  prove that the statement here charged actually did
3  influence a governmental action.
4           THE COURT:  How is a jury supposed to
5  evaluate whether something influences government
6  without -- there's been no testimony about -- neither
7  was the DOJ person, but he didn't talk about how
8  specific disclosures that were made would have affected
9  or did affect the government or influence the
10 government; did he?
11          MR. GIBBS:  Well, if I could just have one
12 moment, Judge.  I want to make sure I'm getting the
13 exact answer you're looking for.
14          THE COURT:  Yes.
15          MR. GIBBS:  Mr. Turgeon was actually the
16 attorney who handled Mr. Gilday, the witness.
17          THE COURT:  All right.
18          MR. GIBBS:  I think he can probably do a much
19 better job articulating that than me.
20          THE COURT:  Right.  This may be a total
21 errant thought.  But within the False Claims Act
22 environment now, we now know from the Supreme Court
23 that in order to establish materiality, you have to
24 show how the government would have, in fact, been
25 influenced by the particular nondisclosure.  But

1   there's none of that evidence here; is there?

2          MR. TURGEON:  There is, Your Honor.  In fact,

3   there are two questions that were asked of Mr. Gilday.

4   I don't recall those off the top of my head, but there

5   were two questions that I asked through which we

6   elicited testimony establishing what the government

7   does in the event certain information is missing from

8   the forms or if there's a deficiency in some way and

9   then what actions the government takes in response to

10  those deficiencies, which can include, again, going

11  from memory, suspending the ability of the registrant

12  to act on behalf of the foreign principal or sending a

13  letter --

14         THE COURT:  But that's if there's an absence

15  of information.  There was no testimony, was there,

16  along the lines of, well, because it was disclosed --

17  it was only disclosed that Turkey was the primary

18  beneficiary as opposed to being the actual foreign

19  principal, we did or didn't do something, or we viewed

20  this differently than we otherwise would have?

21         MR. TURGEON:  Your Honor, the test of

22  materiality, as explained in the instruction, has the

23  capability of influencing governmental action.

24         THE COURT:  That's my point.  How could a

25  jury determine that disclosing that Turkey was the

1    primary beneficiary as opposed to being the actual

2    principal influence government action?

3              MR. TURGEON:  Your Honor, if I'm going from

4    memory by another witness as well, the witness from the

5    Department of State testified about -- I believe

6    about -- well, I'm not going to get into details

7    because I don't want to misrepresent something.

8              THE COURT:  All right.

9              MR. TURGEON:  I believe that there was some

10   relevant testimony as to the government's use of FARA

11   disclosures from that as well.  I don't want to get

12   ahead of myself on that one.

13             THE COURT:  All right.  I guess I'm just

14   suggesting that you may be advocating a definition that

15   would impose some requirements that the evidence won't

16   carry.

17             MR. TURGEON:  Well, Your Honor, we're trying

18   to have an instruction for everything the law requires.

19             THE COURT:  Right.

20             All right.  No one could find any cases about

21   materiality within the context of FARA or 951?

22             MR. TURGEON:  I'm not aware of any, Your

23   Honor.

24             THE COURT:  All right.  Yes.

25             MR. MURPHY:  Your Honor, we didn't find any

950

1  either.

2           THE COURT:  All right.

3           MR. MURPHY:  If I could just briefly be

4  heard.

5           THE COURT:  Sure.

6           MR. MURPHY:  As Your Honor correctly noted,

7  Mr. Gilday did not testify about materiality.  He

8  didn't say that he reviewed the FARA filing for any

9  material misstatements.  He didn't check it for factual

10 accuracy, and there is no testimony that he did take

11 any action or inaction based on any specific statements

12 in the FARA filing itself.

13          In addition, Mr. Turgeon referenced a witness

14 from the Department of State.  None of us at counsel

15 table are currently able to recall any witness from the

16 Department of State.

17          THE COURT:  You're talking about DOJ?

18          MR. TURGEON:  Yes, Your Honor, the Office of

19 International Affairs.  I misspoke.

20          MR. MURPHY:  Thank you.

21          THE COURT:  All right.  Those were really the

22 principal ones that I wanted to have the benefit of

23 everybody's thoughts before I started fashioning some

24 proposed instructions.

25          Is there anything that anybody in particular

1  wants to talk about that we haven't?

2         Mr. Gibbs, you look like you're --

3         MR. GIBBS:  Well, no, Judge.  I had one or

4  two other sort of housekeeping matters after that.

5         THE COURT:  All right.  Hold on.

6         Any other instruction issues that the defense

7  wants to talk about?

8         MR. MURPHY:  One moment, Your Honor.

9         THE COURT:  You're going to have an

10 opportunity to talk about all of these again.

11        MR. MURPHY:  Your Honor, just two brief also

12 housekeeping matters relating to the jury instructions.

