IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Alexandria Division*

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BIJAN RAFIEKIAN,<br><br>*Defendant*. | No. 1:18-cr-457-AJT-1 |

**GOVERNMENT'S SUPPLEMENTAL MEMORANDUM ON
"DIRECTION OR CONTROL" UNDER 18 U.S.C. § 951**

At the hearing on the defendant's motions for acquittal and a new trial, the Court asked the parties to address the "direction or control" aspect of the definition of an "agent of a foreign government" in 18 U.S.C. § 951, and suggested that § 951 adopts the common-law definition of "agency." Given that neither party has previously addressed this issue in briefing, the government submits this supplemental brief to provide the legal standard for acting as an "agent" under § 951 and to explain that § 951 does not incorporate common-law concepts of agency. The plain language of the statute defines the term "agent of a foreign government" and that definition differs from the common-law definition of "agency." Under the proper standard, the inferences necessarily made by the jury did not fall "below the threshold of bare rationality," *Coleman v. Johnson*, 566 U.S. 650, 656 (2012), and the verdict must stand.

**I.    Section 951's Definition of Agency Is Broader than the Common Law's**

"When the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (internal quotation marks omitted). Section 951 defines the term "agent of a foreign government" in a way that

1

sweeps more broadly than the specific, technical principles of common-law agency. And, in reviewing a conviction for sufficiency, "Congress's definition of 'agent' for the purpose of § 951 is the only one at issue[.]" *United States v. Dumeisi*, 424 F.3d 566, 581 (7th Cir. 2005).

Section 951 provides that "the term 'agent of a foreign government' means an individual who agrees to operate within the United States subject to the direction *or* control of a foreign government or official[.]" 18 U.S.C. § 951(d) (emphasis added). This definition is wholly distinct from the common law definition of agent. The Restatement narrowly defines "agent" as someone who has the ability to bind his or her principal. *See* Restatement (Third) of Agency § 1.01 cmt. c. Likewise, under the common law, an "employee"—as a specific type of agent—is defined as someone whose "manner and means" of action are controlled by the principal. *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751 (1989). Accordingly, agency under the common law arises exclusively in situations of "control," whereas § 951 focuses on the agreement to act and includes direction, even in the absence of control. As a result, the government was not required to prove that the defendant was subject to a foreign government's control at all; if the defendant agreed to act subject only to a foreign government's direction, he qualifies as an "agent."

Given the statutory definition of "agent," § 951 applies broadly. For example, § 951 does not require that the foreign government or official be the entity to provide the specific direction—an intermediary can do so. The statute also does not require that the defendant agree with the foreign government or official directly—an individual's agreement with an intermediary "to operate subject to the direction or control of a foreign government or official" qualifies him or her as an agent under the text of the statute. *See, e.g.*, *United States v. Nicholson et al.*, 3:09-cr-00040 (D. Or. Dec. 8, 2010) (defendant Nathaniel Nicholson sentenced on § 951 conspiracy

charge despite agreeing only with intermediary and never having direct contact with foreign officials); *United States v. Mak*, 8:05-cr-00293, 2008 WL 11348332, at *3 (C.D. Cal. Mar. 24, 2008) (defendant Rebecca Chiu sentenced on substantive § 951 charge despite agreeing only with intermediary and never having direct contact with foreign officials), *aff'd sub nom. United States v. Chi Mak*, 683 F.3d 1126 (9th Cir. 2012); *see also United States v. Truong*, 629 F.2d 908, 911-12 (4th Cir. 1980) (affirming § 951 convictions under same circumstances); *United States v. Boyce*, 594 F.2d 1246, 1248–49 (9th Cir. 1979) (same), *cert. denied*, 444 U.S. 855. In addition, § 951 convictions have been affirmed in cases where the foreign government's direction was limited to a communication of what the foreign government wanted, and did not extend to the manner or means of execution. *See, e.g.*, *Chi Mak*, 683 F.3d 1126; *United States v. Chung*, 659 F.3d 815 (9th Cir. 2011).

As a result, requiring the demonstration of a common-law agency relationship goes beyond the plain language of the statute. Nor does the common law's employee/independent contractor framework govern whether someone satisfies § 951's statutory definition of "agent." In sum, limiting "agent" under § 951 to the common-law definition of "employee" would be error because (1) Section 951 affirmatively and broadly defines what it means to be "an agent of a foreign government," making resort to the common law unnecessary; and (2) focusing exclusively on common-law "control" would read the word "direction" out of the statute. *See FCC v. Pacifica Foundation*, 438 U.S. 726, 739–40 (1978) ("Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise[.]").

