UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | |
| v. : | Criminal Case No. 1:18-CR-457 (AJT) |
| : | |
| BIJAN RAFIEKIAN, et al. : | |

**DEFENDANT RAFIEKIAN'S RESPONSE TO THE GOVERNMENT'S SUPPLEMENTAL MEMORANDUM ON "DIRECTION OR CONTROL"**

Defendant Bijan Rafiekian, through counsel, respectfully submits this response to the Government's Supplemental Memorandum on "Direction or Control" Under 18 U.S.C. § 951 [ECF No. 370].

**I.    Section 951's Definition of "Agent" Incorporates Common Law Principles**

Section 951's definition of "agent of a foreign government," which borrows the core language of common-law agency, indicates congressional intent both to incorporate common-law principles into judicial applications of the statute and to narrow the statute's scope.

1. As originally enacted in 1948, Section 951 did not supply a definition of "agent of a foreign government," instead providing in full:

> Whoever, other than a diplomatic or consular officer or attaché, acts in the United States as an agent of a foreign government without prior notification to the Secretary of State, shall be fined not more than $5,000 or imprisoned not more than ten years, or both.

Pub. L. No. 80-772, 62 Stat. 683, 743 (1948); *see United States v. Truong Dinh Hung*, 629 F.2d 908, 920 (4th Cir. 1980) (noting that the term "agent" under this version of the statute "is a readily understandable term which provides adequate notice of the conduct proscribed by statute"). That indicated Congress's intent to borrow the common law meaning of "agent," because courts presume that, "absent contrary indications, Congress intends to adopt the common law definition

1

of statutory terms." *United States v. Shabani*, 513 U.S. 10, 13 (1994); *see Stokeling v. United States*, 139 S. Ct. 544, 551 (2019) ("[I]f a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it.") (alteration in original).

In 1984, Congress amended Section 951 to define "agent of a foreign government" for the first time. *See* Pub. L. No. 98-473 § 1209, 98 Stat 1837, 2164 (1984). As relevant here, and subject to various exemptions, a foreign "agent" is "an individual who agrees to operate within the United States subject to the direction or control of a foreign government." 18 U.S.C. § 951. That language, while not identical to the common law, clearly echoes the common-law definition, which likewise incorporates a similar agreement, direction, and control framework. Thus, the Restatement (Second) Agency—*i.e.*, the latest version when Section 951 was amended in 1984— defines agency as "the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Restatement (Second) of Agency § 1 (1958). That same "direction or control" framework is reflected in Fourth Circuit case law. *See, e.g.*, *Lilly v. John Roane, Inc.*, 337 F.2d 379, 380 (4th Cir. 1964) ("The District Judge held that the officials . . . *did not act under the direction or the control* of the defendant. We agree with him that the record shows no agency relationship, and that summary judgment for the defendant was appropriate.") (emphasis added); *see also United States v. Eleazer*, 177 F.2d 914, 916 (4th Cir. 1949) ("The test of one's liability for the act or omission of his alleged servant is his right and power to direct and control his imputed agent[.]"); *P. F. Collier & Son Distrib. Corp. v. Drinkwater*, 81 F.2d 200, 202 (4th Cir. 1936) (same).

The government, relying on a version of the Restatement published in 2006, contends that Section 951's definition is "wholly distinct" from the common law definition, which supposedly

requires both direction *and* control. Gov't Br. 2 (citing Restatement (Third) of Agency § 1.01 cmt. c). But that is a false distinction. The government fails to explain the meaningful difference between those intimately linked terms, *i.e.*, between one who agrees to operate subject to the "control" of a foreign government versus one who agrees to operate subject to its "direction." In fact, the Restatement (Second) makes clear that there is no such distinction, as a principal includes

> both a person who has *directed* another to act on his account in business dealings or to represent him in hearings or proceedings, *but who has no control or right of control over the other's physical conduct*, and also a person who employs another to act in his affairs, having such *control or right to control over his conduct* that the other is termed a servant, whether or not he renders merely manual service.

