**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | **Criminal Case No. 1:18-CR-457-AJT-1** |
| | : | |
| BIJAN RAFIEKIAN, et al. | : | |

**DEFENDANT RAFIEKIAN'S MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION FOR A NEW TRIAL PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 33**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT................................................................................................1

BACKGROUND ...................................................................................................................2

ARGUMENT .......................................................................................................................7

I.      THE INADEQUATE DISCLOSURE AND IMPROPER USE OF CLASSIFIED
        EVIDENCE DENIED RAFIEKIAN A FAIR TRIAL ......................................................7

        A.      The Classified Information Procedures Act............................................8

        B.      The Government Violated CIPA and Misused CIPA Evidence............................10

        C.      The Court Should Order Disclosure of the Underlying Classified Materials........13

        D.      Rafiekian Properly Raised His Arguments Related to CIPA ................................14

II.     THE EVIDENCE WEIGHED STRONGLY AGAINST THE JURY'S VERDICT..........16

III.    THE GOVERNMENT IMPROPERLY SHIFTED THE BURDEN TO
        RAFIEKIAN TO PROVE HIS INNOCENCE ................................................................23

CONCLUSION....................................................................................................................26

# TABLE OF AUTHORITIES

CASES:

*Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc.*,
    33 F.3d 390 (4th Cir. 1994) .................................................................................15

*Eagle Servs. Corp. v. H20 Indus. Servs.*, *Inc.*,
    No. 2:02CV36PRC, 2005 WL 1429279 (N.D. Ind. June 8, 2005) .........................15

*Girl Scouts of Middle Tenn., Inc. v. Girl Scouts of the U.S., Inc.*,
    No. 3:12-CV-00575, 2013 WL 1736643 (M.D. Tenn. Apr. 19, 2013)....................15

*Greer v. United States*,
    938 F.3d 766 (6th Cir. 2019) ...............................................................................15

*In re Terrorist Bombings of U.S. Embassies in E. Africa*,
    552 F.3d 93 (2d Cir. 2008)...................................................................................14

*In re Winship*,
    397 U.S. 358 (1970)........................................................................................23, 24

*Jencks v. United States*,
    353 U.S. 657 (1957)..............................................................................................10

*Lismont v. Alexander Binzel Corp.*,
    No. 2:12-CV-592, 2013 WL 12098260 (E.D. Va. June 6, 2013)....................14, 15

*Missouri v. Frye*,
    566 U.S. 134 (2012)..............................................................................................10

*Roviaro v. United States*,
    353 U.S. 53 (1957)................................................................................................10

*Sprague v. Ticonic Nat'l Bank*,
    307 U.S. 161 (1939)..............................................................................................23

*United States v. Abu Ali*,
    528 F.3d 210 (4th Cir. 2008) ........................................................................ *passim*

*United States v. Arrington*,
    757 F.2d 1484 (4th Cir. 1985) ..............................................................................17

*United States v. Beckham*,
    968 F.2d 47 (D.C. Cir. 1992) ................................................................................15

*United States v. Bennett*,
    874 F.3d 236 (5th Cir. 2017) ....................................................................24, 25, 26

*United States v. Blakey*,
    14 F.3d 1557 (11th Cir. 1994) ............................................................................24

*United States v. Bonilla-Mungia*,
    422 F.3d 316 (5th Cir. 2005) ............................................................................15

*United States v. Campbell*,
    977 F.2d 854 (4th Cir. 1992) ............................................................................17

*United States v. Carthorne*,
    726 F.3d 503 (4th Cir. 2013) ............................................................................15

*United States v. Fernandez*,
    913 F.2d 148 (4th Cir. 1990) ................................................................ *passim*

*United States v. Head*,
    340 F.3d 628 (8th Cir. 2003) ............................................................................15

*United States v. Jennings*,
    438 F. Supp. 2d 637 (E.D. Va. 2006) ............................................................21
    496 F.3d 344 (4th Cir. 2007) ............................................................................22

*United States v. Libby*,
    429 F. Supp. 2d 18 (D.D.C. 2006) ..................................................................13
    429 F. Supp. 2d 46 (D.D.C. 2006) ..................................................................14

*United States v. Lighty*,
    616 F.3d 321 (4th Cir. 2010) ............................................................................26

*United States v. Millender*,
    970 F.3d 523 (4th Cir. 2020) ............................................................................16

*United States v. Moussaoui*,
    365 F.3d 292 (4th Cir. 2004) ............................................................................10
    382 F.3d 453 (4th Cir. 2004) ......................................................................9, 13

*United States v. Rafiekian*,
    No. 1:18-CR-457-AJT-1, 2019 WL 4647254 (E.D. Va. Sept. 24, 2019) ........................ *passim*
    991 F.3d 529 (4th Cir. 2021) ................................................................ *passim*

*United States v. Saint Louis*,
    889 F.3d 145 (4th Cir. 2018) ..........................................................23, 24, 25, 26

*United States v. Sandoval-Gonzalez*,
    642 F.3d 717 (9th Cir. 2011) ............................................................................24

*United States v. Sedaghaty*,
    728 F.3d 885 (9th Cir. 2013) ............................................................................12

*United States v. Shipp*,
    409 F.2d 33 (4th Cir. 1969) ...........................................................................17

*United States v. Simon*,
    964 F.2d 1082 (11th Cir. 1992) ....................................................................24

*United States v. Smith*,
    780 F.2d 1102 (4th Cir. 1985) .....................................................................10

*United States v. Souder*,
    436 F. App'x 280 (4th Cir. 2011) ........................................................17, 18, 21

*United States v. Wolff*,
    892 F.2d 75 (4th Cir. 1989) .........................................................................18

**STATUTES:**

18 U.S.C. app. 3
    §§ 1-16 ...................................................................................................8
    § 1(a) .....................................................................................................8
    § 4 .........................................................................................................9
    § 6(a) .....................................................................................................9
    § 6(c)(1) .............................................................................................9, 10
    § 6(e) .....................................................................................................9

18 U.S.C.
    § 951 .....................................................................................................3

**OTHER AUTHORITIES:**

Fed. R. Crim. P.
    16(a)(1)(E) ...........................................................................................10
    29(b) .........................................................................................2, 17, 20
    33(a) .......................................................................................................1
    33 ..........................................................................................................21

S. Rep. No. 96–823, 96th Cong., 2d Sess. 1-4 (1980), *as reprinted in* 1980
    U.S.C.C.A.N. 4294-4298 ....................................................................8, 13

## PRELIMINARY STATEMENT

The Court should grant a new trial.  In vacating this Court's conditional grant of a new trial, the Fourth Circuit left unaddressed several significant issues—each of which independently, and all of which collectively, require a new trial in "the interest of justice."  Fed. R. Crim. P. 33(a).

