IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Alexandria Division*

|  |  |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 1:18-cr-457-AJT |
| BIJAN RAFIEKIAN, | |
| *Defendant*. | |

**THE UNITED STATES' MEMORANDUM IN OPPOSITION
TO DEFENDANT'S RENEWED MOTION FOR A NEW TRIAL**

## TABLE OF CONTENTS

**Table of Authorities** ......................................................................................................**ii**

**Argument** ............................................................................................................. **1**

   I.   Issues related to DX66 do not warrant a new trial................................... 1

      A.  Defendant's CIPA arguments are untimely and thus forfeited. ................................1

      B.  Certain of defendant's arguments implicate privileged information and therefore are not addressed in this public filing. ......................................................................5

      C.  Defendant's remaining arguments are unavailing......................................................5

   II.  The weight of the evidence does not support a new trial. ................................. 12

   III.  The government did not shift the burden of proof to defendant...................................... 23

      A.  References to the lack of evidence supporting a defense theory are not improper.23

      B.  The prosecutor's comments did not deprive defendant of a fair trial. ...................27

**Conclusion** .................................................................................................... **29**

# TABLE OF AUTHORITIES

**Cases**

*Carlisle v. United States*,
   517 U.S. 416 (1996) ................................................................................ 2

*Clark v. Brown*, — F. Supp. 3d — ,
   2021 1697408 (E.D. Va. 2021) .............................................................. 5

*Delaware v. Van Arsdall*,
   475 U.S. 673 (1986) ................................................................................ 7

*Donnelly v. DeChristoforo*,
   416 U.S. 637 (1974) .............................................................................. 11

*Eberhart v. United States*,
   546 U.S. 12 (2006) .................................................................................. 2

*Francis v. Franklin*,
   471 U.S. 307 (1985) .............................................................................. 29

*Ga. Pac. Consumer Prods., LP v. Von Drehle Corp.*,
   710 F.3d 527 (4th Cir. 2013) ................................................................ 16

*McMellon v. United States*,
   387 F.3d 329 (4th Cir. 2004) (en banc) ............................................... 24

*Melendez-Diaz v. Massachusetts*,
   557 U.S. 305 (2009) ................................................................................ 7

*Missouri v. Frye*,
   566 U.S. 134 (2012) ................................................................................ 5

*Ohler v. United States*,
   529 U.S. 753 (2000) ................................................................................ 8

*Pennsylvania v. Ritchie*,
   480 U.S. 39 (1987) (plurality opinion) .................................................. 6

*Rios v. City of Del Rio, Tex.*,
   444 F.3d 417 (5th Cir. 2006) ................................................................ 25

*Tapia v. Tanzy*,
   926 F.2d 1554 (10th Cir. 1991) ............................................................. 6

*Tibbs v. Florida*,
   457 U.S. 31 (1987) ................................................................................ 14

*United States v. Burgos*,
   94 F.3d 849 (4th Cir. 1996) (en banc) ................................................. 20

*United States v. Abu Ali*,
   528 F.3d 210 (4th Cir. 2008) ........................................................... 6, 10

*United States v. Al-Farekh*,
   956 F.3d 99 (2d Cir. 2020) .......................................................... 5

*United States v. Anchondo-Sandoval*,
   910 F.2d 1234 (5th Cir. 1990 ...................................................... 25

*United States v. Archer*,
   977 F.3d 181 (2d Cir. 2020) .......................................... 14, 15, 16

*United States v. Arias*,
   936 F.3d 793 (8th Cir. 2019) ........................................................ 6

*United States v. Arrington*,
   757 F.2d 1484 (4th Cir. 1985) ........................................ 13, 14, 22

*United States v. Asgari*,
   940 F.3d 188 (6th Cir. 2019) ........................................................ 5

*United States v. Balter*,
   91 F.3d 427 (3d Cir. 1996) ......................................................... 24

*United States v. Bennett*,
   874 F.3d 236 (5th Cir. 2017) ...................................................... 24

*United States v. Benson*,
   957 F.3d 218 (4th Cir. 2020) ........................................ 22, 27, 28

*United States v. Brandao*,
   448 F. Supp. 2d 311 (D. Mass. 2006) .......................................... 2

*United States v. Bright*,
   630 F.2d 804 (5th Cir. 1980) ...................................................... 24

*United States v. Brown*,
   934 F.3d 1278 (11th Cir. 2019) .................................................. 22

*United States v. Bubar*,
   567 F.2d 192 (2d Cir. 1977) ....................................................... 24

*United States v. Caandering*,
   50 F.3d 696 (9th Cir. 1995) ........................................................ 28

*United States v. Cabrera*,
   201 F.3d 1243 (9th Cir. 2000) .................................................... 24

*United States v. Campbell*,
   977 F.2d 854 (4th Cir. 1992) ...................................................... 16

*United States v. Canniff*,
   521 F.2d 565 (2d Cir. 1975) ....................................................... 12

*United States v. Castillo*,
   965 F.2d 238 (7th Cir. 1992) ...................................................... 24

*United States v. Chavez*,
   894 F.3d 593 (4th Cir. 2018) ........................................ 13, 14, 16, 17

*United States v. Cone,*
714 F.3d 197 (4th Cir. 2013)..............................................................................4, 9

*United States v. Depew,*
932 F.2d 324 (4th Cir. 1991)..................................................................................2

*United States v. Edlind,*
887 F.3d 166 (4th Cir. 2010)................................................................................19

*United States v. Fattah,*
914 F.3d 112 (3d Cir. 2019)..................................................................................6

*United States v. Forrest,*
402 F.3d 678 (6th Cir. 2005)................................................................................24

*United States v. Francis,*
82 F.3d 77 (4th Cir. 1996)....................................................................................25

*United States v. Francisco,*
35 F.3d 116 (4th Cir. 1994)................................................................................4, 9

*United States v. Gardner,*
396 F.3d 987 (8th Cir. 2005)................................................................................24

*United States v. George,*
No. 11-cr-250, 2012 WL 256373 (E.D.N.Y. June 29, 2012)..................................2

*United States v. Glantz,*
810 F.2d 316 (1st Cir. 1987)................................................................................27

*United States v. Gomez-Olivas,*
897 F.2d 500 (10th Cir. 1990)..............................................................................24

*United States v. Halteh,*
224 F. App'x 210 (4th Cir. 2007)..........................................................................22

*United States v. Hamilton,*
701 F.3d 404 (4th Cir. 2012)................................................................................19

*United States v. Herrera,*
23 F.3d 74 (4th Cir. 1994)......................................................................................8

*United States v. Iredia,*
866 F.2d 114 (5th Cir. 1986)................................................................................25

*United States v. Johnson,*
337 F.2d 180 (4th Cir. 1964)................................................................................24

*United States v. Johnson,*
587 F.3d 625 (4th Cir. 2009)......................................................................10, 11, 12

*United States v. Jones,*
471 F.3d 535 (4th Cir. 2006)......................................................................10, 24, 27

*United States v. Kotey,*
— F. Supp. 3d — , 2021 WL 3088012 (E.D. Va. 2021)........................................5

iv

*United States v. Lyons,*
   740 F.3d 702 (1st Cir. 2014) ................................................................. 24

*United States v. MacDonald,*
   779 F.2d 962 (4th Cir. 1985) ................................................................. 22

*United States v. Marshall,*
   872 F.3d 213 (4th Cir. 2017) ................................................................... 2

*United States v. Martinez,*
   763 F.2d 1297 (11th Cir. 1985) ....................................................... 16, 21

*United States v. Meija,*
   448 F.3d 436 (D.C. Cir. 2006) ................................................................. 6

*United States v. Metzger,*
   3 F.3d 756 (4th Cir. 1993) ....................................................................... 2

*United States v. Millender,*
   970 F.3d 523 (4th Cir. 2020) .......................................................... 13, 16

*United States v. Moody,*
   2 F.4th 180 (4th Cir. 2021) .................................................................... 16

*United States v. Osmakac,*
   868 F.3d 937 (11th Cir. 2017) ................................................................. 6

*United States v. Quinones,*
   511 F.3d 289 (2d Cir. 2007) .................................................................. 12

*United States v. Rafiekian,*
   991 F.3d 529 (4th Cir. 2021) ......................................................... passim

*United States v. Raza,*
   876 F.3d 604 (4th Cir. 2017) ................................................................. 29

*United States v. Runyon,*
   707 F.3d 475 (4th Cir. 2013) ................................................................. 27

*United States v. Saint Louis,*
   889 F.3d 145 (4th Cir. 2018) ...................................................... 26, 27, 28

*United States v. Sanchez,*
   969 F.2d 1409 (2d Cir. 1992) ................................................................ 17

*United States v. Sanders,*
   95 F.3d 449 (6th Cir. 1996) ................................................................... 22

