UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Case No. 1:18-CR-457-AJT-1 |
| | : | |
| BIJAN RAFIEKIAN, et al. | : | |

**DEFENDANT RAFIEKIAN'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS RENEWED MOTION FOR A NEW TRIAL PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 33**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT...................................................................................................1

ARGUMENT .............................................................................................................................2

    I.    THE GOVERNMENT'S USE OF DX66 VIOLATED RAFIEKIAN'S RIGHT TO A FAIR TRIAL .........................................................................................2

        A.    CIPA's Procedures Cannot Be Used to Deprive A Defendant Of A Fair Trial................................................................................................................2

        B.    The Government's Inadequate CIPA Summary, And Prejudicial Use Of That Summary In Closing Argument, Demands A New Trial ...............................................................................................................4

        C.    The Government's Waiver Argument Is Meritless. ...................................8

    II.    THE VERDICT WAS AGAINST THE GREAT WEIGHT OF THE EVIDENCE..............................................................................................................11

    III.    THE GOVERNMENT IMPROPERLY SHIFTED THE BURDEN TO THE DEFENDANT ...................................................................................................16

CONCLUSION........................................................................................................................17

# TABLE OF AUTHORITIES

**CASES:**

*Brady v. Maryland,*
    373 U.S. 83 (1963)..........................................................................................5

*Eberhart v. United States,*
    546 U.S. 12 (2005)........................................................................................10

*Holmes v. South Carolina,*
    547 U.S. 319 (2006)........................................................................................3

*Hunt v. Nuth,*
    57 F.3d 1327 (4th Cir. 1995) ........................................................................11

*Lismont v. Alexander Binzel Corp.,*
    No. 2:12-CV-592, 2013 WL 12098260 (E.D. Va. June 6, 2013) ...........10

*Ohler v. United States,*
    529 U.S. 753 (2000)........................................................................................7

*Roviaro v. United States,*
    353 U.S. 53 (1957)..........................................................................................3

*United States v. Abu Ali,*
    528 F.3d 210 (4th Cir. 2008) ......................................................................6, 8

*United States v. Aref,*
    533 F.3d 72 (2d Cir. 2008)............................................................................5

*United States v. Arrington,*
    757 F.2d 1484 (4th Cir. 1985) ....................................................................12

*United States v. Burtons,*
    696 F. App'x 372 (10th Cir. 2017) ..............................................................10

*United States v. Fernandez,*
    913 F.2d 148 (4th Cir. 1990) ............................................................3, 4, 5, 8

*United States v. Jennings,*
    438 F. Supp. 2d 637 (E.D. Va. 2006) .........................................................15
    496 F.3d 344 (4th Cir. 2007) .......................................................................15

*United States v. Jordan,*
    952 F.3d 160 (4th Cir. 2020) .........................................................................9
    141 S. Ct. 1051 (2021)....................................................................................9

*United States v. Jurado-Nazario,*
 979 F.3d 60 (1st Cir. 2020) ..........................................................................10

*United States v. Lighty,*
 616 F.3d 321 (4th Cir. 2010) .........................................................................17

*United States v. Martinez,*
 763 F.2d 1297 (11th Cir. 1985) .....................................................................15

*United States v. Mejia,*
 448 F.3d 436 (D.C. Cir. 2006) .........................................................................5

*United States v. Metzger,*
 3 F.3d 756 (4th Cir. 1993) ...........................................................................8, 9

*United States v. Moussaoui,*
 382 F.3d 453 (4th Cir. 2004) .......................................................................3, 8

*United States v. Pernell,*
 No. 3:09-cr-452, 2014 WL 2002210 (E.D. Va. May 15, 2014) ....................16

*United States v. Rafiekian,*
 No. 1:18-cr-457-AJT, 2019 WL 4647254 (E.D. Va. Sept. 24, 2019) .....................9, 13, 14, 15
 991 F.3d 529 (4th Cir. 2021) ...........................................................11, 12, 14

*United States v. Saint Louis,*
 889 F.3d 145 (4th Cir. 2018) .........................................................................16

*United States v. Sedaghaty,*
 728 F.3d 885 (9th Cir. 2013) ................................................................ *passim*

*United States v. Souder,*
 436 F. App'x 280 (4th Cir. 2011) ..................................................................16

*United States v. Urutyan,*
 564 F.3d 679 (4th Cir. 2009) .........................................................................10

*United States v. Wilson,*
 135 F.3d 291 (4th Cir. 1998) .........................................................................17

*Wilkinson v. United States,*
 677 F.2d 998 (4th Cir. 1982) .........................................................................11

**S**TATUTE**:**

18 U.S.C. APP. 3
 § 6(c)(1) ........................................................................................................11

OTHER AUTHORITIES:

FED. R. CRIM. P.
   33(a) ...........................................................................................................................1, 11

S. Rep. No. 96-823 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4294..................................................3

## PRELIMINARY STATEMENT

Rule 33 permits the court to grant a new trial "if the interest of justice so requires."  FED. R. CRIM. P. 33(a).  Rather than defend the verdict as "just," however, the government attempts to erect one roadblock after another to this Court's deliberate and considered review:  purported waiver, *ex parte* legal argument, discretion-less "discretion," and even a cryptic "privilege" the government refuses to publicly reveal.  Rafiekian should not be forced to argue for his liberty with one hand tied behind his back.