13 The government filed a proposed verdict form earlier

14 this morning.

15        THE COURT:  Yes.  I was going to raise that.

16        MR. MURPHY:  So we would propose just that we

17 be given an opportunity to respond and comment on that.

18        THE COURT:  That's fine.

19        MR. MURPHY:  Then, second, we had agreed upon

20 a shell for a theory of the defense outline -- or

21 instruction, rather.  The parties had agreed that at

22 the close of the evidence, the defense could supplement

23 that instruction.

24        THE COURT:  That's fine.

25        MR. MURPHY:  So we propose to do that and

1    take that up on Monday.

2              THE COURT:  That's fine.

3              MR. MURPHY:  Thank you.

4              THE COURT:  Mr. Gibbs.

5              MR. GIBBS:  Your Honor, as to the special

6    verdict form, since Count 1 is a conspiracy with two

7    objects, it seemed appropriate.  There's no particular

8    pride of authorship with that.  Obviously, Your Honor

9    will let us know if it's deemed appropriate.

10   Obviously, the defense needs to have an opportunity to

11   weigh in as well.

12             As I understand the Court's comments at the

13   beginning of the hearing, it sounded as if now that the

14   parties have both filed proposed instructions that we

15   don't agree on and then dueling memos, Your Honor will

16   come up with a set of draft instructions that the

17   parties will look at probably on Monday, and then we

18   can --

19             THE COURT:  Yes.

20             MR. GIBBS:  That's exactly how I was

21   following along.

22             THE COURT:  Okay.

23             MR. GIBBS:  Then, as I said, I had really

24   just one housekeeping matter.

25             THE COURT:  Yes.

1            MR. GIBBS:  So on Friday -- oh, no, Thursday

2    I guess.  Yesterday we handed up a memo related to the

3    Rule 29 issue.  It also dealt with the coconspirator

4    statements.

5            THE COURT:  Right.

6            MR. GIBBS:  We didn't have the benefit of the

7    transcripts from yesterday when we drafted that.  We

8    are working on adding those in as well.  So I just

9    wanted to advise the party and Your Honor that we do

10   intend to file a supplemental, hopefully by close of

11   business today, that will just update that with the

12   additional testimony.

13           THE COURT:  All right.

14           MR. GIBBS:  As part of that, I just wanted to

15   advise the Court.  I know we have a -- there's an

16   instruction that I think has been agreed upon about the

17   coconspirator statements and evidence coming in for a

18   limited purpose.  We do expect to ask the Court to

19   revisit that issue.  I know in the original order it

20   was --

21           THE COURT:  Right, and I'll rule on that.

22           MR. GIBBS:  Okay.  Great.  Thank you, Your

23   Honor.  That's all I have.

24           THE COURT:  All right.  But you all have come

25   up with an agreed-upon statement on the coconspirator

```
1   statements, you say?
2           MR. GIBBS:  Oh, no.  Just that we would like
3   the opportunity to renew our motion to --
4           THE COURT:  Right.  I understand that's
5   pending.  I'll make a definitive ruling on that at the
6   appropriate time.
7           MR. GIBBS:  Thank you, Judge.
8           THE COURT:  All right.  Anything else?
9           Yes.
10          MR. MURPHY:  Just briefly.  We intend to file
11  our own paper responding to the government's Rule 29
12  motion.
13          THE COURT:  All right.  Well, get it in and
14  I'll look at it.  The sooner the better.
15          MR. MURPHY:  Of course.  Thank you.
16          THE COURT:  Yes, Mr. MacDougall.
17          MR. MACDOUGALL:  Are we addressing
18  housekeeping matters, Your Honor?
19          THE COURT:  Yes.
20          MR. MACDOUGALL:  We've brought it up before.
21  I think the government is in agreement.  We would
22  propose just before the close of the defense's evidence
23  to read the three substitutions to the jury at a time
24  appropriate for the Court.
25          MR. GIBBS:  No objection, Judge.
```

955

```
 1              THE COURT:  How many more witnesses are you
 2  anticipating?
 3              MR. MACDOUGALL:  No more than two, and they
 4  won't be long.
 5              THE COURT:  Do you think we'll finish up
 6  Monday morning?
 7              MR. MACDOUGALL:  Yes, Your Honor.
 8              THE COURT:  All right.  Great.
 9              MR. GIBBS:  Thank you, Judge.
10              THE COURT:  All right.  Thank you.
11              The Court will stand in recess.
12              ------------------------------------
                          Time:  3:44 p.m.
13
14
15
16
17
18
19
20
21
        I certify that the foregoing is a true and
22
     accurate transcription of my stenographic notes.
23
24
                                        /s/
25                          Rhonda F. Montgomery, CCR, RPR


        Rhonda  F.  Montgomery   OCR-USDC/EDVA   (703) 299-4599
```