## II. Congress Intended § 951 To Be Applied Broadly

Applying common law agency principles here would thwart Congress's intent in enacting § 951. In *Nationwide Mutual Ins. Co. v. Darden*, the Supreme Court held a term should not be given its common law meaning if such a construction "would thwart the congressional design or lead to absurd results." 503 U.S. 318, 323 (1992); *see also e.g.*, *United States v. Hassouneh*, 199 F.3d 175, 182 (4th Cir. 2000) (declining to apply common law definition because "there are considerable grounds for inferring that Congress intended a meaning of "maliciously" different from the common law definition"); *Korea Shipping Corp. v. New York Shipping Ass'n-Int'l Longshoremen's Ass'n Pension Tr. Fund*, 880 F.2d 1531, 1537 (2d Cir. 1989) (affirming trial court's decision to adopt a non-common-law definition "that more carefully implements the statute's clear objectives" because "it is the task of judges to start with the language of a statute and to reach a judgment that applies that language to a particular set of circumstances in a manner consistent with the statute's stated objectives").

As described in greater detail in the government's Reply in Opposition to the Defendant's Proposed Legal Commercial Transaction Jury Instruction, concerns about then-lawful German efforts to influence U.S. opinion about choosing sides in World War I prompted Congress to enact the Espionage Act of 1917, which included the prohibitions currently found in § 951. *See* Dkt. 348, at 1-4. In so doing, Congress sought to guarantee the U.S. government and public's ability to identify efforts by foreign governments to shape public discourse in the United States and to influence U.S. government policy.

As the Eleventh Circuit explained in *United States v. Duran*, these principles provide the common foundation for both § 951 and the Foreign Agents Registration Act (FARA), and evidence Congress's intent for § 951 to encompass a broad range of conduct:

4

> [O]ver time, the original 1917 Act broke off into three directions to form three separate registration or notification statutes [§ 951, FARA, and 50 U.S.C. § 851] dealing with agents of foreign governments. . . . The limited legislative history persuasively suggests that Congress chose to separate Section 951 and treat it as a catch-all statute that would cover all conduct taken on behalf of a foreign government.

596 F.3d 1283, 1294–95 (11th Cir. 2010); *see also United States v. Manafort*, 318 F. Supp. 3d 1, 4 (D.D.C. 2018) ("[T]he language of [§ 951 and FARA] is quite similar. These laws are not just about paperwork; their object is to ensure that no person acts to advance the interests of a foreign government or principal within the United States unless the public has been properly notified of his or her allegiance.") (citations omitted). As the Eleventh Circuit noted in *Duran*, "Section 951 sweeps broadly because the Government has an interest in knowing the identity of those acting on behalf of a foreign government within the United States, whether the action is legal or not." *Duran*, 596 F.3d at 1295.

A common-law agent is one who "acts on behalf of another person with the power to affect the legal rights and duties of the other person." Restatement (Third) of Agency § 1.01 cmt. c; *see also Reid*, 490 U.S. at 751 ("In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished."); *Cilecek v. Inova Health Sys. Servs.*, 115 F.3d 256, 260 (4th Cir. 1997) ("At root, the distinction at common law between an employee and an independent contractor rests on the degree of control exercised by the hiring party."). As the Restatement notes, a common-law agency relationship "always contemplates three parties—the principal, the agent, and the third party with whom the agent is to deal." Restatement § 1.01 cmt. c (internal quotation marks omitted). Thus, concepts designed to clarify when a third party can rely on an agent's authority to bind their principal have no application in a statute designed to prohibit *covert* action on behalf of foreign governments. Indeed, individuals who lack the ability

5

to bind their principals are routinely convicted under § 951. *See, e.g.*, *United States v. Chung*, 659 F.3d 815, 823–24 (9th Cir. 2011); *United States v. Butina*, No. 1:18-cr-218 (D.D.C. Dec. 13, 2018); *United States v. Soueid*, No. 1:11-CR-494 (E.D. Va. Oct. 28, 2011) (Hilton, J.).