Restatement (Second) of Agency § 1, cmt. d (1958) (emphasis added). Even the section of the Restatement (Third) the government cites makes clear that a principal's ability to give "direction" to the agent is a fundamental component of common law agency. *See* Restatement (Third) Agency § 1.01, cmt. (f)(1) ("[A] principal has the right to give interim instructions or directions to the agent once their relationship is established.").

The government further suggests that Section 951—apparently also unlike the common law—"focuses on the agreement to act." Gov't Br. at 2. That is wrong too. The common law requires the existence of a mutual "agreement" to act as principal and agent—without such agreement, there is no agency relationship. *See* Restatement (Second) of Agency § 1 ("manifestation of consent"); *see id.* cmt. a ("The principal must in some manner indicate that the agent is to act for him, and the agent must act or agree to act on the principal's behalf and subject to his control."); *id.* § 15 ("An agency relation exists only if there has been a manifestation by the principal to the agent that the agent may act on his account, and consent by the agent so to act."); *see also Eital v. Schmidlap*, 459 F.2d 609, 614 (4th Cir. 1972) ("An agency relationship arises from

3

the agreement or consent of the parties that one shall act as the agent of the other; the intention of the parties is the significant element in determining whether the relationship exists.").

2. Contrary to the government's argument that Section 951 applies "broadly" (Gov't Br. at 2), Congress adopted a narrower definition of agency than the common law. Specifically, Congress first approved a definition congruent with the preexisting common-law definition, but then carved out large swaths of individuals who would otherwise qualify under the common-law definition—including (i) any publicly acknowledged officials and representatives of foreign governments, (ii) any of their staff and representatives, and, as most relevant, (iii) "any person engaged in a legal commercial transaction." 18 U.S.C. § 951(d)(1)-(4). If anything, that amendment indicates Congress's intention that the phrase "agent of a foreign government" should be construed more narrowly than—or at least consistently with—the common law definition.

Nothing in the legislative history indicates that Congress intended to "broad[en]" the definition of "agent" beyond its original common law meaning. *See, e.g., Communist Bloc Intelligence Gathering Activities on Capitol Hill: Hearing on S. 1959 and S. 1963 Before the S. Subcommittee on Security & Terrorism*, 97th Cong. (1982). Instead, as this Court has already observed, "Congress added subsection (d) to Section 951 in 1984 in response to . . . executive and judicial branch constitutional concerns about an overbroad definition of the word 'agent.'" *United States v. Rafiekian*, No. 18-CR-457, 2019 WL 3021769, at *12 (E.D. Va. July 9, 2019). In other words, Congress wanted to cabin the overbroad "agent" definition by "excluding from the notification requirement several classes of individuals who are presently covered"—not broaden it to an even wider swath of possible agents. *See* S. Rep. No. 98-225, at 415 (1983) (stating that the amendment was designed to "limit[ ] the coverage of the statute by focusing only on those in whom the United States government has a necessary interest").

4

The government's cited authority does not support a broad reading of Section 951 that is "wholly distinct" from common law agency principles. The government's citation of *United States v. Dumeisi*, 424 F.3d 566, 581 (7th Cir. 2005) for the proposition that "Congress's definition of 'agent' for the purpose of § 951 is the only one at issue," is misleading. That case did not consider whether Section 951's definition of "agent" incorporated common law agency principles, but instead rejected the defendant's argument that a *foreign government's* own classification of the defendant as a "source" rather than an "agent" proved that he was not an "agent" under the statute. *Id.* ("Dumeisi's protestations notwithstanding, it is irrelevant that the [Iraqi Intelligence Service] itself considered Dumeisi a 'source' as opposed to a fully vetted 'agent.' Congress's definition of 'agent' for the purpose of § 951 is the only one at issue here, and ample evidence was elicited at trial to satisfy that definition.").[1]

Unable to proffer relevant *Section 951* authority, the government cites cases discussing the definition of "agent" under FARA—a statute under which the government conspicuously opted *not* to charge Rafiekian.[2] But FARA defines "agent of a foreign principal"— itself a much broader