First, the Fourth Circuit did not address the inadequacy of the government's pretrial disclosure of CIPA material—a "substantial" issue this Court explicitly reserved in its original new-trial order.  *See United States v. Rafiekian*, No. 1:18-CR-457-AJT-1, 2019 WL 4647254, at *17 n.46 (E.D. Va. Sept. 24, 2019) ("Given the Court's Rule 29 ruling, there is no need for the Court to consider at this time the substantial issues Rafiekian has raised with respect to the adequacy of the information he was provided regarding the matters referenced in Defendant's Exhibit 66.").  The summary the government provided plainly did not give Rafiekian the same ability to make his defense as would disclosure of the underlying classified material—particularly given that the government relied on the summary in closing argument and later conceded that the jury "could" and "did" rely on the summary to rationally infer Rafiekian's guilt.  If anything, the critical nature of this evidence has only become more salient seeing as it concerns the role of the leader of the FIG consulting project, Lt. Gen. Michael Flynn, whose unrelated prosecution was dropped by the DOJ following his guilty plea, and who was later pardoned for any crime committed in connection with this case.

Second, although the Fourth Circuit said that it would not affirm this Court's weight-of-the-evidence ruling based "[o]n the record as it comes to us," it also noted that, "having observed the trial in the flesh, the district court may have additional justifications for its decision."  *United States v. Rafiekian*, 991 F.3d 529, 550 (4th Cir. 2021).  Those grounds are plentiful here.  This Court's authority to grant a new trial under Rule 33 is much broader than under Rule 29.  The Court need not view the evidence in the light most favorable to the government or view only "the

1

evidence at the time the ruling was reserved." Fed. R. Crim. P. 29(b). Reviewing the entire record—including critical defense evidence, such as Rafiekian's undisputed attempts to obtain legal advice regarding his FARA obligations—confirms that the government failed to meet its burden of proving guilt beyond a reasonable doubt. And because the Court is allowed under Rule 33 (unlike Rule 29) to draw inferences that are *unfavorable* to the government, its view that the government's case was "very, very circumstantial" and "very speculative" (Trial Tr. 851 (July 18, 2019), ECF No. 334) should lead this Court to reaffirm its prior conclusion that the verdict is against the great weight of the evidence.

Finally, through the examination of its lead case agent, Special Agent Brian Alfredo, the government improperly suggested that the burden was on Rafiekian to offer evidence of his innocence. The government again relied upon Alfredo's testimony during its closing arguments, arguing that Rafiekian did not "choose to put in" "a single shred of evidence" regarding a key factual point for the prosecution. Those burden-shifting arguments were improper and they prejudiced Rafiekian.

For all of these reasons, including their combined prejudicial effect, this Court should grant Rafiekian a new trial in the interest of justice.

## BACKGROUND

Bijan Rafiekian was the Vice-Chairman, Director, Secretary, and Treasurer of the Flynn Intel Group ("FIG"), which he co-founded and co-owned with Michael Flynn, FIG's Chairman and CEO. Prior to the founding of FIG, Rafiekian, a U.S. citizen, held a variety of positions in the public sector, including serving on the board of directors of the Export-Import Bank of the United States, a position for which he was nominated by President George W. Bush and confirmed by the Senate. Kamil Ekim Alptekin is a prominent Turkish businessman and the owner of Inovo BV ("Inovo"), a Dutch company based in the Netherlands. Alptekin also previously served as

Chairman of the Turkish-American Business Council.  In 2016, FIG entered into a commercial agreement to produce an investigative "60 Minutes"-style video documentary for Inovo about the U.S.-based Turkish Islamic cleric Fethullah Gülen.  Flynn led the engagement.

In December 2018, Rafiekian was charged in a two-count indictment (the "Indictment") arising from the work performed by FIG on behalf of Inovo as well as certain disclosures that FIG (under Flynn's signature), Flynn, and Rafiekian made under FARA.  Count One alleged a conspiracy with two objects:  (1) to knowingly act and cause others to act in the United States as an agent of the government of Turkey without prior notification to the Attorney General, in violation of 18 U.S.C. § 951; and (2) to willfully make false statements of material fact or willfully omit material facts in a document filed with the Attorney General under FARA.  Count Two charged Rafiekian with knowingly acting and causing others to act in the United States as an agent of the government of Turkey without prior notification to the Attorney General, in violation of 18 U.S.C. § 951.

Flynn was not charged with any criminal offenses relating to the conduct charged in the Indictment.  At a pretrial hearing, the government said "that it did *not* consider Flynn a part of the charged conspiracy."  *Rafiekian*, 991 F.3d at 536.  Instead, "the Government planned to call him as a witness as part of its case-in-chief pursuant to Flynn's promise to testify against Rafiekian[.]" *Id*.; *see* Hr'g Tr. 65 (June 13, 2019), ECF No. 213 ("Q: Is the government alleging that Mr. Flynn was part of this conspiracy? [GOVERNMENT]: We are not, Your Honor.").  Just before trial, however, the government "changed course" and alleged, for the first time, that Flynn was a co-conspirator.  991 F.3d at 537.

Following a series of ex parte hearings regarding classified evidence pursuant to the Confidential Information Procedures Act ("CIPA"), the government, on the eve of trial, handed

Rafiekian a one-sentence summary, later introduced as Defendant's Exhibit 66 ("DX66"), informing Rafiekian that the government was aware of classified evidence relating to interactions between Flynn and Alptekin that did not "refer[] to" Rafiekian.  DX66.[1]  Following receipt of DX66, Rafiekian immediately sought access to the underlying information pursuant to CIPA because "[i]t goes right to the question of what happened and what he knew and what statements were made and who was making them," and "[i]f Mr. Rafiekian is convicted without his counsel having access to this exculpatory evidence, we believe it will go right to the heart of his due process and confrontation rights."  Hr'g Tr. 31 (Jul. 12, 2019), ECF No. 309.  The Court took the request under advisement, noting that it "underst[ood] the defense's concern and w[ould] continue to consider whether additional disclosure of information" would be necessary as the case developed. *Id.* at 32.  At trial, the government used DX66 in its rebuttal argument in closing to show that Rafiekian participated in the alleged conspiracy—"even though the information in that exhibit related solely to Flynn and explicitly excluded Rafiekian." *Rafiekian*, 2019 WL 4647254, at *17.

In addition, during the government's trial examination of Special Agent Alfredo, the government elicited testimony that strongly implied that Rafiekian, who was in possession of various emails and other communications, should have come forward with evidence to prove his

---

[1] DX66 provides in full:

The United States is in possession of multiple, independent pieces of information relating to the Turkish government's efforts to influence United States policy on Turkey and Fethullah Gulen, including information relating to communications, interactions, and a relationship between Ekim Alptekin and Michael Flynn, and Ekim Alptekin's engagement of Michael Flynn because of Michael Flynn's relationship with an ongoing presidential campaign, without any reference to the defendant or FIG.

DX66.

innocence.  *See* Trial Tr. 785:8-788:18 (July 18, 2019), ECF No. 333.[2]  Upon the defense's objection, the Court cautioned the government that "the way [this evidence was] being presented d[id] sound as if—[the government was] giving the jury the impression that the defense should come forward with evidence of th[ose] items."  *Id.* at 787:24-788:4.  During closing argument, the government invoked Alfredo's testimony to suggest that Rafiekian should have come forward with evidence to rebut the government's key factual points:

> [W]hen they do choose to put on a case, you can presume that these fine lawyers here put on the very best case they possibly could, they possibly could to explain all of this.  And what kind of explanation did you hear for this midnight-hour shift from truth to confidence, from the government of Turkey, yes, we're working for

---

[2] For example, the government questioned Special Agent Alfredo as follows:

Q: Now, we heard from FBI Forensic Examiner Rosecrans, that he created an image of both of the defendant's laptops that were seized pursuant to a warrant from the defendant.  Did the government produce a copy of those images to the defense in this case?