*United States v. Savage,*
   885 F.3d 212 (4th Cir. 2018) ............................................................. 4, 11

*United States v. Sawyer,*
   347 F.3d 372 (4th Cir. 1965) ................................................................. 12

*United States v. Scheetz,*
   293 F.3d 175 (4th Cir. 2002) ................................................................. 28

*United States v. Serrano-Delgado*,
   375 F. Supp. 3d 157 (D.P.R. 2019) ............................................................ 2

*United States v. Shipp*,
   409 F.2d 33 (4th Cir. 1969) ...................................................................... 15

*United States v. Sinclair*,
   301 F. App'x 251 (4th Cir. 2008) ............................................................ 19

*United States v. Singh*,
   518 F.3d 236 (4th Cir. 2008) ........................................................ 13, 14, 15

*United States v. Smalls*,
   720 F.3d 193 (4th Cir. 2013) ...................................................................... 3

*United States v. Soudan*,
   812 F.2d 920 (5th Cir. 1986) .................................................................... 25

*United States v. Souder*,
   436 F. App'x 280 (4th Cir. 2011) ............................................................ 17

*United States v. Tapaha*,
   891 F.3d 900 (10th Cir. 2018) .................................................................... 7

*United States v. Wallace*,
   515 F.3d 327 (4th Cir. 2008) .............................................................. 23, 29

*United States v. Wilkens*,
   742 F.3d 354 (8th Cir. 2014) ...................................................................... 7

*United States v. Williams*,
   479 F.2d 1138 (4th Cir. 1973) .................................................................. 23

*United States v. Wilson*,
   135 F.3d 291 (4th Cir. 1998) ...................................................... 12, 23, 28, 29

*United States v. Wilson*,
   605 F.3d 985 (D.C. Cir. 2010) .................................................................... 6

*United States v. Zayyad*,
   741 F.3d 452 (4th Cir. 2014) ...................................................................... 5

*United States v. Zitron*,
   810 F.3d 1253 (11th Cir. 2016) ................................................................ 24

*Volvo Trademark Holding Aktiebolaget v. Clark Machinery Co.*,
   510 F.3d 474 (4th Cir. 2007) .............................................................. 4, 23

*Williams v. Bauman*,
   759 F.3d 630 (6th Cir. 2014) ...................................................................... 6

*Wright v. West*,
   505 U.S. 277 (1992) ............................................................................ 4, 11

**Rules**

Fed. R. Crim. P. 33 ................................................................................................................. 1

Fed. R. Crim. P. 45 ................................................................................................................. 1

Fed. R. Crim. P. 51 ............................................................................................................. 2, 5

Fed. R. Crim. P. 52 ................................................................................................................. 2

## ARGUMENT

None of the grounds advanced in defendant's renewed motion for a new trial have merit. As indicated by the Fourth Circuit's thorough analysis, the jury's verdict is well supported by the evidence, and none of the other claims of error warrant a new trial.

## I.      Issues related to DX66 do not warrant a new trial.

Defendant argues that issues related to DX66 warrant a new trial. This contention is incorrect for several reasons. First, these issues are untimely and forfeited because defendant did not raise them in his original Rule 33 motion. New arguments cannot be raised in reply briefing, and even then, defendant mentions the exhibit exclusively within the context of evidentiary arguments as to Count Two, not as independent errors relating to discovery and closing argument. Second, issues related to the adequacy of DX66 go to privileged material that the government addresses by *ex parte* memorandum filed *in camera*. Third, the use of the exhibit at trial contravened neither defendant's constitutional rights nor constituted prosecutorial misconduct warranting a new trial.

### A.      Defendant's CIPA arguments are untimely and thus forfeited.

Rule 33 provides that a motion for a new trial "grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict." Fed. R. Crim. P. 33(b)(2). Rule 45 likewise provides that a court may extend this time before that time expires but after that time expires only "if the party failed to act because of excusable neglect." Fed. R. Crim. P. 45(b)(1). The time limitations for post-trial motions have been repeatedly confirmed as mandatory claims-processing rules, which are "inflexible" when properly invoked. *E.g.*, *Eberhart v. United States*, 546 U.S. 12 (2006) (Rule 33); *Carlisle v. United States*, 517 U.S. 416 (1996) (Rule 29).[1]

---

[1]      Throughout this memorandum, the government has omitted internal quotation marks, alterations, and citations, unless otherwise specified. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

In addressing the precise time limitations of Rule 33, the Supreme Court held that the government had forfeited its defense when it "failed to raise a defense of untimeliness until after the District Court had reached the merits." *Eberhart*, 546 U.S. at 19. The Fourth Circuit has also held that where the government does not assert a procedural defense before addressing an argument on the merits, it has waived the defense of waiver or forfeiture. *E.g.*, *United States v. Metzger*, 3 F.3d 756, 757 (4th Cir. 1993). Here, neither of those events took place.

Defendant had 23 days to file a Rule 33 motion and did so, asserting six different errors warranting a new trial. *See* Dkts. 359, 362. Notably, while defense counsel objected at trial on two grounds after the prosecution's rebuttal argument, neither concerned DX66.[2] *See, e.g.*, Tr. 1187:5–1189:15. No ground asserted as error issues related to discovery or the government's reference to DX66 in closing. Instead, the defendant mentioned DX66 and CIPA only in reply, in a section addressing the sufficiency of the evidence underlying Count Two. *See* Dkt. 362, at 9–10. Even assuming that this mention sufficed to raise a new, independent new-trial ground (*but see infra*), defendants cannot raise such arguments for the first time in reply (*see United States v. Smalls*, 720 F.3d 193, 197 (4th Cir. 2013)), particularly where it is raised outside of the 23-day period the Court allowed for new-trial motions and is thus also an untimely new argument.

Defendant asserts that the government waived the mandatory nature of the timeliness bar

---

[2]     At a minimum, even if defendant's argument about the government's use of DX66 in closing is not untimely, Federal Rule of Criminal Procedure 51(b) required him to raise this objection at the time of the closing, as he did with other grounds. His failure to "object at the time of the allegedly offensive statements" requires the application of the plain-error standard. *United States v. Depew*, 932 F.2d 324, 327 (4th Cir. 1991); Fed. R. Crim. P. 52(b); *cf.*, *e.g.*, *United States v. Brandao*, 448 F. Supp. 2d 311, 317–18 (D. Mass. 2006) (citing case law holding that district courts apply plain-error to arguments raised in Rule 33 motions without a contemporaneous objection); *United States v. George*, No. 11-cr-250, 2012 WL 256373, at *18 (E.D.N.Y. June 29, 2012) (same); *United States v. Serrano-Delgado*, 375 F. Supp. 3d 157, 166 (D.P.R. 2019) (applying plain-error review to prosecutorial misconduct claim without contemporaneous objection).

by failing to move for a sur-reply and by addressing his arguments on the merits at the Rule 29 hearing. Both contentions are incorrect. First, the government did not address the merits of the argument defendant is now presenting as his CIPA ground: that he was afforded inadequate discovery or that the use of the exhibit in closing prejudiced him. *See* 9/12/19 Tr. 38–41. The government addressed only the appropriateness of considering DX66 on *sufficiency review*, whether because of the temporal requirement to look at the evidence as of specific points in time (*id.* at 38–39) or whether the exhibit was susceptible to inculpatory inferences when the government was entitled to receive the benefit of every such inference (*id.* at 39–41).

Second, and relatedly, defendant referenced DX66 and CIPA in one subsection of his evidentiary sufficiency arguments under Rule 29 related to Count Two. Previously, the only mention of DX66 in defendant's Rule 33 motion occurred when defendant asked for a new trial on weight of the evidence grounds. *See also United States v. Rafiekian*, 991 F.3d 529, 551 n.24 (4th Cir. 2021) (observing that defendant's Rule 33 motion only mentioned "a summary of classified information that referenced Flynn and Alptekin … in support of his argument that the verdict was against the weight of the evidence"). Accordingly, because defendant again only referenced DX66 and CIPA in the context of evidentiary weight arguments on reply, the government did not have adequate notice that defendant was claiming the existence of entirely new seventh and eighth errors relating to discovery and closing argument issues, instead of merely continuing his previous arguments about DX66 on the weight of the evidence. The government had no indication that it needed to take the extraordinary step of seeking to file a sur-reply or to request further briefing and thus has not "waived waiver." *E.g.*, *United States v. Cone*, 714 F.3d 197, 216 n.12 (4th Cir. 2013) ("Had [defendant] raised an independent challenge to the government's closing remarks, the government could have asserted the waiver bar in response, but was never put on notice to do so."). Now is the

first instance in which the government has an opportunity to address the timeliness and preservation of defendant's arguments, once defendant has made clear that he is asserting independent discovery and prosecutorial misconduct errors warranting a new trial. *See Volvo Trademark Holding Aktiebolaget v. Clark Machinery Co.*, 510 F.3d 474, 481 (4th Cir. 2007) ("[U]nder the mandate rule a remand proceeding is not the occasion for raising new arguments or legal theories.").