Although the government tries to complicate Rafiekian's arguments, his case for a new trial is straightforward:  The government's use of the deficient CIPA summary in closing argument to equate Rafiekian with a bank robber deprived him of a fair trial.  The government's use exposed the numerous ways in which the summary was deficient.  Not only did that opaque substitution put Rafiekian to an impossible choice regarding whether to introduce the summarized evidence, it deprived him of the obvious opportunity to support his defense by contextualizing the evidence— such as by using it to examine or cross-examine Michael Flynn, the CEO of the Flynn Intel Group ("FIG"), who was never charged with a Turkey-related crime (and who was only belatedly accused of being Rafiekian's co-conspirator).  Still worse, although the summary was theoretically meant to provide information that was "exculpatory or helpful or favorable to the Defendant," Order at 2, ECF No. 404, the government then relied on that evidence during its rebuttal closing argument to imply that *Rafiekian* joined *Flynn's* conspiracy—and later argued that the jury "did" rely on that "critical[]" evidence to convict.  Opp. at 13-14, ECF No. 365.  Given that the Government's case was (as this Court recognized during trial) "very circumstantial" and "very speculative," Trial Tr. 850:24–851:2 (July 18, 2019), ECF No. 334, Rafiekian's total inability to respond to the government's insinuations regarding information it alone possessed likely made the difference between guilt and innocence.  Indeed, this Court has already recognized the "substantial danger

1

that the jury drew inferences against Rafiekian" based on Flynn's involvement, "particularly given the Government's use of Defendant's Exhibit 66 to support its claim that Rafiekian participated in the alleged conspiracy, even though the information in that exhibit related solely to Flynn and explicitly excluded Rafiekian." Mem. Op. at 37, ECF No. 372. That "substantial danger" warrants a new trial.

In addition, this Court should accept the Fourth Circuit's invitation to provide "additional justifications" for its decision to grant a new trial on weight-of-the-evidence grounds. In opposing that relief, the government's primary tactic is to rely on the Fourth Circuit's Rule 29 analysis. But, unlike the deferential Rule 29 standard, this Court's discretion to grant a new trial under Rule 33 is much broader: the Court is free to draw inferences unfavorable to the government, to make credibility judgments, to consider evidence introduced by Rafiekian, and to decide for itself, based on its superior trial vantage point, whether the jury's verdict was inconsistent with the great weight of the evidence. This Court should reject the government's attempt to render this Court's new-trial "discretion" illusory.

Finally, the government improperly shifted the burden of proof to Rafiekian—first through its examination of its lead case agent, and then by arguing in closing that Rafiekian did not "choose to put in" "a single shred of evidence" to rebut certain government facts. For that reason, and each of the other two independent reasons, a new trial is warranted.

## ARGUMENT

## I.   THE GOVERNMENT'S USE OF DX66 VIOLATED RAFIEKIAN'S RIGHT TO A FAIR TRIAL

### A.   CIPA's Procedures Cannot Be Used to Deprive A Defendant Of A Fair Trial.

The fundamental purpose of a CIPA substitution is to "provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified

2

information." *United States v. Fernandez*, 913 F.2d 148, 157 (4th Cir. 1990). Although CIPA provides procedures to protect improper disclosure of sensitive information, that interest does not trump a defendant's constitutional right to a fair trial. *See United States v. Sedaghaty*, 728 F.3d 885, 905 (9th Cir. 2013) (overturning conviction in which CIPA summaries "unfairly colored presentation of the information" and "omitted facts helpful to [his] defense"); *United States v. Moussaoui*, 382 F.3d 453, 476 (4th Cir. 2004) ("[T]he Executive's interest in protecting classified information does not overcome a defendant's right to present his case."); *see also* S. Rep. No. 96-823, at 9 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4294, 4302 (under CIPA, "the defendant should not stand in a worse position, because of the fact that classified information is involved, than he would without" CIPA). Even if a privilege (such as "the state secrets privilege") applies, the court still "must determine whether the evidence is 'relevant and helpful to the defense of an accused,'" and authorize a substitution only if it gives the defendant the "same ability" to defend himself as would disclosure. *Sedaghaty*, 728 F.3d at 904 (quoting *Roviaro v. United States*, 353 U.S. 53, 60–61 (1957)). That requirement "arises out of the Constitution's guarantee that all criminal defendants must have 'a meaningful opportunity to present a complete defense.'" *Id.* at 904-905 (quoting *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006)).