In view of these considerations, the Second Circuit has expressly rejected the suggestion that "agency" under FARA should be assessed using common law agency principles. In *Attorney General v. Irish Northern Aid Committee*, the Second Circuit held that the considerations underlying the common law definition of agency are irrelevant in the context of foreign agent transparency statutes:

> We agree that the agency relationship sufficient to require registration need not . . . meet the standard of the Restatement (Second) of Agency with its focus on "control" of the agent by the principal. Control is an appropriate criterion for a determination of common law agency because the agent contemplated by the Restatement has the power to bind his principal. In determining agency for purposes of the Foreign Agents Registration Act, however, our concern is not whether the agent can impose liability upon his principal but whether the relationship warrants registration by the agent to carry out the informative purposes of the Act.

668 F.2d 159, 161 (2d Cir. 1982); *see also RM Broad., LLC v. United States Dep't of Justice*, 379 F. Supp. 3d 1256, 1262 (S.D. Fla. 2019) (applying *Attorney General v. Irish Northern Aid Committee* and finding an agency relationship under FARA notwithstanding a contract that expressly disclaimed an agency relationship).[1] Likewise, analyzing similar "direction or control"

---

[1] The FIG-Inovo contract does not govern whether the defendant was an agent under § 951, or the scope of any such agency. First, parties cannot contract away a statutory requirement. *E.g.*, *Mitchell v. Turner*, 286 F.2d 104 (5th Cir. 1960). Even common-law agency principles cannot be evaded based upon a contractual provision disclaiming an agency relationship. *See* Restatement (Third) of Agency § 1.02 (contracting parties characterization of their relationship is not dispositive); *see also United States v. German-American Vocational League, Inc.*, 153 F.2d 860, 864 (3d Cir. 1946) (holding that agency relationships under FARA are not limited to those established by "express oral or written agreements").

Second, the evidence at trial reveals that the defendant's agreement with Alptekin and the Turkish officials was not confined to the terms of the contract signed on September 8, 2016, which listed August 15, 2016 as the agreement's effective date. GX 151B. On September 3, 2016, the defendant told

language, the Fourth Circuit held—without any reference to common-law agency—that merely knowing an individual was passing classified information to a foreign official was sufficient to prove knowledge that the individual was acting under that foreign official's direction or control and was therefore an agent of a foreign government. *See United States v. Fondren*, 417 F. App'x 327, 332–33 (4th Cir. 2011).

Given the statutes' common origin and unity of "informative purposes," the considerations that render common law agency principles inapplicable to FARA render them equally inapplicable to § 951. Like FARA, the context of § 951, including its purpose and legislative history, indicates Congress's intent to proscribe a broad range of conduct. Limiting "direction or control" to the common-law definition of "employee" would thwart Congress's design. *See Darden*, 503 U.S. at 323; *Hassouneh*, 199 F.3d at 182.

## Conclusion

In its previous filings and at argument, the government has identified substantial evidence demonstrating that the defendant knowingly agreed to operate subject to Turkey's direction or control. Cabinet-level Turkish government officials personally directed the defendant and FIG about the project, the defendant sought to clarify their expectations, the project "kick-off" meeting did not occur until the defendant received that direction from foreign officials, and the defendant waged a campaign to get the officials the results they sought from him on the central for-

---

Alptekin, "We have been at work on this engagement since July 31st." GX 22B. In addition, the first kickback payment was made to Alptekin on September 13, 2016—four days after the FIG-Inovo contract was signed. GX 25A. These acts were clearly pursuant to one or more agreements not reflected in the FIG-Inovo contract.

7

eign policy dispute between the United States and Turkey. The jury soundly rejected the proposition that the defendant believed he was acting subject only to Alptekin's direction. Drawing all rational inferences in the government's favor, the jury's judgment and verdict must stand.

Respectfully submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

_____/s/_____
Evan N. Turgeon
Trial Attorney
Counterintelligence and Export
    Control Section
National Security Division
United States Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 353-0176
evan.turgeon@usdoj.gov

By: _____/s/_____
Aidan Taft Grano
New York Bar No. 5216585
John. T. Gibbs
Virginia Bar No. 40380
James P. Gillis
Virginia Bar No. 65055
Assistant United States Attorneys
United States Attorney's Office for the Eastern
    District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
Tel.: (703) 299-3700
Fax: (703) 299-3981
aidan.grano@usdoj.gov
james.p.gillis@usdoj.gov
john.gibbs@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2019, I electronically filed the foregoing using the CM/ECF system, which will send a notification of such filing to all counsel of record.

      /s/
Evan N. Turgeon
Trial Attorney
U.S. Department of Justice