---

[1] The government cites a number of cases that it claims support its theory that a defendant may be convicted under Section 951 based on dealings through an intermediary, rather than direct dealings with a foreign government. None of those cases squarely addressed this issue, and none of them analyzed the definition of "agent" in the context of the common law or otherwise. *United States v. Mak* did not discuss Section 951 at all, No. 05 Cr. 00293, 2008 WL 11348332 (C.D. Cal. Mar. 24, 2008), *aff'd*, 683 F.3d 1126 (9th Cir. 2012). *United States v. Truong Dinh Hung*, 629 F.2d 908 (4th Cir. 1980) pre-dated the 1984 amendments to Section 951. *United States v. Chung*, 659 F.3d 815 (9th Cir. 2011) was a case in which the evidence showed the defendant received directions and requests directly from a Chinese government official, and the defendant actually travelled to China—no such evidence is presented in Rafiekian's case. *See id.* at 823-24. In any event, the government presented no substantial evidence that Alptekin acted as an intermediary between FIG and the Turkish government, or that Rafiekian agreed to act at Turkey's direction or control. The government, moreover, has conceded that even if Alptekin was acting on behalf of the government of Turkey, that would not be sufficient standing alone to establish that *Rafiekian* agreed to operate subject to the direction and control of Turkey. Hr'g Tr. 18:15-19:7 (Sept. 13, 2019).

[2] *E.g.*, *United States v. Duran*, 596 F.3d 1283 (11th Cir. 2010); *United States v. Manafort*, 318 F. Supp. 3d 1 (D.D.C. 2018); *Att'y Gen. v. Irish N. Aid Comm.*, 668 F.2d 159 (2d Cir. 1982); *RM Broad., LLC v. United States Dep't of Justice*, 379 F. Supp. 3d 1256 (S.D. Fla. 2019).

term than "agent of a foreign *government*," 18 U.S.C. § 951(d) (emphasis added)—in far more sweeping terms than either Section 951 or the common law, as

> any person who acts as an agent, representative, employee, or servant, or any person who acts in any other capacity at the order, request, or under the direction or control, of a foreign principal or of a person any of whose activities are directly or indirectly supervised, directed, controlled, financed, or subsidized in whole or in major part by a foreign principal . . . . [or] any person who agrees, consents, assumes or purports to act as, or who is or holds himself out to be, whether or not pursuant to contractual relationship, an agent of a foreign principal . . . .

22 U.S.C. § 611(c). By its terms, FARA's definition encompasses not only persons acting under the "direction or control" of a "foreign principal," but also persons acting pursuant to a principal's "request," persons "indirectly supervised," and persons whose activities are merely "financed" or "subsidized in whole or in major part" by a foreign principal.[3] None of these terms are present in Section 951; nor would such facts, standing on their own, be sufficient to prove agency under the common law. Indeed, in its decision holding that FARA's definition of "agent" differed from the common law, the Second Circuit specifically focused on FARA's use of the word "request." *See Att'y Gen. of U.S. v. Irish N. Aid Comm.*, 668 F.2d 159, 161 (2d Cir. 1982) ("[I]t is sufficient to establish agency under the Act that defendant is a 'representative' of the IRA, or acts as its 'request.'"). In addition, unlike both Section 951 and common law agency, a person can be an "agent" under FARA without any *agreement* to act under the principal's direction or control. *See* 22 U.S.C. § 611(c)(1) (referring to anyone who "acts" as an agent, while omitting any reference to an "agreement"); *see also* Hr'g Tr. 22:7-9 (government admitting that "[t]here is a difference between the definition of 'agent' for FARA and 951 purposes").

---

[3] FARA even purports to reach "any person who acts in any . . . capacity at the order, request, or under the direction or control . . . of a person any of whose activities are . . . *indirectly* supervised, directed, controlled, financed, or subsidized in whole or *in major part* by a foreign principal." The court need not consider whether such a broad definition may be vague and overbroad and hence invalid if applied in a criminal case.