A: Yes, sir.

Q: Were they produced in a manner that would allow the defense to do word searches of their own or conduct other methods of examination that Mr. Rosecrans talked about?

A: I believe so.

Q: And what about the FIG e-mails from Covington that Mr. Nadarajah testified about?  Were those all turned over to the defense in this case?

A: Yes, sir.

Q: Were they produced in a manner that would allow the defense to do word searches and other methods of examination that Mr. Rosecrans talked about?

A: Yes, sir.

Q: What about the defendant's Gmail account?  Were those provided to the defense?

A: Yes, sir.

[Additional questions regarding Alptekin's and Sphere's emails.]

****

Q: So, Agent Alfredo, just to shorten this up, with respect to all of the electronic evidence that you had in this case available to you, was all of that turned over to the defense?

A: Yes, sir.

Trial Tr. 785:8-788:18 (July 18, 2019), ECF No. 333.

the government of Turkey, to all of a sudden, no, it's a completely separate thing. It sprang up out of nowhere.  Just by happenstance happened to occur right at midnight, this thing with the government went away, and all of a sudden at midnight, we had this separate thing with Turkish businessmen.  Astonishing bit of good luck.

But you didn't see any e-mails of that kind.  As you heard, they had access to the very same evidence we did, the very same e-mails, those thousands, tens of thousands of e-mails that they had access to.  Not a single shred of evidence did they choose to put in in their case trying to explain that midnight hour between August 11 and -- pardon me -- 10th and 11th.

To be clear, our burden is to prove him guilty beyond a reasonable doubt, but if they put on a case, you can expect that it would be the best one they can, and it certainly wasn't much.

Trial Tr. 1180:20-1181:17 (July 22, 2019), ECF No. 351.  Upon objection, the Court again noted its "concern[]" that this argument improperly shifted the burden of proof to Rafiekian.  *Id.* at 1188:10-25.

On July 23, 2019, the jury found Rafiekian guilty on both counts.  Jury Verdict, ECF No. 355.  Rafiekian timely moved for judgment of acquittal under Rule 29 and for a new trial under Rule 33.  Def. Rafiekian's Mot. for a New Trial Pursuant to Fed. R. of Crim. P. 33, ECF No. 361. This Court granted judgment of acquittal as well as a conditional new-trial, based on the conclusion that—among other considerations—"'given the great weight of the evidence,' a new trial was warranted in the interests of justice." *Rafiekian*, 991 F.3d at 537-538 (citing *Rafiekian*, 2019 WL 4647254, at *16-*18)).  The Court also reserved decision on an additional new-trial ground—the "substantial issues Rafiekian has raised with respect to the adequacy of the information he was provided regarding the matters referenced in Defendant's Exhibit 66."  *Rafiekian*, 2019 WL 4647254, at *17 n.46.  The Court did not address Rafiekian's argument that .the government's improper burden shifting also warranted a new trial

The Fourth Circuit reversed the judgment of acquittal, vacated the conditional new-trial grant, and remanded. *Rafiekian*, 991 F.3d at 552.  Regarding this Court's weight-of-the-evidence holding, the Fourth Circuit recognized that "the district court may have additional justifications for its decision" not reflected in the record.  *See id.* at 550 (declining to affirm weight-of-the-evidence ruling because "[o]n the record as it comes to us, we cannot say whether the court appreciated" limits on its discretion).  The Fourth Circuit also made no mention of the CIPA issue on which this Court reserved judgment.  The mandate issued on May 5, 2021.  Mandate, ECF No. 383.

As for Flynn, the government dismissed its indictment on Flynn's unrelated charges even after Flynn pleaded guilty to them.  *See* Mot. to Dismiss the Criminal Information Against Def. Michael T. Flynn*, United States v. Flynn*, No. 1:17-cr-00232 (D.D.C. May 7, 2020), ECF No. 198. Flynn was then pardoned by the President of the United States for "any and all possible offenses arising out of facts and circumstances . . . related to the investigation of the Special Counsel, including, but not limited to, any grand jury proceedings . . . in the United States District Court for the Eastern District of Virginia."  Executive Grant of Clemency, *Flynn*, No. 1:17-cr-00232 (D.D.C. Nov. 30, 2020), ECF No. 308.

## ARGUMENT

## I.   THE INADEQUATE DISCLOSURE AND IMPROPER USE OF CLASSIFIED EVIDENCE DENIED RAFIEKIAN A FAIR TRIAL

This Court should grant a new trial because the government failed to adequately disclose classified materials to Rafiekian under CIPA.  Making matters worse, the government then improperly used those same CIPA materials in closing argument as evidence against Rafiekian. The Fourth Circuit has recognized that "[t]here is a stark difference between ex parte submissions from prosecutors which protect the disclosure of irrelevant, nonexculpatory, or privileged

7

information, and situations in which the government seeks to use *ex parte* information in court as evidence to obtain a conviction." *United States v. Abu Ali*, 528 F.3d 210, 255 (4th Cir. 2008). This Court is now free to reach the issue it reserved regarding "the substantial issues Rafiekian has raised with respect to the adequacy of the" CIPA disclosure, *Rafiekian*, 2019 WL 4647254, at *17 n.46, as nothing in the Fourth Circuit's decision forecloses this Court's ability to consider an issue that Rafiekian indisputably "raised."

A.      **The Classified Information Procedures Act**

The Classified Information Procedures Act, 18 U.S.C. app. 3 §§ 1-16, governs the use and disclosure of classified information in criminal cases. Congress enacted CIPA to address situations in which defendants threatened to reveal classified information in order to force the government to drop criminal charges. *See* S. Rep. No. 96–823, 96th Cong., 2d Sess. 1-4 (1980), *as reprinted in* 1980 U.S.C.C.A.N. 4294-4298. Although CIPA permits "district courts to prevent the disclosure of classified information," *Abu Ali*, 528 F.3d at 255, "courts must not be remiss in protecting a defendant's right to a full and meaningful presentation of his claim to innocence." *United States v. Fernandez*, 913 F.2d 148, 154 (4th Cir. 1990); *see id.* at 163 (affirming district court's finding that government's proposed substitutions of relevant classified information did not provide defendant with a "fair trial"); *see also Abu Ali*, 528 F.3d at 255 (classified information procedures cannot "deprive the defendant of a fair trial").

CIPA establishes procedures that balance the government's interest in protecting classified information against the constitutional rights of criminal defendants. As defined by CIPA, "[c]lassified information" includes "any information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security." 18 U.S.C. app. 3

8

§ 1(a).  To "protect against" such disclosure, CIPA directs that "'[t]he court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents' produced to the defendant, 'substitute a summary of the information for such classified documents,' or 'substitute a statement admitting relevant facts that the classified information would tend to prove.'"  *Abu Ali*, 528 F.3d at 246 (alteration in original) (citing 18 U.S.C. app. 3 § 4).  Any hearing regarding "the use, relevance, or admissibility of classified information" is heard "in camera if the Attorney General certifies to the court . . . that a public proceeding may result in the disclosure of classified information."  18 U.S.C. app. 3 § 6(a).