Nor were discovery issues and new objections to closing argument an appropriate or obvious rebuttal to the government's responsive briefing. It is blackletter law that on sufficiency review, the Court "must assume that the jury resolved all contradictions in the testimony in favor of the Government" and must "allow the government the benefit of all reasonable inferences from the facts proved to those sought to be established." *United States v. Savage*, 885 F.3d 212, 219–20 (4th Cir. 2018); *see also Wright v. West*, 505 U.S. 277, 296–97 (1992) (reiterating that "*all of the evidence* is to be considered in the light most favorable to the prosecution" and applying that to defendant's own testimony on the stand). Moreover, the government is fairly entitled to comment on—and argue for—any inculpatory inference that arises from the admitted evidence. *See, e.g.*, *United States v. Francisco*, 35 F.3d 116, 120 (4th Cir. 1994). The government's argument that it was entitled to an inculpatory inference from that exhibit is unremarkable and completely unrelated to arguments about the adequacy of discovery or the propriety of a closing argument. Defendant cannot fairly claim to raise entirely new grounds in reply as a purported rebuttal to an unrelated argument.

Defendant's late-raised new-trial ground related to the adequacy of discovery surrounding DX66 is untimely, forfeited, and procedurally barred after remand from the Fourth Circuit. The Court should deny the new-trial motion on this ground without need for further inquiry.

**B.      Certain of defendant's arguments implicate privileged information and therefore are not addressed in this public filing.**

Defendant has argued that discovery of material surrounding DX66 was inadequate and has requested that the Court order discovery to permit defense counsel to make additional arguments. Because these arguments go to the discoverability of privileged information, the government has addressed these arguments in a separate *ex parte* statement, filed *in camera* on the same day as it files this memorandum. *See, e.g.*, *United States v. Asgari*, 940 F.3d 188, 191–92 (6th Cir. 2019); *United States v. Al-Farekh*, 956 F.3d 99, 107–08 (2d Cir. 2020); *United States v. Kotey*, — F. Supp. 3d — , 2021 WL 3088012, at *1–5 & n.2 (E.D. Va. 2021).

**C.      Defendant's remaining arguments are unavailing.**

Defendant suggests that the discovery of material underlying DX66 implicates constitutional rights in the form of the Sixth Amendment confrontation and counsel rights and that the government misused the exhibit before the jury. *See* Def. Mot. 10. None of these contentions are correct.[3]

Defendant cites *United States v. Abu Ali*, 528 F.3d 210 (4th Cir. 2008), for his Confrontation Clause claim, but the relevant holdings of that case are fatal to his argument. In *Abu Ali*, the

---

[3]      Defendant's sole citation for invoking the Sixth Amendment counsel right is to the first paragraph of *Missouri v. Frye*, 566 U.S. 134, 138 (2012), in which the Supreme Court merely recounts that the question presented "is whether the constitutional right to counsel extends to the negotiation and consideration of plea offers that lapse or are rejected." Defendant offers no further explanation, *Frye* has no bearing on any issue presented in this case, and a single reference to a right with a generic citation does not preserve an argument. *See, e.g.*, *Clark v. Brown*, — F. Supp. 3d — , 2021 1697408, at *6 n.16 (E.D. Va. 2021) ("This one sentence footnote does not, however, sufficiently raise or preserve this argument for review."). Additionally, even if the Court finds defendant adequately raised some arguments in his original reply brief, that brief makes no mention of a Sixth Amendment right to counsel argument, which is indisputably untimely now. *See, e.g.*, Fed. R. Crim. P. 51(b); *United States v. Zayyad*, 741 F.3d 452, 459 (4th Cir. 2014) ("[A]n objection on one ground does not preserve objections on different grounds on appeal.").

Fourth Circuit expressly held that the district court had not abused its discretion in denying discovery to defense counsel of classified materials, nor in excluding defense counsel from CIPA proceedings, even under the Confrontation Clause. *See* 528 F.3d at 253. Instead, what the Fourth Circuit found unconstitutional was that the government sought to introduce classified material *to the jury* without disclosing the same versions to the defendant. *See ibid*. In other words, "[t]he end result, therefore, was that the jury was privy to the information that was withheld from Abu Ali." *Id.* at 254. The Fourth Circuit noted that "[t]here is a stark difference between ex parte submissions from prosecutors which protect the disclosure of irrelevant, nonexculpatory, or privileged material, and situations in which the government seeks to use *ex parte* information in court as evidence to obtain a conviction." *Id.* at 255. "What the government cannot do is hide the evidence from the defendant, but give it to the jury. Such plainly violates the Confrontation Clause." *Ibid*.

That fact pattern is not remotely present here.[4] In the first instance, the government did not introduce DX66 into evidence. In fact, the government did not seek to use DX66 as evidence *at all* in its case in chief (and did not present a rebuttal case). That alone prevents the exhibit from

---

[4]     To the extent defendant argues that pretrial discovery implicates the Confrontation Clause, the law is uniformly to the contrary. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 53 (1987) (plurality opinion) (rejecting an attempt to "transform the Confrontation Clause into a constitutionally compelled rule of pretrial discovery" because the Clause "is a *trial* right," which "does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony"). Every circuit the government has found addressing the issue since *Ritchie* has followed the plurality's views. *See United States v. Arias*, 936 F.3d 793, 799 (8th Cir. 2019); *United States v. Fattah*, 914 F.3d 112, 179 (3d Cir. 2019); *United States v. Osmakac*, 868 F.3d 937, 956 (11th Cir. 2017); *Williams v. Bauman*, 759 F.3d 630, 636 (6th Cir. 2014); *United States v. Wilson*, 605 F.3d 985, 387 (D.C. Cir. 2010); *Tapia v. Tanzy*, 926 F.2d 1554, 1559 (10th Cir. 1991); *see also United States v. Meija*, 448 F.3d 436, 458 (D.C. Cir. 2006) (rejecting Confrontation Clause argument in CIPA context). The Fourth Circuit has strongly suggested the same. *See Abu Ali*, 528 F.3d at 245 ("A defendant's right to see the evidence that is tendered against him *during* trial, however, does not necessarily equate to a right to have classified information disclosed to him *prior* to trial."); *id.* at 253 ("Nor do we think that the district court's exclusion of Abu Ali and his uncleared counsel from the CIPA proceedings ran afoul of the Confrontation Clause.").

being a "witness[] against him" within the plain text of the Sixth Amendment. *See* U.S. Const.,

amend VI ("In all criminal prosecutions, the accused shall enjoy the right … to be confronted with

the witnesses against him …."); *see also Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 313–14

(2009) ("While the Confrontation Clause guarantees a defendant the right to be confronted with

the witnesses 'against him,' the Compulsory Process Clause guarantees a defendant the right to

call witnesses 'in his favor.' The text of the Amendment contemplates two classes of witnesses—

those against the defendant and those in his favor.").

Indeed, the Supreme Court has routinely stated that the "main and essential purpose of

confrontation is to secure for the opponent the opportunity to cross-examine" and only guarantees

"an *opportunity* for cross-examination, not cross-examination that is effective in whatever way,

and to whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 678–79

(1986). When a defendant introduces his own evidence, the ability to "cross-examine" it is simply

not implicated; he is not an "opponent" to his own case and the evidence he wishes to adduce. *See*

*United States v. Wilkens*, 742 F.3d 354, 364 (8th Cir. 2014) ("[T]he excluded testimonial evidence

is derived from the direct examination of his own witnesses who were not his accusers. … Thus,

the Confrontation Clause argument is misplaced as it does not involve confronting any 'witnesses

against him.'"); *United States v. Tapaha*, 891 F.3d 900, 908 (10th Cir. 2018) (rejecting Confron-

tation Clause argument arising from defense's own witness).

DX66 was the defense's evidence, which it had the option to introduce or not. Had the

defense chosen not to introduce it, it would have been no part of the case at all, and "a defendant

in a criminal case cannot complain of error which he himself has invited." *United States v. Herrera*,

23 F.3d 74, 75 (4th Cir. 1994). Put differently, a defendant cannot introduce his own evidence and

complain that he could not confront or cross-examine it sufficiently. Moreover, once it was introduced, the defense and the government had exactly the same content from which to make their case to the jury; the asymmetry present in *Abu Ali* here was wholly absent.