Thus, when use (or misuse) of CIPA's procedures result in a failure to adequately protect the defendant's rights, courts do not hesitate to step in. For example, in *United States v. Fernandez*, the Fourth Circuit affirmed the dismissal of an indictment with prejudice because, among other reasons, the government's proposed substitutions for classified information were inadequate: they were "extremely abbreviated," "spoke in general terms," and omitted information that was essential to the defense. 913 F.2d at 158. Specifically, the substitutions prevented the defense from demonstrating "integral relationship[s]" that could dispute the government's version of

events and support the defense's, and thus precluded the defense from "present[ing] a coherent case of its own, since it would be shackled to a script written by the prosecution." *Id.* (alteration in original); *see id.* (noting that "substitutions would have required the jury to judge [the defendant's] role . . . , and thus the truth of his statements about it, in a contextual vacuum").

Similarly, in *United States v. Sedaghaty*, the Ninth Circuit reversed a conviction based in part on its review of an incomplete summary provided under CIPA that distorted the underlying classified material.  728 F.3d at 903-907.   The government's summary, approved by the trial court, failed to disclose exculpatory "information that [was] helpful to [the] defense" and failed to provide "crucial context for certain information that it does convey." *Id.* at 906.  After reviewing the underlying classified information, the court held that "[i]t would be illogical to conclude that a substitution that excludes non-cumulative exculpatory information could provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information[.]" *Id.* (internal quotation marks omitted).

**B.    The Government's Inadequate CIPA Summary, And Prejudicial Use Of That Summary In Closing Argument, Demands A New Trial**

Although Rafiekian's cleared counsel still has had no access to the underlying classified information, the CIPA summary was, in theory, apparently supposed to provide "exculpatory or helpful or favorable [information] to the Defendant."  Order at 2, ECF No. 404.  But as the trial showed, that summary proved wholly inadequate in practice, as confirmed by the government's prejudicial use of DX66 in closing argument.

Relying on the context of the government's eve-of-trial production of DX66—namely that it was meant to be favorable to the accused—Rafiekian's counsel introduced it to the jury as evidence by reading it aloud (as there was no witness to contextualize it).  But Rafiekian was given a classic Hobson's choice:  either "accept the government's deficient summary or none at all."

4

*Sedaghaty*, 728 F.3d at 907; *see id.* (declining to fault defense counsel for failure to introduce "slanted and unhelpful summary").  As in *Fernandez*, the summary that Rafiekian received, while supposedly "helpful to [his] defense," was an "extremely abbreviated" one-sentence summary. 913 F.2d at 154, 158.  The timing of the production gave Rafiekian no meaningful opportunity to investigate its value.  The substance gave Rafiekian no opportunity to actually use the "helpful" information.  He was provided no information with respect to witnesses to call to place the information in context.  And, indeed, his lawyers could not question Rafiekian *himself* about them.

Theoretically, information about communications made involving Flynn "without any reference" to Rafiekian could have been useful to Rafiekian's trial strategy.  DX66.  After all, Flynn's involvement in the FIG/Inovo engagement "paralleled" or even "exceeded that of Rafiekian."  Mem. Op. at 29 n.44, ECF 372; *see id.* (noting that Flynn "engaged in conversations directly with [Alptekin], issued the op-ed, participated in the meeting with Turkish government officials on September 19, 2016, and was designated as the lead on FIG's engagement with Inovo").  But without any context surrounding DX66, Rafiekian's counsel was unable to fully develop informed arguments and present an effective defense.  *See United States v. Aref*, 533 F.3d 72, 80 (2d Cir. 2008) ("To be helpful or material to the defense, evidence need not rise to the level that would trigger the Government's obligation under *Brady v. Maryland*, 373 U.S. 83 (1963), to disclose exculpatory information."); *see also United States v. Mejia*, 448 F.3d 436, 457 (D.C. Cir. 2006) ("[I]nformation can be helpful without being 'favorable' in the *Brady* sense.").  Indeed, Rafiekian's counsel has been forced to speculate even about the nature of the privilege the government invokes, and the legal arguments the government makes, in the "separate *ex parte* statement, [it] filed *in camera*."  Opp. at 5.

Rafiekian's prejudice was confirmed when the government seized on DX66 in its rebuttal closing argument, characterizing it as inculpatory evidence that *Rafiekian* joined a preexisting conspiracy masterminded by *Flynn*.  *See* Gov't Rebuttal Arg., Tr. Trans. at 1182–83 (July 22, 2019), ECF No. 351 (describing fictional bank robbers "Tom," "Dick," and "Harry," and arguing that while DX66 did not mention "Harry" (i.e., Rafiekian) explicitly, that just meant that he "joined the bank robbery scheme" later).  But that argument is only proper if there was evidence that at some point "Harry" knowingly joined some other conspiracy.  That is what the government argued: that "Harry decide[d] to join Tom and Dick in another bank robbery."  Tr. Trans. at 1182 (July 22, 2019), ECF No. 351.  That argument is inconsistent with the disclosure made in DX66, which indicates that its information is "*without* any reference to the defendant or FIG."  DX66 included no context (temporal or otherwise) in which Rafiekian could have anticipated, or accounted for, the fact the government would try to use DX66 as additional evidence of guilt.