6

The government also relies on a case construing yet another term from a different statute—"agent *or representative* of any foreign government," 50 U.S.C. § 783(a) (emphasis added)—to argue that awareness that a third party passed along classified materials to a foreign government was sufficient to prove an individual's knowledge that the third party was an "agent or representative" of that government. *United States v. Fondren*, 417 F. App'x 327 (4th Cir. 2011). Not only did *Fondren*, unlike this case, involve surreptitious transmission of classified materials, the government neglects to mention that this Court *granted a judgment of acquittal on the Section 951-related counts*. *See id.* at 331. *Fondren* thus hardly supports the government.

## II. The Government Failed To Introduce Substantial Evidence That Rafiekian Was An Agent of Turkey

Regardless of whether the court takes into account common law agency principles, the government failed to elicit substantial evidence that Rafiekian agreed to act subject to the direction or control of the government of Turkey. When common law principles are properly applied to Section 951, the government's failure of proof is even clearer.

First, a conviction under Section 951 requires substantial evidence that Rafiekian "agree[d]" to act subject to the direction or control of Turkey. 18 U.S.C. § 951(d). The common law of agency provides important context for assessing the existence of such "agreement" under Section 951. In particular, under the common law, an "agreement" to act as an agent is a two-way street requiring the consent of *both* the agent *and* the principal. As explained above, "[a]n agency relation exists only if there has been a manifestation by the principal to the agent that the agent may act on his account, *and* consent by the agent so to act." Restatement (Second) of Agency § 15 (1958) (emphasis added). The record contains no evidence of any such agreement, including any evidence that Turkey manifested its consent that Rafiekian or FIG could act on its behalf. The *only* evidence that Turkey even communicated with Rafiekian or FIG is McCauley's testimony

7

regarding the September 19 meeting, and his testimony showed that Turkey made no requests to FIG—in fact, FIG's work was not even discussed. Trial Tr. 440:14-17, 442:1-3 (McCauley) (July 17, 2019), ECF No. 330. Alptekin's hearsay statements also do not prove Turkey's consent to an agency relationship. Those statements are inadmissible to prove the truth of what Alptekin said, and they are inadmissible to prove the truth of what Turkey told Alptekin. And because "[a] person is not an agent merely from the fact that he believes he has been authorized to act as agent for another or purports to act as such," Restatement (Second) of Agency § 15, cmt. a (1958), they cannot constitute substantial evidence to support a "mistaken belief" theory, either.

Second, the common law also provides guidance on the interpretation of the word "direction." Although the government believes that "direction" means something less strict than "control," as noted the government cites no authority for this. As the government conceded at argument (and as Section 951's implementing regulations make clear), at a minimum 'direction' must mean something more than merely acting "on behalf of" someone. *See* Hr'g Tr. 25:15-20 (Sept. 13, 2019); *see also* 28 C.F.R. 73.1 ("agent" means individuals who both "act[] as representatives of, or on behalf of, a foreign government or official," *and* do so at "the direction or control of that foreign government or official"). But the government does not even attempt to offer a definition of either "direction" or "control."

The common law of agency fills this gap. Specifically, under the common law, a principal's "direction" is *binding* on the agent. The agent is duty-bound to follow a principal's "direction" and cannot act contrary to it. *See* Restatement (Second) Agency § 14 cmt. a (1958) ("[T]he agent is subject to a duty not to act contrary to the principal's directions."); *id.* cmt. b (noting that the principal "has power to give lawful directions which the agent is under a duty to obey . . . ."). There is no evidence that Turkey gave any binding direction to Rafiekian or FIG, or that Turkey

and Rafiekian ever agreed that FIG would be subject to binding direction from Turkey.[4] In fact, the evidence showed that even Alptekin did not give binding "direction" to Rafiekian or FIG, for as McCauley testified, the requests Alptekin made were all rejected.[5] That undisputed evidence reveals a commercial consulting relationship, not a secret foreign-agent relationship.