If the court orders the government to provide a "summary" of the classified information, rather than produce the material itself, that summary must "provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information."  *Abu Ali*, 528 F.3d at 246 (citing 18 U.S.C. app. 3 § 6(c)(1)).  If the defendant's ability to make his defense is meaningfully hindered by the government's denial of access to classified information or refusal to provide a suitable substitute, then the court must take appropriate action—including dismissal of the indictment.  *See* 18 U.S.C. App. 3 § 6(e); *Abu Ali*, 528 F.3d at 247-248; *United States v. Moussaoui*, 382 F.3d 453, 476 (4th Cir. 2004).  Ultimately, a defendant's constitutional right to a defense "prevails over the governmental privilege."  *Abu Ali*, 528 F.3d at 248.  And that sufficiency-of-the-summary determination is left to the discretion of the trial court, which is "immersed in the complicated facts of [a given] case . . . and i[s] familiar[] with the particulars of th[e] prosecution."  *Fernandez*, 913 F.2d at 154–55 (applying abuse-of-discretion review to affirm district court's admission of CIPA evidence and rejection of government's proposed substitutions for that evidence).

### B.     The Government Violated CIPA and Misused CIPA Evidence

Rafiekian was statutorily and constitutionally entitled to discovery of any material that was "relevant and helpful to [his] defense" or "essential to a fair determination of [the] cause." *Abu Ali*, 528 F.3d at 247; *see also* Fed. R. Crim. P. 16(a)(1)(E).  A failure to disclose relevant evidence implicates not only CIPA's procedures, but also Rafiekian's Sixth Amendment rights to confront witnesses against him, s*ee Abu Ali*, 528 F.3d at 253, and his right to effective assistance of counsel, *see Missouri v. Frye*, 566 U.S. 134, 138 (2012).  The government's violations of CIPA, and misuse of CIPA evidence, requires a new trial.

The Fourth Circuit has made clear that, under CIPA, the government's privilege not to disclose classified information "must . . . give way" when that information is helpful or material to the defense.  *United States v. Smith*, 780 F.2d 1102, 1107 (4th Cir. 1985) (citing *Roviaro v. United States*, 353 U.S. 53, 60-61 (1957)).  In fact, "[t]he burden is the Government's, *not to be shifted to the trial judge*, to decide whether the public prejudice of allowing the crime to go unpunished is greater than that attendant upon the possible disclosure of state secrets and other confidential information in the Government's possession."  *United States v. Moussaoui*, 365 F.3d 292, 311 (4th Cir. 2004) (citing *Jencks v. United States*, 353 U.S. 657, 672 (1957)) (alteration in original).  Although the government may produce a "summary" to the defendant in lieu of the information, the summary must "provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information."  *Abu Ali*, 528 F.3d at 246 (citing 18 U.S.C. app. 3 § 6(c)(1)).

Events during and after trial have proven that the one-sentence summary of classified information given to Rafiekian on the eve of trial failed to meet that standard.  As the Court knows, that single-sentence summary of classified information discloses an apparent connection between

Alptekin and Flynn—namely, "communications, interactions, and a relationship" between the two and an engagement that *Alptekin* pursued due to "Michael Flynn's relationship with an ongoing presidential campaign." DX66. It provides no context regarding the relevant time period, the extent or nature of the evidence, or whether either Flynn or Alptekin agreed to operate at Turkey's direction and control. The summary then cryptically concludes by stating that the evidence does not "reference" Rafiekian or FIG. DX66.

Rafiekian's counsel was obviously not privy to the Court's ex parte hearings with the government. But the logical takeaway from the government's decision to provide this summary to Rafiekian is that the underlying classified material was relevant or necessary to Rafiekian's defense—*i.e.*, that the government was aware of "multiple, independent pieces of information" about Rafiekian's alleged co-conspirators that do not "reference" the lone person standing trial for that conspiracy. That is why defense counsel, who maintained Top Secret/SCI security clearances, immediately requested access to the underlying classified information because, if "exculpatory," it would "go right to the heart of his due process and confrontation rights." Hr'g Tr. 30-31 (July 12, 2019), ECF No. 309; *see also Abu Ali*, 528 F.3d at 245-246.

Yet, it is clear that the disclosed summary, even if designed to provide Rafiekian with exculpatory information, was inadequate. Access to the underlying information was necessary for Rafiekian to show that, no matter what Flynn and Alptekin were working on separately, Rafiekian was not involved in any project for the Turkish government. Without such access, the "jury [was left] to judge" the evidence "in a contextual vacuum," *Fernandez*, 913 F.3d at 158—a vacuum that the government's rebuttal argument filled. *See* Opp'n 14, ECF No. 365 (arguing that DX66, in conjunction with other evidence, allowed jury to "rationally infer that Project Confidence operated subject to Turkey's direction and control," even though it did not "explicitly mention[]

11

defendant"); *see also United States v. Sedaghaty*, 728 F.3d 885, 906 (9th Cir. 2013) (finding government's substitution inadequate where it "exclude[d] non-cumulative exculpatory information [that] could provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information") (internal quotation marks omitted).

Indeed, the prejudice that flows from the sparse CIPA summary is made clear—and worse—by the government's use of it in closing argument.   The government used the (presumptively exculpatory) summary offensively, in an attempt to establish that Rafiekian had joined a *pre-existing* conspiracy between Flynn and Alptekin.  Trial Tr. 1182:14-1183:25 (July 22, 2019), ECF No. 351.  Specifically, in its rebuttal argument, the government described fictional bank robbers "Tom," "Dick," and "Harry," and argued that while DX66 did not mention "Harry" (*i.e.*, Rafiekian) explicitly, that meant only that he "joined the bank robbery scheme" later.  *Id.* at 1183:2-3.   In other words, the government asked the jury to convict Rafiekian based on its characterization of the underlying classified information as disclosing a preexisting conspiracy of which Rafiekian was not a part—knowing that Rafiekian, who had not seen the underlying evidence, could do nothing to effectively rebut that inference.  And the government later admitted that the jury relied on DX66 to convict, describing it as "critical[]" evidence from which "the jury could—*and did*—rationally infer" guilt.  Opp'n 13-14, ECF No. 365 (emphasis added).  Given the obscure nature of the summary as well as the lack of access to the underlying classified information, Rafiekian plainly did not have "substantially the same ability" to defend himself against the government's insinuations.   Instead, he was "shackled to a script written by the prosecution."  *Fernandez*, 913 F.2d at 158.

12

In sum, the government disclosed an inadequate summary and then used the purportedly exculpatory "*ex parte* information in court as evidence to obtain a conviction." *Abu Ali*, 528 F.3d at 255. Those events violated Rafiekian's "right to a full and meaningful presentation of his claim to innocence." *Fernandez*, 913 F.2d at 154, 158; *see also Moussaoui*, 382 F.3d at 478-479 (denying proposed substitutions that failed to include exculpatory information). The fundamental principle underlying CIPA is that "the defendant should not stand in a worse position, because of the fact that classified information is involved, than he would without this Act." S. Rep. No. 96-823, at 4302. Because Rafiekian plainly stands in a "worse position" than he would have—particularly given the government's use of that information in closing—the Court should grant Rafiekian a new trial.