The Supreme Court's discussion of evidence and trial strategy in *Ohler v. United States*, 529 U.S. 753 (2000), is instructive. There, the Supreme Court recognized the "well-established commonsense principle" that a party cannot introduce evidence and then complain that the evidence rendered the trial unfair. *Id.* at 755. Rejecting a testifying defendant's argument that introducing evidence of her own prior conviction put her in a catch-22, the Supreme Court held that these arguments "tend to obscure the fact that both the Government and the defendant in a criminal trial must make choices as the trial progresses." *Id.* at 757. A defendant must decide whether to testify to offer an "innocent or mitigating explanation for evidence that might otherwise incriminate" but if she does, "she is subject to cross-examination, including impeachment by prior convictions, and the decision to take the stand may prove damaging instead of helpful." *Ibid.* So too here: the defense had the choice whether to introduce DX66. Once it chose to introduce the evidence, it subjected the exhibit to the adversary process and accepted the possibility that it may end up harming their case. Having done so, the defense cannot then complain, after the fact, that the evidence turned out to be harmful or that their choice to introduce it somehow deprived the trial of fairness.

Likewise "seek[ing] to avoid the consequences of this well-established commonsense principle" (*Ohler*, 529 U.S. at 755), the defense now argues that it was the government's use of the exhibit in rebuttal that created prejudice. The defense says that the government "asked the jury to convict Rafiekian based on its characterization of the underlying classified information as disclosing a preexisting conspiracy … knowing that Rafiekian, who had not seen the underlying evidence,

could do nothing to effectively rebut that inference." Def. Mot. 12. This contention is belied by the record and by defense counsel's own failure to object at the time. *See Cone*, 714 F.3d at 217 ("We have long held that the failure to object to a prosecutor's statements made during closing arguments constitutes a waiver of that claim of error.").[5]

In fact, the government never argued to the jury that the exhibit was inculpatory. Instead, the government argued that it had no real evidentiary weight at all. Specifically, the government offered a hypothetical in which two bank robbers, Tom and Dick, had committed bank robberies, which the government knew about. The government then postulated that if a third person, Harry, "decides to join Tom and Dick in another bank robbery," the fact that "the government knew about Tom and Dick and their string of bank robberies … and didn't mention Harry until Harry joined the bank robbery scheme, so what?" Tr. 1182:18–1183:3. The government then said if you swap in Flynn, Alptekin, and Rafiekian for these three individuals, "so take a look at this, at this exhibit … and consider *it says nothing. It really says nothing at all, folks.*" Tr. 1183:6–18 (emphasis added).

The government is fairly entitled to comment on—and argue for—any inculpatory infer-ence that arises from admitted evidence, even the defense's own case. *See, e.g.*, *Francisco*, 35 F.3d at 120 ("It is undisputed that closing argument is not merely a time for recitation of uncontroverted facts, but rather the prosecution may make fair inferences from the evidence."). But the govern-ment did not even go that far. Arguing the exhibit "says nothing at all" is not the same as arguing that it constitutes substantive evidence of guilt. Similarly, offering a hypothetical to show how an exhibit has no exculpatory value is not the same thing as arguing it affirmatively proves guilt. The

---

[5] As discussed *supra* note 2, defendant's failure to object on this ground at the time of the govern-ment's closing—and potentially obtain a curative instruction—requires, at minimum, the applica-tion of plain-error review to this argument.

government did not rely on any facts not in evidence, nor did it suggest to the jury that it had some secret information suggesting defendant's guilt.[6] Indeed, the government did not argue anywhere in its closing argument that DX66 constituted evidence of defendant's guilt or that it proved that he had joined a preexisting conspiracy. It argued only that the absence of the defendant's name from the government's information "really says nothing at all." Trial Tr. 1183:6–18.

To suggest that the prosecution may not even argue in closing that defense evidence should be given no weight is "to strike at the heart of the adversary system," as "[a]dversaries are supposed to expose the weakness of each other's evidence, and the prosecution commit[s] no error in doing just that." *United States v. Jones*, 471 F.3d 535, 543 (4th Cir. 2006). The Fourth Circuit has repeatedly rejected attempts to limit the government's ability to challenge defense evidence, noting that "[c]losing argument, in particular, is a time for energy and spontaneity, not merely a time for recitation of uncontroverted facts." *United States v. Johnson*, 587 F.3d 625, 632 (4th Cir. 2009); *see also Abu Ali*, 528 F.3d at 243 ("Each side deserves latitude in the presentation of its closing remark and courts do not exist to superintend these arguments."). "[T]o parse through a prosecutor's closing statement for minor infelicities loses sight of the function of our adversary system, which is to engage opposing views in a vigorous manner." *Johnson*, 587 F.3d at 633.

Indeed, like the defendant in *Johnson*, defendant here seems to suggest that the prosecution engaged in improper bolstering, which occurs when the government suggests "that the testimony of a witness is corroborated by evidence known to the government but not known to the jury." *Ibid.* But like in *Johnson*, this argument "has no merit"; the prosecution made no mention of any

---

[6]       By contrast, defense counsel openly invited the jury to speculate about the existence of potential other evidence based on DX66: "Read [DX66] carefully. It makes your head spin. We've got lots of secrets, lots of bits of information about Alptekin and Flynn and what they were doing, but we're not going to tell you. We've got them, but we're not going to tell you. We don't want you to know." Trial Tr. 1153:1–21.

additional information the government possessed that might inculpate defendant, and "[i]t is thus pure speculation to suppose that the jury understood" the argument that way. *Ibid.* Even if the Court were to find the remark ambiguous, the Fourth Circuit in this case repeated the longstanding admonition that "a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging interpretation or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *Rafiekian*, 991 F.3d at 551 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974)).

To be sure, the government did argue for an inculpatory inference from the exhibit in post-trial briefing—but only after the jury returned its verdict, when the law compels such inferences and when, by chronology, such arguments cannot possibly have influenced the jury. Under Rule 29, the Court "*must assume* that the jury resolved all contradictions in the testimony in favor of the Government" and must "allow the government the benefit of *all reasonable inferences from the facts proved* to those sought to be established." *Savage*, 885 F.3d at 219–20 (emphases added); *see also Wright*, 505 U.S. at 296–97 (reiterating that the sufficiency presumption applies even to defense testimony). A key defense argument both at trial and in post-trial briefing was that the government had not shown that Turkey was behind the FIG engagement. *See, e.g.*, Trial Tr. 1154:12–18, 1164:3–5, 1171:25–1172:12. Because this exhibit contains evidence that the government of Turkey had some relationship with Alptekin's engagement of Flynn concerning Fethullah Gulen, the government was fully entitled to argue that, once the Court considered defense evidence, it was compelled to draw the rational inculpatory inference that the exhibit supported the government of Turkey's involvement in the FIG engagement.

Lastly, even if this Court were to conclude there were some impropriety in the prosecution

closing, it would not warrant a new trial unless defendant can show that the comments "so preju-dicially affected [his] substantial rights as to deprive [him] of a fair trial." *Johnson*, 587 F.3d at 633. None of the six factors from *United States v. Wilson*, 135 F.3d 291, 299 (4th Cir. 1998), support a finding of such severe prejudice here: (1) the remarks would not tend to mislead the jury, as they argued merely that the exhibit "really says nothing at all"; (2) they were isolated, compris-ing 30 lines in more than 960 lines of the government's closing and rebuttal argument; (3) the government's case—which did not even include DX66—otherwise had strong evidence of guilt; (4) the comments were not deliberately intended to divert attention to extraneous matters; (5) they were a fair rebuttal to defense counsel's argument that openly invited the jury to speculate about what might lay behind the exhibit (Trial Tr. 1153:1–21); and (6) the jury expressly received in-structions that they were not to consider information or evidence not admitted at trial (*see*, *e.g.*, Dkt. 354-5, at 12–13) and were instructed after both parties' closing to adhere to those instructions, rather than the parties' arguments (Trial Tr. 1189:19–1190:3). Indeed, as the Second Circuit has pointed out, in addition to requiring a higher standard of review, defense counsel's failure to object at the time of closing "indicates counsel's own difficulty in finding any prejudice" from the com-ments. *United States v. Canniff*, 521 F.2d 565, 572 (2d Cir. 1975); *accord United States v. Qui-nones*, 511 F.3d 289, 308 (2d Cir. 2007) (noting that where closing did not prompt an objection, that indicates "that the incident did not affect the trial atmosphere in a manner disadvantageous to defendant"); *see also United States v. Sawyer*, 347 F.3d 372, 374 (4th Cir. 1965) (concluding that "the reason no objection was voiced against the Assistant United States Attorney's argument is simply that the defense counsel perceived no ground for objection, as we perceive none.").