In other words, the government effectively invited the jury to convict Rafiekian based in part on its characterization of DX66, knowing that Rafiekian—who had never seen the underlying evidence—could not effectively rebut its inculpatory inference.  This Court has already acknowledged the "substantial danger" that the jury relied on Flynn's actions in convicting Rafiekian based on its "use of Defendant's Exhibit 66"—"even though the information in that exhibit *related solely to Flynn and explicitly excluded Rafiekian*."  Mem. Op. at 37, ECF No. 372; *see United States v. Abu Ali*, 528 F.3d 210, 255 (4th Cir. 2008) ("There is a stark difference between *ex parte* submissions from prosecutors which protect the disclosure of irrelevant, nonexculpatory, or privileged information, and situations in which the government seeks to use *ex parte* information in court as evidence to obtain a conviction").  Indeed, the government has *acknowledged* that "the jury could—and did—rationally infer" Rafiekian's guilt based on DX66.  Opp. at 13-14, ECF No.

6

365; *see id.* at 13 (arguing that "[l]astly—and critically—the jury heard" DX66 evidence). Given that the Government's case was "very circumstantial" and "very speculative," Trial Tr. 850:24–851:2 (July 18, 2019), ECF No. 334, Rafiekian's inability to rebut the government's insinuations may well have tipped the jury's verdict.

In response, the government makes the galling assertion that *equating Rafiekian with a bank robber*, and suggesting that he "join[ed]" a preexisting conspiracy, was not arguing for an "inculpatory" inference from DX66. *See* Opp. at 9 (arguing that although the "government is fairly entitled to comment on—and argue for—any inculpatory inference that arises from admitted evidence," "the government did not even go that far"). But again, this Court has already recognized the "substantial danger" that the jury "drew inferences against Rafiekian" based on the government's argument. Mem. Op. at 37, ECF No. 372. And even the government concedes that it urged an inculpatory inference its *post-trial* briefing, *see* Opp. at 11 ("To be sure, the government did argue for an inculpatory inference from the exhibit in post-trial briefing . . . "). The government splits hairs in asking the court to differentiate between what it *meant to argue* and what the jury *rationally inferred from its argument*. Its concessions that DX66 was "critical[]" evidence from which the jury could "rationally infer" guilt is more than enough to demonstrate prejudice. Opp. at 13-14, ECF No. 365.

The government also tries to shift blame to *Rafiekian* for any prejudice caused by DX66. Opp. at 8. But as noted, DX66 was no ordinary defense evidence; rather, it was a cryptic summary drafted by the government and produced on the eve of trial apparently because (in theory) it was helpful to the defense. For that reason, the government's reliance on *Ohler v. United States,* 529 U.S. 753 (2000) is misplaced. *Ohler* involved whether a defendant *preserved* an admissibility argument after voluntarily introducing the evidence himself. It did not address the legal issue or

7

factual circumstances here, involving whether the government's prejudicial references to a deficient CIPA summary demands a new trial.

Finally, the government contends that its closing argument did not violate Rafiekian's "Sixth Amendment confrontation and counsel rights." Opp. 5. But as noted, CIPA's procedural requirements "arise[] out of the Constitution's" Sixth Amendment guarantees, *Sedaghaty*, 728 F.3d at 904-905, and the Fourth Circuit has held that misuse of CIPA evidence at trial may constitute a Sixth Amendment violation. *See Moussaoui*, 365 F.3d at 307-308 (holding government's national security interest must "give way" to defendant's Sixth Amendment rights); *Abu Ali*, 528 F.3d at 255 (holding that government's furnishing of unredacted CIPA evidence to jury, while not providing such evidence to the defendant, violated the defendant's Sixth Amendment rights). Unlike in *Abu Ali*, where CIPA-cleared defense counsel had full access to the classified information and an "unfettered opportunity to challenge the government witnesses"—and where even uncleared counsel received "the substance of the communications, the dates, and the parties involved," 528 F.3d at 254—here Rafiekian and his counsel were left "in a contextual vacuum," *Fernandez*, 913 F.2d at 158, and at the whims of the government's rebuttal closing. Because CIPA was designed to protect Rafiekian's Sixth Amendment rights, if the government violated CIPA, Rafiekian's constitutional rights were likely violated, too.