Third, the common law provides guidance on the significance of the language of the parties' written agreement and an alleged agent's failure to abide by the alleged principal's direction or control. In particular, under the common law, although the words of a parties' agreement do not necessarily control the legal nature of the relationship, "[i]f the existence of an agency relation is not otherwise clearly shown . . . , the fact that it is understood that the person acting is not to be subject to the control of the other as to the manner of performance determines that the relation is not that of agency." Restatement (Second) of Agency § 14, cmt. b (1958). Here, at a minimum, the government has not "clearly shown" the existence of an agency relationship between Turkey and Rafiekian. Moreover, the evidence is clear that Rafiekian and Alptekin agreed that FIG would *not* be subject to Alptekin's or Inovo's control. Instead, the Independent Advisory Services Agreement between FIG and Inovo stated that FIG was "not an employee or agent" of Inovo and instead was an "independent contractor." GEX 151B. And, as noted above, there was

---

[4] Nor is there any evidence that Turkey offered even *non*-binding guidance to FIG, in light of McCauley's unrebutted testimony that the FIG engagement was not even discussed at the September 19 meeting. Thus, even if the Court does not take the common law into account, the government still failed to offer substantial evidence of Turkish "direction."

[5] McCauley testified that Alptekin wanted FIG to get "dirt" on Gulen, conduct video and audio surveillance on Gulen and his associates, and prove that Gulen was a "terrorist." Trial Tr. 424:2-425:12, 442:13-23 (July 17, 2019), ECF No. 330. FIG rejected each of these requests and conducted no such work. *Id.* at 444:20-22 ("Q: So every request that he [Alptekin] made of you in your presence, you basically rejected, correct? A: Correct, yes, sir."). Even on the goal that Turkey and Alptekin clearly shared, the extradition of Gulen, FIG disagreed and explicitly recommended that the request for extradition be withdrawn. Trial Tr. 525:7-526:24, 528:13-16 (July 17, 2019), ECF No. 331 (discussing FIG's recommendation to withdraw extradition request); GEX 43B at 2 (same). For this reason, Rafiekian's case is distinguishable from *RM Broad., LLC v. United States Dep't. of Justice*, 379 F. Supp. 3d 1256 (S.D. Fla. 2019), where the evidence showed that the plaintiff was "required to perform various acts" for the foreign principal. *Id.* at 1261.

also ample evidence in the record that Alptekin repeatedly asked FIG to perform tasks that FIG then refused to perform. Under the common law, these facts show that FIG and Inovo did not intend an agency relationship. Because the government's theory is that Alptekin was merely an intermediary between Turkey and Rafiekian, these facts equally discredit the existence of an agency relationship in which Turkey was the principal.

## CONCLUSION

For the foregoing reasons, as well as the reasons set forth in Rafiekian's prior filings, the Court should grant Rafiekian's motion for a judgment of acquittal.

Dated: September 20, 2019

Respectfully submitted,

*/s/*_____
Mark J. MacDougall (*Pro Hac Vice*)
Stacey H. Mitchell (*Pro Hac Vice*)
James E. Tysse (VA Bar #73490)
John C. Murphy (*Pro Hac Vice*)
Adam A. Bereston (*Pro Hac Vice*)
Samantha J. Block (*Pro Hac Vice*)
*Counsel for Bijan Rafiekian*
Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 887-4000
Fax: (202) 887-4288
E-mail: mmacdougall@akingump.com
        shmitchell@akingump.com


*/s/*_____
Robert P. Trout (VA Bar # 13642)
*Counsel for Bijan Rafiekian*
Trout Cacheris & Solomon PLLC
1627 Eye Street, NW
Suite 1130
Washington, DC 20006
Telephone: (202) 464-3311
Fax: (202) 463-3319
E-mail: rtrout@troutcahceris.com

**CERTIFICATE OF SERVICE**

I hereby certify that, on the 20th day of September 2019, true and genuine copies of Defendant Rafiekian's Response To The Government's Supplemental Memorandum On "Direction Or Control" were sent via electronic mail by the Court's CM/ECF system to the following:

> James P. Gillis
> John T. Gibbs
> Evan N. Turgeon
> U.S. Attorney's Office (Alexandria-NA)
> 2100 Jamieson Avenue
> Alexandria, VA 22314
> Telephone: (703) 299-3700
> Email: james.p.gillis@usdoj.gov
> john.gibbs@usdoj.gov
> evan.turgeon@usdoj.gov

/s/
Robert P. Trout (VA Bar # 13642)