### C. The Court Should Order Disclosure of the Underlying Classified Materials

In addition to (or at least as a first step towards) granting a new trial, the Court should order the disclosure of the underlying classified materials to defense counsel. Without access to the classified material for which DX66 is a purported substitute, Rafiekian's counsel are precluded from developing fully informed arguments as to the potentially exculpatory nature of that evidence. In initially declining to permit counsel to view the classified material underlying this summary, this Court recognized that, "as the case develops, the Court understands the defense's concern and will continue to consider whether additional disclosure of information bear on this." Hr'g Tr. 31-32 (July 12, 2019), ECF No. 309. As explained above, events that have transpired since that ruling—including the government's use of undisclosed CIPA evidence to support Rafiekian's guilt—makes clear that production of that material is necessary.

Given defense counsels' security clearances, making available a Section 4 submission under the protections of a CIPA protective order would not endanger national security. *See United*

13

States v. Libby, 429 F. Supp. 2d 18, 23 (D.D.C. 2006), *opinion amended on reconsideration*, 429 F. Supp. 2d 46 (D.D.C. 2006) (explaining that "there are fewer threats to national security in disclosing classified documents to a defendant and his attorney who have obtained security clearances, than when disclosure is made to someone who has not received such clearances"). Indeed, courts often consider the difference between cleared counsel and uncleared counsel in assessing whether ex parte filings or hearings are appropriate.  *See Abu Ali*, 528 F.3d at 254 (distinguishing between providing classified information to "CIPA-cleared defense counsel" versus uncleared counsel); *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 126–130 (2d Cir. 2008) (holding that defendant's due process rights properly protected when cleared counsel had access to all relevant classified materials and attended all CIPA proceedings). Here, cleared defense counsel has passed the same background checks and security vetting as the prosecution, the Court, and its law clerks.

Accordingly, this Court should both order a new trial and require the government to provide additional disclosure, to protect Rafiekian's statutory rights under CIPA and his constitutional rights to confront witnesses and prepare an effective defense.

### D.     Rafiekian Properly Raised His Arguments Related to CIPA

On remand, the government claimed for the first time that Rafiekian waived his CIPA argument by raising it in his Reply in support of his Rule 33 Motion, rather than in the Motion itself.  *See* Joint Stmt. at 4, ECF No. 385.  The government, however, forfeited its objection when it failed to timely object or file a surreply—and instead addressed the issue on the merits at the new trial hearing.  *Compare* ECF No. 368 at 38-41 (government addressed Rafiekian's DX66 arguments on the merits), *with Lismont v. Alexander Binzel Corp.*, No. 2:12-CV-592, 2013 WL 12098260, at *1 (E.D. Va. June 6, 2013) (plaintiff filed motion to strike new arguments in reply

14

brief or, in the alternative, "for leave to file a sur-reply"), *Eagle Servs. Corp. v. H20 Indus. Servs.*, *Inc.*, No. 2:02CV36PRC, 2005 WL 1429279, at *1 (N.D. Ind. June 8, 2005) (same), *and Girl Scouts of Middle Tenn., Inc. v. Girl Scouts of the U.S., Inc.*, No. 3:12-CV-00575, 2013 WL 1736643, at *1 (M.D. Tenn. Apr. 19, 2013) (similar); *see also United States v. Carthorne*, 726 F.3d 503, 509 n.5 (4th Cir. 2013) (finding that government "defaulted any" waiver argument by failing to make one) (citing *United States v. Bonilla-Mungia*, 422 F.3d 316, 319 (5th Cir. 2005) (concluding that "the government has waived the waiver argument") & *United States v. Beckham*, 968 F.2d 47, 54 n.5 (D.C. Cir. 1992) (same)); *Greer v. United States*, 938 F.3d 766, 770 (6th Cir. 2019) ("[A]s with any other argument, the government can forfeit a waiver argument by failing to raise it in a timely fashion.").

Regardless, the government's objection is meritless.  This Court already held that "Rafiekian . . . raised" this issue in his new-trial briefing and it properly reserved the issue for future decision.  *Rafiekian*, 2019 WL 4647254, at *17 n.46; *see also* Gov't CA4 Reply Br. at 33 n.19 ("The government agrees that the district court reserved whether DX66's pre-trial disclosures were adequate[.]").  That decision was well within this Court's discretion.  *See Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 396 (4th Cir. 1994) (district court did not abuse its discretion in considering legal argument raised for the first time in a reply brief where non-moving party did not seek leave to submit further briefing); s*ee, e.g.*, *United States v. Head*, 340 F.3d 628, 630 n.4 (8th Cir. 2003) (holding court is not "precluded from considering" issues raised in a reply brief).  That is particularly true when, as here, the issue was raised in response to an issue prompted by a response argument—here, that "the jury could—and did—rationally infer" Rafiekian's guilt based on DX66.  ECF No. 365 at 13-14; *see Lismont*, 2013 WL 12098260, at *1 ("Thus, courts necessarily may consider new arguments in a movant's reply where those

arguments address issues raised for the first time in the nonmovant's response."); *see also* ECF No. 366 at 2, 8-11 (arguing that the government's reliance on DX66 has "invited a new trial on yet another ground").

Nothing in the Fourth Circuit's decision—which concerned whether a district court can "grant a new trial for its own reason," *Rafiekian*, 991 F.3d at 551—forecloses this Court from considering an issue that Rafiekian indisputably "raised," *Rafiekian*, 2019 WL 4647254, at *17 n.46. In fact, the government itself distinguished Rafiekian's DX66 argument from a different one it claimed Rafiekian never made. *See* Gov't CA4 Reply Br. at 32 (acknowledging that Rafiekian "asserted only that the exhibit DX66 was inadequately disclosed, which he concedes is not on appeal"). Nor would the government suffer any prejudice from this Court reaching this issue that it previously reserved. Not only did the government address this argument on the merits at the hearing on the original new-trial motion, *see* ECF No. 368 at 38-41, it has a full opportunity to brief and argue the issue now. Thus, nothing precludes this Court from granting a new trial based on the "substantial issues" Rafiekian raised relating to CIPA.

## II.   THE EVIDENCE WEIGHED STRONGLY AGAINST THE JURY'S VERDICT

Although the Fourth Circuit vacated this Court's new trial judgment that was based on this Court's assessment of the weight of the evidence, nothing prevents this Court from ordering a new trial on the same ground again. On the contrary, the Fourth Circuit concluded only that it was unclear whether the Court properly applied the Rule 33 standard, given the lack of sufficient "further elaboration" on this point. *Rafiekian*, 991 F.3d at 549-550; *see id.* (acquittal analysis was insufficient "standing alone"); *id.* (cannot affirm "'[o]n the record as it comes to us'") (quoting *United States v. Millender*, 970 F.3d 523, 531-532 (4th Cir. 2020)). In fact, the Fourth Circuit explicitly recognized that, "having observed the trial in the flesh, the district court *may have additional justifications for its decision*." *See Rafiekian*, 991 F.3d at 550 (emphasis added).