## II.     The weight of the evidence does not support a new trial.

Defendant understates the standard for a new trial based on weight of the evidence and

omits discussions of the evidence that strongly weigh in the government's favor. The Fourth Circuit has expressly cautioned that new trials on weight-of-the-evidence grounds are "disfavored." *United States v. Chavez*, 894 F.3d 593, 607 (4th Cir. 2018). Moreover, the Fourth Circuit has instructed that while the Court is permitted to draw different inferences from the jury, "[u]ltimately … determining witness credibility and weighing conflicting evidence are the responsibility of the factfinder," and courts "do not lightly disturb jury verdicts." *Chavez*, 894 F.3d at 608. Indeed, *Chavez* makes explicit that "even disagreement with the jury's verdict would not mandate a new trial." *Ibid.*. Thus, while this Court does possess some discretion to weigh the evidence under Rule 33, that discretion is still sharply cabined. *See United States v. Millender*, 970 F.3d 523, 532 (4th Cir. 2020) (noting that a district court "must appreciate the limits on its discretion in making this decision" and instructing that it "must remain cognizant of the demanding standard for jettisoning a jury verdict in favor of a new trial").

In addition to the deference owed to the jury's conclusions, the weight of the evidence of innocence must substantially outweigh the evidence supporting guilt. The Fourth Circuit has instructed that new trials should be granted only "[w]hen the evidence weighs *so heavily against* the verdict that it would be unjust to enter judgment." *United States v. Arrington*, 757 F.2d 1484, 1485–86 (4th Cir. 1985) (emphasis added). Likewise, the Fourth Circuit has reiterated that "a trial court should exercise its discretion to award a new trial sparingly" and only "in the rare circumstance when the evidence weighs heavily against it." *United States v. Singh*, 518 F.3d 236, 249 (4th Cir. 2008). By contrast, a district court abuses its discretion to order a new trial when the evidence "did not at all weigh heavily against the verdict … but was wholly sufficient to support it." *Singh*, 518 F.3d at 250. In short, even if this Court were to think the jury was wrong, it could

not order a new trial unless the evidence weighed so heavily in favor of innocence that a miscar-riage of justice would occur.

Defendant suggests that the government's beyond-a-reasonable-doubt standard somehow lessens his burden to show that the weight of the evidence supports a new trial. *See* Def. Mot. 19. This is incorrect. The Fourth Circuit has repeatedly instructed that the weight of the evidence must be heavily against the jury's verdict to warrant a new trial. *See, e.g.*, *Arrington*, 757 F.2d at 1485. In other words, the evidence must not only weigh against guilt—it must weigh *heavily* against guilt, so heavily "that it would be unjust to enter judgment." *Ibid.* Thus, it is not enough for this Court to be simply unconvinced of the defendant's guilt or to have a reasonable doubt itself. *Chavez*, 894 F.3d at 608. Indeed, *Arrington* cited to the Supreme Court's discussion of the standard in *Tibbs v. Florida*, 457 U.S. 31, 37–38 & n.11 (1987), in which the Court explained that the standard requires "a determination by the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other" and that "despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the ver-dict that a serious miscarriage of justice may have occurred." *Cf. Arrington*, 757 F.2d at 1485. This statement of the law is in accord with the vast weight of federal circuit authority, which, like *Chavez*, requires deference to the jury's resolution of conflicting evidence even under Rule 33 and requires a defendant to show that the evidence "preponderates heavily" against the verdict. *See United States v. Archer*, 977 F.3d 181, 188–89 (2d Cir. 2020) (citing numerous cases). Summariz-ing this authority, the Second Circuit has noted that "absent a situation in which the evidence was patently incredible or defied physical realities, or where an evidentiary or instructional error com-promised the reliability of the verdict, a district court must defer to the jury's resolution of con-

14

flicting evidence" and must "consider any reliable trial evidence as a whole, rather than on a piecemeal basis." *Ibid*.; *see also United States v. Shipp*, 409 F.2d 33, 37 (4th Cir. 1969) (applying the "patently incredible" standard on weight-of-the-evidence review).

This demanding standard cannot be met here. The Fourth Circuit's decision in this case is replete with indications that the court considered the evidence "wholly sufficient to support [the verdict]." *Singh*, 518 F.3d at 250. The panel expressly noted that the complexities of prosecuting covert action by agents of foreign governments, which means the government may necessarily "rely on circumstantial evidence and reasonable inferences." *Rafiekian*, 991 F.3d at 545. Reciting at length from the evidentiary record underlying the substantive § 951 count, the court noted that "the Government presented substantial evidence that Project Truth and Project Confidence were, in fact, one and the same" as well as "substantial evidence that Alptekin served as Turkey's intermediary." *Id.* at 546; *see also id.* at 551 ("Further, over the broader trial, the Government presented ample evidence *other than* Alptekin's statements from which the jury could infer the nature of his connections to Turkey."). While defendant suggests that this Court should find the financial arrangements unpersuasive (Def. Mot. 19), the Fourth Circuit saw them quite differently, holding that the financial structure "*strongly suggests* that an entity other than Alptekin was actually financing Project Confidence," particularly coupled with "other evidence of Turkey's involvement." *Id.* at 546 (emphasis added). Additionally, the court observed that "the Government showed that Rafiekian carried out Project Truth/Confidence subject to Turkish 'direction' conveyed through Alptekin" with reference to the New York meeting and subsequent communications. *Ibid.* Likewise, the court observed that the government's evidence of Rafiekian and Alptekin's "joint conduct *easily establishes* that the two agreed to operate—if not explicitly, then implicitly—subject to Turkish direction." *Id.* at 548 (emphasis added). The court then went on to "find *considerable*

15

*evidence* in the record indicating that Rafiekian and Alptekin together sought to avoid disclosing Turkey's involvement to the Attorney General, as § 951 requires." *Ibid.* (emphasis added).[7]

In short, the Fourth Circuit's decision did not treat the evidence in this case as close at all. *But cf. Millender*, 970 F.3d at 529 (expressly observing that it perceived "no error in the district court's thorough reasoning about most of this evidence"); *United States v. Moody*, 2 F.4th 180, 196 (4th Cir. 2021) (observing when evidence falls "just barely" inside the sufficiency standard). The Court should consider that view persuasive. *See, e.g.*, *Ga. Pac. Consumer Prods., LP v. Von Drehle Corp.*, 710 F.3d 527, 536 n.13 (4th Cir. 2013) ("The mandate rule requires that the district court implement both the letter and spirit of the mandate, taking into account our opinion and the circumstances it embraces."). But in any event, this is not one of the rare cases in which the evidence can be said to weigh *heavily against* the verdict, even if this Court initially had concerns about the adequacy of the government's proof on certain elements. *See, e.g.*, *Chavez*, 894 F.3d at 593 (denying new trial even where the "defense was not entirely lacking in evidentiary support"). For example, the Eleventh Circuit has noted that "courts have granted new trial motions based on weight of the evidence only where the credibility of the government's witnesses had been impeached and the government's case was marked with uncertainties." *United States v. Martinez*, 763 F.2d 1297, 1313 (11th Cir. 1985); *see also Archer*, 977 F.3d at 188–89 (requiring patently incredible evidence or error affecting the reliability of evidence); *United States v. Campbell*, 977 F.2d 854, 859 (4th Cir. 1992) (affirming district court's grant of a new trial where it deemed trial testimony not credible because it was contradicted by the same witness's grand jury testimony).

---

[7]      Defendant suggests that a lack of evidence related to the FARA object of the conspiracy would warrant a new trial. *See, e.g.*, Def. Mot. 20. But the Fourth Circuit was unequivocal about the strength of the § 951 object of the conspiracy, and the conviction can and should stand on either object alone. *Cf. Rafiekian*, 991 F.3d at 547 (noting a dual-object conspiracy conviction needs only one valid object to be sustained).

None of the government's witnesses were impeached as to credibility, nor did the defense seriously challenge the reliability of the evidence the government adduced.[8] *See, e.g.*, *United States v. Sanchez*, 969 F.2d 1409, 1415 (2d Cir. 1992) (holding district court was wrong to overrule jury's credibility findings based on insufficient inconsistencies among government witnesses). Moreover, the Fourth Circuit concluded that the evidentiary and instructional issues that concerned this Court in its first Rule 33 order were not in fact erroneous or prejudicial. *See Rafiekian*, 991 F.3d at 550–52. In light of these features, the defense's argument boils down to asking this Court simply to disagree with the jury's inferences of guilt, which is not enough to mandate a new trial. *See Chavez*, 894 F.3d at 608.

None of defendant's specific evidentiary arguments demonstrate that the evidence weighs sufficiently heavily against the verdict to constitute a serious miscarriage of justice.[9] Defendant rehashes the same arguments by parsing individual pieces of evidence from the government's case and arguing that they, in a vacuum, fail to prove the entirety of the government's case. The first two points argue, respectively, that there is no evidence of an agreement between Rafiekian and

---

[8]     *See also* 9/12/19 Tr. 11:1–15 (Defense Counsel: "I don't think this is a case where credibility determinations play a major role. I think there wasn't testimony from Michael Flynn, there wasn't testimony from Alptekin, you know, that we're asking the jury or the Court to disbelieve in evaluating the jury's verdict.").