## C.    The Government's Waiver Argument Is Meritless.

The government's waiver argument, made for the first time on remand, is meritless. The government concedes that where it "does not assert a procedural defense before addressing an argument on the merits, it has waived the defense of waiver or forfeiture." Opp. at 2 (citing *United States v. Metzger*, 3 F.3d 756, 757 (4th Cir. 1993)). Yet, that is exactly what the government did on appeal, when it spent multiple pages addressing the "merits" of its argument concerning its use

of DX66 in closing *without raising waiver*. *See* Gov't CA4 Reply Br. at 33-35 (arguing, in a section titled "Defendant's argument is wrong on the merits," that "Defendant asserts that the government argued to the jury that the exhibit was inculpatory, but that is not a fair reading. . . . The government's rebuttal—its sole reference to DX66—was that the exhibit did not show what defendant claimed it did."); *see also id.* at 33 n.19 (arguing that, though district court did not address "propriety of the government's rebuttal," "defendant has argued the issue [of propriety] on appeal"). Thus, under the government's own cited rule, it has "waived the defense of waiver." *Metzger*, 3 F.3d at 757.

In addition, as this Court knows, it previously reserved "the substantial issues Rafiekian has raised" regarding the adequacy of DX66 for future decision. *United States v. Rafiekian*, No. 1:18-cr-457-AJT, 2019 WL 4647254, at *17 n.46 (E.D. Va. Sept. 24, 2019). On appeal, the government acknowledged that Rafiekian had previously raised arguments related to DX66, and that the Court had explicitly reserved them. Gov't CA4 Reply Br. at 32 (acknowledging that Rafiekian asserted "that the exhibit DX66 was inadequately disclosed"); *id.* at 33 n.19 ("*The government agrees* that the district court reserved whether DX66's pre-trial disclosures were adequate; that question is therefore not presented [on appeal].") (emphasis added). Indeed, at the hearing on Rafiekian's original new trial motion, the government directly addressed Rafiekian's arguments regarding DX66, and it did so on the merits. *See, e.g.*, Hr'g Tr. 39-40 (Sept. 12, 2019), ECF No. 368 ("About whether it is inappropriate for the Government to rely on [DX66]. . . . [T]he Government squarely has the prerogative to comment on the evidence to say -- to suggest to the jury, this is what we think the evidence shows."). By failing to raise a timeliness defense before the district court "rule[d] on a Rule 33 motion," the government "forfeited" it. *United States v. Jordan*, 952 F.3d 160, 171 n.2 (4th Cir. 2020), *cert. denied,* 141 S. Ct. 1051 (2021) ("[W]here the

9

government fails to raise a timeliness defense before a district court rules on a Rule 33 motion, the defense is forfeited.") (citing *Eberhart v. United States*, 546 U.S. 12, 19 (2005)); *see United States v. Urutyan*, 564 F.3d 679, 685 (4th Cir. 2009) ("admonish[ing] the Government that failure to object to untimely submissions entails forfeiture of the objection"). The happenstance of this Court's choice to reserve (rather than to rule on) Rafiekian's arguments at that time was not an invitation for the government to someday make a waiver argument it had already forfeited.

Beyond that, the government does not dispute that this Court enjoys discretion to review arguments raised in reply—particularly where, as here, those arguments respond to the government's responsive arguments. Opp. at 13–14, ECF No. 365; *see, e.g., Lismont v. Alexander Binzel Corp.*, No. 2:12-CV-592, 2013 WL 12098260, at *1 (E.D. Va. June 6, 2013) ("[C]ourts necessarily may consider new arguments in a movant's reply where those arguments address issues raised for the first time in the nonmovant's response"); *United States v. Jurado-Nazario,* 979 F.3d 60, 62-63 (1st Cir. 2020) (similar); *United States v. Burtons*, 696 F. App'x 372, 375-376 (10th Cir. 2017) (similar).[1] Instead, the government argues that it "did not have adequate notice that defendant was claiming the existence of" a new-trial ground related to the government's use of DX66 in closing argument. Opp. at 3. But Rafiekian was explicit that the government's reliance on DX66 had "invited a new trial on yet *another* ground." Def. Rafiekian's Reply in Further Supp. of His Rule 29 and Rule 33 Motions at 2, 8-11, ECF No. 366 (emphasis added). Rafiekian could hardly have been clearer that this was a *new* ground, not merely an additional argument on sufficiency. *See, e.g., id.* at 9-10 ("Rafiekian was unable to effectively rebut the government's

---

[1] In addition, Rafiekian will be able to raise this argument on appeal. *See, e.g., Sedaghaty*, 728 F.3d at 907 ("Having been unsuccessful at challenging the substitution before trial, Seda's recourse is in this appeal."). That is yet another reason to reject the suggestion that this Court is somehow powerless to consider the argument now.

statement in closing arguments that the classified materials actually supported guilt," and "[n]ow that the government has admitted that the jury necessarily 'did' rely on this evidence to find him guilty, Rafiekian's prejudice is clear"); *see also id.* at 2 (arguing that "the jury necessarily relied on this evidence to support its guilty verdict (as the government now admits), then the jury and Rafiekian should have been afforded access to the underlying classified materials themselves, not a vague summary supporting guilt by innuendo"); *id.* at 9–10 (arguing that "it is clear that the summary failed to 'provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information.'") (quoting 18 U.S.C. APP. 3 § 6(c)(1)).