16

This Court should accept the Fourth Circuit's invitation to offer "further elaboration" and "additional justifications" for its decision, re-confirm that it understood the limits on its authority, and again grant a new trial on the ground that the jury verdict was against the great weight of the evidence. *Rafiekian*, 991 F.3d at 549-550. That is particularly appropriate given that the "'criteria for a judgment of acquittal and for a new trial' are distinct." *Id.* (quoting *United States v. Arrington*, 757 F.2d 1484, 1486 (4th Cir. 1985)). In fact, a court's authority under Rule 33 is "much broader than when it is deciding a motion to acquit" on the ground of insufficient evidence. *Id.* at 549; *see United States v. Campbell*, 977 F.2d 854, 860 (4th Cir. 1992). In particular:

- Under Rule 29, the court must view all evidence, and draw all inferences, in favor of the government. But under Rule 33, the court is not "constrained by the requirement that it view the evidence in the light most favorable to the government." *Arrington*, 757 F.2d at 1485; *see Campbell*, 977 F.2d at 860 (noting that a trial court is allowed to "draw inferences, unfavorable to the Government, from the evidence."); *United States v. Souder*, 436 F. App'x 280, 289 (4th Cir. 2011) (upholding trial court's grant of new trial because "the trial court may grant relief if it determines that the evidence—even if legally sufficient to convict—weighs so heavily against the verdict that it would be unjust to enter judgment").

- Under Rule 29, the court may not weigh the credibility of witnesses. But under Rule 33, the trial court, which "ha[s] the advantage of observing the witnesses as they testif[y]," is allowed to consider witness credibility in determining whether to grant a motion for a new trial. *United States v. Shipp*, 409 F.2d 33, 36 (4th Cir. 1969).

- Under Rule 29, once the court "reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved." Fed. R. Crim. P. 29(b). But under Rule 33, the court is permitted to review *all* the evidence in the record—even evidence introduced by the defendant and supporting the defendant's case.

Thus, released from the requirement of Rule 29 that a trial court must draw inferences in the government's favor, this Court should again find that the government's case relied on "impermissible speculation and conjecture"—such that the jury's verdict was against the great weight of the evidence. *Rafiekian*, 2019 WL 4647254, at *14.

17

All of Rafiekian's arguments for why the evidence was legally insufficient apply with even greater force to the argument that, at a minimum, the government did not prove beyond a reasonable doubt that that Turkey directed and controlled Rafiekian's actions, and that the verdict was against the great weight of the evidence.  Accordingly, Rafiekian incorporates those arguments in full here.  *See* Def. Rafiekian's Memorandum In Support of His Rule 29 and Rule 33 Motions, ECF No. 362; Def. Rafiekian's Reply in Further Support of His Rule 29 and Rule 33 Motions, ECF No. 366.  In addition, Rafiekian wishes to underscore the following specific points:

*First*, this Court should again conclude that, under the Rule 33 standard, "[t]here is no evidence of any actual or implied agreement between Rafiekian and the government of Turkey or any official of the government of Turkey."  *Rafiekian*, 2019 WL 4647254, at *12.  To be sure, the Fourth Circuit held that "a rational juror could have found that" Turkey—rather than Inovo—was FIG's client based on the circumstantial evidence surrounding Project Confidence.  *Rafiekian*, 991 F.3d at 546.  But this Court had a "superior vantage point . . . in assessing the overall dynamics of [the] trial" and is not required to find the same.  *United States v. Wolff*, 892 F.2d 75 (4th Cir. 1989) (table).  Under Rule 33, this Court can rely (as it did in granting Rafiekian's judgment of acquittal) on the absence of evidence in the record that Turkey directed and controlled FIG's work, "or that the engagement was not in fact being funded by a group of Turkish businessmen, as Rafiekian stated consistently throughout."  *Rafiekian*, 2019 WL 4647254, at *12–*13.  Under the Rule 33 standard, this Court retains discretion to decide that, even if the evidence was "*legally* sufficient to convict," the overall evidence "weighs so heavily against the verdict that it would be unjust to enter judgment."  *Souder*, 436 F. App'x at 289 (emphasis added).

*Second*, as this Court previously recognized after listening to the testimony of the government's witnesses, "there is no evidence concerning anything said at" the September 2016

meeting between FIG and Turkish officials in New York City from which this Court could find "that Rafiekian had agreed to operate at the direction or control of the Turkish government." *Rafiekian*, 2019 WL 4647254, at *12. Even if a rational juror could "view the meeting" as proof "that Rafiekian carried out Project Truth/Confidence subject to Turkish 'direction,'" *Rafiekian*, 991 F.3d at 546-547, this Court did not reach that conclusion before and need not now. As this Court pointed out, uncontradicted testimony at trial established that there was no discussion of FIG's work at this meeting and that no Turkish officials made any requests to Rafiekian or FIG. *Rafiekian*, 2019 WL 4647254, at *12 n.32. In fact, that meeting was the sole evidence in the record of any "contact between Rafiekian and any Turkish official." *Id.* at *12. If anything, the fact that there was only one meeting with any Turkish officials and that meeting involved no discussion of the work FIG was doing for Inovo or any request that FIG do anything, is powerful evidence that there was no agreement between FIG and Turkey.

*Third*, as this Court has found on two separate occasions, "FIG's payments to Alptekin, no matter how Rafiekian characterized them over time, are insufficient to support the inference that Rafiekian was acting or had agreed to act as a Turkish agent." *Rafiekian*, 2019 WL 4647254, at *13 (citing ECF 292 at 31). Even if the evidence was legally sufficient for a rational juror to infer that Turkey "was actually financing Project Confidence" and that the "payments serving as Alptekin's commission for acting as a go-between," *Rafiekian*, 991 F.3d at 546, this Court is under no obligation to follow the same logic—particularly considering the government's proof-beyond-a-reasonable-doubt burden. When considering a new trial motion, this Court is well within its discretion to again deem any such inference too "speculative." *Rafiekian*, 2019 WL 4647254, at *13 n.38. That finding would be especially warranted considering that (as this Court has found) the government introduced no records indicating that the original source of the funds was the

19

Turkish government, and did not even attempt to obtain any Turkish banking records.  *See id.* (there is no "evidence concerning the sourc[ing] of the funds"); *see also* Trial Tr. 395:22–24 (July 17, 2019), ECF No. 330; *id.* at 384:22–385:20.

*Fourth*, although the jury convicted Rafiekian of making false statements in the FARA filings, those filings were prepared by a well-respected law firm experienced in FARA, Covington & Burling LLP.  Covington billed countless hours reviewing the same documents the government used to make its case, and ultimately brought its independent judgment to bear about what to disclose in the filing.  Moreover, as this Court previously recognized, the government produced no evidence of any "discussions or suggestions, let alone an agreement, express or implied, to either avoid filing under FARA or to cause the filing of a false FARA registration statement," and no such conspiracy could "be inferred from the FARA filing itself."  *Rafiekian*, 2019 WL 4647254, at *15.