[9]     For example, the unpublished case on which defendant repeatedly relies, *United States v. Souder*, 436 F. App'x 280 (4th Cir. 2011), contained evidence affirmatively contradicting the government's proof. A transcript contradicted the statement of the government's key witness. *See id.* at 291. Multiple government witnesses testified to having knowledge of the facts the government contended were concealed from them. *Ibid.* Documentary evidence supported the view that the supposedly omitted facts were disclosed to the purported targets. *Ibid.* Moreover, unlike in this case, the defendants themselves testified and provided testimony supporting their innocent intent. *Id.* at 292. Here, as described below, none of defendant's evidence demonstrates that, for example, he actually disclosed Turkey's direction or control to the Attorney General; to the contrary, his "exculpatory" evidence consists entirely of misleading acts designed to obscure the nature of his activities.

17

any official of the government of Turkey and that the New York meeting provides no evidence that Rafiekian had agreed to operate at Turkey's direction or control. *See* Def. Mot. 18–19. Notably, of course, when the Court previously so held, it was applying a higher standard under § 951 than the Fourth Circuit ultimately adopted, with respect to both the degree of foreign government control and the role of the "legal commercial transaction" proviso. *See Rafiekian*, 991 F.3d at 540, 544.[10] And, as discussed above, the Fourth Circuit concluded that the evidence "easily establishes that [Rafiekian and Alptekin] agreed to operate—if not explicitly, then implicitly—subject to Turkish direction" and that there was "considerable evidence in the record indicating that Rafiekian and Alptekin together sought to avoid disclosing Turkey's involvement to the Attorney General, as § 951 requires." *Id.* at 548 (emphases added).

The government introduced evidence in which Rafiekian himself admitted that the Truth project was for the government of Turkey, and not one iota of evidence supports the defendant's self-exculpatory statement that "Truth" mysteriously changed overnight into "Confidence," which was for Alptekin privately. *See* Tr. 229:4–230:15, 784:15–785:7; *cf.* GX10, 18, 22A. Moreover, where a Turkish official spends a thirty-minute meeting discussing a specific goal of his government (Tr. 407:22–409:11), the defendant reports to Flynn about "very specific expectations" and "elevated expectation on their side" while saying he told the Turkish intermediary that "we deliver

---

[10]     And, of course, as the Fourth Circuit emphasized in its sufficiency ruling, the difficulty of proving foreign government interference necessarily means direct proof may not be available as to every element (*Rafiekian*, 991 F.3d at 545), which makes even more critical the Court's focus on the entire collection of evidence reinforcing the government's case. The Fourth Circuit emphasized, at length, the substantial evidence of that agreement and those instructions, explicit or implicit, by drawing from the whole evidentiary record around Rafiekian's understanding of Alptekin's statements, Rafiekian's admissions about Truth and the sudden flip to Confidence, Alptekin's ongoing oversight, the events of the New York meeting, Rafiekian's behavior after that meeting, financial payments showing Alptekin as a middleman, Rafiekian's characterization of the op-ed, and the list goes on. *See Rafiekian*, 991 F.3d at 545–47.

what we promise" (GX29), and he then later provides a draft op-ed advocating for that specific goal to the same intermediary with the note, "A promise made is a promise kept" (GX 45A, 48A), that is ample evidence both of Turkey's direction or control and Rafiekian's agreement to it. *See, e.g.*, *United States v. Hamilton*, 701 F.3d 404, 409 (4th Cir. 2012) (rejecting argument relying on a lack of documents or witnesses expressly discussing a quid pro quo because "intent can be implied—and it is the jury's role to make such factual inferences."); *United States v. Edlind*, 887 F.3d 166, 176 (4th Cir. 2010) (rejecting the "invitation to adopt a rule that anytime a defendant has, even with a wink and a nod, reminded the witness to 'tell the truth' there is no witness tampering"); *see also* Tr. 410:5–415:4 (McCauley's testimony that defendant told him the meeting would result in follow-on contracts and discussed avoiding filing with the Department of Justice). Notably, of course, before the draft op-ed, the defendant and FIG had a disastrous meeting with Alptekin, in which Alptekin reiterated the goal of seeking extradition, disparaged FIG's work product, and demanded to know, "What am I going to tell Ankara?"[11] Tr. 720:3–723:11. In addition to all the government's other corroborating evidence, this evidence firmly supports the jury's verdict that Turkey was directing or controlling the engagement and that Rafiekian understood and agreed to that direction or control. *See Edlind*, 887 F.3d at 176 (noting that even an express statement to "tell the truth" did not negate "circumstantial evidence of conscious wrongdoing" in committing witness tampering).

Recourse to the defense case does not aid defendant here. Indeed, *all* of defendant's asserted exculpatory evidence is in fact perfectly consistent with guilt and, in some instances, itself

---

[11]    "A question or inquiry is not a statement, and therefore is not hearsay unless it can be construed as an intended assertion." *United States v. Sinclair*, 301 F. App'x 251, 253 (4th Cir. 2008) (citing cases from the Second, Fifth, Seventh, and Tenth Circuits). This question is not an assertion; it is simply evidence of Alptekin and Rafiekian's mutual understanding that they were working for the Turkish government.

damning. For example, defendant appeals to his consultation with lawyers (Def. Mot. 20), even though his meeting with Kelley, the ultimate filer, lasted "15 minutes" in which Kelley simply "took [defendant's] word for it" and asked no further questions (Tr. 847:9–14, 877:8–24); the resulting Lobbying Disclosure Act form was filed two months after the project started (GX 166); it listed two omnibus defense spending bills not remotely related to Fethullah Gulen or FIG's engagement when the filing lawyer had no reason to believe FIG's lobbying had anything to do with those bills (GX 166; 887:11–888:9); and under which a single phone call was made and no lobbying activity was actually conducted (Tr. 889:12–16), while defendant personally and separately attempted to lobby Members of Congress about Gulen, not the supposed bills named in the LDA form (Tr. 479:14–480:8, 418:20–420:2–6; 886:1–17).

Particularly given Rafiekian's understanding from Alptekin that Turkish officials were involved (*e.g.*, GXs 8A, 8B, 9, 13, 16, 17, 17A, 67E, 67J; *Rafiekian*, 991 F.3d at 545) and his other lies about the nature of the kickback payments to Alptekin (Trial Tr. 249:12-9, 780:17–782:13; GXs 18A, 18B, 19, 67M, 93B; *Rafiekian*, 991 F.3d at 548), a sham lobbying disclosure is obviously consistent with defendant's attempts to hide the true nature of the representation and patently inconsistent with good-faith conduct. *See, e.g.*, *United States v. Burgos*, 94 F.3d 849, 867–68 (4th Cir. 1996) (en banc) ("Relating implausible, conflicting tales to the jury can be rationally viewed as further circumstantial evidence of guilt." (citing cases)). Indeed, the Fourth Circuit expressly observed that these exact statements "were consistent with an agreement to avoid disclosing his status as a foreign agent to the Attorney General." *Rafiekian*, 991 F.3d at 548 n.23. Likewise, Rafiekian's statement to U.S. officials that he was working on a documentary about Gulen and identifying Alptekin as a "business contact" is not at all inconsistent with the evidence showing he intended to, and did, hide *Turkey*'s direction and control of the FIG engagement, along with

20

Alptekin. *See ibid.* (finding "considerable evidence … that Rafiekian and Alptekin together sought to avoid disclosing Turkey's involvement to the Attorney General"). These evasive, obfuscatory statements, which are belied by the evidence and thus fully consistent with guilt, do not preponderate heavily against the government's case. *See, e.g.*, *Martinez*, 763 F.2d at 1314 (holding it was an abuse of discretion for a district court to "overturn the credibility choice of the jury" when the government witnesses were unimpeached and the conflict between the government and defense theories was "clear-cut" for the jury).

Nor does the defense evidence about Amsterdam & Partners call into question the government's proof. Nothing limits a foreign government to using only one means or agent to influence U.S. public or political opinions. Indeed, a multiplicity of voices within the United States (particularly those of well-known individuals) undermining Gulen would be self-evidently advantageous by creating the appearance of widespread concern—an advantage lost, however, if the foreign government is revealed to be paying for all of them. Lastly, as the government has pointed out before, that there exists some information suggesting a relationship among Flynn, Alptekin, and the Turkish government on the subject of Gulen without mentioning the defendant is, at best, silent on the defendant's participation and at worst, in light of the other evidence overwhelmingly demonstrating that Rafiekian understood Turkey to be directing the engagement, corroborative of guilt.

Lastly, defendant argues that the Court should grant a new trial on the basis of circumstances surrounding Michael Flynn. *See* Def. Mot. 21–23. First, and contrary to defendant's suggestion, the Court does not have discretion to consider facts not in evidence when making a weight-of-the-evidence determination. The standard itself is plain on this question, which asks whether "the *evidence* weighs so heavily against the verdict that it would be unjust to enter judgment."