Finally, a finding of waiver here would not accord either with "the interest of justice," Fed. R. Crim. P. 33(a), or with the underlying purposes of the waiver doctrine.   In general, waiver serves two purposes.  First, it avoids placing the opposing party in a position where it is deprived of any meaningful opportunity to respond.  *See, e.g., Wilkinson v. United States*, 677 F.2d 998, 1002 (4th Cir. 1982) (Declining to consider an argument not raised in opening brief because the appellee "has never had an opportunity to be heard on [it]").  Second, waiver protects the court from issuing "an improvident or ill-advised opinion on the legal issues raised" when it did not have the benefit of the adversarial process.  *Hunt v. Nuth*, 57 F.3d 1327, 1338 (4th Cir. 1995).  Neither purpose is implicated here.  The government had a meaningful opportunity to respond:  it has (twice) addressed arguments relating to DX66 on the merits, and has had a full opportunity to brief and argue the issue now.  And because the issue is fully briefed, there is no risk that the court will issue an "improvident or ill-advised opinion" on the critical underlying legal issues.

## II.     THE VERDICT WAS AGAINST THE GREAT WEIGHT OF THE EVIDENCE

The Fourth Circuit invited this Court to provide "additional justifications for its decision" to grant a trial on weight-of-the-evidence grounds that may not have been reflected in its original opinion. *United States v. Rafiekian*, 991 F.3d 529, 550 (4th Cir. 2021).  This Court should therefore

11

take the opportunity to reaffirm its prior finding, made shortly after the conclusion of the trial, that the verdict was indeed against the great weight of the evidence.

In opposing that outcome, the government relies heavily on the Fourth Circuit's characterization of the trial evidence. But the government's response conflates the Rule 33 new-trial standard with Rule 29's far more-deferential one. Unlike the Fourth Circuit, which asked "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt," *Rafiekian*, 991 F.3d at 544 (alteration in original), this Court is not "constrained by the requirement that it view the evidence in the light most favorable to the government," *id.* at 549 (quoting *United States v. Arrington*, 757 F.2d 1484, 1485 (4th Cir. 1985)); *see also id.* (the "'criteria for a judgment of acquittal and for a new trial' are distinct.") (quoting *Arrington*, 757 F.2d at 1486). Instead, this Court is free to draw inferences unfavorable to the government, consider witness credibility, and review the exculpatory evidence Rafiekian introduced. *See* Def. Rafiekian's Mem. in Supp. of Renewed Mot. for New Trial at 17, ECF No. 387.

Ignoring those key distinctions, the government repeatedly relies on the Fourth Circuit's characterizations of the evidence in its Rule 29 analysis. *See* Opp. at 15–21 (relying on evidentiary "indications" from Fourth Circuit opinion). For example, the government emphasizes the Fourth Circuit's observation that the evidence "*strongly suggests* that an entity other than Alptekin was actually financing Project Confidence," and implies that such evidence shows "Turkey's involvement." *Id.* at 15 (citation omitted). But the Fourth Circuit made that finding (like all of its findings) while viewing that evidence in the *light most favorable to the government*. Under no similar constraint, this Court can and should again reject that inference, and reaffirm its prior recognition regarding the absence of any evidence "direct or otherwise, sufficient to reasonably

infer that Turkey funded the engagement of FIG, or that the engagement was not in fact being funded by a group of Turkish businessmen, as Rafiekian stated consistently throughout." *Rafiekian*, 2019 WL 4647254, at \*12–\*13.

Similarly, the government relies upon the Fourth Circuit's observation that "Rafiekian carried out Project Truth/Confidence subject to Turkish 'direction' conveyed through Alptekin with reference to the New York meeting and subsequent communications."  Opp. at 15 (internal quotation and citation omitted).  But again, that light-most-favorable-to-the-government finding conflicts with this Court's previous observation, made immediately after witnessing the trial, that there was "*no* evidence concerning anything said at [the September 19, 2016 meeting in New York] from which a rational juror could find that Rafiekian had agreed to operate at the direction or control of the Turkish government," and that none of the communications between Rafiekian and Alptekin could "be construed as a request that Rafiekian [act as an agent of the Turkish government] or an agreement by Rafiekian to do so."  *Rafiekian*, 2019 WL 4647254, at \*12-\*13 (emphasis added).  This Court should reaffirm, under the Rule 33 standard, its prior conclusions regarding the *absence* of evidence of Turkish direction, including (a) the fact that "many others were involved in determining how to proceed with [FIG's] work"; (b) "Rafiekian[], FIG[], and Sphere[] reject[ed] requests or suggestions by Alptekin"; and (c) "FIG and the consultants it retained based their work on open source research, most of which was conducted by people and companies other than Rafiekian and FIG," was "never disseminated, and was to a large degree duplicative of research that the Turkish government had already hired the law firm Amsterdam & Partners LLP to perform."  *Id.* at \*14.  Moreover, it should also reaffirm its prior finding, on the same record, of a complete absence of evidence that "the op-ed published by Flynn . . . had been