*Fifth*, as noted, this Court is allowed to review the *entire* record—not just the "basis of the evidence at the time the ruling was reserved."  Fed. R. Crim. P. 29(b).  The Fourth Circuit made clear that it did not consider any defense evidence in evaluating whether the evidence legally supported the verdict.  *See Rafiekian*, 991 F.3d at 544 n.20.  In deciding a Rule 33 motion, however, this Court is free to consider all the evidence, including the various pieces of exculpatory evidence Rafiekian introduced, such as:

- *Legal advice*.  Rafiekian introduced uncontested evidence that he sought legal advice from two different lawyers about whether to file under FARA.  *See, e.g.*, Trial Tr. 856 (July 18, 2019), ECF No. 334 (Robert Kelley, an attorney who eventually became FIG's general counsel, testified:  "[Rafiekian] said that we have to register at FARA, the Justice Department Foreign Agents Registration Act.").  As this Court has previously recognized, Rafiekian's efforts to comply with registration and notification requirements underscore the lack of any agreement to violate Section 951 or to knowingly participate in any such agreement.  *Rafiekian*, 2019 WL 4647254, at *15; *see also* Mem. Op. & Order 29, ECF No. 292 ("[A]ny inference of an agreement by Rafiekian to act as an

undisclosed Turkish agent is substantially undercut by his contemporaneous conduct, which included seeking out legal advice concerning his FARA disclosure obligations in August 2016 (from Covington) and again in September 2016 (from Kelley), and subsequently filing an LDA disclosure statement pursuant to Kelley's advice.").

- *Rafiekian's disclosures to the U.S. government*. Rafiekian introduced evidence that he "voluntarily disclosed in a meeting with a U.S. Government agency that he had been asked to consult on a documentary-style commercial [regarding] . . . charter schools[,] and identified Alptekin as a business contact who had senior level contacts in the Turkish government and was the sole owner of Inovo, a Dutch company." *Rafiekian*, 2019 WL 4647254, at *8 (internal quotation marks omitted) (citing DX14). This Court already found that same evidence convincing in concluding that the evidence was insufficient for a rational jury to convict Rafiekian. *Id.* at *15.

- *Amsterdam & Partners*. A partner at Amsterdam & Partners, a law firm that handles international advocacy and dispute resolution, testified that he and his company entered into a similar contract with the Republic of Turkey to "investigate and expose Fethullah Gülen and his criminal network in the United States." Trial Tr. 897 (July 18, 2019), ECF No. 334. Amsterdam & Partners filed a public FARA form disclosing that contract with the Republic of Turkey—indicating that Turkey was hardly trying to hide its interest in "expos[ing]" Gülen. *Id.* at 897-899. This Court stressed the same facts in granting Rafiekian's motion to acquit. *See Rafiekian*, 2019 WL 4647254, at *14.

- *DX66*. As explained above, although Rafiekian obviously does not know the contents of the classified evidence that prompted the government to disclose the summary introduced as DX66, Rafiekian assumes that it was disclosed because it was relevant and necessary for a fair trial. The Court is thus free to consider DX66 (and the underlying classified information it summarized) in evaluating whether the verdict was against the great weight of the evidence, and that justice requires a new trial.

In sum, even if the *government's* evidence was "legally sufficient to convict," *Souder*, 436 F. App'x at 289, the record as a whole strongly contradicts the government's "speculation and conjecture." *Rafiekian*, 2019 WL 4647254, at *14.

Finally, the Court need not analyze the trial evidence in a vacuum. Instead, Rule 33 explicitly empowers the court to "vacate any judgment and grant a new trial *if the interest of justice so requires*." Fed. R. Crim. P. 33 (emphasis added); *see United States v. Jennings*, 438 F. Supp.

21

2d 637, 642 (E.D. Va. 2006), *aff'd*, 496 F.3d 344 (4th Cir. 2007) ("plain meaning" of the phrase "the interest of justice" makes "clear that granting a new trial is discretionary," and "this discretion should be exercised where it is demonstrated that the fundamental fairness or integrity of the trial result is substantially in doubt"). As the Court previously held, "[t]he Government's position with respect to Flynn is particularly telling" with respect to "the lack of evidence to establish the presumed conspiracy." *Rafiekian*, 2019 WL 4647254, at *9 n.44, *16. Indeed, "until the eve of trial, the government contended that Flynn was *not* part of the alleged conspiracy." *Id.* at *16 (emphasis added). And even after Flynn declined to "cooperate" by testifying against Rafiekian, the government decided to dismiss its unrelated indictment against Flynn *even after he pleaded guilty*. Ultimately, the President of the United States pardoned him for all potentially criminal actions, including any allegedly criminal actions arising out of the facts and circumstances at issue here. Executive Grant of Clemency, *Flynn*, No. 1:17-cr-00232 (D.D.C. Nov. 30, 2020), ECF No. 308.

These developments provide important context regarding the government's evidence of a conspiracy that purportedly involved both Rafiekian and his former business partner, Flynn. As head of FIG, Flynn signed the FARA statement that the government argued contained material false statements. As noted, Flynn was also the central subject of the classified information summarized in DX66. Yet even though "the evidence of Flynn's involvement in the [Inovo] engagement paralleled, and in some aspects, exceeded that of Rafiekian," the government never charged Flynn (or, until shortly before trial, even alleged that he was part of the conspiracy). *Rafiekian*, 2019 WL 4647254, at *9 n.44. This collection of unquestioned facts regarding the discrepant treatment of Flynn and Rafiekian, including the government's evolving views regarding

22

Flynn's complicity, confirms that the great weight of the evidence *and* the interests of justice demand a new trial.

## III.   THE GOVERNMENT IMPROPERLY SHIFTED THE BURDEN TO RAFIEKIAN TO PROVE HIS INNOCENCE

Finally, the Court should grant a new trial because the government improperly made arguments shifting the burden of proof to Rafiekian, in first eliciting burden-shifting testimony from Special Agent Alfredo, and then in later referring back to those remarks in suggesting that Rafiekian had failed to come forward with a "shred of evidence" to rebut certain government facts. Each time, the Court expressed concern with the government's arguments. *See* Trial Tr. 787:24-788:4 (July 18, 2019), ECF No. 333 (recognizing that the remarks could be construed as "giving the jury the impression that the defense should come forward with evidence of th[ose] items"); Trial Tr. 1188:10-25 (July 23, 2019), ECF No. 351 (noting "concern[]" that this argument improperly shifted the burden of proof to Rafiekian).   Although Rafiekian timely raised this argument in his initial Rule 33 motion, Def. Rafiekian's Mem. In Support of His Rule 29 and Rule 33 Motions 37-40, ECF No. 362, neither this Court nor the Fourth Circuit addressed the issue. Accordingly, this Court can and should grant a new trial on this ground as well.  *See Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939).