21

*Arrington*, 757 F.2d at 1485–86 (emphasis added). Purported facts not admitted at trial and not having been tested by evidentiary standards are not evidence, whichever party they may favor. *See, e.g.*, *United States v. Brown*, 934 F.3d 1278, 1298 (11th Cir. 2019) (holding district courts may not consider evidence not admitted at trial when assessing the weight of the evidence). Indeed, the disposition of charges against other individuals are almost never admitted as substantive evidence at all.[12] *See United States v. Sanders*, 95 F.3d 449, 454 (6th Cir. 1996) (noting that convictions or acquittals of co-defendants or co-conspirators are not admissible at trial except to impeach credibility of testifying witness); *see also United States v. Benson*, 957 F.3d 218, 236–37 (4th Cir. 2020) (holding that "non-prosecution decisions are irrelevant" to guilt); *United States v. Halteh*, 224 F. App'x 210, 214 (4th Cir. 2007) (same). Defendant's argument is simply an attempted end-run around the Fourth Circuit's ruling that defendant's failure to seek a jury instruction or to move for a new trial regarding Flynn in its original motion precludes a new trial on that basis. *See Rafiekian*, 991 F.3d at 551.

Because this non-evidence may not be considered under weight-of-the-evidence analysis, the Court should reject any standalone argument that the circumstances surrounding Flynn should themselves constitute a basis for a new trial. This attempt to shoe-horn this argument into a weight of the evidence section to avoid the defense's failure to raise it earlier is neither timely nor appropriate under the mandate rule, given the Fourth Circuit's rejection of the previous new-trial order on similar grounds. *See Volvo Trademark Holding*, 510 F.3d at 481 ("[U]nder the mandate rule a remand proceeding is not the occasion for raising new arguments or legal theories."). Defendant's

---

[12]     In the context of a motion for a new trial based on newly discovered evidence, for example, the Fourth Circuit has held that to warrant a new trial, the evidence must be both admissible and likely to produce a different result. *See United States v. MacDonald*, 779 F.2d 962, 964 (4th Cir. 1985).

guilt rises and falls on the evidence presented to the jury in his own case.

## III.   The government did not shift the burden of proof to defendant.

Defendant asserts that certain questions to Special Agent Alfredo and then remarks in the prosecutor's rebuttal constituted impermissible burden shifting. That is incorrect. To warrant a new trial, prosecutorial misconduct must "so infect the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. Wilson*, 135 F.3d 291, 297 (4th Cir. 1998). Defendant bears the burden of demonstrating both that the questions and comments (1) were improper and (2) so prejudicially affected defendant's substantial rights so as to deprive him of a fair trial. *See ibid.*[13]

### A.   References to the lack of evidence supporting a defense theory are not improper.

It is blackletter law in the Fourth Circuit that when the defense puts on a case, "the prosecutor may point out that the defense did not offer evidence to contradict the government's case." *United States v. Williams*, 479 F.2d 1138, 1140 (4th Cir. 1973) (citing "the overwhelming weight of authority"). Indeed, it has been the law since at least 1964:

> The prosecutor did not draw improper attention to Edlin's refusal to testify. He merely pointed out that the defense did not introduce evidence to contradict certain of the prosecution's witnesses. Edlin was not the only person who could have refuted the Government's witnesses. The prosecutor addressed himself to the absence of any thing in the record to contradict the Government's version of the case. Under these circumstances his comment was not improper.

---

[13]   When the defense suggested that this testimony might raise burden-shifting concerns, the government offered to hold Special Agent Alfredo's testimony until rebuttal to make clear its responsiveness to the defense case. *See* Tr. 787:22–23. Instead, the Court instructed the government to "just get through it and complete it … all of this that was turned over." Tr. 787:24–788:4. The defense did not ask for any curative instruction, either then or in the final charge. *See United States v. Wallace*, 515 F.3d 327, 331 (4th Cir. 2008) ("[T]he Government correctly points out that if [defendant] wanted an immediate curative instruction, he should have asked the court for one …."). Nonetheless, as indicated below, explicit instructions to that effect were given.

*United States v. Johnson*, 337 F.2d 180, 203 (4th Cir. 1964) (citations omitted). The Fourth Circuit has repeatedly confirmed this rule in the context of a variety of statements. For example, the Fourth Circuit upheld the statement: "if [the defense] had real evidence, don't you think they would have presented it to you?" in response to an alternative defense explanation of the evidence, much as is the case here. *Jones*, 471 F.3d at 543. In doing so, the Fourth Circuit noted that while prosecutors are not permitted "to comment on the defendant's failure to testify," "view[ing] such general comments on the inadequacies of an opponent's case as improper strikes at the heart of the adversary system." *Ibid.*[14]

By contrast, defendant's citation for the impropriety of the remark is a single Fifth Circuit case, whose statement is contrary to the Fourth Circuit's statements of the law in *Williams* and *Jones*. *See, e.g.*, Def. Mot. 25 (citing *United States v. Bennett*, 874 F.3d 236, 251 (5th Cir. 2017)). To the contrary, every single federal circuit applies the same rule as the Fourth Circuit, including in a prior (and therefore superseding) Fifth Circuit decision.[15] *See, e.g.*, *United States v. Bright*, 630 F.2d 804, 825–26 (5th Cir. 1980) ("[I]t is not error to comment on the failure of the defense to produce evidence on a phase of the defense upon which the defendant seeks to rely."); *cf. Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 n.8 (5th Cir. 2006) (explaining the prior-panel rule).

---

[14]   Thus, to the extent defendant is arguing for an interpretation of the Fourth Circuit's statement in *United States v. Saint Louis* that is inconsistent with these decisions, this Court is bound to apply the earlier precedents. *See McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004) (en banc) (holding that in cases where Fourth Circuit panel decisions conflict, the earlier opinion controls).

[15]   *See also United States v. Lyons*, 740 F.3d 702, 730 (1st Cir. 2014); *United States v. Bubar*, 567 F.2d 192, 199 (2d Cir. 1977); *United States v. Balter*, 91 F.3d 427, 441 (3d Cir. 1996); *United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005); *United States v. Castillo*, 965 F.2d 238, 244 (7th Cir. 1992); *United States v. Gardner*, 396 F.3d 987, 991 (8th Cir. 2005); *United States v. Cabrera*, 201 F.3d 1243, 1250 (9th Cir. 2000); *United States v. Gomez-Olivas*, 897 F.2d 500, 503 (10th Cir. 1990); *United States v. Zitron*, 810 F.3d 1253, 1259–60 (11th Cir. 2016).

Indeed, in the seminal cases on which *Bennett* relies, the Fifth Circuit twice approved of comments on the defense's failure to counter or rebut evidence while reserving its disapproval for comments on the defendant's failure to testify or to call a witness equally available to both parties.[16] *See United States v. Iredia*, 866 F.2d 114, 118 (5th Cir. 1986); *see also United States v. Soudan*, 812 F.2d 920, 930 (5th Cir. 1986) ("It is important to distinguish between those comments directed at the defendant's failure to testify and those directed at the defense's failure to counter or rebut evidence. The prosecutor is allowed to comment on 'the failure of the defense (as opposed to defendants) to counter or explain' the testimony presented or evidence introduced.").

Here, the witness testimony and the prosecutor's arguments never addressed the defendant's decision not to testify, nor did they suggest that the defense bore the burden.[17] Instead, they addressed the core defense theory: that, as the FARA registration stated, the engagement was solely for Alptekin and Inovo, a private entity, with no Turkish involvement, and that defendant had been entirely candid the entire time. *See, e.g.*, Trial Tr. 1158–63. Indeed, in the defense's opening statement, defense counsel expressly argued to the jury that Truth and Confidence were wholly distinct projects, with the latter being for Alptekin alone. *See, e.g.*, Trial Tr. 63–64 ("But at a certain point, it switched. Turkey was not going to do it. Alptekin was going to do it. Alptekin

---

[16]    *Bennett* cites *United States v. Anchondo-Sandoval*, 910 F.2d 1234, 1238 (5th Cir. 1990), in which the impropriety addressed by the Fifth Circuit was drawing an inference from the defense's failure to call a witness available to both parties. *Anchondo-Sandoval*, in turn, takes the defense's quote from *Iredia*, which is cited above. Both *Anchondo-Sandoval* and *Iredia* cite the quote's origins in *Soudan*, which explicitly approves the type of comments made here.

[17]    The prosecutor's comments do not come close to meeting the standard the Fourth Circuit has articulated for comments on a defendant's failure to testify. *See, e.g.*, *United States v. Francis*, 82 F.3d 77, 78 (4th Cir. 1996) ("The rule we have consistently applied for ascertaining whether argument by the prosecution constitutes improper comment on a defendant's failure to testify [is] ... 'Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify?'").

basically said, I am going to do this.").