13

requested by the Turkish government . . . or that it was Rafiekian, as opposed to Flynn, who decided to have the op-ed published at that time." *Id.*

The government also relies upon the Fourth Circuit's finding that "Rafiekian and Alptekin's joint conduct easily establishes that the two agreed to operate—if not explicitly, then implicitly—subject to Turkish direction." Opp. at 15 (citation and emphasis omitted). However, that argument ignores the fact that the Fourth Circuit largely agreed with this Court's more-restrictive view of agency. *Compare Rafiekian*, 2019 WL 4647254, at *9 ("[F]or a person to be an agent for purposes of Section 951, it is not enough to be acting as 'a representative of' or 'on behalf of' a foreign government. That person must, in addition, have agreed 'to operate subject to the direction or control of that foreign government'") *with Rafiekian*, 991 F.3d at 540-541 ("[T]o be an 'agent of a foreign government,' a person must 'agree[] to operate . . . subject to [foreign] direction or control.' That agreement cannot be one-sided, and a person does not become an 'agent' for purposes of § 951 simply by acting in accordance with foreign interests or by privately pledging allegiance.") (alterations except first and ellipsis in original) (internal citation omitted). Although the Fourth Circuit ultimately found the evidence—viewed in the light most favorable to the government—was sufficient to conclude the existence of an agency relationship, nothing prevents this Court from reaffirming, under *Rule 33's* standard, that "[t]here is no evidence of any actual or implied agreement between Rafiekian and the government of Turkey or any official of the government of Turkey." *Rafiekian*, 2019 WL 4647254, at *12.

The absence of any agreement is even more evident when the entire record is considered. The government gives short shrift to the defense case, which the Fourth Circuit explicitly did not consider in overturning this Court's ruling. *See Rafiekian*, 991 F.3d at 544 n.20 ("Our review is limited to the evidence presented in the Government's case-in-chief.") (emphasis added). As this

14

Court already found, Rafiekian's efforts to comply with registration and notification requirements, "includ[ing] seeking out legal advice concerning his FARA disclosure obligations in August 2016 (from Covington) and again in September 2016 (from Kelley), and subsequently filing an LDA disclosure statement pursuant to Kelley's advice," undercut "any inference of an agreement by Rafiekian to act as an undisclosed Turkish agent." Mem. Op. & Order at 29, ECF No. 292; *Rafiekian*, 2019 WL 4647254, at *15. Similarly, as this Court has acknowledged, the defense evidence about Amsterdam & Partners entering into a similar contract with the Republic of Turkey and filing a public FARA form disclosing that contract undercuts the government's theory that Turkey sought to hide its interest in exposing Gulen. *See* Renewed Mot. for New Tr. at 21, ECF No. 387. Contrary to the government's suggestions, these "conflict[s]" between the government and defense theories are anything but "clear-cut." Opp. at 21 (citing *United States v. Martinez*, 763 F.2d 1297, 1314 (11th Cir. 1985)).

Although the government begrudgingly acknowledges that "this Court does possess *some* discretion to weight the evidence under Rule 33," its view of the Court's discretion as "sharply cabined" renders it, in reality, no discretion at all. Opp. 13 (emphasis added); *see* Opp. at 16 (arguing that a new trial is limited only to the most extraordinary cases, such as where evidence was "patently incredible," where the credibility of the government's witnesses has been impeached, or where there was an error that affected the reliability of evidence). But Rule 33's plain text, which permits new trials "in the interest of justice," belies the government's attempt to narrow this Court's discretion to the vanishing point. *See United States v. Jennings*, 438 F. Supp. 2d 637, 642 (E.D. Va. 2006), *aff'd*, 496 F.3d 344 (4th Cir. 2007) ("plain meaning" of the phrase "the interest of justice" makes "clear that granting a new trial is discretionary," and "this discretion should be exercised where it is demonstrated that the fundamental fairness or integrity of the trial

15

result is substantially in doubt"); *United States v. Souder*, 436 F. App'x 280, 290 (4th Cir. 2011) (noting that while a "district court should exercise its discretion to grant a new trial sparingly . . . we evaluate such a ruling against the backdrop of the district court's broad power to independently weigh the evidence when considering such a motion, as well as the deferential standard of review we must apply to that decision") (internal quotations and citation omitted).