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364 (1970).  Accordingly, a defendant need not disprove the government's case nor prove innocence; in fact, the defendant need not put on any defense at all.  *See United States v. Saint Louis,* 889 F.3d 145, 156 (4th Cir. 2018) (citation omitted).  That is why "[i]t is well established that 'prosecutors must refrain from making burden-shifting arguments which suggest that the defendant has an obligation to produce any evidence or to prove

23

innocence.'" *Id.* (quoting *United States v. Simon*, 964 F.2d 1082, 1086 (11th Cir. 1992)); *see Winship*, 397 U.S. at 364 ("Due process commands that no man shall lose his liberty unless the Government has borne the burden of . . . convincing the factfinder of his guilt.") (ellipsis in original); *see also United States v. Bennett*, 874 F.3d 236, 251 (5th Cir. 2017) (finding prosecutor's comments at trial improper when they implied that the defendant had an obligation to produce evidence of innocence).

In determining whether a defendant's due process rights were violated by a prosecutor's remarks, courts consider "(1) whether the remarks were, in fact, improper, and, (2) if so, whether the improper remarks so prejudiced the defendant's substantial rights that the defendant was denied a fair trial." *Saint Louis,* 889 F.3d at 156; *see, e.g.*, *United States v. Sandoval-Gonzalez*, 642 F.3d 717, 725 (9th Cir. 2011) (concluding that prosecutor's improper remarks shifting the burden of proof to defendant materially affected the verdict and required automatic reversal); *United States v. Blakey*, 14 F.3d 1557, 1560 (11th Cir. 1994) (finding that prosecutor's improper burden-shifting remarks, and court's insufficient curative jury instruction, denied defendant a fair trial). Both elements are satisfied here.

First, the government's remarks were improper. During its case-in-chief, the government walked through various categories of evidence that Special Agent Alfredo had examined—FIG emails, Rafiekian's work email, Rafiekian's personal email, Alptekin's emails, and Sphere's emails—and asked whether each was "produced in a manner that would allow the defense to do word searches and other methods of examination" as well. *E.g.*, Trial Tr. 785:14-17 (July 18, 2019), ECF No. 333. That line of questioning strongly implied that Rafiekian was under some obligation to search those records and come forward with evidence to prove his innocence. Upon objection, the Court recognized that "the way [this evidence was] being presented d[id] sound as

if—[the government was] giving the jury the impression that the defense should come forward with evidence of th[ose] items." *Id.* at 787:24-788:4.

The government later doubled down in closing argument, arguing that, while Rafiekian's counsel had the "very same evidence we did, the very same e-mails," there was "*[n]ot a single shred of evidence [that] they choose to put in their case*" with respect to the formation of the Project Confidence project.  Trial Tr. 1181:10-13 (July 23, 2019), ECF No. 351 (emphasis added).  The government thus explicitly suggested that Rafiekian could have "put in" proof of innocence, but failed to do so.  Although the government clarified that it bore the ultimate burden to prove Rafiekian "guilty beyond a reasonable doubt," it immediately undercut that sentiment by arguing that, "if [defense counsel] put on a case, you can expect that it would be the best one they can, and it certainly wasn't much." *Id.*  That line of argument is improper.  *See Bennett*, 874 F.3d at 251 (holding improper government's rebuttal argument that "[n]othing stops [the defendant] from issuing a subpoena for the bank records," despite clarification that defense counsel "don't have to put on anything"); *cf. Saint Louis*, 889 F.3d at 156 (holding government's immediate clarification that defense counsel "doesn't bear the burden, I do," mitigated harm of isolated burden-shifting remark).

Second, these improper arguments were prejudicial.  When evaluating prejudice, the Fourth Circuit examines such non-exhaustive factors as:

> (1) the degree to which the prosecutor's remarks had a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters; (5) whether the prosecutor's remarks were invited by improper conduct of defense counsel; and (6) whether curative instructions were given to the jury.

*Saint Louis,* 889 F.3d at 157 (citing *United States v. Lighty*, 616 F.3d 321, 361 (4th Cir. 2010)). These factors are examined in the context of the entire trial, and no one factor is dispositive. *Lighty*, 616 F.3d at 361.

Under these factors, the Court should find the statements prejudicial.  The improper remarks were prominently placed in the government's closing argument, in which the prosecutor emphasized the alleged origin of the central conspiracy in the case.  *See Bennett*, 874 F.3d at 251 (finding government's comments to jury during closing argument improper because they "suggest[ed to the jury] that evidence not presented at trial would compel a finding of guilty."). There is no suggestion that the remarks were invited by any improper conduct by defense counsel. Although the Court agreed to caution the jury that the Court's instructions should control their deliberations, Trial Tr. 1189:19-1190:3 (July 23, 2019), ECF No. 351, the Court ultimately gave a general, broad instruction rather than specifically address or correct the government's improper argument, *see id.* at 1189:19-23 ("Ladies and gentlemen, in the instructions I gave you, I indicated that both sides may refer to the jury instructions, but if what they tell you is different than what you're instructed by way of my instructions, you obviously are to be bound by the instructions that I've given you.").  Finally, as this Court has already recognized, the case against Rafiekian was highly circumstantial and speculative—such that the improper burden-shifting arguments likely made the difference between a verdict of guilty and an acquittal.  The Court should grant a new trial to correct the government's error.

## CONCLUSION

For all of the foregoing reasons, Defendant Bijan Rafiekian respectfully moves this Court to grant him a new trial under Federal Rule of Criminal Procedure 33.

Dated: June 28, 2021                              Respectfully submitted,

                                                  /s/
                                                  Mark J. MacDougall (*Pro Hac Vice*)
                                                  Stacey H. Mitchell (*Pro Hac Vice*)
                                                  James E. Tysse (VA Bar #73490)
                                                  Adam A. Bereston (*Pro Hac Vice*)
                                                  Samantha J. Block (*Pro Hac Vice*)
                                                  *Counsel for Bijan Rafiekian*
                                                  Akin Gump Strauss Hauer & Feld LLP
                                                  2001 K Street NW
                                                  Washington, DC 20006
                                                  Telephone:  (202) 887-4000
                                                  Fax:  (202) 887-4288
                                                  E-mail:   mmacdougall@akingump.com
                                                            shmitchell@akingump.com


                                                  /s/
                                                  Robert P. Trout (VA Bar # 13642)
                                                  *Counsel for Bijan Rafiekian*
                                                  Schertler Onorato Mead & Sears
                                                  901 New York Avenue, N.W.
                                                  Suite 500 West
                                                  Washington, DC 20001
                                                  Telephone:  (202) 628-4199
                                                  Fax:  (202) 628-4177
                                                  E-mail:   rtrout@schertlerlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that, on the 28th day of June 2021, true and genuine copies of Defendant

Bijan Rafiekian's Memorandum of Law in Support of Renewed Motion for a New Trial Pursuant

to Federal Rule of Criminal Procedure 33 was sent via electronic mail by the Court's CM/ECF

system to the following:

        James P. Gillis
        John T. Gibbs
        Evan N. Turgeon
        Aidan T. Grano-Mickelsen
        U.S. Attorney's Office (Alexandria-VA)
        2100 Jamieson Avenue
        Alexandria, VA 22314
        Telephone:  (703) 299-3700
        Email:  james.p.gillis@usdoj.gov
                john.gibbs@usdoj.gov
                evan.turgeon@usdoj.gov
                agrano@usa.doj.gov

                                        /s/_____
                                        James E. Tysse (VA Bar #73490)