In response, the government pointed to the lack of any contemporaneous corroboration for the defense's proposed distinction between Truth—an engagement defendant had admitted to Covington was a project for the Turkish government—and Confidence. *See* Trial Tr. 1180–81. Moreover, when addressing the lack of evidence supporting the defense theory, the prosecutor made certain the jury understood the placement of the burden of proof. In the paragraphs immediately preceding this response, the prosecutor discussed the burden of proof at length, beginning, "Now, we do have the burden of proof, and we wear it like a mantle." Trial Tr. 1180:8–19. Immediately after discussing the lack of documents, the prosecutor again reminded the jury: "To be clear, our burden is to prove him guilty beyond a reasonable doubt, but if they put on a case, you can expect that it would be the best one they can, and it certainly wasn't much." Tr. 1181:14–17.

This type of argument—arguing the absence of evidence showing an innocent explanation for defendant's actions—falls firmly within the bounds of permissible argument. In fact, in the Fourth Circuit decision defendant cites for this very standard, the prosecutor made a similar argument about absent phone records, stating "What evidence that exists on a physical level is available to both parties. Why didn't [defense counsel] introduce it? She doesn't bear the burden, I do, but my point is consider the context." *United States v. Saint Louis*, 889 F.3d 145, 156 (4th Cir. 2018).[18] Here, as in *Saint Louis*, the defense's primary theme was pointing to innocent explanations for

---

[18]    *Saint Louis* thus also necessarily permits questions asked to a law enforcement witness about the availability of the evidence to the defense. But in any event, this Court explicitly instructed the jury that the burden "never shifts to a defendant for the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence. The defendant is not even obligated to produce any evidence by cross-examining the witnesses for the government." Dkt. 354-5, at 9. Such specific instructions, in conjunction with the presumption that juries follow them, obviate any potential prejudice. *See, e.g.*, *Rafiekian*, 991 F.3d at 550; *Benson*, 957 F.3d at 235.

defendant's conduct, and the government responded by pointing out the lack of corroboration for those defense theories, which the Fourth Circuit concluded that was a permissible rebuttal. *See id.* at 156–57. And in *Jones*, the Fourth Circuit approvingly cited a decision in which the First Circuit expressly recognized that "the government is entitled, to some extent, to comment on a defendant's failure to produce evidence supporting the defense theory of the case"—specifically, the lack of records supporting the defense's characterization of certain payments as legal fees instead of kick-backs. *United States v. Glantz*, 810 F.2d 316, 321 (1st Cir. 1987); *cf. Jones*, 471 F.3d at 543. That is identical in kind to the argument made here.

### B.     The prosecutor's comments did not deprive defendant of a fair trial.

Second, defendant cannot demonstrate any effect on his substantial rights sufficient to con-stitute a deprivation of a fair trial. *See, e.g.*, *United States v. Runyon*, 707 F.3d 475, 520 (4th Cir. 2013) ("It is well-settled that a criminal defendant is entitled to a fair trial not a perfect one. … [Defendant] seeks in essence to present his case unfettered while substantially shutting down his adversary's. That is not a fair proceeding, but a one-sided one."). In examining the potential prej-udicial effect of prosecutorial comments, the Fourth Circuit has propounded six factors:

> (1) the degree to which the prosecutor's remarks had a tendency to mislead the jury and to prejudice the defendant; (2) whether the re-marks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the defendant; (4) whether the comments were deliberately placed be-fore the jury to divert attention to extraneous matters; (5) whether the prosecutor's remarks were invited by improper conduct of de-fense counsel; and (6) whether curative instructions were given to the jury.

*United States v. Scheetz*, 293 F.3d 175, 186 (4th Cir. 2002) (citing *Wilson*, 135 F.3d at 299).

With the exception of the fifth factor, which is not implicated, each of the *Wilson* factors

strongly favors the government. The prosecutor's comments consisted of one instance of 22 transcribed lines (*see* Trial Tr. 1180:20–1181:17) among approximately 960 lines of closing and rebuttal argument (*see* Trial Tr. 1117:21–1148:8, 1177:3–1186:24). The prosecutor bookended his argument with explicit reminders that the burden of proof lay with the government. *See* Trial Tr. 1180:8–19, 1181:14–17; *cf. Saint Louis*, 889 F.3d at 157 ("[T]he prosecutor's immediate clarification that '[defense counsel] doesn't bear the burden, I do,' mitigated any potential that the jury would be misled."); *United States v. Caandering*, 50 F.3d 696, 701–02 (9th Cir. 1995) ("[C]omments intended to highlight the weaknesses of a defendant's case do not shift the burden of proof … where the prosecutor …reiterates that the burden of proof is on the government …."). Defendant has not argued that the prosecution intended to distract the jury, and in fact, the point of the prosecutor's argument was to point out the absence of corroborating evidence for the defendant's explanation of the engagement. *See Saint Louis*, 889 F.3d at 157 (observing that the prosecutor's "isolated" remarks were "made only to counter the argument of defense counsel, not to divert the jury's attention"). So too here: Although defense counsel's arguments on this point were not improper within the meaning of *Wilson*'s fifth factor, the government's closing argument was directly aimed at the defense's opening statement that defendant only knew what Alptekin had told him, which was that the project had switched from one for Turkey to one for Alptekin personally. *See* Trial Tr. 63:1–64:4. In response to defense counsel's post-argument concerns, the Court chose to give a curative instruction on top of its previous explicit instruction that a defendant never bears the burden of proof, reminding the jury to follow the instructions rather than the arguments of counsel. *See* Tr. 1081:14–1082:6, 1189:19–1190:3; *cf., e.g., Benson*, 957 F.3d at 235 ("[C]urative instructions eliminate prejudice from improper closing arguments even when comments are both misleading and extensive.").

Defendant argues that the Court's "general, broad instruction" was insufficient to cure this prejudice, but defense counsel did not ask for a more specific instruction. *See Wallace*, 515 F.3d at 331. And in any event, courts do not "view a single instruction in isolation" but rather "consider whether taken as a whole and in the context of the entire charge, the instructions accurately and fairly state the controlling law." *United States v. Raza*, 876 F.3d 604, 613–14 (4th Cir. 2017). The Court's jury instructions were unequivocal about the placement of the burden and the lack of any obligation for the defense to produce evidence. *See* Dkt. 354-5, at 9; Trial Tr. 1081:14–1082:6. With an explicit reminder to apply those instructions over the arguments of counsel, the instructions as a whole cured any potential prejudice. *See Rafiekian*, 991 F.3d at 550 ("[S]ave for 'extraordinary situations,' we 'adhere to the crucial assumption ... that jurors carefully follow instructions.'" (quoting *Francis v. Franklin*, 471 U.S. 307, 324–25 n.9 (1985)).

In sum, the record demonstrates that the prosecutor's remarks were isolated, unlikely to mislead the jury, intended to rebut defense arguments and not to divert the jury's attention, and, even assuming some prejudice, cured by the Court's pre- and post-argument instructions. Likewise, for the reasons laid out in its Rule 29 and 33 briefing, the government's case contains strong evidence of the defendant's guilt, again weighing the analysis in its favor under the third *Wilson* factor. Accordingly, defendant cannot demonstrate that the prosecutor's comments had such a prejudicial effect as to infect the entire trial with such "unfairness as to make the resulting conviction a denial of due process." *Wilson*, 135 F.3d at 297. The defendant's new-trial motion on this ground should be denied.

## CONCLUSION

For the foregoing reasons, the government requests the Court deny defendant's renewed new-trial motion and set a schedule for sentencing.

Respectfully submitted,

RAJ PAREKH
ACTING UNITED STATES ATTORNEY

_____/s/_____          By: _____/s/_____
Evan N. Turgeon                   Aidan Taft Grano-Mickelsen
Trial Attorney                    New York Bar No. 5216585
Counterintelligence and Export    James P. Gillis
   Control Section                Virginia Bar No. 65055
National Security Division        John. T. Gibbs
United States Department of Justice   Virginia Bar No. 40380
950 Pennsylvania Avenue NW        Assistant United States Attorneys
Washington, DC 20530              United States Attorney's Office for the Eastern
(202) 353-0176                       District of Virginia
evan.turgeon@usdoj.gov            2100 Jamieson Avenue
                                  Alexandria, VA 22314
                                  Tel.: (703) 299-3700
                                  Fax: (703) 299-3981
                                  aidan.grano@usdoj.gov
                                  james.p.gillis@usdoj.gov
                                  john.gibbs@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 13, 2021, I electronically filed the foregoing using the

CM/ECF system, which will send a notification of such filing to all counsel of record.


     /s/                     
Aidan Taft Grano-Mickelsen
Assistant United States Attorney