Regardless, this Court has already found once that the government's "very speculative" case satisfies Rule 33's standards, and nothing in the Fourth Circuit's opinion—which invited "additional justifications" due to a lack of "further elaboration" on this point—should change that conclusion. Indeed, the special circumstances here—including the effect of the government's use of DX66 as affirmative evidence of guilt in closing argument, its last-minute tactical change-of-position as to Flynn's role in the conspiracy, and its (and President Trump's) subsequent treatment of Flynn after he pleaded guilty to an unrelated crime, only bolster the case for why a new trial is necessary in the interests of justice. *See United States v. Pernell*, No. 3:09-cr-452, 2014 WL 2002210, at *6 (E.D. Va. May 15, 2014) (granting new trial based on introduction of inadmissible evidence where "evidence offered to support the conviction was circumstantial," and "[a]lthough the evidence was sufficient to send the case to the jury, the verdict could have gone either way").

## III. THE GOVERNMENT IMPROPERLY SHIFTED THE BURDEN TO THE DEFENDANT

A new trial is also warranted because the government improperly made arguments shifting the burden of proof to Rafiekian, and the remarks "so prejudiced [Rafiekian's] substantial rights that [he] was denied a fair trial." *United States v. Saint Louis*, 889 F.3d 145, 156 (4th Cir. 2018). In first eliciting burden-shifting testimony from Special Agent Alfredo, and then later referring to those remarks in suggesting that Rafiekian had failed to come forward with a "shred of evidence"

of his innocence, the government's improper burden-shifting arguments could have made the difference between a verdict of guilty and an acquittal.

Contrary to the government's assertions, the factors laid out in *United States v. Wilson*, 135 F.3d 291 (4th Cir. 1998), do not "strongly favor" the government. *See* Opp. at 27-28. First, the government's improper arguments were not isolated; instead, they were made first in the questioning of Special Agent Alfredo and later in closing argument. *See* Trial Tr. 785:14–17 (July 18, 2019), ECF No. 333; Trial Tr. 1181:10-13 (July 23, 2019), ECF No. 351. Nor did the Court give any curative instructions following the government's improper questioning of Special Agent Alfredo. Second, there is no suggestion that any of the government's remarks were invited by any improper conduct by defense counsel. Third, the Court's curative instructions were insufficient to specifically address or correct the government's improper arguments. *See* Trial Tr. 1189:19-23 (July 23, 2019), ECF No. 351. Finally, the Fourth Circuit has held that these factors are to be examined in the context of the entire trial, and that no one factor is dispositive. *See United States v. Lighty*, 616 F.3d 321, 361 (4th Cir. 2010). Viewing the government's comments within the context of the entire trial, particularly in light of the government's circumstantial and speculative case, the remarks prejudiced Rafiekian's substantial rights and denied him a fair trial. The Court should grant a new trial in light of the government's error.

## CONCLUSION

For all of the foregoing reasons, Defendant Bijan Rafiekian respectfully moves this Court to grant him a new trial under Federal Rule of Criminal Procedure 33.

Dated: October 18, 2021                    Respectfully submitted,

                                           */s/*_____
                                           Mark J. MacDougall (*Pro Hac Vice*)
                                           Stacey H. Mitchell (*Pro Hac Vice*)
                                           James E. Tysse (VA Bar #73490)
                                           Adam A. Bereston (*Pro Hac Vice*)

Samantha J. Block (*Pro Hac Vice*)
Madeline M. Bardi (*Pro Hac Vice*)
*Counsel for Bijan Rafiekian*
Akin Gump Strauss Hauer & Feld LLP
2001 K Street NW
Washington, DC 20006
Telephone:  (202) 887-4000
Fax:  (202) 887-4288
E-mail:  mmacdougall@akingump.com
shmitchell@akingump.com


*/s/*
_____
Robert P. Trout (VA Bar # 13642)
*Counsel for Bijan Rafiekian*
Schertler Onorato Mead & Sears
901 New York Avenue, N.W.
Suite 500 West
Washington, DC 20001
Telephone:  (202) 628-4199
Fax:  (202) 628-4177
E-mail:  rtrout@schertlerlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the 18th day of October 2021, true and genuine copies of Defendant

Bijan Rafiekian's Reply in Support of his Renewed Motion for New Trial was sent via electronic

mail by the Court's CM/ECF system to the following:

James P. Gillis
John T. Gibbs
Evan N. Turgeon
Aidan T. Grano-Mickelsen
U.S. Attorney's Office (Alexandria-VA)
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 299-3700
Email: james.p.gillis@usdoj.gov
        john.gibbs@usdoj.gov
        evan.turgeon@usdoj.gov
        agrano@usa.doj.gov

_/s/_ _____
James E. Tysse (VA Bar #73490)